BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: KIA HYUNDAI VEHICLE THEFT LITIGATION   )
)
)
)

MDL Docket No. _____

## *MCNERNEY* PLAINTIFFS' MEMORANDUM OF LAW AND FACT IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS IN THE CENTRAL DISTRICT OF CALIFORNIA, UNDER 28 U.S.C. § 1407

Plaintiffs Katelyn McNerney, Sherry Mason, Carmi Nelson, Cameron Cunningham, and Allison Brown ("*McNerney* Plaintiffs")[1] respectfully submit this Memorandum of Law and Fact in Support of their motion for transfer and consolidation of related actions in the Central District of California, under 28 U.S.C. § 1407.

### I. INTRODUCTION

Pursuant to 28 U.S.C. § 1407, *McNerney* Plaintiffs seek an Order (i) transferring to the Central District of California the cases listed in the Schedule of Actions attached as Exhibit A hereto (the "Related Actions"), and any other tag-along actions asserting similar or related claims against Kia America, Inc. ("Kia") and/or Hyundai Motor America ("Hyundai") involving allegations that Kia and Hyundai vehicles failed to include immobilizer technology to prevent theft that may subsequently be filed in or removed to the federal courts; and (ii) consolidating the Related Actions with the *McNerney* Action for pretrial discovery and class certification purposes. Transfer and consolidation in the Central District of California is necessary under Section 1407 to promote efficient management of the litigation because:

---

[1] *McNerney* Plaintiffs are the named plaintiffs in *McNerney v. Kia America, Inc.*, C.D. Cal No. 8:22-cv-01548 (the "*McNerney* Action").

1

- The Related Actions involve nearly identical factual allegations that the Covered Vehicles (as defined below) are defective because they are not equipped with immobilizer technology to deter theft, and all actions bring largely duplicative legal claims. Thus, discovery in all of the Related Actions will necessarily focus on the same documents, witnesses, and other evidence pertaining to Kia and Hyundai's knowledge of problems that would result from the omission of immobilizer technology in the Covered Vehicles, and Kia and Hyundai's decision to omit immobilizer technology despite this knowledge. Absent consolidation, duplicative discovery and potentially conflicting dispositive legal rulings may result.

- The Related Actions involve overlapping putative classes, as nearly all of the 16 actions seek to certify nationwide classes of vehicle owners. Absent consolidation, 14 federal district courts could issue conflicting class certification rulings.

- The Central District of California is where Kia and Hyundai's headquarters are located.

- The Central District of California is where most relevant documents and witnesses are located.

- No other district has more cases pending than the Central District of California.[2]

- The Central District of California was previously selected as the most appropriate jurisdiction for a prior MDL involving Kia and Hyundai because "Hyundai Motor America, Inc., and Kia Motors America, Inc. are headquartered in that district, and relevant documents and witnesses likely will be found there." *In re ZF-TRW Airbag Control Units Products Liab. Litig.*, 410 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019).

---

[2] Although the Western District of Missouri also has two pending cases, that court has no connection to Kia or Hyundai.

## II. BACKGROUND

### A. Factual Background

At issue are vehicles sold or leased nationwide by Kia and Hyundai that do not include immobilizer technology to deter theft. These vehicles include 2011-2022 Kia vehicles and 2015-2022 Hyundai vehicles equipped with traditional "insert-and-turn" steel key ignition systems (collectively, the "Covered Vehicles"). Unlike most vehicles, the Covered Vehicles are not equipped with an "immobilizer" preventing them from being started unless a code is transmitted from the Vehicle's specific smart key. This security vulnerability (the "Defect") makes the Covered Vehicles incredibly easy to steal, allowing thieves to steal Covered Vehicles by simply opening the steering columns (by removing a panel) and using a common USB charging cord or similar metal object to start the engine. Viral videos on TikTok and YouTube give step-by-step instructions on how to steal Covered Vehicles without a key, and reports of stolen Kia and Hyundai Vehicles have skyrocketed across the country. In fact, the "Kia Challenge," widely shared on social media platforms, dares people to break in and then use a USB cord to start Covered Vehicles. The videos show teens and young adults going for joy rides and in some cases, even abandoning or crashing Covered Vehicles. The incidents have turned dangerous, with suspects and bystanders being seriously injured or killed following unsafe driving and crashes related to the thefts.[3]

Plaintiffs allege that Kia and Hyundai knew of the above-described defects for years, but nonetheless continued to manufacture, sell, and lease Covered Vehicles to unsuspecting customers.

### B. Procedural History of the Pending Actions

On August 19, 2022, *McNerney* Plaintiffs filed a proposed class action on behalf of a

---

[3] In Milwaukee, where Plaintiff McNerney's Vehicle was stolen, 66% of vehicle thefts involve either Kia and Hyundai models. https://www.wisn.com/article/thefts-of-kia-hyundai-explode-2500-in-milwaukee/36756668# (last accessed August 31, 2022).

nationwide class, and Illinois and Ohio subclasses, of persons and entities who purchased or leased vehicles manufactured by Kia and Hyundai that were not equipped with an immobilizer. *McNerney* Plaintiffs assert claims for breach of implied warranties, violations of the Magnusson Moss Act, violations of the California Consumer Legal Remedies Act, Violations of California's Unfair Competition Law, and unjust enrichment.

In roughly the same month *McNerney* Plaintiffs filed suit, 14 other cases were filed across the country purporting to represent nationwide classes and/or state-specific subclasses. Notably, the Central District of California is one of only two districts with more than one case pending. Because each of these cases was filed in the same month, none has progressed to motion practice or discovery. *See In re BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) (where "actions in this docket are at an early stage, transfer to another district should not be unduly disruptive").

Only one Related Action has advanced to motion practice. That case, *Marvin, v. Kia America, Inc.,* E.D. Wis. No. 2:21-cv-1146, was filed in October 2021 in the Eastern District of Wisconsin on behalf of a Wisconsin-only class of purchasers and lessees of Covered Vehicles, and asserts claims primarily based on Wisconsin statutes. However, as Kia and Hyundai point out in their reply memorandum supporting their pending motion to dismiss, the *Marvin* plaintiffs "seek to apply a unique standard to one State's consumers." E.D. Wis. No. 2:21-cv-1146, ECF No. 32, p. 3.

Although *McNerney* Plaintiffs know of no other related cases pending in federal courts other than those listed in Exhibit A as of the date of this filing, Kia and Hyundai are best situated to inform the Panel whether there are any other class actions in federal district courts that raise the same or similar claims.

### III.     ARGUMENT

**A.     Transferring the Pending Class Actions for Coordinated Pretrial Proceedings is Proper**

The principal goals of 28 U.S.C. § 1407 are to avoid duplicative discovery, prevent inconsistent or repetitive rulings, promote efficient management of litigation, and conserve the resources of the parties, counsel, and the courts. *See* MANUAL ON COMPLEX LITIGATION § 22.33 at 367 (4th ed. 2004). These goals are best served by transferring the Related Actions for coordinated pretrial proceedings. 28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Here, Section 1407's requirements for transfer are satisfied. The above-referenced class actions against Kia and Hyundai are based on the same or substantially similar questions of law and fact. In addition, transfer will promote the convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification. Indeed, because all of the actions assert complex, yet virtually identical claims and allegations requiring substantial discovery into highly technical aspects of Kia and Hyundai's manufacturing, testing, and sales procedures, they are ideal candidates for transfer for coordinated or consolidated pretrial proceedings.

**1.     The related actions involve common questions of fact.**

The first requirement of Section 1407 — that actions involve common questions of fact — is satisfied. The factual issues to be determined in each of the actions proposed for transfer and coordination arise from the same course of conduct by Kia and Hyundai and are, therefore,

identical for pretrial purposes. *See In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004). Common questions of fact and law at issue in the related actions include, but are not limited to, the following:

   a. whether each Covered Vehicle was sold with the defect;

   b. whether Kia and Hyundai knew about the defect, and if so, how long they have known about the defect;

   c. whether Kia and Hyundai failed to disclose and/or concealed the defect;

   d. whether the defect in the Covered Vehicles is a safety and/or security defect that created a foreseeable risk of harm to putative class members;

   e. whether Kia and Hyundai breached implied warranties made to putative class members;

   f. whether the defect reduces the value of the Covered Vehicles;

   g. whether Kia and Hyundai's conduct violates state consumer protections statutes; and

   h. whether putative class members have suffered damages as a result of the Kia and Hyundai's conduct, and if so, the measure of such damage.

Even a cursory review of the pleadings reveals that the factual issues to be determined in each of the actions are nearly identical, making transfer to a single forum highly appropriate.[4]

**2.     Consolidating the class actions will further the convenience of the parties and the witnesses.**

Consolidation of the related class actions would likewise satisfy the second requirement of

---

[4] *See In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004) (finding existence of common issues to warrant transfer where "[a]ll actions are purported class actions involving allegations that common defendants have engaged in the illegal promotion and sale of the drug Nuerontin"); *In re Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) ("Common factual questions arise because these actions focus on alleged side effects of ephedra-containing products, and whether defendants knew of these side effects and either concealed, misrepresented or failed to warn of them.").

Section 1407 because it will serve the convenience of the parties and witnesses. Discovery in all of the Related Actions will necessarily focus on documents, witnesses and other evidence pertaining to Kia and Hyundai's testing and development of the Covered Vehicles and decision not to include immobilizer technology, and Kia and Hyundai's knowledge of problems regarding the ease with which thieves could steal the Covered Vehicles without immobilizer technology. These subjects are complex and highly technical and will require substantial discovery and entail significant expense. Because these actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Additionally, *McNerney* Plaintiffs anticipate additional actions will be filed as more Covered Vehicles are stolen and additional press coverage of those thefts affect insurance rates.[5] Coordination of the actions would enable a single District Judge to establish a single pretrial schedule, thereby minimizing inconvenience to witnesses and expense to parties.

### 3. Transfer and consolidation will promote just and efficient conduct of the related actions.

For these same reasons, transfer and coordination would also promote the just and efficient adjudication of the Related Actions. The Related Actions all raise common questions of fact and law. Plaintiffs in each action will likely seek to depose many of the same individuals and request production of a substantially similar set of documents. Failure to consolidate these actions would, therefore, result in unnecessary and duplicative discovery; witnesses would have to appear for multiple depositions and Kia and Hyundai would have to negotiate and produce multiple sets of overlapping documents. Consolidation and coordination of the actions would avoid this needless

---

[5] The rate at which the Covered Vehicles are being stolen is so high that certain auto insurance companies are either refusing to insure the Covered Vehicles or have raised their rates to insure a Covered Vehicle. *See* https://www.theautopian.com/progressive-reportedly-wont-insure-some-kias-and-hyundais-because-theyre-too-easy-to-steal/ (last accessed August 31, 2022).

waste of resources and confer benefits upon both the plaintiffs as well as Kia and Hyundai, the common defendants to all of the actions. *See In re Univ. Serv. Fund Tel. Billing Prac. Litig.*, 209 F. Supp. 2d 1385, 1386 (J.P.M.L. 2002).

Also, the fact that nearly all actions seek to certify overlapping nationwide classes opens the possibility of inconsistent rulings on certification issues and weighs heavily in favor of transfer and consolidation. Lastly, the defects at issue are complex and highly technical and will necessarily require extensive use of experts and a substantial amount expensive discovery. *See In re Clark Oil & Refining Corp. Antitrust Litig.*, 364 F. Supp. 458, 459 (J.P.M.L. 1973) (ordering consolidation of two actions because "the greater complexity of factual issues presented here and the presence of competing requests for class designation distinguish this litigation from the Scotch Whiskey cases and make transfer necessary in order to avoid duplication of discovery and eliminate the possibility of conflicting pretrial rulings."); *In re Nissan Motor Corp. Antitrust Litig.*, 352 F. Supp. 960, 961 (J.P.M.L. 1973) (similar). To avoid the possibility of inconsistent rulings (including inconsistent determinations on class certification) and duplicative discovery, as well needless taxation on the judicial system, the actions should be consolidated before the same court. *See Neurontim*, 342 F. Supp. 2d at 1351; *Ephedra,* 314 F. Supp. 2d at 1375; *In re European Rail Pass Antitrust Litig.*, MDL No. 1386, 2001 WL 587855, at *1 (J.P.M.L. Feb. 7, 2001) (transferring related actions to single district to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").

**B.** **The Related Actions Should Be Transferred to the Central District of California for Coordinated or Consolidated Pretrial Proceedings Before the Honorable Cormac Carney**

In selecting a transferee district, this Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site

of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL ON COMPLEX LITIGATION § 20.131 (4th ed. 2004). The balance of these factors weigh in favor of transferring the related cases to Judge Carney in the Central District of California.

The 16 cases that have been filed to date are filed in 14 judicial districts. No district has more pending cases than the Central District of California. Therefore, this factor weighs in favor of the Central District of California. The next factor, where discovery has occurred, favors no district because to the best of counsel's knowledge, no discovery has taken place in any Related Case at this point. While it is true that this Panel sometimes transfers actions to the court where a related action is the most procedurally advanced, the Wisconsin action is still at the motion to dismiss stage and is uniquely focused on Wisconsin law. *See, e.g., In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 484 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) (selecting the Central District of California, noting that the California action was broader). All other Related Cases were filed virtually simultaneously and nothing substantive has taken place in any of the cases.

All other important considerations weigh in favor of transferring the Related Actions to the Central District of California. Here, although there is no singular geographical focal point for this litigation — Kia and Hyundai sold Covered Vehicles across the nation — both Kia and Hyundai have their headquarters in the Central District of California (where most of the discovery will necessarily focus). Not surprisingly, for this reason, the Central District of California was recently chosen for another MDL involving Kia and Hyundai. *See ZF-TRW*, 410 F. Supp. 3d at 1360. This Panel has frequently highlighted the importance of factors such as the defendant's location, the locations of relevant documents, the centrality of the location for the convenience of the parties

and the location of witnesses, and the skill and experience of the trial judge. *See id.* ("Hyundai Motor America, Inc., and Kia Motors America, Inc. are headquartered in that district, and relevant documents and witnesses likely will be found there"); *In re Kaplan Higher Educ. Corp. qui tam Litigation*, 626 F. Supp. 2d 1323, 1324 (J.P.M.L. 2009) ("We are persuaded that the Southern District of Florida is an appropriate transferee forum. The Southern District of Florida is where witnesses and documents may be found, inasmuch as Kaplan maintains a headquarters and a place of business there."); *In re Chocolate Confectionary Antitrust Litig.*, 542 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) (similar).

Each of these factors support the Central District of California as the transferee district, where the cases can be managed by Judge Carney, a respected jurist with experience handling automotive MDLs. *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices, and Prods. Liab. Litig.,* 732 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (transferring and assigning cases "to the Honorable Cormac J. Carney for coordinated or consolidated pretrial proceedings"). Notably, Judge Carney is not currently overseeing an MDL. Moreover, the Central District of California and surrounding region are serviced by multiple airports and all major airlines, and would be accessible and convenient for all parties, witnesses, and attorneys.

## IV.     CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Panel transfer the Related Actions listed in the Schedule of Actions attached as Exhibit A and any subsequently filed cases raising similar claims to the Central District of California for coordinated pretrial proceedings before the Honorable Cormac Carney.

Dated:  August 31, 2022

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Steve W. Berman*
Steve W. Berman
Sean R. Matt
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
christopherp@hbsslaw.com

Jeffrey S. Goldenberg
Todd Naylor
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45249
Tel: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

Joseph M. Lyon, Esq.
THE LYON FIRM, LLC
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011
jlyon@thelyonfirm.com

*Attorneys for McNerney Plaintiffs*