# Exhibit 15

**Query     Reports     Utilities     Help     Log Out**

# U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (Houston)
## CIVIL DOCKET FOR CASE #: 4:22-cv-02603

Bodie et al v. Kia America, Inc. et al
Assigned to: Judge David Hittner
Cause: 15:2301 Magnuson-Moss Warranty Act

Date Filed: 08/04/2022
Jury Demand: Plaintiff
Nature of Suit: 355 Motor Vehicle Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Jon Bodie**

represented by **Andrew K Smith**
Humphrey, Farrington & McClain
221 W. Lexington
Suite 400
Independence, MO 64051
816-836-5050
Email: aks@hfmlegal.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin Daniel Stanley**
Humphrey, Farrington & McClain
221 W. Lexington
Suite 400
Independence, MO 64051
816-836-5050
Fax: 816-836-8966
Email: kds@hfmlegal.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Mesle Soper**
Humphrey, Farrington & McClain, P.C.
221 W Lexington Ave
Suite 400
Independence, MO 64051
816-836-5050
Email: jms@hfmlegal.com
*ATTORNEY TO BE NOTICED*

**Victoria Nikki Lui**
Baker & Patterson LLP
3100 Richmond Ave
Ste 550
Houston, TX 77098
713-623-8116

Email: vlui@bakpatlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Albert Lui**            represented by   **Andrew K Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin Daniel Stanley**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Mesle Soper**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai Motor America**

**Defendant**

**Hyundai Kia America Technical Center, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/04/2022 | 1 | COMPLAINT against All Defendants (Filing fee $ 402 receipt number ATXSDC-28572059) filed by Jon Bodie.(Lui, Victoria) (Entered: 08/04/2022) |
| 08/05/2022 | 2 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 10/18/2022 at 10:30 AM by video before Magistrate Judge Peter Bray. (Signed by Judge David Hittner) Parties notified.(ShannonHolden, 4) (Entered: 08/05/2022) |
| 08/08/2022 | 3 | First MOTION for Jonathan M. Soper to Appear Pro Hac Vice by Jon Bodie, Albert Lui, filed. Motion Docket Date 8/29/2022. (Attachments: # 1 Exhibit Certificate of Good Standing)(Soper, Jonathan) (Entered: 08/08/2022) |
| 08/09/2022 | 4 | ORDER granting 3 Motion for Jonathan M. Soper to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 08/10/2022) |
| 08/10/2022 | 5 | CERTIFICATE OF INTERESTED PARTIES by Jon Bodie, filed.(Lui, Victoria) (Entered: 08/10/2022) |

| 08/16/2022 | 6 | MOTION for Andrew K. Smith to Appear Pro Hac Vice by Jon Bodie, filed. Motion Docket Date 9/6/2022. (Attachments: # 1 Exhibit Cert of Good Standing - NE, # 2 Exhibit Cert of Good Standing - MO)(Lui, Victoria) (Entered: 08/16/2022) |
|---|---|---|
| 08/18/2022 | 7 | ORDER granting 6 Motion for Andrew K. Smith to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 08/19/2022) |
| 08/25/2022 | 8 | MOTION for Kevin D. Stanley to Appear Pro Hac Vice by Albert Lui, filed. Motion Docket Date 9/15/2022. (Lui, Victoria) (Entered: 08/25/2022) |
| 08/25/2022 | 9 | MOTION for Kevin D. Stanley to Appear Pro Hac Vice by Jon Bodie, filed. Motion Docket Date 9/15/2022. (Lui, Victoria) (Entered: 08/25/2022) |
| 08/26/2022 | 10 | ORDER granting 8 Motion for Kevin D. Stanley to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**; granting 9 Motion for Kevin D. Stanley to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 08/26/2022) |

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

Jon Bodie       )
906 Calder Court     )
Anna TX, 75409     )
On behalf of himself    )
and all others similarly situated, )
           )
And         )
           )
Albert Lui       )
9611 Tarragon Ln     )
Houston TX, 77036    )
On behalf of himself    )
and all others similarly situated )
           )
           )  Demand for Jury Trial
           )  Case No.
           )
    *Plaintiffs*,    )  COMPLAINT – CLASS ACTION
           )
v.           )
           )
Kia America, Inc.,     )
111 Peters Canyon Rd.   )
Irvine, CA 92606     )
           )
And         )
           )
Hyundai Motor America   )
10550 Talbert Ave.     )
Fountain Valley, CA 92708  )
           )
And         )
           )
Hyundai Kia America    )
Technical Center, Inc.    )
6800 Geddes Rd.     )
Superior Township, MI 48198 )
           )
           )
           )
    *Defendants*.    )

## CLASS ACTION COMPLAINT &
## DEMAND FOR JURY TRIAL

Comes now Plaintiffs, individually and on behalf of all other persons similarly situated, for their complaint for damages against Defendants Kia America, Inc, Hyundai Motor America, and Hyundai Kia America Technical Center, Inc. (collectively, "Defendants").

## NATURE OF ACTION

1.      This is a class action claim arising from a defect in Defendants' vehicles which make them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

2.      Defendants did not disclose this defect, which is a material fact, and a fact that a reasonable person would rely on when purchasing a vehicle.

3.      During the relevant class period, Defendants sold these Defective Vehicles (as defined below) at multiple locations throughout the state of Texas and the United States.

4.      During the relevant class period, Defendants manufactured, designed, and put into the stream of commerce the Defective Vehicles.

5.      Defendants did so without disclosing the fact that these vehicles had a defect which made them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

6. Even now, Defendants admit there is a theft and safety problem with these vehicles but refuse to fix them, compensate consumers, or otherwise take actions to solve the problems their Defective Vehicles are causing.

## **PARTIES**

7. Plaintiff Bodie is a resident and citizen of the state of Texas.

8. Plaintiff Lui is a resident and citizen of the state of Texas.

9. Plaintiffs bring this action on their own behalf and as representatives of a class of persons who purchased and/or own a Defective Vehicle that was manufactured, produced, distributed, and/or sold by Defendants.

10. This matter arises out of negligent acts, errors, and omissions committed by the Defendants against Plaintiffs causing Plaintiffs and the putative class to suffer damages.

11. Plaintiffs bring this action on their own behalf and as representatives of a class of similarly situated persons to recover damages for violations of Texas Deceptive Trade Practices Act, Texas Business and Commerce Code, § 17.41 *et seq.*, the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.,* among other claims, for economic and injunctive relief against Defendants which manufactured, designed, tested, distributed, promoted and sold the Defective Vehicles.

12. At the time the vehicles were purchased, Plaintiffs were unaware that the vehicle was defective and that it was not fit for the ordinary purposes for which the product is used in that it is easy to steal, unsafe, and worth less than it should be if it did not have the defect.

13.     Specifically, Plaintiff Bodie purchased a 2012 Hyundai Santa Fe at a Carmax in San Antonio in 2018; a 2015 Kia Soul at BMW of Austin in 2017; and a 2016 Kia Soul at Maxwell Dodge in Austin in 2018, for personal, family, or household use.

14.     Specifically, Plaintiff Lui purchased a 2016 Kia Sorento at Fort Bend Kia in 2015, for personal, family, or household use.

15.     Plaintiffs, on behalf of themselves and the putative class, seek a refund for monies paid as a result of their purchase of the Defective Vehicles, compensation for other losses incurred as a result of the defect, and further seeks injunctive relief, enjoining Defendants from selling the Defective Vehicles, and requiring Defendants to fix the defect.

16.     On information and belief, Defendant, Kia America, Inc., is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

17.     On information and belief, Defendant, Hyundai Motor America, is a California corporation that maintains its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Defendant Hyundai Motor America is engaged in the business of testing, developing, manufacturing, labeling, marketing,

distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

18.     On information and belief, Defendant, Hyundai Kia America Technical Center, Inc., is a Michigan corporation that maintains its principal place of business at 6800 Geddes Road, Superior Township, Michigan 48198. Defendant Hyundai America Technical Center, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiffs bring this action on behalf of a class which numbers in the thousands, (2) Plaintiffs (Texas) and Defendants (California and Michigan) are citizens of different states, and (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d). Plaintiffs are bringing a putative nationwide class that includes all people that purchased a Defective Vehicle. On information and belief, Defendants have sold thousands of Defective Vehicles throughout Texas and the United States, totaling millions upon millions of dollars in sales.

20.     This Court has personal jurisdiction over Defendants in that Defendants transact business within the state of Texas and committed one or more tortious acts within the state of Texas.

21.     Defendants transacted business and/or committed tortious acts within the state of Texas. Defendants design, manufacture, distribute, and/or sell dangerous and/or defective vehicles in Texas. Defendants placed the Defective Vehicles and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Texas from which Plaintiffs' claims arise.

22.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that the purchase of the Defective Vehicle by Plaintiffs took place in Texas.

23.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendants have caused harm to Class Members residing in this district, and/or because the Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

24.     The Defective Vehicles made the subject of this suit, which are manufactured, designed, produced, distributed, and sold by Defendants, are easy to steal, unsafe, and worth less than they would be if they did not have the defect.

25.     Defendants manufacture, design, produce, distribute and sell the "Defective Vehicles," which are hereby defined as: "all Kia models from 2011-2021, and all Hyundai models from 2011-2021." All these vehicles share the same defects,

and therefore an owner of any one of them may bring a class action on behalf of the entire class.

26.    Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiffs, in Defendants' advertising, labeling or otherwise that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

27.    One of the reasons why these vehicles are stolen so easily is that the vehicles do not comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114. FMVSS 114, S.5.1.1 requires:

> Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:
>
> (a) The normal activation of the vehicle's engine or motor; and
>
> (b) Either steering, or forward self-mobility, of the vehicle, or both.

28.    The Defective Vehicles do not comply with this FMVSS in that when the key is removed from the starting system, neither steering nor forward self-mobility is prevented. If it were, the vehicles would not be stolen at alarming rates.

29.    A stolen vehicle cannot provide reliable transportation.

30.    A stolen vehicle is not a safe vehicle.

31.    A vehicle that can be too easily stolen is not a vehicle that can be depended on to provide reliable transportation.

32.    A vehicle that can be too easily stolen is not a safe vehicle.

33. The vehicles are defective in that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

34. This means that all a thief needs to do is strip the ignition column, exposing a piece that pops off, and then stick a USB drive, a knife, or some other similar tool to start the vehicle without a key or code.

35. Once they do so, they can freely operate the vehicle, including the vehicle's steering and forward self-mobility.

36. Considering how many people charge their cell phones in their cars, the necessary instrument needed to steal a Defective Vehicle is usually readily available to any thief.

37. Additionally, on information and belief, some of the Defective Vehicles' windows are not connected to the security system which thus allows a thief to break the window without the alarm being triggered.

38. Defendants knew their vehicles were defective in this manner but failed and refused to disclose these defects to customers, despite having the capability and means to do so.

39. Defendants had the capability and means to add an engine immobilizer or similar device, yet they failed to do so.

40. Defendants also knew just how dangerous it was to not have an engine immobilizer.

41. Beginning in 2009, Kia sought to add an immobilizer to its Amanti line. It told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. *See,* Federal Register, Vol. 75, No. 6, page 1448, January 11, 2010.

42. Likewise, beginning in 2007, Hyundai sought to add an immobilizer to its Azera line. It told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. *See,* Federal Register, Vol. 72, No. 138, page 39662, July 19, 2007.

## CLASS ACTION ALLEGATIONS

43. Plaintiffs bring this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of themselves and the following class of similarly situated persons:

   a. A "Nationwide Class" based on claims of unjust enrichment, violations of the Magnuson Moss Warranty Act, and/or breach of express and/or implied warranty consisting of all customers who purchased any of the Defective Vehicles in the United States within the past five years; or

   b. A "Nationwide Class" based on claims of unjust enrichment, negligence, and design defect consisting of all consumers who own any of the Defective Vehicles in the United States; or

   c. A "Texas Sub-Class" based on claims brought under the Texas Deceptive Trade Practices Act ("TDTPA") and for unjust enrichment,

and/or breach of implied and/or express warranty consisting of all persons who purchased any of the Defective Vehicles in the state of Texasy for personal, family, business, or household purposes within the applicable statute of limitations period; or

d. A "Texas Sub-Class" based on claims of unjust enrichment, negligence, and design defect consisting of all consumers who own any of the Defective Vehicles in Texas.

44. Excluded from each Class or Sub-Class is Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from the Class or Sub-Class are those claiming they have suffered a personal injury as result of the Defective Vehicles, as well as residents of Wisconsin.

45. Each of the proposed Nationwide Class or Texas Sub-Class meets all requirements for class certification. The Class or Sub-Classes satisfy the numerosity standards. The Class or Sub-Classes are believed to number in the thousands of persons. As a result, joinder of all Class or Sub-Class Members in a single action is impracticable. Class or Sub-Class Members may be informed of the pendency of this Class Action by, among other methods, direct, published and/or broadcast notice.

46. There are questions of fact and law common to the Nationwide Class or Texas Sub-Class which predominate over any questions affecting only individual

members. The questions of law and fact common to the Class or Sub-Class arising from Defendants' actions include, without limitation, the following:

a.  Whether Defendants manufactured and designed the Defective Vehicles without engine immobilizers;

b.  Whether the failure of the vehicles to, among other design failures, have engine immobilizers makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers

c.  Whether the absence of an engine immobilizer, among other design failures, is a material fact in the purchasing of a vehicle;

d.  Whether, in marketing and selling the Defective Vehicles, Defendants failed to disclose the lack of an engine immobilizers and other design failures;

e.  Whether Defendants failed to disclose and/or concealed the material fact that the Defective Vehicles, among other things, did not have engine immobilizers;

f.  Whether Defendants failed to warn adequately of the dangers of vehicles that do not contain engine immobilizers, among other things;

g.  Whether Defendants knew or should have known that the Defective Vehicles did not have engine immobilizers, among other things;

h.  Whether Defendants knew or should have known that the failure of the vehicles to have engine immobilizers, among other things, makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers;

i.  Whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding its knowledge of the defects' dangerous nature and risks of harm;

j.  Whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Defective Vehicles from the consuming public;

k.  Whether the Defective Vehicles are fit for their ordinary purposes;

l.  Whether the Defective Vehicles proved reliable transportation;

m.  Whether the Defective Vehicles are safe;

n.  Whether the Defective Vehicles contain a design defect;

o.  Whether Defendants' conduct violated the TDTPA; and/or

p.  Whether Defendants' conduct violated the Magnuson Moss Warranty Act.

47.  The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

48.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members or Sub-Class Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Nationwide Class Members or Texasy Sub-Class Members to protect their interests.

49.     The claims of Plaintiffs are typical of the claims of members of the Nationwide Class and the Texas Sub-Class. Upon information and belief, the Defective Vehicles all share the same defects. Upon information and belief, the labels, manuals, advertising, and disclosures concerning the Defective Vehicles all fail to reasonably disclose the presence of these defects. Therefore, the information withheld by Defendants from Plaintiffs and all Nationwide Class or Texas Sub-Class members was identical.

50.     Plaintiffs are adequate representatives of the Nationwide Class and Texas Sub-Class because they are a member of both Classes and their interests do not conflict with the interests of the members of the Nationwide Class or Texas Sub-Class they seeks to represent. The interests of the members of the Nationwide Class or Texas Sub-Class will be fairly and adequately protected by the Plaintiffs and the undersigned counsel, who have extensive experience prosecuting complex class action litigation.

51.     Plaintiffs seek a refund of some or all monies paid as a result of the purchase of the Defective Vehicles that occurred following Defendants' wrongful and

improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Vehicle.

52.     Plaintiffs also seek compensation for damages incurred beyond the reduced value of the vehicles, including but not limited to the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

53.     Plaintiffs specifically exclude from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Vehicle based on the defects.

54.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Nationwide Class or Texas Sub-Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Texas Sub-Class Members.

55.     Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

56.     Class action treatment is appropriate in this case because Defendants acted, or refused to act, in a manner that was generally applicable to – and often identical to – each member of the Nationwide Class or Sub-Class. Defendants provided vehicles with the same defect to, and withheld the same information from, all members of the Nationwide Class or Texas Sub-Class and sold vehicles with the same defects.

57.     Notice can be provided to Class Members or Sub-Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

## CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

58.     Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

59.     The acts and practices engaged in by Defendants, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the TDTPA, Texas Business and Commerce Code, § 17.41, *et seq*.

60.     The TDTPA ("DTPA") prohibits false, misleading or deceptive acts and practices in connection with a trade or business.

61.     Plaintiffs and Texas Class Members are "consumers" within the meaning of § 17.54(4) of DTPA in that they are individuals who acquired by purchase the goods or products that form the basis of this case and suffered damages for which they did not receive compensation from any third party, person, or entity.

62.     Plaintiffs and Texas Class Members seek to recover damages against each Defendant under DTPA, § 17.41 et seq, because Defendants knowingly and/or intentionally breached their implied warranties with respect to the 303 THF Products and also engaged in false, misleading, or deceptive acts or practices in the conduct of their trade of business, as set forth above and in general by concealing or otherwise failing to disclose, reveal, or provide notice to customers, including Plaintiffs, in Defendants' advertising, labeling or otherwise that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective. Defendants also represented that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

63.     These representations were materially misleading and deceptive, and were a producing cause of economic damages to consumers, including Plaintiffs and Class members.

64.     Defendants' actions as described herein were done knowingly with conscious disregard of Plaintiffs' rights, and Defendants was wanton and malicious in their concealment of the same.

65.     Neither Plaintiffs nor any reasonable consumer would have purchased the Defective Vehicles, or at least not for the price bargained for, had they known the truth about these vehicles.

66.     Defendants have been provided notice of these issues by complaints filed against them, including the instant complaint, and, upon information and belief, by numerous communications sent by customers before or within a reasonable amount of time after the allegations of vehicle defects became public.

67.     Notice should be deemed unnecessary in light of Defendants' refusal to take corrective action despite the notice as described above.

WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT

68.     Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

69.     Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class.

70.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

71.     The Defective Vehicles are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

72.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

73. Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

74. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

75. Defendants provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S. C. § 2301(7).

76. As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for the ordinary purpose of passenger motor vehicles, were not far easier to steal than other vehicles, and were not unsafe and/or unreliable due to the ease at which they can be stolen.

77. Defendants breached this implied warranty and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1) because, without limitation, the Defective Vehicles share common design defects, including that they lack engine immobilizers.

78. These defects render the Defective Vehicles deficient, in that they do not provide safe and reliable transportation, as they are tremendously easy to steal.

79. A stolen vehicle cannot provide reliable transportation.

80. A vehicle that is incredibly easy to steal cannot be relied on for transportation.

81.     A stolen vehicle is not a safe vehicle.

82.     A vehicle that is incredibly easy to steal is an unsafe vehicle.

83.     Defendants provided Plaintiffs and the other Class members with an express written warranty in connection with the purchase or lease of their vehicles, as described further below, that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

84.     Defendants made written affirmations of fact that the Defective Vehicles would be free of defects that would prevent ordinary use.

85.     Upon information and belief, Defendants affixed labeling and other written affirmations making specific, performance-related representations related to the nature of the Defective Vehicles, including expressly warranting that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

86.     Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

87.     Any efforts to limit the express and implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void. Any limitations on the express and implied warranties are procedurally

unconscionable. Defendants purposefully misrepresented the Defective Vehicles to consumers.

88.     Additionally, there was unequal bargaining power between Defendants, on the one hand, and Plaintiffs and the other Class members, on the other.

89.     Any limitations on the express and implied warranties are substantively unconscionable.

90.     Defendants knew that no engine immobilizers were installed on the Defective Vehicles, among other design failures, and that they were failing to disclose this material fact, thereby misrepresenting the safety, ease of theft, and value of the Defective Vehicles.

91.     Defendants failed to disclose the defects to Plaintiffs and the other Class members even though Defendants were aware of the defects.

92.     Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.

93.     Specifically, Plaintiffs and each of the other Class members are intended third-party beneficiaries of the implied and written warranties.

94.     The dealers and agents were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided for the Defective Vehicles: the warranty agreements were designed for and intended to benefit consumers.

95.     Finally, privity is also not required because the Defective Vehicles are unsafe and hazardous instrumentalities due to, among other matters, the lack of engine immobilizers.

96.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

97.     Furthermore, affording Defendants an opportunity to cure their breach of warranties would be unnecessary and futile.

98.     Defendants are aware of the problems, and even claim they have attempted to "fix" their 2022 vehicles to eliminate the safety defects described herein by including an immobilizer on all models and trim packages, but are refusing to do anything about the pre-2022 Defective Vehicles.

99.     At the time of sale or lease of each Defective Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

100.    Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and afford Defendants a

reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

101.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.

102.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

103.  Plaintiffs, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

104.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

105.  Additionally, Plaintiffs and each of the other Class members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1), including Defendants being required to fix these vehicles.

## COUNT III - UNJUST ENRICHMENT

106.  Plaintiffs re-alleges and incorporate herein all other allegations in this Complaint.

107.   Plaintiffs and the Nationwide Class and/or Texas Sub-Class members purchased vehicles that they would not have purchased had they known that the vehicles, among other defects, contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers.

108.   The Defendants were therefore unjustly enriched at the expense of and to the detriment of the Plaintiffs and the Class.

109.   Plaintiffs and the Nationwide Class and/or Texas Sub-Class are therefore entitled to restitution from the Defendants, and seek an order requiring the Defendants to disgorge all profits, benefits and other compensation the Defendants obtained from the sale of these products.

WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT IV – BREACH OF IMPLIED WARRANTY

110.   Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

111.   Defendants are merchants with respect to the sale of the Defective Vehicles purchased by Plaintiffs.

112.   Defendants, by selling the Defective Vehicles, impliedly warranted that the vehicles were merchantable with respect to goods of that kind.

113.   This warranty was assigned to Plaintiffs upon purchasing the vehicle.

114. The Defective Vehicles sold by Defendants and purchased by Plaintiffs did not conform with the implied promises made with respect to the labels and material that accompanied the product. Specifically, by failing to reasonably disclose the vehicles did not have engine immobilizers, Defendants implied that the Defective Vehicles were not far easier to steal than other vehicles, were thereby safe, and were worth as much as vehicles that possessed engine immobilizers.

115. As a result of having no engine immobilizer, among other defects, the Defective Vehicles were not merchantable and Defendants breached their implied warranty of merchantability with respect to the Defective Vehicles.

116. Had Plaintiffs known that the Defective Vehicles lacked an engine immobilizer, among other defects, making them far easier to steal, and were thereby unsafe and worth less than their sales price, they would not have purchased it or would have paid significantly less for the vehicle. As a result of Defendants' breach of implied warranty, Plaintiffs, and the Nationwide Class and/or Texas Sub-Class members have suffered economic injuries.

117. Defendants are being provided notice by receipt of demand made by Plaintiffs on behalf of themselves and the putative class through the filing of this Complaint. In addition, Defendants have actual notice of the defect.

WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT V – BREACH OF EXPRESS WARRANTY

118.   Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

119.   Defendants are and at all relevant times were merchants with respect to motor vehicles under U.C.C. § 2-313.

120.   Upon information and belief, in the course of selling its vehicles, Defendants expressly warranted in writing that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

121.   Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

122.   Due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under U.C.C. §§ 2-608 and 2-711.

123.   Defendants were provided notice of these issues by complaints filed against them, including the instant complaint, and, upon information and belief, by

numerous communications sent by customers before or within a reasonable amount of time after the allegations of vehicle defects became public.

124.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT VI – NEGLIGENCE

125.     Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

126.     Defendants designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Vehicles at issue.

127.     Defendants held themselves out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying, and selling the Defective Vehicles at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

128.     Defendants knew or should have known that the Defective Vehicles contained defects including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

129.     Defendants knew or should have known that the Defective Vehicles are incredibly easy to steal.

130.    As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Vehicles, Defendants had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its vehicles; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply its vehicles free from defects and/or latent defects; the duty to adequately warn of vehicle defects and/or hazards, which duty continued even after the sale of said vehicles; and the duty to market, advertise, sell and supply vehicles with adequate information and warnings about the unacceptable risk of theft their design failures create.

131.    Defendants failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiffs and the Nationwide Class and/or Texas Sub-Class members.

132.    Plaintiffs used these Defective Vehicles in a manner ordinarily anticipated by Defendant.

133.    As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Nationwide Class and/or Texas Sub-Class members have suffered economic injuries.

134. These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums Plaintiffs and Class members are facing or may face due to the design defect, and the stigma associated with the Defective Vehicles.

135. At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

136. Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

137. Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Nationwide Class and/or Texas Sub-Class members.

138. As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT VII STRICT LIABILITY, DESIGN DEFECT

139. Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

140. Defendants designed, manufactured, and/or supplied the Defective Vehicles in question within the ordinary course of its business.

141. Plaintiffs purchased and own a Defective Vehicle.

142. The Defective Vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the Defective Vehicles are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

143. Defendant knew or should have known of the dangerous and defective nature of the Defective Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

144. Notwithstanding, Defendants failed to take safety precautions to prevent economic injury to Plaintiffs and failed to warn and/or instruct Plaintiffs and others of the defective and unreasonably dangerous nature of said vehicles.

145. Defendant's defective and unreasonably dangerous vehicles directly and proximately caused economic injuries to Plaintiffs and the Nationwide Class and/or Texas Sub-Class members.

146. Plaintiffs drive the vehicle(s) and then park it and leave it unattended, which is a manner of use reasonably anticipated by Defendants.

147. As a result of the Defective Vehicles' defect, which make them incredibly easy to steal, they are unreasonably dangerous and defective when put to the use anticipated by Defendants.

148. As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Nationwide Class and/or Texas Sub-Class members have suffered economic injuries.

149. These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle without that is not defective. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums Plaintiffs and Class member are facing or may face due to the design defect, and the stigma associated with the Defective Vehicles.

150. At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

151. Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

152. Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Nationwide Class and/or Texas Sub-Class members.

153. At the time of Defendants' design, manufacture, processing, distribution, sale and/or use of the Defective Vehicle, Defendants knew of the dangerous condition of said vehicles and supplied them with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendants specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Vehicles' safety features. Defendants' conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Nationwide Class and/or Texas Sub-Class.

WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request relief and judgment against Defendants as follows:

a.      That the Court enter an order certifying the Class, appointing Plaintiffs as representatives of the Nationwide Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b.      Alternatively, that the Court enter an order certifying the Texas Sub-Class, appointing Plaintiffs as representatives of the Texas Sub-Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Texas Sub-Class;

c.      For a judgment against Defendants for the causes of action alleged against it;

d.      For damages in an amount to be proven at trial;

e.      For appropriate injunctive relief, enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles;

f.      For attorney's fees;

g.      For Plaintiffs' costs incurred; and

h.      For such other relief in law or equity as the Court deems just and proper.

## DESIGNATION AND DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated August 4, 2022

Respectfully submitted,


BAKER & PATTERSON, L.L.P.


By:   ___*/s/ Kenneth C. Baker*_____
      KENNETH C. BAKER
      State Bar No. 01584480
      kbaker@bakpatlaw.com
      VICTORIA LUI
      State Bar No. 24099322
      vlui@bakpatlaw.com
      3100 Richmond Avenue, Suite 550
      Houston, Texas 77098
      Telephone:     (713)623-8116
      Facsimile:     (713)623-0290

      And

      Kenneth B. McClain      (*Pro Hac Vice pending*)
      Jonathan M. Soper       (*Pro Hac Vice pending*)
      Kevin D. Stanley        (*Pro Hac Vice pending*)
      Chelsea M. Pierce       (*Pro Hac Vice pending*)
      Andrew K. Smith         (*Pro Hac Vice pending*)

      Humphrey, Farrington & McClain, P.C.
      221 West Lexington Ave., Ste. 400
      Independence, MO 64051
      (816) 836-5050
      (816) 836-8966 –fax
      kbm@hfmlegal.com
      jms@hfmlegal.com
      kds@hfmlegal.com
      cmp@hfmlegla.com
      aks@hfmlrgal.com

      **ATTORNEYS FOR PLAINTIFFS**