# EXHIBIT 1

**Query**    **Reports**      **Utilities**      **Help**    **Log Out**

ACCO

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
# CIVIL DOCKET FOR CASE #: 8:22-cv-01712

| | |
|---|---|
| BAKER et al v. KIA AMERICA, INC., a California Corporation et al | Date Filed: 09/16/2022 |
| Assigned to: | Jury Demand: Plaintiff |
| Case in other court: Orange County Superior Court, 30-02022-01277337 | Nature of Suit: 370 Other Fraud |
| Cause: 28:1332 Diversity-Fraud | Jurisdiction: Diversity |

**Plaintiff**

**MONIQUE E. BAKER**                        represented by   **MONIQUE E. BAKER**
                                                          PRO SE

**Plaintiff**

**STEPHEN L. DESJARDINS**                   represented by   **STEPHEN L. DESJARDINS**
                                                          PRO SE

V.

**Defendant**

**KIA AMERICA, INC., a California**          represented by   **Kate Spelman**
**Corporation**                                            Jenner and Block LLP
                                                          515 South Flower Street Suite 3300
                                                          Los Angeles, CA 90071-2246
                                                          213-239-5100
                                                          Fax: 213-239-5199
                                                          Email: KSpelman@jenner.com
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**HYUNDAI MOTOR AMERICA, a**                represented by   **Kate Spelman**
**California Corporation**                                 (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2022 | 1 | NOTICE OF REMOVAL from Orange County Superior Court, case number 30-2022-01277337 Receipt No: ACACDC-34001880 - Fee: $402, filed by Defendant HYUNDAI MOTOR AMERICA, a California Corporation, KIA |

| | | |
|---|---|---|
| | | AMERICA, INC., a California Corporation. (Attorney Kate Spelman added to party HYUNDAI MOTOR AMERICA, a California Corporation(pty:dft), Attorney Kate Spelman added to party KIA AMERICA, INC., a California Corporation(pty:dft))(Spelman, Kate) (Entered: 09/16/2022) |
| 09/16/2022 | 2 | CIVIL COVER SHEET filed by Defendants HYUNDAI MOTOR AMERICA, a California Corporation, KIA AMERICA, INC., a California Corporation. (Spelman, Kate) (Entered: 09/16/2022) |
| 09/16/2022 | 3 | CERTIFICATION AND NOTICE of Interested Parties filed by Defendants HYUNDAI MOTOR AMERICA, a California Corporation, KIA AMERICA, INC., a California Corporation, identifying Kia America, Inc., Defendant / Hyundai Motor America, Defendant / Kia Corporation, Defendant Kia America, Inc.s parent / Hyundai Motor Company, Defendant Hyundai Motor Americas parent / Monique E. Baker, Plaintiff / Stephen L. DesJardins, Plaintiff. (Spelman, Kate) (Entered: 09/16/2022) |
| 09/16/2022 | 4 | CERTIFICATION AND NOTICE of Interested Parties filed by Defendant HYUNDAI MOTOR AMERICA, a California Corporation, identifying Kia America, Inc., Defendant / Hyundai Motor America, Defendant / Kia Corporation, Defendant Kia America, Inc.s parent / Hyundai Motor Company, Defendant Hyundai Motor Americas parent / Monique E. Baker, Plaintiff / Stephen L. DesJardins, Plaintiff. (Spelman, Kate) (Entered: 09/16/2022) |
| 09/16/2022 | 5 | NOTICE of Related Case(s) filed by Defendants HYUNDAI MOTOR AMERICA, a California Corporation, KIA AMERICA, INC., a California Corporation. Related Case(s): 8:22-cv-01440, 8:22-cv-01548, 8:22-cv-01664, 8:22-cv-01674, (Spelman, Kate) (Entered: 09/16/2022) |
| 09/16/2022 | 6 | PROOF OF SERVICE filed by Defendants HYUNDAI MOTOR AMERICA, a California Corporation, KIA AMERICA, INC., a California Corporation, re Civil Cover Sheet (CV-71) 2 , Certificate/Notice of Interested Parties, 4 , Certificate/Notice of Interested Parties, 3 , Notice of Removal (Attorney Civil Case Opening), 1 , Notice of Related Case(s) 5 served on September 16, 2022. (Spelman, Kate) (Entered: 09/16/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/19/2022 08:28:14 | | |
| **PACER Login:** | jb0014 | **Client Code:** | 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** | 8:22-cv-01712 End date: 9/19/2022 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Trenton R. Kashima (SBN 291405)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (212) 946-9389
tkashima@milberg.com

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 South Beverly Drive
Beverly Hills, California 90212
Tel: (858) 209-6941
jnelson@milberg.com

*Attorneys for Plaintiffs and the Class*

[Additional counsel listed on signature page]

Assigned for All Purposes

Judge Glenda Sanders

CX-101

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| **MONIQUE E. BAKER** and **STEPHEN L. DESJARDINS**, *individually and on behalf of all others similarly situated*,<br><br>        Plaintiffs,<br><br>v.<br><br>**KIA AMERICA, INC.**, a California Corporation, and **HYUNDAI MOTOR AMERICA,** a California Corporation,<br><br>        Defendants. | Case No.: 30-2022-01277337-CU-NP-CXC<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.  Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*<br>2.  Violation of the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.*<br>3.  Breach of Expressed Warranty;<br>4.  Breach of Implied Warranty;<br>5.  Violation of Magnuson-Moss Warranty Act , 15 U.S.C. § 2301, *et seq.*<br>6.  Violation of the Michigan Consumer Protection Act, M.C.L. §§ 445.901, *et seq.*<br>7.  Violation of the Oklahoma Consumer Protection Act, 15 OK. Stat. § 15-751<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiffs Monique E. Baker and Stephen L. DesJardins ("Plaintiffs") brings this Class Action Complaint against Defendants Kia America, Inc. and Hyundai Motor America, (collectively "Defendants"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to his own acts and experiences and, as to all other matters, upon information and belief:

## INTRODUCTION

1.      This class action lawsuit is brought by Plaintiffs on behalf of all consumers who purchased or leased Defendants' Kia branded vehicles, model years 2011-2021, and Hyundai branded vehicles, model years 2011-2021 (the "Defective Vehicles").  Each of these Defective Vehicles suffer from a defect which makes them easy to operate without the corresponding key or key fob (a small electronic device used typically in place of a key to unlock a door or start a vehicle).  Because of this, the Defective Vehicles are easily stolen, and have been stolen at an alarming rate.

2.      The defect arises from Defendants' use of a USB interface within the vehicle ignition (the area where a key is normally inserted to start the vehicle): once a portion of the steering column is stripped away, a potential thieve needs only to insert any USB cable into the now exposed USB interface in the Defective Vehicles' ignition (the "Defect").  The USB cable does not have to be connected to any device, other than the vehicle.  This process only takes a few seconds and requires no specialized tools.

3.      Defendants did not disclose this Defect, even though Defendants were aware of the existence of the Defect.  Plaintiff and the Class would not have purchased or leased the Defective Vehicles or, alternatively, would have paid less, if the Defect had been disclosed.

4.      Plaintiffs and members of the Class were injured by Defendants' false, fraudulent, unfair, deceptive, and misleading practices.  Plaintiffs seeks compensatory damages and equitable remedies for himself and members of the Proposed Class.  Accordingly, Plaintiffs allege violations of the California False Advertising Law, the California Unfair Competition Law, the Michigan Consumer Protection Act, Oklahoma Consumer Protection Act, and the Magnuson-Moss Warranty Act ("MMWA"), as well as breaches of express and implied warranty.

CLASS ACTION COMPLAINT

**THE PARTIES**

5.      Plaintiff Monique E. Baker is a resident and citizen of Michigan.   Plaintiff Baker owes a 2020 Kia Rio, which she purchased from an authorized Kia dealer in Oklahoma City, Oklahoma in 2020.  Plaintiff Baker's Kia Rio was broken into while parked in her driveway. The car had damages resulting from the brake-in.  Plaintiff Baker reviewed information from Defendants' websites and at the dealer before purchasing her Kia Rio.  Plaintiff Baker was not aware of the Defect at the time of purchase.

6.      Plaintiff Stephen DesJardins is a resident and citizen of Michigan.     Plaintiff DesJardins owns a 2016 Kia Optima, which he purchased from an authorized Kia dealer in Dearborn, Michigan in 2017.  Plaintiff DesJardins's Kia Optima was stolen out of his son's driveway in Detroit, Michigan while he was visiting.  The car was later recovered with damage to the front and rear, a hole in the oil pan, and damage to the inside of the car.  Plaintiff DesJardins had to pay a $1,000.00 insurance deductible and other costs to get the car back and repaired. Because this was Plaintiff DesJardins's only car, its temporary loss was difficult, and forced Plaintiff to incur additional transportation costs.  Plaintiff DesJardins reviewed information from Defendants' websites and at the dealership before purchasing his Kia Optima.   Plaintiff DesJardins was not aware of the Defect at the time of purchase.

7.      Plaintiffs would not have purchased the car at issue had he known about the Defect.  Plaintiffs were injured by Defendants' fraudulent and deceptive practices.  Plaintiffs, and other consumers, paid a premium price for their vehicles due to the misrepresentations and omissions regarding the Defect.  Had Defendants been truthful regarding the Defect, Plaintiffs and other consumers would not have purchased the Products, or would have paid less for them.

8.      Defendant Kia America, Inc., is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606.  Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

9.      Defendant Hyundai Motor America, is a California corporation that maintains its

2

principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Defendant Hyundai Motor America is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

10.     Based on information and belief, Defendants designed and engineered the Defective Vehicles at their Hyundai Kia Motors Design and Technical Center based in Irvine, California.  Additionally, all marketing originated from Defendant's headquarters within Orange County, California.  Accordingly, Plaintiffs alleged that the Defect and all marketing related thereto, emanated from Orange County, California.

## JURISDICTION AND VENUE

11.     Constitution, California Business and Professions Code § 17203, Code of Civil Procedure §§ 382 and 410.10, and 15 U.S.C. § 2310(d)(1)(A).

12.     This Court has jurisdiction over Defendants because they are headquartered in the State of California, regularly conducts business in this County and has extensive contacts with this forum.  Defendants purposefully availed themselves to California's jurisdiction and designed, marketed, and distributed the Defective Vehicles from this County.

13.     Venue is proper in this Court pursuant to Code of Civil Procedure § 395 because Defendants are headquartered in this County and transacts substantial business here.

## FACTUAL ALLEGATIONS

14.     Defendants both are collectively engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles. Indeed, both Kia and Hyundai are significant shareholders in each other's companies and subsidiaries.  Accordingly, Kia and Hyundai often utilize each other's technology and engineering in their vehicles, including the Defective Vehicles.

15.     As noted above, the Defective Vehicles are able to be started without the key or key fob, which generally restricts access to the vehicle to only the owner.  Instead, the Defective Vehicles can be started with any USB cable, inserted into a USB interface contained within the

3

vehicle ignition.  This USB interface can be accessed with a trivial amount of time and effort. This Defect is only in vehicles with a traditional physical key ignition.

16.     Additionally, the Defective Vehicles are also targeted because they do not have safety features that would normally prevent these types of thefts.  The Defective Vehicles are not equipped with a factory-installed anti-theft device called an immobilizer. These immobilizers use a chip (called a transponder) to authenticate a key against a vehicle's Electronic Control Unit ("ECU").  The ECU is a computer that controls the vehicle, including the vehicle's powertrain. If the ECU does not detect the key, the vehicle will not start.

17.     Federal Motor Vehicle Safety Standard ("FMVSS") 114. FMVSS 114, S.5.1.1 requires that vehicles have a starting system that can only be activated with the key and prevents the normal activation of the vehicle's engine or motor and either steering, or forward self-mobility, of the vehicle, or both, when the key is removed.  This regulation was specifically enacted "to decrease the likelihood that a vehicle is stolen, or accidentally set in motion."  Yet, the Defective Vehicles can be started without a key.  This is a serious safety concern.

18.     Furthermore, it is reported thatsome of the windows are not connected to the security system which thus allows a thief to break the window without the alarm being triggered. All of these factors render the Defective Vehicles unsafe and unsuitable for their intended purpose.

19.     Indeed, thieves across the United States are eyeing the Defective Vehiclesas easy targets, thanks in part to viral social media posts.  YouTube videos and other social media posts show a step-by-step guide on how to start the Defective Vehicles with a USB cable.  Indeed, in most of these tutorials, potential thieves can fire up the vehicle and drive away in less than a minute.  In turn, this allows the Defective Vehicles to be started again at any time using the same cable.

20.     The Defect has caused so many thefts that police in Milwaukee have begun to hand out free steering wheel locks to owner of the Defective Vehicles.[1]  In Milwaukee alone, the

---

[1] https://www.jsonline.com/story/news/crime/2021/05/07/milwaukee-police-giving-away-steering-wheel-locks-kia-hyundai-owners/4987762001/.

4

Defective Vehicles represent up to two-thirds of all vehicle thefts in the city, and have increased up to 2,500 percent year over year.[2]

21.     Defendants knew about the Defect, based on the fact that they engineered the Defective Vehicles in question, and were provided reports by consumers and law enforcement regarding the thefts of the Defective Vehicles due to the Defect, and also based on information provided by authorized repair centers regarding the Defect.  Indeed, in the late 2000's, Defendants added immobilizers and other safety equipment to some of their vehicles and noticed a sharp decline in the thefts of these vehicles.   Nevertheless, Defendants continued to market the Defective Vehicles, with the Defect alleged herein.

22.     For example, beginning in 2009, Kia sought to add an immobilizer to its Amanti line. Kia told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. *See*, Federal Register, Vol. 75, No. 6, page 1448, January 11, 2010.  Similarly, beginning in 2007, Hyundai sought to add an immobilizer to its Azera line. It told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. *See*, Federal Register, Vol. 72, No. 138, page 39662, July 19, 2007.   Additionally, Defendants knew that the Defective Vehicles could be started with a USB cable, because they were specifically engineered with this common USB interface in the ignition.  Thus, Defendants had exclusive knowledge of the Defect.

23.     Defendants concealed or otherwise failed to disclose, reveal, or provide notice to consumers, including Plaintiffs, in Defendants' advertising, or otherwise, that the Defective Vehicles are defective and are not fit for the ordinary purposes for which the Defective Vehicles are to be used.  This marketing emanated from Defendants' California based headquarters.

24.     Defendants refuse to fix the Defective Vehicles, compensate consumers, or otherwise take measures to solve the problems with their Defective Vehicles.  This Defect causes Plaintiffs and the Class damages, including costs associated with theft of the Defective Vehicles, the diminished value of the Defective Vehicles due to the Defect, and the increased cost of

---

[2] https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kias-with-just-a-usb-cable.

CLASS ACTION COMPLAINT

maintaining the Defective Vehicles, including higher insurance costs. Indeed, the Defective Vehicles are now known to be easy to steal and unsafe, making them worth less than they would be if they did not have the Defect.

25. Defendants' 2022 model vehicles do not have the Defect.

26. Plaintiffs and Class Members would not have purchased or leased the Defective Vehicles or would have paid less for the Defective Vehicles if they were aware of the Defect. Accordingly, Plaintiffs and Class Members paid more than they would have otherwise paid had the Defect been disclosed. Defendants intended for Plaintiffs and the Class Members to be deceived or misled. Defendants' deceptive and misleading practices proximately caused harm to Plaintiffs and the Class.

## **TOLLING ALLEGATIONS**

27. Plaintiffs and Class Members had no way of knowing about the Defect in the Defective Vehicles and Defendants systematically misled Plaintiffs and Class Members concerning the Defective Vehicles. To this day, Defendants claim there is no defect in the Defective Vehicles.

28. Defendants have repeatedly and consistently misled Plaintiffs and the Class by engaging in extensive misdirection towards the Plaintiffs and the Class. Defendants knew about the Defect, as early as when the car was designed, but did nothing to disclose the Defect.

29. Additionally, the Defect is not readily apparent to the consumer. Plaintiffs and the Class would only know about the Defect if they dismantled their vehicles' steering columns and inserted USB cables into the exposed USB interfaces, or if their cars were stolen. Even then, they may not understand the nature of the Defect. Accordingly, the Defect may not be discovered until several years after the vehicle was purchased or leased.

30. Within the period of any applicable statutes of limitation, Plaintiffs and the other Class Members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Defect in the Defective Vehicles. It was only in 2022, when the Defect was subject to media attention, that consumers became aware of the Defect. But, by this point, Defendants had already removed the Defect from its vehicle lines.

CLASS ACTION COMPLAINT

31.     All applicable statutes of limitation have been tolled by operation of the discovery rule and due to Defendants' knowing and active fraudulent concealment.   Additionally, Defendants should be estopped from relying on any statutes of limitations in defense of this action.

## **CLASS ACTION ALLEGATIONS**

32.     Plaintiffs brings this action pursuant to Code of Civil Procedure, section 382, individually and on behalf of the following Class:

### **The National Class**

During the fullest period allowed by law, all persons in the United States who purchased or leased any of the Defective Vehicles for personal use.

### **The Michigan Subclass**

During the fullest period allowed by law, all persons who purchased or leased any of the Products for personal use within the State of Michigan.

### **The Oklahoma Subclass**

During the fullest period allowed by law, all persons who purchased or leased any of the Products for personal use within the State of Oklahoma.

Specifically excluded from the Class are Defendants, their officers, directors, agents, trustees, representatives, employees, principals, servants, partners, joint venturers or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or its officers and/or directors, the judge assigned to this action and any member of the judge's immediate family.

33.     Plaintiffs reserve the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses or otherwise modified in any way.

34.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

35.     The members of the Class are so numerous that individual joinder of all Class

CLASS ACTION COMPLAINT

Members is impracticable. On information and belief, Class Members number in the hundreds of thousands. The precise number or identification of members of the Class are presently unknown to Plaintiffs, but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

36.     Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

- Whether Defendants manufactured the Defective Vehicles with the Defect;

- Whether the Defect makes the Defective Vehicles easy to steal, unsafe, and worth less than they would be if they had not been Defective;

- Whether Defendants knowingly made misleading statements or omitted material information in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

- Whether the Defective Vehicles are subject to a written warranty;

- Whether the Defect is a breach of a written warranty;

- Whether the Defective Vehicles are fit for their intended use and are of merchantable quality;

- Whether Defendant's representations and omissions regarding the Defective Vehicles were false and misleading;

- Whether Defendants' acts and omissions violate California and/or Michigan law;

- Whether Defendants' acts and omissions violate federal law;

- Whether Plaintiffs and the Class Members suffered monetary damages, and, if so, what the measure of those damages is;

- Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the

8

amount and nature of such relief.

37.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members.  Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

38.     Plaintiffs' claims are typical of the claims of the other Class Members, as each Class Member was subject to the same omission of material fact and misrepresentations regarding the Defect in the Defective Vehicles.   Plaintiffs share the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendants' common course of conduct alleged herein.  Plaintiffs and all Class Members sustained monetary and economic injuries.

39.     Plaintiffs are adequate representatives of the Class because they are a member of the Class and their interests do not conflict with the interests of the Class Members they seeks to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation.  Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members.  Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and their counsel.

40.     Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants.

41.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

9

42.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct.  Even if Class Members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -
### (On behalf of Plaintiffs and the National Class)

43.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

44.     As more fully described above, Defendants misrepresented or omitted the true nature of the Defect.  Defendants' misleading marketing and advertising is likely to, and does, deceive reasonable consumers. Indeed, Plaintiffs were deceived about the Defect, as Defendants' marketing and advertising of the Defective Vehicles misrepresents and/or omits the true nature of the Defect. Said acts are fraudulent business practice and acts.

45.     Plaintiffs and other members of the Class who purchased or leased the Defective Vehicles suffered a substantial injury by virtue of buying a product that misrepresented and/or omitted the true nature of the Defect.  Had Plaintiffs and members of the Class known that Defendants' materials, advertisements and other inducements misrepresented and/or omitted the true nature of the Defect, they would not have purchased or leased the Defective Vehicles.

46.     Defendants' actions alleged herein violate the laws and public policies of California, Michigan, and the federal government, as set out in this Complaint.

CLASS ACTION COMPLAINT

47.     There is no benefit to consumers or competition by allowing Defendants to deceptively market, advertise, and sell the Defective Vehicles with the Defect.

48.     Plaintiffs and Class Members who purchased or leased the Defective Vehicles had no way of reasonably knowing that these Vehicles were deceptively marketed and advertised and/or were defective. Thus, Class Members could not have reasonably avoided the injury they suffered.

49.     The gravity of the harm suffered by Plaintiffs and Class Members who purchased or leased the Defective Vehicles outweighs any legitimate justification, motive or reason for marketing and advertising the Defective Vehicles in a deceptive and misleading manner and/or allow vehicles to be sold with the undisclosed Defect. Accordingly, Defendants' actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiffs and Class Members

50.     The above acts by Defendants, in disseminating said misleading and deceptive statements throughout the State of California and nation-wide to consumers, including Plaintiffs and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature the Defect, and thus were violations of Cal. Bus. Prof. Code §§ 17500, *et seq*.

51.     The conduct alleged herein emanated from Defendants' California based Headquarters to consumers within the State of California and throughout the United States.

52.     As a result of Defendants' above unlawful, unfair and fraudulent acts and practices, Plaintiffs, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendants from continuing these wrongful practices or requiring Defendants to repair the Defect, and such other equitable relief, including rescission or full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law.

**COUNT II**
**Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq*. -**
**(On behalf of Plaintiffs and the National Class)**

53.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

54.     As more fully described above, Defendants misrepresented or omitted the true nature of the Defect.  Defendants' misleading marketing and advertising is likely to, and does, deceive reasonable consumers. Indeed, Plaintiffs was deceived about the Defect, as Defendants' marketing and advertising of the Defective Vehicles misrepresents and/or omits the true nature of the Defect. Said acts are fraudulent business practice and acts.

55.     Plaintiffs and other members of the Class who purchased or leased the Defective Vehicles suffered a substantial injury by virtue of buying a product that misrepresented and/or omitted the true nature of the Defect.  Had Plaintiffs and members of the Class known that Defendants' materials, advertisement and other inducements misrepresented and/or omitted the true nature of the Defect, they would not have purchased or leased the Defective Vehicles.

56.     The above acts by Defendants, in disseminating said misleading and deceptive statements throughout the State of California and nation-wide to consumers, including Plaintiffs and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature the Defect, and thus were violations of Cal. Bus. Prof. Code §§ 17500, *et seq*.

57.     The conduct alleged herein emanated from Defendants' California based Headquarters to consumers within the State of California and throughout the United States.

58.     As a result of Defendants' above unlawful, unfair and fraudulent acts and practices, Plaintiffs, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendants from continuing these wrongful practices or requiring Defendants to repair the Defect, and such other equitable relief, including rescission or full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law.

**COUNT III**
**Breach of Express Warranty**
**(On behalf of Plaintiffs and the National Class, or alternatively the Michigan and Oklahoma Subclass )**

59.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

60.     Due to its nature, the UCC renders warranty law largely uniform in the U.S.  *See*

CLASS ACTION COMPLAINT

*Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 957 (E.D. Tex. 2000).

61.     Upon information and belief, in the course of selling its vehicles, Defendants expressly warranted in writing that "it will arrange for an authorized [ ] dealer at locations of its choice to provide for the repair of your vehicle if it fails to function properly during normal use." Defendants warrant that "all components of your new [ ] Vehicle are covered for 60 months/60,000 miles."

62.     Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class Members Defective Vehicles that are not free of material defects; they contain the Defect, rendering the Vehiclesfar easier to steal than other vehicles, and are therefore unsafe and worth less than if they not had the Defect.

63.     Defendants were provided notice of these issues by complaints filed against them, including the instant Complaint, and, upon information and belief, by numerous communications sent by customers before or within a reasonable amount of time after the allegations of the vehicles' Defect became public.

64.     Due toDefendants' breach of warranties as set forth herein, Plaintiffs and the Class have been damaged in the amount of the different purchase prices of the Defective Vehicles with the Defect and a vehicle without the Defect.  Plaintiffs and the Class also assert as an additional and/or alternative remedy, as set forth in U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under U.C.C. §§ 2-608 and 2-711.

**COUNT IV**
**Breach of Implied Warranty**
**(On behalf of Plaintiffs and the National Class, or alternatively the Michigan and Oklahoma Subclass )**

65.     Plaintiffs hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

66.     Due to its nature, the UCC renders warranty law largely uniform in the U.S.  *See Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 957 (E.D. Tex. 2000).

67.     Defendants are and at all relevant times were merchants with respect to motor vehicles under U.C.C. § 2-314.   Defendants, by selling the Defective Vehicles, impliedly warranted that the Vehicles were merchantable with respect to goods of that kind.

68.     Similarly, Defendants, by selling the Defective Vehicles, impliedly warranted that the Vehicles were fit for their particular purpose, to be a safe and reliable means of conveyance under U.C.C. § 2-315.  Plaintiffs and the Class reasonably relied on Defendants' skill or judgment in furnishing a vehicle with sufficient and suitable safety features.

69.     The Defective Vehicles sold by Defendants and purchased by Plaintiffs did not conform with the implied warranties, which are applicable by application of law.  Specifically, by failing to reasonably disclose the Defect, Defendants implied that the Defective Vehicles were not far easier to steal than other vehicles, were thereby safe, and were worth as much as vehicles without the Defect.

70.     As a result of having the Defect, the Defective Vehicles were not merchantable or fit for their particular purpose and Defendants breached their implied warranty of merchantability and fitness for particular purpose with respect to the Defective Vehicles.

71.     Due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class have been damaged in the amount of the different purchase price of the Defective Vehicles with the Defect and a vehicle without the Defect.

**COUNT V**
**Violation Of Magnuson-Moss Warranty Act - 15 U.S.C. § 2301,** *et seq.*
**(On behalf of Plaintiffs and the National Class, or alternatively the Michigan and Oklahoma Subclass )**

72.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

73.     The Defective Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

74.     Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3) and utilized the Defective Vehicles for personal and household use and not for resale or commercial purposes.

75.     Plaintiffs and Class Members purchased or leased the Defective Vehicles costing

CLASS ACTION COMPLAINT

1    more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e).

2    76.    Defendants are a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and

3    (5).

4    77.    Defendants provided a "written warranty" within the meaning of 15 U.S.C.

5    2301(6) for the Defective Vehicles.

6    78.    The MMWA provides a cause of action for breach of warranty, including the

7    violation of express warranty and implied warranties, or other violations of the Act. 15 U.S.C. §

8    2310(d)(1).

9    79.    Defendants violated the express and implied warranties because the Defective

10   Vehicles contained the Defect as alleged above.

11   80.    In its capacity as warrantor, and by the conduct described herein, any attempt by

12   Defendants to limit the warranties in a manner that it does is not permitted by law.

13   81.    By Defendants' conduct as described herein, Defendants have failed to comply

14   with its obligations under its implied promises, warranties, and representations.

15   82.    Plaintiffs and the Class fulfilled their obligations under the express warranties for

16   the Products.

17   83.    As a result of Defendants' breach of warranties, Plaintiffs and the Class are

18   entitled to revoke their acceptance of the Defective Vehicles and/or are entitled to recover

19   "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees

20   based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

21   **COUNT VI**
**Violation of M.C.L. §§ 445.901, *et seq***
22   **(On behalf of Plaintiff DesJardins and the Michigan Subclass)**

23   84.    Plaintiff DesJardins hereby incorporates by reference the allegations contained in

24   the preceding paragraphs of this Complaint.

25   85.    Plaintiff DesJardins and Defendants are persons as defined by M.C.L. §

26   445.902(d).

27   86.    Defendants engaged in trade or commerce, as defined by M.C.L. § 445.902(g),

28   by advertising, soliciting, providing, offering, or distributing the Defective Vehicles within the

15

State of Michigan.

87.     As more fully described above, Defendants misrepresented or omitted the true nature of the Defect.  Defendants' misleading marketing and advertising is likely to, and does, deceive reasonable consumers. Indeed, Plaintiff DesJardins was deceived about the Defect, as Defendants' marketing and advertising of the Defective Vehicles misrepresents and/or omits the true nature of the Defect.

88.     Plaintiff DesJardins and other members of the Michigan Subclass who purchased or leased the Defective Vehicles suffered a substantial injury by virtue of buying a product that misrepresented and/or omitted the true nature of the Defect.  Had Plaintiff and members of the Michigan Subclass known that Defendants' materials, advertisement and other inducements misrepresented and/or omitted the true nature of the Defect, they would not have purchased or leased the Defective Vehicles.

89.     The above acts by Defendants, in disseminating said misleading and deceptive statements throughout the State of Michigan to consumers, including to Plaintiff and members of the Michigan Subclass, were and are likely to deceive reasonable consumers by obfuscating the true nature the Defect, and thus were violations of M.C.L. § 445.903(1) (c), (e), (s), and (cc)

90.     As a result of Defendants' conduct, Plaintiff DesJardins and Michigan Subclass Members were harmed and suffered actual damages as a result of Defendants' unfair, unconscionable, or deceptive methods, acts, or practices. Had Defendants disclosed the true nature of the Defect, Plaintiff would not have been misled into purchasing the Defective Vehicles, or, alternatively, would have paid significantly less for them.

91.     Plaintiff DesJardins , on behalf of himself and all other similarly situated Michigan consumers, and as appropriate, on behalf of the general public of the State of Michigan, seeks damages, as well as declarative and injunctive relief prohibiting Defendants from continuing these unlawful practices pursuant to M.C.L. § 445.911.

92.     As a result of Defendants' above unfair, unconscionable, or deceptive methods, acts, or practices, Plaintiff DesJardins , on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public of the State of Michigan, seeks an award of the

16

1  actual damages caused by Defendants' unfair, unconscionable, or deceptive methods, acts, or

2  practices and any other relief the Court deems appropriate.

3                                         **COUNT VII**
                                **Violation of 15 OK. Stat. § 15-751**
4          **(On behalf of Plaintiff Baker and the Oklahoma Subclass)**

5          93.     Plaintiff Baker hereby incorporates by reference the allegations contained in the

6  preceding paragraphs of this Complaint.

7          94.     Defendants are persons as defined by 15 OK. Stat. § 15-752(1).

8          95.     Defendants' advertisement, offer of sale, sale, warranty, and distribution of the

9  Defective Vehicles constitute a "consumer transaction" as defined by 15 OK. Stat. § 15-752(2).

10         96.     As more fully described above, Defendants misrepresented or omitted the true

11 nature of the Defect.  Defendants' misleading marketing and advertising is likely to, and does,

12 deceive reasonable consumers. Indeed, Plaintiff Baker was deceived about the Defect, as

13 Defendants' marketing and advertising of the Defective Vehicles misrepresents and/or omits the

14 true nature of the Defect.

15         97.     Plaintiff Baker and other members of the Oklahoma Subclass who purchased or

16 leased the Defective Vehicles suffered a substantial injury by virtue of buying a product that

17 misrepresented and/or omitted the true nature of the Defect.  Had Plaintiff and members of the

18 Oklahoma Subclass known that Defendants' materials, advertisement and other inducements

19 misrepresented and/or omitted the true nature of the Defect, they would not have purchased or

20 leased the Defective Vehicles.

21         98.     The above acts of Defendants, in disseminating said misleading and deceptive

22 statements throughout the State of Oklahoma to consumers, including Plaintiff Baker and members

23 of the Oklahoma Subclass, were and are likely to deceive reasonable consumers by obfuscating

24 the true nature the Defect, and thus were violations of 15 OK. Stat. § 15-753(5) (7), (8), and (20)

25         99.     As a result of Defendant's conduct, Plaintiff Baker and Oklahoma Subclass

26 members were harmed and suffered actual damages as a result of Defendants' unfair,

27 unconscionable, or deceptive methods, acts, or practices. Had Defendants disclosed the true nature

28 of the Defect, Plaintiff would not have been misled into purchasing the Defective Vehicles, or,

                                              17

alternatively, paid significantly less for them.

100.     Plaintiff Baker, on behalf of herself and all other similarly situated Oklahoma consumers, and as appropriate, on behalf of the general public of the State of Oklahoma, seeks damages, as well as declarative and injunctive relief prohibiting Defendants from continuing these unlawful practices pursuant to 15 OK. Stat. §15-761.1.

101.     As a result of Defendants' above unfair, unconscionable, or deceptive methods, acts, or practices, Plaintiff, on behalf of herself and all others similarly situated, and as appropriate, on behalf of the general public of the State of Oklahoma, seeks an award of the actual damages caused by Defendants' unfair, unconscionable, or deceptive methods, acts, or practices and any other relief the Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of a Class of all others similarly situated, seek a judgment against Defendant, as follows:

    a.    For an order certifying the Class and naming Plaintiff as Class representative and Plaintiff's attorneys as Class Counsel;

    b.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

    c.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

    d.    For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

    e.    For prejudgment interest on all amounts awarded;

    f.    For an order of restitution and all other forms of equitable relief;

    g.    For injunctive relief as pleaded or as the Court may deem proper; and

    h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

1    Dated: August 25, 2022                Respectfully submitted,

2

3                                          Trenton R. Kashima (SBN 291405)
                                           **MILBERG COLEMAN BRYSON**
4                                          **PHILLIPS GROSSMAN PLLC**
                                           401 West C St., Suite 1760
5                                          San Diego, CA 92101
                                           Tel: (714) 651-8845
6                                          Email: tkashima@milberg.com

7
                                           John J. Nelson (SBN 317598)
8                                          **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
9                                          280 South Beverly Drive
                                           Beverly Hills, California 90212
10                                         Tel: (858) 209-6941
                                           Email: jnelson@milberg.com
11

12                                         Joel D. Smith (SBN 244902)
                                           **BURSOR & FISHER, P.A.**
13                                         1990 North California Boulevard, Suite 940
                                           Walnut Creek, CA 94596
14                                         Tel: (925) 300-4455
                                           Email: jsmith@bursor.com
15

16                                         Frederick J. Klorczyk III (SBN 320783)
                                           **BURSOR & FISHER, P.A.**
17                                         888 Seventh Avenue
                                           New York, NY 10019
18                                         Tel: (646) 837-7150
                                           Email: fklorczyk@bursor.com
19

20                                         Kevin J, Stoops (SBN 332200)
                                           Jason T. Thompson*
21                                         **SOMMERS SCHWARTZ, P.C.**
                                           One Towne Square, 17th Floor
22                                         Southfield, MI 48076
                                           Tel: (248) 355-0300
23                                         Email: kstoops@sommerspc.com

24
                                           *Pro Hac Vice application forthcoming
25

26                                         Attorneys for Plaintiffs
                                           and the Class
27

28

                                           19