# EXHIBIT 3

# U.S. District Court
## Eastern District of Michigan (Detroit)
## CIVIL DOCKET FOR CASE #: 2:22-cv-12198-PDB-JJCG

DeKam et al v. Kia America, Inc. et al                    Date Filed: 09/16/2022
Assigned to: District Judge Paul D. Borman              Jury Demand: Plaintiff
Referred to: Magistrate Judge Jonathan J.C. Grey        Nature of Suit: 355 Motor Vehicle Prod.
Cause: 15:2301 Magnuson-Moss Warranty Act              Liability
                                                        Jurisdiction: Federal Question

**Plaintiff**

**Casey DeKam**                        represented by    **Paul Matouka**
                                                        1647 W. Big Beaver Rd.
                                                        Troy, MI 48084
                                                        248-327-6556
                                                        Email: notifications@oliverlawgroup.com
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jason Hendrix**                      represented by    **Paul Matouka**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ryan Beaulieu**                      represented by    **Paul Matouka**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai Motor America**

**Defendant**

**Hyundai Kia Amercia Technical Center
Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2022 | 1 | COMPLAINT filed by All Plaintiffs against All Defendants with Jury Demand. Plaintiff requests summons issued. Receipt No: AMIEDC-9058153 - Fee: $ 402. County of 1st Plaintiff: Kent - County Where Action Arose: Washtenaw - County of 1st Defendant: Orange. [Previously dismissed case: No] [Possible companion case(s): None] (Attachments: # 1 Civil Coversheet) (Matouka, Paul) (Entered: 09/16/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/19/2022 11:36:36 | | | |
| **PACER Login:** | jb0014 | **Client Code:** | 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-12198-PDB-JJCG |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

CASEY DEKAM, JASON
HENDRIX, and RYAN BEAULIEU
on behalf of themselves and all others
similarly situated,

          No.
          Hon.

Plaintiffs,

v.

KIA AMERICA, INC., HYUNDAI
MOTOR AMERICA, and HYUNDAI
KIA AMERICA TECHNICAL
CENTER, INC.

Defendants.

_____/

## CLASS ACTION COMPLAINT AND JURY DEMAND

1. This is a class action claim arising out of a defect in vehicles designed, manufactured, and distributed by Defendants.

2. Defendants designed, manufactured, promoted, distributed, and/or otherwise introduced a number of vehicle models into the stream of commerce, including those owned by Plaintiffs, that were particularly susceptible to theft due to a design and/or manufacturing defect. Upon information and belief, these vehicles include all Kia models from 2011–2021 and all Hyundai models from 2011–2021 (collectively "Affected Vehicles").

## PARTIES

3.  Plaintiff Casey DeKam is a resident of Kent County, in the State of Michigan.

4.  Defendant Hyundai Kia America Technical Center, Inc. ("Kia Technical") is a Michigan Corporation with its principal place of business at 6800 Geddes Road, Superior Township, Michigan 48198. Upon information and belief, Kia Technical is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, supplying, and/or selling, either directly or indirectly, through third parties and/or related entities the Affected Vehicles.

5.  Defendant Kia America, Inc. ("Kia America") is a California corporation with its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Upon information and belief, Kia America, is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, supplying, and/or selling, either directly or indirectly, through third parties and/or related entities the Affected Vehicles.

6.  Defendant Hyundai Motor America ("Hyundai Motor ") is a California with its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Upon information and belief, Defendant Hyundai Motor is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, supplying, and/or selling, either directly or indirectly, through third parties and/or related entities the Affected Vehicles.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiffs have claims arising under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9. This Court also has original jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(d)(2) because (1) Plaintiffs bring this action on behalf of a class in the thousands and the amount in controversy exceeds $5,000,000 and (2) there is diversity of citizenship between the Plaintiffs and two of the Defendants (Kia America and Hyundai Motor).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in the Eastern District of Michigan where Defendant Kia Technical resides and conducts its business, including, upon information and belief, the designing and engineering of the Affected Vehicles.

11. This Court has personal jurisdiction over the Defendants because they transact business within the State of Michigan and committed one or more tortious acts within the state.

12. Furthermore, Defendants designed, market, manufacture, and/or sell the Affected Vehicles in Michigan – intentionally placing the Affected Vehicles in the stream of commerce in Michigan.

### FACTUAL ALLEGATIONS

13. The Affected Vehicles, designed, manufactured, produced, distributed, and sold by Defendants, are so easy to steal – children do it for fun.

14. Defendants were aware that the Affected Vehicles were uniquely susceptible to theft before placing them in the stream of commerce.

15. Defendants concealed the Affected Vehicle's risk of theft from consumers.

16. The specific issue with the Affected Vehicles is that they can be started with nothing more than a piece of metal.

17. Once an Affected Vehicle is started, a thief is able to drive it without any impediment.

18. Furthermore, the car can be shut off and restarted using the same method that was originally used to steal it.

19. Most vehicles, including newer Kia and Hyundai models, are equipped with an immobilizer that prevents the car from starting if a key is not inserted.

20. First used in the early 1990's, immobilizers are devices that detect whether the correct key has been inserted into a vehicle's ignition and prevent the engine from starting if the correct key is not inserted.

21. Upon information and belief, immobilizers are cheap and easy for manufacturers to install.

22. Upon information and belief, the alarm systems on the Affected Vehicles do not sound when a window is broken.

23. This means that a thief can break a window to get access to the vehicle, without setting off any alarm, strip the steering column, use a piece of metal to start the car, and then drive off with the vehicle.

24. Due to the defect in the Affected vehicles, it can take as little as a few seconds for a thief to enter and start the vehicle.

25. Even if an alarm system is equipped and active on the Affected Vehicle, it is easily bypassed by a thief.

26. This leaves the owners of Affected Vehicles with little or no warning that their vehicle is being stolen.

27. Many individuals who own Affected Vehicles only learn that their car has been stolen when the next go to drive it and find it missing.

28. The unique susceptibility of the Affected Vehicles renders them worth less than they should be, were sold for, and were marketed as.

29. Defendants' failure to equip the affected cars with an engine immobilizer or equivalent system violates the Federal Vehicle Safety Standards.

30. 49 C.F.R. § 571.114(S5.1.1) provides: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both."

31. The ease at which the Affected Vehicles are stolen has made all vehicles with similar outward appearance subject to increased break-ins by would-be car thieves.

32. Each of the Named Plaintiffs in this action have been injured by Defendants' conduct.

33. Plaintiff Casey DeKam purchased a 2019 Kia Sportage in the middle of December 2021.

34. In the middle of the night on June 16, 2022, Ms. DeKam's Kia was stolen.

35. Eventually, Ms. DeKam's Kia was found by the police abandoned and returned to her.

36. After her deductible, Ms. DeKam's insurance covered $6,000 in repairs that resulted from the thief, or thieves, joyride.

37. Despite the repairs, Ms. DeKam's vehicle no longer runs, feels, or sounds the same and has new issues such as burning oil.

38. As a result of the theft of her vehicle Ms. DeKam's insurance premiums increased.

39. As a result of the public's knowledge of the ease of stealing the Affected Vehicles, including Ms. DeKam's, her vehicle has depreciated in value by about $8,000 since she purchased it, without taking the actual damage from the theft into account.

40. Prior to the theft of her Kia, Ms. DeKam was unaware of how susceptible her vehicle was to theft.

41. Plaintiff Jason Hendrix leases a 2021 Kia Sportage which *is* equipped with an engine immobilizer.

42. Despite this, on June 30, 2022, the window on Mr. Hendrix's vehicle was broken by would be thieves who ran off once Mr. Hendrix said something.

43. At the time, there was nothing of value in the vehicle to steal and the only reasonable inference is that the break-in was an attempted auto theft resulting from the perceived ease of stealing Kia's.

44. Plaintiff Ryan Beaulieu finances an Affected Vehicle that has not been broken into. However, as a result of the drastic increase in thefts targeting Affected Vehicles, including one down the street from her home, Ms. Beealieu has spent over $500 in security to protect her vehicle.

45. Ms. Beaulieu has also significantly altered her use of her vehicle and generally avoids using it.

46. Furthermore, Ms. Beaulieu has her partner block her vehicle in the driveway even when they are home and when both Ms. Beaulieu and her partner are gone they have a neighbor do the same.

47. Ms. Beaulieu describes her steps as "babysitting" her car, which she rarely uses.

## CLASS ALLEGATIONS

48. Plaintiffs proposed class definitions are as follows:

    a. A "Nationwide Affected Vehicle Owner" Class defined as: "All persons in the United States who owned an Affected Vehicle, excluding those persons whose Affected Vehicle was not stolen and who sold it prior to January 1, 2021."

    b. A "Michigan Affected Vehicle Owner" Subclass defined as: "All persons, who reside in the State of Michigan, and who own an Affected Vehicle, excluding those persons whose Affected Vehicle was not stolen and who sold it prior to January 1, 2021."

    c. A "Collateral Damage" Class defined as: "All persons in the United States who own a Kia or Hyundai vehicle that has an immobilizer but whose vehicle damaged in an attempt to steal it after January 1, 2021."

49. Upon information and belief, each class and subclass comprises thousands of persons making joinder impracticable and therefore, meeting the requirement for numerosity.

50. There are questions of fact and law common to the Nationwide Affected Vehicle Owner Class and Michigan Affected Vehicle Subclass which predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' conduct include, but are not limited to:

   a. Whether Defendants manufactured and designed the Affected Vehicles without engine immobilizers;

   b. Whether the failure of the have engine immobilizers makes the Affected Vehicles uniquely susceptible to theft and worth less than they would have been if they were equipped with engine immobilizers;

   c. Whether the absence of an engine immobilizer is a material fact in the purchasing of a vehicle;

   d. Whether the relative susceptibility to theft is a material fact in the purchasing of a vehicle;

   e. Whether Defendants failed to disclose and/or concealed the material fact that the Affected Vehicles did not have engine immobilizers and were uniquely susceptible to theft;

f.   Whether Defendants failed to adequately warn Plaintiffs of the dangers of vehicles that did not contain engine immobilizers;

g.   Whether Defendants knew or should have known that the Affected Vehicles did not have an engine immobilizer;

h.   Whether Defendants knew that the absence of an engine immobilizer made the affected vehicles uniquely susceptible to theft, unsafe, and worth less than they would have been with engine immobilizers;

i.   Whether Defendants continued to manufacture, market, distribute, and sell the Affected Vehicles despite their knowledge of the risks of harm associated from the failure to incorporate an engine immobilizer or other security system;

j.   Whether Defendants continued to manufacture, market, distribute, and sell the Affected Vehicles once the safety and security risks associated with the lack of an engine immobilizer became apparent;

k.   Whether Defendants knowingly omitted, suppressed, or concealed material facts about the unsafe and defective nature of the Affected Vehicles from the consuming public;

l.   Whether the Affected Vehicles are fit for their ordinary purposes;

m.  Whether the Affected Vehicles provide reliable transportation;

n.   Whether the Defendants' conduct violated the PRAFC; and/or

10

o. Whether Defendants' conduct violated the Magnuson Moss Warranty Act.

51. There are questions of fact and law common to the Collateral Damage Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' conduct include, but are not limited to:

a. Whether the design defect in the Affected Vehicles creates an unreasonable risk that vehicles of the same brand that include an engine immobilizer or other similar system will nevertheless be targeted for attempted theft by thieves who believe they share the same design defect;

b. Whether Defendants were aware that the design defect in the Affected Vehicles would create an unreasonable risk that vehicles of the same brand that include an engine immobilizer or other similar system would be targeted for attempted theft as a result of the known design defect of the Affected Vehicles;

c. Whether the design defect of the Affected Vehicles decreases the value of vehicles of the same brand that do include an engine immobilizer or other similar system;

d. Whether Defendants were aware that the value of their vehicles not sharing the same design defect as the Affected Vehicles would be worth less than marketed and sold for;

e. Whether the design defect of the Affected Vehicles caused or will cause an increase in the insurance premiums of other vehicles designed, manufactured, distributed or sold by Defendants that do not share the same design defect;

f. Whether Defendants were aware that the design defect of the Affected Vehicles would cause an increase in the insurance premiums of other vehicles designed, manufactured, distributed or sold by Defendants that do not share the same design defect; and

g. Whether Defendants failed to disclose to Plaintiffs and members of the putative class who purchased, financed, or leased vehicles designed, manufactured, marketed, or sold by Defendants that did not have the same defect as the Affected Vehicles that the design defect of the Affected Vehicles would affect the security and reliability of their vehicles.

52. The common questions of law and fact, set forth above, predominate over any questions affecting only individual persons. Specifically, liability can be

demonstrated on a class wide basis by resolving the common questions of law and fact and leaving only a question of damages for individual class members.

53. Furthermore, class litigation is a superior mechanism to resolve this dispute by conserving judicial and party resources and ensuring a fair, consistent, and final resolution with respect to all claims.

54. Absent class litigation, there is a substantial risk of inconsistent and varying determinations imposing potentially incompatible standards of conduct on Defendants.

55. The claims of the Named Plaintiffs are typical of the claims of each putative subclass and subclasses. Upon information and belief, all Affected Vehicles share the same defects

   a. **Nationwide Affected Vehicle Class and Michigan Affected Vehicle Subclass**. Plaintiff Casey DeKam's vehicle was stolen as a result of the defect that rendered it particularly susceptible to theft. Ms. Dekam's vehicle was damaged directly by the theft and subsequent joy-ride that the thief, or thieves, took it on. Ms. DeKam's vehicle has depreciated significantly in value as a result of the public's knowledge of the ease of theft and her insurance premiums have increase as a result of the theft of her vehicle, the particular susceptibility her vehicle has to theft, or both.

b. **Nationwide Affected Vehicle Class and Michigan Affected Vehicle Subclass**. Plaintiff Ryan Beaulieu leases an Affected Vehicle, that has not yet been stolen. However, Ms. Beaulieu has been forced to spend money to purchase additional security systems including cameras and alarms in order to prevent her vehicle from being stolen.

c. **Collateral Class**. Plaintiff Jason Hendrix, who does not have an Affected Vehicle nonetheless suffered a break-in of his vehicle as a result of Defendants' conduct and paid for repairs and additional security systems.

d. All Plaintiffs have been deprived of the very thing they purchased their vehicles for, independence. None of the Named Plaintiffs feel comfortable leaving their cars unattended because they might be stolen at a moment's notice or broken into by someone who thinks they can steal them at a moment's notice.

e. As a result of the public learning about the defect in the Affected Vehicles, and the risks posed to all vehicles designed, manufactured, and sold by Defendants, all Plaintiffs' vehicles have severely depreciated in value.

f. All Named Plaintiffs feel as though a target has been placed on their vehicles.

14

56. Named Plaintiffs will adequately represent the Classes and Subclass because their interest do not conflict with the interest of the putative class members and they share a common goal of obtaining adequate monetary and injunctive relief that all putative class members have experienced.

57. The interests of the Classes and Subclass will be adequately represented by Oliver Law Group, P.C., who have extensive experience prosecuting complex class action litigation, including multi-district litigation, and have the time and resources to effectively and efficiently prosecute this matter.

## COUNT I: VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT
### (NATIONWIDE AFFECTED VEHICLE OWNER CLASS)

58. Plaintiffs reallege and reincorporate the preceding paragraphs as if fully restated herein.

59. The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(1).

60. Plaintiffs and members of the putative classes are "consumers" within the meaning off the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(3).

61. Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(4)–(5).

62. Defendants provided Plaintiffs and members of the putative classes with an "implied warranty" of merchantability in connection with the purchase of

their vehicles within the meaning of the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(7).

63. As part of the implied warranty of merchantability, Defendants warranted that the Affected Vehicles were fit for the ordinary purpose of passenger motor vehicles and were not uniquely susceptible to theft compared to other passenger motor vehicles and were not unsafe and/or unreliable due to the ease at which they can be stolen.

64. Defendants breached this implied warranty and are liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1) because the Affected Vehicles all share a common design defect insofar as they all fail to include an engine immobilizer or other equivalent mechanism.

65. The defects in the design and/or manufacture of the Affected Vehicles renders them deficient, in that they do not provide safe and reliable transportation, as they are tremendously easy to steal.

66. Plaintiffs cannot rely on their vehicles to be in the same place they left them because of the ease at which they are stolen and therefore, cannot rely upon them for transportation.

67. Plaintiffs also cannot rely on the windows being intact when they return to their vehicles regardless of whether they have or do not have an engine

immobilizer because the design defect in the Affected Vehicles painted a target for would be thieves on all vehicles of the same brand.

68. Defendants affirmatively warranted that the Affected Vehicles were free from defects that would prevent ordinary use.

69. Upon information and belief, Defendants affixed labeling and other written affirmations making specific, performance-related representations related to the nature of the Defective Vehicles, including expressly warranting tha the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

70. Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class Members Affected Vehicles that are not free of material defects and are worth far less than they would be if they were equipped with an engine immobilizer or other similar system, which they should have been if Defendants had exercised reasonable care, complied with federal regulations, or complied with their implied and express warranties.

71. Defendants were aware of the risk of theft and unreliability associated with the absence of an engine immobilizer or other similar system in their vehicles.

72. Defendants failed to disclose this to Plaintiffs and the putative class members.

73. Defendants also failed to disclose to Plaintiffs the collateral risk associated with vehicles that did include engine immobilizers.

74. Informal dispute resolution is incapable of providing an adequate remedy to Plaintiffs for the same reason that class litigation is appropriate, the breach of warranty places each member of the putative classes at risk on a daily basis and requires prompt and class-wide resolution. Absent class-wide relief, Plaintiffs, including members of the Collateral Damage Class, will continue to suffer thefts, break-ins, and the consequential damages of having an inherently unreliable and theft-prone vehicle or a vehicle that appears to would-be thieves to be inherently theft-prone.

75. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.

76. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

77. Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

78. Plaintiffs and members of the putative class are entitled to recover a sum equal to the aggregate amount of costs and expenses, including reasonable attorney's fees.

79. Plaintiffs are also entitled to, and require immediate injunctive relief requiring Defendants to fix the Affected Vehicles and broadly advertise and communicate, including but not limited to on Tik-Tok and YouTube, that the defect causing the Affected Vehicles to be uniquely susceptible to theft has been resolved.

### COUNT II: Negligence

80. Plaintiffs reallege and reincorporate the preceding paragraphs as if fully restated herein.

81. Defendants were under a duty to provide Plaintiffs with a vehicle that was reasonably reliable and not uniquely susceptible to theft.

82. Defendants owed this duty under Michigan common law and the Federal Motor Vehicle Safety Standards.

83. Defendants breached this duty by designing, manufacturing, marketing, distributing, and selling the Affected vehicles without an immobilizer or equivalent system to prevent theft.

84. Defendants' breach resulted in a vehicle that could be started without the correct key, or any key, being placed in the ignition and then be driven without any impediment.

85. Because of Defendants' breach, Plaintiffs have suffered break-ins, thefts, and/or been forced to expend money to purchase additional security for their vehicles.

86. Because of Defendants' breach, Plaintiffs are no longer able of utilizing their vehicles for the purposes for which they obtained them.

87. Defendants also owed a duty to Plaintiffs of the Collateral Damage Class to provide them with vehicles that were not uniquely susceptible to break-ins.

88. Defendants breached this duty by failing to promptly remedy the design defect of the Affected Vehicles and widely advertise and communicate that they had done so and by failing to place markings or other clearly visible signs on vehicles that did not suffer the same design defect as the Affected Vehicles that they did not share that defect.

89. As a result of Defendants' breach, members of the Collateral Damage Class have suffered break-ins, thefts of their personal property, and attempted thefts of their vehicles by thieves who assume that the vehicle shares the defect of the Affected Vehicles.

## COUNT III: Unjust Enrichment

90. Plaintiffs reallege and reincorporate the preceding paragraphs as if fully restated herein.

91. Defendants marketed and sold the Affected Vehicles as being substantially similar, if not superior to, similar vehicles sold by other manufacturers.

92. Defendants priced the Affected Vehicles as though they were substantially similar, if not superior to, similar vehicles sold by other manufacturers.

93. Defendants withheld material information that the Affected Vehicles are substantially inferior to similar vehicles sold by other manufacturers due to their unique susceptibility to theft.

94. Plaintiffs purchased, financed, or leased their vehicles under the false belief, engendered by Defendants' conduct, that they were obtaining a vehicle that had a certain monetary value and could reasonably be used for the purpose of transportation.

95. As a result, Defendants obtained financial compensation far beyond what they would have received had they informed Plaintiffs, and the public, of the defects in the Affected Vehicles and how those defects would have detrimental affects on vehicles that did not suffer the same defect.

96. As of this filing, Defendants have retained the financial benefit from Plaintiffs.

## COUNT IV: Breach of Implied Warranty

97. Plaintiffs reallege and reincorporate the preceding paragraphs as if fully restated herein.

98. Defendants are merchants with respect to the sale of the Affected Vehicles purchased, financed, or leased by Plaintiffs.

99. By selling the Affected Vehicles, Defendants impliedly warranted that they were merchantable with respect to goods of that kind.

100.    This warranty was assigned to Plaintiffs upon purchasing, financing, or leasing the Affected Vehicles.

101.    The Affected Vehicles did not conform to the implied warranty because they were not a reliable form of transportation, were uniquely susceptible to theft, and were worth far less than marketed and sold for due to their lack of an engine immobilizer or other similar system.

102.    Furthermore, the Affected Vehicles breached the implied warranty because they placed any property Plaintiffs and the members of the putative class had in their vehicles at a uniquely high and unreasonable risk of theft.

103.    Had Plaintiffs known about the susceptibility of the affected vehicles to theft due to the lack of an engine immobilizer or similar system they would have either paid far less for the vehicle or purchased, leased, or financed a vehicle that did not have the defect and were not of the same brand.

104.     Defendants have been aware of this defect since first designing the

Affected Vehicles and were further placed on notice by the dramatic increase

in thefts targeting the Affected Vehicles.

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly

situated, requests relief and judgment against Defendants as follows:

a.  Certify the proposed classes as defined in this Complaint and appoint
    Plaintiffs' counsel as class counsel;

b.  For a judgment against Defendants for the causes of action alleged in this
    Complaint;

c.  For nominal, compensatory, and punitive damages to be proven at trial;

d.  For appropriate injunctive relief, requiring Defendants to immediately repair
    or replace all Affected Vehicles;

e.  For reasonable attorneys fees and costs associated in prosecuting this action;
    and

f.  For any other relief this Court deems just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

/s/ Paul Matouka
Paul Matouka (P84874)
Oliver Law Group, P.C.
Attorneys for Plaintiffs
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
F: (248) 436-3385
Dated: September 16, 2022.    E: notifications@oliverlawgroup.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Casey Dekam, Jason Hendrix, and Ryan Beaulieu on behalf of themselves and all others similarly situated

**(b)** County of Residence of First Listed Plaintiff    Kent
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Alyson Oliver
Oliver Law Group P.C., 1647 W. Big Beaver Rd., Troy, MI 48084
248-327-6556

## DEFENDANTS

Kia America, Inc., Hyundai Motor America, and Hyundai Kia America Technical Center, Inc.

County of Residence of First Listed Defendant    Orange County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane — ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability — ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander — Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability — Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine — ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle — **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☒ 355 Motor Vehicle Product Liability — ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury — ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice — ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI — ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights — **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting — ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment — ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations — ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment — ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other — **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education — ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. 2301

Brief description of cause:
Motor vehicle defective product.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE      DOCKET NUMBER

DATE
09/16/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Paul Matouka

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.