# EXHIBIT 9

Query    Reports    Utilities    Help    Log Out

McSHAIN

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.6.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:22-cv-04071

Loburgio et al v. KIA America, Inc. et al                Date Filed: 08/04/2022
Assigned to: Honorable John J. Tharp, Jr               Jury Demand: Both
Cause: 15:2301 Magnuson-Moss Warranty Act             Nature of Suit: 385 Prop. Damage Prod.
                                                       Liability
                                                       Jurisdiction: Diversity

**Plaintiff**

**Ms. Erica Loburgio**                 represented by   **Jonathan M. Soper**
                                                        Humphrey, Farrington & McClain, P.C.
                                                        221 W Lexington
                                                        Suite 400
                                                        Independence, MO 64050
                                                        816-836-5050
                                                        Email: jms@hfmlegal.com
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kevin D. Stanley**
                                                        Humphrey, Farrington & McClain, P.C.
                                                        221 West Lexington
                                                        Suite 400
                                                        Independence, MO 64050
                                                        816-836-5050
                                                        Fax: Pro Hac Vice
                                                        Email: kds@hfmlegal.com
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Toby Patrick Edwin Mulholland**
                                                        Rubens Kress & Mulholland
                                                        77 W. Washington St.
                                                        Ste. 701
                                                        Chicago, IL 60602
                                                        (312) 201-9640
                                                        Fax: Not a member
                                                        Email: tpm@rkminjurylaw.com
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anthony Loburgio**                    represented by    **Jonathan M. Soper**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Kevin D. Stanley**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Toby Patrick Edwin Mulholland**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Michael Flannagan**                   represented by    **Jonathan M. Soper**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Kevin D. Stanley**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Toby Patrick Edwin Mulholland**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Jessica Mitchell**                    represented by    **Kevin D. Stanley**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


V.

<u>**Defendant**</u>

**KIA America, Inc.**

<u>**Defendant**</u>

**Hyundai Motor America**

<u>**Defendant**</u>

**Hyundai Kia America Technical
Center, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|

| 08/04/2022 | 1 | Civil Cover Sheet by Michael Flannagan, Anthony Loburgio, Erica Loburgio (Mulholland, Toby) (Entered: 08/04/2022) |
| 08/04/2022 | 2 | COMPLAINT *Class Action Complaint & Demand for Jury Trial* filed by Erica Loburgio, Michael Flannagan, Anthony Loburgio; jury demand. Filing fee $ 402, receipt number AILNDC-19714311.(Mulholland, Toby) (Entered: 08/04/2022) |
| 08/04/2022 | | CASE ASSIGNED to the Honorable Robert W. Gettleman. Designated as Magistrate Judge the Honorable Heather K. McShain. Case assignment: Random assignment. (smb, ) (Entered: 08/04/2022) |
| 08/04/2022 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (smb, ) (Entered: 08/04/2022) |
| 08/05/2022 | 3 | EXECUTIVE COMMITTEE ORDER: Case reassigned to the Honorable John J. Tharp, Jr for all further proceedings. Honorable Robert W. Gettleman no longer assigned to the case pursuant to the provisions of 28 USC 294(b). Signed by Executive Committee on 08/05/2022.(daj, ) (Entered: 08/05/2022) |
| 08/17/2022 | 4 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19749795. (Stanley, Kevin) (Entered: 08/17/2022) |
| 08/18/2022 | 5 | MINUTE entry before the Honorable John J. Tharp, Jr: On the court's own motion, the complaint is dismissed without prejudice for lack of subject matter jurisdiction. Plaintiffs allege the citizenships of the defendants on the basis of "information and belief." That is insufficient to invoke diversity jurisdiction. See Qin v. Deslongchamps, 31 F.4th 576, 578 (7th Cir. 2022) (citing Page v. Wright, 116 F.2d 449, 451 (7th Cir. 1940); Pharmerica Corp. v. Crestwood Care, LLC, No. 13 C 1422, 2015 WL 1006683, at *3 (N.D. Ill. Mar. 2, 2015) ("[I]t is not sufficient to assert jurisdiction based on information and belief nor is it sufficient to negatively aver that the person or entity is not a citizen of Delaware or Kentucky."). The Court orders the plaintiffs to file an amended complaint affirmatively alleging the citizenship of all parties by August 31, 2022. Failure to timely amend will result in dismissal of this case. Mailed notice (air, ) (Entered: 08/18/2022) |
| 08/18/2022 | 6 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19757557. (Attachments: # 1 Exhibit Certificate of Good Standing) (Mulholland, Toby) (Entered: 08/18/2022) |
| 08/19/2022 | 7 | MINUTE entry before the Honorable John J. Tharp, Jr:Attorney Kevin D. Stanley's motion for leave to appear pro hac vice 4 is granted. Counsel is directed to file his appearance on behalf of the plaintiffs. Mailed notice (air, ) (Entered: 08/19/2022) |

| 08/19/2022 | 8 | MINUTE entry before the Honorable John J. Tharp, Jr:Attorney Jonathan M. Soper's motion for leave to appear pro hac vice 4 is granted. Counsel is directed to file his appearance on behalf of the plaintiffs. Mailed notice (air, ) (Entered: 08/19/2022) |
| 08/22/2022 | 9 | ATTORNEY Appearance for Plaintiffs Michael Flannagan, Anthony Loburgio, Erica Loburgio by Kevin D. Stanley (Stanley, Kevin) (Entered: 08/22/2022) |
| 08/29/2022 | 10 | ATTORNEY Appearance for Plaintiffs Michael Flannagan, Anthony Loburgio, Erica Loburgio by Toby Patrick Edwin Mulholland *by Jonathan M. Soper* (Mulholland, Toby) (Entered: 08/29/2022) |
| 08/30/2022 | 11 | AMENDED complaint by Erica Loburgio, Anthony Loburgio, Jessica Mitchell against All Defendants (Stanley, Kevin) (Entered: 08/30/2022) |
| 09/12/2022 | 12 | PETITION by Plaintiff McNerney for transfer and consolidation of related actions in the Central District of California under 28 U.S.C. 1407. (daj, ) (Entered: 09/14/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/19/2022 14:33:32 | | |
| **PACER Login:** | jb0014 | **Client Code:** | 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-04071 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Erica Loburgio | ) | |
| And | ) | |
| Anthony Loburgio | ) | |
| And | ) | |
| Michael Flannagan | ) | |
| And | ) | |
| Jessica Mitchell | ) | |
| On behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Demand for Jury Trial |
| Kia America, Inc., | ) | |
| 111 Peters Canyon Rd. | ) | Case No. 1:22-cv-04071 |
| Irvine, CA 92606 | ) | |
| | ) | |
| And | ) | |
| | ) | COMPLAINT – CLASS ACTION |
| Hyundai Motor America | ) | |
| 10550 Talbert Ave. | ) | |
| Fountain Valley, CA 92708 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| Hyundai America | ) | |
| Technical Center, Inc. | ) | |
| 6800 Geddes Rd. | ) | |
| Superior Township, MI 48198 | ) | |
| | ) | |
| *Defendants.* | ) | |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT &<br>DEMAND FOR JURY TRIAL</u>

Comes now Plaintiffs, individually and on behalf of all other persons similarly situated, for

their complaint for damages against Defendants Kia America, Inc, Hyundai Motor America, and

Hyundai America Technical Center, Inc. (collectively, "Defendants").

## NATURE OF ACTION

1.      This is a class action claim arising from a defect in Defendants' vehicles which make them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

2.      Defendants did not disclose this defect, which is a material fact, and a fact that a reasonable person would rely on when purchasing a vehicle.

3.      During the relevant class period, Defendants sold these Defective Vehicles (as defined below) at multiple locations throughout the state of Illinois and the United States.

4.      During the relevant class period, Defendants manufactured, designed, and put into the stream of commerce the Defective Vehicles.

5.      Defendants did so without disclosing the fact that these vehicles had a defect which made them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

6.      Even now, Defendants admit there is a theft problem with these vehicles but refuse to fix them, compensate consumers, or otherwise take actions to solve the problems their Defective Vehicles are causing.

## PARTIES

7.      Plaintiff Erica Loburgio is a resident and citizen of the state of Illinois.

8.      Plaintiff Anthonyh Loburgio is a resident and citizen of the state of Illinois.

9.      Plaintiff Michael Flanagan is a resident and citizen of the state of Illinois.

10.     Jessica Mitchell is a resident and citizen of the state of Illinois.

11.     Plaintiffs brings this action on their own behalf and as a representative of a class of persons who purchased and/or own a Defective Vehicle that was manufactured, produced, distributed, and/or sold by Defendants.

12. This matter arises out of negligent acts, errors, and omissions committed by the Defendants against Plaintiffs causing Plaintiffs and the putative class to suffer damages.

13. Plaintiffs brings this action on their own behalf and as representatives of a class of similarly situated persons to recover damages for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.,* among other claims, for economic and injunctive relief against Defendants which manufactured, designed, tested, distributed, promoted and sold the Defective Vehicles.

14. Plaintiffs, Class Plaintiffs and Defendants are all "person[s]" for purposes of the ICFDBPA. 815 ILCS 505/1(c).

15. 59. Plaintiffs and Class Plaintiffs are "consumers" within the meaning of 815 ILCS 505/1 (e).

16. 60. Defendants engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1 (f).

17. At the time the vehicle was purchased, Plaintiffs were unaware that the vehicle was defective and that it was not fit for the ordinary purposes for which the product is used in that it is easy to steal, unsafe, and worth less than it should be if it did not have the defect.

18. Plaintiff Erica Loburgio purchased a 2018 Kia Soul in 2019 from Hawkinson Kia in Matteson, Illinois for personal, family or household purposes.

19. Plaintiff Anthony Loburgio purchased a 2021 Kia Seltos in 2021 from Hawkinson Kia in Matteson, Illinois for personal, family or household purposes.

20. Plaintiff Flannagan purchased a 2015 Kia Soul in 2019, at Carmax in Schaumburg, Illinois for personal, family, or household purposes.

21.     Plaintiff Mitchell purchased a 2020 Hyundai Elantra in Springfield, Illinois for personal, family or household purposes.

22.     Plaintiffs, on behalf of themselves and the putative class, seek a refund for monies paid as a result of their purchase of the Defective Vehicles, compensation for other losses incurred as a result of the defect, and further seeks injunctive relief, enjoining Defendants from selling the Defective Vehicles, and requiring Defendants to fix the defect.

23.     Defendant, Kia America, Inc., is a California corporation and a resident and citizen of California that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

24.     Defendant, Hyundai Motor America, is a California corporation and a resident and citizen of California that maintains its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Defendant Hyundai Motor America is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

25.     Defendant, Hyundai America Technical Center, Inc., is a Michigan corporation and a resident and citizen of Michigan that maintains its principal place of business at 6800 Geddes Road, Superior Township, Michigan 48198. Defendant Hyundai America Technical Center, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

## JURISDICTION AND VENUE

26.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiffs brings this action on behalf of a class which numbers in the thousands, (2) Plaintiffs (Illinois) and Defendants (California and Michigan) are citizens of different states, and (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d). Plaintiffs are bringing a putative nationwide class that includes all people that purchased a Defective Vehicle. On information and belief, Defendants have sold thousands of Defective Vehicles throughout Illinois and the United States, totaling millions upon millions of dollars in sales.

27.    This Court has personal jurisdiction over Defendants in that Defendants transact business within the state of Illinois and committed one or more tortious acts within the state of Illinois.

28.    Defendants transacted business and/or committed tortious acts within the state of Illinois. Defendants design, manufacture, distribute, and/or sell dangerous and/or defective vehicles in Illinois. Defendants placed the Defective Vehicles and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Illinois from which Plaintiffs' claims arise.

29.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that the purchase of the Defective Vehicle by Plaintiffs took place in Illinois.

30.    Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendants have caused harm to Class Members

5

residing in this district, and/or because the Defendants are subject to personal jurisdiction in this district.

## **FACTUAL ALLEGATIONS**

31. The Defective Vehicles made the subject of this suit, which are manufactured, designed, produced, distributed, and sold by Defendants, are easy to steal, unsafe, and worth less than they would be if they did not have the defect.

32. Defendants manufacture, design, produce, distribute and sell the "Defective Vehicles," which are hereby defined as: "all Kia models from 2011-2021, and all Hyundai models from 2011-2021." All these vehicles share the same defects, and therefore an owner of any one of them may bring a class action on behalf of the entire class.

33. Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiffs, in Defendants' advertising, labeling or otherwise that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

34. One of the reasons why these vehicles are stolen so easily is that the vehicles do not comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114. FMVSS 114, S.5.1.1 requires:

> Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:
>
> (a) The normal activation of the vehicle's engine or motor; and
>
> (b) Either steering, or forward self-mobility, of the vehicle, or both.

35.     The Defective Vehicles do not comply with this FMVSS in that whenever the key is removed from the starting system, neither steering nor forward self-mobility is prevented. If it were, the vehicles would not be stolen at alarming rates.

36.     A stolen vehicle cannot provide reliable transportation.

37.     A stolen vehicle is not a safe vehicle.

38.     A vehicle that can be too easily stolen is not a vehicle that can be depended on to provide reliable transportation.

39.     A vehicle that can be too easily stolen is not a safe vehicle.

40.     The vehicles are defective in that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

41.     This means that all a thief needs to do is strip the ignition column, exposing a piece that pops off, and then stick a USB drive, a knife, or some other similar tool to start the vehicle without a key or code.

42.     Once they do so, they can freely operate the vehicle, including the vehicle's steering and forward self-mobility.

43.     Considering how many people charge their cell phones in their cars, the necessary instrument needed to steal a Defective Vehicle is usually readily available to any thief.

44.     Additionally, on information and belief, some of the Defective Vehicles' windows are not connected to the security system which thus allows a thief to break the window without the alarm being triggered.

45.     Defendants knew their vehicles were defective in this manner but failed and refused to disclose these defects to customers, despite having the capability and means to do so.

7

46. Defendants had the capability and means to add an engine immobilizer or similar device, yet they failed to do so.

47. Defendants also knew just how dangerous it was to not have an engine immobilizer.

48. Beginning in 2009, Kia sought to add an immobilizer to its Amanti line. It told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. *See,* Federal Register, Vol. 75, No. 6, page 1448, January 11, 2010.

49. Likewise, beginning in 2007, Hyundai sought to add an immobilizer to its Azera line. It told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. See, Federal Register, Vol. 72, No. 138, page 39662, July 19, 2007.

## CLASS ACTION ALLEGATIONS

50. Plaintiffs bring this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of themselves and the following class of similarly situated persons:

    a. A "Nationwide Class" based on claims of unjust enrichment, violations of the Magnuson Moss Warranty Act, and/or breach of express and/or implied warranty consisting of all customers who purchased any of the Defective Vehicles in the United States within the past five years; or

    b. A "Nationwide Class" based on claims of unjust enrichment, negligence, and design defect consisting of all consumers who own any of the Defective Vehicles in the United States; or

    c. A "Illinois Sub-Class" based on claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act and for unjust enrichment, and/or breach of implied and/or express warranty consisting of all persons who purchased any of the Defective Vehicles in the state of Illinois for personal,

family, business, or household purposes within the applicable statute of limitations period; or

d. A "Illinois Sub-Class" based on claims of unjust enrichment, negligence, and design defect consisting of all consumers who own any of the Defective Vehicles in Illinois.

51. Excluded from each Class or Sub-Class is Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from the Class or Sub-Class are those claiming they have suffered a personal injury as result of the Defective Vehicles, as well as residents of Wisconsin.

52. Each of the proposed Nationwide Class or Illinois Sub-Class meets all requirements for class certification. The Class or Sub-Classes satisfy the numerosity standards. The Class or Sub-Classes are believed to number in the thousands of persons. As a result, joinder of all Class or Sub-Class Members in a single action is impracticable. Class or Sub-Class Members may be informed of the pendency of this Class Action by, among other methods, direct, published and/or broadcast notice.

53. There are questions of fact and law common to the Nationwide Class or Illinois Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class or Sub-Class arising from Defendants' actions include, without limitation, the following:

a. Whether Defendants manufactured and designed the Defective Vehicles without engine immobilizers;

b.    Whether the failure of the vehicles to, among other design failures, have engine immobilizers makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers

c.    Whether the absence of an engine immobilizer, among other design failures, is a material fact in the purchasing of a vehicle;

d.    Whether, in marketing and selling the Defective Vehicles, Defendants failed to disclose the lack of an engine immobilizers and other design failures;

e.    Whether Defendants failed to disclose and/or concealed the material fact that the Defective Vehicles, among other things, did not have engine immobilizers;

f.    Whether Defendants failed to warn adequately of the dangers of vehicles that do not contain engine immobilizers, among other things;

g.    Whether Defendants knew or should have known that the Defective Vehicles did not have engine immobilizers, among other things;

h.    Whether Defendants knew or should have known that the failure of the vehicles to have engine immobilizers, among other things, makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers;

i.    Whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding its knowledge of the defects' dangerous nature and risks of harm;

j.     Whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Defective Vehicles from the consuming public;

k.     Whether the Defective Vehicles are fit for their ordinary purposes;

l.     Whether the Defective Vehicles proved reliable transportation;

m.     Whether the Defective Vehicles are safe;

n.     Whether the Defective Vehicles contain a design defect;

o.     Whether Defendants' conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act; and/or

p.     Whether Defendants' conduct violated the Magnuson Moss Warranty Act.

54.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

55.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members or Sub-Class Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Nationwide Class Members or Illinois Sub-Class Members to protect their interests.

56.     The claims of Plaintiffs are typical of the claims of members of the Nationwide Class and the Illinois Sub-Class. Upon information and belief, the Defective Vehicles all share the same defects. Upon information and belief, the labels, manuals, advertising, and disclosures concerning the Defective Vehicles all fail to reasonably disclose the presence of these defects.

Therefore, the information withheld by Defendants to Plaintiffs and all Nationwide Class or Illinois Sub-Class members was identical.

57.     Plaintiffs are an adequate representative of the Nationwide Class and Illinois Sub-Class because they are a member of both Classes and their interests do not conflict with the interests of the members of the Nationwide Class or Illinois Sub-Class they seek to represent. The interests of the members of the Nationwide Class or Illinois Sub-Class will be fairly and adequately protected by the Plaintiffs and the undersigned counsel, who have extensive experience prosecuting complex class action litigation.

58.     Plaintiffs seek a refund of some or all monies paid as a result of the purchase of the Defective Vehicle that occurred following Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Vehicle.

59.     Plaintiffs also seek compensation for damages incurred beyond the reduced value of their vehicles, including but not limited to the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

60.     Plaintiffs specifically exclude from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Vehicle based on the defects.

61.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Nationwide Class or Illinois Sub-Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the

maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Illinois Sub-Class Members.

62.     Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

63.     Class action treatment is appropriate in this case because Defendants acted, or refused to act, in a manner that was generally applicable to – and often identical to – each member of the Nationwide Class or Sub-Class. Defendants provided vehicles with the same defect to, and withheld the same information from, all members of the Nationwide Class or Illinois Sub-Class and sold vehicles with the same defects.

64.     Notice can be provided to Class Members or Sub-Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

## CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

65.     Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

66.     The acts and practices engaged in by Defendants, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. 815ILCS § 505/1 *et seq.*

67.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

68.     Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts—specifically, the failure to warn or disclose that the vehicles were defective, including that they lacked an engine immobilizer, as well as the representation that the Defective Vehicles meet all federal safety standards—in connection with the sale, distribution or advertisement of the Defective Vehicle in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

69.     Plaintiffs purchased the Defective Vehicle, a product that was falsely represented, as stated above, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and as a result, Plaintiffs suffered economic damages in that the vehicle they purchased was worth less than the vehicle they thought they had purchased had Defendants not omitted and/or misrepresented material facts. Plaintiffs, and other reasonable consumers, had no reasonable information to suggest that the Defective Vehicles lacked an engine immobilizer, failed to meet FMVSS 114, or was otherwise easy to steal and unsafe.

70.     Plaintiffs and the Illinois Sub-Class members acted as reasonable consumers would in light of all circumstances.

71. Defendants' actions and omissions would cause a reasonable person to enter in the sale and transaction that resulted in damages to Plaintiffs and the Illinois Sub-Class.

72. As a result of Defendants' actions and omissions, Plaintiffs and the Illinois Sub-Class suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of money paid as a result of their purchases.

73. These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

74. Plaintiffs and the Illinois Sub-Class also seek injunctive relief, requiring Defendants to fix the Defective Vehicles.

75. At the time of Defendants' design, manufacture, processing, distribution, sale and/or use of the Defective Vehicles, Defendants knew of the dangerous condition of the vehicles, in that they lacked an engine immobilizer making them easy to steal, and supplied them with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and/or theft and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendants specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Vehicles lack of engine immobilizer and ease at which they can be stolen. Defendants' conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Illinois Sub-Class.

WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT

76.     Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

77.     Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class.

78.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

79.     The Defective Vehicles are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

80.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

81.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

82.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

83.     Defendants provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S. C. § 2301(7).

84.     As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for the ordinary purpose of passenger motor vehicles, were not far

easier to steal than other vehicles, and were not unsafe and/or unreliable due to the ease at which they can be stolen.

85.     Defendants breached this implied warranty and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1) because, without limitation, the Defective Vehicles share common design defects, including that they lack engine immobilizers.

86.     These defects render the Defective Vehicles deficient, in that they do not provide safe and reliable transportation, as they are tremendously easy to steal.

87.     A stolen vehicle cannot provide reliable transportation.

88.     A vehicle that is incredibly easy to steal cannot be relied on for transportation.

89.     A stolen vehicle is not a safe vehicle.

90.     A vehicle that is incredibly easy to steal is an unsafe vehicle.

91.     Defendants provided Plaintiffs and the other Class members with an express written warranty in connection with the purchase or lease of their vehicles, as described further below, that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

92.     Defendants made written affirmations of fact that the Defective Vehicles would be free of defects that would prevent ordinary use.

93.     Upon information and belief, Defendants affixed labeling and other written affirmations making specific, performance-related representations related to the nature of the Defective Vehicles, including expressly warranting that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

94.     Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

95.     Any efforts to limit the express and implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void. Any limitations on the express and implied warranties are procedurally unconscionable. Defendants purposefully misrepresented the Defective Vehicles to consumers.

96.     Additionally, there was unequal bargaining power between Defendants, on the one hand, and Plaintiffs and the other Class members, on the other.

97.     Any limitations on the express and implied warranties are substantively unconscionable.

98.     Defendants knew that no engine immobilizers were installed on the Defective Vehicles, among other design failures, and that they were failing to disclose this material fact, thereby misrepresenting the safety, ease of theft, and value of the Defective Vehicles.

99.     Defendants failed to disclose the defects to Plaintiffs and the other Class members even though Defendants were aware of the defects.

100.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.

101.    Specifically, Plaintiffs and each of the other Class members are intended third-party beneficiaries of the implied and written warranties.

102.     The dealers and agents were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided for the Defective Vehicles: the warranty agreements were designed for and intended to benefit consumers.

103.     Finally, privity is also not required because the Defective Vehicles are unsafe and hazardous instrumentalities due to, among other matters, the lack of engine immobilizers.

104.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

105.     Furthermore, affording Defendants an opportunity to cure their breach of warranties would be unnecessary and futile.

106.     Defendants are aware of the problems, are or have attempted to "fix" their 2022 vehicles to eliminate the defects, but are refusing to do anything about the pre-2022 Defective Vehicles.

107.     At the time of sale or lease of each Defective Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

108.     Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

109. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.

110. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

111. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

112. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

113. Additionally, Plaintiffs and each of the other Class members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1), including Defendants being required to fix these vehicles.

## COUNT III - UNJUST ENRICHMENT

114. Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

115. Plaintiffs and the Nationwide Class and/or Illinois Sub-Class members purchased vehicles that they would not have purchased had they known that the vehicles, among other defects, contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers.

116. The Defendants were therefore unjustly enriched at the expense of and to the detriment of the Plaintiffs and the Class.

117.    Plaintiffs and the Nationwide Class and/or Illinois Sub-Class are therefore entitled to restitution from the Defendants, and seek an order requiring the Defendants to disgorge all profits, benefits and other compensation the Defendants obtained from the sale of these products.

WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT IV – BREACH OF IMPLIED WARRANTY

118.    Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

119.    Defendants are merchants with respect to the sale of the Defective Vehicles purchased by Plaintiffs.

120.    Defendants, by selling the Defective Vehicles, impliedly warranted that the vehicles were merchantable with respect to goods of that kind.

121.    Defendants sold the Defective Vehicles to Plaintiffs through its dealership in Illinois.

122.    The Defective Vehicles sold by Defendants to Plaintiffs did not conform with the implied promises made with respect to the labels and material that accompanied the product. Specifically, by failing to reasonably disclose the vehicles did not have engine immobilizers, Defendants implied that the Defective Vehicles were not far easier to steal than other vehicles, were thereby safe, and were worth as much as vehicles that possessed engine immobilizers.

123.    As a result of having no engine immobilizer, among other defects, the Defective Vehicles were not merchantable and Defendants breached their implied warranty of merchantability with respect to the Defective Vehicles.

124.    Had Plaintiffs known that the Defective Vehicles lacked an engine immobilizer, among other defects, making them far easier to steal, and were thereby unsafe and worth less than their sales price, they would not have purchased them or would have paid significantly less for the vehicles. As a result of Defendants' breach of implied warranty, Plaintiffs, and the Nationwide Class and/or Illinois Sub-Class members have suffered economic injuries.

125.    Defendants are being provided notice by receipt of demand made by Plaintiffs on behalf of themselves and the putative class through the filing of this Complaint. In addition, Defendants have actual notice of the defect.

WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT V – BREACH OF EXPRESS WARRANTY

126.    Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

127.    Defendants are and at all relevant times were merchants with respect to motor vehicles under U.C.C. § 2-313.

128.    Upon information and belief, in the course of selling its vehicles, Defendants expressly warranted in writing that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

129.    Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

130. Due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under U.C.C. §§ 2-608 and 2-711.

131. Defendants have been provided notice of these issues by complaints filed against them, including the instant complaint, and, upon information and belief, by numerous communications sent by customers before or within a reasonable amount of time after the allegations of vehicle defects became public.

132. Notice should be deemed unnecessary in light of Defendants' refusal to take corrective action despite the notice as described above.

133. As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT VI – NEGLIGENCE

134. Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

135. Defendants designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Vehicles at issue.

136. Defendants held themselves out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying, and selling the Defective Vehicles at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

137. Defendants knew or should have known that the Defective Vehicles contained defects including that, among other things, Defendants manufactured and designed them without

engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

138.    Defendants knew or should have known that the Defective Vehicles are incredibly easy to steal.

139.    As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Product at issue, Defendant had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its products; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply its product free from defects and/or latent defects; the duty to adequately warn of product defects and/or hazards, which duty continued even after the sale of said products; and the duty to market, advertise, sell and supply products with adequate information and warnings about the unacceptable risk of theft their design failures create.

140.    Defendant failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiff and the Nationwide Class and/or Illinois Sub-Class members.

141.    Plaintiffs used these Defective Vehicles in a manner ordinarily anticipated by Defendant.

142.    As a direct and proximate result of the dangerous and defective condition of Defendant's products and Defendants' failure to warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Illinois Sub-Class members have suffered economic injuries.

143.     These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

144.     At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

145.     Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

146.     Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Nationwide Class and/or Illinois Sub-Class members.

147.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT VII STRICT LIABILITY, DESIGN DEFECT

148.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

149.     Defendants designed, manufactured, and/or supplied the Defective Product in question within the ordinary course of its business.

150.     Plaintiffs purchased and own a Defective Vehicle.

151.     The Defective Vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the Defective Vehicles are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

152.     Defendant knew or should have known of the dangerous and defective nature of the Defective Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

153.     Notwithstanding, Defendants failed to take safety precautions to prevent economic injury to Plaintiffs and failed to warn and/or instruct Plaintiffs and others of the defective and unreasonably dangerous nature of said vehicles.

154.     Defendant's defective and unreasonably dangerous vehicles directly and proximately caused economic injuries to Plaintiffs and the Nationwide Class and/or Illinois Sub-Class members.

155.     Plaintiffs drive the vehicles and then park them and leave them unattended, which is a manner of use reasonably anticipated by Defendants.

156.     As a result of the Defective Vehicles defect, which make them incredibly easy to steal, that are unreasonably dangerous and defective when put to the use anticipated by Defendants.

157.     As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Nationwide Class and/or Illinois Sub-Class members have suffered economic injuries.

158.     These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle without that is not defective. Other damages include, but are not

limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums Plaintiffs have or may face due to the design defect, and the stigma associated with the Defective Vehicles.

159.  At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

160.  Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

161.  Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Nationwide Class and/or Illinois Sub-Class members.

162.  At the time of Defendant's design, manufacture, processing, distribution, sale and/or use of the Defective Product, Defendant knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Nationwide Class and/or Illinois Sub-Class.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

a.     That the Court enter an order certifying the Class, appointing Plaintiffs as representative of the Nationwide Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b.     Alternatively, that the Court enter an order certifying the Illinois Sub-Class, appointing Plaintiffs as representative of the Illinois Sub-Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Illinois Sub-Class;

c.     For a judgment against Defendants for the causes of action alleged against it;

d.     For damages in an amount to be proven at trial;

e.     For appropriate injunctive relief, enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles;

f.     For attorney's fees;

g.     For Plaintiffs' costs incurred; and

h.     For such other relief in law or equity as the Court deems just and proper.

## DESIGNATION AND DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated August 4, 2022

Respectfully submitted,

RUBENS KRESS & MULHOLLAND

TOBY P. MULHOLLAND
77 W. Washington, Suite 701
Chicago, Illinois 60602
Telephone: 312-201-9640
Facsimile: 312-252-5253
tpm@rkminjurylaw.com

And

HUMPHREY, FARRINGTON & McCLAIN

_____*/s/ Kevin D. Stanley*_____
Kenneth B. McClain   *To be admitted Pro Hac Vice*
Jonathan M. Soper       *To be admitted Pro Hac Vice*
Kevin D. Stanley          *To be admitted Pro Hac Vice*
Chelsea M. Pierce        *To be admitted Pro Hac Vice*
221 West Lexington, Ste. 400
P.O. Box 900
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
jms@hfmlegal.com
kds@hfmlegal.com
cmp@hfmlegal.com

**ATTORNEYS FOR PLAINTIFF**