# EXHIBIT 20

Query     Reports     Utilities     Help     Log Out

Cat08,Clay

# U.S. District Court
## Northern District of Ohio (Toledo)
### CIVIL DOCKET FOR CASE #: 3:22-cv-01432-JGC

| | |
|---|---|
| Slovak et al v. KIA America Inc. et al | Date Filed: 08/11/2022 |
| Assigned to: Judge James G. Carr | Jury Demand: Plaintiff |
| Cause: 15:2301 Magnuson-Moss Warranty Act | Nature of Suit: 355 Motor Vehicle Prod. Liability |
| | Jurisdiction: Diversity |

**Plaintiff**

**Jo Taylor Slovak**                    represented by **Melissa Ann Payne**
Payne Law
Ste. 250
26600 Detroit Road
Westlake, OH 44054
757-768-9029
Fax: 216-294-4839
Email: melissa@vincentesq.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel Newman**                    represented by **Melissa Ann Payne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Erin Davies**                    represented by **Melissa Ann Payne**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America Inc.**

**Defendant**

**Hyundai Motor America Corporation**

**Defendant**

**Hyundai Kia America Technical Center Inc.**

**Defendant**

**Kia Corporation**

**Defendant**

**Hyundai Motor Co.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/11/2022 | 1 | **Complaint** with jury demand against All Defendants. Filing fee paid $ 402, Receipt number AOHNDC-11563629.. Filed by Erin Davies, Jo Taylor Slovak, Daniel Newman. (Attachments: # 1 Civil Cover Sheet) (Payne, Melissa) (Entered: 08/11/2022) |
| 08/11/2022 | | Judge James G. Carr assigned to case. (S,DM) (Entered: 08/11/2022) |
| 08/11/2022 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Darrell A. Clay. (S,DM) (Entered: 08/11/2022) |
| 08/11/2022 | 2 | Magistrate Consent Form issued. Summons were not attached and were not issued. (S,DM) (Entered: 08/11/2022) |
| 08/11/2022 | | **Notice re Prompt Service.** Counsel for Plaintiff is responsible for **promptly** serving the Complaint on Defendant(s) upon receiving the issued summons from the Clerk and, after service has been perfected, electronically filing a Return of Service or an executed Waiver of Service for each Defendant. <br><br> Service is to be accomplished pursuant to Fed. R. Civ. P. 4, which includes provisions for personal service and waiver of service, and Local Rule 4.2. If you wish the Clerk to serve the Complaint on Defendant(s) (a seldom used alternative because it does not save time or money), you **must** provide the Clerk's office with copies of the Complaint along with other necessary documents, in the manner set forth in Local Rule 4.2(a). (S,DM) (Entered: 08/11/2022) |
| 08/31/2022 | 3 | First **Amended complaint** against All Defendants and adding new party defendant(s) Kia Corporation and Hyundai Motor Co.. Filed by Erin Davies, Jo Taylor Slovak, Daniel Newman. (Payne, Melissa) (Entered: 08/31/2022) |
| 08/31/2022 | 4 | **Notice** for Transfer and consolidation of related actions in the Northern District of Ohio pursuant to 28 U.S.C. § 1407 (MDL) filed by Erin Davies, Daniel Newman, Jo Taylor Slovak. (Payne, Melissa) Modified text/term motion on 9/1/2022 (D,TM). (Entered: 08/31/2022) |
| 09/08/2022 | 5 | Praecipe for issuance of Original Summons filed by All Plaintiffs. (Attachments: # 1 Kia Corporation Summons, # 2 Hyundai Motor Co. Summons, # 3 Hyundai Motor America Summons, # 4 Kia America Inc. Summons)(Payne, Melissa) (Entered: 09/08/2022) |
| 09/09/2022 | 6 | |

| | Original Summons issued to counsel for service upon Hyundai Motor America Corporation c/o Corporation Service Company, Hyundai Motor Co. c/o Jose Munoz, Kia America Inc., Kia Corporation c/o Noi-Myung Kim. (S,DM) (Entered: 09/09/2022) |
|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/19/2022 16:16:30 | | | |
| PACER Login: | jb0014 | Client Code: | 71273-10008 |
| Description: | Docket Report | Search Criteria: | 3:22-cv-01432-JGC |
| Billable Pages: | 2 | Cost: | 0.20 |

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Jo Taylor Slovak<br>on behalf of herself and all others similarly<br>situated | ) <br>) <br>) <br>) <br>) | Case No.<br><br><br><br>FIRST AMENDED COMPLAINT – CLASS |
| Daniel Newman<br>on behalf of himself and all others similarly<br>situated | ) <br>) <br>) <br>) | ACTION |
| AND | ) <br>) | |
| Erin Davies<br>on behalf of herself and all others similarly<br>situated. | ) <br>) <br>) <br>) <br>) | |
| *Plaintiffs,* | ) <br>) <br>) | |
| v. | ) <br>) | |
| Kia America, Inc., | ) <br>) | |
| Hyundai Motor America, | ) <br>) | |
| Kia Corporation, | ) <br>) | |
| AND | ) <br>) | |
| Hyundai Motor Co., | ) <br>) | |
| *Defendants.* | ) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) | |

## CLASS ACTION COMPLAINT &
## DEMAND FOR JURY TRIAL

Now come Plaintiffs Jo Taylor Slovak, Daniel Newman, and Erin Davies,  individually and on behalf of all other persons similarly situated, for their complaint for damages against Defendants Kia America, Inc.; Hyundai Motor America, Kia Corporation, and Hyundai Motor Co. (collectively, "Defendants").

## NATURE OF ACTION

1.      This is a class action claim arising from a defect in Defendants' vehicles which make them easy to steal, unsafe, and worth less than they should be if they did not have the defect.

2.      Defendants manufacture, design, produce, distribute, and sell the "Defective Vehicles," which are hereby defined as:

    a.  3rd Generation Kia Sportage model years 2011-2016

    b.  4th Generation Kia Sportage model years 2017-2022

    c.  1st Generation Kia Soul model years 2010-2013

    d.  2nd Generation Kia Soul model years 2014-2019

    e.  3rd Generation Kia Soul model years 2019-present

    f.  2nd Generation Kia Forte model years 2014-2018

    g.  3rd Generation Kia Forte model years 2019-present

    h.  3rd Generation Kia Optima model years 2011-2015

    i.  4th Generation Kia Optima model years 2016-2020

    j.  3rd Generation Kia Rio model years 2012-2017

    k.  4th Generation Kia Rio model years 2018-present

l.  3rd Generation Kia Sedona model years 2015-2021

m.  2nd Generation Kia Sorento model years 2011-2015

n.  3rd Generation Kia Sorento model years 2016-2020

o.  4th Generation Kia Sorento model years 2021-present

p.  1st Generation Kia Telluride model years 2020-present

q.  5th Generation Hyundai Elantra model years 2011-2016

r.  6th Generation Hyundai Elantra model years 2016-2020

s.  7th Generation Hyundai Elantra model years 2021-preesnt

t.  5th Generation Hyundai Sonata model years 2011-2016

u.  6th Generation Hyundai Sonata model years 2017-2020

v.  4th Generation Hyundai Accent model years 2012-2017

w.  5th Generation Hyundai Accent model years 2018-2022

x.  3rd Generation Hyundai Santa Fe model years 2013-2018

y.  4th Generation Santa Fe model years 2019-present

z.  2nd Generation Hyundai Tucson model years 2010-2015

aa.  3rd Generation Hyundai Tucson model years 2016-2021

bb.  4th Generation Hyundai Tucson model years 2022-present

3.

4.  Defendants did not disclose this defect, which is a material fact, and a fact that a reasonable person would rely on when purchasing a vehicle.

5.  During the relevant class period, Defendants sold these Defective Vehicles (as defined below) at multiple locations throughout the state of Ohio and the United States.

6. During the relevant class period, Defendants sold the Defective Vehicles to Plaintiffs and other reasonable consumers without disclosing the fact that these vehicles had a defect which made them easy to steal, unsafe, and worth less than they should be if they did not have the defect.

7. As reported by 10WBNS, of the 4,000 vehicles reported stolen in the City of Columbus, 1,500 were manufactured by Kia or Hyundai.[1]  Kia and Hyundai thefts in Columbus increased by 458 % from 2021 to 2022.[2]

8. Plaintiffs bring this action on their own behalf and as representatives of a class of persons who purchased a Defective Vehicle that was manufactured, produced, distributed, and/or sold by Defendants. This matter arises out of negligent acts, errors and omissions, including those for which Defendants are strictly liable, committed by the Defendants against Plaintiffs causing Plaintiffs and the putative class to suffer economic injury.

9. Plaintiffs bring this action on their own behalf and as representatives of a class of similarly situated persons to recover damages for violations of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq*., the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.,* among other claims, for economic and injunctive relief against Defendants which manufactured, tested, distributed, promoted and sold the Defective Vehicles.

10. Plaintiffs are "persons" and have purchased a Defective Vehicle in a "sale", as those terms are defined in, Ohio Rev. Code § 1345.01 *et seq*., and under the Magnuson Moss Warranty Act.

---

[1] https://www.10tv.com/article/news/crime/kia-theft-victim-gets-car-stolen-for-third-time/530-7f4587fd-c054-4f7c-885c-214d334c0e31
[2] https://www.10tv.com/article/news/crime-tracker/stolen-kias-hyundais-in-columbus/530-2d11ff60-4c7d-493e-98d5-5915aca5ee86

11.     At the time the vehicle was purchased, Plaintiffs were unaware that the vehicle was defective and that it was not fit for the ordinary purposes for which the product is used in that it is easy to steal, unsafe, and worth less than it should be if it did not have the defect.

## PARTIES

12.     Plaintiff Taylor Slovak is a citizen of the state of Ohio.  Taylor Slovak is the driver of her husband's, Daniel Newman's 2019 Kia Sportage and has been the victim of vehicle theft.

13.     Plaintiff Daniel Newman is a citizen of the state of Ohio, and the owner of a 2019 Kia Sportage and his vehicle has been stolen on one occasion.

14.     Plaintiff Erin Davies is a citizen of the state of Ohio.  Plaintiff Davies is the owner of a 2012 Hyundai Elantra, and has been the victim of vehicle theft.

15.     Specifically, Plaintiff Davies purchased a 2012 Hyundai Elantra on or about 2012 at Taylor Hyundai located at 12681 Eckel Junction Rd, Perrysburg, OH 43551for personal, family, or household purposes.

16.     Plaintiff Davies, on behalf of herself and the putative class, seek a refund for monies paid as a result of their purchase of the Defective Vehicles, and further seeks injunctive relief, enjoining Defendants from selling the Defective Vehicles, and requiring Defendants to fix the defect.

17.     On information and belief, Defendant, Kia America, Inc., is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

18.    Defendant Kia America, Inc. is licensed to do business in the state of Ohio and has appointed its statutory agent as CT Corporation System located at 4400 Easton Commons Way Suite 125 Columbus OH 43219.

19.    On information and belief, Defendant, Hyundai Motor America, is a California corporation that maintains its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Defendant Hyundai Motor America is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

20.    Defendant Hyundai Motor America is licensed to do business in the state of Ohio and has appointed its statutory agent as Corporation Service Company located at 3366 Riverside Drive, Suite 103, Upper Arlington ,OH 43221.

21.    Defendant Kia Corporation is a foreign corporation at all times doing business in Ohio, and service of process upon this Defendant may be had by serving:
President, Noi-Myung Kim at: 231231, Yangjae-Dong, Seocho-Ku, Seoul, 137-928, Republic of Korea.

22.    Defendant Hyundai Motor Co. is a foreign corporation at all times doing business in Ohio, and service of process upon this Defendant may be had by serving the president José Muñoz at 12 Heolleung-ro Seocho-gu, Seoul, 06797, Republic of Korea.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiffs brings this action on behalf of a class which numbers in the thousands, (2) Plaintiffs (Ohio) and Defendants (California, Michigan, and

the Republic of Korea) are citizens of different states and foreign entities, and (3) the aggregate amount in controversy exceeds $5,000,000. See 28 U.S.C. § 1332(d). Plaintiff is bringing a putative nationwide class that includes all people that purchased a Defective Vehicle. On information and belief, Defendants have sold thousands of Defective Vehicles throughout Ohio and the United States, totaling millions upon millions of dollars in sales.

24.     Hyundai Motor Co. cannot deny personal jurisdiction because Hyundai Motor Co. placed the Defective Vehicles into the stream of commerce knowing full well that the Defective Vehicles could very well ultimately wind up in Ohio and be driven by Ohio residents on Ohio roads.

25.     In short, Hyundai Motor Co. is in the business of the manufacture of vehicles, including the vehicle which caused the Class members' injuries complained of herein. Hyundai Motor Co. also derives substantial profit from the state of Ohio.

26.     Hyundai Motor Co., in no way, shape, or form ever restricted the Defective Vehicles, which caused the Class members and Sub-Class members damages, from being distributed, sold, or used in Ohio. Hyundai Motor Co. has purposefully availed itself of the privilege and benefits of conducting activities within Ohio.

## FACTS

27.     Hyundai Motor Co. is a multi-national, multi-billion-dollar corporation that designs, develops, manufactures, assembles, markets and sells automobiles, and related component and replacement parts in Asia, Europe, North America, and internationally.

28.     Hyundai Motor Co.  began selling its vehicles and powertrains in the United States in 1989.

29.     Hyundai Motor Co.'s products include cars and motor vehicles, automobile engines, transmissions, and press parts. These products are distributed throughout North America, including the United States, and OH.

30.     For years up until the present date, Hyundai Motor Co. has been aware and is currently aware that thousands of its vehicles and other products were, still and are arriving in Ohio through the stream of commerce and being sold in Ohio.

31.     Furthermore, Hyundai Motor Co. is aware that it has end users of its vehicles and other products located in Ohio.

32.     Hyundai Motor America is the distributor for Hyundai Motor Co. vehicles and other products.

33.     Hyundai Motor Co. is aware of the distribution system's operation, and Hyundai Motor Co. knows that it benefits economically from the sale of Hyundai Motor Co. vehicles and other products in Ohio.

34.     Upon information and belief, Hyundai Motor Co. could instruct Hyundai Motor America to refuse to ship vehicles and other products to Ohio. However, Hyundai Motor Co., has never, in any way, shape, or form, restricted the Defective Vehicles which caused the Class members injuries. Hyundai Motor Co., never, in any way, shape, or form, restricted any of its vehicles or products that it designs, manufactures, or distributes from being distributed, sold, or used in Ohio.

35.     Hyundai Motor Co. also knows that there are consumers who are looking for Hyundai Motor Co. vehicles and other products in Ohio, and Hyundai Motor Co. helps them buy vehicles and other products in Ohio by providing them with information about their vehicles and products.

36.     Upon information and belief, Hyundai Motor Co. substantially funds marketing its products, including the Defective Vehicles. Indeed, for many years up until the present, Hyundai Motor Co. has made, approved, and/or distributed advertisements or commercials or other marketing materials touting the safety of Hyundai Motor Co. vehicles and how much Hyundai Motor Co. supposedly cares about safety.

37.     Advertisements and marketing materials were and are targeted to United States consumers, including Ohio residents, to entice them to purchase Hyundai Motor Co. vehicles, including the model of the Defective Vehicles.

38.      Hyundai Motor Co. made, approved, and/or distributed these types of materials to entice consumers and ultimate users, including those in Ohio, to  purchase or lease Hyundai Motor Co. vehicles—whether used or new.

39.     Hyundai Motor Co. knew that American consumers—including consumers in Ohio—would rely upon its statements when deciding whether to purchase or lease a Hyundai Motor Co. vehicle.

40.     U information and belief Hyundai Motor Co. provides a warranty for certain Hyundai vehicles, including vehicles in Ohio, and Hyundai Motor Co. will reimburse Hyundai Motor America for warranty costs.

41.     Upon information and belief, Hyundai Motor Co. routinely corresponds and works with the National Highway Traffic Safety Administration (NHTSA) on recalls and other issues, including recalls or fixes to problems for vehicles owned and used by Ohio residents.

42.     Hyundai Motor Co. designs, manufactures, tests, assembles, sells, distributes, and places Hyundai Motor Co. model vehicles and their component parts into the stream

of commerce, such as the Defective Vehicles involved in the incident made the basis of this suit.

43. Hyundai Motor Co. placed the Defective Vehicles into the stream of commerce where it ultimately ended up in Ohio.

44. Defendants' actions giving rise to Plaintiff's injury occurred in Ohio.

45. Hyundai Motor Co. has purposefully availed itself in Ohio, and due process and fair play and substantial justice are honored by this civil action going forward in this Ohio Court.

46. There is little or no burden on Hyundai Motor Co. litigating this case in this Ohio Court. In contrast, it would be a tremendous burden and great inefficiency and unnecessary delay imposed on the Plaintiff to litigate this case in another forum because Ohio has an interest in overseeing this litigation which involves injuries to Ohio residents and defective products used in Ohio.

47. The efficient resolution of this civil action can only go forward in this Ohio Court, and public policy favors resolution of this dispute in this Ohio Court.

48. Hyundai Motor Co. cannot deny personal jurisdiction because Hyundai Motor Co. placed the Defective Vehicles into the stream of commerce under circumstances such that Hyundai Motor  Co. should reasonably anticipate being haled into court in Ohio.

49. Kia Corporation is a multi-national, multi-billion-dollar corporation that designs, develops, manufactures, assembles, markets and sells automobiles, and related component and replacement parts in Asia, Europe, North America, and internationally. North America is Kia's biggest market.

50.     Kia Corporation began selling its vehicles and powertrains in the United States in 1992.

51.     Kia Corporation's products include cars and motor vehicles, automobile engines, transmissions, and press parts. These products are distributed throughout North America, including the United States, and including Ohio.

52.     For years up until the present date, Kia Corporation has been aware/is aware that thousands upon thousands of its vehicles and other products were (and are) arriving in Ohio through the stream of commerce and being sold in Ohio.

53.     Indeed, for years, Kia Corporation was (and is) aware that thousands upon thousands of its vehicles and other products were (and are) arriving in Ohio through other states.

54.     Furthermore, Kia Corporation is aware that it has end users of its vehicles and other products located in Ohio.

55.     Kia America, Inc. is the distributor for Kia Corporation vehicles and other products. Kia Corporation is aware of the distribution system's operation, and Kia Corporation knows that it benefits economically from the sale in Ohio of Kia Corporation vehicles and other products.

56.     Kia Corporation could, if it wanted to, instruct Kia America, Inc. to refuse to ship vehicles and other products to Ohio. However, Kia Corporation, has never, in any way, shape, or form, restricted the Defective Vehicles which caused the Class members' injuries. Nor has Kia Corporation, ever, in any way, shape, or form, restricted any of its vehicles or products that it designs, manufactures, or distributes from being distributed, sold, or used in Ohio.

57. Thus, it is clear that Kia Corporation's vehicles and other products arrive in Ohio either through direct shipment or through the stream of commerce and that Kia Corporation is aware of this fact.

58. Kia Corporation also knows that there are consumers who are looking for Kia Corporation vehicles and other products in Ohio, and Kia Corporation helps them buy vehicles and other products in Ohio by providing them with information about their vehicles and products.

59. Kia Corporation spends at least hundreds of thousands, if not millions, of dollars per year marketing its products, including the Defective Vehicles. Indeed, for many years up until the present, Kia Corporation has made, approved, and/or distributed advertisements or commercials or other marketing materials touting the safety of Kia Corporation vehicles and how much Kia Corporation supposedly cares about safety.

60. Advertisements and marketing materials were and are targeted to United States consumers, including Ohio residents, to entice them to purchase Kia Corporation vehicles, including the model of the Defective Vehicles.

61. Kia Corporation made, approved, and/or distributed these types of materials to entice consumers and ultimate users, including those in Ohio, to (1) purchase Kia Corporation vehicles—whether used or new; (2) to drive Kia Corporation vehicles— whether used or new; and (3) to ride in Kia Corporation vehicles—whether used or new.

62. Kia Corporation knew that American consumers—including consumers in Ohio— would rely upon its statements when deciding whether to purchase a Kia Corporation vehicle, whether to drive a Kia Corporation vehicle, or whether to ride in a Kia Corporation vehicle.

63. Based upon information and/or belief, the Defective Vehicles did not meet all Federal Motor Vehicle Safety Standards (FMVSS).

64. Kia Corporation provides a warranty for certain Kia vehicles, including vehicles in Ohio, and upon information and belief, Kia Corporation will reimburse Kia America, Inc. for warranty costs.

65. Upon information and belief, Kia Corporation routinely corresponds and works with the National Highway Traffic Safety Administration (NHTSA) on recalls and other issues, including recalls or fixes to problems for vehicles owned and used by Ohio residents.

66. Kia Corporation designs, manufactures, tests, assembles, sells, distributes, and places Kia Corporation model vehicles and their component parts into the stream of commerce, such as the Defective Vehicles involved in the incident made the basis of this suit.

67. Kia Corporation placed the Defective Vehicles into the stream of commerce where it ultimately ended up in Ohio.

68. Defendants' actions giving rise to Plaintiff's injury occurred in Ohio.

69. Kia Corporation has purposefully availed itself in Ohio, and due process and fair play and substantial justice are honored by this civil action going forward in this Ohio Court.

70. There is little or no burden on Kia Corporation litigating this case in this Ohio Court. In contrast, it would be a tremendous burden and great inefficiency and unnecessary delay imposed on the Plaintiff to litigate this case in another forum because Ohio has an interest in overseeing this litigation which involves injuries to Ohio residents and defective products used in Ohio.

71.     The efficient resolution of this civil action can only go forward in this Ohio Court, and public policy favors resolution of this dispute in this Ohio Court.

72.     Kia Corporation cannot deny personal jurisdiction because Kia Corporation placed the Defective Vehicles into the stream of commerce under circumstances such that Kia Corporation should reasonably anticipate being haled into court in Ohio.

73.     Kia Corporation cannot deny personal jurisdiction because Kia Corporation placed the Defective Vehicles into the stream of commerce knowing full well that the Defective Vehicles could very well ultimately wind up in Ohio and be driven by Ohio residents on Ohio roads.

74.     This Court has personal jurisdiction over Defendants pursuant to Ohio Rev. Code §2307.382 in that Defendants transact business within the state of Ohio and committed one or more tortious acts within the state of Ohio.

75.     In short, Kia Corporation is in the business of the manufacture of vehicles, including the vehicle which caused the Class members' injuries complained of herein. Kia Corporation also derives substantial profit from the state of Ohio.

76.     Kia Corporation, in no way, shape, or form ever restricted the Defective Vehicles, which caused the Class members and Sub-Class members damages, from being distributed, sold, or used in Ohio. Kia Corporation has purposefully availed itself of the privilege and benefits of conducting activities within Ohio.

77.     Defendants transacted business and/or committed tortious acts within the state of Ohio. Defendants design, manufacture, distribute, and/or sell dangerous and/or defective vehicles in Ohio. Defendants placed the Defective Vehicles and dangerous products into the stream of

commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Ohio from which Plaintiffs' claims arise.

78.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because it is the district in which Plaintiff Davies purchased the vehicle.

79.    Kia Corporation, formerly Kia Motors totes that its safety campaign "helped 53,249 parents and children develop correct safety habits while promoting road safety awareness."[3] However, the defect in Kia vehicles allows young teenagers, without drivers licenses, to steal vehicles.

80.    Kia Corporation, formerly Kia Motors in 2017 explained that "quality is fundamental to Kia Motors not only because it is directly connected to our customers' safety and emotional satisfaction, but also because it is our raison d'être. To support our efforts aimed at quality innovation, we are applying the 'Q-Standard', a stronger set of criteria than previously applied in car development."[4]  However, as early as 2010, the Defective vehicles did not have immobilizers installed as standard features.

81.    Upon information and belief the generations of vehicles prior to the Defective vehicles came equipped with immobilizers as a standard feature.

82.    Kia Corporation experienced at 41% increase in net profit in the second quarter of 2022 compared to the second quarter of 2021.[5]

83.    The Defective Vehicles made the subject of this suit, which are manufactured, designed, produced, distributed, and sold by Defendants, are easy to steal, unsafe, and worth less than they would be if they did not have the defect.

---

[3] Kia Motors 2017 Annual Report At 45
[4] Kia Motors 2017 Annual Report at 28.
[5] Kia Corporation 2022 Q2 Business Results, July 22, 2022.

84. All the Defective vehicles share the same defects, and therefore an owner of any one of them may bring a class action on behalf of the entire class.

85. Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiffs, in Defendants' advertising, labeling or otherwise that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that are easy to steal, unsafe, and worth less than they should be, if they were not defective.

86. The vehicles are defective in that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that make it virtually impossible to start a vehicle without a key unless the vehicle's computer has been altered.

87. This means that all a thief needs to do to steal one of the Defective Vehicles is remove a thin piece of plastic that covers the ignition column, exposing a fragile component that can also easily be removed, The thief can then stick a USB drive, a knife, or something that fits in the resulting hole to start the vehicle without a key or electronic signal from a key. Considering how many people charge their cell phones in their cars, the necessary instrument needed to steal a Defective Vehicle is usually readily at hand to a would-be thief.

88. Defendants knew their vehicles were defective in this manner but failed and refused to disclose these defects to customers, despite having the capability and means to do so.

89. Defendants had the capability and means to add an engine immobilizer or similar device, yet they failed to do so.

90. An engine immobilizer is a security system that prevents a modern car from starting by necessitating the presence of a smart key, or key fob to be present and transmitting a

unique passcode to the car's main computer (ECU) via a signal called Radio Frequency Identification (RFID).

91. The unique passcode is akin to a fingerprint and the ECU acts like a scanner taking an image of that fingerprint.

92. The car's main computer is commonly known as the Engine Control Unit (ECU), Engine Control Module (ECM), or a Powertrain Control Module (PCM).

93. The ECU acts like the brain of the car. It controls the activation of the fuel injectors, the firing of the spark plugs, and many other functions necessary for the car to run.

94. If the ECU does not send these signals, it is impossible for the car to run.

95. A smart key, or key fob, is equipped with an RFID transponder chip. These smart keys, and key fobs, require small batteries to operate. They almost always have secondary functions that utilize the RFID signal they produce.

96. The functions controlled by an immobilizer include unlocking the car remotely, opening the trunk, and in some cases, starting the engine remotely.

97. Many immobilizers will sound an alarm if the wrong code is transmitted to the ECU when the key is turned. Some immobilizer systems will notify a security service if a theft attempt is undertaken. The security service will then call the user to determine whether they are in the car and if there has been an attempted theft.

98. Upon information and belief, some car companies have upgraded their immobilizers to a two-tier system that utilizes a fixed code and a changeable code. The changeable code is written to the smart key or key fob by the ECU and altered every time the car is started. When the car is started the ECU checks the permanent code first, then requests the

second changing code, which it compares to the one saved in its database. If both the codes match the ECU starts the car.

99. From 1995, when ignition immobilizers were becoming the standard for all vehicles sold in Europe, to 1999, thefts of automobiles equipped with electronic immobilizers decreased by 90%.[6]

100. -Kias and Hyundais now account for almost half of all cars stolen in some metro areas.[7]

101. The problem of a lack of an immobilizer leading to a vehicle to be prone to theft has caused Progressive Insurance has restricted coverage to owners of certain Kia and Hyundai models.[8]

## CLASS ACTION ALLEGATIONS

102. Plaintiffs brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of themselves and the following class of similarly situated persons: all persons who purchased a Defective Vehicle.

103. Class Vehicle: All models of Kia and Hyundai that lacks an immobilizer device, thus containing the Defect as alleged herein.

---

[6]
https://www.theautochannel.com/news/press/date/19990506/press022946.html?utm_source=npr_newsletter&utm_medium=email&utm_content=20220819&utm_term=7132032&utm_campaign=money&utm_id=42160537&orgid=650&utm_att1=

[7] https://www.motorbiscuit.com/some-u-s-cities-almost-half-car-theft-kia-hyundai/?utm_source=npr_newsletter&utm_medium=email&utm_content=20220819&utm_term=7132032&utm_campaign=money&utm_id=42160537&orgid=650&utm_att1=

[8] https://www.thedenverchannel.com/news/local-news/denver-area-hyundai-and-kia-owners-struggle-with-insurance-woes-as-thefts-climb?utm_source=npr_newsletter&utm_medium=email&utm_content=20220819&utm_term=7132032&utm_campaign=money&utm_id=42160537&orgid=650&utm_att1=

104.    A "Nationwide Class" based on claims of unjust enrichment, violations of the Magnuson Moss Warranty Act, and/or breach of express and/or implied warranty consisting of all customers who purchased any of the Defective Vehicles in the United States..

105.    Ohio Subclass: All persons residing in Ohio who meet the definition of "Consumer" as that term is defined in Ohio Rev. Code. §1345.01 and who therefore have standing to assert a claim under the Ohio Consumer Sales Practices Act in connection with the purchase and/or lease of a Class Vehicle.

106.    There are questions of fact and law common to the nationwide Class or Ohio Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the nationwide Class or Ohio Sub-Class arising from Defendants' actions include, without limitation, the following:

cc.  Whether Defendants manufactured and designed the Defective Vehicles without engine immobilizers;

dd.  Whether the failure of the vehicles to have engine immobilizers installed makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers;

ee.  Whether the absence of an engine immobilizer is a material fact in the purchasing of a vehicle;

ff.  Whether, in marketing and selling the Defective Vehicles, Defendants failed to disclose the lack of engine immobilizers;

gg.  Whether Defendants failed to disclose and/or concealed the material fact that the Defective Vehicles, among other things, did not have engine immobilizers;

hh. Whether Defendants failed to warn adequately of the dangers of vehicles that do not contain engine immobilizers;

ii. Whether Defendants knew or should have known that the Defective Vehicles did not have engine immobilizers;

jj. Whether Defendants knew or should have known that the failure of the vehicles to have engine immobilizers makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers;

kk. Whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding its knowledge of the defects' dangerous nature and risks of harm;

ll. Whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Defective Vehicles from the consuming public;

mm. Whether Defendants' conduct violated the Ohio Consumer Sales Practices Act;

nn. Whether Defendants' conduct violated the Magnuson Moss Warranty Act.

107. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

108. A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Nationwide Class Members

or Ohio Sub-Class Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants.

109. The claims of Plaintiffs are typical of the claims of members of the nationwide Class and the Ohio Sub-Class. Upon information and belief, the Defective Vehicles all share the same defects. Upon information and belief, the labels, manuals, advertising, and disclosures concerning the Defective Vehicles all fail to reasonably disclose the presence of these defects. Therefore, the information withheld by Defendants to Plaintiffs and all nationwide Class or Ohio Sub-Class members was identical.

110. Plaintiffs are an adequate representative of the Nationwide Class and Ohio Sub-Class because they are a member of both Classes and their interests do not conflict with the interests of the members of the Nationwide Class or Ohio Sub-Class they seek to represent. The interests of the members of the nationwide Class or Ohio Sub-Class will be fairly and adequately protected by the Plaintiffs and the undersigned counsel, who have experience prosecuting complex mass tort litigation.

111. Plaintiffs seek a refund of some or all monies paid as a result of the purchase of the Defective Vehicle that occurred following Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Vehicle.

112. Plaintiffs specifically exclude from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Vehicle based on the defects. This class action seeks only the economic and injunctive relief requested herein to which class members are entitled under the Ohio Consumer Sales Practices Act and other claims pled.

113. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the nationwide Class or Ohio Sub-Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Ohio Sub-Class Members.

114. Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

115. Class action treatment is appropriate in this case because Defendants acted, or refused to act, in a manner that was generally applicable to – and often identical to – each member of the Nationwide Class or Ohio Sub-Class. Defendants withheld the same information from all members of the Nationwide Class or Ohio Sub-Class and sold vehicles with the same defects. Notice can be provided to Nationwide Class Members or Ohio-Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

## TOLLING OF THE STATUTE OF LIMITATIONS

116. Plaintiffs and the Class had no way of knowing about the Defect in their respective Class Vehicles because Defendants concealed it.

117. Within the applicable period of limitations, certain Plaintiffs and members of the Class could not have discovered through the exercise of reasonable diligence that Defendants were concealing the existence and nature of the Defect.

118.     Even in the event of preceding occurrences of theft, an ordinary consumer, without sophisticated knowledge of mechanical systems and antitheft devices, would not and could not suspect that his or her vehicle that was stolen was, in fact, attributable to a pervasive Defect because Defendants withheld this information and pointed to their express warranties, which purport to disclaim liability for these damages.

119.     Indeed, it was not until thefts exploded in Columbus—all occurring the same way and spreading across various social media outlets—that Defendants' decades–long obfuscation of the Defect became transparent.

120.     All applicable statute of limitations have therefore been tolled by operation of the discovery rule.

### *Fraudulent Concealment Tolling*

121.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active campaign to fraudulently conceal the existence and nature of the Defect through the period relevant to this action.

122.     Instead of disclosing the Defect in the Class Vehicles and the palpable threat it poses to public safety, Defendants continued to falsely represent that its automobiles were safe, reliable, of high quality, and designed with the latest technological features to keep their drivers safe.

123.     In doing so, however, Defendants carefully sought to insulate themselves from liability through curated express warranties that—although advertised by Kia and Hyundai as industry–leading—purport to disclaim responsibility for both design defects and damages resulting from any theft.

124.     As the Defect is not readily observable and the average consumer is not technically savvy enough to understand, in isolation, why his or her vehicle may have been stolen, the increasing number of thefts of Defendants' vehicles was not fully appreciated by anyone except Defendants; that is, the only parties armed with the most data about this growing threat, which was beginning to cluster in specific areas around the United States, and the series of design flaws comprising the Defect.

125.     Because Defendants were and remain under a constant, unflagging obligation to disclose to Plaintiffs and the Class the true character, quality, and nature of the Defect in the Class Vehicles, Defendants' active concealment of this fact tolls any applicable statute of limitations.

*Estoppel*

126.     The doctrine of equitable estoppel operates to bar a defendant guilty of fraudulent or inequitable conduct from asserting a given limitations period as a defense.

127.     Defendants were and remain under a constant, unflagging obligation to disclose to Plaintiffs and the Class the true character, quality, and nature of the Defect in the Class Vehicles.

128.     Thus, Defendants' failure to adhere to this mandate amounts to an affirmative misrepresentation that—contrary to the true state of affairs—the Class Vehicles were safe and reliable, just as Defendants have advertised for years.

129.     As a result, certain Plaintiffs and the members of the Class failed to commence an action within the statutory period relying on Defendants' fraudulent and/or inequitable conduct as noted above.

130.     This action is being brought on behalf of members of the Class who were affected by Defendants' misconduct and there has been no unreasonable delay in pursuing it.

## CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

131. Plaintiff realleges and incorporates herein all other allegations in this Complaint.

132. The acts and practices engaged in by Defendants, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Ohio Consumer Sales Practices Act §1345.01 *et seq.*

133. Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts— specifically, the failure to warn or disclose that the vehicles were defective, including that they lacked an engine immobilizer—in connection with the sale, distribution or advertisement of the Defective Vehicle in violation of the Ohio Consumer Sales Practices Act §1345.01 *et seq.*

134. Plaintiff purchased the Defective Vehicle, a product that was falsely represented, as stated above, in violation of the Ohio Consumer Protection Act, and as a result, Plaintiff suffered economic damages in that the vehicle he purchased was worth less than the vehicles he thought he had purchased had Defendants not omitted material facts. Plaintiff, and other reasonable consumers, had no reasonable information to suggest that the Defective Vehicle lacked an engine immobilizer or was otherwise easy to steal and unsafe.

135. Plaintiff and the Ohio Sub-Class members acted as reasonable consumers would in light of all circumstances.

136. Defendants' actions and omissions would cause a reasonable person to enter in the sale and transaction that resulted in damages to Plaintiff and the Ohio Sub-Class.

137.     As a result of Defendants' actions and omissions, Plaintiff and the Ohio Sub-Class suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of money paid as a result of their purchases.

138.     Plaintiff and the Ohio Sub-Class also seek injunctive relief, requiring Defendants to fix the Defective Vehicles, at no cost to Plaintiff and the Ohio Sub-Class.

139.     At the time of Defendants' design, manufacture, processing, distribution, sale and/or use of the Defective Vehicles, Defendants knew of the dangerous condition of the vehicles, in that they lacked an engine immobilizer making them easy to steal, and supplied them with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and/or theft and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendants specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Vehicles lack of engine immobilizer and ease at which they can be stolen. Defendants' conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Ohio Sub-Class.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

### COUNT II – VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT

140.     Plaintiff realleges and incorporates herein all other allegations in this Complaint.

141.     Plaintiffs bring this Count against Defendants on behalf of members of the Class.

142.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

143.    The Defective Vehicles are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

144.    Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

145.    Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

146.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

147.    Defendants provided Plaintiff and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S. C. § 2301(7).

148.    As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for the ordinary purpose of passenger motor vehicles, were not far easier to steal than other vehicles, and were not unsafe due to the ease at which they can be stolen.

149.    Defendants provided Plaintiff and the other Class members with an express written warranty in connection with the purchase or lease of their vehicles, as described further below, that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

150.    Defendants made written affirmations of fact that the Defective Vehicles would be free of defects that would prevent ordinary use.

151. Upon information and belief, Defendants affixed labeling and other written affirmations making specific, performance-related representations related to the nature of the Defective Vehicles, including expressly warranting that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

152. Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

153. Any efforts to limit the express and implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void. Any limitations on the express and implied warranties are procedurally unconscionable. Defendants purposefully misrepresented the Defective Vehicles to consumers.

154. Additionally, there was unequal bargaining power between Defendants, on the one hand, and Plaintiffs and the other Class members, on the other.

155. Any limitations on the express and implied warranties are substantively unconscionable.

156. Defendants knew that no engine immobilizers were installed on the Defective Vehicles and they were failing to disclose this material fact, thereby misrepresenting the safety, ease of theft, and value of the Defective Vehicles.

157. Defendants failed to disclose the defects to Plaintiff and the other Class members even though Defendants were aware of the defects.

158.     Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.

159.     Specifically, Plaintiff and each of the other Class members are intended third-party beneficiaries of the implied and written warranties.

160.     The dealers and agents were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided for the Defective Vehicles: the warranty agreements were designed for and intended to benefit consumers.

161.     Privity is not required because the Defective Vehicles are unsafe and hazardous instrumentalities due to, among other matters, the lack of engine immobilizers.

162.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

163.     Furthermore, affording Defendants an opportunity to cure their breach of warranties would be unnecessary and futile.

164.     At the time of sale or lease of each Defective Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

165.     Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff resort to an informal dispute

resolution procedure and afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

166. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.

167. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

168. Plaintiff, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

169. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

170. Additionally, Plaintiff and each of the other Class members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1), including Defendants being required to fix these vehicles.

## COUNT III - UNJUST ENRICHMENT

171. Plaintiff realleges and incorporates herein all other allegations in this Complaint.

172. Plaintiffs and the Nationwide Class and/or Ohio Sub-Class members purchased vehicles from the Defendants that they would not have purchased had they known that the vehicles, among other defects, contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers.

173.    The Defendants were therefore unjustly enriched at the expense of and to the detriment of the Plaintiffs and the Class.

174.    Plaintiff and the Nationwide Class and/or Ohio Sub-Class are therefore entitled to restitution from the Defendants and seek an order requiring the Defendants to disgorge all profits, benefits and other compensation the Defendants obtained from the sale of these products.

175.    WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT IV – BREACH OF IMPLIED WARRANTY

176.    Defendants are merchants with respect to the sale of the Defective Vehicles purchased by Plaintiffs.

177.    Defendants, by selling the Defective Vehicles, impliedly warranted that the vehicles were merchantable with respect to goods of that kind.

178.    Defendants sold the Defective Vehicle to Plaintiffs through its dealership in Franklin County, Ohio.

179.    The Defective Vehicles sold by Defendants to Plaintiff did not conform with the implied promises made with respect to the labels and material that accompanied the product. Specifically, by failing to reasonably disclose the vehicles did not have engine immobilizers, Defendants implied that the Defective Vehicles were not far easier to steal than other vehicles, were thereby safe, and were worth as much as vehicles that possessed engine immobilizers.

180.    As a result not having an engine immobilizer, among other defects, the Defective Vehicles were not merchantable and Defendants breached their implied warranty of merchantability with respect to the Defective Vehicles.

181.    Had Plaintiff known that the Defective Vehicles lacked an engine immobilizer, among other defects, making them far easier to steal, and were thereby unsafe and worth less than their sales price, they would not have purchased them, or would have paid significantly less for the vehicles. As a result of Defendants' breach of implied warranty, Plaintiffs, and the Nationwide Class and/or Ohio Sub-Class members have suffered economic injuries.

182.    Defendants are being provided notice by receipt of demand made by Plaintiffs on behalf of themselves and the putative class through the filing of this Complaint. In addition, Defendants have actual notice of the defect.

183.    WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT V – BREACH OF EXPRESS WARRANTY

184.    Plaintiff realleges and incorporates herein all other allegations in this Complaint.

185.    Defendants are and at all relevant times were merchants with respect to motor vehicles under U.C.C. § 2-313.

186.    Upon information and belief, in the course of selling its vehicles, Defendants expressly warranted in writing that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

187.    Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are not free of

material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

188.  Due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under U.C.C. §§ 2-608 and 2-711.

189.  Defendants were provided notice of these issues by complaints filed against them, including the instant complaint, and complaints filed in other jurisdictions.

190.  As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT VI NEGLIGENCE

191.  Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

192.  Defendants designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Vehicles at issue.

193.  Defendants held themselves out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying, and selling the Defective Vehicles at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

194.  Defendants knew or should have known that the Defective Vehicles contained defects including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

195.    Defendants knew or should have known that the Defective Vehicles are incredibly easy to steal.

196.    As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Vehicles, Defendants had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its vehicles; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply its vehicles free from defects and/or latent defects; the duty to adequately warn of vehicle defects and/or hazards, which duty continued even after the sale of said vehicles; and the duty to market, advertise, sell and supply vehicles with adequate information and warnings about the unacceptable risk of theft their design failures create.

197.    Defendants failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiffs and the Nationwide Class and/or Ohio Sub-Class members.

198.    Plaintiffs used these Defective Vehicles in a manner ordinarily anticipated by Defendant.

199.    As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Nationwide Class and/or Ohio Sub-Class members have suffered economic injuries.

200.    These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance

premiums Plaintiffs and Class members are facing or may face due to the design defect, and the stigma associated with the Defective Vehicles.

201.    At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

202.    Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

203.    Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the nationwide Class and/or Ohio Sub-Class members.

204.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT VII STRICT LIABILITY, DESIGN DEFECT

205.    Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

206.    Defendants designed, manufactured, and/or supplied the Defective Vehicles in question within the ordinary course of its business.

207.    Plaintiffs purchased and own Defective Vehicles.

208.    The Defective Vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the

Defective Vehicles are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

209.    Defendants knew or should have known of the dangerous and defective nature of the Defective Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

210.    Notwithstanding, Defendants failed to take safety precautions to prevent economic injury to Plaintiffs and failed to warn and/or instruct Plaintiffs and others of the defective and unreasonably dangerous nature of said vehicles.

211.    Defendant's defective and unreasonably dangerous vehicles directly and proximately caused economic injuries to Plaintiffs and the Nationwide Class and/or Ohio Sub-Class members.

212.    Plaintiffs drive the vehicle and then parks them and leaves them unattended, which is a manner of use reasonably anticipated by Defendants.

213.    As a result of the Defective Vehicles' defect, which make them incredibly easy to steal, they are unreasonably dangerous and defective when put to the use anticipated by Defendants.

214.    As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Nationwide Class and/or Ohio Sub-Class members have suffered economic injuries.

215.    These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle without that is not defective. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in

insurance premiums Plaintiffs and Class member are facing or may face due to the design defect, and the stigma associated with the Defective Vehicles.

216.    At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

217.    Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

218.    Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Nationwide Class and/or Ohio Sub-Class members.

219.    At the time of Defendants' design, manufacture, processing, distribution, sale and/or use of the Defective Vehicle, Defendants knew of the dangerous condition of said vehicles and supplied them with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendants specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Vehicles' safety features. Defendants' conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Nationwide Class and/or Ohio Sub-Class.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

a. That the Court enter an order certifying the Nationwide Class, appointing Plaintiffs representative of the Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Class;

b. Alternatively, that the Court enter an order certifying the Ohio Sub-Class, appointing Plaintiff Davies as representative of the Ohio Sub-Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Ohio Sub-Class;

c. For a judgment against Defendants for the causes of action alleged against it;

d. For damages in an amount to be proven at trial;

e. For appropriate injunctive relief, enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles;

f. For attorney's fees;

g. For Plaintiffs' costs incurred; and

h. For such other relief in law or equity as the Court deems just and proper.

## DESIGNATION AND DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable in Cleveland, Ohio U.S.

District Court.

Dated August 31, 2022

Respectfully Submitted,

/s/ Melissa Payne

Melissa Payne (Ohio Bar No. 0098027)
Payne Law LLC
26600 Detroit Road, Suite 250
Westlake, Ohio 44145
(757) 768-9029 (Phone)
(216) 294-4839 (Fax)
Melissa@VincentEsq.com

Laurence Harrington (*Pro Hoc Vice Pending*)
The Harrington Firm
*Of Counsel* Payne Law LLC
www.theharringtonfirm.com
(484) 469-0468