# EXHIBIT 2

Query    Reports    Utilities    Help    Log Out

ACCO

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
# CIVIL DOCKET FOR CASE #: 8:22-cv-01721

McQuarrie et al v. KIA AMERICA, INC., a California corporation et al
Assigned to:
Cause: 15:2301 Magnuson-Moss Warranty Act

Date Filed: 09/21/2022
Jury Demand: Plaintiff
Nature of Suit: 355 Motor Vehicle Prod. Liability
Jurisdiction: Federal Question

**Plaintiff**

**Stephanie McQuarrie**                    represented by    **Jonathan A. Michaels**
MLG APLC
600 Anton Boulevard, Suite 1240
Costa Mesa, CA 92626
949-581-6900
Email: jmichaels@defectattorney.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kaitlynn Marchione**                    represented by    **Jonathan A. Michaels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Omar Becerra**                    represented by    **Jonathan A. Michaels**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KIA AMERICA, INC., a California corporation**

**Defendant**

**Hyundai Motor America**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/21/2022 | 1 | |

COMPLAINT Receipt No: ACACDC-34019653 - Fee: $402, filed by Plaintiffs Stephanie McQuarrie, Omar Becerra, Kaitlynn Marchione. (Attachments: # 1 Civil Cover Sheet, # 2 Request to Issue Summons) (Attorney Jonathan A. Michaels added to party Omar Becerra(pty:pla), Attorney Jonathan A. Michaels added to party Kaitlynn Marchione(pty:pla), Attorney Jonathan A. Michaels added to party Stephanie McQuarrie(pty:pla))(Michaels, Jonathan) (Entered: 09/21/2022)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/22/2022 07:52:58 | | | |
| **PACER Login:** | jb0014 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:22-cv-01721 End date: 9/22/2022 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

1  Jonathan A. Michaels, Esq.  (CA SBN 180455)
   jmichaels@defectattorney.com
2  Travis R. Eagan, Esq. (CA SBN 219222)
   teagan@defectattorney.com
3  **MLG ATTORNEYS AT LAW**
4  600 Anton Blvd., Suite 1240
   Costa Mesa, CA 92626
5  T. (949) 581-6900
6  F. (949) 581-6908
7
   Attorneys for Plaintiffs and Class
8

9

10            **UNITED STATES DISTRICT COURT**

11   **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

12

13

14  STEPHANIE MCQUARRIE, an          Case No.
    individual; KAITLYNN MARCHIONE, an
15  individual; and OMAR BECERRA, an
16  individual, on behalf of themselves and all    **COMPLAINT – CLASS ACTION**
    others similarly situated,
17
18              Plaintiffs,                        **AND DEMAND FOR JURY TRIAL**
19
20         v.
21  KIA AMERICA, INC., a California
    corporation; and HYUNDAI MOTOR
22  AMERICA, a California corporation,
23
24              Defendants.
25
26
27
28

# TABLE OF CONTENTS

NATURE OF THE ACTION ............................................................................... 1

THE PARTIES .................................................................................................... 2

JURISDICTION AND VENUE ......................................................................... 4

   I.    SUBJECT MATTER JURISDICTION ................................................ 4

   II.   PERSONAL JURISDICTION .............................................................. 4

   III.  VENUE................................................................................................. 5

STATEMENT OF OPERATIVE FACTS ........................................................... 5

CLASS ACTION ALLEGATIONS ................................................................. 10

CLAIMS ........................................................................................................... 15

   IV.   COUNT ONE: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301) ................................................ 15

   V.    COUNT TWO:  VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (*CAL. CIV. PROC.* § 1750, *ET. SEQ.*) ................................ 21

   VI.   COUNT THREE: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (*CAL. BUS. & PROF. CODE* § 17200, *ET SEQ.*) .................................. 26

   VII.  COUNT FOUR: BREACH OF EXPRESS WARRANTY (*CAL. COMM. CODE § 2313*) ......................................................................... 29

   VIII. COUNT FIVE: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (*CAL. COMM. CODE § 2314*) ................................... 31

   IX.   COUNT SIX: STRICT LIABILITY – DESIGN DEFECT ............................. 34

   X.    COUNT SEVEN: NEGLIGENCE................................................................. 36

   XI.   COUNT EIGHT: VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES LAW (*NEV. REV. STAT.* 598, *ET SEQ.*) ..................................... 38

   XII.  COUNT NINE: VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (*FLA. STAT.* §501.201, *ET SEQ.*) ......................... 40

PRAYER FOR RELIEF ................................................................................... 45

i

JURY DEMAND ................................................................................. 47

COMPLAINT – CLASS ACTION

## NATURE OF THE ACTION

1.      This matter rises out of a blatant breach of public trust and a determination to put corporate profits over public safety.  In an effort to maximize their return, Defendants Kia America, Inc. and Hyundai Motor America actively withheld vital security systems from countless vehicles for years.  This has led to a severe defect that has already both endangered the public and drastically decreased the value of vehicles.

2.      "Engine immobilizers" are an electronic security device that prevents an engine from being started without the manufacturer's authorized key.  As recently as 2007, Hyundai looked into possibly adding engine immobilizers to their vehicles, noting that the devices substantially reduced vehicle theft outside the United States.  In 2009, Kia did the same.  Each, however, ultimately decided not to include engine immobilizers in newly-produced vehicles, blatantly valuing profits over the safety and security of their customers.

3.      Kia vehicles manufactured from 2011 to 2021 and Hyundai vehicles manufactured from 2015 to 2021 equipped with traditional key ignitions were deliberately created without engine immobilizers.  Despite the ease to remedy the issue, Kia and Hyundai continued to sell the defective vehicles without making any effort to address the risk of theft.  Without the engine immobilizers, the cars can be easily hotwired and stolen, however Kia and Hyundai made no effort to warn their customers about the risk to their vehicles.

4.      Consequently, the ignition immobilization defect was exposed, and gained great notoriety in July 2022, through the now infamous "Kia Challenge" on TikTok. The ease of theft has become part of a massive viral online event via TikTok and YouTube. As of July 2022, the Kia Challenge began on TikTok and spread to YouTube, daring

1

people to steal Kia and Hyundai vehicles using the defect, and then to post videos of the theft online. These response videos have catapulted the security risks. The extreme ease of the theft has exposed the public and first responders to danger from criminal activity promulgating an explosion of events that has left many without their vehicle, and many more without a sense of security. With the massive rise in publicity of the defect, it is unlikely that the thefts will stop without active intervention by Kia or Hyundai. An entire criminal ecosystem has materialized; exacerbated by thefts only further fueled by TikToks, videos and memes promoting the criminal behavior.

5.      If the stolen vehicles are even recovered, the repair costs are substantial. Repairing the window and steering column for a vehicle stolen using the defect, as well as other damage from the joyride commonly exceeds $10,000. Moreover, the rise in thefts due to the Kia Challenge has decimated supplies of the parts needed to repair the stolen vehicles and has caused delays in repairs due to the voluminous backorders, as well as increasing the costs of repair in response to the substantial demand.

6.      Plaintiffs Stephanie McQuarrie, Omar Becerra, and Kaitlynn Marchione, victims of this trend, bring this class action against Defendant Hyundai Motor America and Defendant Kia America Inc. for damages and injunctive relief on behalf of themselves as well all other persons and entities nationwide who purchased or leased 2011-21 Kia vehicles or 2015-21 Hyundai vehicles equipped with traditional key ignition systems. Plaintiffs seek monetary damages as well as equitable relief on behalf of themselves and all others similarly situated.

## **THE PARTIES**

7.      At all timed mentioned herein, Plaintiff Stephanie McQuarrie was and is an individual residing in Polk County in the State of Florida. Plaintiff Stephanie McQuarrie

2

purchased a 2015 Kia Optima which lacked an engine immobilizer. On September 11, 2022, Plaintiff Stephanie McQuarrie's 2015 Kia Optima was stolen from her driveway by thieves exploiting the defect.

8. At all times mentioned herein, Plaintiff Kaitlynn Marchione was and is an individual residing in Clark County in the State of Nevada. On September 7, 2018, Plaintiff Kaitlynn Marchione purchased a 2017 Hyundai Sonata (VIN: 5NPE24AF6HH564194) which lacked an engine immobilizer. On August 10, 2022, Plaintiff Kaitlynn Marchione's 2017 Hyundai Sonata was stolen from her residence by thieves exploiting the defect.

9. At all times mentioned herein, Plaintiff Omar Becerra was and is an individual residing in Los Angeles County in the State of California. On July 15, 2020, Plaintiff Omar Becerra purchased a 2020 Kia Sportage (VIN: KNDPM3AC0L7800807) which lacked an engine immobilizer. On August 20, 2022, Plaintiff Omar Becerra's 2020 Kia Sportage was stolen from his workplace by thieves exploiting the defect.

10. Plaintiffs are informed and believe and therefore allege that Defendant Kia is a California corporation with its principal place of business in Irvine, California. At all times mentioned herein, Defendant Kia was engaged in the business of designing, manufacturing, and distributing automobiles in the State of California and throughout the United States.

11. Plaintiffs are informed and believe and therefore allege that Defendant Hyundai is a California corporation with its principal place of business in Fountain Valley, California. At all times mentioned herein, Defendant Hyundai was engaged in the business of designing, manufacturing, and distributing automobiles in the State of California and Nevada, and throughout the United States.

3

COMPLAINT – CLASS ACTION

# JURISDICTION AND VENUE

## I. Subject Matter Jurisdiction

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 2310(d)(1)(B), because Plaintiffs' claims and those similarly situated arise under the laws of the United States. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## II. Personal Jurisdiction

13. This Court has personal jurisdiction over Plaintiffs Stephanie McQuarrie, Kaitlyn Marchione, and Omar Becerra (Collectively "Plaintiffs") as the Plaintiffs consent to such jurisdiction.

14. This Court has personal jurisdiction over Defendant Hyundai Motor America ("Hyundai") because it engages in significant business throughout the State of California and the United States, thus providing this District with jurisdiction.

15. This Court has personal jurisdiction over Defendant Kia America, Inc. ("Kia") (Collectively with Hyundai as "Defendants") because it engages in significant business throughout the State of California and the United States, thus providing this District with jurisdiction.

**COMPLAINT – CLASS ACTION**

### III.    Venue

16.    Venue is proper pursuant to 28 U.S.C. § 1391 as Defendants are deemed residents of the State of California and have their headquarters located in this judicial district.

## STATEMENT OF OPERATIVE FACTS

## ENGINEERING A SECURITY CRISIS

17.    Defendants Hyundai and Kia are each large distributors of consumer automobiles, that manufacture and distribute millions of vehicles throughout the United States per year.

18.    An engine immobilizer is a critical piece of electronic security technology that serves as a crucial tool in minimizing the risk of vehicle theft.  Immobilizers prevent vehicles from being started unless a unique code is transmitted from the vehicle's key. Pursuant to a 2016 study, immobilizers significantly reduced the overall rate of automobile thefts by approximately 40% during a 10-year period.[1]  Recognizing the immense value added by having engine immobilizers in vehicles as an anti-theft device, numerous countries have adopted legislation requiring immobilizers as standard equipment for new automobiles.

19.    In 2007, Hyundai considered adding immobilizers as standard equipment for their vehicles due to the benefit of added theft prevention.  After review however Hyundai chose not to include the immobilizers.  In 2009, Kia considered the same idea, and also decided not to include immobilizers.  Despite being well aware of the clear

---

[1] Vol. 126, No. 593, Jan C. van Ours & Ben Vollaard, The Economic Journal, <u>The Engine immobilizer: A Non-Starter for Car Thieves</u>, pp. 1264, 1283 (June, 2016).

benefits provided by the inclusion of an immobilizer in new automobiles, Hyundai and Kia have continued to steadfastly refuse to include immobilizers as standard features in their vehicles or advise their customers of the security risk.

20.     Hyundai vehicles manufactured and distributed between 2015-21, as well as Kia vehicles manufactured and distributed between 2011-21 which use traditional key ignition systems, are not equipped with immobilizers.  ("Class Vehicles" or "Defective Vehicles").  This allows thieves to exploit a critical defect and hotwire and steal the vehicle quickly and easily.  By simply peeling back the steering column and inserting a standard USB cable, the security systems can be bypassed and the car easily started.

21.     In July of 2022, the defect and the ease of exploiting the defect became well known through social media.  On the social media site TikTok, individuals known by the moniker 'Kia Boyz' uploaded a video explaining how to exploit the defect and steal Hyundai and Kia vehicles.  The video also challenged others to break into other Hyundai and Kia cars, exploit the defect, and steal the vehicles.  Commonly referred to as the "Kia Challenge," viewers were encouraged to take videos proving that they completed the challenge and upload it to TikTok.

22.     The Kia Challenge and the publicity regarding the defect has directly contributed to an enormous surge in vehicle thefts of the Defective Vehicles throughout the United States.  In Los Angeles alone during 2022, Hyundai and Kia vehicles accounted for 20% of all vehicles thefts in the City, a sharp increase from only 13% the year prior.[2]  Similarly, the city of Milwaukee, Wisconsin reported motor vehicle thefts

---

[2] Chris Rosales, LAPD Issues Alert as Kia and Hyundai Thefts Keep Spiking, The Drive, August 29, 2022, https://www.thedrive.com/news/lapd-issues-alert-as-kia-and-hyundai-thefts-keep-spiking

**COMPLAINT – CLASS ACTION**

had climbed 152%.[3]  In July of 2022, the city of Chicago, Illinois reported a 767% increase in Hyundai and Kia vehicle thefts.[4]

23.     The presence of the defect in the Defective Vehicles has resulted in the severe diminution of the value of the vehicles.  In the unlikely event that the stolen vehicles are recovered by police, the repair costs are substantial.  On average, the cost to repair the steering column and damage from the theft can exceed $10,000.  Additionally, the critical rise in thefts has decimated reserves of supplies needed to perform repairs, causing backorders in repair and increased costs stemming from increased demand.

24.     After the Kia Challenge brought public attention to the defect, Kia or Hyundai announced that they would include an immobilizer for all 2022 and later model year vehicles.  However, Kia and Hyundai have taken no action to prevent further danger to the defective Class Vehicles.  In doing so, Hyundai and Kia have clearly recognized the danger presented by the defect but maintained that it is not their responsibility to address the harm that has already happened.

### THREE AMONG COUNTLESS

25.     Plaintiff Stephanie McQuarrie is a Florida resident living in Davenport, Florida. When Plaintiff Stephanie McQuarrie purchased her 2015 Kia Optima, her motivation for purchasing it was to obtain a safely designed and manufactured vehicle. At the time of distributing the vehicle, Defendant Kia America, Inc. repeatedly published advertisements to consumers that the 2015 Kia Optima was properly designed

---

[3] James E. Causey, Motor Vehicle Thefts in Milwaukee are up 152%.  Auto Repair Businesses Say the Worst May be Yet to Come Milwaukee Journal Sentinel, August 29, 2022, https://www.jsonline.com/story/news/solutions/2021/02/03/motor-vehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/
[4] Audrey Conclin, TikTok Car Theft Challenge: Chicago Area Sees 767% increase in Hyundai, Kia Thefts, NY Post, August 29, 2022, https://nypost.com/2022/08/25/chicago-area-sees-increase-in-hyundai-kia-thefts-due-to-tiktok/

### COMPLAINT – CLASS ACTION

and skillfully crafted. At the time of purchasing her 2015 Kia Optima, Plaintiff Stephanie McQuarrie was unaware that the vehicle did not possess an engine and that the vehicle was at an incredible risk of theft as a result.

26. On September 10, 2022, Plaintiff Stephanie McQuarrie parked her 2015 Kia Optima in her driveway in Davenport, Florida. When Plaintiff Stephanie McQuarrie needed her car to get to work the next day, she was stunned to find it gone. As a result, Plaintiff Stephanie McQuarrie lost her job as a housekeeping supervisor because she could not reliably get to work. Plaintiff Stephanie McQuarrie's 2015 Kia Optima was later found on the side of a highway, unable to start, and is presumed a total loss.

27. Plaintiff Stephanie McQuarrie has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct relating to the defect including, but not limited to, overpayment and loss of use of the vehicle, and its diminished value.

28. Plaintiff Kaitlyn Marchione is a Nevada resident living in Las Vegas, Nevada. On September 7, 2018, Plaintiff Kaitlyn Marchione purchased her 2017 Hyundai Sonata (VIN: 5NPE24AF6HH564194). At the time of distributing the vehicle, Defendant Hyundai Motor America repeatedly published advertisements to consumers that the 2017 Hyundai Sonata was properly designed and skillfully crafted. Plaintiff Kaitlyn Marchione's motivation for purchasing the vehicle was also to obtain a safely designed and manufactured vehicle. At the time of purchasing the 2017 Hyundai Sonata, Plaintiff Kaitlyn Marchione was unaware that the vehicle did not possess an engine immobilizer and that the vehicle was at an incredible risk of theft as a result.

29. On August 10, 2022, Plaintiff Kaitlyn Marchione parked her 2017 Hyundai Sonata at her apartment complex for the night. She woke up to discovery that the vehicle

COMPLAINT – CLASS ACTION

had been stolen.  As a result of the theft, Plaintiff Kaitlyn Marchione was unable to drive herself to work that day and was forced to arrange for paid transportation to her work. One week later, Plaintiff Kaitlyn Marchione's 2017 Hyundai Sonata was located by police, who concluded that the ignition was damaged by thieves who were exploiting the defect relating to the lack of an engine immobilizer.

30.     Plaintiff Kaitlyn Marchione has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct relating to the defect including, but not limited to, overpayment, costs associated with repair of the vehicle, costs of alternative transportation, and loss of use of the vehicle as well as diminished value.

31.     Plaintiff Omar Becerra is a California resident living in Los Angeles, California.  When Plaintiff Omar Becerra purchased his 2020 Kia Sportage (VIN: KNDPM3AC0L7800807) on July 15, 2020, his motivation for purchasing it was to obtain a safely designed and manufactured vehicle.  At the time of distributing the vehicle, Defendant Kia America, Inc. repeatedly published advertisements to consumers that the 2020 Kia Sportage was properly designed and skillfully crafted.  At the time of purchasing his 2020 Kia Sportage, Plaintiff Omar Becerra was unaware that the vehicle did not possess an engine immobilizer and that the vehicle was at an incredible risk of theft as a result.

32.     On August 20, 2022, Plaintiff Omar Becerra's wife took the 2020 Kia Sportage to her job in Huntington Park, California.  When Plaintiff Omar Becerra's wife went out to the car on her break, she was stunned to find it gone.  As of the date of this Complaint, Plaintiff Omar Becerra's 2020 Kia Sportage has not been recovered and is presumed a total loss.

**COMPLAINT – CLASS ACTION**

33.     Plaintiff Omar Becerra has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct relating to the defect including, but not limited to, overpayment and loss of use of the vehicle, or, if the vehicle is ever recovered, diminished value.

## CHOICE OF LAW ALLEGATIONS

34.     As Plaintiffs' Complaint has been brought in California, California's choice of law provisions govern any allegations in this Complaint which are rooted in state law.

35.     Pursuant to California choice of law provisions, California law applies to the applicable claims of all Class members, regardless of their individuals state of residence or the state in which they purchased their Class Vehicle.

36.      Defendants are each headquartered in, and made all decisions relevant to these claims, in California.  As a result, the State of California has an overwhelming and material interest in the events and circumstances relating to this action than any other state.  Application of California law to Defendants, as well as the claims of any Class members would not be arbitrary or unfair.

## CLASS ACTION ALLEGATIONS

37.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this class action complaint on behalf of themselves and the following class of similarly situated individuals or entities: any individual or entity that purchased or leased a Defective Vehicle.

10

38.     Subject to confirmation, clarification, and/or modification, based on discovery to be conducted in this action, the classes of Plaintiffs seek to represent shall be defined as follows:  All persons and entities nationwide that purchased or leased a Defective Vehicle (i.e., a 2011-21 Kia vehicle or a 2015-21 Hyundai vehicle equipped with traditional key ignition starter systems but which lack engine immobilizers.  (The "Nationwide Class.")

39.     The "Nationwide Class" for purposes of this class action shall be comprised of any individuals or entities who purchased or leased a 2011-21 Kia vehicle or 2015-21 Hyundai vehicle equipped with traditional key ignition starter systems but which lacked an immobilizer.

40.     The "Florida Class" for purposes of this class action shall be comprised of all individuals and entities in Florida that purchased or leased a 2011-21 Kia vehicle or 2015-21 Hyundai vehicle equipped with traditional key ignition starter systems but which lack an engine immobilizer.  (The "Florida Class."). The Nationwide Class, the Florida Class, the California Class, and the Nevada Class, are hereinafter collectively referred to as the Class.

41.     The "California Class" for purposes of this class action complaint shall be comprised of all individuals and entities in California that purchased or leased a 2011-21 Kia vehicle or 2015-21 Hyundai vehicle equipped with traditional key ignition starter systems but which lack an engine immobilizer.  (The "California Class.")

42.     The "Nevada Class" for purposes of this class action complaint shall be comprised of all individuals and entities in Nevada that purchased or leased a 2011-21 Kia vehicle or 2015-21 Hyundai vehicle equipped with traditional key ignition starter systems but which lack an engine immobilizer.  (The "Nevada Class.").  The Nationwide

11

Class, the California Class, and the Nevada Class are hereinafter collectively referred to as the Class.

43.     The Class shall not be construed to include (1) Defendants, (2) any entities in which Defendants possess a controlling interest, (3) Defendant's legal representatives, officers, directors, employees, assigns, and successors; (4) any United States District Court Judge assigned to this matter and staff and their immediate families; or (5) Class Counsel.

44.     The number of class members is presently unknown to Plaintiffs.  While the exact size of membership can only be determined through discovery relating to Defendant's respective sales records.  However, based upon information and belief, Plaintiffs allege that Defendants have each sold many tens of thousands of Defective Vehicles throughout the United States, resulting in numerous millions upon millions of dollars in sales.  Due to the prospective number of Class members, joinder of all Class members in a single action is impracticable here.

45.     Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or Class members.

46.     Plaintiffs' claims are similar in nature to other members of the Class as each member of the Class has either purchased or leased a Class Vehicle possessing the same defect.

47.     Plaintiffs will fairly and adequately represent and safeguard the interests of all current and future Class members as mandated pursuant to FRCP 23(a)(4).  Plaintiffs

12

are appropriate representatives for the Class because their respective interests do not conflict with the interests of any other Class members.  The interests of the members of the Class will be protected by Plaintiffs and their counsel, who have substantial experience in litigation relating to products liability claims.

48.     A class action is the appropriate method for the fair and efficient adjudication of Plaintiffs' claims.  The preparation and litigation of separate actions by individuals Class members would result in thousands or tens of thousands of separate actions, creating the risk of inconsistent and substantially contradictory results and establishing unclear standards of conduct for Defendants.  Furthermore, concentrating these claims as a class action will prevent burdening the courts and expending limited judicial resources with individual lawsuits.  To the contrary, a class action will not present any severe difficulties.  Discovery with respect to Defendants' records will enable easy identification of Class members.

49.     Plaintiffs and all other class members share common questions of law and fact as the Defective Vehicles share the same defect.  As the defect is shared across all Defective Vehicles, the same common documents, discovery, and testimony will be used to prove Plaintiffs' claims as well as the claims of all Class members.

50.     Common questions of law and fact that exist to all Class members include, without limitation, the following:

> (a) Whether Defendants designed, advertised, sold and placed Defective Vehicles into the stream of commerce;
>
> (b) Whether the Defective Vehicles were sold with the defect described above;

**COMPLAINT – CLASS ACTION**

(c) Whether the defect in the Defective Vehicles is a safety and/or security defect that created a foreseeable risk of harm to Plaintiffs and the Class;

(d) Whether Defendants breached implied warranties made to the Class members;

(e) Whether Defendants knew about the Defect and, if so, how long they have known about it;

(f) Whether Defendants concealed the defect;

(g) Whether Defendants conduct violates consumer protection statutes, warranty laws, and other laws asserted herein;

(h) Whether the Class members have suffered damages as a result of the conduct alleged herein and, if so, the measure of such damages, including diminution of value and depravation of the benefits of the bargain; and,

(i) Whether the Class members are entitled to injunctive relief.

51. Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Federal Rules of Civil Procedure, Rule 23(a)(4). Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class members. Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Therefore, the interest of the Class members will be fairly and adequately protected.

52. Class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendants have acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

**COMPLAINT – CLASS ACTION**

53.     Class members may be informed of the pendency of this class action by direct mailing, as well as direct, published, and/or broadcast notice.

## CLAIMS

### IV.   COUNT ONE: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301)

54.     Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

55.     Plaintiffs bring this on behalf of the Class members.

56.     This Court has jurisdiction to decide claims brought under 28 U.S.C. § 1331, including claims brought pursuant to 15 U.S.C. § 2310(d)(3)(A)(B) & (C).

57.     Congress enacted the Magnuson-Moss Warranty Act, to address the widespread misuse of express warranties and to protect consumers from deceptive warranty practices.  Additionally, a warrantor who fails to comply with an obligation under a written or corresponding implied warranty can be liable under the  Magnuson-Moss Warranty Act.

58.     The Magnuson-Moss Warranty Act defines 'consumer products' as "any tangible personal property which is distributed for commerce and used for personal, family, or household purposes.

59.     The defective Class Vehicles are consumer products under the Magnuson-Moss Warranty Act.

15

60.     The Magnuson-Moss Warranty Act defines 'consumers' as a buyer of any consumer product for any purposes other than resale.

61.     Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

62.     The Magnuson-Moss Warranty Act defines 'suppliers' as any person engaged in the business of making a consumer product directly or indirectly available to prospective consumers.

63.     The Magnuson-Moss Warranty Act defines 'warrantors' as any supplier or other person who gives or offers to give a written warranty or who has an obligation under an implied warranty.

64.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act.

65.     In connection with the sale and/or lease of the Defective Vehicles, Defendants supplied Plaintiffs and the Class with "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

66.     Pursuant to 15 U.S.C. § 2310(d)(1)(B) "[a] consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the Magnuson-Moss Warranty Act], or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief…" "…in an appropriate district court of the United States…."

**COMPLAINT – CLASS ACTION**

67.     Pursuant to 15 U.S.C. § 2310(d)(3)(A)(B) & (C), Plaintiffs' claims are each more than $25, the amount in controversy is greater than $50,000, exclusive of interests and costs, computed on the basis of all claims to be determined in this suit.

68.     This action is brought as a class action, and the number of plaintiffs is less than one hundred.

69.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Further, affording Defendants an opportunity to cure their breach of warranty would be unnecessary and futile.

70.     Privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.  Specifically, Plaintiffs and the Class members are intended third-party beneficiaries of the written and implied warranties.

71.     The dealers and agents were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided for the Defective Vehicles:  The warranty agreements were designed for and intended to benefit consumers.

72.     In addition, privity is not required because the Defective Vehicles are unsafe and hazardous instrumentalities due to, without limitation, the lack of engine immobilizers.

COMPLAINT – CLASS ACTION

73.     Defendants provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act.

74.     As part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for the ordinary purpose of passenger motor vehicles and were not far easier to steal than other vehicles.

75.     Defendants breached this implied warranty and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1) because, without limitation, the Defective Vehicles share common design defects, including that they lack engine immobilizers.

76.     These defects render the Defective Vehicles deficient, in that they do not provide safe and reliable transportation, as they are incredibly easy to steal.

77.     The Defective Vehicles are incredibly easy to steal and, therefore, cannot be relied on for transportation.  A stolen vehicle cannot provide reliable transportation.

78.     The Defective Vehicles are incredibly easy to steal and, therefore, unsafe. A stolen vehicle will easily leave a person stranded without transportation in several vulnerable and unsafe scenarios.

79.     Defendants provided Plaintiffs and the other Class members written warranties and in connection with the purchase or lease of their vehicles, within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

COMPLAINT – CLASS ACTION

80.    Defendants made written affirmations of fact that the Defective Vehicles would be free from defects that would prevent ordinary use.

81.    Upon information and belief, Defendants placed labeling and other written affirmations making performance-related representations related to the Defective Vehicles, including expressly warranting that they were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly, and would be safe and reliable.

82.    Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Plaintiffs and Class members the Defective Vehicles that are not free of material defects.  These material defects include the failure to include engine immobilizers, rendering the subject vehicles incredibly easy to steal than other vehicles, and are therefore unreliable and unsafe, and worth less than if they had engine immobilizers, which they should.

83.    Any efforts to limit the express and implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, as is any effort to disclaim or otherwise limit liability for the Defective Vehicles.

84.    Any limitations on the express and implied warranties are procedurally and substantively unconscionable.  Further, there was an unequal and unfair bargaining power between Defendants, on the one hand, and Plaintiffs and the other Class members, on the other.

85.    Defendants purposefully misrepresented the Defective Vehicles to consumers.

COMPLAINT – CLASS ACTION

86.     Defendants knew that no engine immobilizers were installed on the Defective Vehicles, among other design defects, and they were failing to disclose this material fact, thereby misrepresenting the vehicles' safety, ease of theft, and value to consumers, including Plaintiffs and the Class members.

87.     Defendants failed to disclose the defects to Plaintiffs and the other Class members even though Defendants were aware of the defects.

88.     Defendants are aware of the problems, are or have attempted to "fix" their 2022 vehicles to eliminate the defects moving forward, but have steadfastly refused to do anything about the pre-2022 Defective Vehicles.

89.     At the time of the sale or lease of each Defective Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

90.     Under the circumstances, the remedies available under any information settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

91.     Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution of value of their vehicles, in an amount to be proven at trial.

92.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and

20

expenses (including attorneys' fees based on actual time expended) determined by the Court to be reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

93.     Plaintiffs and each of the other Class members are also entitled to equitable relief pursuant to 15 U.S.C. § 2310(d)(1), including Defendants being required to fix the vehicles.

94.     Plaintiffs used their respective Defective Vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendants' conduct or by operation of law.

## V.     COUNT TWO:  VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (*CAL. CIV. PROC.* § 1750, *ET. SEQ.*)

95.     Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

96.     Plaintiffs bring this claim on behalf of the Class members.

97.      California's Consumer Legal Remedies Act, *Cal. Civ. Code* § 1750, *et seq.*, bars unfair methods of competition and unfair or deceptive acts or practices undertaken by any person or party to a transaction intended to cause or which causes the sale or lease of goods or services to any consumer.

98.     The Defective Vehicles are 'goods' as set forth in *Cal. Civ. Code* § 1761(a).

**COMPLAINT – CLASS ACTION**

99.     Plaintiffs and the other Class members are "persons" within the meaning of *Cal. Civ. Code* § 1761(c), and "consumers" within the meaning of *Cal. Civ. Code* § 1761(d).

100.     As alleged herein, Defendants made misleading representations and blatant omissions concerning the benefits, performance, and safety of the Defective Vehicles.

101.     In purchasing or leasing the Defective Vehicles, Plaintiffs and other Class members were deceived by Defendants' failure to disclose their knowledge of the defects.

102.     Defendants' conduct as described herein was and is in violation of the Consumer Legal Remedies Act, and violates at least the following enumerated provisions:

       a.     *Cal. Civ. Code* § 1770(a)(5):  Representing that goods have uses and/or  benefits that they do not have.

       b.     *Cal. Civ. Code* § 1770(a)(7):  Representing that goods are of a particular standard, quality, or grade.

       c.     *Cal. Civ. Code* § 1770(a)(9):  Advertising goods or services with intent not to sell them as advertised.

       d.     *Cal. Civ. Code* § 1770(a)(16):  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

103.     Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Defective Vehicles with an intent to mislead Plaintiffs and Class members.

**COMPLAINT – CLASS ACTION**

104.    In purchasing or leasing the defective Class Vehicles, Plaintiffs and other Class members were deceived by Defendants' failure to disclose their knowledge of the defect's existence and the risk posed by it.

105.    Plaintiffs and other Class members had no way of knowing Defendants' representations were false, misleading, and incomplete or knowing the true nature of the defects.

106.    Defendants engaged in a pattern of deception and public silence in the face of known defects.  Plaintiffs and other Class members did not, and could not, discover Defendants' deception on their own.

107.    Defendants knew or should have known that their conduct violated the Consumer Legal Remedies Act.  Defendants owed Plaintiffs and the Class members a duty to disclose the truth about the defects because the defects created a safety hazard and Defendants (i) possessed exclusive knowledge of the defects, (ii) intentionally concealed the foregoing from Plaintiffs and other Class members, and (iii) made incomplete representations in advertisements and on their websites, and, (iv) failed to warn the public of the defects.

108.    Defendants owed a duty to disclose that the defective Class Vehicles were fundamentally flawed as described herein, because the defects created a safety hazard.

109.    Plaintiffs and the other Class members reasonably relied on Defendants' material misrepresentations and omission regarding the features of the defective Class Vehicles.

**COMPLAINT – CLASS ACTION**

110.   Defendants and the other Class members were harmed as a result of Defendants' conduct, by overpaying for their Defective Vehicles and suffering diminution of value of their vehicles.

111.   Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Defective Vehicles and suffered harm as alleged herein.

112.   Defendants' conduct was a substantial cause in harming Plaintiffs and the other Class members.

113.   Defendants' violations of the Consumer Legal Remedies Act have caused ongoing and continuing harm to Plaintiffs and other Class members.

114.   Defendants' unlawful acts and practices complained of herein affect the public interest.

115.   Defendants knew of the defects, and that the Defective Vehicles were materially compromised by them.

116.   The facts concealed and omitted by Defendants from Plaintiffs and other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Defective Vehicles or pay a lower price.

117.   Had Plaintiffs and the other Class members known about the defective nature of the Defective Vehicles, they would not have purchased them, or would not have paid the price they paid.

24

118.   Plaintiffs' and the other Class members' harms were proximately caused by Defendants' unlawful and deceptive business practices.

119.   Defendants' deceptive business practices were a substantial factor in causing Plaintiffs' and the other Class members' harm.

120.   Pursuant to *Cal. Civ. Code* § 1780(a), Plaintiffs and the other Class members seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the defects.

121.   Plaintiff sent out a notice letter on August 30, 2022.

122.   Pursuant to *Cal. Civ. Code* § 1782, if a Defendants does not rectify its conduct within 30 days, Plaintiffs intend this Complaint to add claims under *Cal. Civ. Code* for:

> a.   Actual damages;
> b.   Restitution of money, on behalf of Plaintiffs, the Class members, and the general public;
> c.   Punitive damages;
> d.   An additional award of up to $5,000 to each Plaintiff and any Class member who is a "senior citizen;"
> e.   Attorneys' fees and costs; and,
> f.   Other relief that this Court deems proper.

## VI.    COUNT THREE: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (*CAL. BUS. & PROF. CODE* § 17200, *ET SEQ.*)

123.    Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

124.    Plaintiffs bring this claim on behalf of the Class members.

125.    California's Unfair Competition Law, *Cal. Bus. & Prof. Code* § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertisement."

126.    Defendants' conduct was and is in violation of the California Unfair Competition Law, in at least the following ways:

    a.    By failing to disclose the defect;

    b.    By advertising, selling, and leasing the Defective Vehicles, that suffer from defects;

    c.    By knowingly and intentionally concealing from Plaintiffs and the other Class members the Defect;

    d.    By marketing the Defective Vehicles as safe, convenient, and defect free, with cutting-edge technology, and while knowing of the defects; and,

    e.    By violating other California laws, including California Consumer Protection Laws;

127.   Defendants knowingly and intentionally misrepresented and omitted material facts regarding the Defective Vehicles with intent to mislead Plaintiffs and the other Class members.

128.   Defendants knowingly and intentionally misrepresented and omitted material facts regarding the Defective Vehicles with intent to mislead Plaintiffs and the other Class members.

129.   In purchasing or leasing the Defective Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose the defects.

130.   Plaintiffs and other Class members reasonably relied upon Defendants' false representations and omissions.  They had no way of knowing that Defendants representations were false, misleading, and incomplete.

131.   As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known defect.

132.   Plaintiffs and other Class members did not, and could not, discover Defendants' deception on their own.

133.   Defendants knew or should have known about the defects because the defects created a safety hazard and Defendants (i) possessed exclusive knowledge of the defects, (ii) intentionally concealed the foregoing from Plaintiffs and other Class members, and (iii) made incomplete representations in advertisements on their websites, and, (iv) failed to warn the public of the defects.

134.    Defendants owed a duty to disclose the defects because, without limitation, they created a safety hazard.

135.    Plaintiffs and other Class members reasonably relied on Defendants' material misrepresentations and omissions.

136.    Plaintiffs and other Class members were harmed by Defendants' misrepresentations and omissions.

137.    Defendants' conduct proximately caused Plaintiffs' and other Class members' harm.

138.    Defendants' conduct was a substantial factor in causing Plaintiffs' and other Class members' harm.

139.    Defendants' violations have cause ongoing and continuing harm to Plaintiffs and Class members.

140.    Defendants' unlawful acts and practices affect the public interest.

141.    But for Defendants' misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased the Defective Vehicles, or would not have purchased the Defective Vehicles for the price they paid.

142.    As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs and the other Class members have suffered injury-in-fact, including lost money and/or property.

COMPLAINT – CLASS ACTION

143.   Plaintiffs request that the Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Defendants acquired by unfair competition, including restitution and/or disgorgement, as provided in *Cal. Bus. & Prof. Code* § 17203 and *Cal. Civ. Code* § 3345, and for such other relief as may be appropriate.

## VII.   COUNT FOUR: BREACH OF EXPRESS WARRANTY (*CAL. COMM. CODE § 2313*)

144.   Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

145.   Plaintiffs bring this cause of action on behalf of the Class members.

146.   Defendants are and at all relevant times were merchants with respect to motor vehicles pursuant to U.C.C. § 2-313 and California Commercial Code. § 2725.

147.   Defendants gave Plaintiffs and the other Class members a written warranty, representing that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and, at a minimum, would work properly, and would be reliable and safe.

148.   Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Plaintiffs and the other Class members the Defective Vehicles that are not free of material defects.  The Defective Vehicles are unsafe and worth less because they fail to include engine immobilizers and are therefore incredibly easier to steal than other vehicles.

149.   The Defective Vehicles did not perform as promised and did not meet the quality as warranted.

150.   Defendants were provided notice of these issues through complaints filed against them, including the instant complaint, and, upon information and belief, by several customer communications before and within a reasonable period of time after the allegations of the vehicle defects became public.  Thus, notice should be deemed unnecessary in light of the Defendants' failure and refusal to take corrective action despite the notice.

151.   Plaintiffs and other Class members took reasonable steps to notify Defendants within a reasonable time that the Defective Vehicles were not as represented and lacked the expected quality (or Plaintiffs and the other Class members were excused from doing so), whether or not Defendants received such notice.

152.   Plaintiffs and the other Class members did not need to give notice to Defendants of their personal injury or property damage lawsuit against them because they have not directly dealt with Defendants.

153.   Defendants failed to repair the Defective Vehicles as required by the Warranty.

154.   Plaintiffs and the other Class members were harmed.

155.   The failure of the Defective Vehicles to be a represented was a substantial factor in causing Plaintiffs' and the other Class members' harm.

156.   Due to the Defendants' breach of warranties, Plaintiffs and other Class members request, as an additional or alternative remedy set forth in the California *Commercial Code* and U.C.C. §§ 2-608 and 2-711, the revocation of acceptance of goods, and for a return of the purchase price to Plaintiffs and the other Class members, and for such other incidental and consequential damages as allowed under the California *Commercial Code* and U.C.C. §§ 2-608 and 2-711.

## VIII.   COUNT FIVE: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (*CAL. COMM. CODE § 2314*)

157.   Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

158.   Plaintiffs bring this claim on behalf of the Class members.

159.   Defendants are merchants with respect to the sale of the Defective Vehicles purchased by Plaintiffs.

160.   Plaintiffs and the other Class members were harmed by the Defective Vehicles purchased or leased from Defendant Kia and Defendant Hyundai because they did not have the quality that a buyer would expect.

161.   Plaintiffs and the other Class members bought or leased the Defective Vehicles from Defendant Kia and Defendant Hyundai.

162.   At the time of the purchases and leases, Defendants were in the business of selling and/or leasing these goods and held themselves out to have special knowledge and skill regarding these goods.

31

163. The Defective Vehicles, however, were not of the same quality as those generally acceptable in the trade.

164. Further, the Defective Vehicles were not fit for the ordinary purpose for which such goods are used.

165. The Defective Vehicles also failed to confirm to the quality established by usage of trade.

166. Plaintiffs and other Class members took reasonable steps to notify Defendants within a reasonable time that the Defective Vehicles were not as represented and lacked the expected quality (or Plaintiffs and the other Class members were excused from doing so), whether or not Defendants received such notice.

167. Plaintiffs and the other Class members did not need to give notice to Defendants of their property damage lawsuit against them because they have not directly dealt with Defendants.

168. Plaintiffs and the other Class members were harmed.

169. The failure of the Defective Vehicles to have the expected quality was a substantial factor in causing Plaintiffs and the other Class members' harm.

170. As detailed herein, Defendants designed, manufactured, distributed, and sold or leased the Defective Vehicles knowing that consumers like Plaintiffs and the other Class members would purchase them from Defendant Kia and Defendant Hyundai's authorized dealers as a means of transportation.

**COMPLAINT – CLASS ACTION**

171.    Defendants, by selling or leasing the Defective Vehicles, impliedly warranted that the vehicles were merchantable with respect to goods of that kind.

172.    This warranty was assigned to Plaintiffs upon purchasing or leasing the vehicle.

173.    The Defective Vehicles that were advertised and sold by Defendants and purchased by Plaintiffs did not conform with the implied promises made with respect to the labels and material that accompanied the product.  Specifically, by failing to reasonably disclose that the vehicles did not have engine immobilizers, Defendants implied that the Defective Vehicles were relatively safe from theft, like other vehicles. That is, they were not incredibly easy to steal, unlike other vehicles.  Defendants implied that the Defective Vehicles were safe and reliable and were worth as much as vehicles that possessed engine immobilizers.

174.    As a direct result of having no engine immobilizer, among other defects, the Defective Vehicles were not merchantable, i.e., not suitable for purchase or sale, and Defendants breached their implied warranty of fitness and merchantability with respect to the Defective Vehicles.

175.    Had Plaintiffs known that the Defective Vehicles lacked an engine immobilizer, among other defects, making them incredibly easy to steal, and were unsafe and unreliable, and unreliable and constitute a safety hazard, and worth less than their sales price, they would not have purchased them or would have paid significantly less for the vehicles. As a result of Defendants' breach of implied warranties of fitness and merchantability, Plaintiffs and the other Class members have suffered economic damages, including consequential and incidental damages.

**COMPLAINT – CLASS ACTION**

176.   Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.  Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

## IX.    COUNT SIX: STRICT LIABILITY – DESIGN DEFECT

177.   Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

178.   Plaintiffs bring this claim on behalf of the Class members.

179.   Defendants designed, manufactured, and/or supplied the Defective Vehicles within the ordinary course of their business.

180.    Plaintiffs and the other Class members purchased or leased the Defective Vehicles.

181.   The Defective Vehicles contain a design defect including that, among other things, they lack engine immobilizers.  As a result, the Defective Vehicles are incredibly easy to steal, more so than other vehicles, and are therefore unsafe and unreliable and constitute a safety hazard and are worth less than if they had engine immobilizers, which they should.

182.   Defendants knew or should have known of the dangerous and defective nature of the Defective Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

34

183.   Defendants failed to take safety precautions to prevent Plaintiffs' and the other Class members' harm and failed to warn and/or instruct Plaintiffs and other Class members of the defective and unreasonably dangerous nature of their vehicles.

184.   Defendants' defective and unreasonably dangerous vehicles directly and proximately caused economic injuries to Plaintiffs and the other Class members.

185.   Plaintiffs and the other Class members drive the vehicles and then park them and leave them unattended, which is a manner of use reasonably anticipated by Defendants.

186.   As a result of the defects, the Defective Vehicles are unreasonably dangerous and defective when put to the use anticipated by Defendants.

187.   The Defective Vehicles did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

188.   Plaintiffs and the other Class members were harmed.

189.   The Defective Vehicles' failure to perform safely was a substantial factor in causing Plaintiffs and the other Class members' harm.

190.   Plaintiffs and the other Class members' harm is not limited to only the difference in value between a Defective Vehicle and a similar vehicle without the defect. Other damages include, but are not limited to, repairs to damaged vehicles, the replacement cost of stolen vehicles, the purchase price of security devices to prevent

COMPLAINT – CLASS ACTION

theft, the increase in insurance premiums Plaintiffs, and the other Class members have or may have to pay due to the design defect.

## X. COUNT SEVEN: NEGLIGENCE

191. Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

192. Plaintiffs bring this claim on behalf of the Class members.

193. Defendants designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Vehicle.

194. Defendants held themselves out as capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying, and selling the Defective Vehicles at issue and therefore had the duty to have and exercise the knowledge of an expert on such products.

195. Defendants knew or should have known that the Defective Vehicles contained defects including that, among other things, Defendants manufactured and designed them without engine immobilizers.

196. Defendants knew or should have known that the Defective Vehicles are incredibly easy to steal, well below any industry standard.

197. As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Vehicles, Defendants had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is

36

required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its vehicles; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply its vehicles free from defects and/or latent defects; the duty to adequately warn of vehicle defects and/or hazards, which duty continued even after the sale of said vehicles; and the duty to market, advertise, sell and supply vehicles with adequate information and warning about the unacceptable risk of theft their design failures create.

198.   Defendants failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiffs and the other Class members.

199.   Plaintiffs used these Defective Vehicles in a manner ordinarily anticipated by Defendant.

200.   Defendants were negligent as alleged herein.

201.   Plaintiffs and the other Class members were harmed.

202.   Defendants' negligence was a substantial factor in causing Plaintiffs and the other Class members' harm.

**COMPLAINT – CLASS ACTION**

## XI.  COUNT EIGHT: VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES LAW (*NEV. REV. STAT.* **598,** *ET SEQ.*)

203.   Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

204.   Plaintiffs bring this cause of action on behalf of the Nevada Class.

205.   An individual or entity engages in a deceptive trade practice pursuant to Nevada Revised Statutes ("NRS") 598.0915 if, in the course of their business or occupation they (1) knowingly makes a false representation as to the characteristics, benefits, or alterations of goods or services for sale or lease or a false representation; or (2) represents that goods for sale or lease are of a particular standard, quality or grade.

206.   Defendants' conduct was and is in violation of the Nevada Deceptive Trade Practices Law, in at least the following ways:

    a.   By failing to disclose the defect;
    b.   By advertising, selling, and leasing the Defective Vehicles, that suffer from defects;
    c.   By knowingly and intentionally concealing the defect from Plaintiffs and the other Class members; and,
    d.   By marketing the Defective Vehicles as safe, convenient, and defect free, with cutting-edge technology, and while knowing of the defects.

207.   Defendants knowingly and intentionally misrepresented and omitted material facts regarding the Defective Vehicles with intent to mislead Plaintiffs and the other Class members.

208.   In purchasing or leasing the Defective Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose the defects.

209.   Plaintiffs and other Class members reasonably relied upon Defendants' false representations and omissions.  They had no way of knowing that Defendants representations were false, misleading, and incomplete.

210.   As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of known defects.

211.   Plaintiffs and other Class members did not, and could not, discover Defendants' deception on their own.

212.   Defendants knew or should have known about the defects because the defects created a safety hazard and Defendants (i) possessed exclusive knowledge of the defects, (ii) intentionally concealed the foregoing from Plaintiffs and other Class members, and (iii) made incomplete representations in advertisements on their websites, and, (iv) failed to warn the public of the defects.

213.   Defendants owed a duty to disclose the defects because, without limitation, they created a safety hazard.

214.   Plaintiffs and other Class members reasonably relied on Defendants' material misrepresentations and omissions.

215.   Plaintiffs and other Class members were harmed by Defendants' misrepresentations and omissions.

COMPLAINT – CLASS ACTION

216.   Defendants' conduct proximately caused Plaintiffs' and other Class members' harm and was a substantial factor in causing Plaintiffs' and other Class members' harm.

217.   Defendants' violations have caused ongoing and continuing harm to Plaintiffs and Class members.

218.   Defendants' unlawful acts and practices affect the public interest.

219.   But for Defendants' misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased the Class Vehicles, or would not have purchased the Class Vehicles for the price they paid.

220.   As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs and the other Class members have suffered injury-in-fact, including lost money and/or property.

221.   Plaintiffs request that the Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Defendants acquired by unfair competition, including restitution and/or disgorgement, and for such other relief as may be appropriate.

## XII.   COUNT NINE: VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (*FLA. STAT.* §501.201, *ET SEQ.*)

222.   Plaintiffs repeat every allegation contained in the paragraphs above and incorporates such allegations herein by reference.

223.    Plaintiffs bring this cause of action on behalf of the Florida Class.

224.    Plaintiffs are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

225.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

226.    FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

227.    In the course of its business, Defendants systematically devalued safety and concealed a plethora of defects in Kia and Hyundai-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

228.    From the date of its inception, Defendants knew that many serious defects affecting many models and years of both Kia and Hyundai-branded vehicles, because of (i) the knowledge of Defendants; (ii) continuous reports, investigations, and notifications from regulatory authorities.  Defendants became aware of other serious defects and systemic safety issues years ago but concealed all this information until recently.

**COMPLAINT – CLASS ACTION**

229.   Defendants were also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defect, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all Defendant-branded vehicles. Defendants concealed this information as well.

230.   By failing to disclose and by actively concealing the defects in Defendant-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, Defendants engaged in unfair, unconscionable, and deceptive business practices in violation of the FUDTPA.

231.   In the course of Defendants' businesses, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. Defendants compounded the deception by repeatedly asserting that Defendant-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

232.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Defendant-branded vehicles, the quality of the Kia and Hyundai brand, the devaluing of safety at Kia and Hyundai, and the true value of the Class Vehicles.

233.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiffs and the Florida Class.

**COMPLAINT – CLASS ACTION**

234.   Defendants knew or should have known that its conduct violated the FUDTPA.

235.   As alleged above, Defendant made material statements about the safety and reliability of the Class Vehicles and the Kia and Hyundai brand that were either false or misleading.

236.   Defendants owed Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and the devaluing of safety at Kia and Hyundai because Defendants:

      a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

      b.    Intentionally concealed the foregoing from Plaintiffs; and/or

      c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

237.   Because Defendants fraudulently concealed the many defects in Defendant-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

43

238.   Defendants' systemic devaluation of safety and its concealment of a plethora of defects in Defendant-branded vehicles were material to Plaintiffs and the Florida Class. A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer or unsafe vehicles that conceals defects rather than promptly remedying them.

239.   Plaintiffs and the Florida Class suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased Defendant-branded vehicles after the date of the TikTok videos wither would have paid less for their vehicles or would not have purchased or leased them at all. For Plaintiffs who purchased the Class Vehicles that were "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for the Defendants' violations of the FUDTPA.

240.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of Defendants misconduct no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of Defendants misconduct. Defendants had an ongoing duty to all Kia and Hyundai owners to refrain from unfair and deceptive acts or practices under the FUDTPA. And, in any event, all Defendant vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of Defendants deceptive and unfair acts and practices made in the court of their business.

241.   Plaintiffs and Florida Class Members risk irreparable injury as a result of Defendants act and omissions in violation of the FUDTPA, and these violations present a continuing risk to Plaintiffs as well as to the general public. Defendants unlawful acts and practices complained of herein affect the public interest.

**COMPLAINT – CLASS ACTION**

242.   As a direct and proximate result of Defendants violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injur-in-fact and/or actual damage.

243.   Plaintiffs and the Florida Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

244.   Plaintiffs also seek an order enjoining Defendants unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on their own behalf and on behalf of the Classes respectfully request relief be ordered as follows:

1.   That the Court enter an order certifying the proposed California Class, the proposed Nevada Class and the Proposed Nationwide Class;

2.   Appointment of Plaintiffs and their counsel as representatives of the Classes, and directing that reasonable notice of this action, as provided by FRCP Rule 23 be given to the Classes;

3.   For a judgment against Defendants Kia America, Inc. Hyundai Motor America for the causes of action as alleged against them;

4.   For compensatory , punitive, and exemplary damages and other reasonable damages in amounts to be proven at trial;

5.      For injunctive relief as deemed appropriate, enjoining Defendants from selling the defective Class Vehicles and ordering them to fix or replace the Class Vehicles;

6.      For an award of reasonable attorneys' fees and costs;

7.      For an award of pre-judgment and post-judgment interest; and,

8.      For such other and further relief as this Court may deem just and proper.

**MLG, APLC**

Dated: September 21, 2022          By:     /s/ Jonathan A. Michaels
                                          Jonathan A. Michaels, Esq.,
                                          Travis R. Eagan, Esq.,
                                          MLG Attorneys at Law
                                          600 Anton Blvd., Suite 1240
                                          Costa Mesa, CA, 92626
                                          (949) 581-6900
                                          jmichaels@defectattorney.com
                                          teagan@defectattorney.com
                                          Attorneys for Plaintiffs and Class

46

**COMPLAINT – CLASS ACTION**

# JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

**MLG, APLC**

Dated: September 21, 2022          By:    /s/ Jonathan A. Michaels
                                         Jonathan A. Michaels, Esq.,
                                         Travis R. Eagan, Esq.,
                                         MLG Attorneys at Law
                                         600 Anton Blvd., Suite 1240
                                         Costa Mesa, CA, 92626
                                         (949) 581-6900
                                         jmichaels@defectattorney.com
                                         teagan@defectattorney.com
                                         Attorneys for Plaintiffs and Class

47

**COMPLAINT – CLASS ACTION**