BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE DEFECT LITIGATION | ) )  MDL Docket No. 3052 (Pending) ) ) ***NORTHERN DISTRICT OF OHIO*** ) ***PLAINTIFFS'*** **MEMORANDUM OF LAW** ) **AND FACT IN OPPOSITION OF** ) ***MCNERNEY PLAINTIFFS'*** **MOTION** ) **FOR TRANSFER AND** ) **CONSOLIDATION OF RELATED** ) **ACTIONS IN THE CENTRAL DISTRICT** ) **OF CALIFORNIA** |

Plaintiffs Jo Taylor Slovak, Daniel Newman, and Erin Davies, hereafter, *the Northern District of Ohio Plaintiffs*, respectfully submit this Memorandum of Law and Fact in Support of their motion for transfer and consolidation of related actions in the Northern District of Ohio, under 28 U.S.C. § 1407.

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1407, The *Northern District of Ohio* Plaintiffs seek an Order (i) transferring to the Northern District of Ohio the cases listed in the Schedule of Actions attached as Exhibit A hereto (the "Related Actions"), and any other tag-along actions asserting similar or related claims against Kia Corporation and Kia America, Inc. ("Kia"), and Hyundai Motor Co. and Hyundai Motor America ("Hyundai"), involving allegations that Kia and Hyundai vehicles failed to include immobilizer technology to prevent theft that may subsequently be filed in or removed to the federal courts; and (ii) consolidating the Related Actions with the *Northern District of Ohio* action for pretrial discovery and class certification purposes.

For many compelling reasons transfer and consolidation in the Northern District of Ohio, Toledo Division is necessary and proper under 28 U.S.C. § 1407 and promotes efficient

management of the litigation. Toledo, Ohio is centrally located and is a convenient location to which all parties can easily travel. All defendants can take direct flights to Detroit Metro Airport (DTW). The Toledo Division of the Northern District of Ohio only has one pending MDL, Judge James G. Carr has no pending MDLs, and the Toledo Division has ample resources to handle an MDL. The *Northern District of Ohio* Plaintiffs filed a complaint against Kia America Inc. and Hyundai Motor America on August 11, 2022. Upon discovering Kia and Hyundai's corporate filings with the Republic of Korea, the *Northern District of Ohio* Plaintiffs filed an amended complaint. The amended complaint was filed on August 31, 2022, when Plaintiffs learned that Kia America Inc. is a distributor for Kia Corporation, and that Kia America Inc. is the entity that provides express warranties, and that Hyundai Motor America is a distributor for Hyundai Motor Co., and that Hyundai Motor Co. is the manufacturer that makes decisions about the design of the vehicle, including whether to include an immobilizer in the vehicle.

*The Northern District of Ohio Plaintiffs* are not opposed to consolidation of the claims, and because the *Northern District of Ohio Plaintiffs* bring suit against the Korean entities Hyundai Motor Co. and Kia Corporation the Northern District of Ohio is the proper forum in which to consolidate the cases. The *Northern District of Ohio Plaintiffs* have sent requests for waivers of service to Kia Corporation and Hyundai Motor Co. on September 20, 2022.[1] While the *Northern District of Ohio* case was the eleventh class action brought against Kia and Hyundai, it was the first class action to name the corporate defendants who are the manufactures with access to critical documents needed for discovery. The only other filed action to name the corporate manufacturers is *Cohen et al. v. Kia America Inc. et al.* case no. 8:22-cv-01664, and it was filed almost a month

---

[1] *The Northern District of Ohio Plaintiffs* sent the requests for waiver of service and amended complaint via First-Class international mail with return receipt requested. The tracking numbers on the requests for waiver of service are RB431608857US and RB431608865US.

after the *Northern District of Ohio Plaintiffs* filed suit against the corporate entities of Kia Corporation and Hyundai Motor Co. The *Northern District of Ohio* litigation is further along than the *Cohen* action and has been in contact with defense counsel regarding the request for waivers of service. Though the Northern District of Ohio was not the first litigation filed, the courts have discretion on whether to apply the first-to-file rule.

**II. WHEN DETERMINING WHERE A CONSOLIDATED ACTIONS SHOULD BE HEARD, COURTS HAVE DISCRETION IN WHETHER TO APPLY THE FIRST-TO-FILE RULE.**

One way federal courts can avoid duplicative legislation can be achieved by the "first-to-file" rule. *White v. Home Depot USA, Inc.,* No. 22-cv-00276 (S.D. Cal. July 6, 2022) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir. 1982). However, courts should not apply the first-to-file rule mechanically, but rather, "they must exercise discretion to determine how best to conserve judicial resources and comprehensively dispose of litigation." *White v. Home Depot USA, Inc.* (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co*., 342 U.S. 180, 183-84 (1952).

In determining whether to apply the first-to-file rule, the "court must consider three factors in deciding whether to apply the first-to-file rule: (1) the chronology of the…actions; (2) the similarity of the parties; and (3) the similarity of the issues." *White v. Home Depot USA, Inc*. (citing *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 623, 625-26 (9th Cir. 1991)). An exception to the first-to-file rule is "where the balance of convenience favors the later-filed action." *White v. Home Depot USA, Inc*. (citing *Alltrade, Inc. v. Uniweld Prods., Inc*., 946 F.2d 623, 627-28. (9th Cir. 1991). The California Central District Court has found that "the first to file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of

sound judicial administration." *Gordon v. Digital Basement LLC* No. CV 14-09882 SJO. 2015 WL 13915248 (C.D. C.A. April 1, 2015).

Courts have broad discretion when determining whether to follow the first-to-file rule, and the first-to-file rule may be inapplicable to class action lawsuits filed within days of one another. "[T]he first-to-file rule does not comport neatly with the class-action device, [and]…[g]iven the breadth of the courts' discretion, . . . the first-[to-file] rule is not firm and does not solve the dueling class action problem." *In re Toyota Hybrid Brake Litig.*, Consolidated No. 4:20-CV-127, at *14 (E.D. Tex. Oct. 21, 2020). The instant case involves a multitude of class actions filed days apart, and the first-to-file rule does not resolve the issue over which forum is appropriate for the consolidated matter. Therefore, this Panel should use its broad discretion to locate these cases at a court that provides the sturdy scaffolding for sound judicial administration.

Factors the Panel should consider are (1) the convenience of parties and witnesses and (2) promoting the just and efficient conduct of the consolidated actions. See 28 U.S.C. § 1407(a). These goals are best served by transferring the related actions for coordinated pretrial proceedings. 28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact." *Id.* Here, Section 1407's requirements for transfer are satisfied.

Judge Carr of the Northern District of Ohio opined that the court of the first-filed action should be the court to retain or relinquish jurisdiction of the first-filed action. *Daimler Chrysler Corp. v. General Motors Corp.*, 133 F. Supp. 2d 1041, 1044 (N.D. Ohio 2001). The Eastern District of Wisconsin, in which the first action was filed, expounds upon the exception of the first to file rule and enumerates six factors including "(1) the adequacy of the relief available in the alternative forum; (2) promotion of judicial efficiency; (3) the identity of the parties and the issues in the two

actions; (4) the likelihood of prompt resolution in the alternative forum; (5) the convenience of the parties, counsel and witnesses; and (6) the possibility of prejudice to any party." *Rutlin v. United States* 849 F.Supp. 34, (E.D. WI. 1994). It is self-evident that no party in the litigation will be prejudiced if the forum is the Northern District of Ohio and the Northern District of Ohio is every bit as capable of providing a prompt resolution as any other forum.

A. **The adequacy of the relief provided in The Northern District of Ohio is superior to the relief of other District Courts.**

Federal Courts have held that even if the parties overlap substantially, the court will decline to apply the first-to-file rule where the putative class is distinct. The *Northern District of Ohio* Plaintiff's putative class is clearly distinguished from the other filed cases by the definition of its class vehicles. Most of the other litigations limit the class to "2011-2022 Kia vehicles or 2015-2022 Hyundai vehicles equipped with traditional "insert-and-turn" steel key ignition systems" *Complaint* No. 8:22-cv-01548 Doc. 1 (C.D. C.A. August 19, 2022), and that definition ignores the platform cycle for which the vehicles are manufactured. The *Northern District of Ohio* Plaintiffs have reached 3,472 people with the alleged defect, and of those 3,472, over one-thousand people have had their vehicle stolen. The *Northern District of Ohio* litigation collected data from each of the potential class members. The *Northern District of Ohio* litigation defined the class based on the data of reported thefts and compared the data to each Platform cycle of Kia and Hyundai. The *Northern District of Ohio* class vehicle definition is data-based and compared the data to the platform cycles of Hyundai and Kia Vehicles. In the below table, a platform cycle was included if at least one vehicle was reported stolen in that platform cycle. The below table illustrates the *Northern District of Ohio Plaintiff's* definition of a class vehicle.

**Kia Thefts by Platform Model**

| KIA | Sportage: | Soul | Forte | Optima | Seltos | Rio | Sedona | Sorento | Telluride |
|---|---|---|---|---|---|---|---|---|---|
| **1st Generation** | | 2010–2013 | | | | | | | 2020–present |
| **2nd Generation** | | 2014–2019 | 2014–2018 | | | | | 2011–2015 | |
| **3rd Generation** | 2011-2016 | 2020–present | 2019–present | 2011-2015 | | 2012–2017 | 2015–2021 | 2016–2020 | |
| **4th Generation** | 2017-2022 | | | 2016-2020 | | 2018–Present | | 2021–present | |

**Hyundai Thefts by Platform Model**

| Hyundai | Elantra | Sonata | Tucson | Santa Fe | Accent |
|---|---|---|---|---|---|
| **1st Generation** | | | | | |
| **2nd Generation** | | | 2010–2015 | | |
| **3rd Generation** | | | 2016–2021 | 2013–2018 | |
| **4th Generation** | | | 2022–present<br><br># of thefts: 1 | 2019–present | 2012 - 2017 |
| **5th Generation** | 2011–2016 | 2011–2016 | | | 2018–2022 |
| **6th Generation** | 2016–2020 | 2017–2020 | | | |
| **7th Generation** | 2021–present | | | | |

The court generally finds the parties are identical if the parties substantially overlap. *Riley v. General Motors LLC.* No. 2:21-cv-00924, 2022 WL 787871 3(S.D. O.H. March 15, 2022). Typically, the defendants are the same, and the difference in parties are the named Plaintiffs as representative of a putative class. *Riley v. General Motors LLC.* No. 2:21-cv-00924, 2022 WL 787871 *3(S.D. O.H. March 15, 2022). In *Riley* the court found that the parties substantially overlapped because the Plaintiffs represented substantially similar putative classes and the defendants were the same. *Id.* The instant case is distinct, however, from *Riley* because the difference in parties is among the defendants.

The *Northern District of Ohio Plaintiffs* brought suit against the corporate entities Hyundai Motor Co. and Kia Corporation who are the manufactures of the class vehicles; whereas, the other litigations have brought suit against the distributors for the corporate entities of Kia Corporation and Hyundai Motor Co. Where the corporate defendants are not named in the first-filed litigation, the court will find the first-to-file rule inapplicable because there is not substantial overlap between the two cases. *Hart v. Donostia* LLC, 290 F. Supp. 3d 627, 632 (W.D. Tex. 2018) (finding that the first-filed litigation brought suit against Jimmy John's franchises; whereas, the second-filed suit brought suit against Jimmy John's corporate entities.)

When deciding between two similar actions with similar Defendant and similar issues the Panel may then look to the "chronology of the …actions" to determine the appropriate location. *White v. Home Depot USA, Inc.* (citing *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 623, 625-26 (9th Cir. 1991)). All other actions have solely sued the American distributors of the Korean entities. The distributors are not likely to have discovery over the design and manufacture of the defective vehicles. As such the litigation brought in the *Northern District of Ohio* is substantially distinct from all other cases filed and has the enormous advantage of being able to provide

necessary discovery to every other pending action. Further, the Cohen et al. v. Kia America Inc. et al. class vehicle definition varies substantially from the *Northern District of Ohio Plaintiff's* class vehicle definition. The *Cohen* case out of the Central District of California defines the class vehicle as "all 2011-2022 Kia vehicles or 2015-2022 Hyundai vehicles which do not contain an engine immobilizer…include[ing] all Hyundai and Kia models, except for the most expensive trim packages, and following models: Kia Niro; Kia Stinger; Hyundai Azera; Hyundai Equus; Hyundai G80; Hyundai Genesis; and Hyundai Ioniq." This class vehicle definition is overbroad and ignores the platform cycles for Kia and Hyundai. Because the *Northern District of Ohio Plaintiffs* define the class vehicle by platform cycle, the class definition is more precise and will lead to more efficient Discovery. As Discovery proceeds the documents will indicate which trim levels within each platform cycle are not equipped with immobilizers.

B. **Hearing the cases in the Northern District of Ohio promotes the just and efficient conduct of the consolidated actions.**

Because the Northern District of Ohio Plaintiffs are the only Plaintiffs who have brought suit against Kia Corporation and Hyundai Motor Corporation, the manufactures and the entities that are the custodians of the documents regarding the alleged design defect of a lack of an engine immobilizer. All remaining pending cases only bring actions against the American distributors, namely Kia America Inc. and Hyundai Motor America. These entities do not make decisions about whether to include an immobilizer and would not have the documents regarding the design of the vehicles. Kia America Inc. and Hyundai Motor America likely would not have the knowledge as to why Kia and Hyundai's designs stopped including immobilizers in certain models. The discovery needed in this litigation hinges on collecting documents from Kia Corporation and Hyundai Motor America. As such, the Northern District of Ohio litigation is the only litigation

able to secure the discovery needed for every other litigation. Should this Court choose to consolidate the cases in another district, the discovery would be incomplete, the Northern District of Ohio Plaintiffs would not be able to resolve their claims against the manufacturers.

The Northern District of Ohio is not bogged down by voluminous MDLs, and Judge James G. Carr has experience handling MDLs. Judge Carr does not have an MDL pending before him at this time, and therefore, the efficiency of his court would be superior to other judges who have MDLs pending in their courts.

C. **The convenience of parties and witnesses are best served by consolidating the cases in the Northern District of Ohio**

This Panel has held that the district court which is centrally located and equally convenient to all parties is the appropriate forum. *IN RE: EPIPEN* 268 F.Supp.3d 1356 (J.P.M.L. 2017). The Northern District of Ohio is geographically centrally located in the country, and there is a history of national cases being consolidated in the Northern District of Ohio for the sake of the convenience of the parties. See *In re Travel Agent Com'n Antitrust Litigation, Jud.Pan.Mult.Lit.2003, 290 F.Supp.2d 1381* (finding that transferring an MDL to the Northern District of Ohio was acceptable because no district stood out as a focal point for the docket given the geographic dispersal of constituent actions in California, Ohio and Texas; and the Northern District of Ohio had the capacity to handle the litigation)*; See also In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation, Jud.Pan.Mult.Lit.1975, 406 F.Supp. 540* (finding that the District of Kansas was geographically centrally located court when there are cases filed in districts all over the country where fifty-seven actions were pending in twenty-three different districts).

Toledo, the location of the court of the Northern District of Ohio, is a convenient forum for all parties because Detroit, where the nearest airport is located, is centrally located in the Midwest and is a forty-five-minute drive to the James M. Ashley and Thomas W. L. Ashley U.S. Courthouse. Detroit Metro Airport offers numerous non-stop flights, and in particular, Delta offers direct flights to most major metropolitan areas in the United States as shown by Figure 1.

*Figure 1[2]*



Unlike Kansas City International Airport, Delta offers direct flight to Detroit Metro Airport (DTW) from the Republic of Korea, and the total flight time is just over thirteen hours. DTW also offers direct flights from John Wayne Airport (SNA) to Detroit. SNA is an eleven-minute drive from Defendant Kia America Inc.'s headquarters in Irvine, CA. John Wayne Airport (SNA) is a nine-minute drive from Defendant Hyundai Motor America's headquarters in Fountain Valley, CA. Defendant Hyundai-Kia America Technical Center, Inc. (HATCI), located in the Detroit Metropolitan area near Ypsilanti, MI, is an hour drive from the United States Northern District

---

[2] AirlineRouteMaps available at https://www.airlineroutemaps.com/maps/Delta_Air_Lines/North_America/Detroit accessed on Sept 9, 2022.

located in Toledo. DFW is a forty-five-minute drive from the Toledo Division of the Northern District of Ohio Court.

This court should consider the Toledo Division of the Northern District of Ohio over the Western Division of the Central Division of California for the MDL because Detroit Traffic is much less than Los Angeles metro area traffic. Out-of-state Defendants can fly into DTW and drive with minimal traffic along Interstate I-75. The TomTom Traffic index calculates the rate of congestion among 404 cities World-Wide, and ranks the cities based on traffic congestion.[3] Of the 404 cities ranked, Detroit's traffic ranks at number 368, which is in the bottom forty.[4] In 2021, the average congestion level in Detroit was 13% meaning that a thirty-minute trip would take 13% longer, or an extra four minutes.

In comparison, Los Angeles metro area Traffic ranks 59th of the worst traffic world-wide. Of North American cities, Los Angles traffic ranks 4th behind Mexico City, New York, and Vancouver.[5] The average congestion level for Los Angeles was 33%, meaning a thirty minute trip would take an additional ten minutes.[6] The highest congestion level for Las Angeles in 2021 was 51% meaning that a thirty minute trip would take an additional fifteen minutes.[7] The drive from LAX to the Ronald Reagan Federal Building and United States Courthouse in the Southern Division of the Central District of California exceeds 45 minutes, not accounting for traffic.

---

[3] TomTom Traffic Index, available at https://www.tomtom.com/en_gb/traffic-index/about/ accessed on Sept. 9 2022.
[4] Detroit in Traffic Index 2021, TomTom Traffic Index available at https://www.tomtom.com/en_gb/traffic-index/detroit-traffic/ accessed on Sept. 9, 2022.
[5] TomTom Traffic Index Ranking 2021 available at https://www.tomtom.com/en_gb/traffic-index/ranking/?country=CA,MX,US accessed on Sept. 9, 2022.
[6] Los Angeles Traffic Index 2021, TomTom Traffic Index available at https://www.tomtom.com/en_gb/traffic-index/los-angeles-traffic/ accessed on Sept. 9, 2022.
[7] *Id.*

According to Inrix[8], "the average commuter in the L.A. metro area is losing 103 hours per year to congestion, costing $1,524 per driver in time lost."[9]

Rather than driving to Los Angeles, Defendants Kia America Inc., and Hyundai Motor America can drive approximately ten minutes to John Wayne Airport (SNA), take a direct flight to Detroit Metro Airport (DTW) and drive forty-five-minutes from DTW to the James M. Ashley and Thomas W. L. Ashley U.S. Courthouse located in Toledo, OH. The Korean entities, Kia Corporation and Hyundai Motor Co. can take a direct flight from the Republic of Korea to Detroit.

Further LAX, is the fifth busiest airport worldwide according to CBS, and as a result is prone to delays in travel.[10] The practicality of the parties flying into SNA is slim due to the limited direct flights from the John Wayne Airport (SNA) as shown in Figure 1 below.

*Figure 2*[11]



---

[8] INRIX was founded in 2005, and developed a method to analyze traffic data. INRIX, available at https://inrix.com/about/ accessed on Sept 9, 2022.
[9] https://www.nbclosangeles.com/news/local/los-angeles-has-top-two-worst-traffic-corridors-in-the-nation-study-says/2325974/ accessed on Sept 9, 2022.
[10] CBSLA Staff, "LAX ranked fifth-busiest airport in the world" April 11, 2022, available at https://www.cbsnews.com/losangeles/news/lax-fifth-busiest-airport-in-the-world/ accessed on Sept 9, 2022.
[11] Routes - John Wayne Airport (SNA) available at https://www.ocair.com/travelers/flights/route-planner/ accessed on Sept 9, 2022.

Meanwhile, Detroit Metro Airport has Detroit Airport has direct flights scheduled to 123 destinations in fourteen countries, including the Republic of Korea, and 101 domestic flights from Detroit[12] as shown in Figure 3.

*Figure 3*[13]



Compared to LAX, DTW had one-eighth the number of international travelers as LAX, totaling 1.03 million international passengers from January 1, 2022 until July 31, 2022[14]. LAX had 8.75 million international travelers in that same time period[15]. DTW is a more convenient airport for the international defendants because with fewer international travelers, the amount of passengers passing through customs is much smaller than LAX, and thus the customs process is quicker at DTW.

---

[12]FlightConnections available at https://www.flightconnections.com/flights-from-detroit-dtw accessed on Sept 9, 2022.
[13] Flightsfrom.com available at https://www.flightsfrom.com/DTW accessed on Sept 9, 2022.
[14] Detroit Metro – Willow Run Wayne County Airport Authority *Aviation Statistics Report Detroit Metropolitan Airport*, July 2022, available at https://www.metroairport.com/sites/default/files/business_documents/PDFs/AviationStatistics/Monthly_Aviation/2022/July_2022_Aviation_Statistics_Report.pdf accessed on Sept 9, 2022.
[15] LAWA *Los Angeles World Airports (LAWA) Traffic Comparison (TCOM)*, August 23, 2022 available at https://www.lawa.org/-/media/96400e0d4448419c879574c35558f6a4.pdf accessed on Sept 9, 2022.

### III. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Panel transfer the Related Actions listed in the Schedule of Actions attached as Exhibit A and any subsequently filed cases raising similar claims to the Northern District of Ohio for coordinated pretrial proceedings before the Honorable James G. Carr.

Dated: September 22, 2022                                  Respectfully Submitted,

/s/ Melissa Payne

Melissa Payne (Ohio Bar No. 0098027)
Payne Law LLC
26600 Detroit Road, Suite 250
Westlake, Ohio 44145
(757) 768-9029 (Phone)
(216) 294-4839 (Fax)
Melissa@VincentEsq.com

Laurence Harrington (*Pro Hoc Vice Pending*)
The Harrington Firm PLLC
*Of Counsel* Payne Law LLC
www.theharringtonfirm.com
(484) 469-0468