| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT LITIGATION | MDL DOCKET NO. 3052 |

### THE *MORROW* PLAINTIFFS' RESPONSE IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS IN THE CENTRAL DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1407

Pursuant to Rule 6.1(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Miyoshi Morrow, Tracy Spradlin, and Rachel Perry (collectively, "the *Morrow* Plaintiffs") in *Miyoshi Morrow et al. v. Hyundai Motor America Inc. et al.,* Case No. 8:22-cv-01674-FWS-KES (C.D. Cal. Sept. 12, 2022) hereby submit their response in support of the *McNerney* Plaintiffs' Motion for Transfer and Consolidation of Related Actions in the Central District of California under 28 U.S.C. § 1407. (Dkt. 1).

The *Morrow* Plaintiffs support consolidation and transfer to the Central District of California, Southern Division (the "Central District"). First, Hyundai Motor America, Inc. ("Hyundai") and Kia America, Inc. ("Kia") (collectively "Defendants") are headquartered in Orange County, California and thus the vast majority of relevant documents and witnesses relating to all pending actions will be located there. Second, the Central District contains more related actions than any other district, and Southern California is a convenient metropolitan center for all parties, witnesses, and counsel. Moreover, judges in the Central District have the expertise, skill, and capability to oversee this automotive defect multi-district litigation. Specifically, this litigation would be well served by the oversight of either Hon. David O. Carter or Hon. Cormac J. Carney, both of whom have been assigned at least one related action and have a history of efficiently managing multi-district litigation of similar size and complexity.

## I. FACTUAL BACKGROUND

This litigation arises from an alleged defect in Kia and Hyundai vehicles containing turnkey ignition systems (the "Class Vehicles"), making them uniquely vulnerable to theft. The Class Vehicles do not contain standard anti-theft technology—an immobilizer—which prevents a vehicle from being started unless the electronic code from the key fob or smart key matches with it (the "Immobilizer Defect"). Immobilizers are so ubiquitous that several countries mandate this technology in new vehicles by law. Although Kia and Hyundai are alleged to have long known that immobilizers have been proven to significantly reduce theft, and sell nearly identical vehicles in countries that require immobilizers, the Class Vehicles were designed, manufactured, and sold without this essential anti-theft technology. Knowledge of this vulnerability has spread like wildfire as a result of users on social media platforms depicting how to steal Class Vehicles in a matter of seconds. Drivers of these stolen Class Vehicles operate them recklessly, endangering their own lives and the lives of passengers and bystanders. The Immobilizer Defect is not a benign fault of the Class Vehicles—it is a safety and security risk. The related actions assert claims for violation of consumer protection statues, violations of warranty, and related common law claims as a result of the Immobilizer Defect.

## II. ARGUMENT

### a. Centralization is Appropriate Under 28 U.S.C. § 1407.

Section 1407(a) permits transfer and consolidation or coordination of cases where: (1) the civil actions involve "one or more common questions of fact," (2) transfer and consolidation or coordination will further "the convenience of the parties and witnesses" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." Each of these factors is met here.

There are twenty-six currently pending actions[1] regarding Class Vehicles with the Immobilizer Defect. These related actions all involve common questions of law and fact, including but not limited to:

1. Whether the Class Vehicles were equipped with an immobilizer;

2. Whether and when Defendants knew, or should have known, of the Immobilizer Defect in the Class Vehicles;

3. Whether Defendants' concealments and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them important in purchasing, leasing, selling, maintaining, retaining, or operating their Class Vehicles;

4. Whether Defendants had a duty to disclose the Immobilizer Defect in the Class Vehicles; and

5. Whether Defendants' concealment of the Immobilizer Defect caused the market price of the Class Vehicles to incorporate a premium reflecting the assumption by consumers that the Class Vehicles were equipped with sufficient anti-theft measures, and, if so, the market value of that premium.

Such identical issues across all related actions warrant consolidation.

---

[1] In addition to the *Morrow* Plaintiffs' case, nine other cases have been filed since the *McNerney* Plaintiffs' Motion: *Henry, et al., v. Kia America, Inc.,* Case No. 8:22-cv-01729 (C.D. Cal. Sept. 21, 2022); *McQuarrie, et al., v. Kia America, Inc.,* Case No. 8:22-cv-01721 (C.D. Cal. Sept. 21, 2022); *Hufford v. Kia America, Inc., et al.,* Case No. 8:22-cv-01715 (C.D. Cal. Sept. 19, 2022); *Baker, et al., v. Kia America, Inc., et al.,* Case No 8:22-cv-01712 (C.D. Cal. Sept. 16, 2022); *DeKam, et al., v. Kia America, Inc., et al.,* Case No. 2:22-cv-12198 (Mich. Sept. 16, 2022); *Fisher v. Kia America, Inc., et al.,* Case No. 1:22-cv-02367 (Colo. Sept. 14, 2022); *Cohen, et al., v. Kia America, Inc., et al.,* Case No. 8:22-cv-01664 (C.D. Cal. Sept. 9, 2022); *Johnson v. Kia America, Inc., et al.*, Case No. 0:22-cv-02164 (Minn. Sept. 2, 2022); and *Zanmiller v. Kia America, Inc., et al.,* Case No. 0:22-cv-02149 (Minn. Sept. 1, 2022).

Consolidation will also be more convenient for parties and witnesses, especially as it relates to the progress of discovery. Absent consolidation, the potential for duplicative discovery would go unchecked. Discovery will necessarily entail production of documents and witnesses on, *inter alia,* Defendants' design, manufacturing, warranting, and sale of Class Vehicles, knowledge of the Immobilizer Defect, and the reasons they decided not to include immobilizer technology in the Class Vehicles. Consolidation thus prevents parties and witnesses needless waste of time and resources.

For the same reasons, consolidation furthers the just and efficient adjudication of these related actions. Consolidation will bring a uniformity of decision to motions before the court, including discovery matters which, as discussed above, will almost certainly overlap. Instead of different courts applying differing standards, one court will be tasked with rendering uniform decisions. This will bring clarity to litigants and the relevant bodies of case law regarding the same factual and legal issues that will undoubtedly arise—especially here in the context of the overlapping nationwide and state classes at issue.

On September 19, 2022, Defendants advised this Panel that they "…do not oppose the centralization of these cases …." (Dkt. 11, p. 1).

### b. The Central District of California is the Most Appropriate Forum.

The factors the Panel looks to when selecting a transferee district weigh strongly in favor of selecting the Central District of California. *See* MANUAL FOR COMPLEX LITIGATION § 20.1 (4th ed. 2004) ("The Panel uses no single factor to select the transferee district, but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and

inconvenience will be minimized, and the experience, skill, and caseloads of available judges.") (citation omitted). The balance of these factors weighs in favor of transfer to the Central District.

First, most of the common facts and unlawful conduct occurred in California. Defendants are both California corporations and are headquartered in Orange County. Hyundai maintains its principal place of business in Fountain Valley, California and Kia maintains its principal place of business in Irvine, California. Defendants' key corporate employees are likely to reside in Southern California, documents are likely located there, and decisions and events central to the related cases, such as the Defendants' determination to forego immobilizer technology in Class Vehicles, will have occurred in the Central District. In fact, the Central District of California was recently chosen for another MDL involving Kia and Hyundai. *See In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 410 F. Supp. 3d 1357, 1360 (U.S. Jud. Pan. Mult. Lit. 2019) (selecting Central District of California as transferee district, stating "Hyundai Motor America, Inc., and Kia Motors America, Inc. are headquartered in [the central] district, and relevant documents and witnesses likely will be found there").

Additionally, California has the highest number of registered automobiles in the United States at 14.2 million, nearly double that of the next-highest state.[2] Thus, a verdict or settlement in favor of plaintiffs will likely have a proportionally greater economic impact in California. Additionally, given the greater level of vehicle ownership in California, any tag-along actions would likely be filed in California courts. Thus, the residence of affected consumers weighs in favor of centralization in California. *See In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352, 1355 (U.S. Jud. Pan. Mult. Lit. 2010)

---

[2] *State Motor-Vehicle Registrations – 2020*, FEDERAL HIGHWAY ADMINISTRATION (June 15, 2022), https://www.fhwa.dot.gov/policyinformation/statistics/2020/mv1.cfm.

(choosing transferee district based on the "geographic and psychological center of gravity" of the actions).

Second, cost and inconvenience would be minimized by selecting the Central District. Plaintiffs across all related actions will be seeking depositions of Defendants' employees and production of documents, which are highly likely to be located in Southern California at Defendants' headquarters. Furthermore, Southern California is a convenient metropolitan center containing five major airports, including Los Angeles International Airport and John Wayne International Airport. Accordingly, even witnesses not located in the Central District will be able to access Southern California with ease.

Third, the Central District has the highest concentration of related actions. Of the twenty-six cases filed thus far, eight actions are pending in the Central District—four times that which are pending in any other of the fifteen districts. At the time of this filing, the *Morrow* Plaintiffs are not aware that any of the related cases are at a procedurally advanced stage of litigation, as nearly all related cases were filed within the past three months.[3] The largest number of cases pending in the Central District, with nearly all having just commenced, thus favors transfer to this forum.

Fourth, the "experience, skill, and caseloads of available judges" weighs in favor of transfer to the Central District. Several multi-district litigation proceedings have been transferred and handled successfully by Judges in the Central District. According to the latest MDL Statistics Report, as of August 15, 2022, the Central District currently oversees only five MDL actions.[4]

---

[3] Only one of the related actions is currently at the motion to dismiss stage. *See McNerney* Motion at 9; *See also In re BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) (noting that where actions are at an "early stage," transfer to another district would not be "unduly disruptive").

[4] *MDL Statistics Report – Distribution of Pending MDL Dockets by District* (August 15, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-15-2022.pdf

This is less than other districts of a similar size, but, notably, the Central District has unique expertise in MDLs involving vehicle manufacturers, as three of the five currently pending MDLs are automotive defect class actions. Thus, the Central District, a major metropolitan court, has both the experience and the available judicial resources to handle this multi-district litigation.

The *Morrow* Plaintiffs submit that either Hon. David O. Carter or Hon. Cormac J. Carney possess the qualifications and skill to preside over this multi-district litigation, and the case would be well served by the oversight of either. Both are experienced jurists with extensive MDL experience. Judge Carter served as an Orange County Superior Court judge before his appointment to the federal bench in 1998. Judge Carney also served on the Orange County Superior Court before his appointment to the federal bench in 2003. Neither Judge Carter nor Judge Carney are currently presiding over any MDL cases. As such, both have the expertise and resources required to manage this litigation justly and efficiently.

## III. CONCLUSION

For the reasons set forth above, the *Morrow* Plaintiffs respectfully request that the Panel grant the *McNerney* Plaintiffs' motion to centralize and transfer the actions to the Central District of California, selecting either the Hon. David O. Carter or the Hon. Cormac J. Carney as transferee judge.

Respectfully submitted,

/s/ *Roland Tellis*
Roland Tellis
BARON & BUDD, P.C.
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Shannon Royster (SBN 314126)
sroyster@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
Facsimile: 818-986-9698

WILLIAMS DIRKS DAMERON LLC
Matthew L. Dameron
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
T: (816) 945-7110
E: matt@williamsdirks.com

Counsel for Plaintiffs Miyoshi Morrow, Tracy Spradlin, and Rachel Perry (*Morrow, et al., v. Hyundai Motor America, Inc. et al.,* Case No. 8:22-cv-01674 (C.D. Cal. Sept. 12, 2022).