BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT LITIGATION | MDL No. 3052<br><br>Oral Argument Requested |

**FIRST-FILED PLAINTIFFS' AND *HENRY* PLAINTIFFS' JOINT BRIEF IN PARTIAL OPPOSITION TO THE *MCNERNEY* PLAINTIFFS'
MOTION TO TRANSFER AND COORDINATION OR
CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Stephanie Marvin, Katherine Wargin, Chaid Przybelski, Chad Just, Amy Flasch, and Lydia Davis (collectively, "First-Filed Plaintiffs") in the first-filed related action styled *Marvin et al v. Kia America, Inc. et al,* Civ. No. 2:21-cv-01146-PP (E.D. Wis.) ("First-Filed Action"), and Plaintiffs Lauren Henry, Lauren Hickman, Kathy Coke, Gerald Smith, Devon McClellan, and Lauren Hernandez (collectively, "*Henry* Plaintiffs") in the related action styled *Henry et al v. Kia America, Inc. et al*, 8:22-cv-01729 (C.D. Cal.) ("*Henry* Action") respectfully submit this joint brief in partial opposition to the *McNerney* Plaintiffs' Motion for Transfer and Consolidation of Related Actions in the Central District of California Under 28 U.S.C. § 1407 (MDL No. 3052 at ECF No. 1) ("Motion to Transfer"), filed by the plaintiffs in the related action styled *McNerney v. Kia America, Inc*., C.D. Cal No. 8:22-cv-01548 (the "*McNerney* Action").

As detailed herein, the First-Filed Plaintiffs and *Henry* Plaintiffs agree that all related actions should be consolidated pursuant to 28 U.S.C. § 1407, but respectfully submit that all related actions should be transferred to the epicenter of the Kia and Hyundai vehicle theft crisis: the Eastern District of Wisconsin, where the First-Filed Action has been pending for over a year.

Alternatively, the First-Filed Plaintiffs and *Henry* Plaintiffs respectfully submit that all related actions should be transferred to the Central District of California given the location of Kia and Hyundai's respective corporate headquarters.

I.  **BACKGROUND**

   A.  **The First-Filed Action is the First-Filed Case Related to Kia and Hyundai Vehicle Thefts, and Has Been Actively Litigated for Nearly Thirteen Months Before the Next Related Action was Filed**

The class action suits that the Motion to Transfer seeks to consolidate through these MDL proceedings involve factual allegations similar to, albeit less detailed than, those first alleged by the First-Filed Plaintiffs in the First-Filed Action, which was filed thirteen months before any other related actions were filed. The First-Filed Action, like the numerous recent copycat cases, alleges that certain Kia and Hyundai manufactured vehicles suffer from a design and/or manufacturing defect that renders them extremely susceptible to vehicle theft (the "Defect"). *See* Motion to Transfer, Ex. 16 (ECF No. 1-19) at 10-11 of 176, ¶¶ 1-5. All of the other related actions listed in Motion to Transfer's Schedule of Actions (ECF No. 1-2) allege substantially similar facts as the First-Filed Plaintiffs related to the Defect. But none of the complaints in the related actions allege nearly the level of factual detail or specificity about the multi-faceted Defect that the First-Filed Plaintiffs allege. For instance, the fifteen of the related actions listed in the Schedule of Actions attached to the Motion to Transfer parrot the same conclusory allegation that the Defect is simply limited to a lack of "engine immobilizers."[1] In contrast, First-Filed Plaintiffs' allegations of the

---

[1] *See* Motion to Transfer Ex. 1 at 7, ¶31 ("The vehicles are defective in that, among other things, Defendants manufactured and designed them without engine immobilizers"); Ex. 3 at 6, ¶33 (same); Ex. 4 at 7, ¶35 (same); Ex. 5 at 7, ¶38 (same); Ex. 6 at 11, ¶31 (same); Ex. 7 at 7, ¶26 (same); Ex. 8 at 6, ¶31 (same); Ex. 9 at 6, ¶22 (same); Ex. 11 at 6, ¶31 (same); Ex. 12 at 5, ¶31; Ex. 13 at 10, ¶27 (same); Ex. 14 at 7, ¶35 (same); Ex. 15 at 12, ¶33 (same); Ex. 2 at 1, ¶1 ("the Class Vehicles are not equipped with an "immobilizer"); and Ex. 10 at 1, ¶2 ("The Class Vehicles, though, suffer from a design defect in that they do not contain an ignition immobilizer").

2

Defect are so detailed that the complaint had to be filed under seal to avoid providing car thieves a playbook on how to utilize the multifaceted Defect in order to steal Hyundai and Kia vehicles.

The First-Filed Action, *Marvin et al v. Kia America, Inc. et al,* Civ. No. 2:21-cv-01146-PP (E.D. Wis.), is the first class action filed related to the Defect and Kia and Hyundai vehicle theft. The First-Filed Action was filed in Wisconsin state court nearly *fifteen months ago*, on June 23, 2021, naming as defendants Kia America, Inc., Hyundai Motor America, and Hyundai Kia America Technical Center, Inc. *See* Exhibit A (redacted complaint filed in Wisconsin Circuit Court, Milwaukee County, on June 23, 2021). Because the complaint in the First-Filed Action contained detailed factual allegations about the nature of the Defect and how criminals were exploiting it commit unprecedented numbers of Kia and Hyundai vehicle thefts, the complaint was filed under seal to prevent further increases in the number of vehicle thefts by using the complaint as a handbook:

> The pleading standard governing certain claims in the Complaint requires plaintiffs to plead the precise nature of the defect affecting the Kia and Hyundai vehicles, which has made them a prime target for auto thefts. Given the "epidemic" this has created in the Milwaukee metro area, as the Milwaukee Police Department explained, we did not want to exacerbate the problem by filing a publicly available document, which explains in exacting detail how these cars are being stolen without first raising this issue with the Court and other relevant parties. We are cognizant and greatly appreciate the importance of transparent judicial proceedings and open access to judicial records. To that end, we anticipate filing a redacted copy of the Complaint that addresses these dueling concerns, but first wished to address this matter with the Court and other stakeholders given the sensitives involved and potential impact on our [Milwaukee] community.

Exhibit B at 3 (State of Wisconsin Circuit Court, Milwaukee County, (1) Motion to Seal or Redact a Court Record; and (2) subsequent Order [Granting] Motion to Seal or Redact a Court Record).

Defendants subsequently removed the First-Filed Action to the Eastern District of Wisconsin on October 5, 2021. *See* Exhibit C at 4 (entry #1, Defendants' notice of removal). The First-Filed Plaintiffs filed an amended complaint in the Eastern District of Wisconsin on November

4, 2021, which was also filed under seal in an effort to curtail the number of Kia and Hyundai vehicle thefts. *See id.* at 3 (ECF No. 12. On December 22, 2021, both Defendants filed two separate motions to dismiss. *See id.* at 4 (ECF Nos. 19, 21). On February 10, 2022, the First-Filed Plaintiffs filed a joint motion with Defendants setting forth a briefing schedule on their motions to dismiss. *See id*. at 4 (ECF No. 24). On February 28, 2022, the First-Filed Plaintiffs filed their oppositions to Defendants' motions to dismiss. *See id.* at 5 (ECF No. 30). Defendants filed a joint reply brief in support of their separate motions to dismiss on March 25, 2022. *See id.* at 5 (ECF No. 32). Thus, two motions to dismiss were filed and fully briefed in the First-Filed Action as of March 25, 2022. On May 31, 2022, the Eastern District of Wisconsin granted the First-Filed Plaintiffs' motion to join four additional class representatives. *See id.* at 5 (ECF No. 34).

All of the foregoing substantial litigation (and more) occurred prior to the filing of any of the related actions filed to date. Thus, the First-Filed Action was pending and engaged in active litigation for *over a year* before the first related action was filed. *See* Motion to Transfer, Ex. 9 (the next filed related action, *Bendorf et al v. Kia et al*, was filed on July 21, 2022, almost thirteen months after the First-Filed Action *Marvin* complaint was filed on June 23, 2021).

> **B.** **Milwaukee, Located within the Eastern District of Wisconsin, is the Epicenter of the Kia and Hyundai Vehicle Theft Crisis in America**

Milwaukee is the epicenter of Kia and Hyundai vehicle thefts in America. In 2021 alone, more than 10,000 vehicles were stolen in Milwaukee.[2] The Milwaukee Police Department reported that Kia and Hyundai vehicle thefts made up over 60% of Milwaukee's car thefts in the first two

---

[2] *See, e.g.*, Fox6 Milwaukee, "*Milwaukee stolen vehicle crimes double, half the arrests kids 16 and under*", Dec. 14, 2021 (accessible at: https://www.fox6now.com/news/milwaukee-stolen-vehicle-crimes-double-half-the-arrests-kids-under-16 (last visited September 23, 2022).

4

months of 2021.³ As of May 20, 2021, Milwaukee was averaging *twenty–five stolen vehicles per day*⁴, and the Milwaukee Police Department identified the top five stolen models as Class Vehicles.⁵

Milwaukee local news outlets refer to Milwaukee's spike in car thefts as an "epidemic"⁶ that has wreaked havoc on the Milwaukee community, as the adolescents that steal the vehicles often engage in reckless driving that leads to severe car accidents that have left several people in the Milwaukee area dead or severely injured⁷. Countless videos have been posted on social media showing stolen Kia and/or Hyundai vehicles being driven recklessly on Wisconsin streets and even drag racing on school sidewalks dangerously close to Milwaukee students and pedestrians.⁸ The

---

³ Rebecca Klopf, "MPD: Hyundai and Kia vehicles too easy to steal, leading to spike in car thefts," TMJ4 WTMJ–TV MILWAUKEE, https://www.tmj4.com/news/local-news/mpd-hyundai-and-kia-vehicles-too-easy-to-steal-leading-to-spike-in-car-thefts (last visited September 23, 2022).

⁴ James E. Causey, "A thief swiped Dorothy Smith's car from in front of her Milwaukee home. An anonymous donor has made it right," MILWAUKEE JOURNAL SENTINEL, https://www.jsonline.com/story/opinion/2021/05/21/driven-by-good-will-anonymous-donor-pays-off-milwaukee-womans-stolen-car-debt/5130896001/ (last visited September 23, 2022).

⁵ Bill Miston, "MPD says car thefts up nearly 150%; Bay View crime caught on cam," FOX6 NEWS MILWAUKEE, https://www.fox6now.com/news/milwaukee-car-thefts-bay-view-crime-surveillance (Mar. 31, 2021) ("The top five models stolen are Hyundai Sonata, Kia Optima, Hyundai Elantra, Kia Sportage, and Kia Forte. The majority of the Kia and Hyundai vehicles stolen are 2011–2020 model years") (last visited September 23, 2022); *see also* FOX6 News Digital Team, "Vehicle thefts on Marquette campus increase; Hyundais and Kias targeted," FOX6 NEWS MILWAUKEE, https://www.fox6now.com/news/vehicle-thefts-on-marquette-campus-increase-hyundai-and-kia-targeted (May 4, 2021) (Marquette University police note "an increase in thefts of Hyundai and Kia models, often Hyundai Sonatas and Elantras, and Kia Souls and Sportages") (last visited September 23, 2022).

⁶ Hannah Jewell, "Kia, Hyundai car thefts spike in Milwaukee: 'Epidemic'," FOX6 NEWS MILWAUKEE, https://www.fox6now.com/news/kia-hyundai-car-thefts-milwaukee (Apr. 30, 2021) (last visited September 23, 2022).

⁷ *See* "Teen driving stolen car killed in head–on crash, 5 others injured," WISN12 ABC, https://www.wisn.com/article/teen-car-theft-suspect-killed-in-head-on-crash-5-others-injured/36741640 (last visited September 23, 2022).

⁸ *See, e.g.*, https://www.instagram.com/p/CTrjrdgL-Zc/?utm_medium=copy_link (last visited September 23, 2022).

problem is so rampant in Milwaukee, that vehicle owners in the area have created social media pages such as the Facebook group entitled "Stolen Cars MKE" that are rife with examples of Milwaukeeans grappling with the scourge of auto thefts caused by the Defect present in the Kia and Hyundai vehicles.[9] In June 2021, local Milwaukee television news, WISN Channel 12, reported that the number of Kia and Hyundai vehicles stolen in Milwaukee increased 2,500% from the same time last year.[10]

This crisis has become so severe in Milwaukee that it prompted two Milwaukee officials to write joint letters to Kia and Hyundai imploring them to "make fundamental changes to the mechanisms used to secure [their] vehicles."[11] Those Milwaukee officials explained that in addition to creating dangerous or even fatal conditions on Milwaukee streets (and even sidewalks), the vehicle theft epidemic has had an enormously adverse impact on the Milwaukee community and placed a "drain on police and other city resources that have been sadly directed to deal with a rash of vehicle thefts and the havoc those thefts have brought to our city."[12] The epidemic in Milwaukee was so prevalent that it eventually garnered national media attention, which caused it to spread to other U.S. cities. Thus, related actions were filed in jurisdictions other than the Eastern District of Wisconsin, but the facts underlying every one of those related actions were derived

---

[9] Accessible at: https://www.facebook.com/groups/1184876048194949/ (last visited September 23, 2022).
[10] "Thefts of Kia, Hyundai explode 2,500% in Milwaukee," WISN12 ABC, https://www.wisn.com/article/thefts-of-kia-hyundai-explode-2500-in-milwaukee/36756668 (last visited September 23, 2022).
[11] *See* p. 3 of the PDF accessible at: https://city.milwaukee.gov/ImageLibrary/Groups/ccCouncil/News/2021/District-06/COMBINED-KiaandHyundaiaskedtobuildhardertostealvehicles21.pdf (last visited September 23, 2022).
[12] Caroline Reinwald, "Council members urge Kia, Hyundai to build better anti–theft systems," WISN12 ABC, https://www.wisn.com/article/mke-common-council-members-urge-kia-hyundai-to-build-better-anti-theft-systems/36745134 (last visited September 23, 2022).

from the First-Filed Action in the Eastern District of Wisconsin and the vehicle theft crisis that started in and emanated from Milwaukee.

## II. LEGAL STANDARD

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for . . . the convenience of parties and witnesses and [promotion of] just and efficient conduct of such actions." 28 U.S.C. § 1407.

## III. ARGUMENT

### A. The Pertinent Factors Weigh in Favor of Transfer to the Eastern District of Wisconsin, Where the First-Filed Action Has Been Pending for Nearly a Year

The First-Filed Plaintiffs and *Henry* Plaintiffs do not oppose § III(A) of the Motion to Transfer and agree that the related actions should be consolidated pursuant to 28 U.S.C. § 1407. Motion to Transfer at 5-8. Thus, the instant joint brief is filed in opposition to only § III(B) of the Motion to Transfer, which requests that all related actions be transferred to the Central District of California. *See* Motion to Transfer at 8-10, § III(B). With respect to the appropriate transferee forum, the Motion to Transfer urges that "all related actions should be transferred to the Central District of California" given the location of Kia and Hyundai's corporate headquarters. *See id*.

In advancing this argument, however, the *McNerney* Plaintiffs fail to substantively address the multitude of factors that the Panel considers when selecting the appropriate transferee forum, including: (1) the site of the occurrence of the common facts, (2) where the cost and inconvenience will be minimized, (3) the experience, skill, and caseloads of available judges, (4) where cases have progressed furthest, (5) where discovery has occurred, and (6) where the largest number of cases is pending. *Manual for Complex Litigation* § 20.131 (4th ed. 2016).[13] On balance, these

---

[13] The fourth factor is irrelevant because discovery has not proceeded in any forum. As for the fifth factor, although the Central District of California is home to the largest number of cases in a single

7

factors weigh in favor of transfer and centralization in the Eastern District of Wisconsin over any other forum.

*First*, Wisconsin—and particularly the city of Milwaukee where the Eastern District of Wisconsin is located—is the primary and most severely impacted geographic "site of the occurrence of the common facts." As explained in *supra* §I(B), Milwaukee is the epicenter of the Kia and Hyundai vehicle theft crisis in America. This "epidemic" has wreaked havoc on Milwaukee and municipalities throughout Wisconsin and scores of Wisconsinites have suffered personal injury and property damage as a result of this crisis. Moreover, this problem has proliferated beyond Wisconsin's borders and into many neighboring states in the Midwest— including Illinois, Ohio, Minnesota, and Missouri, to name a few—based on social media posts by various teenagers also residing in Milwaukee and under subpoena power of the Eastern District of Wisconsin. Accordingly, because Milwaukee has been uniquely impacted by this crisis—both in terms of its origination and how it spawned into other states—the Eastern District of Wisconsin has the greatest interest of any United States District Court in overseeing this litigation.

*Second*, because all related actions are class actions filed throughout the country, the Eastern District of Wisconsin is a central, geographically convenient location for the parties and their counsel. *See* Multidistrict Lit. Man. § 6:7 (noting that the "location of the parties and attorneys" is a factor the Panel considers in selecting a transferee district and that it "has expressed its preference for selection of a centrally located transferee district") (collecting cases); *see also id*. ("The advantages of a geographically central forum increase as the number of actions increase."). Indeed, of the twenty-six related actions filed to date, half of them are clustered in

---

district, a greater number of related actions are clustered in judicial districts throughout the Midwest and in close proximity to the Eastern District of Wisconsin where the First-Filed Plaintiffs initiated the First-Filed Action. *See* n.14, *infra*.

8

judicial districts closer to the Eastern District of Wisconsin than the Central District of California.[14] Further, many of the parties' counsel are based in the Midwest, including Peter Brennan, Defendants' lead counsel, who works out of Jenner and Block LLP's Chicago office. (*See* MDL No. 3052 at ECF No. 20.)

True, Kia and Hyundai are headquartered in California, which may be a source of relevant evidence in Defendants' possession, but this factor is less important than the Motion to Transfer claims. Indeed, the Panel has recognized the "diminished" importance of this factor in modern litigation practice. *See*, *e.g.*, Multidistrict Lit. Man. § 6:5 ("Location of evidence is still relevant, but it is diminished in importance, especially as to documentary evidence."); *see also id.* § 6:3 (noting that while the "location of documents and witnesses was once a very important factor in selection of a transferee court;[,]" the "Panel [now] recognizes that discovery can be conducted essentially anywhere and the fruits of discovery made available to all parties without needing to travel to the district where the action is pending"). This is especially true as of late, where the COVID-19 pandemic has prompted most depositions in federal class actions such as this one to be conducted remotely such that there is no added convenience or reduced travel by maintaining this action in the Central District of California.

Regardless, even if depositions of Defendants' employees are held in person, they would take place in the vicinity of Defendants' California headquarters irrespective of which transferee forum the panel selects. Similarly, to the extent any of the relevant employees are employed by Hyundai Motor Company or Kia Corporation (Defendants' Korean parent companies),

---

[14] *See*, *e.g.*, *Henry* Plaintiffs' Schedule of Actions ((1) Loburgio, N.D. Ill.; (2) Brady, S.D. Iowa; (3) Simmons, D. Kans.; (4) Day E.D. Ky.; (5) DeKam, E.D. Mich.; (6) Johnson, D. Minn.; (7) Zanmiller, D. Minn.; (8) Bendorf, W.D. Missouri; (9) Bissell, W.D. Missouri; (10) Hall, D. Neb.; (11) Slovak, N.D. Ohio; (12) Fruhling, S.D. Ohio; and (13) Marvin, E.D. Wisc.).

centralization in California hardly bears on this cost and convenience factor when depositions can be conducted remotely.

If anything, costs will be reduced, and convenience will be promoted, by selecting the Eastern District of Wisconsin as the transferee district. Not only is it the epicenter of this auto theft crisis where thousands of physical pieces of evidence are located—namely, the stolen cars themselves—but the court has subpoena power over the Milwaukee teenagers whose social media posts spawned the Kia TikTok Challenge in the first instance. *See* Multidistrict Lit. Man. § 6:5 (noting that the location of "physical evidence" that is "bulky and unmovable" as well as the "location of an important non-party may [also] be important" in selecting the appropriate transferee district). Thus, contrary to the McNerney Plaintiffs' contentions, the cost and convenience factor points to Wisconsin, not California, as the appropriate transferee district.

*Third*, the "caseloads of available judges" strongly weighs in favor of the Eastern District of Wisconsin over the Central District of California. As of the 12-month period ending June 30, 2022, the Eastern District of Wisconsin had 1,611 pending lawsuits, whereas the Central District of California had more than *six times* that amount (9,882). *See* Exhibit D (United States Courts Caseload Statistics Data Tables, Table Number C-1, "U.S. District Courts - Civil Cases Filed, Terminated, and Pending, by Jurisdiction"), at cell D65 (total number of pending cases in the E.D. Wisc.) and cell D83 (C.D. Cal.).[15] Nor are there any MDL proceedings currently venued in Wisconsin; transferring the case to the Eastern District of Wisconsin, the home of the First-Filed Action, thus aligns with the Panel's "goal of spreading transfers around the country and to districts and judges who are not overburdened with pending MDL dockets." Multidistrict Lit. Man. § 6:3.

---

[15] Accessible at: https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2022/06/30 (last visited September 23, 2022).

Further, Judge Pepper is the Chief Judge of the Eastern District of Wisconsin who is amply qualified to preside over this MDL, has already presided over the First-Filed Action for nearly a year, and as discussed below, is far and away the judge most familiar with the factual allegations and legal arguments involved in these related cases.

*Finally*, the Eastern District of Wisconsin is home to the First-Filed Action that is not only the furthest-advanced related action, but is adjudicating a far more extensive and well-researched complaint, both of which weigh in favor of selecting this forum as the transferee district. *See, e.g., In re: L'oreal Wrinkle Cream Mktg. & Sales Pracs. Litig.* ("*L'oreal*"), 908 F. Supp. 2d 1381, 1382 (J.P.M.L. 2012) (selecting as the transferee district the forum "where the first-filed action is pending" because "the action pending in this district is slightly more procedurally advanced **and contains more extensive allegations regarding defendants conduct than the other actions**") (emphasis added); *see also In re: Bank of Am. Credit Prot. Mktg. & Sales Pracs. Litig.*, 804 F. Supp. 2d 1372, 1373 (J.P.M.L. 2011) (selecting the transferee district where the first-filed suit was initiated because it was the "most procedurally advanced action"); *accord In re: Zurn Pex Plumbing Prod. Liab. Litig.*, 572 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008) (same); *In re Imagitas, Inc., Drivers' Priv. Prot. Act Litig.*, 486 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007) (same).

Applied here, the First-Filed Action is the only case out of all of the related actions that has advanced past the filing of a complaint, let alone involved active litigation and judicial involvement. As explained above, that case (including pre-removal) has been actively litigated for *fifteen months*, since June 23, 2021, including but not limited to the following:

(1) Defendants' removal to federal court,
(2) the filing of multiple joint motions and stipulations,
(3) negotiated briefing schedules,
(4) Filing an amended complaint,
(5) Defendants filing of two separate motions to dismiss,

(6) First-Filed Plaintiffs' filing of a brief in opposition to two separate motions to dismiss,

(7) Defendants' filing of a reply brief in support of their two separate motions to dismiss,

(8) First-Filed Plaintiffs' filing of a motion to take notice of publicly available information,

(9) Defendants are currently writing their opposition to that motion to take notice of publicly available information,

(10) First-Filed Plaintiffs' filing of a motion to join additional class representatives,

(11) the court has scheduled a hearing on defendants' motions to dismiss, and

(12) the court's issuance of seven separate orders.

*See supra* §I(A); *see also* Ex. C (First-Filed Action docket). Thus, the Eastern District of Wisconsin is the most familiar with the facts and legal issues involved in this litigation. Indeed, in all other related actions, Defendants have not even filed a motion to dismiss, let alone has a motion to dismiss been fully briefed like it has in the First-Filed Action. Oral argument on the motions to dismiss is set for November 29, 2022, presumably before the Panel hosts argument on the Motion to Transfer.[16]

Further, the Amended Complaint in the First-Filed Action is far more robust than any other complaint in any other related action, virtually all of which simply parrot that the Covered Vehicles are defective because they are not equipped with an immobilizer. *See supra* n.1; *see also* Motion to Transfer at 2 ("The Related Actions involve nearly identical factual allegations that the Covered Vehicles are defective because they are not equipped with immobilizer technology to deter theft"). Judge Pepper is also intimately familiar with the First-Filed Plaintiffs' pleading in the First-Filed Action because: (a) it is the subject of Defendants' current motions to dismiss; and (b) apart from these pending motions, she substantively reviewed it connection with considering whether there was good cause to redact portions of the Amended Complaint to prevent further proliferation of this auto theft crisis given the media attention the case has garnered. As Judge Pepper's May 31,

---

[16] The JPML's website indicates that the next hearing date at which this instant motion will presumably be taken up is set for December 1, 2022 in New York.

12

2022 Order explains:

> **Having reviewed the 168-page amended complaint** and the proposed redactions, **the court is satisfied that the parties have made sufficient effort to narrowly tailor the redactions to prevent the disclosure of the design defect** that allegedly makes it easy to steal the Kia and Hyundai cars. While some of this information could be discovered through an internet search, not all of it appears to be publicly available or consolidated into a single document. The court finds that the parties have established good cause for restricting the amended complaint and for filing a redacted version of the same.

Exhibit E at 5-6 (*Marvin* Action ECF No. 34, Judge Pepper's Order granting, *inter alia*, First-Filed Plaintiffs' motion to restrict amended complaint) (emphasis added). These considerations likewise point to the Eastern District of Wisconsin as the most suitable transferee district. *See L'oreal*, *supra*; *see also In re Trade Partners, Inc., Invs. Litig.*, 493 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007) (transferring all cases to the district where the "action has been pending far longer than the actions pending elsewhere" such that the presiding judge "has become familiar with the issues in the litigation").

### B. *McNerney* Plaintiffs' Remaining Arguments are Unavailing

The *McNerney* Plaintiffs contend that the case should nonetheless be transferred to the Central District of California because: (a) more actions have been filed there; and (b) First-Filed Action is "uniquely focused on Wisconsin law." Motion to Transfer at 4. Neither contention supports their argument or transfer to the Central District of California.

On the first contention, although there are currently seven lawsuits (other than the *Henry* Action) pending in the Central District of California, each was filed within the last forty-five days—notably, after the redacted version of the Amended Complaint in the First-Filed Action was made publicly available—such that transferring them elsewhere will not be "unduly disruptive." *Id*. (citing *In re BP p.l.c. Sec. Litig.*, F. Supp. 2d 1376, 1379 (J.P.M.L. 2010). Further, the balance of the related actions (and more than double the number of cases pending in California) has a closer

13

nexus to the Eastern District of Wisconsin, both in terms of proximity and because this auto theft epidemic brought on by the Kia TikTok Challenge finds its genesis in Milwaukee. *See* Multidistrict Lit. Man. § 6:8 ("In considering the venue of pending actions, actions in districts nearby a potential transferee district may be considered by the Panel."); *see also In re Wayne Farms LLC Fair Lab. Standards Act Litig.*, 528 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) (considering this factor); *In re: Monsanto Co. Genetically-Engineered Wheat Litig.*, 978 F. Supp. 2d 1373 (J.P.M.L. 2013) (same).

As for their second contention regarding the ostensibly unique nature of the First-Filed Action, *McNerney* Plaintiffs are incorrect. Even a cursory review of the Amended Complaint in that case reveals that the First-Filed Plaintiffs have asserted common claims—uniformly alleged in all related actions—for breach of express warranty; breach of implied warranty; violation of the Magnuson-Moss Warranty Act; and unjust enrichment. Of course, the First-Filed Plaintiffs also alleged Wisconsin-specific statutory claims, just as every other related action did depending on the state in which a given named plaintiff purchased his or her vehicle.

The point remains, however, that the common factual and legal issues in the First Filed Action are the same. The only thing "unique" about the First-Filed Action is the scope and detail of the First-Filed Plaintiffs' pleading, aspects of which remain under seal and thus were not copied by scores of other related actions filed a year later (verbatim, in some instances). Defendants' motions to dismiss have been fully briefed for months and oral argument is set for November 29, 2022. Efficiencies will be gained, and the MDL as a whole will benefit from a ruling on these motions in the First-Filed Action, which will avoid duplicative motion practice and potential inconsistent rulings in other fora. Thus, the posture of the First-Filed Action and the breadth of the First-Filed Plaintiffs' pleadings in that case underscore why the Eastern District of Wisconsin is the most suitable transferee district.

## IV. CONCLUSION

For all of the foregoing reasons, First-Filed Plaintiffs and *Henry* Plaintiffs respectfully request that the panel select the Eastern District of Wisconsin as the transferee forum for the consolidation of all related actions listed in the Schedule of Actions. Alternatively, the First-Filed Plaintiffs and *Henry* Plaintiffs request that the related actions be transferred to the Central District of California given the location of Kia and Hyundai's respective corporate headquarters.

Dated: September 23, 2022

Respectfully submitted,

**SAUDER SCHELKOPF, LLC**

*/s/ Matthew D. Schelkopf*
Matthew D. Schelkopf
Joseph B. Kenney
Mark B. DeSanto
1109 Lancaster Avenue
Berwyn, PA 19312
T: (610) 200–0581
F: (610) 421–1326
*mds@sstriallawyers.com*
*jbk@sstriallawyers.com*
*mbd@sstriallawyers.com*

*Attorneys for Henry Plaintiffs and the putative class in Henry et al v. Kia America, Inc. et al*, 8:22-cv-01729 (C.D. Cal.).

**BARTON LEGAL S.C.**
James B. Barton
Joshua S. Greenberg
313 North Plankinton Ave., Ste. 207
Milwaukee, WI 53203
T: (414) 877–0690
F: (414) 877–3039
*jbb@bartonlegalsc.com*
*jsg@bartonlegalsc.com*

*Attorneys for First-Filed Plaintiffs and the putative class in Marvin et al v. Kia America, Inc. et al,* Civ. No. 2:21-cv-01146-PP (E.D. Wis.), as well as *Henry*

*Plaintiffs and the putative class in Henry et al v. Kia America, Inc. et al*, 8:22-cv-01729 (C.D. Cal.).

**NYE, STIRLING, HALE & MILLER, LLP**
Alison M. Bernal (Bar No. 264629)
33 West Mission St., Ste. 201
Santa Barbara, CA 93101
T: (805) 963–2345
F: (805) 284–9590
*alison@nshmlaw.com*

*Attorneys for Henry Plaintiffs and the putative class in Henry et al v. Kia America, Inc. et al*, 8:22-cv-01729 (C.D. Cal.).