BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| **In re** Kia Hyundai Vehicle Theft Litigation | § § § § § § | MDL No. 3052 |

**DEFENDANTS' RESPONSE TO MCNERNEY PLAINTIFFS' MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS IN THE CENTRAL DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1407**

Defendants Kia America, Inc. ("Kia"), Hyundai Motor America ("Hyundai"), and Hyundai America Technical Center, Inc. ("HATCI") (collectively, "Defendants") respectfully submit this response to Plaintiffs Katelyn McNerney, Sherry Mason, Camri Nelson, Cameron Cunningham, and Allison Brown's (the "*McNerney* Plaintiffs") pending Motion for Transfer and Consolidation of Related Actions in the Central District of California under 28 U.S.C. § 1407.

Defendants do not oppose centralization of the 27 closely related putative class actions (collectively, the "Related Actions"). However, Defendants respectfully submit that the consolidated actions should proceed in the U.S. District Court for the Eastern District of Wisconsin, where Chief Judge Pamela Pepper currently presides over the first-filed of these actions. That first action was filed 13 months before the second-filed of these 27 actions, with the remaining actions all filed in the last two months. In the alternative, should the Panel wish not to consolidate in the Eastern District of Wisconsin, Defendants respectfully suggest the consolidated proceedings be conducted by Judge John J. Tharp in the Northern District of Illinois, Judge James G. Carr in the Northern District of Ohio, or Judge Douglas R. Cole in the Southern District of Ohio, each of whom currently preside over Related Actions. Defendants submit that the Eastern District of Wisconsin is the most appropriate forum; however, transfer to any of these forums would facilitate the Panel's goals of administrative efficiency and geographic convenience.

Accordingly, Defendants respectfully ask this Panel to transfer all of the pending cases (and any later filed related cases) for coordinated and consolidated pretrial proceedings to the Eastern District of Wisconsin or, in the alternative, the Northern District of Illinois, the Northern District of Ohio, or the Southern District of Ohio.

## I. BACKGROUND

Kia and Hyundai are U.S. auto distributors of Kia and Hyundai branded vehicles. Hyundai America Technical Center, Inc., or HATCI, is not an auto manufacturer, distributor, or a dealer, but instead is, as its name implies, a technical center located in Ann Arbor, Michigan.

On June 23, 2021, Plaintiffs Stefanie Marvin and Katherine Wargin filed a putative class action in the Circuit Court of Milwaukee County, Wisconsin. On October 5, 2021, Defendants removed this action to the U.S. District Court for the Eastern District of Wisconsin pursuant to the removal provisions of the Class Action Fairness Act. Like the copycat actions that would eventually follow, the first-filed action alleged that certain security features on certain vehicles distributed by Kia and Hyundai were inadequate. According to the *Marvin v. Kia America, Inc.* Plaintiffs, each of whom was the victim of an auto theft, a "gang of juveniles" who called themselves the "Kia Boyz" was exploiting the vehicles' purportedly "subpar security measures" by going on an "auto-theft spree" across Milwaukee. First Am. Compl. ¶¶ 1–2, *Marvin v. Kia America, Inc.*, No. 2:21-cv-01146 (E.D. Wis. Nov. 4, 2021), ECF No. 12 ("*Marvin* FAC"). Among the vehicles alleged to have been stolen in the greater Milwaukee area were Hyundai and Kia brands. *See id.* ¶ 165 n.16. The *Marvin* Plaintiffs asserted counts for breach of warranty, breach of implied warranty, violations of Wisconsin's consumer protection statute, failure to warn, rescission, unjust enrichment, as well as a series of counts related to the Wisconsin statute governing licensing of distributors, like Kia and Hyundai, and independent dealers who sell those vehicle brands to the public.

Over a year after the filing of the original complaint, starting on July 21, 2022, several law firms began filing a series of actions in a number of jurisdictions in the United States. Between July 21, 2022 and the date of this filing, these law firms have filed actions in Midwestern federal courts in Michigan, Missouri, Kansas, Nebraska, Ohio, Iowa, Illinois, and Minnesota, plus two

states bordering those states—Colorado and Kentucky. Actions have also been filed in New York, Florida, Texas, and California.

The 27 Related Actions assert nearly identical claims to those plead in *Marvin* and simply insert the consumer protection statute(s) of the states in which they were filed or in which the named plaintiffs live. Many of the named plaintiffs in these Related Actions did not have their vehicles stolen or broken into and instead plead damages that purportedly stem from the existence of their vehicles' allegedly defective designs.

On August 31, 2022, the plaintiffs in one of the Related Actions, *McNerney v. Kia America, Inc.*, filed a motion before this Panel seeking to consolidate all of the Related Actions into a single multidistrict proceeding in the Central District of California. *McNerney* Pls.' Mot., ECF No. 1. On September 2, 2022, this Panel set a briefing schedule on the *McNerney* Plaintiffs' pending motion and directed the parties to "address what steps they have taken to pursue alternatives to centralization," including "engaging in informal coordination of discovery and scheduling" and "seeking Section 1404 transfer of one or more of the subject cases." Notice, ECF No. 5. For the reasons described below, individually transferring and consolidating the 27 Related Actions—and any additional Related Actions filed thereafter—will burden at least 20 different judges across 16 districts. Accordingly, Defendants believe that all parties agree that centralization, transfer, and consolidation pursuant to Section 1407 is an efficient and sensible way to expedite resolution of these numerous Related Actions, and, thus, is in the interest of judicial economy.

## II.  ARGUMENT

### A.  Centralization In a Single Forum Is Appropriate.

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Transfer is appropriate when it will serve "the

convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* Transfer is especially appropriate when there are copycat, or near copycat, actions in multiple forums. *Cf. Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017) ("Congress did intend to prevent copycat suits in multiple forums, enabling class actions to be consolidated to promote judicial efficiency."). Such transfer is designed to "provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the 'just and efficient' conduct of such actions." *In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51 (2d Cir. 1978) (citation and quotations omitted).

Accordingly, Defendants agree with the *McNerney* Plaintiffs that the Related Actions should be centralized, consolidated, and litigated in a single forum. The Related Actions all rely on the same basic factual premise, with various theories common in consumer class actions that have the same or similar putative classes and/or class vehicles. Allowing pretrial proceedings in the 27 Related Actions to be conducted together, rather than separately before at least 20 different district court judges in 16 different district courts, would provide the following benefits: convenience to the parties and witnesses, avoidance of duplicative discovery and motions practice, consistency and avoidance of differing or conflicting rulings across the district courts, reduction of unnecessary fees and costs to the parties, and reduced burden on the district courts and their staff.

### B. The Eastern District of Wisconsin Is The Most Appropriate Forum.

Chief Judge Pepper in the Eastern District of Wisconsin is the natural choice for centralization. As an initial matter, Chief Judge Pepper presides over the first-filed action. As the first-filed, that action is also the most procedurally advanced: the parties to that action have already submitted briefing on Defendants' motions to dismiss the First Amended Complaint, which itself was much more detailed than the original complaint with 12 counts and 783 paragraphs spanning

168 pages.  Chief Judge Pepper has already scheduled a hearing on the motions for November 29, 2022.  In other words, the *Marvin* action has a 13-month head-start on the other actions.  Chief Judge Pepper, obviously a very experienced jurist, is well suited to preside over this duplicative set of putative class actions.  *See In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (Panel "persuaded that the District of South Carolina is an appropriate transferee forum for this litigation," because, inter alia, "the first-filed and more advanced action is pending there").  Accordingly, transfer to Chief Judge Pepper in the Eastern District of Wisconsin would be economical and commonsensical.

In addition, the Eastern District of Wisconsin generally and Chief Judge Pepper specifically do not have any other pending multidistrict litigation currently before them, and, relative to other district courts, they are not significantly overburdened with cases.  *See, e.g.*, *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, JPML (Sept. 19, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2022.pdf.  Notably, in the one year period preceding March 31, 2022, the Eastern District of Wisconsin had 1,555 new civil cases total.  *See Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2022)*, U.S. COURTS (Mar. 31, 2022), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2022/03/31.  Those cases are spread across 5 authorized judgeships, which, while still quite busy like all federal courts with 311 new cases per judge, compares favorably with other district courts, particularly those at the high end such as the Central District of California, which has 505 new cases per judge over the same period.  *See id.*; *Authorized Judgeships*, U.S. COURTS, https://www.uscourts.gov/judges-judgeships/authorized-judgeships.

5

Further, as a general matter, Milwaukee, Wisconsin is also a convenient and geographically central location for all parties. *See, e.g.*, *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d at 1375 (Panel selected district in part because it "presents a geographically central and accessible venue for this nationwide litigation"); *In re Philips Recalled Cpap, Bi-Level Pap, & Mech. Ventilator Prod. Liab. Litig.*, 568 F. Supp. 3d at 1410 (Panel selected district in part because it "presents a convenient and accessible venue"). The majority of the lawsuits (16) are clustered in the Midwest and two adjoining states, with the remaining lawsuits (11) spread out on the Atlantic, Gulf, and Pacific coasts. Moreover, there are nine named plaintiffs who reside in Wisconsin and 39 other named plaintiffs who reside in Illinois (5), Ohio (12), Michigan (3), Minnesota (5), Iowa (3), Missouri (4), Nebraska (1), Kansas (2), Kentucky (1), West Virginia (1), and Colorado (2). Out of the 65 total plaintiffs, the remaining 17 plaintiffs—14 from the coastal states, plus one from Nevada and two unspecified plaintiffs—would also have access to a geographically central location. And the Milwaukee courthouse in particular is a geographically convenient location, with two major airports 15 minutes away (General Mitchell International Airport) and 75 minutes away (O'Hare International Airport).

In short, transfer to Chief Judge Pepper in the Eastern District of Wisconsin would promote the just and efficient handling of this litigation, and Chief Judge Pepper, as an experienced jurist with the capability and capacity needed to "efficiently manage this litigation," "will steer this litigation on a prudent and expeditious course." *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d at 1375.

### C. In the Alternative, the Northern District of Illinois Is an Appropriate Forum.

If the Panel is not inclined to assign the Related Actions to the first-filed jurisdiction, Defendants respectfully submit that the Related Actions be transferred to Judge Tharp in the Northern District of Illinois for many of the same reasons. Judge Tharp, who is assigned the

6

*Loburgio v. Kia America, Inc.* action in Illinois, is an experienced jurist, similarly well suited for this type of complex consumer class action litigation. The two district courts—the Eastern District of Wisconsin in Milwaukee, Wisconsin, and the Northern District of Illinois in Chicago, Illinois—are less than 100 miles apart. Indeed, the Everett McKinley Dirksen United States Courthouse is easily accessible via two major airports—O'Hare International Airport and Chicago Midway International Airport. If it becomes necessary, the 48 plaintiffs in the center of the country, the 14 plaintiffs residing on the coasts, the plaintiff residing in Nevada, and the two plaintiffs who have declined to identify their state(s) of residency, will all have plentiful flight, train, and driving options to arrive in Chicago. Thus, the Northern District of Illinois is also a geographically convenient location.

Furthermore, Judge Tharp does not have any other pending MDL proceedings before him. *See, e.g.*, *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, JPML (Sept. 19, 2022), https://www.jpml.uscourts.gov/sites/jpml/ files/Pending_MDL_Dockets_By_District-September-15-2022.pdf. While the Northern District of Illinois does have on average more civil cases filed per year per authorized judgeship than the Eastern District of Wisconsin (331 versus 311), the judges of that court have shown that they can make time in their schedules to preside over what are now 15 MDLs in that district. *See* U.S. COURTS (Mar. 31, 2022), https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2022-tables. Accordingly, consolidating and transferring the Related Actions to Judge Tharp would not overwhelm either the court or its staff.

> **D.** **Both the Northern and Southern Districts of Ohio Are Also Reasonable Forums.**

Transfer to either the Northern District of Ohio or the Southern District of Ohio is also reasonable. Ohio is easily accessible to the many plaintiffs who reside in or around the center of

7

the United States. Ohio has the highest number of plaintiffs from any one state: 12 named plaintiffs are Ohio residents. And Ohio has two pending cases—one before Judge Carr in the Northern District of Ohio and the other before Judge Cole in the Southern District of Ohio. Either jurist could certainly handle this complex civil action, as neither currently has another MDL on their docket. *See, e.g.*, *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, JPML (Sept. 19, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_ By_District-September-15-2022.pdf.

Judge Carr in the Northern District of Ohio has the experience and expertise needed for a complex civil matter of this magnitude. Additionally, the James M. Ashley and Thomas W.L. Ashley U.S. Courthouse in Toledo, where he sits, is only 45 minutes away from Detroit, Michigan's major international airport, Detroit Metropolitan Wayne County Airport. Notably, HATCI also has an office outside of Ann Arbor, Michigan, approximately one hour away from the Toledo courthouse. Moreover, like the Chicago and Milwaukee venues, the respective airports have multiple flights to Asia and the rest of the world for that matter, should discovery in this case require any international travel. New civil cases in the Northern District of Ohio are also comparatively low, at 213 per authorized judgeship. Thus, transfer to Judge Carr in the Northern District of Ohio is convenient and would not cause undue burden on the parties.

Judge Cole in the Southern District of Ohio is also a well-respected jurist. The Potter Stewart U.S. Courthouse in Cincinnati is approximately 20 minutes away from the Cincinnati/Northern Kentucky International Airport. Although that district does currently have three MDLs—one of those MDLs has generated an enormous number of cases—more than 17,000 new cases last year—which distorts the available statistics and makes a meaningful comparison with other districts difficult—Judge Cole is not presiding over those cases. Accordingly,

Defendants respectfully submit that the Southern District of Ohio is a similarly reasonable and appropriate forum.

### E. The Consolidated Proceedings Should Not Proceed in the Central District of California.

The venue proposed by the *McNerney* Plaintiffs—the Central District of California—lacks the factors that recommend the above districts. First, it is, by far, the busiest of the district courts, with 505 new cases per authorized judgeship. Compare, for example, the Eastern District of Wisconsin and the Northern District of Illinois, which have 62% (311) and 66% (331), respectively, of that number; the Northern District of Ohio is even lower at 43% (213) of that number. *See Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2022)*, U.S. COURTS (Mar. 31, 2022), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2022/03/31. Only a small number of the relevant named plaintiffs reside in California, and it is not yet clear that discovery in the cases will call for a substantial number of witnesses from California merely because the U.S. distributors are located there. Moreover, the *McNerney* California action was filed long after the original action in Wisconsin, and even after the vast majority of the actions had already been filed around the Midwest. The California action is a clear copycat itself of many copycat actions. Moreover, lead counsel in that case is based in Seattle, Washington—not California; lead counsel in the original action is based in Milwaukee, Wisconsin; and lead counsel for Defendants is based in Chicago, Illinois. Plus, lead counsel for the original copycat actions is based in Independence, Missouri, just outside Kansas City, Missouri, with the next copycat firm based in Ohio. Milwaukee (and Chicago) is in the geographic center of those firms, and that is where this consolidated proceeding should be heard—the same place that the litigation started.

**III. CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Panel centralize and transfer the Related Actions to the Eastern District of Wisconsin or, in the alternative, to the Northern District of Illinois, the Northern District of Ohio, or the Southern District of Ohio.

Dated: September 23, 2022

Respectfully submitted,

*/s/ Peter J. Brennan*
Peter J. Brennan
PBrennan@jenner.com
Michael T. Brody
MBrody@jenner.com
Seung Yun
SYun@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

Alice S. Kim
AKim@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

*Counsel for Defendants Kia America, Inc., Hyundai Motor America, and Hyundai America Technical Center, Inc..*