# EXHIBIT 4

**Query     Reports     Utilities     Help     Log Out**

ACCO,E-FILED RELATED CASE,(KESx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:22-cv-01815-JWH-KES

| | |
|---|---|
| Eugenia Sampson et al v. Kia America, Inc. et al | Date Filed: 10/05/2022 |
| Assigned to: Judge John W. Holcomb | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Karen E. Scott | Nature of Suit: 370 Other Fraud |
| Cause: 28:1332 Diversity-Fraud | Jurisdiction: Diversity |

**Plaintiff**

| **Eugenia Sampson**<br>*Individually and on behalf of all others<br>similarly situated* | represented by | **Dustin L Schubert**<br>Schubert Jonckher and Kolbe LLP<br>3 Embarcadero Center Suite 1650<br>San Francisco, CA 94111<br>415-788-4220<br>Fax: 415-788-0161<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Robert C Schubert**<br>Schubert Jonckheer and Kolbe LLP<br>Three Embarcadero Center, Suite 1650<br>San Francisco, CA 94111<br>415-788-4220<br>Fax: 415-788-0161<br>Email: rschubert@sjk.law<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Amber Love Schubert**<br>Schubert Jonckher and Kolbe LLP<br>3 Embarcadero Center Suite 1650<br>San Francisco, CA 94111<br>415-788-4220<br>Fax: 415-788-0161<br>Email: aschubert@sjk.law<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| **Michael Sanders**<br>*Individually and on behalf of all others<br>similarly situated* | represented by | **Dustin L Schubert**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Robert C Schubert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amber Love Schubert**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Sherry Kelley**<br>*Individually and on behalf of all others*<br>*similarly situated* | represented by | **Dustin L Schubert**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Robert C Schubert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amber Love Schubert**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Jazmin Harris**<br>*Individually and on behalf of all others*<br>*similarly situated* | represented by | **Dustin L Schubert**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Robert C Schubert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amber Love Schubert**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Lilianna Bineau**<br>*Individually and on behalf of all others*<br>*similarly situated* | represented by | **Dustin L Schubert**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Robert C Schubert**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Amber Love Schubert**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**Kia America, Inc.**
*A California corporation*

<u>**Defendant**</u>

**Hyundai Motor America**
*A California corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/05/2022 | 1 | COMPLAINT Receipt No: ACACDC-34103368 - Fee: $402, filed by Plaintiff Eugenia Sampson, Jazmin Harris, Sherry Kelley, Michael Sanders, Lilianna Bineau. (Attorney Amber Love Schubert added to party Lilianna Bineau(pty:pla), Attorney Amber Love Schubert added to party Jazmin Harris(pty:pla), Attorney Amber Love Schubert added to party Sherry Kelley(pty:pla), Attorney Amber Love Schubert added to party Eugenia Sampson(pty:pla), Attorney Amber Love Schubert added to party Michael Sanders(pty:pla))(Schubert, Amber) (Entered: 10/05/2022) |
| 10/05/2022 | 2 | CIVIL COVER SHEET filed by Plaintiffs Lilianna Bineau, Jazmin Harris, Sherry Kelley, Eugenia Sampson, Michael Sanders. (Schubert, Amber) (Entered: 10/05/2022) |
| 10/05/2022 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening),, 1 filed by Plaintiff Lilianna Bineau, Jazmin Harris, Sherry Kelley, Eugenia Sampson, Michael Sanders. (Schubert, Amber) (Entered: 10/05/2022) |
| 10/05/2022 | 4 | NOTICE of Interested Parties filed by Plaintiffs All Plaintiffs, identifying Kia America, Inc. Corporate Parent and Hyundai Motor America, Corporate Parent. (Schubert, Amber) (Entered: 10/05/2022) |
| 10/05/2022 | 5 | NOTICE of Related Case(s) filed by Plaintiff Lilianna Bineau, Jazmin Harris, Sherry Kelley, Eugenia Sampson, Michael Sanders. Related Case(s): 8:22-cv-01440 ; 8:22-cv-01664; 8:22-cv-01674; 8:22-cv-01715; 8:22-cv-01721; 8:22-cv-01548; 8:22-cv-01712. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Schubert, Amber) (Entered: 10/05/2022) |
| 10/06/2022 | 6 | NOTICE OF ASSIGNMENT to District Judge John W. Holcomb and Magistrate Judge Karen E. Scott. (car) (Entered: 10/06/2022) |
| 10/06/2022 | 7 | |

| | | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (car) (Entered: 10/06/2022) |
|---|---|---|
| 10/06/2022 | 8 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (car) (Entered: 10/06/2022) |
| 10/06/2022 | 9 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening),, 1 as to Defendants Hyundai Motor America, Kia America, Inc. (car) (Entered: 10/06/2022) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/07/2022 07:32:39 | | | |
| **PACER Login:** | jb0014 | **Client Code:** | 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** | 8:22-cv-01815-JWH-KES End date: 10/7/2022 |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

ROBERT C. SCHUBERT (No. 62684)
(rschubert@sjk.law)
DUSTIN L. SCHUBERT (No. 254876)
(dschubert@sjk.law)
AMBER L. SCHUBERT (No. 278696)
(aschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone:    (415) 788-4220
Facsimile:  (415) 788-0161

*Counsel for Plaintiffs Sampson, Sanders, Kelley,*
*Harris, Bineau, and the Putative Class*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| EUGENIA SAMPSON, MICHAEL SANDERS, SHERRY KELLEY, JAZMIN HARRIS, and LILIANNA BINEAU Individually and on behalf of all others situated,<br><br>    Plaintiffs,<br><br>v.<br><br>KIA AMERICA, INC., a California corporation, AND HYUNDAI MOTOR AMERICA, a California corporation,<br><br>    Defendants. | Case No.: 8:22-cv-1815<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION** |

CLASS ACTION COMPLAINT - 1

Upon personal knowledge as to her own acts, and based upon her investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiffs Eugenia Sampson ("Sampson"), Michael Sanders ("Sanders"), Sherry Kelley ("Kelley"), Jazmin Harris ("Harris"), and Lilianna Bineau ("Bineau") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, alleges as follows:

## I.       INTRODUCTION

1.     This is a class action brought on behalf of all persons nationwide who purchased or leased Kia vehicles made between 2011 and 2022 or Hyundai vehicles made between 2015 and 2022 equipped with traditional "insert-and-turn" steel key ignition systems ("Covered Vehicles") manufactured by Kia America, Inc. ("Kia") or Hyundai Motor America ("Hyundai") (collectively, "Defendants"). These Covered Vehicles are not equipped with "immobilizer" technology, which prevents them from starting without a code sent electronically to the Vehicle from the Vehicle's smart key (the "Defect").

2.     Defendants Kia and Hyundai are manufacturers and distributors of new motor vehicles. Defendants market and advertise the Covered Vehicles, oversee Hyundai and Kia dealers, and develop the companies' nationwide marketing and informational materials.

CLASS ACTION COMPLAINT - 2

3.    As alleged herein, Defendants were aware or should have been aware of the Defect from multiple sources. Police reports indicate that the Defect has been used to steal Kia vehicles since 2011 and Hyundai vehicles since 2015. Defendants, however, neglected to disclose this to consumers and actively concealed the Defect. Not until November 1, 2021, did Defendant Hyundai make immobilizer technology in vehicles standard. Defendant Kia did not make this change until 2022. Despite the widespread increase in stolen Covered Vehicles, Defendants have not announced a recall of the Covered Vehicles. Defendants have stated they will provide steering locks to law enforcement in affected areas, and Defendant Hyundai will begin selling a security kit for affected owners or lessees in October 2022.

4.    In recent months, viral videos on the platforms of YouTube and TikTok explain detailed instructions on how to steal the Covered Vehicles with the use of just a USB cord. A growing trend, titled the "Kia Challenge," encourages viewers to follow the instructions and steal a Covered Vehicle. The Challenge has inspired several videos of teens and young adults breaking into Covered Vehicles, stealing them, and engaging in unsafe driving practices, sometimes abandoning or even crashing the vehicles. Both car thieves and bystanders to the events have been injured or killed following the dangerous thefts and driving related to them.

CLASS ACTION COMPLAINT - 3

5.    In deciding to purchase her 2020 Hyundai Elantra on July 18, 2022, Plaintiff Sampson believed and relied on Defendants' deceptive representations of the fitness of the vehicle, and ultimately purchased the vehicle due to its low cost while having features, such as air conditioning, low mileage, navigation system, and radio. Plaintiff Sampson would not have purchased the Covered Vehicle had she known how easy it was to steal, or that the Vehicle was lacking a car immobilizer system.

6.    In deciding to purchase his 2021 Kia Sorento in June 2021, Plaintiff Sanders believed and relied on Defendants' deceptive representations of the fitness of the vehicle, and ultimately purchased the Covered Vehicle due to its good reviews as a reliable vehicle and its resale value. Plaintiff Sanders would not have purchased the Covered Vehicle had he known how easy it was to steal, or that the Vehicle was lacking the immobilizer technology.

7.    In deciding to purchase her 2019 Hyundai Elantra, Plaintiff Kelley believed and relied on Defendants' deceptive representations of the fitness of the Vehicle, and ultimately traded in her 2005 Hyundai Elantra (which did have the immobilizer technology) for the 2019 Hyundai Elantra, which did not. Plaintiff Kelley would not have purchased the Covered Vehicle had she known that the Vehicle did not come equipped with the immobilizer technology.

CLASS ACTION COMPLAINT - 4

8.   In deciding to purchase her 2020 Kia Sportage, Plaintiff Harris believed and relied on Defendants' deceptive representations of the fitness of the Vehicle, and ultimately purchased her Kia because she believed it was a nice car and did not know that Kias could so easily be stolen. Plaintiff Harris would not have purchased her Covered Vehicle had she known that the Vehicle was not equipped with the immobilizer technology.

9.   In deciding to purchase her 2016 Hyundai Sonata, Plaintiff Bineau believed and relied on Defendants' deceptive representations of the fitness of the Vehicle, and ultimately purchased her Vehicle because she liked the features such as the computer system, backup camera, tire indicator, and Bluetooth. Plaintiff Bineau would not have purchased her Covered Vehicle had she known that the Vehicle was not equipped with the immobilizer technology.

10.  Plaintiffs and the Class (as defined below) have suffered diminished market value of their Covered Vehicles, and even total loss of market value, as a direct result of Defendants' withholding material information and/or actively concealing the Defect. Plaintiffs brings this class action against Hyundai and Kia for violations of numerous consumer-protection and warranty laws, individually and on behalf of all persons nationwide who purchased or leased a Covered Vehicle.

CLASS ACTION COMPLAINT - 5

## II.    PARTIES

**A. Plaintiffs**

11.    Plaintiff Sampson ("Sampson") is, and at all times relevant hereto has been, a citizen of the State of Louisiana. Sampson owns a 2020 Hyundai Elantra which she purchased on July 18, 2022 from Premier Chrysler Jeep Dodge Ram Fiat, located in New Orleans, Louisiana. As alleged herein, Sampson's Hyundai Elantra contains a Defect where the traditional "insert-and-turn" steel key ignition system is not equipped with immobilizer technology, which requires the vehicle's specific smart key to transmit a code to the vehicle before allowing the vehicle to start. As a result, Sampson's Hyundai Elantra is highly susceptible to theft, as thieves need only remove a panel and start the car with any standard USB cord or similar shaped metal object. If Sampson had known about the Defect, she would not have purchased her Hyundai Elantra or would have paid substantially less for it.

12.    Plaintiff Sampson's Vehicle was stolen two weeks after Plaintiff Sampson purchased the Vehicle, on July 31, 2022. The thieves crashed the car and when it was recovered, it was filled with rainwater. Plaintiff Sampson's auto insurance carrier told Sampson the Vehicle was a total loss and paid for her rental car for a period of one month.

CLASS ACTION COMPLAINT - 6

13.   Plaintiff Sampson has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with the Defect including, but not limited to, her total loss of the Vehicle, and overpayment and diminished value of the Vehicle.

14.   Plaintiff Michael Sanders ("Sanders") is, and at all times relevant hereto has been, a citizen of the State of South Dakota. Plaintiff Sanders purchased a 2021 Kia Sorento in June 2021 from Billion Auto – Kia located in Rapid City, South Dakota. As alleged herein, Sanders's Kia Sorento contains a Defect where the traditional "insert-and-turn" steel key ignition system is not equipped with immobilizer technology, which requires the vehicle's specific smart key to transmit a code to the vehicle before allowing the vehicle to start. As a result, Sanders's Kia Sorento is highly susceptible to theft, as thieves need only remove a panel and start the car with any standard USB cord or similar shaped metal object. If Sanders had known about the Defect, he would not have purchased his Kia Sorento or would have paid substantially less for it.

15.   Plaintiff Sanders has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with the Defect including, but not limited to, overpayment and diminished value of the Vehicle.

16.   Plaintiff Sherry Kelley ("Kelley") is a Colorado citizen residing in Greeley, Colorado. Plaintiff Kelley traded in her 2005 Hyundai Elantra, which was

CLASS ACTION COMPLAINT - 7

1   equipped with the immobilizer technology, for a 2019 Hyundai Elantra at Hyundai

2   of Greeley – located in Greeley, Colorado.

3       17.  On September 16, 2022, Plaintiff Kelley's 2019 Hyundai Elantra was

4   stolen from her driveway in Greeley, Colorado. At the time Plaintiff Kelley's Class

5   Vehicle was stolen, she was inside her home with the only set of car keys.  Plaintiff

6   Kelley's Class Vehicle displayed disabled veteran license plates and contained

7   disabled veteran paperwork at the time it was stolen. Plaintiff Kelley's Class

8   Vehicle was recovered by the police on September 23, 2022 with replaced stolen

9   license plate frames. Plaintiff Kelley's disabled veteran plates were not recovered

10   with her Class Vehicle.

11       18.  Plaintiff Kelley has suffered an ascertainable loss as a result of Defendant

12   Hyundai's wrongful conduct associated with the Defect, including but not limited

13   to, the cost of replacing her disabled veteran license plates, the cost of repairing her

14   damaged Class Vehicle, the cost of her stolen personal property that was in the

15   vehicle, and overpayment and diminished value of the Vehicle.

16       19.  Plaintiff Jazmin Harris ("Harris") is an Illinois citizen residing in Chicago,

17   Illinois. Plaintiff Harris purchased a 2020 Kia Sportage from Hawkinson Kia –

18   located at 5501 Miller Circle Drive, Matteson, Illinois 60443 in 2019.

19       20.  Plaintiff Harris's Class Vehicle was stolen in Chicago, Illinois on

20   September 26, 2022. Plaintiff Harris' Class Vehicle was recovered by the police on

CLASS ACTION COMPLAINT - 8

September 27, 2022. Plaintiff Harris' Class Vehicle is currently in the auto repair shop because when the Vehicle was recovered, the electrical wiring was ripped out, the window was broken, the back side door was damaged, and the catalytic converter had been stolen.

21. Plaintiff Harris has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with the Defect including, but not limited to, her insurance deductible, the cost of repair of her vehicle, and overpayment and diminished value of the Class Vehicle.

22. Plaintiff Lilianna Bineau ("Bineau") is a Colorado citizen residing in Longmont, Colorado. Plaintiff Bineau purchased a 2016 Hyundai Sonato in 2018 in Saco, Maine.

23. Plaintiff Bineau's Class Vehicle was stolen on September 27, 2022. Police recovered Plaintiff Bineau's Class Vehicle the same day and it remains in the police impound lot. When Plaintiff Bineau's Class Vehicle was subsequently located it was found with fentanyl in the vehicle and will need to be thoroughly serviced to remove this.

24. Plaintiff Bineau has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with the Defect including, but not limited to, the cost to repair the Class Vehicle, her insurance deductible, and overpayment and diminished value of the Vehicle.

CLASS ACTION COMPLAINT - 9

**B. Defendants**

25. Defendant Kia America, Inc. is a California corporation with a principal place of business at 111 Peters Canyon Road, Irvine, California 92606.

26. Defendant Hyundai Motor America is a California corporation with a principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708.

## III. JURISDICTION AND VENUE

27. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one class member is a citizen of a state other than that of Defendants, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

28. This Court also has supplemental jurisdiction over the state law claims pursuant to U.S.C. § 1367.

29. This Court has personal jurisdiction over Defendants because Defendants are California corporations, both with principal places of business in California. Defendants maintain headquarters in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

CLASS ACTION COMPLAINT - 10

30.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to this Court's jurisdiction.

31.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are citizens of California with principal places of business located in this district.

## IV.    FACTUAL ALLEGATIONS

32.    Immobilizer technology has been proven to substantially reduce vehicle theft. Vehicle theft plunged after immobilizers were introduced in the 1990s, with a 2016 study finding that the technology reduced auto theft by 40% over a ten-year period.[1]

33.    Outside of the United States, many countries require immobilizer technology as standard for all new vehicles. The European Union has required the technology in all new vehicles since 1998, Australia has required it since 2001, and Canada has required it since 2007.[2]

34.    Defendants Kia and Hyundai have refused to include immobilizer technology as standard in their vehicles in the United States, even though they sell almost identical vehicles with the technology in foreign countries that require it.

---

[1] Jan C. van Ours & Ben Vollaard, *The Engine Immobilizer: A Non-Starter For Car Thieves*, The Economic Journal, Vol. 126, No. 593, 1264, 1283 (June 2016), https://fortune.com/2022/09/22/hyundai-kia-cars-stealing-hack-thieves/.
[2] *Id*. at 1265.

CLASS ACTION COMPLAINT - 11

35.   Defendants most likely have not instituted the anti-theft technology as standard in the Covered Vehicles as a method to increase their profits by saving the costs of implementing immobilizers.

36.   Because the Covered Vehicles are so easy to steal, and viral videos have made instructions on how to do so widely accessible, rates at which Covered Vehicles are stolen have increased immensely.

37.   St. Petersburg, Florida, reported that over one third of car thefts in the city since the launch of the viral videos were Covered Vehicles.[3] Los Angeles, California, reported an 85% increase in thefts of Covered Vehicles in the last year.[4]

38.   Purchasers and lessees are suffering substantial costs to repair Covered Vehicles after they are recovered. The repair costs of a window and steering column on a Class Vehicle can be upwards of $3,000.[5] Covered Vehicles are not

---

[3] Delella, Chris & Day, Andrea, *TikTok Challenge Spurs Rise in Thefts of Kia, Hyundai Cars*, CNBC, https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html.
[4] *Id*.
[5] Causey, James E., *Motor Vehicle Thefts in Milwaukee Are Up 152%, Auto Repair Businesses Say the Worst May Be Yet To Come*, Milwaukee Journal Sentinel, https://www.jsonline.com/story/news/solutions/2021/02/03/motorvehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/ (last accessed Sept. 26, 2022).

CLASS ACTION COMPLAINT - 12

always recovered after the theft or can be damaged to the amount of total loss, leaving owners with costs of $10,000 or more.[6]

39.    Hyundai and Kia repair shops are suffering back orders and shortages of supplies needed to repair the Covered Vehicles in such high rates.[7]

40.    Federal regulations have long held "stolen cars constitute a major hazard to life and limb on the highways."[8] Additionally, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals."[9]

41.    Due to the high rate of theft of Defendants' Covered Vehicles, insurance companies are raising rates to insure the Covered Vehicles, or even refusing to insure them all together. Progressive recently released the following statement to ABC 7 News Denver:

> We're committed to providing affordable insurance solutions for consumers based on the particular level of risk while also ensuring our policies are accurately priced. Due to the theft risk that some Hyundai and Kia vehicles present, in many cases it makes these vehicles difficult to insure, so we have adjusted our acceptance criteria for new business on some of these models. We'll continue to monitor how this issue plays out, and are

---

[6] *Id.*
[7] *Id.*
[8] 33 Fed. Red. 6, 471, (Apr. 27, 1968).
[9] *Id.*

CLASS ACTION COMPLAINT - 13

1    hopeful to be able to revisit our decision if the theft risk
2    diminishes and community awareness improves.

3    42.   Owners and lessees of Covered Vehicles have suffered additional harms to

the cost of repairs, such as increased insurance rates, theft of other property taken

from the Covered Vehicles, and the diminution in value of the Covered Vehicles

being targeted.

43.   Covered Vehicles also fail to comply with Federal Motor Vehicle Safety

Standard ("FMVSS") 114, which requires: "Each vehicle must have a starting

system which, whenever the key is removed from the starting system prevents: (a)

The normal activation of the vehicle's engine or motor; and (b) Either steering, or

forward self-mobility, of the vehicle or both."

44.   Proper compliance with FMVSS 114 would reduce the theft rate because

when the key is removed from the starting system, it would not be able to be

activated and stolen with a USB cord.

45.   Defendants Kia announced that all models made in 2022 or later would

have the immobilizer technology as standard, and Defendant Hyundai made the

same announcement for models made starting November 2021.[10] This, however,

---

[10] Krisher, Tom, *Thieves Key on Hack that Leaves Hyundai, Kia Cars Vulnerable*,
The Washington Post, https://www.washingtonpost.com/business/thieves-key-on-

CLASS ACTION COMPLAINT - 14

offers no relief to the thousands of consumers whose Covered Vehicles remain vulnerable to easy theft.

46. Defendants have known about the vulnerability of their vehicles to theft due to the lack of immobilizer technology. In fact, they provide it as standard in the majority of their higher end vehicles. However, Defendants refused to follow competitor standards and implement it as standard in their lower-cost vehicles.

47. Upon information and belief, based on numerous customer complaints relayed through authorized dealers, Defendants have known about the ease of theft of the Covered Vehicles for many years.

48. Defendants have known Covered Vehicles were being commonly stolen because Defendants supply replacement parts to dealerships and shops and would have received high numbers of orders for such parts.

49. Defendants continue to sell and lease Covered Vehicles, placing more cars that lead to dangerous thefts in the market. Only recently with the publication of reports regarding the viral video challenges have Defendants decided to implement the immobilizer technology as standard in their vehicles.

---

hack-that-leaves-hyundai-kia-cars-vulnerable/2022/09/22/454cca90-3a2b-11ed-b8af-0a04e5dc3db6_story.html.

CLASS ACTION COMPLAINT - 15

50.   To date, the Class members who have previously purchased the Covered Vehicles remain susceptible to theft and damages to their vehicles.

## V.   CHOICE OF LAW ALLEGATIONS

51.   Because this Complaint is filed in California, California's choice of law doctrine governs the state law allegations in this Complaint. Under California's choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

52.   Defendants Kia and Hyundai are headquartered, and engaged in all actions relevant to these Claims, in California, and California therefore has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state. Application of California law to Defendants and the claims of all Class members would not be arbitrary or unfair.

53.   Plaintiffs plead claims on behalf of a nationwide class because the laws for each state do not vary materially for these claims. Alternatively, Plaintiffs plead state law claims as indicated below. This Complaint refers to the nationwide and state classes collectively as the "Class," unless noted otherwise.

## VI.   CLASS ACTION ALLEGATIONS

54.   Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

CLASS ACTION COMPLAINT - 16

55.   Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall be defined as follows:

All persons and entities nationwide that purchased or leased a Class Vehicle (the "Nationwide Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Louisiana (the "Louisiana Class").

All persons and entities that purchased or leased a Class Vehicle in the State of South Dakota ("the South Dakota Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Colorado (the "Colorado Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Delaware (the "Delaware Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Illinois (the "Illinois Class").

(Collectively, the "Class" unless otherwise noted.)

56.   Excluded from the Class are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns, and successors: (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

57.   Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members. Plaintiffs disclaim any intent or right to seek recovery in

CLASS ACTION COMPLAINT - 17

this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

58.    Although the exact number of Class members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants and governmental officials. Upon information and belief, Defendants have sold and leased many thousands of Covered Vehicles nationwide during the relevant time period. Therefore, the Class members are so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

59.    Common questions of law and fact exist as to all Class members. These common legal and factual questions include:

(a) Whether Defendants designed, advertised, sold, and placed the Covered Vehicles into the stream of commerce;

(b) Whether the Covered Vehicles were sold with the Defect described above;

(c) Whether the Defect in the Covered Vehicles is a safety and/or security defect that created a foreseeable risk of harm to Plaintiffs and the class;

(d) Whether Defendants breached implied warranties made to the Class members;

(e) Whether Defendants knew about the Defect and, if so, how long Defendants have known about the Defect;

CLASS ACTION COMPLAINT - 18

(f) Whether Defendants concealed the Defect;

(g) Whether Defendants' conduct violated consumer protection statutes, warranty laws, and other laws asserted herein;

(h) Whether the Class members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution in value and deprivation of the benefit of the bargain; and

(i) Whether the Class members are entitled to injunctive relief.

60.    Plaintiff's claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class member have a Vehicle with the same Defect.

61.    Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class members. Additionally, Plaintiffs have retained counsel competent and experienced in complex class action litigation including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Therefore, the interests of the Class members will be fairly and adequately protected.

62.    A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any

CLASS ACTION COMPLAINT - 19

questions affecting only individual members, and a class action is superior to any other available means for fairly and effectively adjudicating the controversy. In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendants Hyundai and Kia. It is beneficial to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendants' records and the records available publicly will easily identify the Class members. The Defect is common to all Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

63.    A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendants have acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

CLASS ACTION COMPLAINT - 20

## VII.  CLAIMS

**A. Claims Brought on Behalf of the Nationwide Class**

### CLAIM I
### BREACH OF IMPLIED WARRANTY
### (BASED ON CALIFORNIA LAW)

64.  Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

65.  This claim is brought under California law on behalf of a Nationwide Class.

66.  As detailed herein, Defendants designed, manufactured, distributed, and sold the Covered Vehicles knowing that consumers like Plaintiffs and the Class would purchase these products from Defendants' authorized dealers as a means of transportation.

67.  As merchants of the Covered Vehicles, Defendants warranted to the Plaintiffs and the Class that the Covered Vehicles were fit for the ordinary purpose for which they are used.

68.  Plaintiffs relied on this warranty to their detriment.

69.  The Covered Vehicles are not "merchantable" because they are not reasonably fit for the ordinary purpose for which they are sold, which is to provide safe, reliable transportation. To the contrary, the Covered Vehicles pose a substantial safety hazard because the Defect renders them vulnerable to theft,

CLASS ACTION COMPLAINT - 21

making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

70. Sufficient privity of contract exists to assert this implied warranty claim.

71. Defendants market and advertise the sale of the Covered Vehicles in various media outlets across the United States, including to the Plaintiffs and the Class.

72. Defendants advertise their authorized dealer network on their respective websites and task them with administering the promotional material and warranty information for new Covered Vehicles to prospective consumers throughout the nation. Through Defendants' websites, consumers obtain information about vehicles; design specific vehicles to meet his or her needs; obtain information about the value of trade-in vehicles; request additional marketing materials; and request quotes for vehicle. Defendants then send these consumers to "authorized dealers" to consummate sales and leases.

73. Defendants control various details regarding their dealer's operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract

CLASS ACTION COMPLAINT - 22

from their respective brands or undermine the sale of their respective vehicles, including the Covered Vehicles.

74.  Plaintiffs purchased and/or leased their respective Covered Vehicles from "authorized dealers" with the misunderstanding that these dealers were acting on behalf of Defendants.

75.  The sole and express purpose that each authorized Kia and Hyundai dealer has when it acquires the vehicles from Kia and Hyundai is to immediately re-sell them to the end-users like Plaintiffs and the Class members.

76.  Defendants' conduct, and the conduct of their respective dealers, thus create a justifiable belief on the part of Plaintiffs and Class members that the dealers are agents of Kia and/or Hyundai, which the Plaintiffs relied on to their detriment.

77.  Therefore, each Kia and Hyundai dealership operates as the actual and/or apparent agent of the Defendants-manufacturers named herein, which satisfied any privity requirement.

78.  Further, the purchase and/or lease agreements between the Plaintiffs and their respective dealers were entered directly and primarily for Kia and Hyundai's benefit.

79.  Similarly, any contract whereby Defendants' authorized dealers acquire the Covered Vehicles from Defendants to resell to the end-user is also for the

CLASS ACTION COMPLAINT - 23

express benefit of Plaintiffs and the Class. On information and belief, Defendants'
authorized dealers make little money on the actual sale or lease of new vehicles,
including the Covered Vehicles.

80.   Plaintiffs and the members of the Class therefore have standing to assert
implied warranty claims against Defendants by virtue of their status as intended,
third-party beneficiaries of these dealership sales agreements, which further
satisfies the privity requirement.

81.   Privity therefore exists between Defendants on the one hand, and the
Plaintiffs and the Class on the other by virtue of the express warranties provided
through their purchase and/or lease agreements.

82.   Moreover, the Magnuson-Moss Warranty Act ("MMWA") provides that
when a manufacturer offers a written warranty, it may limit the duration of an
implied warranty to the duration of an express warranty, but it cannot disclaim
implied warranties all together.[11] "No supplier may disclaim or modify . . . any
implied warranty to a consumer with respect to such consumer product if (1) such
supplier makes any written warranty to the consumer with respect to such
consumer Product. . . ."[12] A manufacturer should not be permitted to avoid this rule

---

[11] *See* 15 U.S.C. § 2308(a).
[12] *Id.*

CLASS ACTION COMPLAINT - 24

by claiming a lack of privity when the manufacturer itself chose its distribution model.

83. Imposing a rigid privity requirement in this case would permit Defendants to escape both the letter and spirit of the MMWA through their preferred distribution scheme; one in which the only parties in strict privity that can assert an implied warranty claim are Hyundai and Kia's own dealers who would never need to assert the claim in the first instance.

84. Consequently, any rigid application of a state law privity requirement would violate the Supremacy Clause and be preempted.[13] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."[14]

85. As a direct and proximate result of Defendants' breach of these implied warranties, Plaintiffs and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial. These damages include, but are not limited to, overpayment for the Covered Vehicles, insurance

_____

[13] See U.S. Const. art. VI.
[14] *Id.*

CLASS ACTION COMPLAINT - 25

deductibles to get the stolen Covered Vehicles repaired, the cost to replace other property stolen in connection with the thefts of Vehicles, the loss of use of the Vehicles, costs associated with the replacement of the totaled Covered Vehicles, and/or the diminution in value of the stolen Covered Vehicles that were totaled.

86.   The circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose, such that the Plaintiffs and the Class may seek alternative remedies. Indeed, these warranties have denied the Plaintiffs and the Class the benefit of their respective bargains, which presupposes they were (or are) able to use the Covered Vehicles in a meaningful manner without the ever-present risk of them being stolen.

87.   Further, Kia and Hyundai's exclusion and/or limitation of consequential damages in their New Vehicle Limited Warranties is unconscionable and void for the reasons stated herein.

88.   Therefore, the Plaintiffs and Class are entitled to damages flowing from Defendants' breach of their implied warranties, as well as all consequential and incidental damages resulting from this breach.

89.   Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a

CLASS ACTION COMPLAINT - 26

1  reasonable opportunity to cure the breach of written warranties therefore would be

2  unnecessary and futile.

3                              **CLAIM II**
   **VIOLATIONS OF MAGNUSON MOSS WARRANTY ACT,**
4                       **15 U.S.C. § 2301**

5

6  90.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth

7  herein.

   91. Plaintiffs bring this claim on behalf of the Nationwide Class.

8  92.   Congress enacted the MMWA, 15 U.S.C. §§ 2301 *et seq*., to address the

9
   widespread misuse of merchants' express warranties and to protect consumers
10
   from deceptive warranty practices. The MMWA imposes civil liability on any
11
   "warrantor" who fails to comply with any obligation under a written or
12
   corresponding implied warranty.[15]
13
   93.   The Covered Vehicles are "consumer products" as defined in 15 U.S.C. §
14
   2301(d)(1).
15
   94.   Plaintiffs and members of the Class are "consumers" as defined in 15
16
   U.S.C. § 2301(3).
17

18

19  _____

20  [15] *Id.* § 2301(d)(1).
    CLASS ACTION COMPLAINT - 27

95. Kia and Hyundai are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively.

96. In connection with the sale and/or lease of the Covered Vehicles, Defendants supplied Plaintiffs and the Class with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

97. 15 U.S.C. § 2301(d)(1) provides that "a consumer who is damages by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state."

98. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

99. Defendants provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease or their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As part of the implied warranty of merchantability, Defendants warranted that the Covered Vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

CLASS ACTION COMPLAINT - 28

100. Defendants breached its implied warranties, as described herein, and is therefore liable to Plaintiffs under 15 U.S.C. § 2301(d)(1). The Defect rendered the Covered Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

101. Plaintiffs used their respective Covered Vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendants' conduct of by operation of law.

102. Plaintiffs and the Class seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein. These damages include, but are not limited to, overpayment for the Covered Vehicles, insurance deductibles to get the stolen Covered Vehicles, the loss of use their respective Covered Vehicles, and/or the diminution in value of a stolen Covered Vehicles that were not totaled.

103. The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2301(d)(1). Plaintiffs seek reformation of Defendant Kia and Hyundai's respective written warranties to comport with their obligations under the MMWA and with consumers' reasonable expectations. Plaintiffs also seek to enjoin Defendants from acting unlawfully as alleged herein.

CLASS ACTION COMPLAINT - 29

104. Lastly, Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of this case. The MMWA provides for an award of costs and expenses including attorneys' fees, to prevailing consumers in the Court's discretion.[16]

## CLAIM III
## FRAUD BY CONCEALMENT
## (BASED ON CALIFORNIA LAW)

105. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

106. Plaintiffs bring this claim on behalf of the Nationwide Class.

107. Defendants intentionally concealed the Defect.

108. Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each Class Vehicle and on its website, that the Covered Vehicles that were sold contained no significant defects, that they were reliable, and that they would perform and operate properly.

109. Defendants knew about the Defect when these representations were made.

---

[16] 15 U.S.C. § 2301(d)(2).
CLASS ACTION COMPLAINT - 30

110. The Covered Vehicles purchased by Plaintiffs and the other Class members contained the Defect.

111. Defendants had a duty to disclose the Defect as previously mentioned, because the Defect created a safety hazard and Plaintiffs and other Class members relied on Defendants' material misrepresentations.

112. As alleged herein, at all relevant times, Defendants have claimed and advertised the Covered Vehicles as free from defects. Defendants claimed and continue to claim the many benefits and advantages of the Covered Vehicles, placing blame on the unlawful conduct of thieves instead of the manufacturers. Defendants have nonetheless failed to disclose important facts related to the Defect. This made Defendants' other disclosures about the Covered Vehicles deceptive.

113. The truth about the Defect was known only to Defendants. Plaintiffs and other Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

114. Plaintiffs and other Class members reasonably relied upon Defendants' deceptive misrepresentations. Plaintiffs could not have known that Defendants' representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not have discovered Defendants' deception on

CLASS ACTION COMPLAINT - 31

their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Covered Vehicles and their Defect.

115. Defendants' false representations and omissions were material to consumers because they concerned qualities of the Covered Vehicles that played a significant role in the value of the Covered Vehicles.

116. Defendants had a duty to disclose the Defect and violations with respect to the Covered Vehicles because details of the true facts were known and accessible only to Defendants, because Defendants had exclusive knowledge as to these facts, and because Defendants knew these facts were not known or reasonably discoverable by Plaintiffs or Class members.

117. Defendants also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Covered Vehicles and failed to disclose to consumers that the Covered Vehicles contained the Defect that would affect the safety, quality, and performance of the Class Vehicle.

118. Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as described above. These omitted and concealed facts were material because they directly impact the value of the Covered Vehicles purchased by Plaintiffs and Class members.

CLASS ACTION COMPLAINT - 32

119. Defendants still have not made full and adequate disclosures and continue to defraud Plaintiffs and Class members by concealing material information regarding the Defect.

120. Plaintiffs and Class members were unaware of the omitted material facts referenced in this Complaint, and they would not have acted as they did if they had known of the concealed or suppressed facts of the Defect, in that they would not have purchased or paid as much for the cars without immobilizer technology, or would have taken affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

121. Because of the concealment and suppression of facts, Plaintiffs and Class members sustained damage because they own or lease Covered Vehicles that are diminished in value as a result of Defendant's concealment or the true quality of the Covered Vehicles' security systems. Had Plaintiffs and Class members been aware of the Defect in the Covered Vehicles, and Defendants' disregard for the truth, Plaintiffs and Class members would have paid less for their Vehicles or would not have purchased or leased them at all.

122. The value of Plaintiffs' and Class members' Covered Vehicles have diminished as a result of Defendants' fraudulent concealment of the Defect, which

CLASS ACTION COMPLAINT - 33

had made any reasonable consumer reluctant to purchase a Class Vehicle, let alone pay what previously would have been fair market value for the Covered Vehicles.

123. Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

124. Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Defendants made to them, in order to enrich Defendants. Defendants' conduct therefore warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (CAL. COM. CODE § 2314)

125. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

126. Plaintiffs bring this claim on behalf of the Nationwide Class.

127. Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2314.

128. A warranty that the Covered Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

CLASS ACTION COMPLAINT - 34

129. Defendants marketed the Covered Vehicles as safe and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase or lease the Covered Vehicles.

130. Plaintiffs and other Class members purchased or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Covered Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and sellers of the Covered Vehicles.

131. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

132. Because of the Defect, the Covered Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

133. Defendants knew about the Defect, allowing Defendants to cure their breach of warranty if they chose to do so.

134. Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also

CLASS ACTION COMPLAINT - 35

unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other Class members, and Defendants knew of the defect at the time of the sale of the Covered Vehicles.

135. Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure their breach of written warranties would therefore be unnecessary and futile.

136. Therefore, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

**B. Claims Brought on Behalf of Illinois Class**

**CLAIM V**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ.* AND 720 ILCS 295/1A)**

137. Plaintiff Harris, individually and on behalf of the Illinois Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

CLASS ACTION COMPLAINT - 36

138. Plaintiff Harris brings this claim individually and on behalf of the Illinois Class against Defendant Kia.

139. Defendant Kia is a "person" as that term is defined in 815 ILCS 505/1(c).

140. Plaintiff Harris and the Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

141. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damages thereby." 815 ILCS 505/2.

142. In the course of its business, Defendant Kia violated the Illinois CFA by concealing and failing to disclose the Defect. Defendant Kia had an ongoing duty to Plaintiffs and the Illinois Class to refrain from unfair and deceptive practices under the CFA in the course of its business.

143. Plaintiffs and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Kia's concealment,

CLASS ACTION COMPLAINT - 37

misrepresentations, and failure to disclose material information regarding the Defect.

144. Plaintiff Kia knew of the safety hazards the Defect made Covered Vehicles susceptible to based on consumer complaints, and the fact that the technology is standard in their vehicles in other countries.

145. As alleged above, Defendant Kia owed Plaintiff Harris and the Illinois Class a duty to disclose the material fact that the Covered Vehicles were not equipped with the immobilizer technology because Defendant Kia: (a) possessed exclusive knowledge about the Defect and the ease with which they can be stolen; (b) intentionally concealed the foregoing from Plaintiff Harris and the Illinois Class; and (c) made incomplete representations about the Covered Vehicles' reliability and safety, while purposefully withholding material facts from Plaintiff Harris and the Illinois Class that contradicted these representations.

146. Pursuant to 815 ILCS 505/10a(a), Plaintiff Harris seeks monetary relief against Defendant Kia in the amount of actual damages as well as punitive damages because Defendant Kia acted with fraud and/or malice and/or was grossly negligent in its fraud and deceptive practices.

147. Plaintiff Harris also seeks an order enjoining Defendant Kia's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, *et seq.*

CLASS ACTION COMPLAINT - 38

## CLAIM VI
## BREACH OF EXPRESS WARRANTY
## (810 ILL. COMP. STAT. §§ 5/2-313 AND 5/2A-210)

148. Plaintiff Harris, individually and on behalf of the Illinois Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

149. Plaintiff Harris brings this claim individually and on behalf of the Illinois Class against Defendant Kia.

150. Defendant Kia is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

151. With respect to leases, Defendant Kia is and was at all relevant times a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

152. The Covered Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 8/2-105(1) and 5/2A-103(1)(h).

153. Defendant Kia provided express warranty to Plaintiff Harris and the Illinois Class Members of the Covered Vehicles' safety and reliability as a mode of transportation.

154. Defendant Kia's warranties regarding the Covered Vehicles formed a basis of the bargain that was breached when Plaintiff Harris and the Illinois Class

CLASS ACTION COMPLAINT - 39

1    members purchased or leased the Covered Vehicles with the Defect that prevents

2    the Covered Vehicles from being easily stolen.

3        155. Defendant Kia breached the express warranty promising to provide a safe

4    and securable vehicle. Defendant Kia has not repaired or adjusted, and has been

5    unable to repair or adjust, the Covered Vehicles' Defects.

6        156. Defendant Kia was provided with notice of these issues by numerous

7    complaints against it, including the instant Complaint, and by consumer

8    complaints, letters, emails, and other communications from Class members and

9    from dealers and other repair facilities.

10       157. As a direct and proximate result or Defendant Kia's breach of express

11   warranties, Plaintiff Harris and the Illinois Class members have been damaged in

12   an amount to be determined at trial.

13                              **CLAIM VII**
     **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
14              **(810 ILCS §§ 5/2-314 AND 5/2A-202)**

15       158. Plaintiff Harris, individually and on behalf of the Illinois Class,

16   incorporates by reference all of the allegations contained in the preceding

17   paragraphs of this Class Action Complaint as if fully set forth herein.

18       159. Plaintiff Harris brings this claim individually and on behalf of the Illinois

19   Class against Defendant Kia.

20
     CLASS ACTION COMPLAINT - 40

160. Defendant Kia is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

161. With respect to leases, Defendant Kia is and was at all relevant times a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

162. The Covered Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 8/2-105(1) and 5/2-103(1)(h).

163. A warranty that the Covered Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

164. The Covered Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Covered Vehicles are inherently defective in that their ignition system is not equipped with the immobilizer technology that prevents theft.

165. Defendant Kia knew about the Defect at the time of purchase, allowing it to cure their breach of warranty if they chose.

166. Defendant Kia was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints,

CLASS ACTION COMPLAINT - 41

letters, emails, and other communications from Class members and from dealers and other repair facilities.

167. As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability Plaintiff Harris and the Illinois Class members have been damages in an amount to be proven at trial.

**C. Claims Brought on Behalf of the Louisiana Class**

**CLAIM VIII**
**VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW**
**(LA. REV. STAT. § 51.1401 *ET SEQ.*)**

168. Plaintiff Sampson, individually and on behalf of the Louisiana Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

169. Plaintiff Sampson brings this claim individually and on behalf of the Louisiana Class against Defendant Hyundai.

170. Plaintiff Sampson and the Louisiana Class purchased a Class Vehicle manufactured by Defendant Hyundai that was marketed for safe and reliable transportation.

171. Plaintiff Sampson and the Louisiana Class are "persons" within the meaning of the LA. REV. STAT. § 51:1402(8).

CLASS ACTION COMPLAINT - 42

172. Plaintiff Sampson and the Louisiana Class are "consumers" within the meaning of LA. REV. STAT. § 51:1401(1).

173. Defendant Hyundai engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. § 51:1402(9).

174. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A).

175. Defendant Hyundai participated in misleading, false, or deceptive acts that violated the Louisiana CPL. By systematically concealing the Defects in the Covered Vehicles, Defendant Hyundai engaged in deceptive business practices prohibited by the Louisiana CPL. The suppressed or omitted information would be material to a reasonable consumer.

176. In the course of its business, Defendant Hyundai concealed the Defect in the Covered Vehicles and otherwise engaged in activities with a tendency or capacity to deceive.

177. Defendant Hyundai also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact within intent that others rely upon such concealment, suppression or omission, in connection with the sale or lease of the Covered Vehicles.

CLASS ACTION COMPLAINT - 43

1    178. Defendant Hyundai knew about the Covered Vehicles' Defect. Defendant

2    Hyundai received information of the Defect through other complaints, this instant

3    Complaint, consumer letters, emails, and other communications from Class

4    members and from dealers and other repair facilities about the true dangers posed

5    by the Defect.

6    179. Defendant Hyundai intentionally and knowingly misrepresented material

7    facts regarding the Covered Vehicles with the intent to mislead Plaintiff Sampson

8    and the Louisiana Class.

9    180. Defendant Hyundai knew or should have known that its conduct violated

10   the Louisiana CPL.

11   181. As alleged above, Defendant Hyundai made material statements about the

12   reliability of the Covered Vehicles that were either false or misleading. Defendant

13   Hyundai owed Plaintiff Sampson and the Louisiana Class a duty to disclose the

14   true reliability and safety of the Covered Vehicles because Defendant Hyundai: (a)

15   possessed exclusive knowledge about the defects in the Covered Vehicles; (b)

16   intentionally concealed the foregoing from Plaintiff Sampson and the Louisiana

17   Class; and (c) made incomplete representations about the reliability of the Covered

18   Vehicles, while purposefully withholding material facts from Plaintiff Sampson

19   and the Louisiana Class that contradicted these representations.

20

CLASS ACTION COMPLAINT - 44

182. Because Defendant Hyundai fraudulently concealed the Defect in the Covered Vehicles, purchasers of the Covered Vehicles were deprived the benefit of their bargain since the Vehicles they purchased were worth less than they would have been if they had been free from the Defect. Furthermore, Plaintiff Sampson and the Louisiana Class have often been deprived the full benefit of their bargain because the Covered Vehicles have been stolen and not recovered, or recovered at the value of a total loss.

183. Had Plaintiff Sampson and the Louisiana Class been aware of the Defect in their Covered Vehicles, they would have either not bought the Covered Vehicles or would have paid less for them.

184. As a direct and proximate result of Defendant Hyundai's violations of the Louisiana CPL, Plaintiff Sampson and the Louisiana Class have suffered injury-in-fact and/or actual damage.

185. Pursuant to LA. REV. STAT. § 51:1409, Plaintiff Sampson and the Louisiana Class seek to recover actual damages in an amount to be determined at trial; treble damages for Defendant Hyundai's knowing violations of the Louisiana CPL; an order enjoining Defendant Hyundai's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

CLASS ACTION COMPLAINT - 45

## CLAIM IX
## VIOLATION OF WARRANTY AGAINST REDHIBITORY DEFECTS
### (LA. CIV. CODE § 2520, *ET SEQ.*)

186. Plaintiff Sampson, individually and on behalf of the Louisiana Class, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

187. Plaintiff Sampson individually and on behalf of the Louisiana Class brings this claim against Defendant Hyundai.

188. Plaintiff Sampson and the Louisiana Class are and were at all relevant times "buyers" under La. Civ. Code articles 2520, *et seq.*

189. Defendant Hyundai is and was at all relevant times a "seller" under La. Civ. Code articles 2520, *et seq.*

190. Defendant Hyundai engaged in trade or commerce at all relevant times under La. Civ Code articles 2520, *et seq.* by designing, manufacturing, distributing, advertising, marketing, labeling, offering for sale, selling, and distributing the Covered Vehicles.

191. Plaintiff Sampson and the Louisiana Class purchased or leased Defendant Hyundai's Covered Vehicles through Defendant Hyundai's authorized dealers.

192. Defendant Hyundai, as the designer, manufacturer, marketer, distributor, and/or seller, warranted that the Covered Vehicles were fit for their intended purpose of reliable and safe transportation.

CLASS ACTION COMPLAINT - 46

193. Defendant Hyundai, as the designer, manufacturer, marketer, distributor, and/or seller, warranted through the marketing, advertising, and labeling of the Covered Vehicles that the Vehicles were safe, that they were reliable, and that the key locking system was functional, when in fact, these warranties were meaningless as to the intended safety purposes of the Covered Vehicles.

194. Defendant Hyundai made the foregoing representations and warranties to all buyers, which became the basis of the bargain between Plaintiff Sampson, the Louisiana Class, and Defendant Hyundai.

195. In fact, Defendant Hyundai's Covered Vehicles contain redhibitory defects, as they are not safe to be left unattended and can be stolen with a simple USB cable, and because each of the above-described warranties is a false and misleading misrepresentation as to the fitness of the Covered Vehicles for particular uses.

196. Defendant Hyundai breached these warranties and/or contract obligations by placing the Covered Vehicles into the stream of commerce and selling them to customers, when the Covered Vehicles are unsafe and pose a significant safety risk to the general public at the time they enter the stream of commerce. The lack of safety inherent in the Covered Vehicles renders them unfit for their intended use and purpose and substantially and/or completely impairs the use and value of the Covered Vehicles.

CLASS ACTION COMPLAINT - 47

197. Defendant Hyundai breached its warranties by selling the Covered Vehicles, which contain redhibitory defects, are unsafe for use, and cannot be used for their ordinary, intended purpose of being a safe and reliable mode of transportation. Defendant Hyundai breached its warranties to Plaintiff Sampson and the Louisiana Class in that the Covered Vehicles are not safe for their intended purpose at the time that they left Defendant Hyundai's possession or control and were sold to Plaintiff Sampson and the Louisiana Class, creating a serious safety risk to Plaintiff Sampson, the Louisiana Class, and the general public.

198. Defendant Hyundai further breached its warranty to adequately repair or replace the Covered Vehicles despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, in which the vehicles are equipped with the immobilizer, such as on their higher-end models with push-start technology.

199. Defendant Hyundai was provided actual and/or constructive notice of the redhibitory defects and breaches of the above-described warranties by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

200. Plaintiff Sampson and the Louisiana Class are entitled to reimbursement for the full cost of their Covered Vehicles due to the above-described redhibitory defects and Defendant Hyundai's breach of its warranties. Plaintiff Sampson and

CLASS ACTION COMPLAINT - 48

the Louisiana Class are also entitled to recover their attorneys' fees pursuant to the law of redhibition.

201. The aforementioned redhibitory defect renders Defendant Hyundai's Covered Vehicles useless, or alternatively, diminishes the usefulness or value of the Covered Vehicles to the point that Plaintiff Sampson and the Louisiana Class would have either not purchased the class vehicle or would have paid significantly less for it.

202. Plaintiff Sampson and the Louisiana Class were damaged by Defendant Hyundai's uniform misconduct, as they did not receive the benefit of the bargain, lost the Covered Vehicles' intended benefits, and suffered damages at the point-of-sale, as they would not have purchased the Covered Vehicles or would have paid significantly less if they had known the truth about the Defect and lack of anti-theft technology.

**D. Claims Brought on Behalf of the Colorado Class**

**CLAIM X**
**VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT**
**(COLO. REV. STAT. § 6-1-101, *ET SEQ.*)**

203. Plaintiff Kelley, individually and on behalf of the Colorado Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

CLASS ACTION COMPLAINT - 49

204. Plaintiff Kelley brings this claim individually and on behalf of the Colorado Class against Defendant Hyundai.

205. Defendant Hyundai is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, *et seq.*

206. Plaintiff Kelley and the Colorado Class are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a) who purchased or leased a Class Vehicle.

207. The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Defendant Hyundai engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Covered Vehicles that had the capacity or tendency to deceive Colorado Class members; (2) representing that the Covered Vehicles are of a particular standard, quality, and grade even though Defendant Hyundai knew or should have known that they are not; (3) advertising the Covered Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Covered Vehicles that was known to Defendant Hyundai at the time of advertisement or sale with the intent to induce Plaintiff Kelley and the Colorado Class to purchase, lease, or retain the Covered Vehicles.

208. In the course of its business, Defendant Hyundai concealed and suppressed material facts concerning the Covered Vehicles. Defendant Hyundai

CLASS ACTION COMPLAINT - 50

misrepresented that the Covered Vehicles were equipped with immobilizer technology and were not protected from theft and otherwise engaged in activities with a tendency or capacity to deceive. Defendant Hyundai also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and lease of the Covered Vehicles.

209. Defendant Hyundai's actions set forth above occurred in the conduct of trade or commerce.

210. Defendant Hyundai knew about the Covered Vehicles' Defect and susceptibility to theft at the time of sale and lease. Defendant Hyundai acquired additional information concerning the Covered Vehicles' Defect after they were sold and leased but continued to conceal information until the Defect was revealed by news reports, viral videos, and purchasers and lessees.

211. Defendant Hyundai intentionally and knowingly misrepresented material facts regarding the Covered Vehicles with intent to mislead Plaintiff Kelley and the Colorado Class.

212. Defendant Hyundai knew or should have known that its conduct violated the Colorado CPA.

CLASS ACTION COMPLAINT - 51

213. Defendant Hyundai owed Plaintiff Kelley and the Colorado Class a duty to disclose the true nature of the Covered Vehicles because Defendant Hyundai: (a) possessed exclusive knowledge about the defect; (b) intentionally concealed the foregoing from Plaintiff Kelley and the Colorado Class; and (c) made incomplete representations about the Covered Vehicles' safety and reliability, while purposefully withholding material facts from Plaintiff Kelley and the Colorado Class that contradicted these representations.

214. Defendant Hyundai's representations and omissions were material because they were likely to deceive reasonable consumers.

215. Defendant Hyundai's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Kelley and the Colorado Class about the true nature of the Defect and the true value of the Covered Vehicles.

216. Plaintiff Kelley and the Colorado Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Hyundai's misrepresentations and its concealment of and failure to disclose material information. Plaintiff Kelley and the Colorado Class who purchased or leased the Covered Vehicles would not have purchased or leased them or would have paid significantly less for them if the Defect had been disclosed. Plaintiff Kelley and the Colorado Class also suffered diminished value of their Covered Vehicles, some

1  losing the value entirely when their stolen Covered Vehicles were not recovered, or

2  were recovered at a total loss.

3  217. Plaintiff Kelley and the Colorado Class risk irreparable injury as a result of

4  Defendant Hyundai's acts and omissions in violation of the Colorado CPA, and

5  these violations present a continuing risk to Plaintiff Kelley and the Colorado

6  Class, as well as to the general public. Defendant Hyundai's unlawful acts and

7  practices complained of herein affect the public interest.

8  218. As a direct and proximate result of Defendant Hyundai's violations of the

9  Colorado CPA, Plaintiff Kelley and the Colorado Class have suffered injury-in-fact

10  and/or actual damage.

11  219. Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff Kelley, individually and

12  on behalf of the Colorado Class, seeks monetary relief against Defendant Hyundai

13  measures as the greater of (a) actual damages in an amount to be determined at trial

14  and discretionary trebling of such damages, or (b) statutory damages in the amount

15  of $500 for Plaintiff Kelley and each Colorado Class member.

16  220. Plaintiff Kelley and the Colorado Class also seek an order enjoining

17  Defendant Hyundai's unfair, unlawful, and/or deceptive practices, declaratory

18  relief, attorneys' fees, and any other just and proper relief available under the

19  Colorado CPA.

20  **CLAIM XI**

CLASS ACTION COMPLAINT - 53

# BREACH OF EXPRESS WARRANTY
## (COLO. REV. STAT. §§ 4-2-313 and 4-2.5-210)

221. Plaintiff Kelley, individually and on behalf of the Colorado Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

222. Plaintiff Kelley brings this claim individually and on behalf of the Colorado Class against Defendant Hyundai.

223. Defendant Hyundai is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

224. With respect to leases, Defendant Hyundai is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

225. The Covered Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

226. In connection with the purchase or lease of each one of its Covered Vehicles, Defendant Hyundai provides an express warranty that the Covered Vehicles are safe and reliable for transportation. Defendant Hyundai represents in its marketing that the Vehicles are free from defects in materials and workmanship.

227. Defendant Hyundai's warranties regarding the Covered Vehicles' safety and reliability formed a basis of the bargain that was breached when Plaintiff

CLASS ACTION COMPLAINT - 54

Kelley, and the Colorado Class purchased or leased the Covered Vehicles with the Defect.

228. Despite the existence of the Defect, Defendant Hyundai failed to inform Plaintiff Kelley and the Colorado Class that the Covered Vehicles were not equipped with the immobilizer technology that prevent them from being stolen. Defendant Hyundai failed to inform Plaintiff Kelley and the Colorado Class that the steel ignition keys they were given did not keep their car safe or secure.

229. Defendant Hyundai breached the express warranty promising to repair or adjust defects in materials or workmanship of any part supplied by Hyundai.

230. Defendant Hyundai was provided notice of these issues by numerous complaints against it, including this instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

231. As a direct and proximate result of Defendant Hyundai's breach of express warranties, Plaintiff Kelley and the Colorado Class have been damaged in an amount to be determined at trial.

**CLAIM XII**
**BREACH OF IMPLIED WARRANTY OF MERCHANABILITY**
**(COLO. REV. STAT. §§ 4-2-313 and 4-2.5-212)**

CLASS ACTION COMPLAINT - 55

232. Plaintiff Kelley, individually and on behalf of the Colorado Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

233. Plaintiff Kelley brings this claim individually and on behalf of the Colorado Class against Defendant Hyundai.

234. Defendant Hyundai is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

235. With respect to leases, Defendant Hyundai is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)p).

236. The Covered Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

237. A warranty that the Covered Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-212.

238. The Covered Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, Covered Vehicles are not equipped with the immobilizer anti-theft technology and cannot be properly secured.

CLASS ACTION COMPLAINT - 56

239. Defendant Hyundai was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

240. Defendant Hyundai has actual knowledge of the Defect as evidenced by its recent plan to supply law enforcement with steering wheel locks in highly affected areas by the theft of Covered Vehicles.

241. As a direct and proximate result of Defendant Hyundai's breach of the implied warranty of merchantability, Plaintiff Kelley and the Colorado Class have been damages in an amount to be determined at trial.

**E. Claims Brought on Behalf of the Maine Class**

**CLAIM XIII**
**VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT**
**(5 M.R.S. § 207, *ET SEQ.*)**

242. Plaintiff Bineau, individually and on behalf of the Maine Class, incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

243. Plaintiff Bineau brings this claim individually and on behalf of the Maine Class against Defendant Hyundai.

CLASS ACTION COMPLAINT - 57

244. The Maine Unfair Trade Practices Act declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." 5 M.R.S. § 207. The Maine Unfair Trade Practices Act provides a private right of action by "[a]ny person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issues under section 207 . . ." 5 M.R.S. § 213(a).

245. At all relevant times, Defendant Hyundai was engaged in trade or commerce within the State of Maine, including the trade or commerce of marketing, selling and causing to be sold the Covered Vehicles within the State of Maine.

246. At all relevant times, Plaintiff Bineau and the Maine Class were "persons" as defined in 5 M.R.S. § 206, and they purchased Covered Vehicles primarily for personal, family or household purposes.

247. In the course of its business in trade or commerce, Defendant Hyundai willfully failed to disclose the safety hazards posed by the Defect in the Covered Vehicles. Defendant Hyundai also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

CLASS ACTION COMPLAINT - 58

concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Covered Vehicles. Through this conduct Defendant Hyundai has engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in violation of 5 M.R.S. § 207.

248. The deceptive, false and misleading labeling and marketing of the Covered Vehicles as alleged herein were material in that they concerned facts that would have been important to a reasonable consumer in deciding whether to purchase or lease a class vehicle.

249. Defendant Hyundai intentionally and knowingly misrepresented and omitted material facts regarding its Covered Vehicles with intent to mislead Plaintiff Bineau and the Maine Class.

250. Defendant Hyundai's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Bineau and the Maine Class, about the true safety risks posed by the Defect.

251. Additionally, violations of federal consumer protection statutes, including Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a)(1), are also violations of 5 M.R.S. § 207. *See* 5 M.S.R. § 207(1). Because Defendant Hyundai has withheld material information from consumers and made unsubstantiated advertising claims regarding the Covered Vehicles, as alleged

CLASS ACTION COMPLAINT - 59

herein, in violation of Section 5 of the FTC Act, the conduct described herein also violates 5 M.R.S. § 207.

252. As a direct and proximate result of Defendant Hyundai's conduct in connection with the branding, labeling, marketing and selling of the Covered Vehicles in Maine as alleged herein, Plaintiff Bineau and the Maine Class were harmed.

253. As a direct and proximate result of Defendant Hyundai's wrongful conduct, Plaintiff Binuea and the Maine Class have been damaged by their purchase or lease of the Covered Vehicles and Defendant Hyundai is liable for its actions in violation of 5 M.R.S. § 207. Accordingly, Plaintiff Bineau and the Maine Class were harmed by, and Defendant Hyundai is liable for, its actions alleged herein in violation of 5 M.R.S. § 207.

254. The harm suffered could not be reasonably avoided by Plaintiff Bineau and the Maine Class and the harm suffered by them is not outweighed by any countervailing benefit to the consumers.

255. As a result of the conduct described herein, Defendant Hyundai is liable to Plaintiff Bineau and the Maine Class for actual damages that Plaintiff Bineau and the Maine Class incurred, restitution or other such equitable relief together with all related court costs, attorneys' fees, and interest.

**F. Claims Brought on Behalf of the South Dakota Class**

CLASS ACTION COMPLAINT - 60

1

**CLAIM XIV**
**BREACH OF EXPRESS WARRANTY**
**(S.D. Codified Laws § 57A-2-313)**

2

3    256. Plaintiff Sanders individually and on behalf of the South Dakota Class

4    incorporates by reference all allegations contained in the preceding paragraphs of

5    this Complaint as if fully set forth herein.

6    257. Plaintiff Sanders individually and on behalf of the South Dakota class

7    brings this claim against Defendant Kia.

8    258. As an express warrantor, manufacturer, and merchant, Defendant Kia had

9    certain obligations to confirm the Covered Vehicles to their express warranties as

10   provided by S.D. Codified Laws § 57A-2-313.

11   259. When Plaintiff Sanders and the South Dakota Class purchased the Covered

12   Vehicles, Defendant Kia expressly warranted that they were free from defects in

13   materials and workmanship. These express warranties formed the basis of the

14   bargain between Plaintiff Sanders, the South Dakota Class, and Defendant Kia

15   when they purchased or leased the Covered Vehicles.

16   260. Defendant Kia breached its express warranties, and continues to breach

17   them, because it did not, and cannot, deliver conforming, non-defective Covered

18   Vehicles to Plaintiff Sanders and the South Dakota Class. Defendant Kia has only

19   recently begun to offer steering wheel locks to law enforcement in areas affected

20

CLASS ACTION COMPLAINT - 61

by the high rates of auto theft, but this ultimately leaves Plaintiff Sanders and the South Dakota Class with Covered Vehicles containing the Defect.

261. The Defect causes the Covered Vehicles' warranties to fail of their essential purpose. Defendant Kia warranted that if a Covered Vehicle was defective in materials or workmanship, Defendant Kia will replace it with a functioning product. Defendant Kia did not satisfy this obligation because all of the Covered Vehicles have defects and it failed to replace the Covered Vehicles with the Defect owned by Plaintiff Sanders and the South Dakota Class.

262. Defendant Kia's authorized dealers have recently informed owners of the Covered Vehicles to purchase their own steering wheel locks, at their own cost without the option of reimbursement. This does not repair the defect or make the Covered Vehicles sufficient to live up to Defendants' warranties.

263. Plaintiff Sanders and the South Dakota Class purchased their Covered Vehicles from Defendants and/or their authorized dealers, used the Covered Vehicles in a manner consistent with their intended use, and have performed each and every duty required under the terms of the warranty, except as may have been excused or prevented by the conduct of Defendant Kia or by operation of law in light of Defendant Kia's deceptive, unfair, unconscionable, and fraudulent conduct.

264. Defendant Kia was provided notice of these issues by numerous complaints, including the instant Complaint, and by consumer complaints, letters,

CLASS ACTION COMPLAINT - 62

emails, and other communications from Class members and from dealers and other repair facilities. Affording Defendants further opportunity to cure their breach of warranties would be unnecessary and futile.

265. Privity of contract is not required in this action, as the express warranty, by its clear and unambiguous terms extends to consumers purchasing this product from an authorized retailer or reseller.

266. Moreover, Plaintiff Sanders and the South Dakota Class relied on Defendant Kia's representation that the Covered Vehicles were covered by a manufacturer warranty. Upon information and belief, Defendant Kia represented to authorized retailers and dealers that the Covered Vehicles were covered by a manufacturer warranty, causing the authorized dealers and retailers to communicate this information to consumers.

267. As discussed *supra*, Plaintiff Sanders and the South Dakota Class relied on these representations in deciding to purchase the Covered Vehicles.

268. In its capacity as a supplier and/or warrantor, and by the deceptive, unfair, unconscionable, and fraudulent conduct described herein, any attempt by Defendant Kia to limit its express warranties in a manner that would exclude or limit coverage for the Defect present in the Covered Vehicles at the time of sale, which Defendants knew about prior to offering the Covered Vehicles for sale, which Defendants concealed and did not disclose, and did not remedy prior to sale

CLASS ACTION COMPLAINT - 63

or afterward, is unconscionable, and any such effort to disclaim or otherwise limit

liability for the Defect is null and void.

269. Any attempt by Defendants to limit or exclude any form of damages or

other remedies, including without limitation consequential and incidental damages,

is unconscionable and therefore null and void due to Defendants' deceptive, unfair,

unconscionable, and fraudulent conduct.

270. Plaintiff Sanders and the South Dakota Class have suffered damages

caused by Defendants' breach of the express warranties and seek to recover

damages including, but not limited to, restitution; consequential and incidental

damages such as attorneys' fees; and any other relief the Court deems just and

appropriate.

## CLAIM XV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (S.D. Codified Laws § 57A-2-314)

271. Plaintiff Sanders individually and on behalf of the South Dakota Class

incorporates by reference all allegations in the preceding paragraphs of this

Complaint as if fully set forth herein.

272. Plaintiff Sanders individually and on behalf of the South Dakota Class

brings this claim against Defendant Kia.

CLASS ACTION COMPLAINT - 64

273. A warranty that the Covered Vehicles are in merchantable quality and condition is implied under S.D. Codified Laws § 57A-2-314.

274. Defendant Kia is, and was at all relevant times, a "merchant" with respect to the Covered Vehicles.

275. The Covered Vehicles were purchased and leased and used primarily for personal, family, or household purposes and are therefore consumer "goods."

276. Plaintiff Sanders and the South Dakota Class purchased or leased the cars from Defendants and/or Defendants' authorized dealers and agents and used them in a manner consistent with their intended use.

277. Defendant Kia did not disclaim the implied warranty of merchantability.

278. Defendant Kia impliedly warranted that the Covered Vehicles were of good and merchantable condition and quality, that they were fit for their ordinary intended use, namely providing safe and reliable transportation.

279. The Covered Vehicles contained the Defect of the lack of immobilizer technology that causes the Covered Vehicles to be highly susceptible to theft by non-owners with the use of a common USB cable. This Defect was present in the Covered Vehicles when they left the exclusive control of Defendants and therefore existed during the duration of the warranty period.

280. The Covered Vehicles were not of the same quality as those generally accepted in the trade since the majority of manufacturers have included this

CLASS ACTION COMPLAINT - 65

technology since the 1990s; were not fit for the ordinary purposes of safe and reliable transportation; were not adequately advertised and labeled as lacking this immobilizer technology; and did not conform to the promises and facts stated in the marketing materials created and provided by Defendants.

281. Because all Covered Vehicles were, and continue to be, defective, they were all non-merchantable. Accordingly, Defendants did not satisfy their implied warranty obligations by replacing or installing the immobilizer technology in Plaintiff Sanders's and the South Dakota Class's Covered Vehicles.

282. Plaintiff Sanders and the South Dakota Class performed each and every duty required by the implied warranty, except as may have been excused or prevented by the conduct of Defendants or by the operation of law in light of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct.

283. Defendants were provided notice of these issues by numerous complaints against them, including the instant Complaint, and by consumer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

284. Privity of contract is not required in this action, because Plaintiff Sanders and the South Dakota Class relied on Defendants' representation that the Covered Vehicles were covered by a manufacturer warranty. Defendants represented to authorized dealers that the Covered Vehicles were covered by manufacturer

CLASS ACTION COMPLAINT - 66

1   warranty, causing the dealers and resellers to communicate this information to

2   consumers.

3       285. Privity is also not required because Plaintiff Sanders and the South Dakota

4   Class are intended third-party beneficiaries of contracts between Defendants and

5   their authorized dealers; specifically, they are the intended beneficiaries of

6   Defendants' implied warranties. The dealers were not intended to be the ultimate

7   consumers of the Covered Vehicles and have no rights under the warranty

8   agreements provided with the Covered Vehicles, and the warranty agreements

9   were designed for and intended to benefit the ultimate consumers only.

10      286. As a direct and proximate result of Defendants' breach of the implied

11  warranty of merchantability, Plaintiff Sanders and the South Dakota Class have

12  been damaged by receiving an inferior good from that which they were promised.

13  Plaintiff Sanders and the South Dakota Class, therefore, seek to recover damages

14  including, but not limited to, restitution, consequential and incidental damages,

15  attorneys' fees and costs, and any other relief the Court deems just and proper.

16                          **CLAIM XVI**
    **VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE**
17  **PRACTICES AND CONSUMER PROTECTION STATUTE**
                **(S.D.C.L § 37-24-1, *ET SEQ.*)**
18

19

20

CLASS ACTION COMPLAINT - 67

287. Plaintiff Sanders, individually and on behalf of the South Dakota Class, incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

288. Plaintiff Sanders, individually and on behalf of the South Dakota Class, brings this claim against Defendants.

289. The South Dakota Deceptive Trade Practices and Consumer Protection Statute (DTP-CPS"), S.D.C.L. § 37-24-1, *et seq*., prohibits deceptive acts or practices including, *inter alia*, knowingly and intentionally acting, using, or employing any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or concealing, suppressing, or omitting any material fact in connection with the sale or advertisement of any merchandise.

290. Plaintiff Sanders and the South Dakota Class are "persons" as defined by the DTP-CPS.

291. Defendants violated the DTP-CPS because they knowingly and intentionally made material misrepresentations and omissions regarding the Covered Vehicles in connection with the sale and/or lease of the Covered Vehicles, as set forth in this Complaint.

292. Defendants affirmatively misrepresented, and continue to misrepresent, *inter alia*, that the Covered Vehicles are highly reliable, safe and secure modes of transportation.

CLASS ACTION COMPLAINT - 68

293. Defendants also failed to disclose material facts about the Covered Vehicles including, but not limited to, that the Covered Vehicles are not reliable or secure, that they are plagued by a Defect that renders them highly susceptible to theft by the common person and anyone with internet access to detailed instructions on how to steal the Vehicles.

294. Defendants made these misrepresentations and omissions knowingly and intentionally. Upon information and belief, Defendants received, or otherwise had knowledge of, numerous complaints against them, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

295. Despite this knowledge, Defendants intentionally misrepresented, and continue to misrepresent, the qualities and characteristics of the Covered Vehicles, and they chose to conceal rather than disclose the true Defective nature of the Covered Vehicles and their true dangers for their own pecuniary gain.

296. If Defendants had disclosed the Covered Vehicles' Defects, they would have become known to Plaintiff Sanders and the South Dakota Class because, upon information and belief, they would have been disseminated on the Internet, by dealer employees, and through other sources – as they have been recently through the trend of viral videos.

CLASS ACTION COMPLAINT - 69

297. Neither Plaintiff Sanders nor members of the South Dakota Class would have purchased the Covered Vehicles if they had known about the Defect and the Vehicles' unfitness for ordinary use. Thus, Defendants' omission of this material information, along with Defendants' affirmative misrepresentations, proximately caused economic injury to Plaintiff Sanders and the South Dakota Class.

298. Plaintiff Sanders and the South Dakota Class have standing to pursue a DTP-CPS claim on behalf of the South Dakota Class because, as detailed in this Complaint, Sanders was exposed to Defendants' misrepresentations about the Covered Vehicles prior to purchase, found the representations to be material, relied on them, and was deceived by them. Accordingly, Plaintiff Sanders has lost money in the form of diminished value of his Covered Vehicle as a result of Defendants' misrepresentations and omissions.

299. As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff Sanders and the South Dakota Class have been injured and seek to recover actual damages including, but not limited to, restitution; damages stemming from repair and replacement of the Covered Vehicles; and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own and on behalf of the Class members, respectfully request judgment against Defendants as follows:

CLASS ACTION COMPLAINT - 70

(A)     Certifying the proposed Nationwide Class and State Law Classes;

(B)     Appointing Plaintiffs and their counsel to represent the Classes;

(C)     Ordering injunctive relief, restitution, disgorgement, and other appropriate relief;

(D)     Awarding compensatory, punitive, exemplary, and other recoverable damages;

(E)     Awarding reasonable attorneys' fees and expenses;

(F)     Awarding pre-judgment and post-judgment interest;

(G)     Awarding such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury of all issues so triable.

Dated: October 5, 2022                Respectfully submitted,

                                      Schubert Jonckheer & Kolbe LLP

                                      By /s/  Amber L. Schubert

                                      ROBERT C. SCHUBERT (No. 62684)
                                      (rschubert@sjk.law)
                                      DUSTIN L. SCHUBERT (No. 254876)
                                      (dschubert@sjk.law)
                                      AMBER L. SCHUBERT (No. 278696)
                                      (aschubert@sjk.law)
                                      **SCHUBERT JONCKHEER & KOLBE LLP**
                                      Three Embarcadero Center, Suite 1650
                                      San Francisco, California 94111

CLASS ACTION COMPLAINT - 71

Telephone:    (415) 788-4220
Facsimile:    (415) 788-0161

CLASS ACTION COMPLAINT - 72