# EXHIBIT 2

ACCO,(KESx),DISCOVERY,MANADR,RELATED-G

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
# CIVIL DOCKET FOR CASE #: 8:22-cv-01548-DOC-KES

| | |
|---|---|
| Katelyn McNerney et al v. Kia America, Inc. et al | Date Filed: 08/19/2022 |
| Assigned to: Judge David O. Carter | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Karen E. Scott | Nature of Suit: 370 Other Fraud |
| Related Case: 8:22-cv-01440-DOC-KES | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Fraud | |

**<u>Plaintiff</u>**

**Katelyn McNerney**                    represented by   **Christopher Pitoun**
*on behalf of themselves and all others*                 Hagens Berman Sobol Shapiro LLP
*similarly situated*                                      301 North Lake Avenue Suite 920
                                                         Pasadena, CA 91101
                                                         213-330-7150
                                                         Fax: 213-330-7152
                                                         Email: christopherp@hbsslaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jeffrey S. Goldenberg**
                                                         Goldenberg Schneider LPA
                                                         4445 Lake Forest Drive, Suite 490
                                                         Cincinnati, OH 45242
                                                         513-345-8297
                                                         Fax: 513-345-8294
                                                         Email: jgoldenberg@gs-legal.com
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Joseph M. Lyon**
                                                         The Lyon Firm
                                                         2754 Erie Avenue
                                                         Cincinnati, OH 45208
                                                         513-381-2333
                                                         Fax: 513-766-9011
                                                         Email: jlyon@thelyonfirm.com
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Sean R. Matt**
                                                         Hagens Berman Sobol Shapiro LLP

1301 Second Avenue, Suite 2000
Seattle, WA 98101
206-623-7292
Fax: 206-623-0594
Email: sean@hbsslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
Hagens Berman Sobol Shapiro LLP
1301 2nd Avenue Suite 2000
Seattle, WA 98101
206-623-7292
Fax: 206-623-0594
Email: steve@hbsslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd B. Naylor**
Goldenberg Schneider LPA
4445 Lake Forrest Drive, Suite 490
Cincinnati, OH 45242
513-345-8291
Fax: 513-345-8294
Email: tnaylor@gs-legal.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Sherry Mason**                    represented by    **Christopher Pitoun**
*on behalf of themselves and all others*              (See above for address)
*similarly situated*                                  *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jeffrey S. Goldenberg**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Joseph M. Lyon**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Sean R. Matt**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd B. Naylor**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Camri Nelson**                                   represented by   **Christopher Pitoun**
*on behalf of themselves and all others*                            (See above for address)
*similarly situated*                                                *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Jeffrey S. Goldenberg**
                                                                    (See above for address)
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Joseph M. Lyon**
                                                                    (See above for address)
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Sean R. Matt**
                                                                    (See above for address)
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Steve W. Berman**
                                                                    (See above for address)
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Todd B. Naylor**
                                                                    (See above for address)
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Cameron Cunningham**                             represented by   **Christopher Pitoun**
*on behalf of themselves and all others*                            (See above for address)
*similarly situated*                                                *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Jeffrey S. Goldenberg**
                                                                    (See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph M. Lyon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean R. Matt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd B. Naylor**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Allison Brown**                    represented by    **Christopher Pitoun**
*on behalf of themselves and all others*              (See above for address)
*similarly situated*                                  *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jeffrey S. Goldenberg**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Joseph M. Lyon**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Sean R. Matt**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Steve W. Berman**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

**Todd B. Naylor**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Kia America, Inc.**<br>*a California corporation* | represented by | **Alice S Kim**<br>Jenner and Block LLP<br>515 South Flower Street Suite 3300<br>Los Angeles, CA 90071-2246<br>213-239-5100<br>Email: akim@jenner.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Kate Spelman**
Jenner and Block LLP
515 South Flower Street Suite 3300
Los Angeles, CA 90071-2246
213-239-5100
Fax: 213-239-5199
Email: KSpelman@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Hyundai Motor America**<br>*a California corporation* | represented by | **Alice S Kim**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Kate Spelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/19/2022 | 1 | COMPLAINT Receipt No: ACACDC-33843044 - Fee: $402, filed by Plaintiffs KATELYN MCNERNEY, CAMERON CUNNINGHAM, CAMRI NELSON, SHERRY MASON, ALLISON BROWN. (Attorney Christopher Pitoun added to party ALLISON BROWN(pty:pla), Attorney Christopher Pitoun added to party CAMERON CUNNINGHAM(pty:pla), Attorney Christopher Pitoun added to party SHERRY MASON(pty:pla), Attorney Christopher Pitoun added to party KATELYN MCNERNEY(pty:pla), Attorney Christopher Pitoun added to party CAMRI NELSON(pty:pla))(Pitoun, Christopher) (Entered: 08/19/2022) |

| 08/19/2022 | 2 | CIVIL COVER SHEET filed by Plaintiffs ALLISON BROWN, CAMERON CUNNINGHAM, SHERRY MASON, KATELYN MCNERNEY, CAMRI NELSON. (Pitoun, Christopher) (Entered: 08/19/2022) |
|---|---|---|
| 08/19/2022 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening),, 1 filed by Plaintiffs ALLISON BROWN, CAMERON CUNNINGHAM, SHERRY MASON, KATELYN MCNERNEY, CAMRI NELSON. (Pitoun, Christopher) (Entered: 08/19/2022) |
| 08/19/2022 | 4 | NOTICE of Interested Parties filed by Plaintiffs ALLISON BROWN, CAMERON CUNNINGHAM, SHERRY MASON, KATELYN MCNERNEY, CAMRI NELSON, (Pitoun, Christopher) (Entered: 08/19/2022) |
| 08/23/2022 | 5 | NOTICE OF ASSIGNMENT to District Judge Cormac J. Carney and Magistrate Judge John D. Early. (sh) (Entered: 08/23/2022) |
| 08/23/2022 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (sh) (Entered: 08/23/2022) |
| 08/23/2022 | 7 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (sh) (Entered: 08/23/2022) |
| 08/23/2022 | 8 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening),, 1 as to Defendants Hyundai Motor America, Kia America, Inc.. (sh) (Entered: 08/23/2022) |
| 08/23/2022 | 9 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Steve W. Berman. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (sh) (Entered: 08/23/2022) |
| 08/23/2022 | 10 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Sean R. Matt. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (sh) (Entered: 08/23/2022) |
| 08/23/2022 | 11 | |

| | | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Jeffrey S. Goldenberg. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (sh) (Entered: 08/23/2022) |
|---|---|---|
| 08/23/2022 | 12 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Todd Naylor. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (sh) (Entered: 08/23/2022) |
| 08/23/2022 | 13 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Joseph M. Lyon. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (sh) (Entered: 08/23/2022) |
| 08/25/2022 | 14 | APPLICATION of Non-Resident Attorney Jeffrey S. Goldenberg to Appear Pro Hac Vice on behalf of Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33876442) filed by Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson. (Attachments: # 1 Proposed Order) (Pitoun, Christopher) (Entered: 08/25/2022) |
| 08/25/2022 | 15 | APPLICATION of Non-Resident Attorney Todd B. Naylor to Appear Pro Hac Vice on behalf of Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33876554) filed by Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson. (Attachments: # 1 Proposed Order) (Pitoun, Christopher) (Entered: 08/25/2022) |

| 08/29/2022 | 16 | APPLICATION of Non-Resident Attorney Joseph M. Lyon to Appear Pro Hac Vice on behalf of Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33892064) filed by Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson. (Attachments: # 1 Proposed Order) (Pitoun, Christopher) (Entered: 08/29/2022) |
|---|---|---|
| 09/01/2022 | 17 | ORDER by Judge Cormac J. Carney: granting 14 Non-Resident Attorney Jeffrey S. Goldenberg APPLICATION to Appear Pro Hac Vice on behalf of Katelyn McNerney, Sherry Mason, Camri Nelson, Cameron Cunningham, and Allison Brown, designating Christopher R. Pitoun as local counsel. (lom) (Entered: 09/01/2022) |
| 09/01/2022 | 18 | ORDER by Judge Cormac J. Carney: granting 15 Non-Resident Attorney Todd B. Naylor APPLICATION to Appear Pro Hac Vice on behalf of Katelyn McNerney, Sherry Mason, Camri Nelson, Cameron Cunningham, and Allison Brown, designating Christopher R. Pitoun as local counsel. (lom) (Entered: 09/01/2022) |
| 09/01/2022 | 19 | ORDER by Judge Cormac J. Carney: granting 16 Non-Resident Attorney Joseph M. Lyon APPLICATION to Appear Pro Hac Vice on behalf of Katelyn McNerney, Sherry Mason, Camri Nelson, Cameron Cunningham, and Allison Brown, designating Christopher R. Pitoun as local counsel. (lom) (Entered: 09/01/2022) |
| 09/09/2022 | 20 | STRICKEN, see docket entry no. 33 - APPLICATION of Non-Resident Attorney Steve W. Berman to Appear Pro Hac Vice on behalf of Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33955259) filed by Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson. (Attachments: # 1 Proposed Order) (Pitoun, Christopher) Modified on 9/26/2022 (lom). (Entered: 09/09/2022) |
| 09/09/2022 | 21 | APPLICATION of Non-Resident Attorney Sean R. Matt to Appear Pro Hac Vice on behalf of Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33955300) filed by Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson. (Attachments: # 1 Proposed Order) (Pitoun, Christopher) (Entered: 09/09/2022) |
| 09/12/2022 | 22 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Steve W. Berman to Appear Pro Hac Vice on behalf of Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33955259) 20 . The following error(s) was/were found: Local Rule 5-4.3.4 Application not hand-signed. (lt) (Entered: 09/12/2022) |
| 09/15/2022 | 23 | STIPULATION for Extension of Time to File Answer to December 20, 2022 re Complaint (Attorney Civil Case Opening),, 1 filed by Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson. (Attachments: # 1 Proposed Order)(Pitoun, Christopher) (Entered: 09/15/2022) |

| | | |
|---|---|---|
| 09/16/2022 | 24 | ORDER by Judge Cormac J. Carney, Granting Stipulation to Extend Time to Answer (More than 30 days), 23 . Defendants Hyundai Motor America answer due 12/20/2022; Kia America, Inc. answer due 12/20/2022. (twdb) (Entered: 09/16/2022) |
| 09/16/2022 | 25 | Notice of Appearance or Withdrawal of Counsel: for attorney Kate Spelman counsel for Defendants Hyundai Motor America, Kia America, Inc.. Adding Kate T. Spelman as counsel of record for Defendants Kia America, Inc. and Hyundai Motor America for the reason indicated in the G-123 Notice. Filed by Defendants Kia America, Inc. and Hyundai Motor America. (Attorney Kate Spelman added to party Hyundai Motor America(pty:dft), Attorney Kate Spelman added to party Kia America, Inc. (pty:dft))(Spelman, Kate) (Entered: 09/16/2022) |
| 09/16/2022 | 26 | Notice of Appearance or Withdrawal of Counsel: for attorney Alice S Kim counsel for Defendants Hyundai Motor America, Kia America, Inc.. Adding Alice S. Kim as counsel of record for Defendants Kia America, Inc. and Hyundai Motor America for the reason indicated in the G-123 Notice. Filed by Defendants Kia America, Inc. and Hyundai Motor America. (Kim, Alice) (Entered: 09/16/2022) |
| 09/16/2022 | 27 | *Kia America, Inc.'s Certification and* NOTICE of Interested Parties filed by Defendants Hyundai Motor America, Kia America, Inc., identifying Kia Corporation and Hyundai Motor Company. (Spelman, Kate) (Entered: 09/16/2022) |
| 09/16/2022 | 28 | *Hyundai Motor America's Certification and* NOTICE of Interested Parties filed by Defendants Hyundai Motor America, Kia America, Inc., identifying Kia Corporation and Hyundai Motor Company. (Spelman, Kate) (Entered: 09/16/2022) |
| 09/16/2022 | 29 | NOTICE of Related Case(s) filed by Defendants Hyundai Motor America, Kia America, Inc.. Related Case(s): Central District of California Case No. 8:22-cv-01440, Central District of California Case No. 8:22-cv-01664, Central District of California Case No. 8:22-cv-01674, and U.S. Judicial Panel on Multidistrict Litigation MDL No. 3052 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Spelman, Kate) (Entered: 09/16/2022) |
| 09/20/2022 | 30 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 21-01-Related Case- filed. Related Case No: 8:22-cv-01440-DOC-(KESx). Case transferred from Judge Cormac J. Carney and Magistrate Judge John D. Early to Judge David O. Carter and Magistrate Judge Karen E. Scott for all further proceedings. The case number will now reflect the initials of the transferee Judge 8:22-cv-01548-DOC-(KESx). Signed by Judge David O. Carter (dve) (Entered: 09/20/2022) |
| 09/21/2022 | 31 | INITIAL STANDING ORDER FOLLOWING ASSIGNMENT OF CIVIL CASE TO JUDGE CARTER. (kdu) (Entered: 09/21/2022) |
| 09/23/2022 | 32 | ORDER by Judge David O. Carter: granting 21 Non-Resident Attorney Sean R. Matt APPLICATION to Appear Pro Hac Vice on behalf of Allison Brown, |

|  |  | Cameron Cunningham, Sherry Mason, Katelyn McNerney and Camri Nelson, designating Christopher Pitoun as local counsel. (lom) (Entered: 09/26/2022) |
|---|---|---|
| 09/23/2022 | 33 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN FILED DOCUMENT RE: APPLICATION of Non-Resident Attorney Steve W. Berman to Appear Pro Hac Vice on behalf of Plaintiffs Allison Brown, Cameron Cunningham, Sherry Mason, Katelyn McNerney, Camri Nelson 20 by Judge David O. Carter. The document is stricken. The Court orders counsel to resubmit application with corrections pursuant to the Clerk's office NOTICE of Deficiency (Dkt. 22). Resubmission due no later than September 30, 2022. (lom) (Entered: 09/26/2022) |
| 09/26/2022 | 34 | FOR COURT USE ONLY: STATISTICAL CORRECTION striking 20 Non-Resident Attorney APPLICATION to Appear Pro Hac Vice re Order 33 . (lom) (Entered: 09/26/2022) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/06/2022 07:06:23 | | |
| **PACER Login:** | jb0014 | **Client Code:** 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** 8:22-cv-01548-DOC-KES End date: 10/6/2022 |
| **Billable Pages:** | 9 | **Cost:** 0.90 |

STEVE W. BERMAN (*pro hac vice* to be filed)
SEAN R. MATT (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
christopherp@hbsslaw.com

*Counsel for Plaintiffs and Class*

[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KATELYN MCNERNEY, SHERRY MASON, CAMRI NELSON, CAMERON CUNNINGHAM, AND ALLISON BROWN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KIA AMERICA, INC., a California corporation, and HYUNDAI MOTOR AMERICA, a California corporation,<br><br>Defendants. | Case No.: 8:22-cv-01548<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.  NATURE OF THIS ACTION................................................................... 1

II.  JURISDICTION AND VENUE............................................................. 2

III.  PARTIES .............................................................................................. 2

    A.  Plaintiffs................................................................................. 2

    B.  Defendants.............................................................................. 6

IV.  FACTUAL ALLEGATIONS................................................................ 6

V.  CHOICE OF LAW ALLEGATIONS .................................................. 9

VI.  CLASS ACTION ALLEGATIONS..................................................... 10

VII.  CLAIMS ............................................................................................. 12

    A.  Claims Brought on Behalf of the Nationwide Class............................. 12

COUNT I BREACH OF IMPLIED WARRANTY (BASED ON
    CALIFORNIA LAW).................................................................12

COUNT II VIOLATIONS OF MAGNUSON MOSS WARRANTY ACT,
    15 U.S.C. §§ 2301....................................................................16

COUNT III UNJUST ENRICHMENT.................................................19

COUNT IV VIOLATIONS OF THE CALIFORNIA CONSUMER
    LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*)............20

COUNT V VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION
    LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)......................24

COUNT VI FRAUD BY CONCEALMENT
    (BASED ON CALIFORNIA LAW)............................................26

COUNT VII BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (CAL. COM. CODE § 2314).........................29

    B.  Claims Brought on Behalf of the Illinois Class..........................31

COUNT VIII VIOLATION OF THE ILLINOIS CONSUMER FRAUD
    AND DECEPTIVE BUSINESS PRACTICES ACT
    (815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A)...........................31

COUNT IX BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY (810 ILCS §§ 5/2-314 AND 5/2A-212)…………...32

    C.    Claims Brought on Behalf of the Ohio Class…………………………33

COUNT X VIOLATIONS OF THE CONSUMER SALES PRACTICES
    ACT (OHIO REV. CODE §§ 1345.01, ET SEQ)……………………………33

COUNT XI BREACH OF IMPLIED WARRANTY IN TORT
    (BASED ON OHIO LAW)………………………………………………...35

PRAYER FOR RELIEF ................................................................................. 36

JURY DEMAND ........................................................................................... 36

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.     NATURE OF THIS ACTION

1.     Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased or leased 2011-2022 Kia vehicles or 2015-2022 Hyundai vehicles equipped with traditional "insert-and-turn" steel key ignition systems (the "Vehicles or "Class Vehicles") manufactured by defendant Kia America, Inc. ("Kia") or Hyundai Motor America ("Hyundai") (collectively, "Defendants").  Unlike most vehicles, the Class Vehicles are not equipped with an "immobilizer" preventing them from being started unless a code is transmitted from the Vehicle's specific smart key.

2.     This security vulnerability (the "Defect") makes the Vehicles incredibly easy to steal, allowing thieves to steal Vehicles by simply opening the steering columns and using a common USB charging cord or similar metal object to start the engine.

3.     Viral videos on TikTok and YouTube give step-by-step instructions on how to steal Class Vehicles without a key, and reports of stolen Kia and Hyundai Vehicles have skyrocketed across the country. In fact, the "Kia Challenge," widely shared on social media platforms, dares people to break in and then use a USB cord to start the cars. The videos show teens and young adults going for joy rides and in some cases, even abandoning or crashing the cars. The incidents have turned dangerous, with suspects and bystanders being seriously injured or killed following unsafe driving and crashes related to the thefts.

4. Defendants have long known or should have known of the Defect from multiple sources. According to Police, thieves have been exploiting a security flaw in Kia vehicles made since 2011 and Hyundai vehicles made since 2015. Yet Defendants failed to disclose and actively concealed the Defect from the public, and continue to manufacture, distribute, and sell the Vehicles without disclosing the Defect.

5. Plaintiffs bring this action for violation of relevant state consumer protection acts and for breach of implied warranties on behalf of a nationwide class and state classes of Vehicle lessees and owners. Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendants are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants are citizens of California with headquarters located in this district.

## III. PARTIES

**A.** **Plaintiffs**

8. Katelyn McNerney is an Illinois citizen residing in Crystal Lake, Illinois.

9. Plaintiff McNerney leased a new 2022 Kia Seltos in August 2021 from Gary Lang Kia in McHenry, Illinois. Plaintiff McNerney paid a $2,000.00 down payment and is paying $399.99 a month to lease the Vehicle.

10. On July 27, 2022, Plaintiff McNerney's Vehicle was stolen in Milwaukee, Wisconsin.

11.     When the Vehicle was subsequently located, its steering column cladding was found removed. The thieves left behind the USB cord they used to steal the Vehicle. There were paint marks along the sides of the vehicle, the back window was smashed out, and glass was everywhere inside the Vehicle. All told, the Vehicle suffered approximately $4,600.00 in damage. Plaintiff McNerney's insurer will cover the costs of repair except for her $500 deductible. However, many of the parts that are needed to repair the Vehicle are back-ordered so it will be in the shop for at least a month.

12.     Plaintiff McNerney has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with Defect including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

13.     Sherry Mason is a citizen of Ohio residing in Cincinnati, Ohio.

14.     Plaintiff Mason purchased a new 2020 Kia Sorrento from Jeff Wyler Kia in Fairfield, Ohio.

15.     Plaintiff Mason's Vehicle was stolen on July 14, 2022.  During the theft, the Vehicle's alarm did not activate.

16.     The thieves trashed the inside of Plaintiff Mason's Vehicle including under the steering wheel column where the thieves ripped off the steering column cladding to start the Vehicle.

17.     While her Vehicle is still being repaired, the estimated cost to fix her Vehicle is approximately $1,500.  Plaintiff Mason will have to pay her auto insurance policy's $1,000 deductible. Plaintiff Mason has also had to pay car rental expenses while her Vehicle was being repaired.

18.     Plaintiff Mason learned from the repair facility representative that there is nationwide parts shortage for the steering column cladding because of the extremely high number of Vehicle thefts and the resulting destruction of this part.  According to the repair facility, there is at least a 6-month waiting period for the replacement part.

19.     Plaintiff Mason has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with Defect including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

20.     Cameron Cunningham is a citizen of Ohio.

21.     Plaintiff Cunningham owned a 2013 Kia Optima.

22.     Plaintiff Cunningham's Vehicle was stolen on June 24, 2022.

23.     The thief crashed Plaintiff Cunningham's Vehicle into a tree, and the Vehicle was a total loss. Prior to the theft of his Vehicle, the Blue Book value of Plaintiff Cunningham's Vehicle was $4,800.

24.     Because Plaintiff Cunningham only had liability insurance on the Vehicle, there is no insurance coverage to reimburse Plaintiff Cunningham for the total loss of the Vehicle. Plaintiff Cunningham also paid a $500 towing charge to have the totaled Vehicle towed back to his Mother's home.

25.     In addition, in the weeks prior to the theft of his Vehicle, Plaintiff Cunningham paid about $1,300 for a new battery and alternator. Because he had no vehicle following the theft of his 2013 Kia Optima, Plaintiff Cunningham had to purchase airfare to fly to Atlanta, Georgia.

26.     Plaintiff Cunningham has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with Defect including, but not limited to, his total loss of the Vehicle, towing charges, and overpayment and diminished value of the Vehicle.

27.     Camri Nelson is an Ohio citizen residing in Cincinnati, Ohio.

28.     Plaintiff Nelson purchased a new 2019 Kia Forte from Taylor Kia located in Lima Ohio.

29.     Plaintiff Nelson's Vehicle was stolen on July 30, 2022.

30.     While the Vehicle was recovered by the police the next day, the Vehicle was damaged as the window was smashed and the steering column cladding was destroyed.

31.     While Plaintiff Nelson has insurance to cover the damage, she will be responsible for and will have to pay the insurance policy's $500 deductible.

32.     Plaintiff Nelson has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with Defect including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

33.     Allison Brown is a citizen of the state of Ohio and resides in Cincinnati, Ohio.

34.     Plaintiff Brown owns a 2016 Hyundai Sonata.

35.     Plaintiff Brown's Vehicle was stolen on June 30, 2022 and was recovered by the police on July 1, 2022.

36.     Plaintiff Brown's Vehicle was damaged as a result of the theft including the steering column cladding.

37.     Plaintiff Brown's Vehicle is sitting at a Jeff Wyler Hyundai awaiting repairs.  According to a representative at Jeff Wyler Hyundai, the repair process is being significantly delayed because there is a nationwide parts shortage to accomplish the repair due to the number of Vehicles being stolen.

38.     While Plaintiff Brown has insurance to cover the damage, she will be responsible for and will have to pay the insurance policy's $500 deductible.  Plaintiff Brown has also incurred expenses for rental cars, Ubers, and has missed work due to not having transportation.

39.     Plaintiff Brown has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with Defect including, but not limited to, her total loss of the Vehicle, towing charges, and overpayment and diminished value of the Vehicle.

**B.     Defendants**

40.     Defendant Kia America, Inc. is a California corporation with a principal place of business at 111 Peters Canyon Road, Irvine, California 92606.

41.     Defendant Hyundai Motor America is a California corporation with a principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708.

## IV.     FACTUAL ALLEGATIONS

42.     Immobilizers have been proven to deter auto theft. Indeed, a 2016 study reflects that the use of immobilizers lowered the overall rate of car thefts by 40% over a ten-year period.[1]

43.     Recognizing the value of immobilizers as an anti–theft device, countries across the globe require immobilizers to be installed as standard equipment in new vehicles. For example, the European Union has required immobilizers as a standard feature for all new vehicles since 1998, Australia since 2001, and Canada since 2007.[2]

44.     Kia and Hyundai, however, have largely refused to implement immobilizers as standard technology in virtually all of their vehicle lines. Defendants have long been aware of the anti–theft benefits attendant to making immobilizers a standard feature on their vehicles based on the immobilizer mandates of other countries in which Kia and Hyundai sell their vehicles. Kia and Hyundai sell virtually identical vehicles to the Class Vehicles in countries with immobilizer requirements, but have largely failed to equip Vehicles sold in the United States with the same immobilizer technology designed to prevent auto theft.

45.     Kia and Hyundai likely refused to implement this technology as a standard feature in the Class Vehicles as a cost–saving measure to improve their profitability.

---

[1] Jan C. van Ours & Ben Vollaard, The Engine Immobilizer: A Non–Starter For Car Thieves, THE ECONOMIC JOURNAL, Vol. 126, No. 593, 1264, 1283 (June 2016).

[2] *Id*. at 1265.

46.     Given the ease with which Class Vehicles can be stolen, the United States has experienced a swell in reported car thefts of Vehicles. For instance, in Milwaukee, where Plaintiff McNerney's Vehicle was stolen, two of the three vehicle makes accounting for nearly 60% of vehicle thefts are Kia and Hyundai.[3]

47.     The cost to repair stolen Vehicles can be substantial. The cost to repair a window and steering column on a Class Vehicle alone can exceed $3,000.[4] Because cars taken on joy rides often experience further damage, the owner's total cost to repair their vehicle often exceed $10,000.[5]

48.     Moreover, due to the alarming rate in which Class Vehicles are being stolen, Defendants' authorized dealers and repair shops are experiencing shortages of the parts needed to repair them. Some parts are backordered up to eight weeks[6]

49.     The federal government has long recognized that "stolen cars constitute a major hazard to life and limb on the highways." 33 Fed. Reg. 6, 471, (Apr. 27, 1968). Moreover, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." *Id*.

50.     The rate at which these Vehicles are being stolen is so high that certain auto insurance companies are either refusing to insure these Vehicles or have raised the rates.  The following statement from Progressive was recently released to ABC 7 News Denver:

---

[3]  https://www.tmj4.com/news/local-news/honda-hyundai-kias-among-milwaukees-most-stolen-cars-police-warn (last accessed Aug. 17, 2022); https://www.cbs58.com/news/most-stolen-cars-in-milwaukee-kia-hyundai-and-honda-models (last accessed Aug. 19, 2022).

[4] https://www.jsonline.com/story/news/solutions/2021/02/03/motorvehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/ (last accessed Aug. 17, 2022).

[5] *Id*.

[6] *Id*.

> We're committed to providing affordable insurance solutions for consumers based on the particular level of risk while also ensuring our policies are accurately priced. Due to the theft risk that some Hyundai and Kia vehicles present, in many cases it makes these vehicles difficult to insure, so we have adjusted our acceptance criteria for new business on some of these models. We'll continue to monitor how this issue plays out, and are hopeful to be able to revisit our decision if the theft risk diminishes and community awareness improves.[7]

51. Other harms caused by the auto theft include increased insurance premiums foisted upon the victims of these crimes, other property that is stolen or damaged in the process, and the diminution in value of the Class Vehicles being targeted.

52. Notably, the Vehicles fail to comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114, which requires: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both."

53. If the Vehicles were manufactured to comply with this FMVSS, they would not be stolen at such alarming rates because when the key is removed from the starting system, both steering and forward self-mobility would be prevented.

54. Recognizing the gravity of the problem, Defendants have announced that all new model vehicles will be equipped with an immobilizer.[8] But this change offers little consolation to the thousands of consumers whose defective Vehicles remain vulnerable to theft.

55. Defendants have long known the security benefits offered by immobilizers. Indeed, Defendants have been selling virtually identical vehicles equipped with immobilizers overseas for decades, and have even incorporated immobilizers as

---

[7] https://www.theautopian.com/progressive-reportedly-wont-insure-some-kias-and-hyundais-because-theyre-too-easy-to-steal/ (last accessed August 18, 2022).

[8] https://urbanmilwaukee.com/2021/07/24/two-thirds-of-all-milwaukee-auto-thefts-are-kia-and-hyundai-vehicles/ (last accessed Aug. 17, 2022).

standard technology into select higher–end models, but Defendants have simply refused to follow their competitors by making it standard technology on their lower–cost brands.

56. The ease with which the Class Vehicles may be stolen is not surprising to Defendants. Upon information and belief, Defendants have known of the unusually high rate of thefts experienced by Class Vehicles for many years, through scores of customer complaints relayed through their dealers.

57. Moreover, Defendants must have known how these Vehicles were being stolen because they sell replacement parts to dealerships and autobody shops around the country that are needed to repair the stolen Vehicles. Because the Vehicles are being stolen in the same way, Defendants would have experienced a spike in orders for the same replacement parts.

58. But Defendants continued to sell the Class Vehicles, flooding the market with more unsafe cars susceptible to theft. Only when the problem became too large to ignore did Defendants decide to introduce immobilizer technology to all future new vehicles going forward.

59. Meanwhile, the Class members who have previously purchased the Vehicles remain vulnerable.

## V.     CHOICE OF LAW ALLEGATIONS

60. Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint. Under California' choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

61. Because Defendants are headquartered—and made all decisions relevant to these claims—in California, California has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state.  Application of California law to Defendants and the claims of all Class members would not be arbitrary or unfair.

62.     Plaintiffs plead claims on behalf of a nationwide class because the laws for each state do not vary materially for these claims.  Alternatively, Plaintiffs plead state law classes claims as indicated below.  This Complaint refers to the nationwide and state classes collectively as the "Class," unless noted otherwise.

## VI.     CLASS ACTION ALLEGATIONS

63.     Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

64.     Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall be defined as follows:

> All persons and entities nationwide that purchased or leased a Class Vehicle (the "Nationwide Class").

> All persons and entities that purchased or leased a Class Vehicle in the State of Illinois (the "Illinois Class").

> All persons and entities that purchased or leased a Class Vehicle in the State of Ohio (the "Ohio Class").

(Collectively, the "Class" unless otherwise noted.)

65.     Excluded from the Class are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

66.     Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

67.     While the exact number of Class members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants and governmental

officials.  Upon information and belief, Defendants have sold and leased many thousands of Vehicles nationwide during the relevant time period.  Therefore, the Class members are so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

68.  Common questions of law and fact exist as to all Class members. These common legal and factual questions include:

(a)  Whether Defendants designed, advertised, sold, and placed the Class Vehicles into the stream of commerce;

(b)  Whether the Class Vehicles were sold with the Defect described above;

(c)  Whether the Defect in the Class Vehicles is a safety and/or security defect that created a foreseeable risk of harm to Plaintiffs and the Class;

(d)  Whether Defendants breached implied warranties made to the Class members;

(e)  Whether Defendants knew about the Defect and, if so, how long Defendants have known about the Defect;

(f)  Whether Defendants concealed the Defect;

(g)  Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws asserted herein;

(h)  Whether the Class members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution of value and deprivation of the benefit of the bargain; and

(i)  Whether the Class members are entitled to injunctive relief.

69.  Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class member have a Vehicle with the same Defect.

70.  Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class members.  Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Therefore, the interests of the Class members will be fairly and adequately protected.

71.     A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy.  In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendants.  It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.  Individualized litigation presents a potential for inconsistent or contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties.  Defendants' records and the records available publicly will easily identify the Class members.  The Defect is common to all Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class members.  Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court

72.     A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendants have acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

## VII.   CLAIMS
### A.      Claims Brought on Behalf of the Nationwide Class
#### COUNT I
#### BREACH OF IMPLIED WARRANTY
#### (BASED ON CALIFORNIA LAW)

73.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

74.     This count is brought under California law on behalf of a Nationwide Class.

75.     As detailed herein, Defendants designed, manufactured, distributed, and sold the Class Vehicles knowing that consumers like Plaintiffs and the Class would purchase these products from Kia and Hyundai's authorized dealers as a means of transportation

76.     As merchants of the Class Vehicles, Kia and Hyundai warranted to the Plaintiffs and the Class that the Class Vehicles were fit for the ordinary purpose for which they are used.

77.     Plaintiffs relied on this warranty to their detriment.

78.     The Class Vehicles are not "merchantable" because they are not reasonably fit for the ordinary purpose for which they are sold, which is to provide safe, reliable transportation. To the contrary, the Class Vehicles pose a substantial safety hazard because the Defect renders them vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

79.     Sufficient privity of contract exists to assert this implied warranty claim.

80.     Defendants market and advertise the sale of the Class Vehicles in various media outlets across the United States, including to the Plaintiffs and the Class.

81.     Defendants advertise their authorized dealer network on their respective websites and task them with administering the promotional material and warranty information for new Class Vehicles to prospective consumers throughout the nation. Through Defendants' websites, consumers obtain information about vehicles; design specific vehicles to meet his or her needs; obtain information about the value of trade–in vehicles; request additional marketing materials; and request quotes for vehicle. Defendants then send these consumers to "authorized dealers" to consummate sales and leases.

82.     Defendants control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use

their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Class Vehicles.

83. Plaintiffs purchased and/or leased their respective Vehicles from "authorized dealers" with the understanding that these dealers were acting on behalf of Defendants.

84. The sole and express purpose that each authorized Kia and Hyundai dealer has when it acquires the vehicles from Kia and Hyundai is to immediately re–sell them to the end–users like Plaintiffs and the Class members.

85. Defendants' conduct, and the conduct of their respective dealers, thus create a justifiable belief on the part of Plaintiffs and Class members that the dealers are agents of Kia and/or Hyundai, which the Plaintiffs relied on to their detriment.

86. Thus, each Kia and Hyundai dealership operates as the actual and/or apparent agent of the Defendants–manufacturers named herein, which satisfies any privity requirement.

87. Moreover, the purchase and/or lease agreements between the Plaintiffs and their respective dealers were entered directly and primarily for Kia and Hyundai's benefit.

88. Likewise, any contract whereby Defendants' authorized dealers acquire the Class Vehicles from Defendants to resell to the end–user is also for the express benefit of Plaintiffs and the Class. On information and belief, Defendants' authorized dealers make little money on the actual sale or lease of new vehicles, including the Class Vehicles.

89. Plaintiffs and the members of the Class therefore have standing to assert implied warranty claims against Defendants by virtue of their status as intended, third–

party beneficiaries of these dealership sales agreements, which further satisfies the privity requirement.

90.    Privity thus exists between Defendants on the one hand, and the Plaintiffs and the Class on the other by virtue of the express warranties provided through their purchase and/or lease agreements.

91.    Moreover, the Magnuson–Moss Warranty Act ("MMWA") provides that when a manufacturer offers a written warranty, it may limit the duration of an implied warranty to the duration of an express warranty, but it cannot disclaim implied warranties all together. *See* 15 U.S.C. § 2308(a) ("No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer Product. . . ."). A manufacturer should not be permitted to avoid this prohibition by claiming an ostensible lack of privity when the manufacturer itself chose its distribution model.

92.    Imposing a rigid privity requirement in this case would permit Defendants to escape both the letter and spirit of the MMWA through their preferred distribution scheme; one in which the only parties in strict privity that can assert an implied warranty claim are Defendants' own dealers who would never need to assert the claim in the first instance.

93.    Consequently, any rigid application of a state law privity requirement would violate the Supremacy Clause and be preempted. See U.S. Const. art. VI ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

94.    As a direct and proximate result of Defendants' breach of these implied warranties, Plaintiffs and the Class have suffered damages, injury in fact, and

ascertainable loss in an amount to be determined at trial. These damages include, but are not limited to, overpayment for the Class Vehicles, insurance deductibles to get the stolen Class Vehicles repaired, the cost to replace other property stolen in connection with the thefts of Vehicles, the loss of use of the Vehicles, costs associated with the replacement of the totaled Class Vehicles, and/or the diminution in value of the stolen Class Vehicles that were totaled.

95.     The circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose, such that the Plaintiffs and the Class may seek alternative remedies. Indeed, these warranties have denied the Plaintiffs and the Class the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

96.     Further, Kia and Hyundai's exclusion and/or limitation of consequential damages in their New Vehicle Limited Warranties is unconscionable and void for the reasons stated above.

97.     Accordingly, the Plaintiffs and the Class are entitled to damages flowing from Defendants' breach of their implied warranties, as well as all consequential and incidental damages resulting from this breach.

98.     Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

**COUNT II**
**VIOLATIONS OF MAGNUSON MOSS WARRANTY ACT,**
**15 U.S.C. §§ 2301**

99.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

100. Plaintiffs bring this claim on behalf of the Nationwide Class.

101. Congress enacted the MMWA, 15 U.S.C. §§ 2301 et seq., to address the widespread misuse of merchants' express warranties and to protect consumers from deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty. *Id.* § 2310(d)(1).

102. The Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

103. Plaintiffs and members of the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

104. Kia and Hyundai are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively

105. In connection with the sale and/or lease of the Class Vehicles, Defendants supplied Plaintiffs and the Class with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

106. 15 U.S.C. § 2310(d)(1) provides that "a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state."

107. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

108. Defendants provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Vehicles were fit for their ordinary purpose and would pass without

objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

109.   Defendants breached its implied warranties, as described herein, and is therefore liable to Plaintiffs under 15 U.S.C. § 2310(d)(1). The Defect rendered the Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

110.   Plaintiffs used their respective Class Vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendants' conduct or by operation of law.

111.   Plaintiffs and the Class seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein. These damages include, but are not limited to, overpayment for the Class Vehicles, insurance deductibles to get the stolen Class Vehicles repaired, the cost to replace other property stolen in connection with the thefts of their Vehicles, the loss of use of their respective Vehicles, costs associated with the replacement of the totaled Class Vehicles, and/or the diminution in value of a stolen Class Vehicles that were not totaled.

112.   The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Plaintiffs seek reformation of Defendants' respective written warranties to comport with their obligations under the MMWA and with consumers' reasonable expectations. Plaintiffs also seek to enjoin Defendants from acting unlawfully as alleged herein.

113.   Finally, Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of this case. The MMWA provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2).

## COUNT III
## UNJUST ENRICHMENT

114. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein. This claim is brought under California law on behalf of the Nationwide class.

115. This claim is pleaded in the alternative to any contract–based claims asserted by the Plaintiffs noted above. *See* Fed. R. Civ. P. 8(d)(2). Moreover, a claim for unjust enrichment is properly brought where, as here, Defendants contend that their warranties do not cover damages stemming from the Defect.

116. Plaintiffs bought and/or leased their Vehicles new, directly from a Kia or Hyundai dealership.

117. Every year, Defendants make millions of dollars in revenue selling and leasing new Vehicles through their respective dealer networks across the United States.

118. Plaintiffs allege upon information and belief that consumers are permitted to buy Vehicles directly from Defendants, but that the proceeds flow through various dealers and/or related companies (e.g., their finance companies) back to Defendants.

119. Accordingly, the purchase and lease of new Vehicles confers a direct monetary benefit on Defendants.

120. Used Vehicle purchasers also conferred a benefit on Defendants. Defendants profit off the replacement parts needed to service and repair these Vehicles.

121. Further, as more used Vehicles stay in the stream of commerce, Defendants' brand awareness rises, which is of substantial value to vehicle manufacturers. Defendants have touted their vehicles as not only reliable and durable, but also as having lower depreciation rates and ownership costs over their useful lives.[9]

122. Defendants tout these benefits to promote the sale and lease of their new cars for pecuniary benefit.

---

[9] https://www.kiamedia.com/us/en/media/pressreleases/15857/kia-sweeps-intellichoice-cpo-awards (last accessed Aug. 19, 2022)

123.   Accordingly, Plaintiffs and the Class conferred a benefit upon Defendants, whether directly, indirectly, or through one or more affiliate entities.

124.   Defendants knew and appreciated the benefits conferred upon them through the sale of the Class Vehicles to Plaintiffs and members of the Class.  Many of the Vehicles were financed through Kia Motor Finance or Hyundai Motor Finance

125.   Notably, federal law mandates that Kia and Hyundai maintain records of first–time purchasers of Class Vehicles, *see* 49 U.S.C. § 30117(b), and remain able to identify the owners of their used cars, including the owners of certain Class Vehicles, to comply with recall notification procedures under applicable law. *See id*. § 30119(d)(1)(A).

126.   Defendants have long represented to the consuming public that the Class Vehicles are safe, reliable, and durable even though they knew of the Defect. Not only did Defendants fail to equip the Class Vehicles with an industry standard anti–theft device, they failed to comply with FMVSS 114.

127.   As a result of Defendants' wrongful conduct, unsuspecting consumers like Plaintiffs and the Class overpaid for the Vehicles and incurred additional costs, thereby earning more profit.

128.   Defendants continued to market the Class Vehicles despite knowing that they were unsafe and susceptible to theft, foisting the cost they would otherwise have been forced to bear through a voluntary recall or otherwise on Plaintiffs and the Class.

129.   Under these circumstances, it would be unjust to allow Defendants to accept and retain the benefits identified herein without paying Plaintiffs and the Class them for their value.

### COUNT IV
### VIOLATIONS OF THE CALIFORNIA CONSUMER
### LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *ET SEQ.*)

130.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

131.   Plaintiffs bring this claim as part of the Nationwide Class.

132.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

133.   The Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

134.   Plaintiffs and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other Class members, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

135.   As alleged herein, Defendants made misleading representations and omissions concerning the benefits, performance, and safety of the Vehicles.

136.   In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Defendants failure to disclose its knowledge of the Defect.

137.   Defendants' conduct as described herein was and is in violation of the CLRA. Defendants' conduct violates at least the following enumerated CLRA provisions:

      i.   Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

      ii.   Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

      iii.   Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

      iv.   Cal Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

138.  Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with an intent to mislead Plaintiffs and Class members.

139.  In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Defendants' failure to disclose their knowledge of the Defect.

140.  Plaintiffs and other Class members had no way of knowing Defendants' representations were false, misleading, and incomplete or knowing the true nature of the Defect.

141.  As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known Defect. Plaintiffs and other Class members did not, and could not, unravel Defendants' deception on their own.

142.  Defendants knew or should have known their conduct violated the CLRA.

143.  Defendants owed Plaintiffs and the Class members a duty to disclose the truth about the Defect because the defect created a safety hazard and Defendants:

      i.      Possessed exclusive knowledge of the Defect,

      ii.     Intentionally concealed the foregoing from Plaintiffs and Class members; and/or

      iii.    Made incomplete representations in advertisements and on its website, failing to warn the public of the Defect.

144.  Defendants had a duty to disclose that the Vehicles were fundamentally flawed as described herein, because the Defect created a safety hazard, and Plaintiffs and the other Class members relied on Defendants' material misrepresentations and omissions regarding the features of the Vehicles.

145.  Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

146.  Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of

Defendants' conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

147.   Defendants' violations cause continuing injuries to Plaintiffs and other Class members.

148.   Defendants' unlawful acts and practices complained of herein affect the public interest.

149.   Defendants knew of the Defect, and that the Vehicles were materially compromised by it.

150.   The facts concealed and omitted by Defendants from Plaintiffs and other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Vehicle or pay a lower price. Had Plaintiffs and the other Class members known about the defective nature of the Vehicles, they would not have purchased the Vehicles or would not have paid the prices they paid.

151.   Plaintiffs' and the other Class members' injuries were proximately caused by Defendants' unlawful and deceptive business practices.

152.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the Defect.

153.   Plaintiffs sent out a notice letter on August 18, 2022.

154.   Pursuant to Cal. Civ. Code § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiffs intend to amend this Complaint to add claims under the Cal. Civ. Code for:

      i.     Actual damages;

      ii.    Restitution of money to Plaintiffs and Class members, and the general public;

      iii.   Punitive damages;

iv.　An additional award of up to $5,000 to each Plaintiffs and any Class member who is a "senior citizen";

v.　Attorneys' fees and costs; and

vi.　Other relief that this Court deems proper.

**COUNT V**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.)**

155.　Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

156.　Plaintiffs bring this claim on behalf of the Nationwide Class.

157.　California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

158.　Defendants' conduct, as described herein, was and is in violation of the UCL. Defendants conduct violates the UCL in at least the following ways:

i.　By failing to disclose that the Defect;

ii.　By selling and leasing Vehicles that suffer from the Defect;

iii.　By knowingly and intentionally concealing from Plaintiffs and the other Class members the Defect;

iv.　By marketing Vehicles as safe, convenient, and defect free, with cutting edge technology, all while knowing of the Defect; and

v.　By violating other California laws, including California consumer protection laws.

159.　Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with intent to mislead Plaintiffs and the other Class members.

160.     In purchasing or leasing the Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose the Defect.

161.     Plaintiffs and the other Class members reasonably relied upon Defendants' false misrepresentations and omissions. They had no way of knowing that Defendants' representations were false, misleading, and incomplete. As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known defect. Plaintiffs and the other Class members did not, and could not, unravel Defendants' deception on their own.

162.     Defendants knew or should have known that its conduct violated the UCL.

163.     Defendants owed Plaintiffs and the other Class members a duty to disclose the truth about the Defect because the Defect created a safety hazard and Defendants:

        i.     Possessed exclusive knowledge of the Defect;

        ii.     Intentionally concealed the foregoing from Plaintiffs and the other Class members; and/or

        iii.     Made incomplete representations by failing to warn the public or to publicly admit the Defect.

164.     Defendants had a duty to disclose the Defect, because Plaintiffs and the other Class members relied on Defendants' material misrepresentations and omissions.

165.     Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

166.     Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

167.     Defendants' violations cause continuing injuries to Plaintiffs and Class members.

168.   Defendants' unlawful acts and practices complained of herein affect the public interest.

169.   Defendants' misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases of their Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased these Vehicles, would not have purchased these Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain the Defect and did not fail to live up to industry standards.

170.   Accordingly, Plaintiffs and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Defendants' misrepresentations and omissions.

171.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

### COUNT VI
### FRAUD BY CONCEALMENT
### (BASED ON CALIFORNIA LAW)

172.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

173.   Plaintiffs bring this claim on behalf of the Nationwide Class.

174.   Defendants intentionally concealed the Defect.

175.   Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles they were selling had no significant defects, that the Vehicles were reliable, and would perform and operate properly.

176.   Defendants knew about the Defect when these representations were made.

177. The Vehicles purchased by Plaintiffs and the other Class members contained the Defect.

178. Defendants had a duty to disclose Defect as alleged herein, because the Defect created a safety hazard and Plaintiffs and the other Class members relied on Defendants' material representations.

179. As alleged herein, at all relevant times, Defendants have held out the Vehicles to be free from defects. Defendants touted and continue to tout the many benefits and advantages of the Vehicles, but nonetheless failed to disclose important facts related to the Defect. This made Defendants' other disclosures about the Vehicles deceptive.

180. The truth about the Defect was known only to Defendants; Plaintiffs and the other Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

181. Plaintiffs and the other Class members reasonably relied upon Defendants' deception. They had no way of knowing that Defendants' representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Vehicles.

182. Defendants' false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

183. Defendants had a duty to disclose the Defect and violations with respect to the Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

184.   Defendants also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with their Vehicles, without telling consumers that the Vehicles had a fundamental Defect that would affect the safety, quality, and performance of the Vehicle.

185.   Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiffs and Class members.

186.   Defendants have still not made full and adequate disclosures and continue to defraud Plaintiffs and Class members by concealing material information regarding the Defect.

187.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

188.   Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they own or lease Vehicles that are diminished in value as a result of Defendants' concealment of the true quality of the Vehicles' security systems. Had Plaintiffs and Class members been aware of the Defect in the Vehicles, and the Defendants' disregard for the truth, Plaintiffs and Class members would have paid less for their Vehicles or would not have purchased or leased them at all.

189.   The value of Plaintiffs' and Class members' Vehicles have diminished as a result of Defendants' fraudulent concealment of the Defect, which has made any

reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

190.    Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

191.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Defendants made to them, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

192.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

193.    Plaintiffs bring this claim on behalf of the Nationwide Class.

194.    Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2104.

195.    A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

196.    Defendants marketed the Vehicles as safe and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase or lease the Vehicles.

197.    Plaintiffs and other Class members purchased or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Vehicles.

198.   Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

199.   Because of the Defect, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

200.   Defendants knew about the Defect, allowing Defendants to cure their breach of its warranty if they chose.

201.   Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other Class members, and Defendants knew of the defect at the time of sale.

202.   Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

203.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

**B.     Claims Brought on Behalf of the Illinois Class**

**COUNT VIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A)**

204.   Plaintiff McNerney ("Plaintiff" for purposes of all Illinois Class Counts) incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

205.   Plaintiff brings this claim on behalf of the Illinois Class.

206.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

207.   Defendant Kia is a "person" as that term is defined in 815 ILCS 505/1(c).

208.   Plaintiff and Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

209.   Defendant Kia violated the Illinois CFA by concealing and failing to disclose the Defect.  Defendant had an ongoing duty to Plaintiffs and the Illinois Class to refrain from unfair and deceptive practices under the Illinois CFA in the course of its business.

210.   Plaintiffs and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Kia's concealment, misrepresentations, and/or failure to disclose material information.

211.   Pursuant to 815 ILCS 505/10a(a), Plaintiff seeks monetary relief against Defendant Kia in the amount of actual damages as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

212.   Plaintiff also seeks an order enjoining Defendant Kia's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, *et seq*.

## COUNT IX
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (810 ILCS §§ 5/2-314 AND 5/2A-212)

213.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

214.    Plaintiff brings this claim on behalf of the Illinois Class.

215.    Defendant Kia was at all relevant times a "merchant" with respect to motor vehicles under 810 ILCS §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

216.    The Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS §§ 5/2-105(1) and 5/2A-103(1)(h).

217.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 ILCS §§ 28-2-314 and 28-12-212.

218.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in that the Defect rendered them unsafe, inconvenient, and imperfect such that Plaintiff and the other Illinois Class members would not have purchased the Vehicles had they known of the Defect.

219.    Defendant Kia knew about the Defect at the time of purchase, allowing it to cure their breach of warranty if it chose.

220.    Defendant Kia was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

221.    As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability, Plaintiff and the other Illinois Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**C.** **Claims Brought on Behalf of the Ohio Class**

## COUNT X
## VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT
### (OHIO REV. CODE §§ 1345.01, ET SEQ)

222. Plaintiffs Mason, Nelson, Cunningham, and Brown ("Plaintiffs," for purposes of all Ohio Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

223. Plaintiffs bring this claim on behalf of the Ohio Class.

224. Plaintiffs and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA").

225. Defendants are "suppliers" as defined by the OCSPA. Plaintiffs' and the other Ohio Class members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the OCSPA.

226. By failing to disclose and actively concealing the Defect, Defendants engaged in deceptive business practices prohibited by the OCSPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

227. Defendants knew that the Vehicles were defectively manufactured, and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about the Defect despite having a duty to do so.

228. Defendants owed Plaintiff a duty to disclose the Defect, because Defendants:

    i) Possessed exclusive knowledge of the Defect rendering the Class Vehicles more unreliable and less safe than similar vehicles;

    ii) Intentionally concealed the Defect; and/or

    iii) Made incomplete representations about the characteristics and performance of the Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

229. Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs, about the true performance and

characteristics of the Vehicles.

230.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this Complaint, including, but not limited to, the failure to honor both implied warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA. These cases include, but are not limited to, the following:

i)    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

ii)   *State ex rel. Betty D. Montgomery v. Honda Motor Co.* (OPIF #10002123);

iii)  *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF#10002025);

iv)   *Bellinger v. Hewlett-Packard Co.* (OPIF #10002077);

v)    *Borror v. MarineMax of Ohio*,  (OPIF #10002388);

vi)   *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

vii)  *Mark J. CrawHonda, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

viii) *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

ix)   *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

x)    *Khouri v. Don Lewis* (OPIF #100001995);

xi)   *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

xii)  *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524);; and

xiii)   *Brown v. Spears* (OPIF #10000403);.

xiv)   *State ex rel. Brown v. Bud Fletcher Used Cars, Inc.* (OPIF #10000228)

xv)   *State ex rel. Celebrezze v. Metro Toyota, Inc.* (OPIF #10001194); and

xvi)   *Shellhorn v. Kohler Chrysler-Plymouth, Inc.,* (OPIF #10001309)

231.   As a result of its violations of the OCSPA detailed above, Defendants caused actual damage to Plaintiffs and the Ohio Class and, if not stopped, will continue to harm Plaintiffs and the Ohio Class. The Defect has caused the value of Class Vehicles to decrease.

232.   Plaintiffs and the Class sustained damages as a result of Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

233.   Plaintiffs also seek court costs and attorneys' fees as a result of Defendants' violation of the OCSPA as provided in Ohio Rev. Code § 1345.09.

## COUNT XI
## BREACH OF IMPLIED WARRANTY IN TORT
## (BASED ON OHIO LAW)

234.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

235.   Plaintiffs bring this claim on behalf of the Ohio Class.

236.   The Class Vehicles contained the Defect, resulting in loss of the Vehicles' crucial safety and reliability functions, as detailed herein more fully.

237.   The Defect existed at the time these Class Vehicles left the hands of Defendants.

238.   Based upon the dangerous product defect and its certainty to occur, Defendants failed to meet the expectations of a reasonable consumer. The Class Vehicles failed their ordinary, intended use because of the Defect prevents the Vehicles

from being safely and reliably used as a reasonable consumer would expect. Moreover, it presents a serious danger to Plaintiffs and the other Class members that cannot be eliminated without significant cost.

239. The Defect in these Class Vehicles was the direct and proximate cause of economic damages to Plaintiffs and the Ohio Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class members, respectfully request judgment against Defendants as follows:

(A)   certifying the proposed Nationwide Class and State Law Classes;

(B)   appointing Plaintiffs and their counsel to represent the Classes;

(C)   ordering injunctive relief, restitution, disgorgement, and/or other appropriate relief;

(D)   awarding compensatory, punitive, exemplary, and other recoverable damages;

(E)   awarding reasonable attorney's fees and expenses;

(F)   awarding pre-judgment and post-judgment interest;

(G)   awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: August 19, 2022             Respectfully submitted,


HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Christopher R. Pitoun*
   Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
*christopherp@hbsslaw.com*

Steve W. Berman (to be admitted *pro hac vice*)
Sean R. Matt (to be admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Jeffrey S. Goldenberg (to be admitted *pro hac vice*)
Todd Naylor (to be admitted *pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45249
Tel: (513) 345-8291
Fax: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

Joseph M. Lyon, Esq. (to be admitted *pro hac vice*)
THE LYON FIRM, LLC
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011

*Counsel for Plaintiffs and Class*