# EXHIBIT 4

ACCO,(KESx),DISCOVERY,MANADR,RELATED-G

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
# CIVIL DOCKET FOR CASE #: 8:22-cv-01674-DOC-KES

| | |
|---|---|
| Miyoshi Morrow et al v. Hyundai Motor America Inc. et al | Date Filed: 09/12/2022 |
| Assigned to: Judge David O. Carter | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Karen E. Scott | Nature of Suit: 370 Other Fraud |
| Related Case: 8:22-cv-01440-DOC-KES | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Fraud | |

**Plaintiff**

**Miyoshi Morrow**
*individually and on behalf of all other
similarly situated*

represented by **Roland K. Tellis**
Baron and Budd PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436
818-839-2333
Fax: 818-986-9698
Email: rtellis@baronbudd.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M. Tamburelli**
Baron and Budd PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436
818-839-2333
Fax: 214-520-1181
Email: atamburelli@baronbudd.com
*ATTORNEY TO BE NOTICED*

**David Brian Fernandes , Jr.**
Baron and Budd PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436
818-839-2333
Fax: 818-986-9698
Email: dfernandes@baronbudd.com
*ATTORNEY TO BE NOTICED*

**Matthew L. Dameron**
Williams Dirks Dameron LLC
1100 Main Street, Suite 2600
Kansas City, MO 64105

816-945-7110
Fax: 816-945-7118
Email: matt@williamsdirks.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shannon E Royster**
Baron and Budd PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436
818-839-2333
Email: sroyster@baronbudd.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tracy Spradlin**                    represented by   **Roland K. Tellis**
*individually and on behalf of all other*                 (See above for address)
*similarly situated*                                        *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                    **Adam M. Tamburelli**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **David Brian Fernandes , Jr.**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Matthew L. Dameron**
                                                    (See above for address)
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Shannon E Royster**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rachel Perry**                      represented by   **Roland K. Tellis**
*individually and on behalf of all other*                 (See above for address)
*similarly situated*                                        *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                    **Adam M. Tamburelli**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **David Brian Fernandes , Jr.**
                                                    (See above for address)

*ATTORNEY TO BE NOTICED*

**Matthew L. Dameron**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shannon E Royster**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hyundai Motor America Inc.**                        represented by    **Kate Spelman**
*a California corporation*                                                          Jenner and Block LLP
                                                                                                  515 South Flower Street Suite 3300
                                                                                                  Los Angeles, CA 90071-2246
                                                                                                  213-239-5100
                                                                                                  Fax: 213-239-5199
                                                                                                  Email: KSpelman@jenner.com
                                                                                                  *LEAD ATTORNEY*
                                                                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Kia America, Inc.**                                          represented by    **Kate Spelman**
*a California corporation*                                                          (See above for address)
                                                                                                  *LEAD ATTORNEY*
                                                                                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/12/2022 | 1 | COMPLAINT Receipt No: ACACDC-33966467 - Fee: $402, filed by Plaintiffs MIYOSHI MORROW, RACHEL PERRY, TRACY SPRADLIN. (Attorney Roland K. Tellis added to party MIYOSHI MORROW(pty:pla), Attorney Roland K. Tellis added to party RACHEL PERRY(pty:pla), Attorney Roland K. Tellis added to party TRACY SPRADLIN(pty:pla))(Tellis, Roland) (Entered: 09/12/2022) |
| 09/12/2022 | 2 | CIVIL COVER SHEET filed by Plaintiffs MIYOSHI MORROW, RACHEL PERRY, TRACY SPRADLIN. (Tellis, Roland) (Entered: 09/12/2022) |
| 09/12/2022 | 3 | NOTICE of Interested Parties filed by Plaintiffs MIYOSHI MORROW, RACHEL PERRY, TRACY SPRADLIN, (Tellis, Roland) (Entered: 09/12/2022) |
| 09/12/2022 | 4 | Request for Clerk to Issue Summons on Certificate/Notice of Interested Parties 3 , Complaint (Attorney Civil Case Opening), 1 , Civil Cover Sheet (CV-71) 2 |

| | | |
|---|---|---|
| | | filed by Plaintiffs MIYOSHI MORROW, RACHEL PERRY, TRACY SPRADLIN. (Tellis, Roland) (Entered: 09/12/2022) |
| 09/13/2022 | 5 | NOTICE OF ASSIGNMENT to District Judge Fred W. Slaughter and Magistrate Judge Karen E. Scott. (et) (Entered: 09/13/2022) |
| 09/13/2022 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (et) (Entered: 09/13/2022) |
| 09/13/2022 | 7 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (et) (Entered: 09/13/2022) |
| 09/13/2022 | 8 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendants Hyundai Motor America Inc., Kia America, Inc. (et) (Entered: 09/13/2022) |
| 09/15/2022 | 9 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 21-01-Related Case- filed. Related Case No: 8:22-cv-01440-DOC-(KESx). Case transferred from Judge Fred W. Slaughter to Judge David O. Carter for all further proceedings. The case number will now reflect the initials of the transferee Judge 8:22-cv-01674-DOC-(KESx). Signed by Judge David O. Carter (dve) (Entered: 09/15/2022) |
| 09/21/2022 | 10 | INITIAL STANDING ORDER FOLLOWING ASSIGNMENT OF CIVIL CASE TO JUDGE CARTER. (kdu) (Entered: 09/21/2022) |
| 09/26/2022 | 11 | APPLICATION of Non-Resident Attorney Matthew L. Dameron to Appear Pro Hac Vice on behalf of Plaintiffs Miyoshi Morrow, Rachel Perry, Tracy Spradlin (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-34050272) filed by Plaintiffs Miyoshi Morrow, Rachel Perry, Tracy Spradlin. (Attachments: # 1 Certificates of Standing, # 2 Proposed Order) (Fernandes, David) (Entered: 09/26/2022) |
| 09/27/2022 | 12 | PROOF OF SERVICE Executed by Plaintiff Miyoshi Morrow, Rachel Perry, Tracy Spradlin, upon Defendant Kia America, Inc. served on 9/13/2022, answer due 10/4/2022. Service of the Summons and Complaint were executed upon CT Corporation, Inc., Registered Agent Authorized to Accept Service of Process in compliance with Federal Rules of Civil Procedure by personal service.Original Summons returned. (Tellis, Roland) (Entered: 09/27/2022) |
| 09/27/2022 | 13 | PROOF OF SERVICE Executed by Plaintiff Miyoshi Morrow, Rachel Perry, Tracy Spradlin, upon Defendant Hyundai Motor America Inc. served on 9/16/2022, answer due 10/7/2022. Service of the Summons and Complaint were executed upon CSC Lawyers Incorporating Service, Registered Agent Authorized to Accept Service of Process in compliance with Federal Rules of Civil Procedure by personal service.Original Summons returned. (Tellis, Roland) (Entered: 09/27/2022) |
| 09/27/2022 | 14 | PROOF OF SERVICE filed by Plaintiffs Miyoshi Morrow, Rachel Perry, Tracy Spradlin, re Notice to Counsel Re: Consent to Proceed before a US Magistrate Judge - optional html form 7 , Certificate/Notice of Interested Parties 3 , Notice to Parties of Court-Directed ADR Program (ADR-8) - optional html form 6 , Transferring Case purs GO 21-01 (Related Case)(CV-34), 9 , Initial Order upon |

| | | |
|---|---|---|
| | | Filing of Complaint - form only 10 , Civil Cover Sheet (CV-71) 2 served on 09/23/2022. (Tellis, Roland) (Entered: 09/27/2022) |
| 09/27/2022 | 15 | PROOF OF SERVICE filed by Plaintiffs Miyoshi Morrow, Rachel Perry, Tracy Spradlin, re Notice to Counsel Re: Consent to Proceed before a US Magistrate Judge - optional html form 7 , Certificate/Notice of Interested Parties 3 , Notice to Parties of Court-Directed ADR Program (ADR-8) - optional html form 6 , Transferring Case purs GO 21-01 (Related Case)(CV-34), 9 , Initial Order upon Filing of Complaint - form only 10 , Civil Cover Sheet (CV-71) 2 served on 09/22/2022. (Tellis, Roland) (Entered: 09/27/2022) |
| 09/27/2022 | 16 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Matthew L. Dameron to Appear Pro Hac Vice on behalf of Plaintiffs Miyoshi Morrow, Rachel Perry, Tracy Spradlin (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-34050272) 11 . The following error(s) was/were found: Case information is incomplete. DJ and MJ initials missing on application and proposed order. Please note DJ and MJ Order Re Transfer, dated 9/15/22, Dkt. 9. (lt) (Entered: 09/27/2022) |
| 09/28/2022 | 17 | ORDER by Judge David O. Carter: granting 11 Non-Resident Attorney Matthew L. Dameron APPLICATION to Appear Pro Hac Vice on behalf of Miyoshi Morrow, Rachel Perry and for Tracy Spradlin, designating David Fernandes, Jr. as local counsel. (lom) (Entered: 09/28/2022) |
| 10/04/2022 | 18 | STIPULATION for Extension of Time to File Answer to December 20, 2022 re Complaint (Attorney Civil Case Opening), 1 filed by Defendants Hyundai Motor America Inc., Kia America, Inc.. (Attachments: # 1 Proposed Order) (Attorney Kate Spelman added to party Hyundai Motor America Inc.(pty:dft), Attorney Kate Spelman added to party Kia America, Inc.(pty:dft))(Spelman, Kate) (Entered: 10/04/2022) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 10/06/2022 07:07:55 | | |
| PACER Login: | jb0014 | Client Code: | 71273-10008 |
| Description: | Docket Report | Search Criteria: | 8:22-cv-01674-DOC-KES End date: 10/6/2022 |
| Billable Pages: | 5 | Cost: | 0.50 |

1  Roland Tellis (SBN 186269)
2  rtellis@baronbudd.com
   David B. Fernandes, Jr. (SBN 280944)
3  dfernandes@baronbudd.com
4  Adam Tamburelli (SBN 301902)
   atamburelli@baronbudd.com
5  Shannon Royster (SBN 314126)
6  sroyster@baronbudd.com
   BARON & BUDD, P.C.
7  15910 Ventura Boulevard, Suite 1600
8  Encino, CA 91436
   Telephone: 818.839.2333
9
10 *Counsel for Plaintiffs*
11            UNITED STATES DISTRICT COURT
12           CENTRAL DISTRICT OF CALIFORNIA
13               SOUTHERN DIVISION
14
15 MIYOSHI MORROW, TRACY
16 SPRADLIN, and RACHEL PERRY,          Case No.
   individually and on behalf of all
17 others similarly situated,            **CLASS ACTION**
18        Plaintiffs,                    **COMPLAINT**
19     v.                               JURY TRIAL DEMANDED
20 HYUNDAI MOTOR AMERICA
   INC., a California corporation; and
21 KIA AMERICA, INC., a California
   corporation.
22
23        Defendants.
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    NATURE OF THE ACTION ...............................................................1

II.   THE PARTIES ....................................................................................1

III.  JURISDICTION AND VENUE...........................................................4

IV.  GENERAL FACTUAL ALLEGATIONS ...........................................5

V.   CLASS ALLEGATIONS....................................................................10

VI.  TOLLING...........................................................................................15

VII. CLAIMS ............................................................................................16

VIII. PRAYER FOR RELIEF ....................................................................32

IX.  DEMAND FOR JURY TRIAL .........................................................38

For their complaint against Defendants, Plaintiffs,[1] individually and on behalf of all others similarly situated, allege as follows:

## I. NATURE OF THE ACTION

1.      Plaintiffs bring this proposed class action on behalf of all persons who purchased or leased model year 2011-2022 Kia vehicles (the "Kia Class Vehicles") and model year 2015-2022 Hyundai vehicles (the "Hyundai Class Vehicles") containing turn-key ignition systems (collectively the "Class Vehicles"). The Class Vehicles have a critical security vulnerability because they are not equipped with standard "immobilizer" equipment, which prevents vehicles from being started unless a specific electronic signal is transmitted from a vehicle's key fob or smart key to the vehicle (the "Immobilizer Defect" or the "Defect"). The Immobilizer Defect leaves Class Vehicles particularly susceptible to theft due to the ease with which they can be stolen.

2.      Defendants designed, manufactured, distributed, and sold Class Vehicles with the Immobilizer Defect. In doing so, Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiffs, in Defendants' advertising, labeling or otherwise that the Class Vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be if they were not defective.

## II. THE PARTIES

**A.      Defendants**

3.      Hyundai Motor America, Inc. (referred to herein as "Hyundai USA") is a California corporation doing business throughout the United States, with its principal place of business in Fountain Valley, California.

---

[1] Plaintiffs are Miyoshi Morrow, Tracy Spradlin, and Rachel Perry.

4.      Kia America, Inc. (referred to herein as "Kia USA") is a California corporation doing business throughout the United States, with its principal place of business in Irvine, California.

**B.      Plaintiffs**

**Miyoshi Morrow - Hyundai Plaintiff:**

5.      Plaintiff Miyoshi Morrow ("Plaintiff") is an individual residing in Los Angeles, California. In or around May 2017, Plaintiff purchased a used 2016 Hyundai Elantra (the "Class Vehicle") from CarMax in Inglewood, California.

6.      At the time Plaintiff acquired the Class Vehicle, Plaintiff had a reasonable expectation that the Class Vehicle had appropriate anti-theft features, and Plaintiff had no way of knowing that the Class Vehicle was particularly susceptible to theft due to the Immobilizer Defect. In fact, Plaintiff did not learn about the Immobilizer Defect and the fact that her Class Vehicle was affected by it until August 2022 when it stolen from in front of her home.

7.      Hyundai USA concealed the existence of the Immobilizer Defect from consumers like Plaintiff. Had Hyundai USA instead disclosed it before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through her review of the Hyundai website prior to her purchase of the Class Vehicle. Plaintiff has suffered a concrete injury in the form of an overpayment for the Class Vehicle as a result of Hyundai USA's misconduct, and did not receive the full benefit of the bargain in acquiring the Class Vehicle. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Hyundai USA did not conceal material information regarding the Class Vehicle's safety and security, or the fact that it was not equipped with immobilizer technology.

**Tracy Spradlin – Hyundai Plaintiff:**

8.      Plaintiff Tracy Spradlin ("Plaintiff") is an individual residing in Kansas City, Missouri. In or around July 2021, Plaintiff purchased a new 2021

1  Hyundai Palisade (the "Class Vehicle") from McCarthy Olathe Hyundai, an
2  authorized Hyundai dealership located in Olathe, Kansas.

3       9.    At the time Plaintiff acquired the Class Vehicle, Plaintiff had a
4  reasonable expectation that the Class Vehicle had appropriate anti-theft features,
5  and Plaintiff had no way of knowing that the Class Vehicle was particularly
6  susceptible to theft due to the Immobilizer Defect. In fact, Plaintiff did not learn
7  about the Immobilizer Defect and the fact that her Class Vehicle was affected by it
8  until August 2022.

9       10.   Hyundai USA concealed the existence of the Immobilizer Defect from
10 consumers like Plaintiff. Had Hyundai USA instead disclosed it before Plaintiff
11 acquired the Class Vehicle, Plaintiff would have learned of the concealed
12 information through her review of the Hyundai website prior to her purchase of the
13 Class Vehicle or through her discussions with the salesperson at McCarthy Olathe
14 Hyundai. Plaintiff has suffered a concrete injury in the form of an overpayment for
15 the Class Vehicle as a result of Hyundai USA's misconduct, and did not receive the
16 full benefit of the bargain in acquiring the Class Vehicle.  Plaintiff would not have
17 purchased the Class Vehicle, or would have paid less for it, if Hyundai USA did not
18 conceal material information regarding the Class Vehicle's safety and security, or
19 the fact that it was not equipped with immobilizer technology.

20 **Rachel Perry – Kia Plaintiff:**

21      11.   Plaintiff Rachel Perry ("Plaintiff") is an individual residing in West
22 Covina, California. On August 9, 2015, Plaintiff purchased a new 2015 Kia Optima
23 (the "Class Vehicle") from Covina Valley Kia, an authorized Kia dealership located
24 in Covina, California.

25      12.   At the time Plaintiff acquired the Class Vehicle, Plaintiff had a
26 reasonable expectation that the Class Vehicle had appropriate anti-theft features,
27 and Plaintiff had no way of knowing that the Class Vehicle was particularly
28 susceptible to theft due to the Immobilizer Defect. In fact, Plaintiff did not learn

1   about the Immobilizer Defect and the fact that her Class Vehicle was affected by it
2   until July 2022 when it was stolen in Las Vegas, Nevada.

3          13.    Kia USA concealed the existence of the Immobilizer Defect from
4   consumers like Plaintiff. Had Kia USA instead disclosed it before Plaintiff acquired
5   the Class Vehicle, Plaintiff would have learned of the concealed information
6   through her review of the Kia website prior to her purchase of the Class Vehicle or
7   through her discussions with the salesperson at Covina Valley Kia who told her
8   prior to her purchase of the Class Vehicle that the vehicle was equipped with an
9   anti-theft system. Plaintiff has suffered a concrete injury in the form of an
10  overpayment for the Class Vehicle as a result of Kia USA's misconduct, and did
11  not receive the full benefit of the bargain in acquiring the Class Vehicle.  Plaintiff
12  would not have purchased the Class Vehicle, or would have paid less for it, if Kia
13  USA did not conceal material information regarding the Class Vehicle's safety and
14  security, or the fact that it was not equipped with immobilizer technology.

15             **III.    JURISDICTION AND VENUE**

16         14.    This Court has subject matter jurisdiction over this case pursuant to the
17  Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed
18  Classes are citizens of states different from Defendants' home states, and the
19  aggregate amount in controversy exceeds $5,000,000, exclusive of interest and
20  costs.

21         15.    This Court has general jurisdiction over Hyundai USA and Kia USA
22  because they are both California corporations. Furthermore, this Court has
23  supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

24         16.    Venue is proper in this district under 28 U.S.C. § 1391 because a
25  substantial part of the events and/or omissions giving rise to the claims herein
26  occurred in this district and because Defendants are citizens of California with
27  headquarters located in this district.

28

## IV.  **GENERAL FACTUAL ALLEGATIONS**

17.    An immobilizer is a standard anti-theft feature present in most modern vehicles made in the last 20 years and have been proven to reduce vehicle thefts by 40%.[2] According to a study in the United Kingdom, vehicles that had central locking plus an immobilizer were up to *25 times less likely* to be stolen than those without.[3]

18.    Even though the use of immobilizer technology by auto manufacturers is common, and in some parts of the world has been required by law for decades, the Class Vehicles do not contain immobilizer technology.[4]

19.    An immobilizer contains an electronic chip embedded into a vehicle's engine control unit that prevents the engine from functioning unless the electronic code from the key fob or smart key matches with it.[5]

20.    Accordingly, the absence of an immobilizer makes vehicles particularly susceptible to theft. Indeed, thefts of Class Vehicles have been occurring at increasingly high rates within the past year.

21.    YouTube and TikTok videos offer would-be thieves a veritable "how to" for stealing Class Vehicles, which due to the lack of an immobilizer, can be

---

[2] *See* Jan C. van Ours & Ben Vollaard, *The Engine Immobilizer: A Non–Starter For Car Thieves*, THE ECONOMIC JOURNAL, Vol. 126, No. 593, 1264 (June 2016).

[3] Graham Farrell, et al., *The Effectiveness of Vehicle Security Devices and Their Role in the Crime Drop*, CRIMINOLOGY & CRIMINAL JUSTICE (March 1, 2011), https://journals.sagepub.com/doi/abs/10.1177/1748895810392190.

[4] The European Union made immobilizers mandatory for all new cars as of 1998. *See* Jan C. van Ours & Ben Vollaard (eds.), *The Engine Immobilizer: a Non-starter for Car Thieves*, CEPR.ORG (January 20, 2013), https://cepr.org/publications/dp9298.

[5] *Automotive Immobilizer Technology Market Size, Share & Industry Analysis by market Type (OEM, Aftermarket), By Vehicle Type (Passenger Cars, Light Commercial Vehicles, Heavy Commercial Vehicles) and Regional Forecast 2022-2029*, FORTUNE BUSINESS INSIGHTS, https://www.fortunebusinessinsights.com/automotive-immobilizer-technology-market-103627 (last visited September 2, 2022).

1   accomplished using only a standard USB cable, as shown in the photograph below,

2   depicting the fit of a USB cable in the ignition switch of a Hyundai Class Vehicle.[6]



9       22.     Such thefts have become a viral "challenge" on social media

10  platforms, affecting cities across the United States.[7] For example, participation in

11  this "Kia Boyz" challenge has caused an 85% increase in Los Angeles City vehicle

12  thefts compared to last year.[8] According to a National Insurance Crime Bureau

13  report, 40% of vehicles stolen between July 11, 2022 and July 28, 2022 in St.

---

[6] Rob Stumpf, *How Thieves Are Stealing Hyundais and Kias with Just a USB Cable,* THE DRIVE (August 2, 2022), https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kias-with-just-a-usb-cable.

[7] Ian Spiegelman, *TikTok Challenge Leads to Kia and Hyundai Theft Explosion in L.A.*, LOS ANGELES MAGAZINE (September 1, 2022), https://www.lamag.com/citythinkblog/tiktok-challenge-leads-to-skyrocketing-kia-and-hyundai-thefts-in-l-a/.

[8] *TikTok Challenge Targeting Kia, Hyundai Vehicles Leads to Rise in Car Thefts, LAPD Chief Says*, ABC7.COM (September 1, 2022), https://abc7.com/tiktok-challenge-lapd-kia-and-hyundai-thefts-chief-michel-moore/12185824/; Tommy G, *Kia Boyz Documentary*, YOUTUBE (May 31, 2022), https://youtu.be/fbTrLyqLnw.

Petersburg, Florida were Kia or Hyundai models.[9] In Chicago, Illinois, thefts of Class Vehicles rose by 767%.[10] Milwaukee, Wisconsin saw increases of 2,500%.[11]

23.     The USB hotwire is reminiscent of the same phenomenon that plagued Chrysler vehicles in the 1990s – except then, the tool of choice was a flathead screwdriver.[12] The Chrysler theft epidemic spurred the National Highway and Transportation Safety Administration to undertake an investigation, which culminated in new Federal Motor Vehicle Safety Standards:

> Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:
>
>> (a) The normal activation of the vehicle's engine or motor; and
>>
>> (b) Either steering, or forward self-mobility, of the vehicle, or both.
>
> 45 C.F.R. § 571.114 S51.1

24.     The Immobilizer Defect poses a safety and security risk. "[S]tolen cars constitute a major hazard to life and limb on the highways." 33 Fed. Reg. 6, 471, (Apr. 27, 1968). Indeed, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." *Id.* The Kia Boyz challenge highlights this risk, as the stolen vehicles are often crashed and/or destroyed, driven recklessly

---

[9] Annie Mapp, *40% of Cars Stolen in 2 Weeks are Kias, Hyundais, St. Pete Police Say,* NATIONAL INSURANCE CRIME BUREAU (July 28, 2022), https://www.nicb.org/news/regional-news/40-cars-stolen-2-weeks-are-kias-hyundais-st-pete-police-say.

[10] Audrey Conklin, *Chicago Area Sees 767% increase in Hyundai, Kia Thefts; Authorities Blame TikTok Challenge*, FOX32 CHICAGO (August 26, 2022), https://www.fox32chicago.com/news/chicago-767-increase-in-hyundai-kia-thefts.

[11] Stumpf, *supra* note 6.

[12] Christine Byers, *Byers' Beat: How a 1990s Car Theft Problem Has Come Back to Haunt the St. Louis Area,* KDSK.COM (September 2, 2022), https://www.ksdk.com/article/news/crime/byers-beat/hyundai-kia-st-louis-car-theft-1990s-chrysler/63-121dc658-0876-43fb-98d5-9be532c14316.

endangering other drivers, and used in committing other crimes, in some cases violent felonies.[13]

25.    Unfortunately, but not surprisingly, the Kia Boyz challenge has led to serious injuries and deaths as reckless drivers of stolen Class Vehicles lose control, crashing them into buildings or into other vehicles. In St. Paul, Minnesota, a stolen Kia crashed with another car killing 70-year-old Phoua Hang and injuring her husband.[14] In Columbus, Ohio, two fourteen-year-old boys were killed, and another was hospitalized following the crash of a stolen Hyundai Sonata into a warehouse.[15] The Hyundai Sonata, traveling at 80 miles an hour in a 35 MPH zone, flipped, ejecting two of the boys and trapping a third inside the vehicle.[16] Authorities say that the teen joyriders had stolen the vehicle as part of the Kia Boyz trend.[17]

26.    According to an August 16, 2022 Consumer Reports article, a Kia spokesman stated, "[a]ll of our vehicles meet or exceed Federal Motor Vehicle Safety Standards."[18] Yet, Class Vehicles do not contain an immobilizer – one of the

[13] Tony Owusu, *Kia and Hyundai Have a Really Bad TikTok Problem*, THESTREET (August 30, 2022), https://www.thestreet.com/investing/kia-and-hyundai-have-a-really-bad-tiktok-problem.

[14] Bill Keller, *Stolen Kia Crashes into Couple's Car in St. Paul, 70-year-old Woman Killed,* FOX 9 KMSP (July 18, 2022), https://www.fox9.com/news/stolen-kia-crashes-into-couples-car-in-st-paul-70-year-old-woman-killed.

[15] Dean Narciso & Zaria Johnson, *Two 14-year-old Boys Killed in Overnight Crash Involving Stolen Car, Another Hospitalized,* THE COLUMBUS DISPATCH (July 25, 2022), https://www.dispatch.com/story/news/crime/2022/07/25/adult-and-juvenile-were-killed-crash-involving-stolen-car/10142235002/.

[16] *Id.*; Steve Levine, *Family of Teen Killed in Stolen Hyundai Crash, Says He Was Not Driving When Car Wrecked*, ABC 6 (August 4, 2022), https://abc6onyourside.com/news/local/family-of-teen-killed-in-stolen-car-crash-says-he-was-not-driving-when-vehicle-wrecked-east-columbus-jayvon-reed-real-kia-boys.

[17] Levine, *supra* note 16.

[18] Jeff S. Bartlett, *How to Keep Your Car from Getting Stolen*, CONSUMER REPORTS (August 16, 2022), https://www.consumerreports.org/money/theft/how-to-keep-your-car-from-getting-stolen-car-theft-a2434454434/.

most ubiquitous anti-theft devices. If the Class Vehicles were manufactured to comply with this safety standard, they would not be stolen at such alarming rates because had such deterrent measures been implemented, when the key is removed from the starting system, both steering and forward self-mobility would be prevented.

27.     Insurance companies are responding to the rash of thefts by raising premiums for Class Vehicles or refusing to insure them at all, deeming the risk too great.[19] Costs to repair after uninhibited joyriding, perpetuated by the current social media trend, can be $10,000 or more.[20]

28.     Defendants have long known the security benefits immobilizers provide and have been selling virtually identical vehicles equipped with this technology abroad for decades.[21] Even in the United States, select models of Defendants' vehicles have been sold with immobilizers.

29.     Defendants have also long known that Class Vehicles were being stolen at high rates. Notwithstanding this knowledge, Defendants continued to sell the defective Class Vehicles to unsuspecting consumers from whom they concealed

---

[19] Robert Garrison, *Denver-area Hyundai and Kia Owners Struggle with Insurance Woes as Thefts Climb*, DENVER7 (August 12, 2022), https://www.thedenverchannel.com/news/local-news/denver-area-hyundai-and-kia-owners-struggle-with-insurance-woes-as-thefts-climb; *see also* Christine Byers, *Hyundai and Kia Thefts Hit Insurance and Appraisal Industry*, KDSK.COM (September 1, 2022), https://www.ksdk.com/article/news/local/hyundai-kia-thefts-hit-insurance-appraisal-industry/63-24673a34-d557-452c-9fce-f10d6ce94c02.

[20] James E. Causey, *Motor Vehicle Thefts Up 152% in Milwaukee so far in 2021*, Milwaukee Journal Sentinel (February 3, 2021), https://www.jsonline.com/story/news/solutions/2021/02/03/motor-vehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/.

[21] *See e.g., Anti-theft Device Now Mandatory in Canadian-made Vehicles,* CBC NEWS (September 1, 2007), https://www.cbc.ca/news/canada/anti-theft-device-now-mandatory-in-canadian-made-vehicles-1.677141; KIA CANADA, www.kia.ca (last visited September 7, 2022); HYUNDAI CANADA, www.hyundaicanada.com (last visited September 7, 2022).

the Immobilizer Defect. It was not until November 2021 that Hyundai announced it would start utilizing immobilizers in new vehicles sold in the United States.[22] Kia announced it would add immobilizers for the 2022 model year or "as a running change."[23]

30.     Since learning of this crisis, Hyundai USA has also decided to profit from it, announcing that beginning October 1, 2022, it will make available – *for purchase* at an undisclosed price – "security kits."[24] Kia USA has not yet come forward with any plans for ameliorative measures.[25] Nonetheless, these actions still leave Plaintiffs and Class members without an adequate remedy.

# V. CLASS ALLEGATIONS

31.     Plaintiffs bring this lawsuit as a class action on their own behalf, and on behalf of all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23.

32.     Plaintiff Miyoshi Morrow seeks to represent: all persons and entities that purchased or leased a Hyundai Class Vehicle in the State of California (the "Hyundai California Class").

33.     Plaintiff Rachel Perry seeks to represent: all persons and entities that purchased or leased a Kia Class Vehicle in the State of California (the "Kia California Class").

---

[22] Jack Fitzgerald, *As Hyundai/Kia Thefts Grow, 2 Victims of the TikTok Trend Show Us What Happened to Their Cars*, CAR AND DRIVER (August 27, 2022), https://www.caranddriver.com/news/a40979551/hyundai-kia-car-thefts-tiktok-trend-milwaukee/.

[23] *Id.*

[24] Deion Broxton, *Hyundai to Sell Security Kits to Deal with Problem of Thefts,* KMOV.COM (September 3, 2022), https://www.kmov.com/2022/09/04/hyundai-sell-security-kits-deal-with-problem-thefts/?outputType=amp.

[25] *Videos Show Teens How to Steal Certain Kias and Hyundais with Only a USB Cable, Police Warn Amid Rising Thefts*, INSIDE EDITION (August 10, 2022), https://www.insideedition.com/videos-show-teens-how-to-steal-certain-kias-and-hyundais-with-only-a-usb-cable-police-warn-amid.

34.     Plaintiff Tracy Spradlin seeks to represent: all persons and entities that purchased or leased a Hyundai Class Vehicle in the State of Kansas (the "Hyundai Kansas Class").

35.     Plaintiffs Miyoshi Morrow and Tracy Spradlin seek to represent: all persons and entities in the United States that purchased or leased a Hyundai Class Vehicle in the United States (the "Hyundai Nationwide Class").

36.     Plaintiff Rachel Perry seeks to represent: all persons and entities in the United States that purchased or leased a Kia Class Vehicle in the United States (the "Kia Nationwide Class").

37.     The Kia California Class, the Hyundai California Class, the Hyundai Kansas Class, the Hyundai Nationwide Class, and the Kia Nationwide Class shall be collectively referred to as the "Classes."

38.     Excluded from the Classes are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

39.     Plaintiffs reserve the right to modify and/or add to the Classes prior to class certification.

40.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

**B.     Numerosity**

41.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(1). Defendants have sold and leased tens of thousands of Class Vehicles and therefore individual joinder of all class members is impracticable.

42.     Each of the proposed Classes are ascertainable because their members can be readily identified using vehicle identification numbers, vehicle registration records, sales records, production records, and other information kept by

Defendants. Plaintiffs anticipate providing appropriate notice to the Classes in compliance with Federal Rules of Civil Procedure 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Rule 23(d).

**C.     Predominance of Common Issues**

43.    This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(2) and (b)(3), because questions of law and fact that have common answers and predominate over questions affecting only individual members of the proposed Classes. These include, without limitation, the following:

a.    Whether the Class Vehicles were equipped with an immobilizer;

b.    Whether and when Defendants knew, or should have known, of the Immobilizer Defect in Class Vehicles;

c.    Whether Defendants had a duty to disclose the Immobilizer Defect in the Class Vehicles to Plaintiffs and Class members;

d.    Whether Defendants omitted and failed to disclose material facts about the Class Vehicles;

e.    Whether Defendants' concealments and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, retaining, or operating their Class Vehicles;

f.    Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles were designed, manufactured, and sold with the Immobilizer Defect;

g.    Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

h. Whether Defendants' concealment of the Immobilizer Defect induced Plaintiffs and Class members to act to their detriment by purchasing the Class Vehicles;

i. Whether Defendants' concealment of the Immobilizer Defect caused the market price of the Class Vehicles to incorporate a premium reflecting the assumption by consumers that the Class Vehicles were equipped with sufficient anti-theft measures, and, if so, the market value of that premium;

j. Whether the Class Vehicles have suffered a diminution of value as a result of the Immobilizer Defect;

k. Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment or application of the discovery rule;

l. Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

m. Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the Classes;

n. Whether Defendants have been unjustly enriched by their conduct;

o. Whether Plaintiffs and the proposed Classes are entitled to damages.

**D. Typicality**

44. This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs' claims are typical of the claims of Class members and arise from the same course of conduct by Defendants. Plaintiffs and each member of the Classes have a Class Vehicle with the same Immobilizer

Defect. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**E.      Adequacy of Representation**

45.      Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective automobiles and other products.

46.      Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

**F.      Superiority**

47.      This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2), because Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final relief with respect to each Class as a whole.

48.      This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3), because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.      Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions; and the burden imposed on the judicial system by individual litigation—by even a small fraction of the Classes—would be enormous, making class adjudication the superior alternative under Federal Rule of Civil Procedure 23(b)(3)(A).

50.     The conduct of this action as a class action instead of as thousands of individual lawsuits presents far fewer management difficulties; far better conserves judicial resources and the parties' resources; and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Federal Rule of Civil Procedure 23(b)(3)(D).

51.     Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Federal Rule of Civil Procedure 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs, or on its own determination, certify nationwide, statewide and/or multistate Classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law, for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any of the Classes into subclasses.

52.     The Classes expressly disclaim any recovery in this action for physical injury, wrongful death, or emotional distress resulting from the Immobilizer Defect without waiving or dismissing such claims.

## VI.     TOLLING

53.     Any applicable statute of limitations that might otherwise render any claim asserted herein time barred has been tolled by Defendants' concealment of the facts alleged above. Plaintiffs justifiably relied on Defendants' concealment and did not discover the Immobilizer Defect, despite their reasonable diligence, due to Defendants' knowledge of and failure to disclose the Immobilizer Defect, and have

suffered damages as a result. Had Defendants disclosed the Immobilizer Defect, Plaintiffs would have seen and/or heard such a disclosure.

54. Plaintiffs did not know and could not have known of the Immobilizer Defect because they did not have notice of the facts giving rise to their claims until shortly before they commenced litigation.

## VII.  CLAIMS

**1.  Nationwide**

     **a.  Nationwide Count 1: Violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*)**

55. Plaintiffs repeat and reallege all paragraphs above, as if fully set forth herein.

56. Plaintiffs Miyoshi Morrow and Tracy Spradlin bring this count individually and on behalf of the other Hyundai Nationwide Class members, against Hyundai USA.

57. Plaintiff Rachel Perry brings this count individually and on behalf of the other Kia Nationwide Class members, against Kia USA.

58. For purposes of this count, The Hyundai Nationwide Class and the Kia Nationwide Class shall be collectively referred to as the "Nationwide Classes."

59. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

60. Plaintiffs are "consumers" within the meaning of 15 U.S.C. § 2301(3).

61. Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. § 2301(4) and (5), respectively.

62. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

63. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

64.     The amount in controversy of Plaintiffs' individual claims meets or exceeds $25.00 in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this lawsuit.

65.     Defendants provided the Plaintiffs and Nationwide Class members with "implied warranties," which are covered under 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, the Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe, secure, and reliable passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

66.     The terms of the implied warranties became part of the basis of the bargain when the Plaintiffs and each member of the Nationwide Classes purchased their Class Vehicles.

67.     Defendants breached their implied warranties. Without limitation, the Class Vehicles share a common design defect in that they all are affected by the Immobilizer Defect.

68.     The Plaintiffs and each member of the Nationwide Classes have had sufficient direct dealings with either Defendants or their agents (including dealerships) to establish privity of contract between Defendants, on the one hand, and the Plaintiffs and each member of the Nationwide Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each member of the Nationwide Classes is an intended third-party beneficiary of contracts between Defendants and their dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

1    Finally, privity is also not required because the Class Vehicles pose a safety and
2    security risk due to the Immobilizer Defect.

3         69.    Affording Defendants a reasonable opportunity to cure their breach of
4    written warranties would be unnecessary and futile. At the time of sale or lease of
5    each Class Vehicle, Defendants knew, or should have known, of their material
6    omissions concerning the Class Vehicles' inability to perform as warranted, but
7    nonetheless failed to rectify the situation and/or disclose the Immobilizer Defect.
8    Under the circumstances, the remedies available under any informal settlement
9    procedure would be inadequate and any requirement that the Plaintiffs or State
10   Subclass members resort to an informal dispute resolution procedure and/or afford
11   Defendants a reasonable opportunity to cure their breach of the implied warranties
12   is excused and thereby deemed satisfied.

13        70.    In addition, given the conduct described herein, any attempts by
14   Defendants, in their capacities as warrantors, to limit the implied warranties in a
15   manner that would exclude coverage of the Immobilizer Defect is unconscionable
16   and any such effort to disclaim, or otherwise limit, liability for the Immobilizer
17   Defect is null and void.

18        71.    As a direct and proximate result of Defendants' breach of the implied
19   warranties, Plaintiffs and each member of the Nationwide Classes have suffered
20   damages.

21        72.    Plaintiffs, individually and on behalf of the Nationwide Classes, seek
22   all damages permitted by law, including compensation for the monetary difference
23   between the Class Vehicles as warranted and as sold; compensation for the
24   reduction in resale value; the cost of purchasing, leasing, or renting replacement
25   vehicles, along with all other incidental and consequential damages, statutory
26   attorney fees, and all other relief allowed by law.

27
28

**2.** **California**

  a.   **California Count 1: Violation of the California Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)**

73.   Plaintiffs repeat and reallege all paragraphs above, as if fully set forth herein.

74.   Plaintiff Miyoshi Morrow brings this count individually and on behalf of the other members of the Hyundai California Class, against Hyundai USA.

75.   Plaintiff Rachel Perry brings this count individually and on behalf of the other members of the Kia California Class, against Kia USA.

76.   For purposes of this count, Plaintiffs Morrow and Perry shall be referred to as "Plaintiffs."

77.   For purposes of this count, Hyundai and Kia California Class members shall be referred to as "Class members."

78.   Plaintiffs and other Class members were deceived by Defendants' failure to disclose the Immobilizer Defect.

79.   Defendants engaged in unfair or deceptive acts or practices when, in the course of their business, they knowingly omitted material facts as to the characteristics and qualities of the Class Vehicles.

80.   Defendants failed to disclose material information concerning the Class Vehicles that they had a duty to disclose. Defendants had a duty to disclose the Immobilizer Defect because, as detailed above: (a) Defendants knew about the Immobilizer Defect, (b) Defendants had exclusive and superior knowledge regarding the Immobilizer Defect not known to the general public, Plaintiff, or Class members, and (c) Defendants actively concealed material facts concerning the Immobilizer Defect from the general public, Plaintiff, and Class members. As detailed above, the information concerning the Immobilizer Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

81.     Defendants intended for Plaintiffs and Class members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety and security hazards described above.

82.     Defendants intentionally failed or refused to disclose the Immobilizer Defect to Plaintiffs and Class members.

83.     Defendants' deceptive omissions were intended to induce Plaintiffs and Class members to believe that the Class Vehicles were adequately designed and manufactured.

84.     Defendants' conduct constitutes unfair acts or practices as defined by the California Consumer Legal Remedies Act.

85.     Plaintiffs and Class members have suffered injury in fact and actual damages resulting from Defendants' material omissions because they paid inflated purchase prices for the Class Vehicles. Had Plaintiffs known about the Immobilizer Defect, they would have either not purchased their Class Vehicles or would have paid less for them. Plaintiff and Class members are entitled to recover actual damages, punitive damages, costs and attorneys' fees, and all other relief that the Court deems proper under Cal. Civ. Code § 1780.

86.     In accordance with § 1782(a) of the CLRA, Plaintiffs' counsel on behalf of Plaintiffs and the Class members, served Defendants via Certified Mail with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Class Vehicles purchased by Plaintiff and the Class members and demanded that they correct or agree to correct the actions described therein within thirty (30) days of such notice. If Defendants fail to do so, Plaintiffs will amend this Complaint to include compensatory and monetary damages to which Plaintiff and the Class members are entitled.

b. **California Count Two: Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.)**

87. Plaintiffs repeat and reallege all paragraphs above, as if fully set forth herein.

88. Plaintiff Miyoshi Morrow brings this count individually and on behalf of the other members of the Hyundai California Class, against Hyundai USA.

89. Plaintiff Rachel Perry brings this count individually and on behalf of the other members of the Kia California Class, against Kia USA.

90. For purposes of this count, Plaintiffs Morrow and Perry shall be referred to as "Plaintiffs."

91. For purposes of this count, Hyundai and Kia California Class members shall be referred to as "Class members."

92. The California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business acts or practices."

93. Defendants knowing and intentional conduct described in this complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

a. By knowingly and intentionally concealing from Plaintiffs and other Class members that the Class Vehicles suffer from the Immobilizer Defect while obtaining money from Plaintiffs and Class members;

b. By purposefully designing and manufacturing the Class Vehicles to contain the Immobilizer Defect which poses a safety and security risk, concealing the Immobilizer Defect from Plaintiffs and the Class members, and failing to fix the

1    Immobilizer Defect free of charge; and

2          c.    By violating the other California laws alleged herein, including

3                California common law, the implied warranty of

4                merchantability, and the Consumer Legal Remedies Act.

5        94.    Additionally, Defendants' acts, omission, and conduct were "unfair"

6    because they offend public policy and constitute immoral, unethical, and

7    unscrupulous activities that caused substantial injury, including to Plaintiffs and the

8    Class members. The gravity of harm resulting from Defendants' conduct outweighs

9    any potential benefits attributable to the conduct and there were reasonably

10   available alternatives to further Defendants' legitimate business interests.

11       95.    Defendants' omissions and concealment were material to Plaintiffs and

12   other Class members, and Defendants concealed or failed to disclose the truth with

13   the intention that consumers would rely on their concealment and omissions.

14       96.    Defendants' material omissions alleged herein caused Plaintiffs and

15   Class members to purchase their Class Vehicles. Absent Defendants' omissions,

16   Plaintiffs and Class members would not have purchased their Class Vehicles or

17   would not have purchased their Class Vehicles at the prices they paid.

18       97.    Accordingly, Plaintiffs and Class members have suffered ascertainable

19   loss and actual damages as a direct and proximate result of Defendants'

20   concealment of and failure to disclose material information.

21       98.    Defendants' violations present a continuing risk to Plaintiffs and Class

22   Members as well as to the general public. Defendants' unlawful acts and practices

23   complained of herein affect the public interest.

24       99.    Plaintiffs request that this Court enter an order enjoining Defendants

25   from continuing their unfair, unlawful, and/or deceptive practices and restoring to

26   Plaintiffs and the Class members any money Defendants acquired by unfair

27   competition as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof.

28   Code § 3345, and for such other relief set forth below.

c. **California Count 3: Fraud by Omission**

100. Plaintiffs repeat and reallege all paragraphs above, as if fully set forth herein.

101. Plaintiff Miyoshi Morrow brings this count individually and on behalf of the other members of the Hyundai California Class, against Hyundai USA.

102. Plaintiff Rachel Perry brings this count individually and on behalf of the other members of the Kia California Class, against Kia USA.

103. For purposes of this count, Plaintiffs Morrow and Perry shall be referred to as "Plaintiffs."

104. For purposes of this count, the Hyundai and Kia California Class members shall be referred to as "Class members."

105. Defendants were aware of the Immobilizer Defect within the Class Vehicles when they marketed and sold the Class Vehicles to Plaintiffs and Class members.

106. Having been aware of the Immobilizer Defect within the Class Vehicles, and having known that Plaintiffs and Class members could not have reasonably been expected to know of the Immobilizer Defect, Defendants had a duty to disclose the Immobilizer Defect to Plaintiffs and Class members in connection with the sale of the Class Vehicles.

107. Defendants did not disclose the Immobilizer Defect to Plaintiffs and Class members in connection with the sale of the Class Vehicles.

108. For the reasons set forth above, the Immobilizer Defect within the Class Vehicles comprises material information with respect to the sale of the Class Vehicles.

109. In purchasing the Class Vehicles, Plaintiffs, and Class members reasonably relied on Defendants to disclose known defects with respect to the Class Vehicles.

110. Had Plaintiffs and Class members known of the Immobilizer Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

111. Through their omissions regarding the Immobilizer Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and other Class members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

112. As a direct and proximate result of Defendants' omissions, Plaintiff and other Class members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Immobilizer Defect had been disclosed to them, and therefore have incurred damages in an amount to be determined at trial.

      d. **California Count 4: Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314 and 10212)**

113. Plaintiffs repeat and reallege all paragraphs above, as if fully set forth herein.

114. Plaintiff Miyoshi Morrow brings this count individually and on behalf of the other members of the Hyundai California Class, against Hyundai USA.

115. Plaintiff Rachel Perry brings this count individually and on behalf of the other members of the Kia California Class, against Kia USA.

116. For purposes of this count, Plaintiffs Morrow and Perry shall be referred to as "Plaintiffs."

117. For purposes of this count, Hyundai and Kia California Class members shall be referred to as "Class members."

118. Plaintiffs and the Class members purchased and leased their Class Vehicles from Defendants' authorized dealers, and are therefore in privity with Defendants. Moreover, Plaintiffs and the Class members were the intended and direct beneficiaries of agreements between Defendants and their dealers regarding

1   sales and leases of the Class Vehicles, because, upon information and belief, the

2   agreements expressly were made for the direct benefit of Plaintiffs and the Class

3   members.

4       119.   A warranty that the Class Vehicles were in merchantable condition and

5   fit for the ordinary purpose for which such goods are used is implied by law

6   pursuant to Cal. Com. Code §§ 2314 and 10212.

7       120.   Defendants are and were at all relevant times "merchants" with respect

8   to motor vehicles, Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor

9   vehicles under § 2103(1)(d).

10       121.   Defendants are and were at all relevant times "lessors" of motor

11   vehicles under Cal. Com. Code § 10103(a)(16).

12       122.   All Class members who purchased Class Vehicles in California are

13   "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

14       123.   All Class members who leased Class Vehicles in California are

15   "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

16       124.   The Class Vehicles were at all relevant times "goods" within the

17   meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

18       125.   Defendants knew or had reason to know of the specific use for which

19   the Vehicles were purchased or leased. The Class Vehicles did not comply with the

20   implied warranty of merchantability because, at the time of sale and at all times

21   thereafter, they were defective and not in merchantable condition, would not pass

22   without objection in the trade, and were not fit for the ordinary purpose for which

23   vehicles were used. Specifically, the Class Vehicles contain the Immobilizer Defect

24   which render the Class Vehicles inherently defective, unsecure, and unsafe.

25       126.   Plaintiffs and the Class members have provided Defendants with

26   reasonable notice and opportunity to cure the breaches of their implied warranties

27   by way of  the numerous complaints filed against them and the individual notice

28   letters sent by Class members within a reasonable amount of time after the

1    Immobilizer Defect became public. Additionally, on September 12, 2022, Class
2    members sent a notice letter to them.

3       127.   Any attempt by Defendants to disclaim or limit the implied warranty
4    of merchantability vis-à-vis consumers is unconscionable and unenforceable here.
5    Specifically, Defendants' warranty limitation is unenforceable because they
6    knowingly sold or leased a defective product without informing consumers about
7    the Immobilizer Defect. The time limits contained in Defendants' warranty periods
8    were also unconscionable and inadequate to protect Plaintiffs and other Class
9    members. Among other things, Plaintiffs and other Class members had no
10   meaningful choice in determining these time limitations, the terms of which
11   unreasonably favored Defendants. A gross disparity in bargaining power existed
12   between Defendants and other Class members, and Defendants knew of the defect
13   at the time of sale.

14      128.   Alternatively, Plaintiffs and the Class members were excused from
15   providing Defendants with notice and an opportunity to cure the breach, because it
16   would have been futile. As alleged above, they have long known that the Class
17   Vehicles contained the Immobilizer Defect; however, to date, Defendants have not
18   instituted an adequate and meaningful repair program with respect to the Class
19   Vehicles. As such, Plaintiffs and the Class members had no reason to believe that
20   Defendants would have repaired the Immobilizer Defect if they presented their
21   Class Vehicles to them for repair.

22      129.   As a direct and proximate result of Defendants' breach of the implied
23   warranty of merchantability, Plaintiffs' and the Class members' Class Vehicles
24   were and are defective, and the Immobilizer Defect in their Class Vehicles has not
25   been remedied. Therefore, Plaintiffs and the Class members have been damaged, in
26   an amount to be proven at trial, through their overpayment at the time of purchase
27   or lease for the Class Vehicles with an undisclosed defect that would not be
28   remedied.

1

2          e.    **California Count 5: Unjust Enrichment**

3          130.   Plaintiffs repeat and reallege paragraphs 17-30, above, as if fully set

4    forth herein.

5          131.   Plaintiff Miyoshi Morrow brings this count individually and on behalf

6    of the other members of the Hyundai California Class, against Hyundai USA.

7          132.   Plaintiff Rachel Perry brings this count individually and on behalf of

8    the other members of the Kia California Class, against Kia USA.

9          133.   For purposes of this count, Plaintiffs Morrow and Perry shall be

10   referred to as "Plaintiffs."

11         134.    For purposes of this count, Hyundai and Kia California Class

12   members shall be referred to as "Class members."

13         135.   By reason of their conduct, Defendants damaged Plaintiffs and Class

14   members. Plaintiffs and Class members conferred a benefit on Defendants by

15   overpaying for Class Vehicles at prices that were artificially inflated by

16   Defendants' concealment of the Immobilizer Defect.

17         136.   As a result of Defendants' fraud and deception, Plaintiffs and Class

18   members were not aware of the true facts concerning the Class Vehicles and did not

19   benefit from Defendants' conduct.

20         137.   Defendants knowingly benefitted from their unjust conduct.

21   Defendants sold Class Vehicles with the Immobilizer Defect for more than what the

22   Class Vehicles were worth, at the expense of Plaintiffs and Class members.

23         138.   Defendants readily accepted and retained these benefits from Plaintiffs

24   and Class members.

25         139.   It is inequitable and unconscionable for Defendants to retain these

26   benefits because they intentionally concealed, suppressed, and failed to disclose the

27

28

140.   Immobilizer Defect to consumers. Plaintiffs and Class members would not have purchased the Class Vehicles or would have paid less for them, had Defendants not concealed the Immobilizer Defect.

141.   Plaintiffs and Class members do not have an adequate remedy at law.

142.   Equity cannot in good conscience permit Defendants to retain the benefits that they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of Defendants' unjust enrichment is necessary.

**3.      Kansas**

a.      **Kansas Count 1: Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623, et seq.)**

143.   Plaintiffs repeat and reallege all paragraphs above, as if fully set forth herein.

144.   Plaintiff Tracy Spradlin (for purposes of this count, "Plaintiff") brings this count individually and on behalf of the other members of the Hyundai Kansas Class (for purposes of this count, "Class members"), against Hyundai USA.

145.   Hyundai USA, Plaintiff, and the Class members are "persons" within the meaning of Kan. Stat. Ann. § 50-624(i).

146.   Plaintiff and the Class members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

147.   The Kansas Consumer Protection Act ("Kansas CPA") prohibits deceptive or unconscionable acts or practices in connection with a consumer transaction. Kan. Stat. Ann. §§ 50-626 and 50-627.

148.   In the course of its business, Hyundai USA, through its agents, employees, and/or subsidiaries, violated the Kansas CPA by omitting, concealing, and/or failing to disclose material facts regarding the security, reliability, safety, and performance of the Hyundai Class Vehicles, as detailed above.

149.    Hyundai USA had an ongoing duty to Plaintiff and the Class members to refrain from unfair or deceptive practices under the Kansas CPA in the course of its business. Specifically, Hyundai USA owed Plaintiff and the Class members a duty to disclose all the material facts concerning the Immobilizer Defect in the Hyundai Class Vehicles because it possessed exclusive knowledge Hyundai Class Vehicles did not contain immobilizer technology and intentionally concealed the Immobilizer Defect from Plaintiff and the Class members.

150.    Specifically, by misrepresenting the Hyundai Class Vehicles as secure, safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Hyundai Class Vehicles and the Immobilizer Defect, Hyundai USA engaged in one or more of the following unfair or deceptive business practices prohibited by Kan. Stat. Ann. § 50-627(a):

      a.    Representing that the Hyundai Class Vehicles have characteristics, uses, benefits, and qualities which they do not have.

      b.    Representing that the Hyundai Class Vehicles are of a particular standard, quality, and grade when they are not.

      c.    Using exaggeration, falsehoods, ambiguity in connection advertising the Hyundai Class Vehicles; and

      d.    Failing to state the material facts concerning the Hyundai Class Vehicles in a manner that tended to deceive. Kan. Stat. Ann. §§ 50-626(b)(1)(A), (1)(D), (2)-(3), and (5).

151.    Hyundai USA's unfair or deceptive acts or practices, including concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class members, about the true safety and reliability of Hyundai Class Vehicles, the

1  quality of the Hyundai Class Vehicles, and the true value of the Hyundai Class
2  Vehicles.

3      152.  Hyundai USA's scheme and concealment of the Immobilizer Defect
4  and true characteristics of the security system in the Hyundai Class Vehicles were
5  material to Plaintiff and the Class members, as Hyundai USA intended. Had they
6  known the truth, Plaintiff and the Class members would not have purchased or
7  leased the Hyundai Class Vehicles, or would have paid significantly less for them.

8      153.  Plaintiff and the Class members had no way of otherwise learning the
9  facts that Hyundai USA had concealed or failed to disclose. Plaintiff and the Class
10  members did not, and could not, unravel Hyundai USA's deception on their own.

11      154.  Hyundai USA had an ongoing duty to Plaintiff and the Class members
12  to refrain from unfair or deceptive practices under the Kansas CPA in the course of
13  its business. Specifically, Hyundai USA owed Plaintiff and the Class members a
14  duty to disclose all the material facts concerning the Immobilizer Defect in the
15  Hyundai Class Vehicles because it possessed exclusive knowledge, it intentionally
16  concealed the Immobilizer Defect from Plaintiff and the Class members, and/or
17  they made misrepresentations that were rendered misleading because they were
18  contradicted by withheld facts.

19      155.  Plaintiff and Class members suffered ascertainable losses and actual
20  damages as a direct and proximate result of Hyundai USA's concealment,
21  misrepresentations, and/or failure to disclose material information.

22      156.  Hyundai USA's violations present a continuing risk to Plaintiff and the
23  Class members, as well as to the general public. Hyundai USA's unlawful acts and
24  practices complained of herein affect the public interest.

25      157.  Pursuant to Kan. Stat. Ann. § 50-634, Plaintiff and the Class members
26  seek an order enjoining Hyundai USA's unfair or deceptive acts or practices and
27  awarding damages and any other just and proper relief available under the Kansas
28  CPA.

    b.    **Kansas Count 2: Breach of Implied Warranty of Merchantability (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212)**

158.   Plaintiffs repeat and reallege all paragraphs above, as if fully set forth herein.

159.   Plaintiff Tracy Spradlin (for purposes of this count, "Plaintiff") brings this count individually and on behalf of the other members of the Hyundai Kansas Class (for purposes of this count, "Class members"), against Hyundai USA.

160.   A warranty that the Hyundai Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212. The Hyundai Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Hyundai Class Vehicles suffer from the Immobilizer Defect.

161.   Hyundai USA is and was at all relevant times a "merchant" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and a "seller" of motor vehicles under § 84-2-103(1)(d).

162.   With respect to leases, Hyundai USA is and was at all relevant times a "lessor" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

163.   All Class members  are "buyers" within the meaning of Kan. Stat. Ann. § 84-2-103(1)(a).

164.   All Class members are "lessees" within the meaning of Kan. Stat. Ann. § 84-2A-103(1)(n).

165.   The Hyundai Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

1    166.   The Hyundai Class Vehicles did not comply with the implied warranty

2    of merchantability because, at the time of sale and lease and at all times thereafter,

3    they were defective and not in merchantable condition, would not pass without

4    objection in the trade, and were not fit for the ordinary purpose for which vehicles

5    were used. Specifically, at the time they were sold and leased, the Hyundai Class

6    Vehicles contained the Immobilizer Defect.

7    167.   Plaintiff and the Class members have provided Hyundai USA with

8    reasonable notice and opportunity to cure the breaches of its implied warranties. A

9    notice letter was sent on behalf of Plaintiff and the Class members to Hyundai USA

10   on September 12, 2022.

11   168.   Alternatively, any opportunity to cure the breach is unnecessary and

12   futile. As alleged above, Hyundai USA has long known that the Hyundai Class

13   Vehicles contained the Immobilizer Defect, and that the Immobilizer Defect has

14   caused a safety and security risk in Hyundai Class Vehicles; however, to date,

15   Hyundai USA has not instituted a recall or any other meaningful ameliorative

16   measures. Therefore, Plaintiff and the Class members had no reason to believe that

17   Hyundai USA would have repaired the Immobilizer Defect if Plaintiff and the Class

18   members presented their Hyundai Class Vehicles to it for repair.

19   169.   As a direct and proximate result of Hyundai USA's breach of the

20   implied warranty of merchantability, Plaintiff and Class members have been

21   damaged in an amount to be proven at trial.

22              c.    **Kansas Count 3: Fraud by Omission**

23   170.   Plaintiffs repeat and reallege all paragraphs above, as if fully set forth

24   herein.

25   171.   Plaintiff Tracy Spradlin (for purposes of this count, "Plaintiff") brings

26   this count individually and on behalf of the other members of the Hyundai Kansas

27   Class (for purposes of this count, "Class members"), against Hyundai USA.

28

172. Hyundai USA is liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

173. As explained above, the Immobilizer Defect in Hyundai Class Vehicles poses a security and safety risk.

174. Hyundai USA had a duty to disclose the Immobilizer Defect to Plaintiff and the Class members because:

    a.    Hyundai USA had exclusive access to and far superior knowledge about technical facts regarding the Immobilizer Defect;

    b.    Given the Immobilizer Defect's hidden and technical nature, Plaintiff and the Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the Immobilizer Defect on their own;

    c.    Hyundai USA knew that the Immobilizer Defect gave rise to security and safety concerns for the consumers who use the vehicles, and the Hyundai Class Vehicles containing the Immobilizer Defect would have been a material fact to Plaintiff's and the Class members' decisions to buy or lease Hyundai Class Vehicles; and

    d.    Hyundai USA made incomplete representations about the safety, security, and reliability of the Hyundai Class Vehicles while purposefully withholding material facts about a known Immobilizer Defect. In uniform advertising and materials provided with each Hyundai Class Vehicle, Hyundai USA intentionally concealed, suppressed, and failed to disclose to Plaintiff and the Class members that the Hyundai Class Vehicles contained the Immobilizer Defect. Because they volunteered to provide information about the Hyundai Class Vehicles that they

1               marketed and offered for sale and lease to Plaintiff and the Class

2               members, Hyundai USA had a duty to disclose the whole truth.

3          175.   In breach of its duties, Hyundai USA failed to disclose that the

4   Hyundai Class Vehicles were not safe, secure, and reliable.

5          176.   Hyundai USA intended for Plaintiff and the Class members to rely on

6   its omissions—which they did by purchasing and leasing the Hyundai Class

7   Vehicles at the prices they paid believing that they had standard anti-theft

8   technology.

9          177.   That reliance was reasonable, because a reasonable consumer would

10  not have expected that the Hyundai Class Vehicles contained the Immobilizer

11  Defect that poses a security and safety risk. Hyundai USA knew that reasonable

12  consumers expect that their vehicle has standard anti-theft technology and would

13  rely on those facts in deciding whether to purchase, lease, or retain a new or used

14  motor vehicle. Whether a manufacturer's products are safe, secure, and reliable, and

15  whether that manufacturer stands behind its products, are material concerns to a

16  consumer.

17         178.   Additionally, Hyundai USA ensured that Plaintiff and the Class

18  members did not discover this information by actively concealing and omitting the

19  true nature of the Immobilizer Defect from consumers.

20         179.   Hyundai USA actively concealed and suppressed these material facts,

21  in whole or in part, to maintain a market for its Class Vehicles, to protect profits,

22  and avoid harm to the commercial reputations of Defendants and their products.

23  Hyundai USA did so at the expense of Plaintiff and the Class members.

24         180.   The omitted and concealed facts were material because a reasonable

25  person would find them important in purchasing, leasing, or retaining a new or used

26  motor vehicle, and because they directly impact the value of the Hyundai Class

27  Vehicles purchased or leased by Plaintiff and the Class members.

28

1    181.   Had they been aware of the Immobilizer Defect in the Hyundai Class

2    Vehicles, and Hyundai USA's disregard for consumers' security and safety,

3    Plaintiff, and the Class members either would not have paid as much as they did for

4    their Hyundai Class Vehicles, or they would not have purchased or leased them.

5    182.   As alleged above, if Hyundai USA had fully and adequately disclosed

6    the Immobilizer Defect to consumers, Plaintiff and the Class members would have

7    seen such a disclosure.

8    183.   Accordingly, Hyundai USA is liable to Plaintiff and the Class

9    members for their damages in an amount to be proven at trial, including, but not

10   limited to, their lost overpayment for the Hyundai Class Vehicles at the time of

11   purchase or lease.

12   184.   Hyundai USA's acts were done maliciously, oppressively,

13   deliberately, with intent to defraud; in reckless disregard of Plaintiff's and Class

14   members' rights and well-being; and to enrich themselves.

15            d.   **Kansas Count 4: Unjust Enrichment**

16   185.   Plaintiffs repeat and reallege paragraphs 17-30, above, as if fully set

17   forth herein.

18   186.   Plaintiff Tracy Spradlin (for purposes of this count, "Plaintiff") brings

19   this count individually and on behalf of the other members of the Hyundai Kansas

20   Class (for purposes of this count, "Class members"), against Hyundai USA.

21   187.   By reason of its conduct, Hyundai USA damaged Plaintiff and Class

22   members. Plaintiff and Class members conferred a benefit on Hyundai USA by

23   overpaying for Hyundai Class Vehicles at prices that were artificially inflated by

24   Hyundai USA's concealment of the Immobilizer Defect.

25   188.   As a result of Hyundai USA's fraud and deception, Plaintiff and Class

26   members were not aware of the true facts concerning the Hyundai Class Vehicles

27   and did not benefit from Hyundai USA's conduct.

28

189. Hyundai USA knowingly benefitted from its unjust conduct. Hyundai USA sold Hyundai Class Vehicles with the Immobilizer Defect for more than what the Hyundai Class Vehicles were worth, at the expense of Plaintiff and Class members.

190. Hyundai USA readily accepted and retained these benefits from Plaintiff and Class members.

191. It is inequitable and unconscionable for Hyundai USA to retain these benefits because they intentionally concealed, suppressed, and failed to disclose the Immobilizer Defect to consumers. Plaintiff and Class members would not have purchased the Hyundai Class Vehicles or would have paid less for them, had Hyundai USA not concealed the Immobilizer Defect.

192. Plaintiff and Class members do not have an adequate remedy at law.

193. Equity cannot in good conscience permit Hyundai USA to retain the benefits that it derived from Plaintiff and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of Hyundai USA's unjust enrichment is necessary.

## VIII. **PRAYER FOR RELIEF**

194. WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for relief and judgment as follows:

a.      An order certifying the proposed Classes, designating Plaintiffs as the named representative of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Code of Civil Procedure § 382;

b.      An order enjoining Defendants to desist from further deceptive distribution and sales practices with respect to the Class Vehicles and such other injunctive relief that the Court deems just and proper;

c.      A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

d.      An award to Plaintiffs and Class members costs, restitution, compensatory damages for economic loss and out of pocket costs, damages under applicable state's laws, punitive and exemplary damages under applicable law; and disgorgement, in an amount to be determined at trial;

e.       Any applicable statutory and civil penalties;

f.       An award of costs and attorneys' fees, as allowed by law;

g.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded.

h.      Leave to amend this Complaint to conform to the evidence produced at trial; and

i.      Such other or further relief as the Court may deem appropriate, just, and equitable under the circumstances.

1

## IX.    DEMAND FOR JURY TRIAL

2      195.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,

3 Plaintiffs demand a jury trial as to all issues triable by a jury.

4

   Date: September 12, 2022        Respectfully submitted,

5

6                       */s/ Roland Tellis*

                      BARON & BUDD, P.C.

7                       Roland Tellis (SBN 186269)

                      rtellis@baronbudd.com

8                       David Fernandes (SBN 280944)

9                       dfernandes@baronbudd.com

                      Adam Tamburelli (SBN 301902)

10                      atamburelli@baronbudd.com

11                      Shannon Royster (SBN 314126)

                      sroyster@baronbudd.com

12                      15910 Ventura Boulevard, Suite 1600

13                      Encino, CA 91436

                      Telephone: 818-839-2333

14                      Facsimile: 818-986-9698

15

16                      WILLIAMS DIRKS DAMERON LLC

                      Matthew L. Dameron (*pro hac vice* to be filed)

17                      1100 Main Street, Suite 2600

18                      Kansas City, Missouri 64105

                      T: (816) 945-7110

19                      F: (816) 945-7118

20                      E: matt@williamsdirks.com

21                      *Counsel for Plaintiffs*

22

23

24

25

26

27

28