# EXHIBIT 10

JD1,NDISPO

# U.S. District Court - District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:22-cv-02123-NYW-KLM

| | |
|---|---|
| Jones v. Kia America, Inc. et al | Date Filed: 08/18/2022 |
| Assigned to: Judge Nina Y. Wang | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Kristen L. Mix | Nature of Suit: 355 Motor Vehicle Prod. Liability |
| Cause: 28:1332 Diversity-Motor Vehicle Product Liability | Jurisdiction: Diversity |

**Plaintiff**

**Heather Jones**
*on behalf of herself and all others similarly situated*

represented by **Kevin Daniel Stanley**
Humphrey Farrington & McClain, PC
P.O. Box 900
221 West Lexington
Suite 400
Independence, MO 64050
816-836-5050
Fax: 816-836-8966
Email: kds@hfmlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai Motor America**

**Defendant**

**Hyundai Kia America Technical Center, Inc**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/18/2022 | 1 | COMPLAINT *Class Action Complaint & Demand for Jury Trial* against Heather Jones (Filing fee $ 402,Receipt Number ACODC-8614536)Attorney Kevin Daniel Stanley added to party Heather Jones(pty:pla), filed by Heather Jones. (Stanley, Kevin) (Entered: 08/18/2022) |

| 08/18/2022 | 2 | Case assigned to Judge Nina Y. Wang and drawn to Magistrate Judge Kristen L. Mix. Text Only Entry. (tgall, ) (Entered: 08/19/2022) |
| 08/18/2022 | 3 | Magistrate Judge consent form issued pursuant to 28 U.S.C. 636(c). No Summons Issued. (tgall, ) (Entered: 08/19/2022) |
| 08/23/2022 | 4 | ORDER REFERRING CASE: This case is referred to Magistrate Judge Kristen L. Mix for **non-dispositive matters**. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of D.C.COLO.LCivR 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause, (3) hear and determine pretrial matters, including discovery and other non-dispositive motions, and (4) conduct a pretrial conference and enter a pretrial order. Court-sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the Magistrate Judge or on the request of the parties by motion, this court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. **Counsel for the Parties and all counsel who may later enter an appearance shall review and familiarize themselves with the undersigned's Practice Standards, as well as the Practice Standards of the assigned Magistrate Judge.** By Judge Nina Y. Wang on 08/23/2022. Text Only Entry (nywlc2, ) (Entered: 08/23/2022) |
| 09/01/2022 | 5 | ORDER SETTING SCHEDULING/PLANNING CONFERENCE by Magistrate Judge Kristen L. Mix on 09/01/2022. Proposed Scheduling Order due 10/19/2022. Scheduling/Planning Conference set for 10/26/2022 11:00 AM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (Attachments: # 1 Continuation of Main Document, # 2 Continuation of Main Document, # 3 Continuation of Main Document) (alave, ) (Entered: 09/01/2022) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/06/2022 08:17:59 | | | |
| **PACER Login:** | jb0014 | **Client Code:** | 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-02123-NYW-KLM |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| Heather Jones | ) | |
| on behalf of herself | ) | |
| and all others similarly situated | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | Demand for Jury Trial |
| Kia America, Inc., | ) | |
| 111 Peters Canyon Rd. | ) | Case No. |
| Irvine, CA 92606 | ) | |
| | ) | |
| And | ) | |
| | ) | COMPLAINT – CLASS ACTION |
| Hyundai Motor America | ) | |
| 10550 Talbert Ave. | ) | |
| Fountain Valley, CA 92708 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| Hyundai Kia America | ) | |
| Technical Center, Inc. | ) | |
| 6800 Geddes Rd. | ) | |
| Superior Township, MI 48198 | ) | |
| | ) | |
| *Defendants.* | ) | |

## <u>CLASS ACTION COMPLAINT &</u>
## <u>DEMAND FOR JURY TRIAL</u>

Comes now Plaintiff, individually and on behalf of all other persons similarly situated, for

her complaint for damages against Defendants Kia America, Inc, Hyundai Motor America, and

Hyundai Kia America Technical Center, Inc. (collectively, "Defendants").

## NATURE OF ACTION

1.      This is a class action claim arising from a defect in Defendants' vehicles which make them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

2.      Defendants did not disclose this defect, which is a material fact, and a fact that a reasonable person would rely on when purchasing a vehicle.

3.      During the relevant class period, Defendants sold these Defective Vehicles (as defined below) at multiple locations throughout the state of Colorado and the United States.

4.      During the relevant class period, Defendants manufactured, designed, and put into the stream of commerce the Defective Vehicles.

5.      Defendants did so without disclosing the fact that these vehicles had a defect which made them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

6.      Even now, Defendants admit there is a theft problem with these vehicles but refuse to fix them, compensate consumers, or otherwise take actions to solve the problems their Defective Vehicles are causing.

## PARTIES

7.      Plaintiff Heather Jones is a resident and citizen of the state of Colorado.

8.      Plaintiff brings this action on her own behalf and as a representative of a class of persons who purchased and/or own a Defective Vehicle that was manufactured, produced, distributed, and/or sold by Defendants.

9.      This matter arises out of negligent acts, errors, and omissions committed by the Defendants against Plaintiff causing Plaintiff and the putative class to suffer damages.

10.      Plaintiff brings this action on her own behalf and as representatives of a class of similarly situated persons to recover damages for violations of the Colorado Consumer Protection

Act, Colo. Rev. Stat. § 6-1-101 *et seq.*, the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.,* among other claims, for economic and injunctive relief against Defendants which manufactured, designed, tested, distributed, promoted and sold the Defective Vehicles.

11.     Plaintiff and Class Plaintiffs are consumers within the meaning of Colorado Consumer Protection Act.

12.     Defendants engaged in trade or commerce within the meaning of Colorado Consumer Protection Act.

13.     At the time the vehicle was purchased, Plaintiff were unaware that the vehicle was defective and that it was not fit for the ordinary purposes for which the product is used in that it is easy to steal, unsafe, and worth less than it should be if it did not have the defect.

14.     Plaintiff purchased a 2020 Hyundai Elantra from Arapaho Hyundai in Centennial, Colorado for personal, family or household purposes.

15.     Plaintiffs, on behalf of herself and the putative class, seeks a refund for monies paid as a result of their purchase of the Defective Vehicles, compensation for other losses incurred as a result of the defect, and further seeks injunctive relief, enjoining Defendants from selling the Defective Vehicles, and requiring Defendants to fix the defect.

16.     Defendant, Kia America, Inc., resident and citizen of California as it is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

17.     Defendant, Hyundai Motor America, is a resident and citizen of California in that it is a California corporation that maintains its principal place of business at 10550 Talbert Avenue,

Fountain Valley, California 92708. Defendant Hyundai Motor America is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

18.     Defendant, Hyundai Kia America Technical Center, Inc., is a resident and citizen of Michigan in that it is a Michigan corporation that maintains its principal place of business at 6800 Geddes Road, Superior Township, Michigan 48198. Defendant Hyundai America Technical Center, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiff brings this action on behalf of a class which numbers in the thousands, (2) Plaintiff (Colorado) and Defendants (California and Michigan) are citizens of different states, and (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d). Plaintiff brings a putative nationwide class that includes all people that purchased a Defective Vehicle. On information and belief, Defendants have sold thousands of Defective Vehicles throughout Colorado and the United States, totaling millions upon millions of dollars in sales.

20.     This Court has personal jurisdiction over Defendants in that Defendants transact business within the state of Colorado and committed one or more tortious acts within the state of Colorado.

21.     Defendants transacted business and/or committed tortious acts within the state of Colorado. Defendants design, manufacture, distribute, and/or sell dangerous and/or defective vehicles in Colorado. Defendants placed the Defective Vehicles and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Colorado from which Plaintiff's claims arise.

22.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that the purchase of the Defective Vehicle by Plaintiff Pue took place in the District of Colorado.

23.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendants have caused harm to Class Members residing in this district, and/or because the Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

24.     The Defective Vehicles made the subject of this suit, which are manufactured, designed, produced, distributed, and sold by Defendants, are easy to steal, unsafe, and worth less than they would be if they did not have the defect.

25.     Defendants manufacture, design, produce, distribute and sell the "Defective Vehicles," which are hereby defined as: "all Kia models from 2011-2021, and all Hyundai models from 2011-2021 that lack an engine immobilizer" All these vehicles share the same defects, and therefore an owner of any one of them may bring a class action on behalf of the entire class.

26.     Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff, in Defendants' advertising, labeling or otherwise that these vehicles

are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

27.    One of the reasons why these vehicles are stolen so easily is that the vehicles do not comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114. FMVSS 114, S.5.1.1 requires:

> Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:
>
>> (a) The normal activation of the vehicle's engine or motor; and
>>
>> (b) Either steering, or forward self-mobility, of the vehicle, or both.

28.    The Defective Vehicles do not comply with this FMVSS in that whenever the key is removed from the starting system, neither steering nor forward self-mobility is prevented. If it were, the vehicles would not be stolen at alarming rates.

29.    A stolen vehicle cannot provide reliable transportation.

30.    A stolen vehicle is not a safe vehicle.

31.    A vehicle that can be too easily stolen is not a vehicle that can be depended on to provide reliable transportation.

32.    A vehicle that can be too easily stolen is not a safe vehicle.

33.    The vehicles are defective in that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

34.    This means that all a thief needs to do is strip the ignition column, exposing a piece that pops off, and then stick a USB drive, a knife, or some other similar tool to start the vehicle without a key or code.

35.     Once they do so, they can freely operate the vehicle, including the vehicle's steering and forward self-mobility.

36.     Considering how many people charge their cell phones in their cars, the necessary instrument needed to steal a Defective Vehicle is usually readily available to any thief.

37.     Additionally, on information and belief, some of the Defective Vehicles' windows are not adequately connected to the security system which thus allows a thief to break or pry the window without the alarm being triggered.

38.     Defendants knew their vehicles were defective in this manner but failed and refused to disclose these defects to customers, despite having the capability and means to do so.

39.     Defendants had the capability and means to add an engine immobilizer or similar device, yet they failed to do so.

40.     Defendants also knew just how dangerous it was to not have an engine immobilizer.

41.     Beginning in 2009, Kia sought to add an immobilizer to its Amanti line. It told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. *See,* Federal Register, Vol. 75, No. 6, page 1448, January 11, 2010.

42.     Likewise, beginning in 2007, Hyundai sought to add an immobilizer to its Azera line. It told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. See, Federal Register, Vol. 72, No. 138, page 39662, July 19, 2007.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of herself and the following class of similarly situated persons:

       a.   A "Nationwide Class" based on claims of unjust enrichment, violations of the Magnuson Moss Warranty Act, and/or breach of express and/or implied

warranty consisting of all customers who purchased any of the Defective

Vehicles in the United States within the past five years; or

b.   A "Nationwide Class" based on claims of unjust enrichment, negligence, and

design defect consisting of all consumers who own any of the Defective

Vehicles in the United States; or

c.   A "Colorado Sub-Class" based on claims brought under the Colorado

Consumer Protection Act, and for unjust enrichment, and/or breach of implied

and/or express warranty consisting of all persons who purchased any of the

Defective Vehicles in the state of Colorado for personal, family, business, or

household purposes within the applicable statute of limitations period; or

d.   A "Colorado Sub-Class" based on claims of unjust enrichment, negligence, and

design defect consisting of all consumers who own any of the Defective

Vehicles in Colorado.

44.   Excluded from each Class or Sub-Class is Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from the Class or Sub-Class are those claiming they have suffered a personal injury as result of the Defective Vehicles, as well as residents of Wisconsin.

45.   Each of the proposed Nationwide Class or Colorado Sub-Class meets all requirements for class certification. The Class or Sub-Classes satisfy the numerosity standards. The Class or Sub-Classes are believed to number in the thousands of persons. As a result, joinder of all Class or Sub-Class Members in a single action is impracticable. Class or Sub-Class Members

may be informed of the pendency of this Class Action by, among other methods, direct, published and/or broadcast notice.

46.     There are questions of fact and law common to the Nationwide Class or Colorado Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class or Sub-Class arising from Defendants' actions include, without limitation, the following:

       a.     Whether Defendants manufactured and designed the Defective Vehicles without engine immobilizers;

       b.     Whether the failure of the vehicles to, among other design failures, have engine immobilizers makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers

       c.     Whether the absence of an engine immobilizer, among other design failures, is a material fact in the purchasing of a vehicle;

       d.     Whether, in marketing and selling the Defective Vehicles, Defendants failed to disclose the lack of an engine immobilizers and other design failures;

       e.     Whether Defendants failed to disclose and/or concealed the material fact that the Defective Vehicles, among other things, did not have engine immobilizers;

       f.     Whether Defendants failed to warn adequately of the dangers of vehicles that do not contain engine immobilizers, among other things;

       g.     Whether Defendants knew or should have known that the Defective Vehicles did not have engine immobilizers, among other things;

h.      Whether Defendants knew or should have known that the failure of the vehicles to have engine immobilizers, among other things, makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers;

i.      Whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding its knowledge of the defects' dangerous nature and risks of harm;

j.      Whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Defective Vehicles from the consuming public;

k.      Whether the Defective Vehicles are fit for their ordinary purposes;

l.      Whether the Defective Vehicles proved reliable transportation;

m.      Whether the Defective Vehicles are safe;

n.      Whether the Defective Vehicles contain a design defect;

o.      Whether Defendants' conduct violated the Colorado Consumer Protection Act; and/or

p.      Whether Defendants' conduct violated the Magnuson Moss Warranty Act.

47.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

48.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members or Sub-Class

Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Nationwide Class Members or Colorado Sub-Class Members to protect their interests.

49.     The claims of Plaintiff are typical of the claims of members of the Nationwide Class and the Colorado Sub-Class. Upon information and belief, the Defective Vehicles all share the same defects. Upon information and belief, the labels, manuals, advertising, and disclosures concerning the Defective Vehicles all fail to reasonably disclose the presence of these defects. Therefore, the information withheld by Defendants to Plaintiff and all Nationwide Class or Colorado Sub-Class members was identical.

50.     Plaintiff is an adequate representative of the Nationwide Class and Colorado Sub-Class because she is a member of both Classes and her interests do not conflict with the interests of the members of the Nationwide Class or Colorado Sub-Class she seeks to represent. The interests of the members of the Nationwide Class or Colorado Sub-Class will be fairly and adequately protected by the Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex class action litigation.

51.     Plaintiff seeks a refund of some or all monies paid as a result of the purchase of the Defective Vehicle that occurred following Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Vehicle.

52.     Plaintiff also seeks compensation for damages incurred beyond the reduced value of their vehicles, including but not limited to the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

53.     Plaintiff specifically excludes from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Vehicle.

54.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Nationwide Class or Colorado Sub-Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Colorado Sub-Class Members.

55.     Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

56.     Class action treatment is appropriate in this case because Defendants acted, or refused to act, in a manner that was generally applicable to – and often identical to – each member of the Nationwide Class or Sub-Class. Defendants provided vehicles with the same defect to, and withheld the same information from, all members of the Nationwide Class or Colorado Sub-Class and sold vehicles with the same defects.

57.     Notice can be provided to Class Members or Sub-Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

**CLAIMS FOR RELIEF**

**COUNT I – VIOLATION OF THE COLORADO CONSUMER
PROTECTION ACT (COLO. REV. STAT. § 6-1-101 *ET SEQ.*)**

58.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

59.     The acts and practices engaged in by Defendants, and described herein, constitute
unlawful, unfair and/or fraudulent business practices in violation of the Colorado Consumer
Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.* (CCPA)

60.     Plaintiff and the Colorado Sub-Class Members are consumers within the meaning
of the CCPA.

61.     Defendants are engaged in trade or commerce as used in the CCPA.

62.     Under the CCPA, unfair methods of competition, unconscionable acts or practices,
and unfair or deceptive acts or practices in trade or commerce are unlawful.

63.     Defendants engaged in unlawful practices including deception, false promises,
misrepresentation, and/or the concealment, suppression, or omission of material facts—
specifically, the failure to warn or disclose that the vehicles were defective, including that they
lacked an engine immobilizer, as well as the representation that the Defective Vehicles meet all
federal safety standards—in connection with the sale, distribution or advertisement of the
Defective Vehicle in violation of the CCPA.

64.     Plaintiff purchased the Defective Vehicle, a product that was falsely represented,
as stated above, in violation of the CCPA, and as a result, Plaintiff suffered economic damages in
that the vehicle she purchased was worth less than the vehicle she thought she had purchased had
Defendants not omitted and/or misrepresented material facts. Plaintiff, and other reasonable
consumers, had no reasonable information to suggest that the Defective Vehicles lacked an engine
immobilizer, failed to meet FMVSS 114, or was otherwise easy to steal and unsafe.

65.     Plaintiff and the Colorado Sub-Class members acted as reasonable consumers would in light of all circumstances.

66.     Defendants' actions and omissions would cause a reasonable person to enter in the sale and transaction that resulted in damages to Plaintiff and the Colorado Sub-Class.

67.     As a result of Defendants' actions and omissions, Plaintiff and the Colorado Sub-Class suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of money paid as a result of their purchases.

68.     These damages are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

69.     Plaintiff and the Colorado Sub-Class also seek injunctive relief, requiring Defendants to fix the Defective Vehicles.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT

70.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

71.     Plaintiff brings this Count against Defendants on behalf of members of the Nationwide Consumer Class.

72.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

73.     The Defective Vehicles are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

74.     Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

75.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

76.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

77.     Defendants provided Plaintiff and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S. C. § 2301(7).

78.     As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for the ordinary purpose of passenger motor vehicles, were not far easier to steal than other vehicles, and were not unsafe and/or unreliable due to the ease at which they can be stolen.

79.     Defendants breached this implied warranty and are therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1) because, without limitation, the Defective Vehicles share common design defects, including that they lack engine immobilizers.

80.     These defects render the Defective Vehicles deficient, in that they do not provide safe and reliable transportation, as they are tremendously easy to steal.

81.     A stolen vehicle cannot provide reliable transportation.

82.     A vehicle that is incredibly easy to steal cannot be relied on for transportation.

83.     A stolen vehicle is not a safe vehicle.

84.     A vehicle that is incredibly easy to steal is an unsafe vehicle.

85.     Defendants provided Plaintiff and the other Class members with an express written warranty in connection with the purchase or lease of their vehicles, as described further below, that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

86.     Defendants made written affirmations of fact that the Defective Vehicles would be free of defects that would prevent ordinary use.

87.     Upon information and belief, Defendants affixed labeling and other written affirmations making specific, performance-related representations related to the nature of the Defective Vehicles, including expressly warranting that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

88.     Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

89.     Any efforts to limit the express and implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void. Any limitations on the express and implied warranties are procedurally unconscionable. Defendants purposefully misrepresented the Defective Vehicles to consumers.

90.     Additionally, there was unequal bargaining power between Defendants, on the one hand, and Plaintiff and the other Class members, on the other.

91.     Any limitations on the express and implied warranties are substantively unconscionable.

92.     Defendants knew that no engine immobilizers were installed on the Defective Vehicles, among other design failures, and that they were failing to disclose this material fact, thereby misrepresenting the safety, ease of theft, and value of the Defective Vehicles.

93.     Defendants failed to disclose the defects to Plaintiff and the other Class members even though Defendants were aware of the defects.

94.     Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.

95.     Specifically, Plaintiff and each of the other Class members are intended third-party beneficiaries of the implied and written warranties.

96.     The dealers and agents were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided for the Defective Vehicles: the warranty agreements were designed for and intended to benefit consumers.

97.     Finally, privity is also not required because the Defective Vehicles are unsafe and hazardous instrumentalities due to, among other matters, the lack of engine immobilizers.

98.      Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

99. Furthermore, affording Defendants an opportunity to cure their breach of warranties would be unnecessary and futile.

100. Defendants are aware of the problems, are or have attempted to "fix" their 2022 vehicles to eliminate the defects, but are refusing to do anything about the pre-2022 Defective Vehicles.

101. At the time of sale or lease of each Defective Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

102. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff resort to an informal dispute resolution procedure and afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

103. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.

104. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

105. Plaintiff, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

106. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have

reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

107.    Additionally, Plaintiff and each of the other Class members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1), including Defendants being required to fix these vehicles.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

### COUNT III - UNJUST ENRICHMENT

108.    Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

109.    Plaintiff and the Nationwide Class and/or Colorado Sub-Class members purchased vehicles that they would not have purchased had they known that the vehicles, among other defects, contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers.

110.    The Defendants were therefore unjustly enriched at the expense of and to the detriment of the Plaintiff and the Class.

111.    Plaintiff and the Nationwide Class and/or Colorado Sub-Class are therefore entitled to restitution from the Defendants, and seek an order requiring the Defendants to disgorge all profits, benefits and other compensation the Defendants obtained from the sale of these products.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

### COUNT IV – BREACH OF IMPLIED WARRANTY

112.    Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

113.    Under Colo. Rev. Stat. § 4-2-104, Defendants are merchants with respect to the sale of the Defective Vehicles purchased by Plaintiff.

114.    Under Colo. Rev. Stat. § 4-2-314, Defendants, by selling the Defective Vehicles, impliedly warranted that the vehicles were merchantable with respect to goods of that kind.

115.    Defendants sold the Defective Vehicle to Plaintiff through its dealership in Colorado.

116.    The Defective Vehicle sold by Defendants to Plaintiff did not conform with the implied promises made with respect to the labels and material that accompanied the product. Specifically, by failing to reasonably disclose the vehicles did not have engine immobilizers, Defendants implied that the Defective Vehicles were not far easier to steal than other vehicles, were thereby safe, and were worth as much as vehicles that possessed engine immobilizers.

117.    As a result of having no engine immobilizer, among other defects, the Defective Vehicles were not merchantable and Defendants breached their implied warranty of merchantability with respect to the Defective Vehicles.

118.    Had Plaintiff known that the Defective Vehicles lacked an engine immobilizer, among other defects, making them far easier to steal, and were thereby unsafe and worth less than their sales price, she would not have purchased it or would have paid significantly less for the vehicle. As a result of Defendants' breach of implied warranty, Plaintiff, and the Nationwide Class and/or Colorado Sub-Class members have suffered economic injuries.

119.    Defendants are being provided notice by receipt of demand made by Plaintiff on behalf of herself and the putative class through the filing of this Complaint. In addition, Defendants have actual notice and knowledge of the defect.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

### <u>COUNT V – BREACH OF EXPRESS WARRANTY</u>

120.    Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

121.    Defendants are and at all relevant times were merchants with respect to motor vehicles under the Uniform Commercial Code (UCC) and Colo. Rev. Stat.§.4-2-313.

122.    Upon information and belief, in the course of selling its vehicles, Defendants expressly warranted in writing that the Defective Vehicles included an engine immobilizer, were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

123.    Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Plaintiff and Class members Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

124.    Due to the Defendants' breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in the UCC and Colo. Rev. Stat. 4-2-701 *et seq.*, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under the UCC and Colorado law.

125.    Defendants have been provided notice of these issues by complaints filed against them, including the instant Complaint, and, upon information and belief, by numerous

communications sent by customers before or within a reasonable amount of time after the allegations of vehicle defects became public.

126.     Notice should be deemed unnecessary in light of Defendants' refusal to take corrective action despite the notice as described above.

127.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT VI – NEGLIGENCE

128.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

129.     Defendants designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Vehicles at issue.

130.     Defendants held themselves out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying, and selling the Defective Vehicles at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

131.     Defendants knew or should have known that the Defective Vehicles contained defects including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

132.     Defendants knew or should have known that the Defective Vehicles are incredibly easy to steal.

133.    As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Product at issue, Defendant had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its products; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply its product free from defects and/or latent defects; the duty to adequately warn of product defects and/or hazards, which duty continued even after the sale of said products; and the duty to market, advertise, sell and supply products with adequate information and warnings about the unacceptable risk of theft their design failures create.

134.    Defendant failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiff and the Nationwide Class and/or Colorado Sub-Class members.

135.    Plaintiff used the Defective Vehicle in a manner ordinarily anticipated by Defendant.

136.    As a direct and proximate result of the dangerous and defective condition of Defendant's products and Defendants' failure to warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Colorado Sub-Class members have suffered economic injuries.

137.    These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

138.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT VII STRICT LIABILITY, DESIGN DEFECT

139.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

140.     Defendants designed, manufactured, and/or supplied the Defective Product in question within the ordinary course of its business.

141.     Plaintiff purchased and own a Defective Vehicle.

142.     The Defective Vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the Defective Vehicles are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

143.     Defendant knew or should have known of the dangerous and defective nature of the Defective Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

144.     Notwithstanding, Defendants failed to take safety precautions to prevent economic injury to Plaintiff and failed to warn and/or instruct Plaintiff and others of the defective and unreasonably dangerous nature of said vehicles.

145.     Defendants' defective and unreasonably dangerous vehicles directly and proximately caused economic injuries to Plaintiff and the Nationwide Class and/or Colorado Sub-Class members.

146.     Plaintiff drives the vehicle and then parks it and leaves it unattended, which is a manner of use reasonably anticipated by Defendants.

147.     As a result of the Defective Vehicles defect, which make them incredibly easy to steal, that are unreasonably dangerous and defective when put to the use anticipated by Defendants.

148.     As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Colorado Sub-Class members have suffered economic injuries.

149.     These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle without that is not defective. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums Plaintiff have or may face due to the design defect, and the stigma associated with the Defective Vehicles.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

a.     That the Court enter an order certifying the Class, appointing Plaintiff as representative of the Nationwide Class, appointing Plaintiff's counsel as class

counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b.      Alternatively, that the Court enter an order certifying the Colorado Sub-Class, appointing Plaintiff as representative of the Colorado Sub-Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Colorado Sub-Class;

c.      For a judgment against Defendants for the causes of action alleged against it;

d.      For damages in an amount to be proven at trial;

e.      For appropriate injunctive relief, enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles;

f.      For attorney's fees;

g.      For Plaintiff's costs incurred; and

h.      For such other relief in law or equity as the Court deems just and proper.

<u>**DESIGNATION AND DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury.

Dated August 18, 2022

Respectfully submitted,

_____/s/ *Kevin D. Stanley*_____

HUMPHREY, FARRINGTON & McCLAIN, P.C.
Kevin D. Stanley
221 West Lexington, Ste. 400
P.O. Box 900
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kds@hfmlegal.com

**ATTORNEYS FOR PLAINTIFF**