# EXHIBIT 21

CV,RELTD

# U.S. District Court
## U.S. District of Minnesota (DMN)
## CIVIL DOCKET FOR CASE #: 0:22-cv-02328-PJS-JFD

Ballis et al v. Kia America, Inc. et al
Assigned to: Chief Judge Patrick J. Schiltz
Referred to: Magistrate Judge John F. Docherty
rel Case: 0:22-cv-02149-PJS-JFD
Cause: 28:1332 Diversity-Product Liability

Date Filed: 09/23/2022
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: Diversity

<u>**Plaintiff**</u>

**Robert Ballis**
*individually and on behalf of all others
similarly situated*

represented by **Marshall H Tanick**
Meyer Njus Tanick P.A.
330 Second Avenue South
#350
Minneapolis, MN 55401
612-341-2181
Fax: 612-337-5894
Email: mtanick@meyernjus.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca A. Peterson**
Lockridge Grindal Nauen PLLP
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401-2179
612-339-6900
Fax: 612-339-0981
Email: rapeterson@locklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert K Shelquist**
Lockridge Grindal Nauen PLLP
100 Washington Ave S Ste 2200
Mpls, MN 55401-2179
612-339-6900
Fax: 612-339-0981
Email: rkshelquist@locklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Ashleigh Towers**
*individually and on behalf of all others*
*similarly situated*

represented by **Marshall H Tanick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca A. Peterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert K Shelquist**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai Motor America**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/23/2022 | 1 | COMPLAINT against Hyundai Motor America, Kia America, Inc. (filing fee $ 402, receipt number AMNDC-9778507) filed by Robert Ballis, Ashleigh Towers. Filer requests summons issued. (Attachments: # 1 Civil Cover Sheet) (Shelquist, Robert) (Entered: 09/23/2022) |
| 09/23/2022 | 2 | (Text-Only) CLERK'S NOTICE OF INITIAL CASE ASSIGNMENT. Case assigned to Judge Wilhelmina M. Wright per 3rd/4th Master list, referred to Magistrate Judge John F. Docherty. Please use case number 22-cv-2328 (WMW/JFD). **Notice: All Nongovernmental Corporate Parties must file a Rule 7.1 Corporate Disclosure Statement.** (MMP) (Entered: 09/23/2022) |
| 09/23/2022 | 3 | Summons Issued as to Hyundai Motor America, Kia America, Inc. (MMP) (Entered: 09/23/2022) |
| 09/29/2022 | 4 | ORDER OF REASSIGNMENT OF RELATED CASES. This case is reassigned to Chief Judge Patrick J. Schiltz for all further proceedings. Judge Wilhelmina M. Wright no longer assigned to case. **NOTE:** the new case number is **22-cv-2328 PJS/JFD**. Please use this case number for all subsequent pleadings. Signed by Judge Wilhelmina M. Wright on 9/28/2022. Signed by Chief Judge Patrick J. Schiltz on 9/29/2022.(MMG) (Entered: 09/29/2022) |

| 10/04/2022 | 5 | NOTICE of Appearance by Marshall H Tanick on behalf of All Plaintiffs. (Tanick, Marshall) (Entered: 10/04/2022) |
| --- | --- | --- |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 10/06/2022 09:38:23 | | | |
| PACER Login: | jb0014 | Client Code: | 71273-10008 |
| Description: | Docket Report | Search Criteria: | 0:22-cv-02328-PJS-JFD |
| Billable Pages: | 2 | Cost: | 0.20 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Robert Ballis and Ashleigh Towers, individually and on behalf of all others similarly situated, | Court File No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Kia America, Inc. and Hyundai Motor America, | |
| Defendants. | |

COMES NOW, ROBERT BALLIS and ASHLEIGH TOWERS ("Plaintiffs"), individually and on behalf of the Class, who state and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and on behalf of a Class of similarly situated persons or entities against Defendants Kia America, Inc. ("Kia") and Hyundai Motor America ("Hyundai") (collectively "Defendants") who purchased or leased 2011–2022 Kia vehicles or 2015–2022 Hyundai vehicles (collectively "Vehicles").

2.     Defendants manufacture and sell motor vehicles in the United States and in Minnesota. These products include popular models like the Kia Sportage.

3.     For decades equipment known as an immobilizer has been used to prevent theft of vehicles by requiring a code to be transmitted from the car's specific smart key to start.

4. The Vehicles do not include an immobilizer. Thieves are able to start the Vehicles without a car's specific smart key through the steering column using a USB charging cord or other metal object. Videos are readily available online providing would-be criminals with a tutorial on how to exploit the missing immobilizer in the Vehicles.

5. Theft or attempted theft of Defendants' Vehicles is becoming increasingly reported and has risen substantially across the United States generally and Minnesota specifically as knowledge of the defect is now widespread.

6. Defendants are aware that their Vehicles lack engine immobilizers. Indeed, immobilizers are required in foreign countries and are installed on similar vehicles that Defendants manufacture and sell in those countries. Upon information and belief Defendants sell other model vehicles in the United States with the immobilizer.

7. Defendants should be or are aware through media and steering wheel replacement part sales that thefts of Vehicles manufactured and sold by them have increased nationwide.

8. Despite the rise in vehicle thefts, Defendants have not offered to install vehicle immobilizers in the Vehicles. Defendants have announced that all new vehicles, including the model Plaintiff Ballis owns, will be sold with immobilizers.

9. Plaintiff Ballis purchased a Vehicle from Defendants which suffers from the defect. Plaintiff would not have purchased the Vehicles or would have paid less for the Vehicles had Plaintiff known about the defect.

10.     As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, consumers of these products, including Plaintiffs, have suffered an ascertainable loss, injury-in-fact, and otherwise have been harmed by Defendants' conduct.

## PARTIES

11.     Plaintiffs Robert Ballis and Ashleigh Towers are citizens and residents of the City of Saint Paul, County of Ramsey, Minnesota.

12.     Defendant Kia America, Inc. is a California corporation with its principal place of business in California.

13.     Defendant Hyundai Motor America is a California corporation with its principal place of business in California.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because the aggregate claims of the Members of the putative Class exceeds $5 million, exclusive of costs, and at least one of the Class Members is a citizen of a different state than Defendants.

15.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

16.     Defendants regularly and systematically conduct business and sell their products in this District to customers in this District, including to Plaintiffs and the Class. As such, Defendants are subject to the jurisdiction of this Court.

3

17.     Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and regularly conduct business in this District.

### GENERAL ALLEGATIONS

18.     In Saint Paul, Minnesota, thefts of Kia vehicles have increased 1300% while thefts of Hyundai vehicles have increased 584%.

19.     In response to the rise in thefts of Defendants' Vehicles in Saint Paul, the Ramsey County Undersheriff Mike Martin stated, "The Kias and Hyundais have what I call a design flaw that allows them to be stolen easier. All they have to do is break a window and get in and within seconds those cars can be compromised and be started with a USB port or even a pocket knife."[1]

20.     In Minneapolis, Minnesota, beginning in the second quarter of 2022 (April through July), Kia became the vehicle make that was stolen most often. To start off the third quarter of the year, Kia and Hyundai vehicles were stolen more often than any other make.[2]

21.     Local Minnesota news station Fox 9 reported on a Class Member whose Kia was stolen twice in a two-month period, which resulted in her paying two auto insurance

---

[1] Caroline Cummings, *Thefts of Kia and Hyundai cars soar in St. Paul, data show*, CBS Minnesota (July 19, 2022), https://www.cbsnews.com/minnesota/news/thefts-of-kia-and-hyundai-cars-soar-in-st-paul-data-show/

[2] Rose Schmidt, *Kias and Hyundais now most stolen cars in Minneapolis, data shows*, Fox 9 (Aug. 15, 2022), https://www.fox9.com/news/data-kias-and-hyundais-now-most-stolen-cars-in-minneapolis.

deductibles on top of needed vehicle repairs. The story outlined hardships for people who no longer have use of a Vehicle.

22.     Similarly, in Milwaukee, Wisconsin, Kia and Hyundai vehicles represented two out of every three vehicles stolen during the first half of 2021.[3]

23.     One car-repair facility owner was quoted by the Milwaukee Journal Sentinel explaining that "Kia thieves know they can break the back window without setting off an alarm, unlock the door, quickly peel back the steering column, and either use a screwdriver or a USB port to crank the car and go."

## I.     DEFENDANTS' DEFECTIVE VEHICLES.

24.     Defendants did not install engine immobilizers in all their Vehicles.

25.     An engine immobilizer is designed to prevent vehicle theft. An engine immobilizer works by transmitting a code to the Vehicle when the key is inserted in the ignition switch, or a key fob is inside the Vehicle. In the absence of an immobilizer a Vehicle can be started in a modern twist of hot wiring by a wrongdoer who does not possess the starter key/fob.

26.     Defendants' Vehicles suffer from a defect because they do not include an engine immobilizer.

---

[3] Clifford Atiyeh, *Hyundai, Kia Take Action after Cars Become Theft Targets in Milwaukee*, Car and Driver (Dec. 11, 2021), https://www.caranddriver.com/news/a38491394/hyundai-kia-thefts-milwaukee-action/

27.     If Defendants' Vehicles included an engine immobilizer then they would be more difficult to steal because a thief could not start or move the Vehicle without the Vehicle's key.

28.     Federal regulations require that a vehicle's engine cannot be started and that a vehicle cannot move when the vehicle's key is not present. Each vehicle must have a starting system which, whenever the key is removed from the starting system, prevents: (a) the normal activation of the vehicle's engine or motor; and (b) either steering, or forward self-mobility, of the vehicle, or both. 49 C.F.R. § 571.114.

29.     Federal Motor Vehicle Safety Standard 114 ("FMVSS 114") serves to prevent auto theft and to prevent vehicle rollaway.

30.     Defendants' Vehicles suffer from a defect and do not comply with FMVSS 114 because when the key is removed from the starting system the Vehicle's engine or motor can be activated and removal of the key does not prevent steering or forward self-mobility.

31.     If Defendants' Vehicles were manufactured to comply with FMVSS 114, then Defendants' Vehicles would not be stolen at such alarming rates because when the key is removed from the starting system, both steering and forward self-mobility would be prevented.

32.     A vehicle without an engine immobilizer is not a reliable or safe vehicle and is less valuable than a vehicle with an engine immobilizer.

33.     A vehicle that does not comply with FMVSS 114 is not a reliable or safe vehicle and is less valuable than a vehicle that complies with FMVSS 114.

34.     Defendants knew their Vehicles were defective in that they did not have an engine immobilizer and did not comply with FMVSS 114 and failed to disclose these defects to consumers like Plaintiffs and the putative Class.

35.     Defendants knew that it was unsafe and dangerous for a Vehicle not to have an engine immobilizer.

36.     In response to the significant rise in thefts of their Vehicles, spokespeople for Defendants were quoted by Car and Driver magazine that every new Hyundai now has standard engine immobilizers, and that all 2022 Kias across the lineup will also have the engine immobilizer fitted as standard equipment.

37.     Defendants have not provided a solution to the Plaintiffs or to the thousands of Kia and Hyundai owners whose Vehicles remain without engine immobilizers.

## II.     PLAINTIFFS' USE OF DEFENDANTS' DEFECTIVE VEHICLES.

38.     Plaintiff Ballis purchased a 2018 Kia Sportage which is insured by a policy in the name of and paid for by both Plaintiffs.

39.     The Plaintiffs' Vehicle was broken into through a rear window and the steering column cladding was partially removed or otherwise damaged. The police were called following the break in through the rear window. The key/fob had not been left in the Vehicle and was not located near the Vehicle.

40.     Plaintiffs' insurance includes a $500 deductible for repairs. Plaintiffs are still awaiting the total cost of repairs and how long it will take for the repairs to be completed given reported part shortages.

41.     Additionally, after the break in, Plaintiff Towers purchased The Club steering wheel lock at her own cost in an attempt to discourage further theft or theft attempts.

42.     Plaintiffs have suffered an ascertainable loss because of Defendant Kia's wrongful conduct associated with its Vehicle's defect including, but not limited to, the insurance deductible, purchase of protective equipment, and overpayment and diminished value of the Kia Sportage. Plaintiffs may also face increased insurance premiums on account of rating the Vehicles without immobilizers and because of this break in.

43.     Plaintiffs would not have purchased or would have paid less for the defective Vehicle if they had known they were defective and more susceptible to theft.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class of individuals defined as:

**Nationwide Class**:

> All persons or entities who, within the applicable statute of limitations period, purchased or leased a Vehicle manufactured by Kia America, Inc. or Hyundai Motor America without an engine immobilizer.

**Minnesota Class:**

> All persons or entities in Minnesota who, within the applicable statute of limitations period, purchased or leased a Vehicle manufactured by Kia America, Inc. or Hyundai Motor America without an engine immobilizer.

45.     Excluded from the Class are: (1) Defendants and any entity in which Defendants have a controlling interest; (2) legal representatives, officers or directors, and

assigns of Defendants; (3) this Court and any of its employees assigned to work on the case; (4) the Judge to whom this case is assigned; and (5) Class Counsel.

46.     Plaintiffs seek only damages and injunctive relief and are not seeking for themselves or any Class Member recovery or compensation for personal injuries to body and mind, including wrongful death or emotional distress.

47.     The Members of the Class are so numerous that a joinder of all Members would be impracticable. The exact number of Class Members is presently unknown to Plaintiffs and can only be determined through discovery. However, Defendants are required to keep a log of Vehicle Identification Numbers and associated owners so all, if not the vast majority of Class Members, are identifiable. Plaintiffs believe the Class is likely to include thousands of Members based on the fact Defendants distribute their Vehicles nationwide.

48.     In addition to Defendants' records which can be used for direct notice to owners and lessees, the Class definition identifies unnamed Plaintiffs by describing a set of common characteristics sufficient to allow a Member of that group to identify themselves as having a right to recover damages from Defendants. As a supplement to direct notice by mail or email, proper and sufficient notice of this action may be provided to the Class through notice published in newspapers, radio, social media, internet, and/or other publications.

49.     A single issue of law or fact can provide commonality. This action involves one or more common questions of law or fact. The questions of law or fact common to both Plaintiffs and the Class include, but are not limited to, the following:

a.      Whether Defendants designed, advertised, sold, and placed the Class Vehicles into the stream of commerce:

b.      Whether the Vehicles were sold with a defect on account of the failure to install an immobilizer;

c.      Whether the Vehicles fail under the implied warranty of usability;

d.      Whether the Vehicles fail under the implied warranty of merchantability;

e.      Whether Defendants knew about the defect;

f.      Whether Defendants concealed the defect;

g.      Whether Defendants failed to warn consumers regarding the risks of the Vehicles;

h.      Whether Defendants designed the Vehicles with a defect;

i.      Whether Defendants' decision not to include an immobilizer in all Vehicles conforms with industry regulations and practices;

j.      Whether Defendants violated the Magnuson-Moss Warranty Act;

k.      Whether Defendants' conduct constitutes unfair or deceptive acts or practices or constitutes consumer fraud under Minnesota law;

l.      Whether Defendants were unjustly enriched by the sale of the Vehicles;

m.      The appropriate nature of class-wide equitable relief; and

n.      The proper method or methods to determine and measure Plaintiffs' and the Classes' damages.

50.     Plaintiffs' claims are typical of all Members of the Class. The evidence and the legal theories regarding Defendants' alleged wrongful conduct committed against Plaintiffs and the Class are substantially the same because all putative Class Members purchased Defendants' Vehicles for personal use and all putative Class Members overpaid or suffered a loss in value of their Vehicles. Accordingly, in pursuing their own self-interest in litigating their claims, Plaintiffs will also serve the interests of the Class.

51.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiffs and the Class that would make class certification inappropriate. Additionally, Plaintiffs' Counsel are competent to advance the interests of the Class having been designated as Lead Counsel in dozens, if not hundreds, of Class cases. Plaintiffs and their Counsel intend to prosecute this action vigorously.

52.     The matter is properly maintained as a class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class Members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class Members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and the Class to individually seek redress for Defendants' wrongful conduct. Even if any individual person or group(s) of the Class could afford individual litigation, it would be unduly burdensome to the courts

in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiffs and the Class will continue to suffer losses, thereby allowing Defendants' violations of law to proceed without remedy and allowing Defendants to retain the proceeds of their ill-gotten gains.

53.     Plaintiffs anticipate the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. To the extent any further notices may be required, Plaintiffs anticipate the use of additional media or mailings.

54.     A class action may also be certified pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to all Plaintiffs and Class Members so that final injunctive relief and/or declaratory relief is appropriate as to all.

55.     A class action may also be certified pursuant to Fed. R. Civ. P. 23(c)(4) on one or more issues related to liability.

# CAUSES OF ACTION

## COUNT I

### BREACH OF THE IMPLIED WARRANTY OF USABILITY
### (On Behalf of Plaintiffs and the Nationwide and Minnesota Classes)

56.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

57.     Defendants, as manufacturers of the Vehicles, impliedly warranted to Plaintiffs and the Class that the Vehicles were usable for their ordinary and intended use.

58.     Defendants breached the implied warranty of usability in connection with the sale and distribution of the Vehicles. At the point of sale, the Vehicles while appearing normal contained defects as set forth herein rendering them less valuable than warranted.

59.     Defendants, its agents and its employees knew or should have known that the Vehicles suffered from a defect that increases the risk of the Vehicle being stolen to such an extent that the Vehicles are less valuable than warranted.

60.     Defendants did not provide appropriate warranty relief notwithstanding the risks of using the Vehicles. Plaintiffs and the Class reasonably expected, at the time of purchase, that the Vehicles were usable for their ordinary and intended use.

61.     Had Plaintiffs and Class Members known they would not be able to use their Vehicles, they would not have purchased them or would have paid significantly less for them.

62.     As a direct and proximate result of Defendants' breach of the implied warranty of usability, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

## COUNT II

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiffs and the Nationwide and Minnesota Classes)

63.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

64.     Defendants, as manufacturers of the Vehicles, impliedly warranted to Plaintiffs and the Class that the Vehicles were of merchantable quality and safe for their ordinary and intended use.

65.     Defendants breached the implied warranty of merchantability in connection with the sale and distribution of the Vehicles. At the point of sale, the Vehicles while appearing normal actually contained defects as set forth herein rendering them less safe and less reliable for personal use.

66.     Had Plaintiffs and the Class known the Vehicles were less safe and less reliable for use, they would not have purchased them or would have paid less for them.

67.     Defendants did not provide appropriate warranty relief notwithstanding the risks of using the Vehicles. Plaintiffs and the Class reasonably expected, at the time of purchase, that the Vehicles were safe for their ordinary and intended use.

68.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

## COUNT III

### NEGLIGENT FAILURE TO WARN
### (On Behalf of Plaintiffs and the Nationwide and Minnesota Classes)

69.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

70.     Defendants owed Plaintiffs and Class Members a duty of care and to warn of any risks associated with the Vehicles. Defendants knew or should have known of the true risks but failed to warn Plaintiffs and Class Members.

71.     Defendants' negligent breach of duty caused Plaintiffs and Class Members economic damages and injuries in the form of less reliable and less safe Vehicles.

72.     Plaintiffs and Class Members would not have purchased, chosen, and/or paid for all or part of the Vehicles had they known that the risks associated with purchasing the product.

73.     Plaintiffs and the Class suffered damages in an amount to be determined at trial.

## COUNT IV

### STRICT LIABILITY – DESIGN DEFECT
### (On Behalf of Plaintiffs and the Nationwide and Minnesota Classes)

74.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

75. Defendants designed, manufactured, and/or supplied the Vehicles in question within the ordinary course of their business.

76. Plaintiffs and the Class Members purchased and own Defendants' Vehicles.

77. Defendants' Vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the Vehicles are easier to steal than vehicles with engine immobilizers and are therefore unsafe and worth less than if they had engine immobilizers.

78. Defendants knew or should have known of the dangerous and defective nature of the Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

79. Defendants failed to take safety precautions to prevent economic injury to Plaintiffs and the Class and failed to warn and/or instruct Plaintiffs and the Class of the defective and unreasonably dangerous nature of the Vehicles.

80. Defendants' defective and unreasonably dangerous Vehicles directly and proximately caused economic injuries to Plaintiffs and the Class.

81. Plaintiffs and the Class leave their Vehicles unattended and without a key, which is a manner of use reasonably anticipated by Defendants.

82. As a result of the defect in Defendants' Vehicles, they are unreasonably dangerous and defective when put to the use anticipated by Defendants.

83.     As a direct and proximate result of the dangerous and defective condition of Defendants' Vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Class have suffered economic injuries.

84.     Plaintiffs and the Class injuries include, but are not limited to, the difference in value between a Vehicle with an engine immobilizer and one without, the purchase price of any device intended to prevent theft, and increased insurance premiums due to the design defect.

## COUNT V

### VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT
### (On Behalf of Plaintiffs and the Nationwide and Minnesota Classes)

85.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

86.     Congress enacted the MMWA, 15 U.S.C. §§ 2301 et seq., to address the widespread misuse of merchants' express warranties and to protect consumers from deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty. 15 U.S.C. § 2310(d)(1).

87.     Defendants' Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

88.     Plaintiffs and the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

89.     Defendants are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively.

90.     In connection with the sale and/or lease of the Vehicles, Defendants supplied Plaintiffs and the Class with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

91.     15 U.S.C. § 2310(d)(1) provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief … in any court of competent jurisdiction in any state".

92.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

93.     Defendants provided Plaintiffs and Class with an implied warranty of merchantability in connection with the purchase or lease of their Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

94.     Defendants breached their implied warranties, as described herein, and are therefore liable to Plaintiffs and the Class under 15 U.S.C. § 2310(d)(1). The defect rendered the Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

95.     Plaintiffs and the Class used their respective Vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendants' conduct or by operation of law.

96.     Plaintiffs and the Class seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein. These damages include, but are not limited to, overpayment for the Vehicles, insurance deductibles to get the stolen Vehicles repaired, the cost to replace other property stolen in connection with the thefts of their Vehicles, the loss of use of their respective Vehicles, costs associated with the replacement of the totaled Vehicles, and/or the diminution in value of stolen Vehicles that were not totaled.

97.     The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Plaintiffs and the Class seek reformation of Defendants' respective written warranties to comport with their obligations under the MMWA and with consumers' reasonable expectations. Plaintiffs and the Class also seek to enjoin Defendants from acting unlawfully as alleged herein.

98.     Plaintiffs and the Class are entitled to costs and expenses, including attorneys' fees in the Court's discretion. 15 U.S.C. § 2310(d)(2).

## COUNT VI

### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Nationwide and Minnesota Classes)

99.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

100.     Plaintiffs and the Class Members conferred a tangible and material economic benefit upon Defendants by purchasing the Vehicles. Plaintiffs and Class Members would not have purchased, chosen and/or paid for all or part of Vehicles had they known the true risks of using the Vehicles while Defendants cannot provide a timely repair or replacement for the Vehicles. Under these circumstances, it would be unjust and inequitable for Defendants to retain the economic benefits they received at the expense of Plaintiffs and the Class.

101.     Failing to require Defendants to provide remuneration under these circumstances would result in Defendants being unjustly enriched at the expense of Plaintiffs and the Class Members who endure being exposed to the risk of their Vehicles being stolen and can no longer use their Vehicles safely.

102.     Defendants' retention of the benefit conferred upon them by Plaintiffs and the Class would be unjust and inequitable.

103.     Plaintiffs and the Class suffered damages in an amount to be determined at trial.

## COUNT VII

### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (On Behalf of Plaintiffs and the Minnesota Class)

104.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

105.    Minnesota's private attorney general statute authorizes consumers to bring a civil action under the CFA and "recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees" and other equitable relief as determined by the court. Minn. Stat. § 8.31, subd. 3a.

106.    The CFA permits a consumer to bring a civil action against:

> [t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby

Minn. Stat. § 325F.69, subd. 1.

107.    Plaintiffs, the Class, and Defendants constitute a "person" pursuant to Minn. Stat. § 325F.68, subd. 3.

108.    Defendants' Vehicles constitute "merchandise" pursuant to Minn. Stat. § 325F.68, subd. 2.

109.    Defendants used fraud, misrepresentations, misleading statements, deceptive practices, and false promises in the sale of the Vehicles.

110.   Plaintiffs and the Class relied upon misrepresentations, misleading statements, deceptive practices, and false promises by Defendants, which resulted in injury to them.

111.   Plaintiffs and the Class have suffered an ascertainable loss of money because of the use or employment by Defendants of a method, act or practice prohibited or declared to be unlawful by the provisions of the CFA.

112.   Plaintiffs and the Class's actual out-of-pocket loss was proximately caused by Defendants' violation of the CFA.

113.   Plaintiffs and Class Members have suffered an ascertainable loss.

## COUNT VIII

### VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT ("DTPA")
#### (On Behalf of Plaintiffs and the Minnesota Class)

114.   Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

115.   Defendants' policy and practice of manufacturing and selling defective Vehicles as alleged herein is a violation of the DTPA, including by not limited to:

     (2)    causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

     (5)    represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

     (7)    represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(9) advertises goods or services with intent not to sell them as advertised;

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. § 325D.44, subd. 1.

116. Plaintiffs need not prove competition between the parties or actual confusion or misunderstanding. Minn. Stat. § 325D.44, subd. 2.

117. A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required. Minn. Stat. § 325D.45, subd. 1.

118. Plaintiffs seek injunctive relief requiring Defendants to: 1) install immobilizers on all Vehicles at no cost or charge; 2) publicize, advertise, or otherwise inform the public of the immobilizer fix retrofit program to lessen the chances of thieves continuing to target the Vehicles; and 3) notify and inform insurers about the immobilizer fix and retrofit program so adverse ratings and other adverse actions do not impact continued insurance or insurance premiums specific to the Vehicles.

119. Should Plaintiffs prevail in this Action, reasonable attorneys' fees and costs are to be awarded pursuant to § 325D.45, subd. 2.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demand a jury trial on all claims so triable and judgment as follows:

A.      Certifying the proposed Nationwide Class, appointing Plaintiffs as representative of the Nationwide Class, and appointing counsel for Plaintiffs as Lead Counsel for the Nationwide Class;

B.      Certifying the proposed Minnesota Class, appointing Plaintiffs as representative of the Minnesota Class, and appointing counsel for Plaintiffs as Lead Counsel for the Minnesota Class;

C.      Finding that Defendants breached the implied warranty of usability;

D.      Finding that Defendants breached the implied warranty of merchantability;

E.      Finding that Defendants negligently failed to warn Plaintiffs and the Class;

F.      Finding that Defendants' Vehicles contain a design defect;

G.      Finding that Defendants violated the Magnuson-Moss Warranty Act;

H.      Finding that Defendants violated the Minnesota Consumer Fraud Act;

I.      Finding that Defendants violated the Minnesota Uniform Deceptive Trade Practices Act;

J.      Finding that Defendants were unjustly enriched by their sale of the Vehicles;

K.      Awarding damages in an amount according to proof;

L.      Seeking injunctive relief including, but not limited to, 1) installing immobilizers on all Vehicles at no cost or charge; 2) publicizing, advertising, or otherwise informing the public of the immobilizer fix retrofit program to lessen the chances of thieves continuing to target the Vehicles; and 3) notifying and informing insurers about the immobilizer fix and retrofit program so adverse ratings and other adverse actions do not impact continued insurance or insurance premiums specific to the Vehicles.

M.     Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

N.     Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

O.     Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class, hereby demands a trial by jury on

all issues in this Class Action Complaint that are so triable.

Dated: September 23, 2022     **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

By: /s Robert K. Shelquist

Robert K. Shelquist, #21310X
Rebecca A. Peterson, #392663
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
Email: rkshelquist@locklaw.com
rapeterson@locklaw.com

Marshall Tanick, #0108303
**MEYER NJUS TANICK**
330 Second Avenue South, Suite 350
Minneapolis, MN 55401
Telephone: 612-341-2181 Fax:
612-337-5894
Email: mtanick@meyernjus.com

**Attorneys for Plaintiffs**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Robert Ballis and Ashleigh Towers, individually and on behalf of all others similarly situated | Kia America, Inc. and Hyundai Motor America |

**(b)** County of Residence of First Listed Plaintiff  **Ramsey Co., MN**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert K. Shelquist, Lockridge Grindal Nauen P.L.L.P., 100 Washington Ave. S., #2200, Minneapolis, MN 55401 (612-339-6900)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☒ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander    Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine    ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle    **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury    ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice    ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise |    ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations    ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment    ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other    **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education    ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 2301 et seq. and 28 U.S.C. § 1367
Brief description of cause:
Defendants defective vehicles.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE  Patrick J. Schiltz   DOCKET NUMBER  22-2149

DATE
September 23, 2022

SIGNATURE OF ATTORNEY OF RECORD
s/ Robert K. Shelquist

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____