# EXHIBIT 22

**Query**   **Reports**      **Utilities**      **Help**   **Log Out**

CV

# U.S. District Court
## U.S. District of Minnesota (DMN)
## CIVIL DOCKET FOR CASE #: 0:22-cv-02431-NEB-JFD

Hilliard et al v. Kia America, Inc. et al             Date Filed: 10/03/2022
Assigned to: Judge Nancy E. Brasel              Jury Demand: Plaintiff
Referred to: Magistrate Judge John F. Docherty     Nature of Suit: 195 Contract Product
Cause: 28:1332 Diversity-Product Liability           Liability
                                                     Jurisdiction: Diversity

**Plaintiff**

**Lisa Hilliard**                    represented by   **Anne T Regan**
*individually and on behalf of all others*            Hellmuth & Johnson
*similarly situated*                                  8050 West 78th St.
                                                      Edina, MN 55439
                                                      952-941-4005
                                                      Email: aregan@hjlawfirm.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Lindsey LaBelle Larson**
                                                      Hellmuth & Johnson, PLLC
                                                      8050 West 78th Street
                                                      Edina, MN 55439
                                                      952-484-8599
                                                      Email: llabellelarson@hjlawfirm.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Nathan D Prosser**
                                                      Hellmuth & Johnson PLLC
                                                      8050 West 78th Street
                                                      Edina, MN 55439
                                                      952-941-4005
                                                      Fax: 952-941-2337
                                                      Email: nprosser@hjlawfirm.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kelsey Biljan**                    represented by   **Anne T Regan**
*individually and on behalf of all others*            (See above for address)
*similarly situated*                                  *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Lindsey LaBelle Larson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan D Prosser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai Kia America Technical
Center, Inc.**

**Defendant**

**Hyundai Motor America**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/03/2022 | 1 | COMPLAINT against Hyundai Kia America Technical Center, Inc., Hyundai Motor America, Kia America, Inc. (filing fee $ 402, receipt number AMNDC-9799949) filed by Lisa Hilliard, Kelsey Biljan. Filer requests summons issued. (Attachments: # 1 Civil Cover Sheet) (Regan, Anne) (Entered: 10/03/2022) |
| 10/03/2022 | 2 | (Text-Only) CLERK'S NOTICE OF INITIAL CASE ASSIGNMENT. Case assigned to Judge Nancy E. Brasel per 3rd/4th Master list, referred to Magistrate Judge John F. Docherty. Please use case number 22-cv-2431 (NEB/JFD). <br><br> **Notice: All Nongovernmental Corporate Parties must file a Rule 7.1 Corporate Disclosure Statement.** <br><br> (MMP) (Entered: 10/03/2022) |
| 10/03/2022 | 3 | Summons Issued as to Hyundai Kia America Technical Center, Inc., Hyundai Motor America, Kia America, Inc. (MMP) (Entered: 10/03/2022) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 10/06/2022 09:39:04 |

| PACER Login: | jb0014 | Client Code: | 71273-10008 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 0:22-cv-02431-NEB-JFD |
| Billable Pages: | 2 | Cost: | 0.20 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Lisa Hilliard and Kelsey Biljan, individually and on behalf of all others similarly situated, | Case Number: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | |
| | **JURY TRIAL DEMANDED** |
| Kia America, Inc., Hyundai Kia America Technical Center, Inc., and Hyundai Motor America, | |
| Defendants. | |

Plaintiffs Lisa Hilliard and Kelsey Biljan ("Plaintiffs"), individually and on behalf of all other persons similarly situated, bring this Class Action Complaint against Kia America, Inc., Hyundai Kia America Technical Center, Inc., and Hyundai Motor America (collectively "Defendants"), and allege, upon personal knowledge as to their own actions and their counsel's investigation, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1. Defendants' vehicles are designed and manufactured with similar defective, hackable ignition systems that are prompting a nationwide rash of Kia and Hyundai thefts.

2. Auto manufacturers have regularly installed engine immobilizers in vehicles for decades as a common theft deterrent. Engine immobilizers prevent the

1

engine from starting without using the vehicle's authorized key. The system is based on a unique key or fob that contains a transponder chip that transmits a specific code to start the engine. The engine control unit does not activate the fuel system or the ignition circuit if the code in the key or fob does not match.

3.     Defendants design, market, manufacture and sell vehicles throughout the United States ("Class Vehicles")[1] with substandard vehicle ignition security, specifically, without engine immobilizers, ("Ignition Defect"), allowing the Class Vehicles to be stolen within seconds with very little effort.

4.     The Ignition Defect has rendered the Class Vehicles sitting (and sometimes moving) targets, and these vehicles continue to be frequently stolen across the country.

5.     Despite their knowledge of the Ignition Defect, Defendants have failed to conform to federal safety standards, Defendants have failed to disclose the true nature of the vehicles, and Defendants have not provided a solution to consumers of any kind.

6.     These thefts directly impact and have already impacted Class Vehicle owners in Minnesota, including Plaintiffs.

───────────────────

[1] Per Defendants' representations and upon information and belief, Kia and Hyundai models manufactured from 2011 – 2021 are affected. "Class Vehicle(s)" models include: Kia Sorento, Kia Telluride, Kia Stinger, Kia Sportage, Kia Soul, Kia Seltos, Kia Sedona, Kia Rio, Kia Optima, Kia Niro, Kia K900, Kia Forte and the Kia Cadenza; Hyundai Sonata, Hyundai Venue, Hyundai Kona, Hyundai Tucson, Hyundai Santa Fe, Hyundai Santa Cruz, Hyundai Palisade and Hyundai Elantra.

7.     Kia and Hyundai vehicles have become the most frequently stolen cars in Minneapolis,[2] and the Minneapolis Police Department has joined police agencies from across the country in issuing statements warning the public that these vehicles pose a serious safety threat.

8.     In July 2022, police in St. Paul, Minnesota similarly reported they have investigated at least 212 Hyundai thefts and 256 Kia thefts this year, compared to 31 Hyundai thefts and 18 Kia thefts in the same time period last year.[3]

9.     Law enforcement acknowledges these thefts are part of a nationwide trend, in part due to TikTok videos by individuals around the country who dubbed themselves "Kia Boyz."[4] These tutorial videos show thieves how to exploit a major vehicle defect, allowing them to bypass the ignition by breaking off the dash panels and simply using a USB port to start the car.

10.     Police explained these specific Kia and Hyundai models are easier to steal because "[i]f you strip the ignition column, there's a piece that pops off and you can stick a USB drive, a knife, or something like that. Well, think about how many people charge their cell phones in their cars. The exact part they need to steal that car is featured in most people's cars."[5]

---

[2]  https://www.fox9.com/news/data-kias-and-hyundais-now-most-stolen-cars-in-minneapolis (last visited Sept. 29, 2022)

[3]  St. Paul PD: Kia thefts up 1,300%, Hyundai thefts up 584% in 2022. https://www.fox9.com/news/st-paul-pd-kia-thefts-up-1300-hyundai-thefts-up-584-in-2022  (last visited Sept. 29 2022).

[4] https://www.tiktok.com/@detroitdann/video/7122261602706984234?is_from_webapp=v1&item_id=7122261602706984234 (last visited Aug. 18, 2022).

[5] https://www.fox9.com/news/st-paul-pd-kia-thefts-up-1300-hyundai-thefts-up-

11.     Defendants have not offered to install engine immobilizers in the affected vehicles, though they have stated all new vehicles produced after November 1, 2021 would be sold with engine immobilizers going forward.[6]

12.     Defendants' conduct violates consumer protection laws and also breaches the companies' warranty obligations. On behalf of the class they propose to represent, Plaintiffs seek awards of damages and appropriate equitable relief.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendants. Accordingly, minimal diversity under 28 U.S.C. § 1332(d) exists in this case because Plaintiffs are residents of Minnesota and the Defendants are incorporated and reside in California and Michigan. Moreover, this Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Plaintiffs are Minnesota citizens and therefore diverse from Defendants, who are not a citizens of Minnesota.

---

584-in-2022 (last visited September 29, 2022).

[6] https://www.caranddriver.com/news/a40979551/hyundai-kia-car-thefts-tiktok-trend-milwaukee/ (last visited September 29, 2022).

14.    This Court has personal jurisdiction over Defendants because Defendants have systematic and continuous contacts with the state and because their physical business headquarters are located in California.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District.  Defendants reside within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## PARTIES

16.    Plaintiff Lisa Hilliard is a citizen of Minnesota residing in Ramsey County, Minnesota. Plaintiff Hilliard purchased a 2018 Hyundai Elantra in July 2020 from Buerkle Hyundai located in St. Paul, Minnesota.

17.    Plaintiff Kelsey Biljan is a citizen of Minnesota residing in St. Paul, Minnesota. Plaintiff Biljan leased a 2021 Kia Seltos from Luther Kia of Inver Grove, located in Inver Grove Heights, Minnesota.

18.    Defendants are California and Michigan corporations. Kia America Inc. ("KA") has a principal place of businesses in Irvine, California. Hyundai Motor America ("HMA") has a principal place of business in Fountain Valley, California. Hyundai Kia America Technical Center, Inc. ("HATCI") has a principal place of business in Superior Township, Michigan.

19.     Upon information and belief, at all relevant times, Defendants were engaged in the business of designing, manufacturing, marketing, distributing and selling the Class Vehicles in Minnesota and throughout the United States.

20.     Defendants directed, managed, or funded nationwide advertising campaigns that were intended to reach consumers in Minnesota and throughout the United States that marketed the alleged safety and reliability of Class Vehicles. None of these advertisements or marketing materials disclosed the Ignition Defect in the Class Vehicles or disclosed that the Class Vehicles were manufactured in an inappropriate and defective manner.

21.     Defendants also develop and disseminate the owners' manuals, warranty booklets, maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles. Further, Defendants create and distribute the warranties and other written materials that accompany the sale and lease of Hyundai-branded and Kia-branded vehicles throughout the United States, and make decisions concerning warranty coverage of customer vehicles when problems arise.

## FACTUAL ALLEGATIONS

## I.     Engine Immobilizer

22.     An engine immobilizer is a form of electronic security technology, or anti-theft feature, common in vehicles manufactured over the last 20 years to deter auto thieves who do not have the necessary key or fob to start the engine of a vehicle.

23.     The Code of Federal Regulations defines an immobilizer as "a device that, when activated, is intended to prevent a motor vehicle from being powered by its own propulsion system."[7]

24.     An engine immobilizer uses an electronic chip embedded in the vehicle's engine control unit. It prevents the engine from starting without using the vehicle's authorized key. The system is based on a unique, digitally-coded key or Smart Key fob that contains a transponder chip that stores the electronic security code, or "vehicle passcode." The engine control unit does not activate the fuel system or the ignition circuit if the code in the key or fob does not match.

25.     When a driver inserts the digital key with an immobilizer system into the ignition, or possesses the Smart Key fob inside the vehicle, the key transmits the electronic code to the vehicle's Engine Management System ("EMS"). The vehicle is only able to start if the code in the transponder chip inside the key or Smart Key fob matches with the code in the immobilizer.

26.     Defendants did not equip the Class Vehicles with engine immobilizers.

27.     Defendants knew that vehicles without engine immobilizers present a greater risk of theft, are unsafe, and less valuable than vehicles with engine immobilizers.

---

[7] https://www.ecfr.gov/current/title-49/subtitle-B/chapter-V/part-543 (last visited Aug. 22, 2022).

7

28.     The National Highway Traffic Safety Administration ("NHTSA") enforces and oversees various Federal Motor Vehicle Safety Standards ("FMVSS") that address safety and performance standards for motor vehicles.

29.     One of those safety standards is FMVSS 114, which "specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles."[8] This standard dictates passenger vehicles "must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both." 49 CFR § 571.114.

30.     The language of FMVSS 114 was amended in 2007 "so that it better correlates to modern theft protection technology" though the amendment sought to avoid imposing new substantive requirements on vehicle manufacturers.[9]

31.     The Class Vehicles fail to conform to FMVSS 114 because the starting systems do not prevent the normal activation of the vehicle, nor do they prevent steering or forward self-mobility when the key is removed. This defect makes the Class Vehicles incredibly easy to steal, even for unsophisticated thieves as described by police, and as depicted in hundreds of Tik Tok videos.

32.     Pursuant to its authority under the Motor Vehicle Theft Law Enforcement Act, 49 U.S.C. 33101 *et seq*., ("Theft Act"), the NHTSA also requires

---

[8] Federal Motor Vehicle Safety Standards; Theft Protection, 71 FR 17752-01.
[9] *Id*.

8

manufacturers to mark certain components of the vehicle with identification numbers or symbols. 49 CFR § 541. Manufacturers are allowed to install immobilizers in lieu of parts marking, but under an exemption from the theft standard, not as a compliance alternative included in the theft standard.

33. Germany, the United Kingdom and Finland all mandated new vehicles be equipped with immobilizers in 1998.[10] Immobilizers have been required in new vehicles in Australia since 2001, and in Canada since 2007.[11] Thus, Defendants have been acutely aware of this technology and have been equipping their vehicles with immobilizers for at least 24 years.

34. While not required in United States, the NHTSA has urged car manufacturers to equip their vehicles with immobilizers for decades. However, "the agency is unable to issue a theft prevention standard under the Theft Act to require the installation of immobilizers because that Act limits the agency's standard setting authority to issuing standards that require parts marking."[12]

35. The NHTSA established a process for submitting a petition for exemption from this parts-marking requirement. Pursuant to 49 CFR § 543, "[a] manufacturer may petition the agency for an exemption from the parts marking

---

[10] Jan C. van Ours, Ben Vollaard, The Engine Immobiliser: A Non-starter for Car Thieves, The Economic Journal, Volume 126, Issue 593, June 2016, Pages 1264–1291, https://doi.org/10.1111/ecoj.12196

[11] https://www.cbc.ca/news/canada/anti-theft-device-now-mandatory-in-canadian-made-vehicles-1.677141 (last visited Aug. 22, 2022).

[12] https://www.federalregister.gov/documents/2016/09/29/2016-22061/exemption-from-vehicle-theft-prevention-standard (last visited Aug. 22, 2022).

requirements for one vehicle line per model year if the manufacturer installs an anti-theft device as standard equipment on the entire line. In order to be eligible for an exemption, part 543 requires manufacturers to submit a petition explaining how the anti-theft device will promote activation, attract attention to the efforts of unauthorized persons to enter or operate a vehicle by means other than a key, prevent defeat or circumvention of the device by unauthorized persons, prevent operation of the vehicle by unauthorized entrants, and ensure the reliability and durability of the device."[13]

36.    The NHTSA "has granted many exemptions from the theft prevention standard to vehicle lines on the basis that they were equipped with immobilizers. In support of petitions for these exemptions, manufacturers have provided a substantial amount of data seeking to demonstrate the effectiveness of immobilizers in reducing motor vehicle theft."[14]

## II.    Defendants' Knowledge

37.    Defendants have been installing immobilizers in their vehicles sold outside of the United States for decades, and they have been aware of the rash of thefts for over a year. Still, Defendants elected not to install immobilizers in the Class Vehicles, they have misrepresented the true nature of the vehicles, they have failed to disclose the Ignition Defect to consumers, and they have failed to provide a solution or compensation of any kind.

---

[13] *Id.*
[14] *Id.*

38.     Hyundai Motor Company is the parent company of Kia Corporation, and is its largest shareholder owning 33.88% of the company. Hyundai Motor America and Kia America, Inc. are subsidiaries of Hyundai Motor Company and Kia Corporation, respectively.

39.     HATCI is a subsidiary of Hyundai Motor Company and "represents both Hyundai Motor Company & Kia Corporation in leadership positions in regulatory-related industry trade groups, including the Alliance for Automotive Innovation (AFAI); and interfaces directly with regulators in the development and compliance of regulations."[15]

40.     HATCI supports new research, design, technology and engineering development in North America for both Hyundai and Kia models, claiming "HATCI's success in satisfying the demands of increasingly sophisticated consumers is a direct result of [Hyundai Motor Group's] commitment to the future of American automotive engineering."[16]

41.     The Class Vehicles lack immobilizers, as well as Defendants' commitment to innovations in safety. Hyundai's website touts, unironically, the immobilizers it does install:

> With the mass adoption of automobiles, cars have become important personal assets; Protecting my car from crimes like theft has become important. The car key was an important tool for this - it was necessary to get into the car and to start it. Engraved into a unique pattern, the key acted like a password for a security system. But these

---

[15] https://hatci.com/services/ (last visited Aug. 24, 2022).
[16] HATCI – "About Us" https://j1k.25b.myftpupload.com/about/ (last visited Aug. 24, 2022).

keys had problems; It was easy to duplicate. To overcome this problem, technicians gave each key a unique pattern by carving the inside, not the surface. Then, in 1994, the immobilizer technology appeared, offering a more fundamental solution. A key with immobilizer technology looks just like a regular key, but an encrypted chip called a 'transponder' is inserted into the handle of the key. The vehicle's electronic control unit (ECU) authenticated the information on this chip and allowed the engine to start. In other words, you could open the car door with an identical key, but driving the car was not possible. Immobilizer technology is still an important security device in automobiles.

Defendants go on, promoting their knowledge and awareness of innovations in safety technology:

Car keys are constantly evolving not only in terms of security but also in terms of user convenience. [...] In addition, most smart keys have buttons rather than the turnkey starter. In the past, the immobilizer was operated through a chip in the key handle, but the immobilizer of the smart key operates through an antenna, so if there is a smart key in the car, the car can recognize it and start the car.[17]

42. HATCI claims to ensure all material specifications match consumers' expectations, and "[t]hrough virtual and physical testing, the Safety Integration team supports product development to ensure our products remain some of the safest vehicles in the world. The Engineering Design team uses the latest software/hardware to design vehicle components that meet pre-defined specifications and customer requirements, guiding those parts through production and the full vehicle life-cycle."[18]

---

[17] https://www.hyundaimotorgroup.com/story/CONT0000000000001667 (last visited Aug. 24, 2022).

[18] https://hatci.com/services/ (last visited Aug. 24, 2022).

43.     While HATCI claims "[d]eveloping, testing, and validating new electronic features and safety technology is our everyday mission,"[19] Defendants chose not to equip any vehicles manufactured before 2022 and sold in the United States with engine immobilizers. Thus, Defendants knew of the Ignition Defect and ensuing safety risk before distributing the Class Vehicles into the stream of commerce in Minnesota and throughout the country.

44.     Defendants have been aware of the Ignition Defect for at least 24 years; when immobilizers became mandatory in passenger vehicles across the globe. Nevertheless, Defendants have been manufacturing and selling their vehicles in the United States without immobilizers, and without proper safeguards as required by federal law.

45.     The thousands of car thefts that occurred within 30 days across the country show Defendants' failure to disclose and fix the Ignition Defect, as well as Defendants' failure to conform to federal safety standards.

46.     Despite being acutely aware of the Ignition Defect and having admitted the Class Vehicles are vulnerable to theft, Defendants have not provided any solution to consumers to remedy the issue by replacing defective components, nor have they issued a recall for the Class Vehicles.

47.     Defendants say engine immobilizers are now standard in all 2022 models, though police maintain these models remain vulnerable to theft because

---

[19] *Id.*

the 2022 models do not feature any style changes.[20] In turn, a thief would not necessarily be able to differentiate between newer and older models until after the thief has already broken into the car.

48.     Plaintiffs have been directly affected by the crime spread in St. Paul, Minnesota which has seen Kia thefts increase by 1,300% and Hyundai thefts by nearly 600% in 2022.[21]

## III.   Plaintiff's' Experiences

## Lisa Hilliard

49.     While parked on the street and locked in front of her apartment, Hilliard's 2018 Hyundai Elantra  was broken into and stolen on May 8, 2022.

50.     Hilliard was able to recover her vehicle the next day with the help of police as the theft was recorded on apartment surveillance cameras.

51.     Hilliard was forced to bring her car in for service to repair the damages that occurred as a result of the auto theft. Hilliard paid out-of-pocket to fix her vehicle and was not offered any compensation from Defendants.

52.     Then, on June 29, 2022, Hilliard'sHyundai was stolen a second time while parked and locked on the street in front of her apartment in St. Paul, Minnesota.

---

[20] https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kias-with-just-a-usb-cable (last visited Aug. 24, 2022).

[21] https://www.fox9.com/news/minneapolis-woman-had-kias-targeted-three-times-in-six-months (last visited Aug. 22, 2022).

53. When Hilliard purchased her Hyundai, Defendants' authorized dealer touted the Hyundai as a safe, reliable, high-performing vehicle. Defendants never disclosed the Ignition Defect to Hilliard.

54. Hilliard has sent a notice letter to Defendants on September 29, 2022 pursuant to Minn. Stat. § 336.2-607.

**Kelsey Biljan**

55. Biljan's 2021 Kia Seltos was stolen while parked at the end of her driveway in South St. Paul at approximately 3:30 P.M. on July 18, 2022. Biljan's husband had been taking out the trash and witnessed the thief driving away with the vehicle.

56. Biljan immediately called police, who later informed her that State Patrol troopers had been following the vehicle but were unable to continue chasing it.

57. Approximately 48 hours later, police recovered the vehicle and informed Biljan that it had been taken to an impound lot. The vehicle was not drivable and needed to be towed to an autobody shop.

58. When Biljan went to the impound lot to recover her vehicle, the dash panel had been torn off and it appeared someone had been living in the vehicle. There was gum mashed into the seats and carpeting, dents and scratches on the outside of the vehicle, and someone had stolen her child's car seat.

59. Biljan contacted her dealer, Luther Kia of Inver Grove, to inform them of the theft. Service representatives told Biljan if her vehicle ends up being a total

loss, they were unsure whether any new vehicles would be available as there was no inventory due to recent thefts.

60.     Biljan had the vehicle towed to an autobody shop as the vehicle was undrivable and needed, among other fixes, a new ignition system, and a tremendous amount of body work.

61.     The autobody shop kept her vehicle for over one month while fixing the ignition.

62.     The soonest Biljan could schedule an appointment for body work was September 21, 2022 as the body shop had been inundated with repairs related to the recent thefts of Kia and Hyundai vehicles.

63.     Biljan is still unable to replace part of the transmission in her vehicle. The dealership informed her a certain part is on back order "indefinitely" due to the recent thefts.

64.     To date, Biljan remains without a vehicle, and has been without a vehicle for over two months as it has not been repaired or replaced.

65.     When Biljan purchased her Kia, Defendants' authorized dealer touted the Kia as a safe, reliable, high-performing vehicle. Defendants never disclosed the Ignition Defect to Biljan.

66.     Biljan has sent a notice letter to Defendants on September 29, 2022 pursuant to Minn. Stat. § 336.2-607.

## IV. Minnesota Theft Epidemic

67.     In 2021, there were only 18 total Kia thefts in St. Paul as compared to a mid-year, July 2022 total of 256 thefts, indicating a 1,300% increase when comparing an entire year of 2021 to the first seven months of 2022. Additionally, Hyundai thefts have increased 584% over that same period from 31 in 2021 to currently 212 in July 2022.[22]

68.     In July 2022, a woman was killed by a stolen Kia Sportage out of Minneapolis. In response to the deadly crash, Kia made a statement to a local news station that "Kia America is aware of the rise in vehicle thefts of a subset of trim level vehicles in your area. As of the current 2022 Model Year, all Kia vehicles have an engine immobilizer fitted as standard. All Kia vehicles for sale in the U.S. meet or exceed Federal Motor Vehicle Safety Standards. Kia customers with questions regarding their Kia vehicle should contact the Consumer Assistance Center directly at 1-800-333-4542 (4Kia)." The station also received a statement from Hyundai, who said "Hyundai Motor America is concerned with the rise in local auto thefts. The safety and well-being of our customers and the community is and will remain our top priority. These vehicles meet or exceed Federal Motor Vehicle Safety Standards and engine immobilizers are standard equipment on all new Hyundai

---

[22] https://www.cbsnews.com/minnesota/news/thefts-of-kia-and-hyundai-cars-soar-in-st-paul-data-show/ (last visited Aug. 17, 2022).

vehicles. Hyundai customers who have questions can always contact the Hyundai Consumer Assistance Center at 800-633-5151."[23]

69.    Law enforcement agencies in Minnesota recognize "[a]ll they have to do is break a window and get in and within seconds those cars can be compromised and be started with a USB port or even a pocket knife."[24]



70.    The Sheriff's Office in Ramsey County, Minnesota has gone so far as to call the Kia and Hyundai thefts in Minnesota an "epidemic,"[25] noting these thefts have "exploded" over the summer with cars being stolen during all times of the day. "It's really shocking how many times a day we're seeing reports of Kias and

---

[23] https://www.fox9.com/news/st-paul-pd-kia-thefts-up-1300-hyundai-thefts-up-584-in-2022 (last visited September 29, 2022).

[24] *Id.*

[25] https://www.fox9.com/news/st-paul-pd-kia-thefts-up-1300-hyundai-thefts-up-584-in-2022 (last visited Aug. 22, 2022).

Hyundais, specifically, driving through neighborhoods, high speeds of 70, 80, 90, 100 miles an hour through residential streets four or five times an hour, [in] different cars."[26]

71.     In September 2022, police in Brooklyn Park, Minnesota reported approximately 20 Kia and Hyundai vehicles had been stolen within just a few weeks.[27]

## V.     National Vehicle Theft Trend

72.     The theft of Class Vehicles is not limited by the Minnesota state borders. Law enforcement agencies throughout the country have documented a substantial increase in auto thefts of the Class Vehicles.

73.     Defendants began working with law enforcement in Wisconsin to distribute steering wheel locks to vehicle owners through December 2021 after police in Milwaukee reported the Class Vehicles represented two of every three thefts during the first half of 2021.[28] Since that time, these thefts have only run rampant throughout the country, and Defendants have done nothing in response.

74.     In Florida, law enforcement authorities have issued alerts warning to of the increase in thefts of "Kia/Hyundais models 2021 and older, that use keys to start. Anyone with a KIA/Hyundai that uses a key, **please** #lockitup".

---

[26] *Id.*

[27] https://www.fox9.com/news/20-kia-and-hyundai-vehicles-stolen-from-brooklyn-park-police-warn (last visited September 29, 2022).

[28] https://www.caranddriver.com/news/a38491394/hyundai-kia-thefts-milwaukee-action/ (last visited Aug. 22, 2022).

75.     Kia has tactfully admitted that its Class Vehicles manufactured before 2022, although meeting or exceeding Federal Motor Vehicle Safety Standards, did not manufacture its vehicles with engine immobilizers prior to 2022.

76.     Hyundai has also conceded that "[t]hese vehicles meet or exceed Federal Motor Vehicle Safety Standards and engine immobilizers are standard equipment on all new Hyundai vehicles."[29]

77.     Defendants fail to directly address or speak to their failure to implement engine immobilizers on Class Vehicles manufactured prior to 2022.

**TOLLING OF STATUTES OF LIMITATIONS AND ESTOPPEL**

78.     Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment, misrepresentations and omissions of the Ignition Defect. Plaintiffs and the Putative Class could not have reasonably discovered the true nature of the Ignition Defect until after their cars were stolen.

79.     At all times, Defendants were and are under a continuous duty to disclose to Plaintiffs and Class Members the true standard, quality and grade of the Class Vehicles and to disclose the Ignition Defect due to its exclusive and superior knowledge of the existence and extent of the Ignition Defect.

80.     Accordingly, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and

---

[29] https://www.fox9.com/news/st-paul-pd-kia-thefts-up-1300-hyundai-thefts-up-584-in-2022 (last visited September 29, 2022).

Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

81.    Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and Class Members similarly situated. Plaintiffs seek to represent a class of:

> All persons who purchased or leased a Kia or Hyundai model year 2011 – 2021, primarily for personal use, and not for resale, in the State of Minnesota.

82.    The following persons are excluded the above Class definitions: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff; and anyone who purchased a Class Vehicle for the purpose of resale.  (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded Class Members, unless otherwise so stated, the above-defined class, including named Plaintiffs, are referred to herein as the "Class."

83.     Plaintiffs reserve the right to amend the Class definition if discovery or further investigation reveals that any Class should be expanded or narrowed, or modified in any other way.

**Numerosity**

84.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.   There are hundreds of thousands of proposed class members in Minnesota. In 2021 alone, Kia boasted its best sales year in company history, selling over 700,000 vehicles in the United States.[30] Hyundai sold 738,081 vehicles in 2021, the third best year in company history.[31]

**Commonality**

85.     There are questions of law and fact common to the proposed Class. Common questions of law and fact include without limitation:

    i.     Whether the Class Vehicles possess a material defect;

    ii.    When Defendants were aware of the Ignition Defect and how long they have known about it;

    iii.   Whether Defendants concealed the Ignition Defect from Class Members;

---

[30] https://www.kiamedia.com/us/en/media/pressreleases/18308/kia-america-surpasses-700000-units-for-the-first-time-and-completes-best-sales-year-in-company-histo (last visited Aug. 17, 2021).

[31] https://www.hyundainews.com/en-us/releases/3475 (last visited Aug. 17, 2021).

    iv.    Whether Defendants knew, or should have known, that the Class Vehicles they sold into the stream of commerce pose unreasonable risk to consumers;

    v.    Whether the Ignition Defect constitutes a material fact that reasonable purchasers would have considered in deciding whether to purchase a Class Vehicle;

    vi.    Whether Defendants had a duty to disclose the nature of the Ignition Defect to Class Members;

    vii.    Whether Defendants engaged in unfair, unlawful or fraudulent business practices by failing to disclose the Ignition Defect;

    viii.    Whether Defendants breached their express warranty obligations;

    ix.    Whether Defendants were unjustly enriched by the sale of the Class Vehicles to Class Members;

    x.    Whether Class Members are entitled to recover damages.

**Typicality**

86.    Plaintiffs' claims are typical of the proposed Class.  Like the proposed Class, Defendants' conduct towards Plaintiffs has caused damages and harm, as a proximate or legal result of the common course of conduct of Defendants, as articulated in this class action complaint. Plaintiffs and all members of the proposed Class purchased or leased Class Vehicles with the same defect—a substandard ignition system that is highly vulnerable to theft—giving rise to the same claims.  Plaintiffs allege the same breach, and other claims, as the proposed

Class. Plaintiffs seek the same type of relief in the class action and has no interests that conflict with the interest of the proposed Class.

**Adequacy**

87.     Plaintiffs will fairly and adequately protect the interest of the proposed class. Plaintiffs are represented by experienced class counsel who are experienced in complex commercial litigation and class actions and are prepared to vigorously litigate this case through judgement and appeal, if necessary.

**Predominance and Superiority**

88.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from Class Member to Member, and which may be determined without reference to individual circumstance of any particular Class Member.

89.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.  Further, because of the damages suffered by any individual Class Member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for Class Members to seek redress individually

for Defendants' wrongful conduct as alleged. Furthermore, many of the Class Members may be unaware that claims exist against Defendant.

90.   The proposed Class is readily ascertainable.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The name and potential contact information of Class Members are readily available from Defendants in their sales or lease records, as well as from the Department of Motor Vehicles' title and registration records.

## CAUSES OF ACTION

### COUNT I
### Violation of the Minnesota Consumer Fraud Act

### Minn. Stat. § 325F.68

91.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

92.   Defendants, Plaintiffs, and Class Members are "persons" as defined by Minn. Stat. § 325F.68(3).

93.   The Class Vehicles are "merchandise" as defined by Minn. Stat. § 325F.68(2).

94.   The Minnesota Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise,

whether or not any person has in fact been misled, deceived, or damaged thereby" pursuant to Minn. Stat. § 325F.69.

95.     Defendants engaged in false promises, misrepresentations, misleading statements, or deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

96.     Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally concealing, omitting, misrepresenting, and/or failing to disclose material facts regarding the Ignition Defect in the Class Vehicles.

97.     By failing to disclose the Ignition Defect at the time of purchase or lease, Defendants intended to induce Plaintiffs and the Class to rely on their misrepresentations and omissions in purchasing or leasing their vehicles. Therefore, Defendants engaged in one or more of the unfair or deceptive business practices prohibited by Minn. Stat. § 325F.69, with the intent that others rely thereon in connection with the sale of any merchandise.

98.     Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs and the Class about the true nature of the Class Vehicles, the quality of the vehicle and its true value.

99.     Defendants' concealment of the Ignition Defect in the Class Vehicles was material to Plaintiffs and the Class. Had Plaintiffs and the Class known the truth and true value of the Class Vehicles, they would not have purchased or leased them, or they would have paid significantly less for them.

100.   Plaintiffs and the Class had no way of discerning that Defendants' representations were false and misleading and did not and could not have unraveled Defendants' deception on their own.

101.   Defendants had an ongoing duty to consumers, Plaintiffs and the Class, not only to refrain from its unfair and/or deceptive practices under the Minnesota CFA, but Defendants also had a duty to disclose all material facts concerning the Class Vehicles because Defendants possessed exclusive knowledge of the defect.

102.   As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing or leasing their vehicles.

103.   Defendants' unlawful acts and practices described herein affect the public interest because hundreds, if not thousands, of purchasers in Minnesota were targeted by Defendants' omissions and misstatements, and these omissions and misstatements have the potential to deceive thousands of consumers in the future. The prevention of such false and misleading information is a public benefit.

104.    Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiffs and the Class seek an order enjoining Defendants' unfair or deceptive acts, as well as an award of attorney's fees, costs, disbursements, and any other just and proper relief available under the Minnesota CFA and applicable law and statute.

## COUNT II
## Breach of Implied Warranty

### Minn. Stat. § 336.2 – 314

105.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

106.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles pursuant to Minn. Stat. § 336.2 – 104(1).

107.    Defendants are and were at all relevant times "sellers" and "lessors" of motor vehicles under Minn. Stat. § 336.2 – 103(1)(d) and § 336.2A – 103(1)(p).

108.    Plaintiffs and Class Members who purchased the Class Vehicles are "buyers" under Minn. Stat. § 336.2 – 103(1)(a).

109.    Plaintiffs and Class Members who leased the Class Vehicles are "lessees" under Minn. Stat. § 336.2A – 103(1)(n).

110.    The Class Vehicles are "goods" under Minn. Stat. § 336.2 – 105(1) and §336.2A – 103(1)(h).

111.    A warranty that Class Vehicles were in merchantable condition was implied by law in the sale or lease of the vehicles. Defendants impliedly warranted

that the Class Vehicles were of a merchantable quality pursuant to Minn. Stat. § 336.2 – 114 and § 336.2A – 212.

112.     The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale or lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, Class Vehicles are vulnerable to theft at all times – while Plaintiff and Class Members are inside their vehicles, as well as when the vehicles are left unattended.

113.     Plaintiffs and Class Members have provided Defendants reasonable notice and opportunity to cure its breach of the implied warranties by way of complaints online and complaints to authorized dealers, but Defendants have failed or refused to remedy the defect.

114.     As a direct and proximate result of Defendants' breach of its implied warranty of merchantability, Plaintiff and Class Members have suffered damages.

115.     At all times Defendants warranted sold, and leased the Class Vehicles, they knew or should have known that its warranties were false, and yet Defendants did not disclose the truth, or stop manufacturing or selling the Class Vehicles, and instead continued to issue false warranties. The Class Vehicles were defective when Defendants delivered them to its resellers, dealers, and distributors which sold the Class Vehicles, are were therefore still defective when they reached Plaintiff and Class Members.

116.    Defendants' resellers, dealers, and distributors are intermediaries between Defendants and consumers. These intermediaries sell the Class Vehicles to consumers and are not, themselves, consumers of Class Vehicles, and therefore have no rights against Defendants with respect to the Plaintiff and Class Members' acquisition of the Class Vehicles. Defendants' warranties were designed to influence consumers who purchased or leased the Class Vehicles.

117.    Plaintiff and Class Members' acquisition of the Class Vehicles suffices to create privity of contract between the Plaintiff and Class Members, on the one hand, and Defendants on the other hand; however, privity of contract need not be established nor is it required because the Plaintiff and Class Members are intended third-party beneficiaries of contracts between Defendants and their resellers, authorized dealers, and, specifically, of Defendants' implied warranties.

118.    Plaintiffs sent notice letters to Defendants on September 29, 2022 pursuant to Minn. Stat. § 336.2-607.

## COUNT III
## Violation of the Magnuson-Moss Warranty Act ("MMWA")
### 15 U.S.C. §§ 2301, *et seq.*

119.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

120.    Plaintiffs individually, and on behalf of all others similarly situated, bring this claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

121.   Plaintiffs are "consumers" within the meaning of 15 U.S.C. § 2301(3).

122.   Defendants are "suppliers" and "warrantors" within the meanings of § 2301(4) – (5).

123.   The Class Vehicles are "consumer products" within the meaning of § 2301(1).

124.   § 2304(a)(1) requires Defendants as warrantors, to remedy any defect, malfunction or nonconformance of the Plaintiffs' vehicles within a reasonable time and without charge to the Plaintiffs.

125.   § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

126.   Defendants provided an implied warranty of merchantability to Plaintiffs and Class Members pursuant to 15 U.S.C. § 2301(7), in which Defendants warranted the vehicles were fit for their ordinary purpose and pass without objection in trade as designed, manufactured and marketed.

127.   Defendants breached their implied warranties and are liable to Plaintiffs and Class Members as the Ignition Defect made the Class Vehicles unmerchantable and unfit for their ordinary purpose when they were sold or leased, and at all times after sale or lease.

128.   Plaintiffs and Class Members used their vehicles in a manner consistent with their intended use.

129.    Defendants are required to cure their breach and repair the Ignition Defect during the warranty period or replace the vehicle at no charge.

130.    Defendants failed to cure, and have not cured, their breach of implied warranty within a reasonable amount of time.

131.    Defendants' breach has deprived Plaintiffs of the benefit of their bargain.

132.    The amount in controversy of the Plaintiff's individual claim meets or exceeds the sum or value of $25. Additionally, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

133.    As a direct and proximate cause of Defendants' breach, Plaintiffs have sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs. Plaintiffs are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief pursuant to 15 U.S.C. § 2310(d).

## COUNT IV
## Negligence

134.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

135.    Defendants knowingly designed, manufactured and sold the Class Vehicles with substandard ignition security. Specifically, Defendants knowingly designed, manufactured and sold the Class Vehicles without engine immobilizers.

32

136. Defendants knew or should have known that manufacturing, designing and distributing vehicles into the stream of commerce without engine immobilizers presents a safety risk and renders the vehicles vulnerable to theft.

137. Defendants knew or should have known of the risk of distributing vehicles with substandard vehicle ignition security into the stream of commerce.

138. Defendants owed Plaintiffs and Class Members a duty to prevent foreseeable harm. This duty exists because Plaintiffs and Class Members are foreseeable and probable victims of theft.

139. Defendants' breached the duties they owed to Plaintiffs and Class Members by distributing defective vehicles into the stream of commerce.

140. Defendants' breach caused Plaintiffs and Class Members injury.

141. Had they known their vehicles were sold with substandard vehicle ignition security, Plaintiffs and Class Members would not have leased or purchased their vehicles.

142. Plaintiffs and Class Members have suffered damages as a result of Defendants' negligence.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Putative Class, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. For an Order certifying the Class as defined herein and appointing Plaintiffs and their Counsel to represent the Class;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the sale of Class Vehicles;

C. For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

      i. declaring that Defendants' conduct violates the statutes and laws referenced herein; and

      ii. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D. For restitution and disgorgement of the revenues wrongfully obtained as a result of Defendants' wrongful conduct;

E. For an award of actual damages, statutory damages and compensatory damages, in an amount to be determined at trial;

F. For an award of costs of suit, litigation expenses and reasonable attorneys' fees, as allowable by law; and

G. Any additional relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all issues so triable.

**HELLMUTH & JOHNSON, PLLC**

Dated: October 3, 2022

*/s/ Anne T. Regan*
Anne T. Regan (MN #0333852)
Nathan D. Prosser (MN #0329745)
Lindsey L. Larson (MN #0401257)
8050 West 78th Street
Edina, MN  55439
952-460-9285
aregan@hjlawfirm.com
nprosser@hjlawfirm.com
llabellelarson@hjlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Lisa Hilliard and Kelsey Biljan, each individually and on behalf of all others similarly situated.

## DEFENDANTS

Kia America, Inc., Hyundai Kia America Technical Center, Inc., and Hyundai Motor America

**(b)** County of Residence of First Listed Plaintiff  Ramsey
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Orange
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Anne T. Regan, Nathan D. Prosser, Lindsey L. Larson, Hellmuth & Johnson, PLLC, 8050 West 78th Street, Edina, MN 55439, (952) 941-4005

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [x] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)

Brief description of cause:
Defendant breached warranties or were negligent and omitted or concealed material facts of defect in their vehicles.

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
5,000,000+

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE  October 3, 2022

SIGNATURE OF ATTORNEY OF RECORD  /s/ Anne T. Regan

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.