# EXHIBIT 1

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

ACCO,(ADSx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
### CIVIL DOCKET FOR CASE #: 8:22-cv-01905-DOC-ADS

| | |
|---|---|
| Victoria Mohr et al v. Kia America, Inc. et al | Date Filed: 10/17/2022 |
| Assigned to: Judge David O. Carter | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Autumn D. Spaeth | Nature of Suit: 360 P.I.: Other |
| Cause: 28:1332 Diversity-Contract Default | Jurisdiction: Diversity |

**Plaintiff**

**Victoria Mohr**
*individually and on behalf of all others similarly situated*

represented by **Bryan L Bleichner**
Chestnut Cambronne PA
100 Washington Avenue South Suite 1700
Minneapolis, MN 55401
612-339-7300
Email: bbleichner@chestnutcambronne.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gwendolyn Kalimu**
*individually and on behalf of all others similarly situated*

represented by **Bryan L Bleichner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**
*a California corporation*

**Defendant**

**Hyundai Motor America**
*a California corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/17/2022 | 1 | COMPLAINT Receipt No: ACACDC-34161547 - Fee: $402, filed by Plaintiffs Victoria Mohr, Gwendolyn Kalimu. (Attorney Bryan L Bleichner added to party |

| | | Gwendolyn Kalimu(pty:pla), Attorney Bryan L Bleichner added to party Victoria Mohr(pty:pla))(Bleichner, Bryan) (Entered: 10/17/2022) |
|---|---|---|
| 10/17/2022 | 2 | CIVIL COVER SHEET filed by Plaintiffs Gwendolyn Kalimu, Victoria Mohr. (Bleichner, Bryan) (Entered: 10/17/2022) |
| 10/17/2022 | 3 | Request for Clerk to Issue Summons on Civil Cover Sheet (CV-71) 2 , Complaint (Attorney Civil Case Opening), 1 filed by Plaintiffs Gwendolyn Kalimu, Victoria Mohr. (Bleichner, Bryan) (Entered: 10/17/2022) |
| 10/17/2022 | 4 | Request for Clerk to Issue Summons on Civil Cover Sheet (CV-71) 2 , Complaint (Attorney Civil Case Opening), 1 filed by Plaintiffs Gwendolyn Kalimu, Victoria Mohr. (Bleichner, Bryan) (Entered: 10/17/2022) |
| 10/18/2022 | 5 | NOTICE RE INTRA-DISTRICT TRANSFER by Clerk of Court due to incorrect intra-district venue selected by the filer. Case is transferred to the Southern Division. Case has been assigned to Judge David O. Carter for all further proceedings. Any matters that may be referred to a Magistrate Judge are assigned to Autumn D. Spaeth. New Case Number 8:22-cv-1905 DOC (ADSx). (ghap) (Entered: 10/18/2022) |
| 10/18/2022 | 6 | NOTICE OF ASSIGNMENT to District Judge David O. Carter and Magistrate Judge Autumn D. Spaeth. (ghap) (Entered: 10/18/2022) |
| 10/18/2022 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (ghap) (Entered: 10/18/2022) |
| 10/18/2022 | 8 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (ghap) (Entered: 10/18/2022) |
| 10/18/2022 | 9 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to Defendant Kia America, Inc. (ghap) (Entered: 10/18/2022) |
| 10/18/2022 | 10 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to Defendant Hyundai Motor America. (ghap) (Entered: 10/18/2022) |
| 10/18/2022 | 11 | NOTICE OF DEFICIENCIES in Attorney Case Opening RE: Complaint (Attorney Civil Case Opening), 1 . The following error(s) was found: No Notice of Interested Parties has been filed. A Notice of Interested Parties must be filed with every partys first appearance. See Local Rule 7.1-1. Counsel must file a Notice of Interested Parties immediately. Failure to do so may be addressed by judicial action, including sanctions. See Local Rule 83-7. (ghap) (Entered: 10/18/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/21/2022 06:41:10 | | |
| **PACER Login:** | jb0014 | **Client Code:** 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** 8:22-cv-01905-DOC-ADS End date: 10/21/2022 |

| Billable Pages: | 2 | Cost: | 0.20 |
|---|---|---|---|

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner (CAL BAR # 220340)
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Email: *bbleichner@chesnutcambronne.com*

*Attorney for Plaintiffs and the Proposed Class*

## UNTIED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| VICTORIA MOHR and GWENDOLYN KALIMU, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br>  v.<br><br>KIA AMERICA, INC., a California corporation, and HYUNDAI MOTOR AMERICA, a California corporation,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF FOR:**<br><br>1. **VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT (MN CFA) MINN. STAT. § 325F.68;**<br><br>2. **VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT § 325D.43 (MUDTPA);**<br><br>3. **VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT 15 U.S.C. §2301, *et seq* (MMWA);**<br><br>4. **BREACH OF IMPLIED WARRANTY; and**<br><br>5. **NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

-1-
CLASS ACTION COMPLAINT

Plaintiffs Victoria Mohr and Gwendolyn Kalimu, individually and on behalf of all other persons similarly situated, bring this Class Action Complaint against Kia America, Inc., Hyundai Kia America Technical Center, Inc., and Hyundai Motor America (collectively "Defendants"), and allege, upon personal knowledge as to their own actions and their counsel's investigation, and upon information and belief as to all other matters, as follows:

1. This Complaint involves the knowing failure of Defendants to properly equip vehicles they manufacture and distribute broadly throughout the United States with the common theft deterrent known as an engine immobilizer, resulting in the enhanced threat of loss by theft for purchasers of Defendants' vehicles.

2. Auto manufacturers have regularly produced vehicles containing engine immobilizers for decades.[1] Engine immobilizers prevent the engine from starting without using the vehicle's authorized key, which contains a transponder chip that transmits a specific code allowing the driver to start the engine. The engine control unit does not permit the ignition circuit or fuel system to operate if the code in the key or fob does not match.

3. For years, Defendants' vehicles were designed and manufactured with similar defective, hackable ignition systems that have led to a nationwide rash of Kia and Hyundai thefts.

4. Defendants did not disclose this defect, which is something that a reasonable person would rely on when purchasing a vehicle.

5. Defendants' failure to include this normal and expected component makes their vehicles incredibly simple to steal; videos available on the Internet show a would-be thief how to

---

[1] *See* Autoblog.com, Thieves increasingly targeting Hyundai and Kia models, IIHS study finds: Some of these cars are missing a key theft-prevention feature. (Sept. 22, 2022) https://www.autoblog.com/2022/09/22/kia-hyundai-thefts-rise/ (last visited Oct. 13, 2022) *(stating that by model year 2015, engine immobilizers were standard on 96 percent of other manufacturers' vehicles.)*

do so by simply opening the steering columns and using a common USB charging cord or similar metal object to start the engine.

6.   This design failure has made Defendants' vehicles a prime target for thieves who permanently deprive buyers of their vehicle, as well as people, often teens and young adults, simply taking vehicles for joyrides.

7.   Videos of both the "how-to" and joyride exploits, the "Kia Challenge," have become popular on sites such as YouTube and TikTok, with millions of views.

8.   In July 2022, St. Paul Minnesota Police reported they have investigated at least 212 Hyundai thefts and 256 Kia thefts this year, compared to 31 Hyundai thefts and 18 Kia thefts in the same time period last year.[2]  This is not isolated to merely St. Paul, either.

9.   "Los Angeles officials say the viral trend has led to an 85% increase in car theft of Hyundais and Kias compared with last year."   In Chicago, the Sheriff reported that "In our jurisdiction alone, [thefts of certain models are] up over 800% in the last month, [with] no end in sight."[3]

10.   Upon information and belief, the vehicles in question were manufactured between 2011 and 2021, with Defendants declaring that after November 1, 2021, all new vehicles will have engine immobilizers installed.[4]

---

[2] St. Paul PD: Kia thefts up 1,300%, Hyundai thefts up 584% in 2022. https://www.fox9.com/news/st-paul-pd-kia-thefts-up-1300-hyundai-thefts-up-584-in-2022 (last visited Oct. 13, 2022).
[3] CNBC, TikTok challenge spurs rise in thefts of Kia, Hyundai cars, Sept. 9, 2022, https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html (last visited Oct. 13, 2022).
[4] *Supra,* n. 1.

11.     Defendants' conduct violates consumer protection laws and also breaches the companies' warranty obligations. Plaintiffs bring this lawsuit on behalf of themselves and the class they propose to represent, seeking an award of damages and appropriate equitable relief.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendants are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants are citizens of California with headquarters located in this district.

## PARTIES

*Plaintiffs*

*Victoria Mohr*

14.     Plaintiff Victoria Mohr is a citizen of the State of Minnesota, residing in Woodbury, in Washington County.

*Gwendolyn Kalimu*

15.     Plaintiff Gwendolyn Kalimu is a citizen of the State of Minnesota, residing in Minneapolis in Hennepin County.

*Defendants*

*Kia America, Inc.*

16.     Defendant Kia America, Inc. is a California corporation with a principal place of business at 111 Peters Canyon Rd., Irvine, California 92606.

-4-
CLASS ACTION COMPLAINT

17.    Defendant Hyundai Motor America is a California corporation with a principal place of business at 10550 Talbert Ave., Fountain Valley, California 92708.

18.    Upon information and belief, at all relevant times, Defendants designed, manufactured, marketed, distributed and sold automobiles with models including: Hyundai Elantra, Hyundai Kona, Hyundai Palisade, Hyundai Santa Cruz, Hyundai Santa Fe, Hyundai Sonata, Hyundai Tucson, Hyundai Venue, Kia Cadenza, Kia Forte, Kia K900, Kia Niro, Kia Optima, Kia Rio, Kia Sedona, Kia Seltos, Kia Sorento, Kia Soul, Kia Sportage, Kia Stinger, and the Kia Telluride throughout the United States without engine immobilizers, but had two lines of vehicles that included engine immobilizers, the Kia Amanti and Hyundai Azera.

19.    Defendants directed, managed, or funded nationwide advertising campaigns that were intended to reach consumers throughout the United States that marketed the alleged safety and reliability of Class Vehicles. None of these advertisements or marketing materials disclosed the absence of engine immobilizers in the relevant vehicles, or disclosed that these vehicles were manufactured in an inappropriate and defective manner.

20.    Defendants knew off the increased risk of theft from failing to include what was practically standard equipment by 2015 on its vehicles.[5]

**FACTUAL ALLEGATIONS**

21.    An engine immobilizer is a common automobile anti-theft feature, common in vehicles manufactured over the last 20 years.  It is defined in the Code of Federal Regulations as "a device that, when activated, is intended to prevent a motor vehicle from being powered by its

---

[5] *Supra,* n. 1.; *see also* Fed. Reg., Vol. 75, No. 6, page 1448, January 11, 2010 (statement by Kia that inclusion of an immobilizer would reduce thefts by up to 80%.

own propulsion system."[6]  The purpose of an immobilizer is to deter people who do not have the necessary key or fob from starting the engine of a vehicle.

22.     The common form for an engine immobilizer includes an electronic chip embedded in the vehicle's engine control unit, which a matching transponder chip located in a key or fob. Without the matching key or fob containing the proper electronic security code, the engine will not start.

23.     A vehicle equipped with an engine immobilizer requires the key or fob to be either inserted or within the vehicle to transmit the electronic code to the vehicle's Engine Management System ("EMS").

24.     With few exceptions, Defendants did not equip their vehicles with engine immobilizers, knowing that vehicles without engine immobilizers present a greater risk of theft, are unsafe, and less valuable than vehicles with engine immobilizers.

25.     That these vehicles were unsafe is evident from the fact that the relevant vehicles did not meet safety standards promulgated as the Federal Motor Vehicle Safety Standards ("FMVSS") by the National Highway Traffic Safety Administration ("NHTSA").

26.     One of these standards dictates passenger vehicles "must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both." 49 CFR § 571.114.

---

[6] 49 C.F.R. § 543.4

-6-
CLASS ACTION COMPLAINT

27.    Defendants' vehicles fail to conform to FMVSS 114 because the starting systems do not prevent the "normal activation of the vehicle," nor do they prevent "steering or forward self-mobility" when the key is removed.

28.    This defect not only makes the Defendants' vehicles unsafe, but also incredibly easy to steal, even for unsophisticated thieves as described by police, and as depicted in hundreds of YouTube and Tik Tok videos.

29.    Defendants were certainly aware of the value of engine immobilizers, and were capable of installing them on the relevant vehicles, because Defendants have equipped their vehicles with engine immobilizers in other countries where they are mandatory equipment.

30.    Defendant Hyundai's website extols the virtues of engine immobilizer technology.

With the mass adoption of automobiles, cars have become important personal assets; Protecting my car from crimes like theft has become important. The car key was an important tool for this - it was necessary to get into the car and to start it. Engraved into a unique pattern, the key acted like a password for a security system. But these keys had problems; It was easy to duplicate. To overcome this problem, technicians gave each key a unique pattern by carving the inside, not the surface. Then, in 1994, the immobilizer technology appeared, offering a more fundamental solution. A key with immobilizer technology looks just like a regular key, but an encrypted chip called a 'transponder' is inserted into the handle of the key. The vehicle's electronic control unit (ECU) authenticated the information on this chip and allowed the engine to start. In other words, you could open the car door with an identical key, but driving the car was not possible. Immobilizer technology is still an important security device in automobiles.[7]

31.    Defendants sell vehicles in countries where engine immobilizers are required. Germany, the United Kingdom and Finland all mandated new vehicles be equipped with immobilizers in 1998, Australia has required them since 2001, and Canada since 2007.[8]

---

[7] https://www.hyundaimotorgroup.com/story/CONT0000000000001667 (last accessed: June 17, 2022).
[8] Jan C. van Ours & Ben Vollaard, The Engine Immobilizer: A Non–Starter For Car Thieves, THE ECONOMIC JOURNAL, Vol. 126, No. 593, 1264, 1283 (June 2016).

-7-
CLASS ACTION COMPLAINT

32.     Though Defendants have been installing immobilizers in their vehicles sold outside of the United States for decades, Defendants have elected not to install immobilizers in the relevant vehicles, have misrepresented the true nature of the vehicles, have failed to disclose the Ignition Defect to consumers, and refused to provide a solution or compensation.

33.     Defendants likely refused to implement this generally ubiquitous technology as a standard feature as a cost–saving measure irrespective of the harm to consumers this choice represented.

34.     Apart from the increased theft issues related to Defendants' failure to include an engine immobilizer, Defendants' decision to make their cars a ripe target for theft leads to other forms of damage, such as broken windows and broken steering columns.  Repairing these issues can cost thousands of dollars.

35.     The increased auto thefts also leads to increased insurance premiums, loss of other property stolen or damaged in the process, and the diminution in value of the Defendants' vehicles in the hands of class members.

***Plaintiffs' Experiences***

36.     In 2021, the City of St. Paul, Minnesota experienced 18 total Kia thefts.  By July 2022, there had been a total of 256 thefts, or a 1,300% increase when compared to all of 2021.  Hyundai thefts have increased 584% over that same period.

37.     Law enforcement agencies in Minnesota recognize "[a]ll they have to do is break a window and get in and within seconds those cars can be compromised and be started with a USB port or even a pocket knife."[9]

---

[9] https://www.fox9.com/news/st-paul-pd-kia-thefts-up-1300-hyundai-thefts-up-584-in-2022 (last visited Oct. 13, 2022).

38.     The Sheriff's Office in Ramsey County, Minnesota has gone so far as to call the Kia and Hyundai thefts in Minnesota an "epidemic,"[25] noting these thefts have "exploded" over the summer with cars being stolen during all times of the day. "It's really shocking how many times a day we're seeing reports of Kias and Hyundais, specifically, driving through neighborhoods, high speeds of 70, 80, 90, 100 miles an hour through residential streets four or five times an hour, [in] different cars."[10]

39.     The increased thefts of Defendants' vehicles is not just an issue in Minnesota, but is seen throughout the country.

### Plaintiff Victoria Mohr

40.     Plaintiff leased a 2020 Kia Seltos from Jeff Belzer's Kia in Lakeville, Minnesota. Plaintiff made a $3,000 down payment and was paying $225 per month to lease the vehicle.

41.     Plaintiff's 2020 Kia Seltos was stolen on August 2, 2020.

42.     Thieves stole Plaintiff's vehicle by breaking the passenger rear side window and activating the engine. Thieves were able steal Plaintiff's vehicle because Defendants did not equip Plaintiff's vehicle with an engine immobilizer. In turn, thieves were able to start Plaintiff's vehicle and drive away.

43.     When Plaintiff's vehicle was subsequently located the same day at 7:00 pm, the passenger rear side window was smashed, the steering column cladding was removed, and no oil was in the engine.

44.     All told, the vehicle suffered in excess of $9,500 in damage. Plaintiff's insurance only agreed to pay $9,500.

---

[10] *Id.*

CLASS ACTION COMPLAINT

45.     As a result of Defendants' failure to implement an engine immobilizer, Plaintiff was forced to sell the Kia Seltos was forced to sell the car to a wholesaler and use those funds and the $9,500 to pay the remainder of debt of the dealership.

46.     As a result of Defendants' failure to implement an engine immobilizer, Plaintiff suffered financial harm because she no longer had a vehicle and was required to purchase a new vehicle.

47.     In total, Plaintiff suffered more than $5,000 in damages in procuring a new vehicle and paying for expenses that exceeded the insurance allotment as a result of the theft caused by Defendant's failure to implement an engine immobilizer.

***Plaintiff Gwendolyn Kalimu***

48.     Plaintiff owned a 2014 Hyundai Sonata GLS. At the time it was stolen, Plaintiff owned the vehicle outright.

49.     Plaintiff's vehicle was stolen on September 13, 2022 and was recovered on September 18, 2022.

50.     Thieves stole Plaintiff's vehicle by breaking the a car window and activating the engine. Thieves were able steal Plaintiff's vehicle because Defendants did not equip Plaintiff's vehicle with an engine immobilizer. In turn, thieves were able to start Plaintiff's vehicle and drive away.

51.     When it was recovered, the vehicle was undriveable. The inside of the vehicle was trashed and the steering column cladding was removed.

52.     Plaintiff's vehicle required extensive repairs. Plaintiff contacted her insurer, but those repairs would not be made until November due to product shortages and delays. In turn, Plaintiff paid costs out of pocket to made the vehicle drivable.

53.     To date, the vehicle steeling needs the steering column cladding, but that part is back ordered.

54.     Moreover, Plaintiff suffered financial harm because she no longer had a vehicle.

55.     As a result of Defendants' failure to implement an engine immobilizer, Plaintiff suffered financial harm in paying costs out-of-pocket to restore the vehicle.

56.     As a result of Defendants' failure to implement an engine immobilizer, Plaintiff suffered financial harm via incurred expenses via for Ubers and missed work.

57.     As a result of Defendants' failure to implement an engine immobilizer, Plaintiff suffered financial harm via loss of value to her vehicles—*i.e.*, the potential resale value will be affected by the theft and the damage caused to the vehicle by the theft.

58.     In total, Plaintiff suffered more than $2,000 in damages in having to pay repairs out-of-pocket, missing work, and other incidental expenses (e.g., uber trips) as a result of the auto theft caused by Defendant's failure to implement an engine immobilizer.

## TOLLING OF STATUTES OF LIMITATIONS AND ESTOPPEL

59.     Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment, misrepresentations and omissions of the defective condition of its vehicles. Plaintiffs and the Proposed Class could not have reasonably discovered the true nature of the defect until after their cars were stolen.

60.     At all times, Defendants were and are under a continuous duty to disclose to Plaintiffs and Class Members the true standard, quality, and grade of the Class Vehicles and to disclose the Ignition Defect due to its exclusive and superior knowledge of the existence and extent of the defect.

61.     Accordingly, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and Class Members similarly situated. Plaintiffs seek to represent a class of:

> All persons who purchased or leased a Kia or Hyundai model year 2011 – 2021, primarily for personal use, and not for resale, that did not include an engine immobilizer.

63.     The following persons are excluded the above Class definitions: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff. (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded Class Members, unless otherwise so stated, the above-defined class, including named Plaintiffs, are referred to herein as the "Class."

64.     Plaintiffs reserve the right to amend the Class definition if discovery or further investigation reveals that any Class should be expanded or narrowed, or modified in any other way.

65. **Numerosity.** The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  On information and belief, Defendants have sold millions of vehicles during the relevant period that do not include engine immobilizers.

66. **Commonality.** There are questions of law and fact common to the proposed Class. Common questions of law and fact include without limitation:

   a.  Whether Defendants manufactured and sold vehicles that possess a material defect;

   b.  When Defendants were aware of the defect and impact of this defect,  and how long they knew about it;

   c.  Whether Defendants concealed the defect from Class Members;

   d.  Whether Defendants knew, or should have known, that the relevant vehicles they sold into the stream of commerce posed an unreasonable risk to consumers;

   e.  Whether the defect constitutes a material fact that reasonable purchasers would have considered in deciding whether to purchase Defendants' vehicles;

   f.  Whether Defendants had a duty to disclose the nature of the defect to Class Members;

   g.  Whether Defendants engaged in unfair, unlawful or fraudulent business practices by failing to disclose the defect;

   h.  Whether Defendants breached their express warranty obligations;

   i.  Whether Defendants were unjustly enriched by the sale of the vehicles to Class Members where the vehicles lacked an engine immobilizer.

   j.  Whether Class Members are entitled to recover damages.

67. **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class Member has a vehicle with the same defect.

*68.* **Adequacy**. Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives

-13-
CLASS ACTION COMPLAINT

because their interests do not conflict with the interests of the Class Members. Further, Plaintiffs has retained counsel competent and experienced in complex class action litigation and Plaintiffs intends to prosecute this action vigorously. Therefore, the interests of the Class Members will be fairly and adequately protected.

69.     **Predominance and Superiority of Form.** Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues that do not vary between Class Members, and which may be determined without reference to individual circumstance of any particular Class Member.

70.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit. Further, because of the damages suffered by any individual Class Member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for Class Members to seek redress individually.

71.     The proposed Class is readily ascertainable. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The name and potential contact information of Class Members are readily available from Defendants in their sales or lease records, as well as from the Department of Motor Vehicles' title and registration records.

**CLAIMS**

**COUNT I – VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT (MN CFA)
MINN. STAT. § 325F.68**

72.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

73.     Defendants, Plaintiffs, and Class Members are "persons" as defined by Minn. Stat. § 325F.68, subd. 3 and the relevant vehicles produced by Defendants without engine immobilizers are "merchandise" as defined by Minn. Stat. § 325F.68, subd. 2.

74.     MN CFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby" pursuant to Minn. Stat. § 325F.69.

75.     Defendants engaged in misrepresentations, misleading statements, and/or deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69, subd. 1 by knowingly and intentionally concealing, omitting, misrepresenting, and/or failing to disclose material facts regarding the absence of engine immobilizers in their vehicles.

76.     By failing to disclose the absence of an engine immobilizer at the time of purchase or lease, Defendants intended to induce Plaintiffs and the Class to rely on their misrepresentations and omissions regarding the safety and quality of the vehicles in the context of Plaintiffs and Class Members purchasing or leasing their vehicles.

77.     Therefore, Defendants engaged in one or more of the unfair or deceptive business practices prohibited by Minn. Stat. § 325F.69, with the intent that others rely thereon in connection with the sale of any merchandise.

-15-
CLASS ACTION COMPLAINT

78.     Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs and the Class about the true nature of the Defendants' vehicles, the quality of the vehicle and its true value.

79.     Defendants' unfair and deceptive acts related to issues material to Plaintiffs and the Class. Had Plaintiffs and the Class known the truth and true value of the Defendants' vehicles, they would not have purchased or leased them, or they would have paid significantly less for them.

80.     Plaintiffs and the Class had no way of discerning that Defendants' representations were false and misleading and did not and could not have unraveled Defendants' deception on their own.

81.     Defendants had an ongoing duty to consumers, Plaintiffs and the Class, not only to refrain from its unfair and/or deceptive practices under the MN CFA, but Defendants also had a duty to disclose all material facts concerning the vehicles it manufactured and sold because Defendants possessed exclusive knowledge of the defect.

82.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing or leasing their vehicles.

83.     Defendants' unlawful acts and practices described herein affect the public interest because hundreds, if not thousands, of purchasers in Minnesota were targeted by Defendants' omissions and misstatements, and these omissions and misstatements have the potential to deceive thousands of consumers in the future.

84.     The prevention of false and misleading information such as that presented to consumers in the state of Minnesota is a public benefit that is redressable under the Minnesota Private Attorney General Statute, Minn. Stat. § 8.31 and therefore Plaintiff seeks equitable relief in the form of an injunction requiring Defendants to cease their unfair and deceptive practices, as well as an award of attorney's fees, costs, disbursements, and any other just and proper relief available under the MN CFA and applicable law and statute.

## COUNT II – VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT § 325D.43 (MUDTPA)

85.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

86.     The MUDTPA, defines a deceptive trade practice, at least in part, as when a person, in the course of business, represents that goods have characteristics or benefits that they do not have, creates a likelihood of confusion or misunderstanding, or makes false promises, misrepresentations, deceptions, the concealment, suppression or omission of material facts and the failure to disclose known defects.

87.     Defendants' representations about the safety and quality of the ir vehicles in connection with the advertisement, sale and distribution of the vehicles is a violation of the MUDTPA.

88.     Defendants engaged in conduct that created the likelihood of confusion or misunderstanding as to whether the Defective Vehicles were equipped with an engine immobilizer in violation of MUDTPA.

89.     Plaintiff and Class Members acted as reasonable consumers would in light of all circumstances.

-17-
CLASS ACTION COMPLAINT

90.     Defendants' acts and omissions would cause a reasonable person to be confused or have a misunderstanding as to whether their vehicles were equipped with engine immobilizers, or complied with federal safety standards.

91.     As a direct result of Defendants' acts and omissions, Plaintiff and Class Members suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of money paid as a result of their purchase.

92.     Among other forms of damages for which Defendants may be liable include costs to remediate the defect and the costs of the increase in insurance premiums Plaintiff and Class members are or may face due to the design defect.

## COUNT III – VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT 15 U.S.C. §2301, *et seq* (MMWA)

93.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

94.     Plaintiffs individually, and on behalf of all others similarly situated, bring this claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

95.     Plaintiffs are "consumers" and Defendants are "suppliers" and "warrantors" within the meanings of 15 U.S.C. § 2301, with the relevant vehicles falling within the definition of a "consumer product" under the same statute.

96.     The MMWA requires warrantors, to remedy any defect, malfunction or nonconformance of a consumer product within a reasonable time and without charge to the Plaintiffs, as well as a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

-18-
CLASS ACTION COMPLAINT

97.     Defendants warranted that the vehicles if manufactured and sold were fit for their ordinary purpose and pass without objection in trade as designed, manufactured and marketed through an implied warranty of merchantability under the MMWA.

98.     Defendants breached their implied warranties and are liable to Plaintiff and Class Members as the absence of an engine immobilizer rendered the vehicles unmerchantable and unfit for their ordinary purpose when they were sold or leased, and at all times thereafter.

99.     Plaintiff and Class Members used their vehicles in a manner consistent with their intended use.

100.    Defendants are required to cure their breach and remediate the defective product during the warranty period or replace the vehicle at no charge.

101.    Defendants have failed to cure, and have not cured, their breach of implied warranty within a reasonable amount of time.

102.    Defendants' breach has deprived Plaintiff of the benefit of her bargain.

103.    The amount in controversy of the Plaintiff's individual claim meets or exceeds the sum or value of $25. Additionally, the total amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) on based on all claims to be determined in this action.

104.    As a direct and proximate cause of Defendants' breach, Plaintiff has sustained damages and other losses in an amount to be determined at trial.

105.    Plaintiffs and Class Members are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief pursuant to 15 U.S.C. § 2310(d).

### COUNT IV – BREACH OF IMPLIED WARRANTY

106. Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

107. Defendants are merchants with respect to the sale of the relevant vehicles purchased by Plaintiff and Class Members.

108. Defendants, by selling the relevant vehicles, impliedly warranted that the vehicles were merchantable with respect to goods of that kind and this warranty was assigned to Plaintiff or Class Members upon purchase of the vehicle.

109. The vehicles sold by Defendants and purchased by Plaintiff and Class Members did not conform with the implied promises made with respect to the labels and material that accompanied the product. Specifically, by failing to reasonably disclose the vehicles did not have engine immobilizers, Defendants implied that the vehicles were not far easier to steal than other vehicles, were thereby safe, and were worth as much as vehicles that possessed engine immobilizers.

110. As a result of having no engine immobilizer, among other defects, the Defendants' vehicles were not merchantable, and Defendants breached their implied warranty of merchantability with respect to the vehicles.

111. Had Plaintiff known that the Defendants' vehicles lacked an engine immobilizer, among other defects, making them far easier to steal, and were thereby unsafe and worth less than their sales price, she would not have purchased it or would have paid significantly less for the vehicle. As a result of Defendants' breach of implied warranty, Plaintiff and Class Members have suffered economic injuries.

112.     Defendants are being provided notice by receipt of demand made by Plaintiff on behalf of themselves and the putative class through the filing of this Complaint. In addition, Defendants have actual notice of the defect.

## COUNT V – NEGLIGENCE

113.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

114.     Defendants knowingly designed, manufactured and sold vehicles to Class Members with substandard ignition security. Specifically, Defendants knowingly designed, manufactured and sold the vehicles without engine immobilizers, knowing that this presented a safety risk and rendered the vehicles vulnerable to theft at a substantially elevated rate.

115.     Defendants knew or should have known of the risk of distributing vehicles with substandard vehicle ignition security into the stream of commerce.

116.     Defendants owed Plaintiff and Class Members a duty to prevent foreseeable harm. This duty exists because Plaintiff and Class Members are foreseeable and probable victims of theft and the parties most likely to suffer cognizable losses from the deficiencies in Defendants' products.

117.     Defendants breached the duties they owed to Plaintiff and Class Members by distributing defective vehicles into the stream of commerce, causing Plaintiff and Class Members injury.

118.     Had they known their vehicles were sold with substandard vehicle ignition security, Plaintiff and Class Members would not have leased or purchased their vehicles.

119.     Plaintiffs and Class Members have suffered damages as a result of Defendants' negligence in an amount to be determined at trial.

-21-
CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all members of the proposed Class, respectfully request that the Court enter judgment in her favor and against Defendants as follows:

A. For an Order certifying the Class as defined herein and appointing Plaintiffs and their Counsel to represent the Class;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the sale of vehicles without engine immobilizers;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

  i. declaring that Defendants' conduct violates the statutes and laws referenced herein; and

  ii. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D. For restitution and disgorgement of the revenues wrongfully obtained as a result of Defendants' wrongful conduct;

E. For an award of actual damages, statutory damages and compensatory damages, in an amount to be determined at trial;

F. For an award of costs of suit, litigation expenses and reasonable attorneys' fees, as allowable by law; and

G. Any additional relief that the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all issues so triable.

Respectfully Submitted,

DATED: October 17, 2022

/s/ Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner (CAL BAR # 220340)
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Email: *bbleichner@chesnutcambronne.com*

*Attorneys for Plaintiff and the Proposed Class*