# EXHIBIT 2

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

ACCO

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
### CIVIL DOCKET FOR CASE #: 8:22-cv-01922

Fehrenbach et al v. Hyundai Motor America et al
Assigned to:
Demand: $5,000,001,000
Cause: 28:1332 Diversity-Contract Default

Date Filed: 10/20/2022
Jury Demand: Plaintiff
Nature of Suit: 195 Contract Product Liability
Jurisdiction: Diversity

**Plaintiff**

**Courtney Fehrenbach**
*Individually and On Behalf of All Others Similarly Situated*

represented by **Francis J Flynn , Jr**
Law Office of Francis J. Flynn, Jr.
6057 Metropolitan Plaza
Los Angeles, CA 90036
314-662-2836
Email: casey@lawofficeflynn.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stacia Salvaggio**
*Individually and On Behalf of All Others Similarly Situated*

represented by **Francis J Flynn , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Salvaggio**
*Individually and On Behalf of All Others Similarly Situated*

represented by **Francis J Flynn , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hyundai Motor America**
*a California Corporation*

**Defendant**

**Kia America, Inc.**
*a California Corporation*

| Date Filed | # | Docket Text |
|------------|---|-------------|
|  |  |  |

| 10/20/2022 | 1 | COMPLAINT Receipt No: ACACDC-34186094 - Fee: $402, filed by Plaintiffs Courtney Fehrenbach, David Salvaggio, Stacia Salvaggio. (Attachments: # 1 Exhibit A. Venue Affidavits of Plaintiffs) (Attorney Francis J Flynn, Jr added to party Courtney Fehrenbach(pty:pla), Attorney Francis J Flynn, Jr added to party David Salvaggio(pty:pla), Attorney Francis J Flynn, Jr added to party Stacia Salvaggio(pty:pla))(Flynn, Francis) (Entered: 10/20/2022) |
|---|---|---|
| 10/20/2022 | 2 | CIVIL COVER SHEET filed by Plaintiffs Courtney Fehrenbach, David Salvaggio, Stacia Salvaggio. (Flynn, Francis) (Entered: 10/20/2022) |
| 10/20/2022 | 3 | NOTICE of Interested Parties filed by Plaintiffs Courtney Fehrenbach, David Salvaggio, Stacia Salvaggio, identifying (1) Courtney Fehrenbach, (2) Stacia Salvaggio, (3) David Salvaggio, (4) Law Office of Francis J. Flynn, Jr., (5) Consumer Protection Legal, LLC, (6) Hyundai Motor America, (7) KIA America, Inc., (8) All individuals and entities in the United States who purchased one or more Kia or Hyundai Vehicles with a Defect; (9) All individuals and entities in Missouri who purchased one or more Kia or Hyundai Vehicles with a Defect; (10) All individuals and entities who purchased one or more Kia or Hyundai Vehicles with a Defect and Said Vehicle was Stolen; (11) All individuals and entities from Missouri who purchased a Kia or Hyundai Vehicles with a Defect and Said Vehicle was Stolen. (Flynn, Francis) (Entered: 10/20/2022) |
| 10/20/2022 | 4 | Request for Clerk to Issue Summons on Civil Cover Sheet (CV-71) 2 , Complaint (Attorney Civil Case Opening), 1 , Certificate/Notice of Interested Parties,,, 3 filed by Plaintiffs Courtney Fehrenbach, David Salvaggio, Stacia Salvaggio. (Flynn, Francis) (Entered: 10/20/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/21/2022 07:46:27 | | | |
| **PACER Login:** | jb0014 | **Client Code:** | 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** | 8:22-cv-01922 End date: 10/21/2022 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

1  **LAW OFFICE OF FRANCIS J. FLYNN, JR.**
   Francis J. "Casey" Flynn, Jr., SBN 304712
2  6057 Metropolitan Plz.
3  Los Angeles, California 90036-3211
   T: 314-662-2836
4  F: 1-855-710-7706
5  E: casey@lawofficeflynn.com

6  *Attorneys for Plaintiff*

7  *[Additional Counsel on Signature Page]*
8

9

10         **UNITED STATES DISTRICT COURT**
11         **CENTRAL DISTRICT OF CALIFORNIA**

12

13  )  **CASE NO.: <u>8:22-cv-1922</u>**
    )
14  **COURTNEY FEHRENBACH,**  )  **CLASS ACTION COMPLAINT**
15  **STACIA SALVAGGIO**, and  )  **FOR INJUNCTIVE RELIEF AND**
    **DAVID SALVAGGIO**, Individually  )  **DAMAGES:**
16  and On Behalf of All Others Similarly  )
17  Situated  )  **1. Breach of Implied Warranty**
    )  **2. Violations of Magnuson Moss**
18           Plaintiffs,  )     **Warranty Act, 15 U.S.C. §§ 2301**
19     v.  )  **3. Unjust Enrichment**
    )  **4. Violations of the California**
20  **HYUNDAI MOTOR**  )     **Consumer Legal Remedies Act**
21  **AMERICA**, a California  )     **(Cal. Civ. Code § 1750, et. seq.)**
    Corporation, and **KIA AMERICA,**  )  **5. Violations of California's Unfair**
22  **INC**., a California Corporation  )     **Competition Law (Cal. Bus. &**
    )     **Prof. Code § 17200, Et Seq.)**
23           Defendants.  )  **6. Fraud by Concealment**
24  )  **7. Breach Of Implied Warranty of**
    )     **Merchantability (Cal. Com.**
25  )     **Code § 2314)**
26  )  **8. Violation of the Missouri**
    )     **Merchandising Practices Act**
27  )     **("MMPA"), Mo. Rev. Stat. §**
28  )

407.010 et seq.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiffs COURTNEY FEHRENBACH, STACIA SALVAGGIO, and DAVID SALVAGGIO ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through Plaintiffs' undersigned counsel, bring this class action lawsuit against HYUNDAI MOTOR AMERICA ("Defendant Hyundai") and KIA AMERICA, INC. ("Defendant Kia") (collectively, "Defendants") and alleges, based upon information and belief and the investigation of Plaintiff's counsel as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because (a) the aggregated claims of putative class members exceeds $5 million, exclusive of interest and costs; (b) there are at least hundreds of putative class members; and (c) at least one of the members of the putative class is a citizen of a different state than Defendants.

2.    This Court has personal jurisdiction over Defendants because Defendants, directly or through their agents, conduct business in the State of California and within this District. Specifically, Defendants maintains headquarters in this District and operate in this District. Through their business operations in this

COMPLAINT
Case No.: 8:22-cv-1922

District, Defendants intentionally avail themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

3. Through its business operations in this District, Defendants intentionally availed themselves of the markets within this District and have sufficient minimum contacts with this State to render the exercise of jurisdiction by this Court just and proper.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because the Court sits in a judicial district in which Defendant Hyundai resides and all defendants are residents of the State in which the district is located. Specifically, Hyundai and Kia are both subject to the court's personal jurisdiction with respect to the civil action in question because both are headquartered in the state of California.

## II. PARTIES

### A. PLAINTIFFS

5. Plaintiff COURTNEY FEHRENBACH is a citizen of the state of Missouri residing in St. Louis, Missouri. Plaintiff COURTNEY FEHRENBACH bought a 2013 Hyundai Sonata in Saint Louis, Missouri in 2015.

6. Plaintiff COURTNEY FEHRENBACH's vehicle was stolen on July 31, 2022 in the County of the City of Saint Louis, Missouri and was found in Saint Louis, City.

7. When the Vehicle was subsequently located, its steering column was

COMPLAINT
Case No.: 8:22-cv-1922

broken off, the back seats were ripped off, and damage was to the body of the trunk. Additionally, extensive damage was done to the underside of the vehicle, requiring that the vehicle be towed. In total, the vehicle sustained approximately $10,000 in damages and the vehicle was deemed a total loss.

8.     Plaintiff COURTNEY FEHRENBACH has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with Defect including, but not limited to, Plaintiff's insurance deductible, and overpayment and diminished value of the Vehicle.

9.     Plaintiff STACIA SALVAGGIO is a resident and citizen of the state of Missouri. Plaintiff Stacia Salvaggio purchased a 2016 KIA Sportage in Saint Louis, Missouri.

10.     Plaintiff DAVID SALVAGGIO is a resident and citizen of the state of Missouri. Plaintiff David Salvaggio purchased a 2015 KIA SOUL in Saint Louis, Missouri.

11.     Plaintiffs bring this action individually and as representatives of a class of persons who purchased a Defective Vehicle that was manufactured, produced, distributed, and/or sold by Defendants. This matter arises out of negligent acts, errors and omissions, including those for which Defendants are strictly liable, committed by the Defendants against Plaintiffs causing Plaintiffs and the putative class to suffer economic injury.

12.     Plaintiffs brings this action individually and as representatives of classes

COMPLAINT
Case No.: 8:22-cv-1922

of similarly situated persons to recover damages and injunctive relief for Breach of Implied Warranty; Violations of Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301; Violations of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et. seq.*); Unjust Enrichment; Fraud by Concealment; Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314); Violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.* among other claims, for the below referenced relief against Defendants who manufactured, tested, distributed, promoted and sold the Defective Vehicles. Plaintiffs expressly disclaim any and all damages pursuant to Cal. Civ. Code. 1750 *et seq.* at this time.

13. Plaintiffs also brings this action individually and as representatives of classes of similarly situated persons for injunctive relief under Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, Et Seq.).

14. At the time the vehicle was purchased, Plaintiffs were unaware that the vehicle was defective and that it was not fit for the ordinary purposes for which the product is used in that it is easy to steal, unsafe, and worth less than it should be if it did not have the defect.

**B. DEFENDANTS**

15. Defendant KIA AMERICA, INC. is a California corporation with a principal place of business at 111 Peters Canyon Road, Irvine, California 92606.

16. Defendant HYUNDAI MOTOR AMERICA is a California corporation with a principal place of business at 10550 Talbert Avenue, Fountain Valley,

COMPLAINT
Case No.: 8:22-cv-1922

California 92708.

## III.  NATURE OF THIS ACTION

17.    Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased or leased 2011-2022 Kia vehicles or 2015-2022 Hyundai vehicles equipped with traditional "insert-and-turn" steel key ignition systems (the "Vehicles or "Class Vehicles") manufactured by defendant Kia America, Inc. ("Kia") or Hyundai Motor America ("Hyundai") (collectively, "Defendants"). Unlike most vehicles, the Class Vehicles are not equipped with an "immobilizer" preventing them from being started unless a code is transmitted from the Vehicle's specific smart key.

18.    This security vulnerability (the "Defect") makes the Vehicles incredibly easy to steal, allowing thieves to steal Vehicles by simply opening the steering columns and using a common USB charging cord or similar metal object to start the engine.

19.    This means that all a thief needs to do is strip the ignition column, exposing a piece that pops off and they can then stick a USB drive, a knife, or something like that to start the vehicle without a key or code. Considering how many people charge their cell phones in their cars, the necessary instrument needed to steal a Defective Vehicle is usually readily available to any thief.

20.    Viral videos on TikTok and YouTube give step-by-step instructions on how to steal Class Vehicles without a key, and reports of stolen Kia and Hyundai

COMPLAINT
Case No.: 8:22-cv-1922

Vehicles have skyrocketed across the country. In fact, the "Kia Challenge," widely shared on social media platforms, dares people to break in and then use a USB cord to start the cars. The videos show teens and young adults going for joy rides and in some cases, even abandoning or crashing the cars. The incidents have turned dangerous, with suspects and bystanders being seriously injured or killed following unsafe driving and crashes related to the thefts.

21. Defendants have long known or should have known of the Defect from multiple sources. According to Police, thieves have been exploiting a security flaw in Kia vehicles made since 2011 and Hyundai vehicles made since 2015. Yet Defendants failed to disclose and actively concealed the Defect from the public, and continue to manufacture, distribute, and sell the Vehicles without disclosing the Defect.

22. Defendants had the capability and means to add an engine immobilizer or similar device, yet they failed to do so.

23. Plaintiffs bring this action for violation of relevant state consumer protection acts and for breach of implied warranties on behalf of a nationwide class and state classes of Vehicle lessees and owners. Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## IV. FACTUAL ALLEGATIONS

24. Immobilizers have been proven to deter auto theft. Indeed, a 2016 study reflects that the use of immobilizers lowered the overall rate of car thefts by 40%

COMPLAINT
Case No.: 8:22-cv-1922

over a ten-year period.[1]

25.     Recognizing the value of immobilizers as an anti–theft device, countries across the globe require immobilizers to be installed as standard equipment in new vehicles. For example, the European Union has required immobilizers as a standard feature for all new vehicles since 1998, Australia since 2001, and Canada since 2007.[2]

26.     Kia and Hyundai, however, have largely refused to implement immobilizers as standard technology in virtually all of their vehicle lines. Defendants have long been aware of the anti–theft benefits attendant to making immobilizers a standard feature on their vehicles based on the immobilizer mandates of other countries in which Kia and Hyundai sell their vehicles. Kia and Hyundai sell virtually identical vehicles to the Class Vehicles in countries with immobilizer requirements, but have largely failed to equip Vehicles sold in the United States with the same immobilizer technology designed to prevent auto theft.

27.     Kia and Hyundai likely refused to implement this technology as a standard feature in the Class Vehicles as a cost–saving measure to improve their profitability.

28.     Given the ease with which Class Vehicles can be stolen, the United States has experienced a swell in reported car thefts of Vehicles.

---

[1] Jan C. van Ours & Ben Vollaard, The Engine Immobilizer: A Non–Starter For Car Thieves, THE ECONOMIC JOURNAL, Vol. 126, No. 593, 1264, 1283 (June 2016).
[2] Jan C. van Ours & Ben Vollaard, The Engine Immobilizer: A Non–Starter For Car Thieves, THE ECONOMIC JOURNAL, Vol. 126, No. 593, 1264, 1283 (June 2016).

COMPLAINT
Case No.: 8:22-cv-1922

29.     The cost to repair stolen Vehicles can be substantial. The cost to repair a window and steering column on a Class Vehicle alone can exceed $3,000.  Because cars taken on joy rides often experience further damage, the owner's total cost to repair their vehicle often exceed $10,000.

30.     Moreover, due to the alarming rate in which Class Vehicles are being stolen, Defendants' authorized dealers and repair shops are experiencing shortages of the parts needed to repair them. Some parts are backordered up to eight weeks.

31.     The federal government has long recognized that "stolen cars constitute a major hazard to life and limb on the highways." 33 Fed. Reg. 6, 471, (Apr. 27, 1968). Moreover, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." *Id.*

32.     The rate at which these Vehicles are being stolen is so high that certain auto insurance companies are either refusing to insure these Vehicles or have raised the rates. The following statement from Progressive was recently released to ABC 7 News Denver:

> We're committed to providing affordable insurance solutions for consumers based on the particular level of risk while also ensuring our policies are accurately priced. Due to the theft risk that some Hyundai and Kia vehicles present, in many cases it makes these vehicles difficult to insure, so we have adjusted our acceptance criteria for new business on some of these models. We'll continue to monitor how this issue plays out, and are hopeful to be able to revisit our decision if the theft risk diminishes and community awareness

COMPLAINT
Case No.: 8:22-cv-1922

improves.[3]

33.    Other harms caused by the auto theft include increased insurance premiums foisted upon the victims of these crimes, other property that is stolen or damaged in the process, and the diminution in value of the Class Vehicles being targeted.

34.    Notably, the Vehicles fail to comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114, which requires: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward selfmobility, of the vehicle, or both."

35.    If the Vehicles were manufactured to comply with this FMVSS, they would not be stolen at such alarming rates because when the key is removed from the starting system, both steering and forward self-mobility would be prevented.

36.    Recognizing the gravity of the problem, Defendants have announced that all new model vehicles will be equipped with an immobilizer.8 But this change offers little consolation to the thousands of consumers whose defective Vehicles remain vulnerable to theft.

37.    Defendants have long known the security benefits offered by immobilizers. Indeed, Defendants have been selling virtually identical vehicles

---

[3] https://trailstoneinsurancegroup.com/hyundai-and-kia-owners-struggle-with-insurance-woes-as-thefts-climb/

COMPLAINT
Case No.: 8:22-cv-1922

equipped with immobilizers overseas for decades, and have even incorporated immobilizers as standard technology into select higher–end models, but Defendants have simply refused to follow their competitors by making it standard technology on their lower–cost brands.

38.     The ease with which the Class Vehicles may be stolen is not surprising to Defendants. Upon information and belief, Defendants have known of the unusually high rate of thefts experienced by Class Vehicles for many years, through scores of customer complaints relayed through their dealers.

39.     Moreover, Defendants must have known how these Vehicles were being stolen because they sell replacement parts to dealerships and autobody shops around the country that are needed to repair the stolen Vehicles. Because the Vehicles are being stolen in the same way, Defendants would have experienced a spike in orders for the same replacement parts.

40.     But Defendants continued to sell the Class Vehicles, flooding the market with more unsafe cars susceptible to theft. Only when the problem became too large to ignore did Defendants decide to introduce immobilizer technology to all future new vehicles going forward.

41.     Meanwhile, the Class members who have previously purchased the Vehicles remain vulnerable.

## V.     FRAUDULENT TOLLING

42.     Statutes of limitations may be tolled by the improper acts of a defendant

COMPLAINT
Case No.: 8:22-cv-1922

intended to conceal the existence of a plaintiff's cause of action. As alleged herein, at all relevant times, Defendants have held out the Vehicles to be free from defects. Defendants touted and continued to tout until recently the many benefits and advantages of the Vehicles, but nonetheless failed to disclose important facts related to the Defect.

43.     The truth about the Defect was known only to Defendants; Plaintiffs and the other Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

44.     For these reasons, the statute of limitations was effectively tolled through the date of filing of the instant Complaint.

## VI.     CHOICE OF LAW ALLEGATIONS

45.     Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint. Under California' choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

46.     Because Defendants are headquartered—and made all decisions relevant to these claims—in California, California has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state. Application of California law to Defendants and the claims of all Class members would not be arbitrary or unfair.

47.     Plaintiffs plead claims on behalf of a nationwide class because the laws

COMPLAINT
Case No.: 8:22-cv-1922

for each state do not vary materially for these claims. Alternatively, Plaintiffs plead state law classes claims as indicated below. This Complaint refers to the nationwide and state classes collectively as the "Class," unless noted otherwise.

## VII. CLASS ACTION ALLEGATIONS

48.    Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

49.    All Plaintiffs brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of themselves and the following Class and Sub-Class of similarly situated persons:

(a)    All individuals and entities in the United States who purchased one or more Kia or Hyundai Vehicles with a Defect. (referred to herein as the "Nationwide Purchaser Class".

(b)    All individuals and entities in Missouri who purchased one or more Kia or Hyundai Vehicles with a Defect. (referred to herein as the "Missouri Only Purchaser Sub-Class").

(c)    All individuals and entities who purchased one or more Kia or Hyundai Vehicles with a Defect and Said Vehicle was Stolen. (referred to as "Nationwide Stolen Vehicle" Sub-Class.)

(d)    All individuals and entities from Missouri who purchased a Kia or Hyundai Vehicles with a Defect and Said Vehicle was Stolen. (referred to as "Missouri Only Stolen Vehicle Sub-Class").

COMPLAINT
Case No.: 8:22-cv-1922

50.     The Missouri Only Purchaser Class and Missouri Only Stolen Vehicle Class are hereinafter collectively referred to as "The Missouri Sub-Classes."

51.     The Nationwide Purchaser Class and the Nationwide Stolen Vehicle Class are hereinafter collectively referred to as "The Nationwide Classes."

52.     The Nationwide Purchaser Class and the Missouri Only Purchaser Sub-Class is collectively referred to herein as the "Purchaser Class and Sub-Class".)

53.     The Nationwide Stolen Vehicle Class and the Missouri Only Stolen Vehicle Sub-Class is collectively referred to herein as the "Stolen Vehicle Class and Sub-Class".)

54.     Excluded from each Class and Subclass are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Also excluded from the Classes and Sub-Class are those claiming they have suffered a personal injury as result of the Defective Vehicles.

55.     Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

56.     While the exact number of Class members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the

COMPLAINT
Case No.: 8:22-cv-1922

Class is ascertainable based upon the records maintained by Defendants and governmental officials. Upon information and belief, Defendants have sold and leased many thousands of Vehicles nationwide during the relevant time period. Therefore, the Class members are so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

57.     Common questions of law and fact exist as to all Class members. These common legal and factual questions include:

(a) Whether Defendants designed, advertised, sold, and placed the Class Vehicles into the stream of commerce;

(b) Whether the Class Vehicles were sold with the Defect described above;

(c) Whether the Defect in the Class Vehicles is a safety and/or security defect that created a foreseeable risk of harm to Plaintiffs and the Class;

(d) Whether Defendants breached implied warranties made to the Class members;

(e) Whether Defendants knew or should have known about the Defect and, if so, how long Defendants have known about the Defect;

(f) Whether Defendants concealed the Defect;

(g) Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws asserted herein;

(h) Whether the Class members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution

COMPLAINT
Case No.: 8:22-cv-1922

of value and deprivation of the benefit of the bargain; and

(i) Whether the Class members are entitled to injunctive relief.

58.   Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class member have a Vehicle with the same Defect.

59.   Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class members. Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Therefore, the interests of the Class members will be fairly and adequately protected.

60.   A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendants. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory results

COMPLAINT
Case No.: 8:22-cv-1922

and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendants' records and the records available publicly will easily identify the Class members. The Defect is common to all Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court

61.     A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendants have acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

## VIII. CLAIMS

### COUNT I
### BREACH OF IMPLIED WARRANTY
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASSES AND THE MISSOURI SUB-CLASSES)

62.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

63.     As detailed herein, Defendants designed, manufactured, distributed, and sold the Class Vehicles knowing that consumers like Plaintiffs and the Class would purchase these products from Kia and Hyundai's authorized dealers as a means of

COMPLAINT
Case No.: 8:22-cv-1922

transportation.

64.     As merchants of the Class Vehicles, Kia and Hyundai warranted to the Plaintiffs and the Class that the Class Vehicles were fit for the ordinary purpose for which they are used.

65.     Plaintiffs relied on this warranty to their detriment.

66.     The Class Vehicles are not "merchantable" because they are not reasonably fit for the ordinary purpose for which they are sold, which is to provide safe, reliable transportation. To the contrary, the Class Vehicles pose a substantial safety hazard because the Defect renders them vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

67.     Sufficient privity of contract exists to assert this implied warranty claim.

68.     Defendants market and advertise the sale of the Class Vehicles in various media outlets across the United States, including to the Plaintiffs and the Class.

69.     Defendants advertise their authorized dealer network on their respective websites and task them with administering the promotional material and warranty information for new Class Vehicles to prospective consumers throughout the nation. Through Defendants' websites, consumers obtain information about vehicles; design specific vehicles to meet his or her needs; obtain information about the value of trade–in vehicles; request additional marketing materials; and request quotes for vehicle.

COMPLAINT
Case No.: 8:22-cv-1922

Defendants then send these consumers to "authorized dealers" to consummate sales and leases.

70.    Defendants control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Class Vehicles.

71.    Plaintiffs and Class Members purchased and/or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party.

72.    Plaintiffs had the understanding that the sellers dealers were acting on behalf of Defendants.

73.    At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Vehicles.

74.    The sole and express purpose that each authorized Kia and Hyundai dealer has when it acquires the vehicles from Kia and Hyundai is to immediately re–sell them to the end–users like Plaintiffs and the Class members.

75.    Defendants' conduct, and the conduct of their respective dealers, thus

COMPLAINT
Case No.: 8:22-cv-1922

create a justifiable belief on the part of Plaintiffs and Class members that the dealers are agents of Kia and/or Hyundai, which the Plaintiffs relied on to their detriment.

76.     Thus, each Kia and Hyundai dealership operates as the actual and/or apparent agent of the Defendants–manufacturers named herein, which satisfies any privity requirement.

77.     Moreover, the purchase and/or lease agreements between the Plaintiffs and their respective dealers were entered directly and primarily for Kia and Hyundai's benefit.

78.     Likewise, any contract whereby Defendants' authorized dealers acquire the Class Vehicles from Defendants to resell to the end–user is also for the express benefit of Plaintiffs and the Class. On information and belief, Defendants' authorized dealers make little money on the actual sale or lease of new vehicles, including the Class Vehicles.

79.     Plaintiffs and the members of the Class therefore have standing to assert implied warranty claims against Defendants by virtue of their status as intended, third–party beneficiaries of these dealership sales agreements, which further satisfies the privity requirement.

80.     Privity thus exists between Defendants on the one hand, and the Plaintiffs and the Class on the other by virtue of the express warranties provided through their purchase and/or lease agreements.

81.     Moreover, the Magnuson–Moss Warranty Act ("MMWA") provides

COMPLAINT
Case No.: 8:22-cv-1922

that when a manufacturer offers a written warranty, it may limit the duration of an implied warranty to the duration of an express warranty, but it cannot disclaim implied warranties all together. *See* 15 U.S.C. § 2308(a) ("No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer Product. . . ."). A manufacturer should not be permitted to avoid this prohibition by claiming an ostensible lack of privity when the manufacturer itself chose its distribution model.

82.     Imposing a rigid privity requirement in this case would permit Defendants to escape both the letter and spirit of the MMWA through their preferred distribution scheme; one in which the only parties in strict privity that can assert an implied warranty claim are Defendants' own dealers who would never need to assert the claim in the first instance.

83.     Consequently, any rigid application of a state law privity requirement would violate the Supremacy Clause and be preempted. See U.S. Const. art. VI ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

84.     As a direct and proximate result of Defendants' breach of these implied warranties, Plaintiffs and the Class have suffered damages, injury in fact, and

COMPLAINT
Case No.: 8:22-cv-1922

ascertainable loss in an amount to be determined at trial.

85.     Plaintiffs and the Class seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein.

86.     For the Stolen Vehicle Class and Sub-Class, these damages also include, but are not limited to, overpayment for the Class Vehicles, insurance deductibles to get the stolen Class Vehicles repaired, the cost to replace other property stolen in connection with the thefts of their Vehicles, the loss of use of their respective Vehicles, costs associated with the replacement of the totaled Class Vehicles, and/or the diminution in value of a stolen Class Vehicles that were not totaled.

87.     For the Nationwide and Missouri Defective Vehicle Classes, these damages include, but are not limited to, overpayment for the Class Vehicles, the loss of use of their respective Vehicles during any repairs to fix the defect, and/or the purchase of additional products to decrease the likelihood of the Defective Vehicle from being stolen.

88.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.

89.     The circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose, such that the Plaintiffs and the Class may seek alternative remedies. Indeed, these warranties have denied the Plaintiffs and the Class the benefit of their respective bargains, which presupposes they were (or are)

COMPLAINT
Case No.: 8:22-cv-1922

able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

90. Further, Kia and Hyundai's exclusion and/or limitation of consequential damages in their New Vehicle Limited Warranties is unconscionable and void for the reasons stated above.

91. Accordingly, the Plaintiffs and the Class are entitled to damages flowing from Defendants' breach of their implied warranties, as well as all consequential and incidental damages resulting from this breach.

92. Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

**COUNT II**
**VIOLATIONS OF**
**MAGNUSON MOSS WARRANTY ACT, 15 U.S.C. §§ 2301**

**(BROUGHT ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASSES AND THE MISSOURI SUB-CLASSES)**

93. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

94. Congress enacted the MMWA, 15 U.S.C. §§ 2301 et seq., to address the widespread misuse of merchants' express warranties and to protect consumers from

COMPLAINT
Case No.: 8:22-cv-1922

deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty. Id. § 2310(d)(1).

95.    The Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

96.    Plaintiffs and members of the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

97.    Kia and Hyundai are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively.

98.    In connection with the sale and/or lease of the Class Vehicles, Defendants supplied Plaintiffs and the Class with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

99.    15 U.S.C. § 2310(d)(1) provides that "a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state."

100.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

101.   Defendants provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles

COMPLAINT
Case No.: 8:22-cv-1922

that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

102.   Defendants breached its implied warranties, as described herein, and is therefore liable to Plaintiffs under 15 U.S.C. § 2310(d)(1). The Defect rendered the Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

103.   Plaintiffs used their respective Class Vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendants' conduct or by operation of law.

104.   Plaintiffs and the Class seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein.

105.   For the Stolen Vehicle Class and Sub-Class, these damages also include, but are not limited to, overpayment for the Class Vehicles, insurance deductibles to get the stolen Class Vehicles repaired, the cost to replace other property stolen in connection with the thefts of their Vehicles, the loss of use of their respective Vehicles, costs associated with the replacement of the totaled Class Vehicles, and/or

COMPLAINT
Case No.: 8:22-cv-1922

the diminution in value of a stolen Class Vehicles that were not totaled.

106.   For the Nationwide and Missouri Defective Vehicle Classes, these damages include, but are not limited to, overpayment for the Class Vehicles, the loss of use of their respective Vehicles during any repairs to fix the defect, and/or the purchase of additional products to decrease the likelihood of the Defective Vehicle from being stolen.

107.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.

108.   The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Plaintiffs seek reformation of Defendants' respective written warranties to comport with their obligations under the MMWA and with consumers' reasonable expectations. Plaintiffs also seek to enjoin Defendants from acting unlawfully as alleged herein.

109.   Finally, Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of this case. The MMWA provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2).

## COUNT III
## UNJUST ENRICHMENT

**(BROUGHT ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASSES AND THE MISSOURI SUB-CLASSES)**

110.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set

forth herein. This claim is brought under California law on behalf of the Nationwide class.

111. This claim is pleaded in the alternative to any contract–based claims asserted by the Plaintiffs noted above. See Fed. R. Civ. P. 8(d)(2). Moreover, a claim for unjust enrichment is properly brought where, as here, Defendants contend that their warranties do not cover damages stemming from the Defect.

112. Plaintiffs and Class Members purchased and/or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party.

113. Plaintiffs had the understanding that the sellers dealers were acting on behalf of Defendants.

114. Every year, Defendants make millions of dollars in revenue selling and leasing new Vehicles through their respective dealer networks across the United States.

115. Plaintiffs allege upon information and belief that consumers are permitted to buy Vehicles directly from Defendants, but that the proceeds flow through various dealers and/or related companies (e.g., their finance companies) back to Defendants.

116. Accordingly, the purchase and lease of new Vehicles confers a direct monetary benefit on Defendants.

COMPLAINT
Case No.: 8:22-cv-1922

117. Used Vehicle purchasers also conferred a benefit on Defendants. Defendants profit off the replacement parts needed to service and repair these Vehicles.

118. Further, as more used Vehicles stay in the stream of commerce, Defendants' brand awareness rises, which is of substantial value to vehicle manufacturers. Defendants have touted their vehicles as not only reliable and durable, but also as having lower depreciation rates and ownership costs over their useful lives.9

119. Defendants tout these benefits to promote the sale and lease of their new cars for pecuniary benefit.

120. Accordingly, Plaintiffs and the Class conferred a benefit upon Defendants, whether directly, indirectly, or through one or more affiliate entities. 124. Defendants knew and appreciated the benefits conferred upon them through the sale of the Class Vehicles to Plaintiffs and members of the Class. Many of the Vehicles were financed through Kia Motor Finance or Hyundai Motor Finance.

121. Notably, federal law mandates that Kia and Hyundai maintain records of first–time purchasers of Class Vehicles, see 49 U.S.C. § 30117(b), and remain able to identify the owners of their used cars, including the owners of certain Class Vehicles, to comply with recall notification procedures under applicable law. See id. § 30119(d)(1)(A).

122. Defendants have long represented to the consuming public that the Class

Vehicles are safe, reliable, and durable even though they knew of the Defect. Not only did Defendants fail to equip the Class Vehicles with an industry standard anti–theft device, they failed to comply with FMVSS 114.

123.   As a result of Defendants' wrongful conduct, unsuspecting consumers like Plaintiffs and the Class overpaid for the Vehicles and incurred additional costs, thereby earning more profit.

124.   Defendants continued to market the Class Vehicles despite knowing that they were unsafe and susceptible to theft, foisting the cost they would otherwise have been forced to bear through a voluntary recall or otherwise on Plaintiffs and the Class.

125.   Under these circumstances, it would be unjust to allow Defendants to accept and retain the benefits identified herein without paying Plaintiffs and the Class them for their value.

## COUNT IV
### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.)
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASSES AND THE MISSOURI SUB-CLASSES)

126.   Plaintiffs incorporate by reference all preceding allegations as though fully forth herein.

127.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

COMPLAINT
Case No.: 8:22-cv-1922

128.   The Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

129.   Plaintiffs and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other Class members, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

130.   As alleged herein, Defendants made misleading representations and omissions concerning the benefits, performance, and safety of the Vehicles.

131.   In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Defendants failure to disclose its knowledge of the Defect.

132.   Defendants' conduct as described herein was and is in violation of the CLRA. Defendants' conduct violates at least the following enumerated CLRA provisions:

i.      Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

ii.     Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

iii.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

iv.     Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

v.      Cal Civ. Code § 1770(a)(19) Inserting an unconscionable provision in the

COMPLAINT
Case No.: 8:22-cv-1922

contract.

133. Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with an intent to mislead Plaintiffs and Class members.

134. Defendants' actions as described herein were done with conscious disregard of Plaintiff's rights and Defendants was wanton and malicious in Defendant's concealment of the same.

135. In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Defendants' failure to disclose their knowledge of the Defect.

136. Plaintiffs and other Class members had no way of knowing Defendants' representations were false, misleading, and incomplete or knowing the true nature of the Defect.

137. As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known Defect.

138. Plaintiffs and other Class members did not, and could not, unravel Defendants' deception on their own.

139. Defendants knew or should have known their conduct violated the CLRA.

140. Defendants owed Plaintiffs and the Class members a duty to disclose the truth about the Defect because the defect created a safety hazard and Defendants:

COMPLAINT
Case No.: 8:22-cv-1922

i.      Possessed exclusive knowledge of the Defect;

ii.     Intentionally concealed the foregoing from Plaintiffs and Class members; and/or

iii.    Made incomplete representations in advertisements and on its website, failing to warn the public of the Defect.

141.    Defendants had a duty to disclose that the Vehicles were fundamentally flawed as described herein, because the Defect created a safety hazard, and Plaintiffs and the other Class members relied on Defendants' material misrepresentations and omissions regarding the features of the Vehicles.

142.    Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

143.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

144.    Defendants' violations cause continuing injuries to Plaintiffs and other Class members.

145.    Defendants' unlawful acts and practices complained of herein affect the public interest.

146.    Defendants knew of the Defect, and that the Vehicles were materially compromised by it.

COMPLAINT
Case No.: 8:22-cv-1922

147.    The facts concealed and omitted by Defendants from Plaintiffs and other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Vehicle or pay a lower price. Had Plaintiffs and the other Class members known about the defective nature of the Vehicles, they would not have purchased the Vehicles or would not have paid the prices they paid.

148.    Defendant's unfair and/or unlawful acts, practices, representations, omissions, and/or courses of conduct, as described herein, were undertaken by Defendants in a transaction intended to result in, and which did result in, the sale or lease of goods or services to consumers.

149.    Pursuant to § 1780(d) of the CLRA, attached hereto as **Exhibit A** is the affidavit showing that this action has been commenced in the proper forum.

150.    Plaintiffs' and the other Class members' injuries were proximately caused by Defendants' unlawful and deceptive business practices.

151.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the Defect.

152.    Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs demand judgment against Defendants under the CLRA for injunctive and equitable relief to enjoin the practices described herein.

153.    Plaintiffs intend to send a CLRA notice letter to Defendants certified

COMPLAINT
Case No.: 8:22-cv-1922

mail, return receipt requested regarding Defendant's violations of the CLRA.

154.   Pursuant to Cal. Civ. Code § 1782, if Defendants does not rectify its conduct within 30 days of the date of receipt of the letter, Plaintiffs intend to amend this Complaint to add claims under the Cal. Civ. Code for Actual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000).

155.   Under the CLRA, a plaintiff may without prior notification file a complaint alleging violations of the CLRA that seeks injunctive relief only. Then, if the Defendant does not remedy the CLRA violations within 30 days of notification, the plaintiff may amend her or his CLRA causes of action without leave of court to add claims for damages. Plaintiffs, individually and on behalf of the class, intend to amend this complaint to add damages claims if Defendants do not remedy their respective violations as to Plaintiffs and the Class Members within the statutory period.

156.   Plaintiffs have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

157.   In bringing this action, Plaintiffs has engaged the services of attorneys and has incurred reasonable legal fees and expenses in an amount to be proved at trial.

158.   Plaintiffs are thus entitled to recover Plaintiff's attorneys' fees, costs, and expenses.

COMPLAINT
Case No.: 8:22-cv-1922

159.   Defendant's practices, acts, and courses of conduct in connection with the sale of its Defective Vehicles, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiffs are entitled to injunctive relief prohibiting Defendants from continuing in the future the unlawful, unfair, or fraudulent practice as described herein.

160.   Plaintiffs reasonably believed and/or depended on the material false and/or misleading information provided by, or omitted by, Defendants with respect to Defendant's unfair acts and deceptive practices.

161.   By reason of the foregoing, Defendant's unlawful methods, acts, or practices as described herein have caused damage to Plaintiff, entitling Plaintiffs to damages and injunctive relief; Attorneys' fees and costs; and other relief that this Court deems proper.

162.   Plaintiffs reserve the right to amend this Complaint and to assert a claim for damages pursuant to Civil Code §1782.

## COUNT V VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, ET SEQ.)

### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASSES AND THE MISSOURI SUB-CLASSES)

163.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

COMPLAINT
Case No.: 8:22-cv-1922

164.  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

165.  Defendants' conduct, as described herein, was and is in violation of the UCL. Defendants conduct violates the UCL in at least the following ways:

i.  By failing to disclose that the Defect;

ii.  By selling and leasing Vehicles that suffer from the Defect;

iii.  By knowingly and intentionally concealing from Plaintiffs and the other Class members the Defect;

iv.  By marketing Vehicles as safe, convenient, and defect free, with cutting edge technology, all while knowing of the Defect;

v.  By violating other California laws, including California consumer protection laws;

vi.  By engaging in unethical conduct;

vii.  By Violating the Section 5 of the FTC Act.

166.  Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with intent to mislead Plaintiffs and the other Class members.

167.  In purchasing or leasing the Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose the Defect.

COMPLAINT
Case No.: 8:22-cv-1922

168. Plaintiffs and the other Class members reasonably relied upon Defendants' false misrepresentations and omissions. They had no way of knowing that Defendants' representations were false, misleading, and incomplete. As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known defect. Plaintiffs and the other Class members did not, and could not, unravel Defendants' deception on their own.

169. Defendants knew or should have known that its conduct violated the UCL.

170. Defendants owed Plaintiffs and the other Class members a duty to disclose the truth about the Defect because the Defect created a safety hazard and Defendants:

    i.    Possessed exclusive knowledge of the Defect;

    ii.    Intentionally concealed the foregoing from Plaintiffs and the other Class members; and/or

    iii.    Made incomplete representations by failing to warn the public or to publicly admit the Defect.

171. Defendants had a duty to disclose the Defect, because Plaintiffs and the other Class members relied on Defendants' material misrepresentations and omissions.

172. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

COMPLAINT
Case No.: 8:22-cv-1922

173. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

174. For the Stolen Vehicle Class and Sub-Class, these damages also include, but are not limited to, overpayment for the Class Vehicles, insurance deductibles to get the stolen Class Vehicles repaired, the cost to replace other property stolen in connection with the thefts of their Vehicles, the loss of use of their respective Vehicles, costs associated with the replacement of the totaled Class Vehicles, and/or the diminution in value of a stolen Class Vehicles that were not totaled.

175. For the Nationwide and Missouri Defective Vehicle Classes, these damages include, but are not limited to, overpayment for the Class Vehicles, the loss of use of their respective Vehicles during any repairs to fix the defect, and/or the purchase of additional products to decrease the likelihood of the Defective Vehicle from being stolen.

176. Defendants' violations cause continuing injuries to Plaintiffs and Class members.

177. Defendants' unlawful acts and practices complained of herein affect the public interest.

178. Defendants' misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases of their Vehicles.

COMPLAINT
Case No.: 8:22-cv-1922

Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased these Vehicles, would not have purchased these Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain the Defect and did not fail to live up to industry standards.

179. Accordingly, Plaintiffs and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Defendants' misrepresentations and omissions.

180. Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

**COUNT VI**
**FRAUD BY CONCEALMENT**
**(BASED ON CALIFORNIA LAW)**

**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASSES AND THE MISSOURI SUB-CLASSES)**

181. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

182. Defendants intentionally concealed the Defect.

183. Defendants further affirmatively misrepresented to Plaintiffs in

COMPLAINT
Case No.: 8:22-cv-1922

advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles they were selling had no significant defects, that the Vehicles were reliable, and would perform and operate properly.

184.   Defendants knew about the Defect when these representations were made.

185.   The Vehicles purchased by Plaintiffs and the other Class members contained the Defect.

186.   Defendants had a duty to disclose Defect as alleged herein, because the Defect created a safety hazard and Plaintiffs and the other Class members relied on Defendants' material representations.

187.   As alleged herein, at all relevant times, Defendants have held out the Vehicles to be free from defects. Defendants touted and continue to tout the many benefits and advantages of the Vehicles, but nonetheless failed to disclose important facts related to the Defect. This made Defendants' other disclosures about the Vehicles deceptive.

188.   The truth about the Defect was known only to Defendants; Plaintiffs and the other Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

189.   Plaintiffs and the other Class members reasonably relied upon Defendants' deception. They had no way of knowing that Defendants'

COMPLAINT
Case No.: 8:22-cv-1922

representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Vehicles.

190. Defendants' false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

191. Defendants had a duty to disclose the Defect and violations with respect to the Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

192. Defendants also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with their Vehicles, without telling consumers that the Vehicles had a fundamental Defect that would affect the safety, quality, and performance of the Vehicle.

193. Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiffs and Class members.

194. Defendants have still not made full and adequate disclosures and

COMPLAINT
Case No.: 8:22-cv-1922

continue to defraud Plaintiffs and Class members by concealing material information regarding the Defect.

195.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

196.    Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they own or lease Vehicles that are diminished in value as a result of Defendants' concealment of the true quality of the Vehicles' security systems. Had Plaintiffs and Class members been aware of the Defect in the Vehicles, and the Defendants' disregard for the truth, Plaintiffs and Class members would have paid less for their Vehicles or would not have purchased or leased them at all.

197.    The value of Plaintiffs' and Class members' Vehicles have diminished as a result of Defendants' fraudulent concealment of the Defect, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

198.    ccordingly, Defendants are liable to Plaintiffs and Class members for

COMPLAINT
Case No.: 8:22-cv-1922

damages in an amount to be proven at trial.

199. Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Defendants made to them, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT VII
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE § 2314)

### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASSES AND THE MISSOURI SUB-CLASSES)

200. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

201. Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2104.

202. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

203. Defendants marketed the Vehicles as safe and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase or lease the Vehicles.

204. Plaintiffs and other Class members purchased or leased the Vehicles

from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Vehicles.

205. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

206. Because of the Defect, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

207. Defendants knew about the Defect, allowing Defendants to cure their breach of its warranty if they chose.

208. Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other Class members, and Defendants knew of the defect at the time of sale.

COMPLAINT
Case No.: 8:22-cv-1922

209. Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

210. Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

## <u>COUNT VIII</u>

**VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT ("MMPA"), MO. REV. STAT. § 407.020**
**(ON BEHALF OF PLAINTIFFS AND THE MISSOURI SUB-CLASSES ONLY)**

211. Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

212. The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, states in relevant part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice.

213. Defendants are each a "person" within the meaning of the Missouri Merchandising Practices Act, Mo. Rev. Stat 407.010(4).

45

COMPLAINT
Case No.: 8:22-cv-1922

214. The MMPA defines "merchandise" as any objects, wares, goods, commodities, intangibles, real estate, or services. Mo. Rev. Stat. § 407.010. Thus, the Defective Vehicles that Defendants sold to its customers are merchandise.

215. Defendant's website is an "advertisement" as that term is defined by Missouri regulations. Mo. Code Regs. Tit. 15, 60-7.020(1)(A).

216. In providing Defective Vehicles into the stream of commerce and/or to its customers, Defendants are engaging in the sale of merchandise in trade or commerce.

217. The actions of Defendants alleged herein violated, and continue to violate, the Missouri Merchandising Practices Act because they constitute unfair practices, deception, fraud, false promise, misrepresentation, and/or the concealment, suppression, and/or omission of material fact in the connection with the sale or advertisement of any merchandise in trade or commerce.

218. The Missouri Attorney General has promulgated regulations defining the meaning of unfair practice as used in the MMPA. Missouri regulations define "unfair practice" pursuant to the MMPA as any practice that "[o]ffends any public policy as it has been established … by the Federal Trade Commissions … or [i]s unethical …. [and] [p]resents a risk of, or causes, substantial injury to consumers." Mo. Code Regs. Tit. 15, 60-8.020.

219. Missouri case law provides that the MMPA's "literal words cover *every practice imaginable and every unfairness to whatever degree*." *Conway v.*

COMPLAINT
Case No.: 8:22-cv-1922

*CitiMortgage, Inc.*, 438 S.W.3d 410, 416 (Mo. 2014) (quoting *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). Furthermore, the statute's "plain and ordinary meaning of the words themselves . . . are unrestricted, all-encompassing and exceedingly broad." *Id.* at 240.

220. Defendant's practices in advertising and/or selling and/or leasing Defective Vehicles and/or omitting that Defendants' Vehicles contain the aforementioned Defects violates the MMPA because, among other things, the practices are unethical, including but not limited to violating the principles of the American Marketing Association, as set forth above.

221. Pursuant to the MMPA, Defendants have a duty not to engage in any unethical or unfair practice in connection with the sale or advertisement of any merchandise in trade or commerce. For the reasons stated herein, it breached that duty.

222. Missouri regulations also provide that "[a] seller shall not make a representation or statement of fact in an advertisement that is false or has the capacity to mislead prospective purchases." Mo. Code Regs. Tit. 15, 60-7.020(1).

223. Further, Missouri regulations provide: "It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading." Mo. Code Regs. Tit. 15, 60-9.090.

COMPLAINT
Case No.: 8:22-cv-1922

224. Missouri regulations provide:

(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.

(2) Suppression of a material fact is any method, act, use or practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.

(3) Omission of a material fact is any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her.

(4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1., RSMo.

Mo. Code Regs. Tit. 15, 60-9.110.

225. Defendants' actions and omissions would cause a reasonable person to enter in the sale and transaction that resulted in damages to Plaintiffs and the Missouri Sub-Classes.

226. As a result of Defendants' actions and/or omissions, Plaintiffs and the Missouri Sub-Classes suffered ascertainable loss and damages that can be calculated with a reasonable degree of certainty, including a refund of money paid as a result of their purchases.

COMPLAINT
Case No.: 8:22-cv-1922

227.   These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

228.   For the Stolen Vehicle Sub-Classes, damages also include the cost of replacement of the Vehicle, the cost of replacing damaged property,

229.   Plaintiff, on behalf of herself and all other Class members similarly situated in Missouri, is entitled to bring this action pursuant to Mo. Rev. Stat. § 407.025, which provides in relevant part that:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.
> […]
> Persons entitled to bring an action pursuant to subsection 1 of this section may, if the unlawful method, act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class against one or more defendants as representatives of a class . . . . In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees.

230.   As described above, Plaintiffs acted as a reasonable consumer would in light of all circumstances.

COMPLAINT
Case No.: 8:22-cv-1922

231.   Defendant's unlawful methods, acts, and/or practices would cause a reasonable person to enter into the transaction that resulted in damages and did so cause Plaintiff, a reasonable person to enter into the transaction that resulted in damages.

232.   Plaintiff's and the Classes' claims show a likelihood that Defendant's unlawful method, act, and/or practice would mislead a reasonable consumer.

233.   Defendant's acts and practices alleged herein have directly, foreseeably, and proximately caused loss, damages, and injury to Plaintiffs and the Class in an amount to be determined at trial.

234.   Defendant's unlawful acts and practices in violation of the MMPA were performed willfully and wantonly, were outrageous, and were done in reckless indifference to the rights of Plaintiffs and Class, violating the MMPA.

235.   Injunctive relief is necessary and proper to compel Defendants to cease its violations of the MMPA alleged herein. As such, in addition to damages, Plaintiffs seek such equitable relief as the Court deems necessary or proper to protect Plaintiffs and the Class Members from the methods, acts, or practices declared unlawful by the MMPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class members, respectfully request judgment against Defendants as follows:

(A)    certifying the proposed Nationwide Class and State Law Classes;

COMPLAINT
Case No.: 8:22-cv-1922

(B)     appointing Plaintiffs and their counsel to represent the Classes;

(C)     ordering injunctive relief, restitution, disgorgement, and/or other appropriate relief;

(D)     Expressly disclaiming any and all damages pursuant to Cal. Civ. Code. 1750 *et seq*., awarding actual, compensatory, punitive, exemplary, statutory, and other recoverable damages;

(E)     awarding reasonable attorney's fees and expenses;

(F)     awarding pre-judgment and post-judgment interest; and

(G)     awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: <u>October 20, 2022</u>          Respectfully submitted,

<u>        /s/ Francis J. "Casey" Flynn, Jr.        </u>
Francis J. "Casey" Flynn, Jr. SBN 304712
**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz.
Los Angeles, California 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

**ATTORNEY FOR PLAINTIFFS**

COMPLAINT
Case No.: 8:22-cv-1922