# EXHIBIT 2

Query    Reports    Utilities    Help    Log Out

ACCO

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:22-cv-07872

Whalen v. Kia America, Inc. et al                    Date Filed: 10/28/2022
Assigned to:                                         Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Other Contract              Nature of Suit: 190 Contract: Other
                                                     Jurisdiction: Diversity

**Plaintiff**

**Mary Jane Whalen**                represented by   **Kevin F. Ruf**
                                                     Glancy Prongay and Murray LLP
                                                     1925 Century Park East Suite 2100
                                                     Los Angeles, CA 90067
                                                     310-201-9150
                                                     Fax: 310-201-9160
                                                     Email: kruf@glancylaw.com
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai America Technical Center,
Incorporated**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/28/2022 | 1 | COMPLAINT Receipt No: ACACDC-34234038 - Fee: $402, filed by Plaintiff Mary Jane Whalen. (Attorney Kevin F. Ruf added to party Mary Jane Whalen(pty:pla))(Ruf, Kevin) (Entered: 10/28/2022) |
| 10/28/2022 | 2 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Mary Jane Whalen. (Ruf, Kevin) (Entered: 10/28/2022) |
| 10/28/2022 | 3 | CIVIL COVER SHEET filed by Plaintiff Mary Jane Whalen. (Ruf, Kevin) (Entered: 10/28/2022) |
| 10/28/2022 | 4 | NOTICE of Interested Parties filed by Plaintiff Mary Jane Whalen, (Ruf, Kevin) (Entered: 10/28/2022) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |

| | | | |
|---|---|---|---|
| | | | 10/28/2022 10:47:16 |
| **PACER Login:** | jb0014 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-07872 End date: 10/28/2022 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**GLANCY PRONGAY & MURRAY LLP**
Kevin Ruf (SBN 136901)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 432-1495
kruf@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
bmurray@glancylaw.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY JANE WHALEN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>KIA AMERICA, INC. and HYUNDAI AMERICA TECHNICAL CENTER, INCORPORATED,<br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff, Mary Jane Whalen, through her attorneys, brings this Class Action Complaint against the Defendants, Kia America, Inc. ("Kia"), and Hyundai America Technical Center, Inc. ("Hyundai") (together "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, alleging as follows:

## INTRODUCTION

1.     Kia and Hyundai vehicles suffer from a defect that allows anyone with a USB cable to steal them.

2.     The defect stems from a design flaw in Kia and Hyundai vehicles, which do not include engine immobilizers.

3.     An immobilizer is an electronic device that prevents a vehicle from starting without the right key in the ignition.

4.     Because Kia and Hyundai vehicles do not have immobilizers, a thief need only pop off a plastic cover on the steering column, plug a USB cable into the column, and turn it like any other key to start the engine, as depicted below:



5.      Once thieves discovered this vulnerability, it set off a rash of vehicle thefts across the country, accounting for nearly two-thirds of vehicle thefts in Milwaukee, Wisconsin. Indeed, in the first six months of 2021 alone, Hyundai thefts in Milwaukee increased by 1,700% and Kia thefts increased by 3,200%.[1]

6.      The trend is spreading across the country, including Los Angeles, where affected model thefts are up 85%, and Chicago, where affected model thefts are up by 800%, with "no end in sight."[2]  During an eight-day period from late August through early September, 23 Kias and Hyundais were stolen in St. Louis

_____

[1] *See* Sean Tucker, "Milwaukee Police Report Hyundais, Kias Stolen in Record Numbers," December 24, 2021, at https://www.kbb.com/car-news/milwaukee-police-report-hyundais-kias-stolen-in-record-numbers/ (last visited Oct. 25, 2022).

[2] *See* Chris DiLella & Andrea Day, "TikTok challenge spurs rise in thefts of Kia, Hyundai cars," September 8, 2022, at https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html (last visited Oct. 25, 2022).

COMPLAINT

3

every day.[3]

7.    In fact, Kia and Hyundai's vehicles are so easy to steal, teenagers and children as young as 11 years old are stealing and joyriding cars, and posting their exploits on social media, including one TikTok video that has over 33 million views.

8.    Every Kia model from 2011-2021 and every Hyundai model from 2015-2021[4] suffers from this defect, meaning it affects vehicles across the country and exposes their owners to theft, property damage, and harm.

9.    Defendants have known about this defect for years, including the alarming rate at which their vehicles were being stolen. Even so, Defendants did not fix the defect or install immobilizers in their vehicles. In fact, on information and belief, Defendants concealed the defect from consumers or otherwise failed to disclose, reveal, or provide notice to them that their vehicles were defective and unfit for the ordinary purposes for which they are used.

10.    This is despite Defendants' duty to comply with federal regulation that requires manufacturers like Defendants to install ignition systems that will not

---

[3] *See* Christine Byers, "Hyundai and Kia thefts hit insurance and appraisal industry," September 2, 2022, https://www.bizjournals.com/stlouis/news/2022/09/02/hyundai-kia-thefts-insurance-appraisal-industry.html (last visited Oct. 25, 2022).

[4] *See* Allie Griffin, "Four teens killed in Buffalo car crash may be linked to TikTok challenge," October 26, 2022, https://nypost.com/2022/10/26/buffalo-car-crash-teen-deaths-may-be-linked-to-tiktok-challenge/ (last visited Oct. 26, 2022).

COMPLAINT

4

operate without the right key inserted into the ignition: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both." Federal Motor Vehicle Safety Standard ("FMVSS") 114.

11.    Now that auto thefts are sweeping the country, Defendants have acknowledged the problems they created and have promised to equip new vehicles with immobilizers.[5]

12.    But equipping new vehicles will not address the harm Defendants' defective vehicles cause consumers like Plaintiff Whalen, who purchased a 2021 Kia Telluride trusting that it would be safe, reliable, and equipped with adequate security.

13.    At the time Plaintiff Whalen purchased her vehicle, she was unaware that it was susceptible to theft, unsafe, and unfit for the purpose for which she bought the vehicle, and Kia never informed her that it knew her vehicle was susceptible to theft.

14.    As a result, Plaintiff Whalen sues Defendants in a class action on behalf of all consumers harmed by their misconduct, seeking relief including damages and

---

[5] *See* Jeramey Jannene, "Kia, Hyundai Thefts Now National Problem," August 17, 2022, at https://urbanmilwaukee.com/2022/08/17/kia-hyundai-thefts-now-national-problem/ (last visited Oct. 25, 2022).

COMPLAINT

injunctive relief to require that Defendants address the harm that their vehicles are causing.

## PARTIES

15.     Plaintiff, Mary Jane Whalen, is a resident and citizen of Greene County, New York, where she intends to remain.

16.     Kia America, Inc. is a California corporation with a principal address and place of business at 111 Peters Canyon Road, Irvine, CA 92606.

17.     Hyundai America Technical Center, Incorporated is a Michigan corporation with a principal address and place of business at 6800 Geddes Road, Superior Charter Township, Michigan 48198. Hyundai also has significant operations in the State of California.

## JURISDICTION & VENUE

18.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendants are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendants in that Defendants transact business within the state of California and committed one or more tortious acts within the state of California.

COMPLAINT

20. Defendants transacted business and/or committed tortious acts within the state of California. Defendants design, manufacture, distribute, and/or sell dangerous and/or defective vehicles in California. Defendants placed the defective and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in California from which Plaintiff's claims arise.

21. Venue is proper in this judicial district under 28 U.S.C. § 1391 because: a) Defendant Kia is a citizen of California with headquarters located in this district; and b) Defendant Hyundai has significant operations in California.

## BACKGROUND FACTS

22. Defendants manufacture vehicles for sale in California, New York, and across the country.

23. In so doing, Defendants must comply with FMVSS 114, which requires that "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both."

24. Manufacturers generally comply with this requirement by installing immobilizers on their vehicles.

25. An immobilizer is an electronic device that prevents a vehicle from starting without the right key inserted into the vehicle's ignition system.

COMPLAINT

7

26.     Immobilizers deter auto theft. In fact, a 2016 study revealed that immobilizers lowered the overall rate of car thefts by 40% over a ten-year period.[6]

27.     In fact, Kia's own vehicle handbooks explain that immobilizers reduce the risk of theft:[7]

**Immobilizer system**

Your vehicle may be equipped with an electronic engine immobilizer system to reduce the risk of unauthorized vehicle use.

28.     Even so, Defendants have not installed immobilizers on all Kia models manufactured between 2011-2021 and Hyundai vehicles manufactured between 2015-2021 (together, "Class Vehicles"). On information and belief, Defendants did not do this even though Defendants know immobilizers reduce auto theft, as they have been selling identical vehicles with immobilizers in other countries that require immobilizer technology.

29.     As a result, Defendants have left the Class Vehicles unguarded targets for theft—leading to a known defect ("Defect") and creating risks for property damage, rendering them unsafe, and diminishing the value of the cars.

---

[6] *See* Jan C. van Ours & Ben Vollaard, The Engine Immobilizer: A Non–Starter For Car Thieves, THE ECONOMIC JOURNAL, Vol. 126, No. 593, 1264, 1283 (June 2016).

[7] *See* Kia's page on the "Immobilizer System" at https://www.kia.com/content/dam/kia2/in/en/content/seltos-manual/topics/chapter4_1_5.html#:~:text=With%20the%20immobilizer%20system%2C%20whenever,the%20engine%20will%20not%20start. (last visited Oct. 25, 2022).

COMPLAINT

8

30.     Children as young as 11 years old have exploited the vulnerability in the Class Vehicles, which allows them to steal a defective vehicle by merely removing the steering panel, exposing the ignition system, and plugging in a USB cable to the ignition switch, which allows them to start vehicles without a key:[8]



31.     Stealing Class Vehicles is so easy and popular it has led to viral videos on social media, including a TikTok video with 33 million views and a "documentary" featuring the "Kia Boys," a group of teenagers who steal the Class Vehicles and joyride them.[9]

32.     As described above, the Class Vehicles vulnerability led to a rash of thefts, exploding auto theft rates in cities nationwide, leading to an 85% increase in

---

[8] *See* Rob Stumpf, "How Thieves Are Stealing Hyundais and Kias With Just a USB Cable," August 2, 2022, at https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kias-with-just-a-usb-cable (last visited Oct. 25, 2022).

[9] *See* Chris DiLella & Andrea Day, "TikTok challenge spurs rise in thefts of Kia, Hyundai cars," September 8, 2022, at https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html (last visited Oct. 25, 2022).

COMPLAINT

9

Class Vehicle theft in Los Angeles, 800% in Chicago, and more than 1,700% for Hyundai thefts and 3,200% for Kia thefts in Milwaukee.

33.    Repair shops and dealers cannot keep pace with the demand caused by the spike in Class Vehicle theft, as there is a shortage for the parts needed to repair them. Some parts are backordered up to eight weeks, impairing Class members' ability to fix stolen vehicles.[10]

34.    What's more, auto insurers have stopped insuring the Class Vehicles or are charging increased premiums to insure them, citing the "epidemic" in claims for thefts and property damage to Class Vehicles.[11]

35.    Altogether, the Defect damages Plaintiff and the Class by rendering their vehicles easy to steal, unsafe, and worth less than they should be if they did not have the Defect.

36.    Plaintiff is a Class member and Class Vehicle owner. In November 2020, Plaintiff purchased a 2021 Kia Telluride from the Destination Kia in Albany, New York.

---

[10] *See* James E. Causey, "Motor vehicle thefts in Milwaukee are up 152%. Auto repair businesses say the worst may be yet to come," February 8, 2021, at https://www.jsonline.com/story/news/solutions/2021/02/03/motor-vehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/ (last visited Oct. 25, 2022).

[11] *See* Christine Byers, "Hyundai and Kia thefts hit insurance and appraisal industry," September 2, 2022, https://www.ksdk.com/article/news/local/hyundai-kia-thefts-hit-insurance-appraisal-industry/63-24673a34-d557-452c-9fce-f10d6ce94c02 (last visited Oct. 25, 2022).

COMPLAINT

37.     Plaintiff's vehicle suffers from the Defect affecting Defendants' Class Vehicles, which she confirmed by calling Kia's customer service line to inquire about whether the Defect affected her Telluride.

38.     Defendant Kia never informed Plaintiff that her Telluride suffered from the Defect when she purchased her Telluride, nor did any of Defendant Kia's marketing materials that Plaintiff reviewed disclose the Defect. All representations and materials from Defendant Kia marketed the vehicle as safe and reliable.

39.     Plaintiff would not have purchased the vehicle or would not have purchased it at the price she did had she known about the Class Vehicle's Defect. Indeed, the Defect reduces the value of her vehicle as other consumers will not pay as much for a vehicle that is easy to steal and expensive to insure.

40.     As a result, Plaintiff has suffered damages in an amount to be determined at trial.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff sues on behalf of herself and the proposed Nationwide Class and New York Sub-Class (together "Class" unless otherwise noted), defined as follows:

**Nationwide Class**: All individuals and entities in the United States that purchased or leased a Class Vehicle.

**New York Sub-Class**: All individuals and entities in the State of New York that purchased or leased a Class Vehicle.

COMPLAINT

11

Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which either Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

42. Plaintiff reserves the right to amend the class definition.

43. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiff is representative of the proposed Class. On information and belief, the Class consists of many thousands of members;

b. **Ascertainability**. Class members are readily identifiable from information in Defendants' possession, custody, and control;

c. **Typicality**. Plaintiff's claims are typical of Class member's claims as each Class member owns a vehicle with the same defect.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with Class members' interests and she has retained counsel experienced in complex class action litigation to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff and the Class's claims raise predominantly common fact and legal questions that a class-wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

COMPLAINT

12

i. Whether Defendants designed, manufactured, advertised, sold, and placed the Class Vehicles into the stream of commerce;

ii. Whether the Class Vehicles were defective as described above;

iii. Whether the Defect is a safety and/or security defect that created a foreseeable risk of harm to Plaintiff and the Class;

iv. Whether Defendants breached their implied warranties with the Class regarding the Class Vehicles;

v. Whether Defendants knew about the Defect and, if so, for how long;

vi. Whether Defendants concealed the Defect;

vii. Whether Defendants' conduct violates consumer protection statutes, warranty law, and other laws as alleged in this complaint;

viii. Whether the Class has suffered damages because of Defendants' misconduct;

ix. What the proper damages measure is, including the diminution of value and deprivation of the benefit of the bargain; and

x. Whether the Class is entitled to injunctive relief.

Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The

damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

### **FIRST CAUSE OF ACTION**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.**
**(On Behalf of Plaintiff and the Class)**

44.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

45.     Plaintiff brings this claim on behalf of herself and the Class against Defendants.

46.     Plaintiff and each Class Member are a "consumer" as defined in 15 U.S.C. section 2301(3).

47.     Defendants are "supplier[s]" and "warrantor[s]" as defined in 15 U.S.C. section 2301(4)-(5). As a warrantor, Defendants are required to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiff and the Class Members. *Id*. § 2304(a)(1).

48.      The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. section 2301(1).

49.     Title 15 U.S.C. section 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

COMPLAINT

14

50.     Defendants' warranty is a "written warranty" within the meaning of 15 U.S.C. section 2301(6). Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. section 2301(7).

51.     Defendants expressly warranted any vehicle defect due to materials or workmanship.

52.     As a part of the implied warranty of merchantability, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

53.     As described above, Defendants' failure and/or refusal to repair the Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

54.     Plaintiff and the Class notified Defendants of the breach within a reasonable time and/or were not required to do so. Defendants were also on notice of the Defect from, among other sources, the complaints and service requests it received from Class Members and their dealers.

55.     As a result of Defendants' breaches of the written and implied warranties, and Defendants' failure to remedy the same within a reasonable time, Plaintiff and the Class have suffered damages.

56.     Plaintiff and the Class have had sufficient direct dealings with Defendants or their agents (dealerships and distributors) to establish privity of

COMPLAINT

contract between Defendants and Plaintiff and the Class Members. Nonetheless, privity is not required here because Plaintiff and the Class Members are intended third-party beneficiaries of Defendants' written warranty between Defendants and their dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles as the warranty agreements were designed for and intended to benefit consumers.

57.  The Class Vehicles share a common defect in that they are manufactured with defective materials and/or with poor workmanship. Contrary to Defendants' representations about their vehicles, the Class Vehicles are defective in manufacture, materials and/or workmanship and are unsafe. The Class Vehicles share a common defect that prevents the driver from being able to turn off and lock the vehicle. The Defect occurs within the warranty terms and period.

58.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here. Defendants have long been on notice of the claims of Plaintiff and Class Members and have refused to acknowledge the existence of the defect and/or refused to provide a remedy.

59.  At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Defect and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure

COMPLAINT

would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

60.     Plaintiff and the Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the Class Members have not reaccepted their Class Vehicles by retaining them.

61.     Pursuant to 15 U.S.C. Section 2310(d)(3), the amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25 and the amount in controversy of this action computed on the basis of all claims exceeds the sum of $50,000, exclusive of interest and costs. Plaintiff, individually and on behalf of other Class Members, seeks all damages permitted by law, including diminution in value of their Class Vehicles, in an amount to be proven at trial.

62.     In addition, pursuant to 15 U.S.C. Section 2310(d)(2), Plaintiff and the Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the Class Members in connection with the commencement and prosecution of this action.

COMPLAINT

## SECOND CAUSE OF ACTION
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Class)

63.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64.     Plaintiff brings this claim on behalf of herself and the Class against Defendants

65.     Defendants are and were at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

66.     With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

67.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

68.     Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under applicable state law.

69.     The Warranty formed the basis of the bargain that was reached when Plaintiff and other members of the Class purchased or leased their Class Vehicles.

70.     Defendants breached the express warranty through the acts and omissions described above.

COMPLAINT

18

71. Plaintiff and the members of the Class have had sufficient direct dealing with Defendants or their agents (*i.e.*, dealerships and technical support) to establish privity of contract between Defendants, on one hand, and Plaintiff and each of the other members of the Class on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are the intended third-party beneficiaries of contracts between Defendants and their distributors and dealers, and specifically, of Defendants' express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

72. Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Defendants knowingly sold, distributed, or leased defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect Plaintiff and the members of the Class. Among other things, Plaintiff and the members of the Class did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonably favored Defendants. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between Plaintiff and the members of the Class.

COMPLAINT

73.     Plaintiff was not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure their breach of their written warranties would have been futile. Defendants were also on notice of the Defect from the complaints and service requests it received from members of the Class, including those formal complaints submitted to the National Highway Traffic Safety Administration (NHTSA), and through other internal sources.

74.     As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiff and the members of the Class were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run. Had Plaintiff known this information, she would not have purchased or would have paid less for her Class Vehicle.

75.     As a result of Defendants' breach of the express warranty, Plaintiff and the members of the Class are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**THIRD CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiff and the Class)**

76.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77.     Plaintiff brings this claim on behalf of herself and the Class against Defendants.

78.     Defendants are and were at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

79.     With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

80.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

81.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under the Uniform Commercial Code and relevant state law.

82.     Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants directly sold and marketed the Class Vehicles to customers through their agents, the authorized dealers, like those from whom Plaintiff and the members of the Class bought or leased their

COMPLAINT

vehicles, for the intended purpose of consumers purchasing the vehicles. Defendants knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiff and the members of the Class, with no modification to the defective Class Vehicles.

83.    Defendants provided Plaintiff and the members of the Class with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

84.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

85.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the members of the Class with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective at the time of sale or lease and thereafter as more fully described above. Defendants knew of this defect at the time these sale or lease transactions occurred.

86.    As a result of Defendants' breach of the applicable implied warranties, Plaintiff and the members of the Class suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the

COMPLAINT

Defect, Plaintiff and the members of the Class were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

87.     Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

88.     Plaintiff and the members of the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

89.     Plaintiff and the members of the Class were not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure their breach of warranty would have been futile. Defendants were also on notice of the Defect from the complaints and service requests it received from Plaintiff and the members of the Class and through other internal sources.

90.     As a direct and proximate cause of Defendants' breach, Plaintiff and the members of the Class suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiff and the members of the Class have incurred or will incur economic damages at the point of repair in the form of the cost of repair as well as additional losses. Had Plaintiff and the Class known this

COMPLAINT

information, they would not have purchased or would have paid less for their Class Vehicles.

91.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Violation of the California Consumers Legal Remedies Act
### California Civil Code §§ 1750, *et seq.*
### (**On Behalf of Plaintiff and the Class**)

92.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

93.     Plaintiff brings this claim on behalf of herself and the Class.

94.     This cause of action is brought under the CLRA. Plaintiff and members of the Class are consumers as defined by California Civil Code § 1761(d), and the Class Vehicles constitute goods within the meaning of the CLRA.

95.     Defendants have violated, and continue to violate, the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale and/or lease of the Class Vehicles to Plaintiff and members of the Class in violation of, *inter alia*, the following provisions:

a. Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code §1770(a)(5));

COMPLAINT

24

b. Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

c. Advertising goods with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d. Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

e. Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

96.    Plaintiff and members of the Class, in purchasing/leasing and using the Class Vehicles, did reasonably act in response to Defendants' above representations or would have considered the omitted facts set forth herein as material to their purchasing/leasing decision. Plaintiff and members of the Class have suffered damages by the wrongful acts and practices of Defendants that are in violation of California Civil Code § 1781.

97.    Defendants engaged in unfair and deceptive acts, omissions, and practices by representing to Plaintiff and the members of the Class that the Class Vehicles were safe, reliable, and free from defects of workmanship and failing to disclose that the Class Vehicles had the Defect which rendered the Class Vehicles easy to steal, unsafe, and worth less than they should be, if they did not have the Defect.

COMPLAINT

25

98.   The representations regarding the Class Vehicles were material to Plaintiff and the members of the Class. Defendants intended that Plaintiff and the members of the Class would rely on these representations and they did, in fact, rely on the representations.

99.   Had Plaintiff and the Class known this information, they would not have purchased or would have paid less for their Class Vehicles.

100.  In accordance with California Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive relief for Defendants' violations of the CLRA.

101.  In accordance with California Civil Code §§ 1782(a) and (d), Plaintiff has provided Defendants with the appropriate notice and demand and will amend this Complaint upon receiving Defendants' response.

### FIFTH CAUSE OF ACTION
**Unlawful, Unfair and Fraudulent Business Practices in Violation of California Business and Professions Code §§ 17200, *et seq.*
(On Behalf of Plaintiff and the Class)**

102.  Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

103.  Plaintiff brings this claim on behalf of herself and the Class.

104.  The California Business and Professions Code aka the Unfair Competition Law ("UCL") defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

105.  Defendants have violated, and continue to violate, the UCL by

COMPLAINT

26

representing to Plaintiff and the members of the Class that the Class Vehicles were safe, reliable, and free from defects of workmanship and failing to disclose that the Class Vehicles had the Defect which rendered the Class Vehicles easy to steal, unsafe, and worth less than they should be, if they did not have the Defect.

106. By engaging in the above-described acts and practices, Defendants have committed an unfair business practice within the meaning of the UCL. Plaintiff and the Class members have suffered substantial injury they could not have reasonably avoided other than by not purchasing or leasing the Class Vehicles.

107. Defendants' acts and practices have deceived and/or are likely to deceive the Class members and the public and thus constitute a fraudulent business practice. Defendants uniformly marketed and advertised the Class Vehicles as safe, reliable, and free from defect when, in fact, they are not because they contain the Defect which rendered the Class Vehicles easy to steal, unsafe, and worth less than they should be, if they did not have the Defect.

108. As discussed above, Plaintiff and members of the Class purchased and/or leased the Class Vehicles directly from Defendants and/or their authorized agents. Plaintiff and members of the Class were injured in fact and lost money as a result of such acts of unfair competition.

109. The injuries suffered by Plaintiff and members of the Class greatly outweigh any potential countervailing benefit to consumers or to competition. The

COMPLAINT

injuries suffered by Plaintiff and the Class should have or could have been reasonably avoided.

110. Defendants received the funds paid by Plaintiff and the Class members and profited by misrepresenting the properties and quality of the Class Vehicles that they otherwise would not have sold. Defendants' revenues attributable thereto are, thus, directly traceable to the substantial amount of money paid by Plaintiff and members of the Class.

111. Unless Defendants are enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, which are ongoing, Plaintiff and members of the Class will continue to be injured by Defendants' conduct and as a result do not have an adequate remedy at law. Plaintiff and members of the Class request this Court to enjoin Defendants from continuing to violate the UCL.

112. The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date. Plaintiff and members of the Class are therefore entitled to relief as appropriate for this cause of action.

## SIXTH CAUSE OF ACTION
**Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.***
**(On Behalf of Plaintiff and the Class)**

113. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

COMPLAINT

114. Plaintiff brings this claim on behalf of herself and the Class.

115. Plaintiff and the Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

116. The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

117. Defendants are a "manufacturer[]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

118. Defendants impliedly warranted to Plaintiff and the Class members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792. However, the Class Vehicles do not have the quality that a buyer would reasonably expect.

119. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

a. Pass without objection in the trade under the contract description.

b. Are fit for the ordinary purposes for which such goods are used.

c. Are adequately contained, packaged, and labeled.

d. Conform to the promises or affirmations of fact made on the container or label.

120. Plaintiff and members of the Class purchased or leased the Class Vehicles, manufactured by Defendants, from Defendants by and through their

authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

121.   Defendants have provided Plaintiff and members of the Class with one or more express warranties.

122.   Plaintiff and members of the Class experienced the Defect within the warranty periods, but Defendants failed to inform Plaintiff and members of the Class of the existence of the Defect and associated safety hazard, and failed to provide a suitable repair or replacement of the defective components free of charge within a reasonable time.

123.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

124.   Contrary to the applicable implied warranties, the Class Vehicles were not free from the Defect, making the Class Vehicles unfit for their ordinary and intended purpose of providing Plaintiff and the Class members with reliable, durable, and safe transportation, would not pass without objection in trade, were not adequately labeled, and did not conform to the promises and affirmations on their labels.

COMPLAINT

30

125.   The Defect is inherent and was present in each Class Vehicle at the time of sale.

126.   Defendants were provided notice of the Defect by numerous consumer complaints made to authorized dealers nationwide, complaints to NHTSA and, upon information and belief, through Defendants' own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Defect and, on information and belief, have refused to repair the Defect free of charge within a reasonable time.

127.   Defendants have breached their express and implied warranties in violation of Cal. Civ. Code § 1791, *et seq.*

128.   As a direct and proximate result of Defendants' breach of their express and/or implied warranties, Plaintiff and members of the Class have been damaged in an amount to be proven at trial.

129.   Plaintiff and members of the Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

130.   Plaintiff and members of the Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of Defendants' willful conduct alleged herein. Plaintiff and members of the Class also seek reimbursement, replacement of the defective components, and/or the revocation of the purchase or

COMPLAINT

lease of their Class Vehicles, and all other relief available under Cal. Civ. Code § 1794.

131.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

132.   Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

133.   Plaintiff brings this claim for unjust enrichment in the alternative to the previously plead claims, Causes of Action One through Six.

134.   Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase and lease of the Class Vehicles with the Defect. Defendants knowingly and willingly accepted and enjoyed these benefits.

135.   Defendants either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Class Vehicles would have the qualities, characteristics, and safety represented by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances without payment of the value to Plaintiff and the Class.

136.   Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest

COMPLAINT

thereon. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### EIGHTH CAUSE OF ACTION
**Violation of the New York General Business Law § 349, Deceptive Acts and Practices Unlawful**
**(On Behalf of Plaintiff and the New York Sub-Class)**

137.   Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

138.   Plaintiff brings this claim on behalf of herself and the New York Sub-Class.

139.   New York General Business Law ("GBL") § 349, titled "Deceptive Acts and Practices Unlawful," states that "any person who has been injured by reason of any violation of this section may bring an action . . . to enjoin such unlawful act or practice, [and/or] an action to recover [his or her] actual damages . . ."

140.   Defendants have violated, and continue to violate, GBL § 349 by representing to Plaintiff and the members of the Class that the Class Vehicles were safe, reliable, and free from defects of workmanship and failing to disclose that the Class Vehicles had the Defect which rendered the Class Vehicles easy to steal, unsafe, and worth less than they should be, if they did not have the Defect.

COMPLAINT

33

141. By engaging in the above-described acts and practices, Defendants have committed an "unlawful act or practice" within the meaning of GBL § 349. Plaintiff and the Class members have suffered substantial injury they could not have reasonably avoided other than by not purchasing or leasing the Class Vehicles.

142. Defendants' acts and practices have deceived and/or are likely to deceive the Class members and the public and thus constitute a deceptive business practice. Defendants uniformly marketed and advertised the Class Vehicles as safe, reliable, and free from defect when, in fact, they are not because they contain the Defect which rendered the Class Vehicles easy to steal, unsafe, and worth less than they should be, if they did not have the Defect.

143. As discussed above, Plaintiff and members of the Class purchased and/or leased the Class Vehicles directly from Defendants and/or their authorized agents. Plaintiff and members of the Class were injured in fact and lost money as a result of such deceptive acts and practices.

144. The injuries suffered by Plaintiff and members of the Class greatly outweigh any potential countervailing benefit to consumers or to competition. The injuries suffered by Plaintiff and the Class should have or could have been reasonably avoided.

145. Defendants received the funds paid by Plaintiff and the Class members and profited by misrepresenting the properties and quality of the Class Vehicles that they otherwise would not have sold. Defendants' revenues attributable thereto are,

thus, directly traceable to the substantial amount of money paid by Plaintiff and members of the Class.

146.   Unless Defendants are enjoined from continuing to engage in the deceptive business acts and practices as described herein, which are ongoing, Plaintiff and members of the Class will continue to be injured by Defendants' conduct and as a result do not have an adequate remedy at law. Plaintiff and members of the Class request this Court to enjoin Defendants from continuing to violate GBL § 349.

147.   The deceptive, unlawful conduct described herein is ongoing and continues to this date. Plaintiff and members of the Class are therefore entitled to relief as appropriate for this cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the Class, and pray for judgment as follows:

a) An order certifying the proposed Class and Sub-Class, designating Plaintiff as named representative of the Class and Sub-Class, and designating the undersigned as Class Counsel;

b) A declaration that Defendants are financially responsible for notifying all the Class Members of the Defect;

COMPLAINT

c) An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. Section 30118(a); compelling Defendants to repair and eliminate the Defect from every Class Vehicle; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling Defendants to reform their warranties in a manner deemed to be appropriate by the Court, to cover the injury alleged, and to notify all Class Members that such warranties have been reformed;

d) Damages and restitution in an amount to be proven at trial;

e) Any and all remedies provided pursuant to the express and implied warranty laws, common law fraud by concealment laws, and consumer protection statutes alleged herein;

f) An award to Plaintiff and the Class of compensatory, exemplary, and statutory damages as permitted by law, including interest, in an amount to be proven at trial;

g) A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of Class Vehicles, and/or make full restitution to Plaintiff and the Class Members;

h) An award of pre-judgment and post-judgment interests, as provided by law;

i) An award of attorneys' fees and recoverable litigation expenses as may be allowable under applicable law;

j) Leave to amend the Complaint to conform to the evidence produced at trial; and

k) Such other relief as the Court may deem appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for any and all issues in this action so triable.

Dated: October 28, 2022

**GLANCY PRONGY & MURRAY LLP**

By: *s/ Kevin F. Ruf*
Kevin Ruf (SBN 136901)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 432-1495
kruf@glancylaw.com

COMPLAINT

1

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
bmurray@glancylaw.com

*Attorneys for Plaintiff and the Proposed
Class*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT