# EXHIBIT 1

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.6.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:22-cv-06413

Givens v. KIA America, Inc.
Assigned to: Honorable Manish S. Shah
Demand: $5,000,000,000
Cause: 28:1332 Diversity-Fraud

Date Filed: 11/16/2022
Jury Demand: Plaintiff
Nature of Suit: 195 Contract Product
Liability
Jurisdiction: Diversity

**Plaintiff**

**Pamela Givens**

represented by **Daniel R. Ferri**
DiCello Levitt Gutzler LLC
Ten North Dearborn St.
Eleventh Floor
Chicago, IL 60602
(312) 214-7900
Fax: Active
Email: dferri@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

**John E Tangren**
Dicello Levitt Gutzler LLC
10 North Dearborn Street
11 Floor
Chicago, IL 60602
312-214-7900
Fax: Not a member
Email: jtangren@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

**Adam J. Levitt**
DiCello Levitt Gutzler LLC
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
(312) 214-7900
Fax: Not a member
Email: alevitt@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KIA America, Inc.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| | | |

| 11/16/2022 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (smb, ) (Entered: 11/16/2022) |
|---|---|---|
| 11/16/2022 | | CASE ASSIGNED to the Honorable Manish S. Shah. Designated as Magistrate Judge the Honorable Jeffrey T. Gilbert. Case assignment: Random assignment. (smb, ) (Entered: 11/16/2022) |
| 11/16/2022 | 5 | ATTORNEY Appearance for Plaintiff Pamela Givens by John E Tangren (Tangren, John) (Entered: 11/16/2022) |
| 11/16/2022 | 4 | ATTORNEY Appearance for Plaintiff Pamela Givens by Daniel R. Ferri (Ferri, Daniel) (Entered: 11/16/2022) |
| 11/16/2022 | 3 | ATTORNEY Appearance for Plaintiff Pamela Givens by Adam J. Levitt (Levitt, Adam) (Entered: 11/16/2022) |
| 11/16/2022 | 2 | CIVIL Cover Sheet (Levitt, Adam) (Entered: 11/16/2022) |
| 11/16/2022 | 1 | COMPLAINT filed by Pamela Givens; Jury Demand. Filing fee $ 402, receipt number AILNDC-20053615.(Levitt, Adam) (Entered: 11/16/2022) |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

PAMELA GIVENS, individually and on
behalf of all others similarly situated,

                     Plaintiff,

     vs.

KIA AMERICA, INC.

                 Defendant.

Case No. _____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1.     Plaintiff Pamela Givens brings this action on behalf of herself and on behalf of a Class of similarly situated consumers against Defendant Kia America, Inc. ("Kia" or "Defendant").

2.     Defendant manufactures and sells motor vehicles in the United States and Illinois. These products include popular models like the Kia Sportage and Sorento.

3.     Like vehicles manufactured and sold by its corporate affiliate Hyundai Motor America, Inc. ("Hyundai"), Defendant Kia sold vehicles that suffer from a significant defect: they do not include an engine immobilizer ("Class Vehicles").

4.     An engine immobilizer is designed to prevent vehicle theft when a vehicle is left unattended. An engine immobilizer works by transmitting a code to the vehicle when the key is inserted in the ignition switch or a key fob is inside the vehicle.

5.     Thefts of Kia vehicles has risen substantially across the United States as knowledge of the defect is now widespread.

6.     Because vehicles manufactured and sold by Kia suffer from a defect, thieves only need to gain access to a vehicle, and once inside, strip the ignition column and insert a screwdriver, knife, or even a USB cord to start the vehicle.

7.      Kia is aware that its vehicles lack engine immobilizers.

8.      Kia is aware that thefts of vehicles manufactured and sold by Kia have increased nationwide.

9.      Despite the rise in vehicle thefts, Kia has not issued a recall or offered to install vehicle immobilizers in the affected vehicles.

10.     Plaintiff purchased a vehicle manufactured by Kia which suffers from the defect. Plaintiff would not have purchased the vehicle or would have paid less for the vehicle had Plaintiff known about the defect.

11.     As a result of Defendant's unfair, deceptive, and/or fraudulent business practices, consumers of these products, including Plaintiff, have suffered an ascertainable loss, injury-in-fact, and otherwise have been harmed by Defendants' conduct.

## **PARTIES**

12.     Plaintiff is a resident of the City of Chicago, County of Cook, Illinois.

13.     Defendant Kia America, Inc. is a California corporation with its principal place of business in California.

14.     Defendant Kia may accept service via its registered agent CT Corporation System at 208 S LaSalle Street, Suite 814, Chicago, IL 60604.

## **JURISDICTION AND VENUE**

15.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because the aggregate claims of the members of the putative class exceeds $5 million, exclusive of costs, and at least one of the Class members is a citizen of a different state than Defendant.

16.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

17.     Defendant regularly and systematically conducts business and sells its products in this District to customers in this District, including to Plaintiff and the Class. As such, Defendant is subject to the jurisdiction of this Court.

18.     Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and regularly conduct business in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

## I.     THEFTS OF DEFENDANT'S DEFECTIVE VEHICLES.

19.     In August 2022, stolen Hyundai and Kia vehicles accounted for one-third of all motor vehicle thefts reported in Chicago.[1]

20.     "Police say TikTok users shared 'how-to' videos exposing a major security flaw hidden inside Hyundai models made from 2013 to 2021, and Kia models made from 2011 to 2021." *Id.*

21.     "That flaw is the lack of a device called a standard immobilizer, which prevents a car from starting without the key present." *Id.*

22.     "In a recent HLDI survey looking at vehicles made in 2015, 'immobilizers were standard on 96% of other manufacturers' vehicles' while 'standard on only 26% of Hyundai and Kia vehicle models.'" *Id.*

---

[1] Lisa Parker, et. al., *Hyundai and Kia Owners Across Chicago Latest Victims of 'Trendy' Theft Wave*, NBC 5 Chicago, (Oct. 20, 2022), https://www.nbcchicago.com/consumer/hyundai-and-kia-owners-across-chicago-latest-victims-of-trendy-theft-wave/2972431/.

23.     Thefts of Kia and Hyundai vehicles have risen dramatically nationwide.

24.     In St. Louis, Missouri, Kia and Hyundai thefts account for nearly 77% of all vehicles stolen in 2022.[2]

25.     In 2019, a little over 200 Kias and 200 Hyundais were stolen statewide in Colorado. In 2020, the number jumped to 400 each. In 2021, the number more than doubled to over 1,000. In 2022, over 3,000 Kias and 3,000 Hyundais have been stolen.[3]

26.     According to CBS Colorado, "[t]he manufacturers say they are aware of what's happening and that thieves are targeting their keyed ignition vehicles that do not have engine immobilizer systems. Kia and Hyundai stopped using an anti-theft system in 2011 and now both companies say they have put them back into their newer models."

27.     In St. Paul, Minnesota, thefts of Kia vehicles have increased 1300% while thefts of Hyundai vehicles have increased 584%.

28.     In response to the rise in thefts of Kia and Hyundai vehicles in St. Paul, Ramsey County, Minnesota Undersheriff Mike Martin stated, "The Kias and Hyundais have what I call a design flaw that allows them to be stolen easier. All they have to do is break a window and get in and within seconds those cars can be compromised and be started with a USB port or even a pocket knife."[4]

---

[2] Kevin S. Held and Andy Banker, *City threatens to sue Kia and Hyundai, says cars are too easy to steal*, Nexstar Media Wire, (Aug. 30, 2022), https://www.wate.com/news/nexstar-media-wire/city-threatens-to-sue-kia-and-hyundai-says-cars-are-too-easy-to-steal/.

[3] Karen Morfitt, *KIA and Hyundai vehicles an easy target for thieves, and social media is partly the reason why*, CBS Colorado, (Aug. 31, 2022), https://www.cbsnews.com/colorado/news/kia-and-hyundai-vehicles-easy-target-thieves-social-media/.

[4] Caroline Cummings, *Thefts of Kia and Hyundai cars soar in St. Paul, data show*, CBS Minnesota (July 19, 2022), https://www.cbsnews.com/minnesota/news/thefts-of-kia-and-hyundai-cars-soar-in-st-paul-data-show/.

29.     In Minneapolis, Minnesota, Kia has become the thief's vehicle of choice. Starting in the second quarter of 2022 (April through July), Kia became the vehicle make that was stolen most often. To start off the third quarter of the year, Kia and Hyundai vehicles were stolen more often than any other make.[5]

30.     Local Minnesota news station Fox 9 detailed the story of Lynda Pierce, whose Kia was stolen twice in a two-month period, which resulted in her paying two auto insurance deductibles on top of needed vehicle repairs. The story noted that Pierce could no longer go to the grocery store or make medical appointments without her Kia.

31.     Authorities told Fox 9 that Kia and Hyundai vehicles "are easier to steal because they lack an electronic security device called an engine immobilizer, making them easier to start without a key."

32.     In Milwaukee, Wisconsin, Kia and Hyundai vehicles represented two out of every three vehicles stolen during the first half of 2021.[6]

33.     One car-repair facility owner was quoted by the Milwaukee Journal Sentinel explaining that "Kia thieves know they can break the back window without setting off an alarm, unlock the door, quickly peel back the steering column, and either use a screwdriver or a USB port to crank the car and go."

---

[5] Rose Schmidt, *Kias and Hyundais now most stolen cars in Minneapolis, data shows*, Fox 9 (Aug. 15, 2022), https://www.fox9.com/news/data-kias-and-hyundais-now-most-stolen-cars-in-minneapolis.

[6] Clifford Atiyeh, *Hyundai, Kia Take Action after Cars Become Theft Targets in Milwaukee*, Car and Driver (Dec. 11, 2021), https://www.caranddriver.com/news/a38491394/hyundai-kia-thefts-milwaukee-action/#:~:text=According%20to%20city%20police%20in,half%20of%202021%20in%20Milwaukee.

## II.     DEFENDANT'S DEFECTIVE VEHICLES.

34.     Defendant did not install engine immobilizers in all of its vehicles.

35.     An engine immobilizer is designed to prevent vehicle theft when a vehicle is left unattended. An engine immobilizer works by transmitting a code to the vehicle when the key is inserted in the ignition switch or a key fob is inside the vehicle.

36.     Defendant's vehicles suffer from a defect because they do not include an engine immobilizer.

37.     If Defendant's vehicles included an engine immobilizer, then they would be more difficult to steal because a thief could not start or move the vehicle without the vehicle's key.

38.     Federal regulations require that a vehicle's engine cannot be started and that a vehicle cannot move when the vehicle's key is not present.

39.     Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) the normal activation of the vehicle's engine or motor; and (b) either steering, or forward self-mobility, of the vehicle, or both. FMVSS 114, S.5.1.1.

40.     Federal Motor Vehicle Safety Standard 114 serves two purposes: to prevent auto theft and to prevent vehicle rollaway.

41.     Defendant's vehicles suffer from a defect and do not comply with FMVSS 114 because when the key is removed from the starting system the vehicle's engine or motor can be activated and removal of the key does not prevent steering or forward self-mobility.

42.     If Defendant's vehicles were manufactured to comply with FMVSS 114, then Defendants vehicles would not be stolen at such alarming rates because when the key is removed from the starting system, both steering and forward self-mobility would be prevented.

43.     A vehicle without an engine immobilizer is not a reliable or safe vehicle and is less valuable than a vehicle with an engine immobilizer.

44.     A vehicle that does not comply with FMVSS 114 is not a reliable or safe vehicle and is less valuable than a vehicle that complies with FMVSS 114.

45.     Defendant knew that its vehicles were defective in that they did not have an engine immobilizer and did not comply with FMVSS 114 and failed to disclose these defects to consumers like Plaintiff and the putative Class.

46.     Defendant knew that it was unsafe and dangerous for a vehicle not to have an engine immobilizer.

47.     In response to the significant rise in thefts of their vehicles, spokespeople for Kia and Hyundai told Car and Driver magazine that every new Hyundai now has standard engine immobilizers, and that all 2022 Kias across the lineup will also have the engine immobilizer fitted as standard equipment.

48.     Defendant has not provided a solution to the thousands of Kia owners whose vehicles remain without engine immobilizers.

**III.     PLAINTIFF'S PURCHASE AND OWNERSHIP OF A DEFECTIVE VEHICLE.**

49.     In October 2020, Plaintiff purchased a 2020 Kia Optima from Napelton's Kia of Elmhurst in Elmhurst, Illinois.

50.     Plaintiff purchased the Kia Optima for approximately $20,000.00. She makes monthly payments of $577.00 for her vehicle.

51.     On September 8, 2022, Plaintiff discovered that her Kia Optima had been stolen. When she recovered her Optima, the steering column was stripped down and damaged.

52.     Plaintiff expects to pay an insurance deductible of $500.00 to make necessary repairs to her vehicle.

53.     The full extent of the costs resulting from the theft are ongoing.

54.     Plaintiff has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with its vehicle's defect including, but not limited to, overpayment and diminished value of her Kia Optima.

55.     Plaintiff would not have purchased Defendant's defective vehicle, or would have paid less for that vehicle, if she had known it was defective and more susceptible to theft.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following Classes of individuals:

Nationwide Class:

> *All persons who, within the applicable statute of limitations period, purchased or leased a vehicle manufactured by Kia America, Inc. without an engine immobilizer in the United States.*

Illinois Class:

> *All persons who, within the applicable statute of limitations period, purchased or leased a vehicle manufactured by Kia America, Inc. without an engine immobilizer in Illinois.*

57.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

58.     Excluded from the Class are: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class.

59.     This action is brought and may be properly maintained on behalf of each Class member.

60.     *Numerosity of the Class:* The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently

unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes the Class is likely to include thousands of members based on the fact Defendant distributes its vehicles nationwide.

61.     The Class definition identifies unnamed Plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendants. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class through notice published in newspapers or other publications.

62.     *Commonality:* This action involves common questions of law and fact. The questions of law and fact common to both Plaintiff and the Class include, but are not limited to, the following:

        a.      Whether the vehicles fail under the implied warranty of merchantability;

        b.      Whether Defendant failed to warn consumers regarding the risks of the vehicles;

        c.      Whether Defendant designed the vehicles with a defect;

        d.      Whether Defendant violated the Magnuson-Moss Warranty Act;

        e.      Whether Defendants were unjustly enriched by the sale of the vehicles;

        f.      The appropriate nature of class-wide equitable relief; and

        g.      The proper method or methods to determine and measure Plaintiff's and the Classes' damages.

63.     *Typicality:* Plaintiff's claims are typical of all members of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and the Class are substantially the same because all putative Class members purchased Defendant's vehicles for personal use and all putative Class members overpaid or suffered a loss in value of

their vehicles. Accordingly, in pursuing her own self-interest in litigating her claims, Plaintiff will also serve the interests of the Class.

64. *Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and the Class that would make class certification inappropriate. Additionally, Plaintiff's counsel is competent to advance the interests of the Class having served as lead counsel in other successful class cases, including cases involving vehicle defects. Plaintiff and her counsel intend to prosecute this action vigorously.

65. *Predominance and Superiority:* The matter is properly maintained as a class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and the Class to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of the Class could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiff knows of no

difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiff and the Class will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

66.     Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. To the extent any further notices may be required, Plaintiff anticipates the use of additional media or mailings.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 Ill. Comp. Stat. 505/1 *et seq*
### (On Behalf of Plaintiff and the Illinois Class)

67.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

68.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, states, "Unfair methods of competition and unfair or deceptive acts or practices . . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

69.     By the conduct described in detail above and incorporated herein, Defendant engaged in unfair or deceptive acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

70.     Defendant's omissions regarding the lack of an engine immobilizer, as described above, concern material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

71.     Defendant intended for Plaintiff and the other Class members to rely on its omissions regarding the lack of an engine immobilizer.

72.     Plaintiff and the other Class members justifiably acted or relied to their detriment upon Defendant's omissions of fact concerning the lack of engine immobilizer as evidenced by Plaintiff's and the other Class members' purchases of Class Vehicles.

73.     Had Defendant disclosed all material information regarding the lack of engine immobilizer to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

74.     Defendant's omissions deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and other members of the Class.

75.     In addition to being deceptive, Defendant's business practices were unfair because Defendant knowingly sold Plaintiff and the other Class members Class Vehicles prone to theft. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of Defendant's exclusive knowledge of the lack of engine immobilizer, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

76.     As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles or alternatively would have paid less for them had the truth about the lack of engine immobilizer been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to

recover actual damages, attorneys' fees and costs, and all other relief allowed under 816 Ill. Comp. Stat. 505/1 *et seq.*

### COUNT II
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiff and the Illinois Class)

77.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

78.    Defendant, as a manufacturer of the Class Vehicles, impliedly warranted to Plaintiff and the Class that the vehicles were of merchantable quality and fit for their ordinary and intended use.

79.    Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Class Vehicles. At the point of sale, the Class Vehicles, while appearing normal contained defects as set forth herein rendering them unsafe and unfit for ordinary use.

80.    Had Plaintiff and the Class known the vehicles were unsafe and unfit for ordinary use they would not have purchased the Class Vehicles or would have paid substantially less.

81.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

### COUNT III
### NEGLIGENT FAILURE TO WARN
### (On Behalf of Plaintiff and the Illinois lass)

82.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

83.    Defendant owed Plaintiff and Class Members a duty of care and to warn of any risks associated with the vehicles. Defendant knew or should have known of the true risks of the Class Vehicles but failed to warn Plaintiff and the other Class members.

13

84.     Defendant's negligent breach of duty caused Plaintiff and Class Members economic damages and injuries in the form of less reliable and less safe vehicles.

85.     Plaintiff and Class members would not have purchased, chosen, and/or paid for all or part of the vehicles had they known that the risks associated with purchasing the product.

86.     Plaintiff and the Class suffered damages in an amount to be determined at trial.

**COUNT IV**
**STRICT LIABILITY – DESIGN DEFECT**
**(On Behalf of Plaintiff and the Illinois Class)**

87.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

88.     Defendant designed, manufactured, and/or supplied the vehicles in question within the ordinary course of its business.

89.     Plaintiff and the Class members purchased and own Defendant's Class Vehicles.

90.     Defendant's vehicles contain a design defect in that Defendants manufactured and designed the Class Vehicles without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the vehicles are easier to steal than vehicles with engine immobilizers, and they are therefore unsafe and worth less than if they had engine immobilizers.

91.     Defendant knew or should have known of the dangerous and defective nature of the Class Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

92.     Defendant failed to take safety precautions to prevent economic injury to Plaintiff and the Class and failed to warn and/or instruct Plaintiff and the Class of the defective and unreasonably dangerous nature of said vehicles.

93. Defendant's defective and unreasonably dangerous Class Vehicles directly and proximately caused economic injuries to Plaintiff and the Class.

94. Plaintiff and the Class leave their vehicles unattended and without a key, which is a manner of use reasonably anticipated by Defendant.

95. As a result of the defect in Defendant's vehicles, they are unreasonably dangerous and defective when put to the use anticipated by Defendant.

96. As a direct and proximate result of the dangerous and defective condition of Defendant's vehicles and Defendant's failure to warn of the dangers thereof, Plaintiff and the Class have suffered economic injuries.

97. Plaintiff and the Class's injuries include, but are not limited to, the difference in value between a vehicle with an engine immobilizer and one without, the purchase price of any device intended to prevent theft, and increased insurance premiums due to the design defect.

**COUNT V**
**VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

98. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

99. Congress enacted the MMWA, 15 U.S.C. §§ 2301 *et seq.*, to address the widespread misuse of merchants' express warranties and to protect consumers from deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty. *Id.* § 2310(d)(1).

100. Defendant's Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

101. Plaintiff and the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

102. Defendant is a "supplier" and "warrantor" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively.

103. In connection with the sale and/or lease of the vehicles, Defendant supplied Plaintiff and the Class with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

104. 15 U.S.C. § 2310(d)(1) provides that "a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state."

105. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

106. Defendant provided Plaintiff and the Class with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendant warranted that the vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

107. Defendant breached its implied warranties, as described herein, and are therefore liable to Plaintiff and the Class under 15 U.S.C. § 2310(d)(1). The defect rendered the vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

108. Plaintiff and the Class used their respective vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendant's conduct or by operation of law.

109.     Plaintiff and the Class seek to recover damages resulting directly from Defendant's breach of its implied warranties and its deceitful and unlawful conduct described herein. These damages include, but are not limited to, overpayment for the vehicles, insurance deductibles to get the stolen vehicles repaired, the cost to replace other property stolen in connection with the thefts of their vehicles, the loss of use of their respective vehicles, costs associated with the replacement of the totaled vehicles, and/or the diminution in value of stolen vehicles that were not totaled.

110.     Plaintiff and the Class are entitled to costs and expenses, including attorneys' fees in the Court's discretion. 15 U.S.C. § 2310(d)(2).

### COUNT V
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Illinois Class)

111.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

112.     Plaintiff and the Class members conferred a tangible and material economic benefit upon Defendant by purchasing the Class Vehicles. Plaintiff and Class members would not have purchased, chosen and/or paid for all or part of vehicles had they known the true risks of using the vehicles. Under these circumstances, it would be unjust and inequitable for Defendant to retain the economic benefits it received at the expense of Plaintiff and the Class.

113.     Failing to require Defendant to provide remuneration under these circumstances would result in Defendant being unjustly enriched at the expense of Plaintiff and the Class members who endure being exposed to the risk of their vehicles being stolen and can no longer use their vehicles safely.

114.     Defendant's retention of the benefit conferred upon them by Plaintiff and the Class would be unjust and inequitable.

115.     Plaintiff and the Class suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on

all claims so triable and judgment as follows:

A.    Certifying the proposed Nationwide Class, appointing Plaintiff as representative of the Nationwide Class, and appointing counsel for Plaintiff as Lead Counsel for the Nationwide Class;

B.    Certifying the proposed Illinois Class, appointing Plaintiff as representative of the Illinois Class, and appointing counsel for Plaintiff as Lead Counsel for the Illinois Class;

C.    Awarding damages in an amount according to proof;

D.    Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

E.    Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

F.    Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all

issues in this Class Action Complaint that are so triable.

Dated: November 16, 2022                    Respectfully submitted,

                                            */s/ Adam J. Levitt*
                                            Adam J. Levitt
                                            John E. Tangren
                                            Daniel R. Ferri
                                            **DICELLO LEVITT LLC**
                                            Ten North Dearborn Street, Sixth Floor
                                            Chicago, Illinois 60602
                                            (312) 214-7900
                                            alevitt@dicellolevitt.com
                                            jtangren@dicellolevitt.com
                                            dferri@dicellolevitt.com

                                            *Attorneys for Plaintiff and the Proposed Classes*