# EXHIBIT 2

JURY

# U.S. District Court
## District of South Carolina (Columbia)
## CIVIL DOCKET FOR CASE #: 3:22-cv-04014-MGL

Parker v. Kia America, Inc. et al
Assigned to: Honorable Mary Geiger Lewis
Cause: 28:1332 Diversity-Motor Vehicle Product Liability

Date Filed: 11/11/2022
Jury Demand: Plaintiff
Nature of Suit: 355 Motor Vehicle Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Laura Parker**
*individually and on behalf of all others
similarly situated*

represented by **Gerald D Jowers , Jr**
Janet Jenner and Suggs
500 Taylor Street
Suite 301
Columbia, SC 29201
803-726-0050
Fax: 803-727-1059
Email: gjowers@myadvocates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth M Suggs**
Janet Janet and Suggs
801 Gervais Street
Suite B
Columbia, SC 29201
803-726-0050
Fax: 410-653-9030
Email: ksuggs@jjsjustice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai Motor America, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/11/2022 | 1 | COMPLAINT against Hyundai Motor America, Inc., Kia America, Inc. (Filing fee $402 receipt number ASCDC-10797764) filed by Laura Parker. Service due by 2/9/2023(cbru, ) (Entered: 11/14/2022) |

| 11/11/2022 | 3 | Local Rule 26.01 Answers to Interrogatories by Laura Parker.(cbru, ) (Entered: 11/14/2022) |
| 11/14/2022 | 4 | Summons Issued as to Kia America, Inc. (cbru, ) (Entered: 11/14/2022) |
| 11/14/2022 | 5 | Summons Issued as to Hyundai Motor America, Inc. (cbru, ) (Entered: 11/14/2022) |

<br>

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/18/2022 11:42:33 | | |
| **PACER Login:** | jb0014 | **Client Code:** | 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-04014-MGL |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LAURA PARKER, individually and on behalf of all others similarly situated, | Case No. ____3:22-cv-04014-MGL____ |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| KIA AMERICA, INC. and HYUNDAI MOTOR AMERICA, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

COMES NOW, LAURA PARKER ("Plaintiff"), individually and on behalf of the Class, who states and alleges as follows:

### INTRODUCTION

1.       Plaintiff brings this action on behalf of herself and on behalf of a Class of similarly situated consumers against Defendants Kia America, Inc. ("Kia") and Hyundai Motor America, Inc. ("Hyundai") (collectively "Defendants") who purchased or leased vehicles manufactured and sold by Defendants.

2.       Defendants manufacture and sell motor vehicles in the United States and South Carolina. These products include popular models like the Hyundai Tucson and Santa Fe and the Kia Sportage and Sorento.

3.       Defendants' vehicles suffer from a significant defect: they do not include an engine immobilizer.

4.       An engine immobilizer is designed to prevent vehicle theft when a vehicle is left unattended. An engine immobilizer works by transmitting a code to the vehicle when the key is inserted in the ignition switch or a key fob is inside the vehicle.

1

5.      Thefts of Kia and Hyundai vehicles has risen substantially across the United States as knowledge of the defect is now widespread.

6.      Because vehicles manufactured and sold by Kia and Hyundai suffer from a defect, thieves only need to gain access to a vehicle, and once inside, strip the ignition column and insert a screwdriver, knife, or even a USB cord to start the vehicle.

7.      Kia and Hyundai are aware that their vehicles lack engine immobilizers.

8.      Kia and Hyundai are aware that thefts of vehicles manufactured and sold by them have increased nationwide.

9.      Despite the rise in vehicle thefts, Kia and Hyundai have not issued a recall or offered to install vehicle immobilizers in the affected vehicles.

10.     Plaintiff purchased a vehicle manufactured by Defendants which suffers from the defect. Plaintiff would not have purchased the vehicle or would have paid less for the vehicle had Plaintiff known about the defect.

11.     As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, consumers of these products, including Plaintiff, have suffered an ascertainable loss, injury-in-fact, and otherwise have been harmed by Defendants' conduct.

## **PARTIES**

12.     Plaintiff is a resident of the City of Columbia, County of Richland, South Carolina.

13.     Defendant Kia America, Inc. is a California corporation with its principal place of business in California.

14.     Defendant Kia may accept service via its registered agent CT Corporation System at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

15.     Defendant Hyundai Motor America, Inc. is a California corporation with its principal place of business in California.

2

16.     Defendant Hyundai may accept service via its registered agent Corporation Service Company at 508 Meeting Street, West Columbia, South Carolina 29169.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because the aggregate claims of the members of the putative class exceeds $5 million, exclusive of costs, and at least one of the Class members is a citizen of a different state than Defendants.

18.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

19.     Defendants regularly and systematically conduct business and sell their products in this District to customers in this District, including to Plaintiff and the Class. As such, Defendants are subject to the jurisdiction of this Court.

20.     Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and regularly conduct business in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    THEFTS OF DEFENDANTS' DEFECTIVE VEHICLES.

21.     Law enforcement agencies in South Carolina have reported an uptick in thefts involving Kia and Hyundai vehicles.[1]

22.     Thefts of Kia and Hyundai vehicles have risen dramatically nationwide.

---

[1] Caitlin Ashworth, *Columbia area seeing uptick in Kia, Hyundai vehicle thefts following TikTok trend*, The Post and Courier Columbia, (July 20, 2022), https://www.postandcourier.com/columbia/news/columbia-area-seeing-uptick-in-kia-hyundai-vehicle-thefts-following-tiktok-trend/article_7beaf3d2-086d-11ed-aa26-936c7ae6b4af.html.

23.    In St. Louis, Missouri, Kia and Hyundai thefts account for nearly 77% of all vehicles stolen in 2022.[2]

24.    In 2019, a little over 200 Kias and 200 Hyundais were stolen statewide in Colorado. In 2020, the number jumped to 400 each. In 2021, the number more than doubled to over 1,000. In 2022, over 3,000 Kias and 3,000 Hyundais have been stolen.[3]

25.    According to CBS Colorado, "[t]he manufacturers say they are aware of what's happening and that thieves are targeting their keyed ignition vehicles that do not have engine immobilizer systems. Kia and Hyundai stopped using an anti-theft system in 2011 and now both companies say they have put them back into their newer models."

26.    In St. Paul, Minnesota, thefts of Kia vehicles have increased 1300% while thefts of Hyundai vehicles have increased 584%.

27.    In response to the rise in thefts of Kia and Hyundai vehicles in St. Paul, Ramsey County, Minnesota Undersheriff Mike Martin stated, "The Kias and Hyundais have what I call a design flaw that allows them to be stolen easier. All they have to do is break a window and get in and within seconds those cars can be compromised and be started with a USB port or even a pocket knife."[4]

28.    In Minneapolis, Minnesota, Kia has become the thief's vehicle of choice. Starting in the second quarter of 2022 (April through July), Kia became the vehicle make that was stolen

---

[2] Kevin S. Held and Andy Banker, *City threatens to sue Kia and Hyundai, says cars are too easy to steal*, Nexstar Media Wire, (Aug. 30, 2022), https://www.wate.com/news/nexstar-media-wire/city-threatens-to-sue-kia-and-hyundai-says-cars-are-too-easy-to-steal/.

[3] Karen Morfitt, *KIA and Hyundai vehicles an easy target for thieves, and social media is partly the reason why*, CBS Colorado, (Aug. 31, 2022), https://www.cbsnews.com/colorado/news/kia-and-hyundai-vehicles-easy-target-thieves-social-media/.

[4] Caroline Cummings, *Thefts of Kia and Hyundai cars soar in St. Paul, data show*, CBS Minnesota (July 19, 2022), https://www.cbsnews.com/minnesota/news/thefts-of-kia-and-hyundai-cars-soar-in-st-paul-data-show/.

4

most often. To start off the third quarter of the year, Kia and Hyundai vehicles were stolen more often than any other make.[5]

29.    Local Minnesota news station Fox 9 detailed the story of Lynda Pierce, whose Kia was stolen twice in a two-month period, which resulted in her paying two auto insurance deductibles on top of needed vehicle repairs. The story noted that Pierce could no longer go to the grocery store or make medical appointments without her Kia.

30.    Authorities told Fox 9 that Kia and Hyundai vehicles "are easier to steal because they lack an electronic security device called an engine immobilizer, making them easier to start without a key."

31.    In Milwaukee, Wisconsin, Kia and Hyundai vehicles represented two out of every three vehicles stolen during the first half of 2021.[6]

32.    One car-repair facility owner was quoted by the Milwaukee Journal Sentinel explaining that "Kia thieves know they can break the back window without setting off an alarm, unlock the door, quickly peel back the steering column, and either use a screwdriver or a USB port to crank the car and go."

## II.    DEFENDANTS' DEFECTIVE VEHICLES.

33.    Defendants did not install engine immobilizers in all their vehicles.

---

[5] Rose Schmidt, *Kias and Hyundais now most stolen cars in Minneapolis, data shows*, Fox 9 (Aug. 15, 2022), https://www.fox9.com/news/data-kias-and-hyundais-now-most-stolen-cars-in-minneapolis.
[6] Clifford Atiyeh, *Hyundai, Kia Take Action after Cars Become Theft Targets in Milwaukee*, Car and Driver (Dec. 11, 2021), https://www.caranddriver.com/news/a38491394/hyundai-kia-thefts-milwaukee-action/#:~:text=According%20to%20city%20police%20in,half%20of%202021%20in%20Milwaukee.

34.    An engine immobilizer is designed to prevent vehicle theft when a vehicle is left unattended. An engine immobilizer works by transmitting a code to the vehicle when the key is inserted in the ignition switch or a key fob is inside the vehicle.

35.    Defendants' vehicles suffer from a defect because they do not include an engine immobilizer.

36.    If Defendants' vehicles included an engine immobilizer, then they would be more difficult to steal because a thief could not start or move the vehicle without the vehicle's key.

37.    Federal regulations require that a vehicle's engine cannot be started and that a vehicle cannot move when the vehicle's key is not present.

38.    Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) the normal activation of the vehicle's engine or motor; and (b) either steering, or forward self-mobility, of the vehicle, or both. FMVSS 114, S.5.1.1.

39.    Federal Motor Vehicle Safety Standard 114 serves two purposes: to prevent auto theft and to prevent vehicle rollaway.

40.    Defendants' vehicles suffer from a defect and do not comply with FMVSS 114 because when the key is removed from the starting system the vehicle's engine or motor can be activated and removal of the key does not prevent steering or forward self-mobility.

41.    Defendants' failure to comply with FMVSS 114 does not prevent auto theft.

42.    If Defendants' vehicles were manufactured to comply with FMVSS 114, then Defendants' vehicles would not be stolen at such alarming rates because when the key is removed from the starting system, both steering and forward self-mobility would be prevented.

43.    A vehicle without an engine immobilizer is not a reliable or safe vehicle and is less valuable than a vehicle with an engine immobilizer.

44.    A vehicle that does not comply with FMVSS 114 is not a reliable or safe vehicle and is less valuable than a vehicle that complies with FMVSS 114.

45.    Defendants knew their vehicles were defective in that they did not have an engine immobilizer and did not comply with FMVSS 114 and failed to disclose these defects to consumers like Plaintiff and the putative Class.

46.    Defendants knew that it was unsafe and dangerous for a vehicle not to have an engine immobilizer.

47.    In response to the significant rise in thefts of their vehicles, spokespeople for Kia and Hyundai told Car and Driver magazine that every new Hyundai now has standard engine immobilizers, and that all 2022 Kias across the lineup will also have the engine immobilizer fitted as standard equipment.

48.    Defendants have not provided a solution to the thousands of Kia and Hyundai owners whose vehicles remain without engine immobilizers.

## III.    PLAINTIFF'S USE OF DEFENDANTS' DEFECTIVE VEHICLES.

49.    In February 2019, Plaintiff purchased a 2016 Kia Rio from CarMax in Columbia, South Carolina.

50.    Plaintiff purchased the Kia Rio for approximately $15,000.00. She makes a monthly payment of approximately $150.00 for her vehicle.

51.    On October 16, 2022, Plaintiff discovered that her Kia Rio had been stolen. When she recovered her Rio, the steering column was torn off and damaged. The USB cord she had plugged into the vehicle was on the floor of the driver's side of her Rio. It is believed that the USB cord was used to start the car.

52.    Plaintiff expects to pay an insurance deductible of $500.00 to make necessary repairs to her vehicle.

7

53.     The full extent of the costs resulting from the theft are ongoing.

54.     Plaintiff has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with its vehicle's defect including, but not limited to, overpayment and diminished value of her Kia Rio.

55.     Plaintiff would not have purchased Defendants' defective vehicle if she had known it was defective and more susceptible to theft.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class of individuals defined as:

Nationwide Class:

> *All persons who, within the applicable statute of limitations period, purchased or leased a vehicle manufactured by Kia America, Inc. or Hyundai Motor America without an engine immobilizer.*

South Carolina Class:

> *All persons in South Carolina who, within the applicable statute of limitations period, purchased or leased a vehicle manufactured by Kia America, Inc. or Hyundai Motor America without an engine immobilizer.*

57.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

58.     Excluded from the Class are: (1) any entity in which Defendants have a controlling interest; (2) officers or directors of Defendants; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class.

59.     This action is brought and may be properly maintained on behalf of each Class member.

60.    *Numerosity of the Class:* The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes the Class is likely to include thousands of members based on the fact Defendants distribute their vehicles nationwide.

61.    The Class definition identifies unnamed Plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendants. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class through notice published in newspapers or other publications.

62.    *Commonality:* This action involves common questions of law and fact. The questions of law and fact common to both Plaintiff and the Class include, but are not limited to, the following:

      a.    Whether the vehicles fail under the implied warranty of usability;

      b.    Whether the vehicles fail under the implied warranty of merchantability;

      c.    Whether Defendants failed to warn consumers regarding the risks of the vehicles;

      d.    Whether Defendants designed the vehicles with a defect;

      e.    Whether Defendants violated the Magnuson-Moss Warranty Act;

      f.    Whether Defendants were unjustly enriched by the sale of the vehicles;

      g.    The appropriate nature of class-wide equitable relief; and

      h.    The proper method or methods to determine and measure Plaintiff's and the Classes' damages.

63.    *Typicality:* Plaintiff's claims are typical of all members of the Class. The evidence and the legal theories regarding Defendants' alleged wrongful conduct committed against Plaintiff

and the Class are substantially the same because all putative Class members purchased Defendants'

vehicles for personal use and all putative Class members overpaid or suffered a loss in value of

their vehicles. Accordingly, in pursuing their own self-interest in litigating their claims, Plaintiff

will also serve the interests of the Class.

64.    *Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class.

Plaintiff retained competent counsel experienced in class action litigation to ensure such

protection. There are no material conflicts between the claims of the representative Plaintiff and

the Class that would make class certification inappropriate. Additionally, Plaintiff's Counsel are

competent to advance the interests of the Class having been designated as Lead Counsel in dozens,

if not hundreds, of Class cases. Plaintiff and their Counsel intend to prosecute this action

vigorously.

65.    *Predominance and Superiority:* The matter is properly maintained as a class action

under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified herein,

and to be identified through discovery, predominate over questions that may affect only individual

Class members. Further, a class action is superior to all other available methods for the fair and

efficient adjudication of this matter because the injuries suffered by the individual Class members

are relatively small. As such, the expense and burden of individual litigation would make it

virtually impossible for Plaintiff and the Class to individually seek redress for Defendants'

wrongful conduct. Even if any individual person or group(s) of the Class could afford individual

litigation, it would be unduly burdensome to the courts in which the individual litigation would

proceed. The class action device is preferable to individual litigation because it provides the

benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single

court. In contrast, the prosecution of separate actions by individual Class members would create a

risk of inconsistent or varying adjudications with respect to individual Class members that would

establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiff and the Class will continue to suffer losses, thereby allowing Defendants' violations of law to proceed without remedy and allowing Defendants to retain the proceeds of their ill-gotten gains.

66.    Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. To the extent any further notices may be required, Plaintiff anticipates the use of additional media or mailings.

## CAUSES OF ACTION

### COUNT I

### BREACH OF THE IMPLIED WARRANTY OF USABILITY

### (On Behalf of Plaintiff and the Classes)

67.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

68.    Defendants, as manufacturers of the vehicles, impliedly warranted to Plaintiff and the Class that the vehicles were usable for their ordinary and intended use.

69.    Defendants breached the implied warranty of usability in connection with the sale and distribution of the vehicles. At the point of sale, the vehicles while appearing normal— contained defects as set forth herein rendering them less valuable than warranted.

70.    Defendants, its agents and its employees knew or should have known that the vehicles suffered from a defect that increases the risk of the vehicle being stolen to such an extent that the vehicles are less valuable than warranted.

71.     Defendants did not provide appropriate warranty relief notwithstanding the risks of using the vehicles. Plaintiff and the Class reasonably expected, at the time of purchase, that the vehicles were usable for their ordinary and intended use.

72.     Had Plaintiff and Class Members known they would not be able to use their vehicles, they would not have purchased them or would have paid significantly less for them.

73.     As a direct and proximate result of Defendants' breach of the implied warranty of usability, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

## COUNT II

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (On Behalf of Plaintiff and the Classes)

74.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

75.     Defendants, as manufacturers of the vehicles, impliedly warranted to Plaintiff and the Class that the vehicles were of merchantable quality and safe for their ordinary and intended use.

76.     Defendants breached the implied warranty of merchantability in connection with the sale and distribution of the vehicles. At the point of sale, the vehicles while appearing normal— contained defects as set forth herein rendering them less safe and less reliable for personal use.

77.     Had Plaintiff and the Class known the vehicles were less safe and less reliable for use, they would not have purchased them.

78.     Defendants did not provide appropriate warranty relief notwithstanding the risks of using the vehicles. Plaintiff and the Class reasonably expected, at the time of purchase, that the vehicles were safe for their ordinary and intended use.

79.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

## COUNT III

## NEGLIGENT FAILURE TO WARN

### (On Behalf of Plaintiff and the Classes)

80.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

81.     Defendants owed Plaintiff and Class Members a duty of care and to warn of any risks associated with the vehicles. Defendants knew or should have known of the true risks but failed to warn Plaintiff and Class Members.

82.     Defendants' negligent breach of duty caused Plaintiff and Class Members economic damages and injuries in the form of less reliable and less safe vehicles.

83.     Plaintiff and Class members would not have purchased, chosen, and/or paid for all or part of the vehicles had they known that the risks associated with purchasing the product.

84.     Plaintiff and the Class suffered damages in an amount to be determined at trial.

## COUNT IV

## STRICT LIABILITY – DESIGN DEFECT

### (On Behalf of Plaintiff and the Classes)

85.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

86.     Defendants designed, manufactured, and/or supplied the vehicles in question within the ordinary course of their business.

87.     Plaintiff and the Class members purchased and own Defendants' vehicles.

88.     Defendants' vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the vehicles are easier to steal than vehicles with engine immobilizers and are therefore unsafe and worth less than if they had engine immobilizers.

89.     Defendants knew or should have known of the dangerous and defective nature of the vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

90.     Defendants failed to take safety precautions to prevent economic injury to Plaintiff and the Class and failed to warn and/or instruct Plaintiff and the Class of the defective and unreasonably dangerous nature of said vehicles.

91.     Defendants' defective and unreasonably dangerous vehicles directly and proximately caused economic injuries to Plaintiff and the Class.

92.     Plaintiff and the Class leave their vehicles unattended and without a key, which is a manner of use reasonably anticipated by Defendants.

93.     As a result of the defect in Defendants' vehicles, they are unreasonably dangerous and defective when put to the use anticipated by Defendants.

94.     As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiff and the Class have suffered economic injuries.

95.     Plaintiff and the Class' injuries include, but are not limited to, the difference in value between a vehicle with an engine immobilizer and one without, the purchase price of any device intended to prevent theft, and increased insurance premiums due to the design defect.

**COUNT V**

14

## VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT

### (On Behalf of Plaintiff and the Classes)

96.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

97.     Congress enacted the MMWA, 15 U.S.C. §§ 2301 *et seq.*, to address the widespread misuse of merchants' express warranties and to protect consumers from deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty. *Id.* § 2310(d)(1).

98.     Defendants' vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

99.     Plaintiff and the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

100.     Defendants are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively.

101.     In connection with the sale and/or lease of the vehicles, Defendants supplied Plaintiff and the Class with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

102.     15 U.S.C. § 2310(d)(1) provides that "a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state."

103.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

104.     Defendants provided Plaintiff and Class with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the vehicles were fit

15

for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

105.    Defendants breached their implied warranties, as described herein, and are therefore liable to Plaintiff and the Class under 15 U.S.C. § 2310(d)(1). The defect rendered the vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

106.    Plaintiff and the Class used their respective vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendants' conduct or by operation of law.

107.    Plaintiff and the Class seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein. These damages include, but are not limited to, overpayment for the vehicles, insurance deductibles to get the stolen vehicles repaired, the cost to replace other property stolen in connection with the thefts of their vehicles, the loss of use of their respective vehicles, costs associated with the replacement of the totaled vehicles, and/or the diminution in value of stolen vehicles that were not totaled.

108.    The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Plaintiff and the Class seek reformation of Defendants' respective written warranties to comport with their obligations under the MMWA and with consumers' reasonable expectations. Plaintiff and the Class also seek to enjoin Defendants from acting unlawfully as alleged herein.

109.    Plaintiff and the Class are entitled to costs and expenses, including attorneys' fees in the Court's discretion. 15 U.S.C. § 2310(d)(2).

## COUNT V

## UNJUST ENRICHMENT

## (On Behalf of Plaintiff and the Classes)

110.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

111.    Plaintiff and the Class members conferred a tangible and material economic benefit upon Defendants by purchasing the vehicles. Plaintiff and Class members would not have purchased, chosen and/or paid for all or part of vehicles had they known the true risks of using the vehicles while Defendants cannot provide a timely repair or replacement for the vehicles. Under these circumstances, it would be unjust and inequitable for Defendants to retain the economic benefits they received at the expense of Plaintiff and the Class.

112.    Failing to require Defendants to provide remuneration under these circumstances would result in Defendants being unjustly enriched at the expense of Plaintiff and the Class members who endure being exposed to the risk of their vehicles being stolen and can no longer use their vehicles safely.

113.    Defendants' retention of the benefit conferred upon them by Plaintiff and the Class would be unjust and inequitable.

114.    Plaintiff and the Class suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A.    Certifying the proposed Nationwide Class, appointing Plaintiff as representative of the Nationwide Class, and appointing counsel for Plaintiff as Lead Counsel for the Nationwide Class;

B.    Certifying the proposed South Carolina Class, appointing Plaintiff as representative of the South Carolina Class, and appointing counsel for Plaintiff as Lead Counsel for the South Carolina Class;

C.    Finding that Defendants breached the implied warranty of usability;

D.    Finding that Defendants breached the implied warranty of merchantability;

E.      Finding that Defendants negligently failed to warn Plaintiff and the Class;

F.      Finding that Defendants' vehicles contain a design defect;

G.      Finding that Defendants violated the Magnuson-Moss Warranty Act;

H.      Finding that Defendants were unjustly enriched by their sale of the vehicles;

I.      Awarding damages in an amount according to proof;

J.      Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

K.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

L.      Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: November 11, 2022                    Respectfully submitted,


                                            */s/ Kenneth M. Suggs*
                                            Kenneth M. Suggs, Fed ID No. 3422
                                            Gerald D. Jowers, Jr., Fed ID No. 8025
                                            **JANET, JANET & SUGGS, LLC**
                                            801 Gervais Street, Suite B
                                            Columbia, SC 29201
                                            (803) 726-0050 TEL
                                            (410) 653-9030 FAX
                                            ksuggs@jjsjustice.com
                                            gjowers@jjsjustice.com

                                            Timothy J. Becker (MN Bar No. 0256663)*
                                            Jacob R. Rusch (MN Bar No. 0391892)*
                                            Zackary S. Kaylor (MN Bar No. 0400854)*
                                            **JOHNSON BECKER PLLC**
                                            444 Cedar Street, Suite 1800
                                            St. Paul, MN 55101
                                            (612) 436-1804 (phone)

(612) 436-4801 (fax)
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com
zkaylor@johnsonbecker.com

*Attorneys for Plaintiff*

*\*Pro Hac Vice Forthcoming*