# EXHIBIT 1

# U.S. District Court [LIVE]
## Western District of Texas (San Antonio)
## CIVIL DOCKET FOR CASE #: 5:22-cv-01290-FB

Jeong v. Kia America, Inc. et al                          Date Filed: 12/02/2022
Assigned to: Judge Fred Biery                            Jury Demand: Plaintiff
Cause: 15:2301 Magnuson-Moss Warranty Act               Nature of Suit: 890 Other Statutory Actions
                                                         Jurisdiction: Federal Question

**Plaintiff**

**Philos Jeong**                    represented by    **Adam Pollock**
*individually and on behalf of all others*            Pollock Cohen LLP.
*similarly situated*                                  111 Broadway, Suite 1804
                                                      New York, NY 10006
                                                      212-337-5361
                                                      Email: adam@pollockcohen.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Max Ephraim Rodriguez**
                                                      Pollock Cohen LLP
                                                      111 Broadway
                                                      Suite 1804
                                                      New York, NY 10006
                                                      646-290-7509
                                                      Email: max@pollockcohen.com
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai America Technical Center, Inc.**

**Defendant**

**Hyundai Motor America**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/02/2022 | 1 | COMPLAINT ( Filing fee $ 402 receipt number ATXWDC-16810770), filed by Philos Jeong. (Attachments: # 1 Civil Cover Sheet)(Rodriguez, Max) (Entered: 12/02/2022) |
| 12/02/2022 | 2 | REQUEST FOR ISSUANCE OF SUMMONS by Philos Jeong. *(Kia America)* (Rodriguez, Max) (Entered: 12/02/2022) |
| 12/02/2022 | 3 | REQUEST FOR ISSUANCE OF SUMMONS by Philos Jeong. *(Hyundai America Technical Center)* (Rodriguez, Max) (Entered: 12/02/2022) |

| 12/02/2022 | [4] | REQUEST FOR ISSUANCE OF SUMMONS by Philos Jeong. *(Hyundai Motor America)* (Rodriguez, Max) (Entered: 12/02/2022) |
|---|---|---|
| 12/02/2022 | [5] | MOTION to Appear Pro Hac Vice by Max Ephraim Rodriguez *for pro hac vice admission of Raphael Janove* ( Filing fee $ 100 receipt number ATXWDC-16810906) by on behalf of Philos Jeong. (Rodriguez, Max) (Entered: 12/02/2022) |
| 12/02/2022 | [6] | NOTICE of Attorney Appearance by Adam Pollock on behalf of Philos Jeong. Attorney Adam Pollock added to party Philos Jeong(pty:pla) (Pollock, Adam) (Entered: 12/02/2022) |
| 12/02/2022 | | Case assigned to Judge Fred Biery. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (nm) (Entered: 12/05/2022) |
| 12/02/2022 | | If ordered by the court, all referrals will be assigned to Magistrate Judge Farrer (nm) (Entered: 12/05/2022) |
| 12/05/2022 | [7] | Summons Issued as to Hyundai America Technical Center, Inc., Hyundai Motor America, Kia America, Inc.. (nm) (Entered: 12/05/2022) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/05/2022 09:12:26 | | |
| **PACER Login:** | jb0014 | **Client Code:** | 71273-10008 |
| **Description:** | Docket Report | **Search Criteria:** | 5:22-cv-01290-FB |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Max Rodriguez
Adam Pollock
**Pollock Cohen LLP**
111 Broadway, Suite 1804
New York, NY 10006
(646) 290-7509
Max@PollockCohen.com
Adam@PollockCohen.com

Raphael Janove (*pro hac vice forthcoming*)
**Pollock Cohen LLP**
1617 John F. Kennedy Blvd.
20th Floor
Philadelphia, PA 19103
(215) 667-8607
Rafi@PollockCohen.com

*Attorneys for Plaintiff and the Proposed Classes*

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| PHILOS JEONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KIA AMERICA, INC., HYUNDAI AMERICA TECHNICAL CENTER, INC., and HYUNDAI MOTOR AMERICA,<br><br>Defendants. | Case No.: 5:22-cv-1290<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Philos Jeong, on behalf of himself and all others similarly situated, by and through his attorneys, for his Complaint against Kia America, Inc. ("Kia"), Hyundai America Technical Center, Inc., and Hyundai Motor America (together with Hyundai America Technical Center., Inc., "Hyundai," and collectively with Kia, "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries,

affiliates, agents, and/or other related entities, alleges, on knowledge as to Plaintiff's own actions, the investigation of Plaintiff's counsel, and otherwise upon information and belief, as follows:

## **NATURE OF THE ACTION**

1.     For years, Defendants sold massive numbers of Defective Vehicles (defined below) to consumers across the United States.

2.     These vehicles lack proper anti-theft features—namely an engine immobilizer—which prevents vehicles from starting or moving without the vehicles' actual keys.

3.     Because they lack engine immobilizers, the Defective Vehicles do not comply with Federal Motor Vehicle Safety Standards.

4.     As many individuals on social media have shown, these Defective Vehicles may be easily stolen by removing the ignition keyway and using any object with a small, rectangular opening (such as a USB connector) to rotate an exposed prong, and then starting the engine. The Defective Vehicles operate completely normally in the hands of thieves who start them in this manner.

5.     Defendants have acknowledged the defect in their Defective Vehicles but have failed to remedy the problem for consumers.

6.     On December 22, 2020, Plaintiff purchased a brand new 2021 Kia Sportage for $26,000.

7.     His car was stolen on or about November 25 or 26, 2022.

8.     The San Antonio police located Plaintiff's car on November 30, 2022 in an abandoned lot.

9. On December 1, 2022, Plaintiff was able to view his car at the police's impound lot.

10. The damage to his car showed that the theft was carried out using the method that was popularized by social media and was due to the lack of an engine immobilizer:





11.    Plaintiff would not have purchased the 2021 Kia Sportage if he knew it lacked an engine mobilizer and was easy to steal.

12.    Accordingly, Plaintiff brings claims for breaches of implied warranty, violations of the Magnuson Moss Warranty Act and the Texas Deceptive Trade Practices Act, and common law claims for strict liability, negligence, and unjust enrichment.

## PARTIES

13.     Plaintiff Philos Jeong is a resident and citizen of the state of Texas.

14.     On December 22, 2020, Plaintiff purchased a Defective Vehicle made by Kia—a 2021 Kia Sportage. His car was stolen on or about November 26, 2022, in his luxury apartment complex in San Antonio, Texas.

15.     Plaintiff would not have purchased the 2021 Kia Sportage if he knew it was a Defective Vehicle.

16.     Defendant Kia America, Inc. is a California corporation with its principal place of business at 111 Peters Canyon Rd., Irvine, CA 92606.

17.     Hyundai America Technical Center, Inc. is a Michigan corporation with its principal place of business at 6800 Geddes Rd., Superior Township, MI 48198.

18.     Hyundai Motor America is a California corporation with its principal place of business at 10550 Talbert Ave., Fountain Valley, CA 92708.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Classes exceeds 100; and many members of the proposed Classes are citizens of different states than the Defendant.

20.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332(a).

21.     The Court also has supplemental jurisdiction over the state law claims in this action under 28 U.S.C. § 1367.

22.    This Court has personal jurisdiction over Defendants because they regularly conduct business in this Judicial District, have extensive contacts with this forum, and have committed one or more tortious acts in the state of Texas.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants transact substantial business in this District.

## FACTUAL ALLEGATIONS

## I.    Hyundai and Kia Manufactured and Sold Cars with Defective Theft Protection

24.    Upon information and belief, the "Defective Vehicles" are all those manufactured by Hyundai or Kia that: (i) are operated by a physical key (as opposed to a push-button start mechanism), and (ii) lack an engine immobilizer (a device that prevents power from reaching a car's engine until it receives electronic signals from a chip in the body of a mechanical car key) (the "Defect").

25.    According to data from the Highway Loss Data Institute, while 96 percent of vehicles sold from 2015 to 2019 came with engine immobilizers as standard equipment, only 26 percent of Hyundais and Kias had them.[1]

26.    If Defendants had included engine immobilizers in the Defective Vehicles, they would be more difficult to steal because the engines could neither start nor move without the actual key to the car.

27.    In fact, because Defendants' Vehicles lack an engine immobilizer, they do not comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114. *See* 49 C.F.R. § 571.114.

_____

[1] https://www.cnn.com/2022/09/22/business/hldi-hyundai-kia-theft

28. FMVSS 114 requires that whenever the key is removed, each vehicle's starting system prevents the car's engine from starting *and* stops the car from moving.

29. FMVSS 114 makes these requirements to thwart would-be thieves and to prevent vehicles from rolling away.

30. The result of Defendants' failure to comply with FMVSS 114 can be deadly. For instance, four teenagers were killed in a car crash while driving a stolen Kia.[2]

31. The list of Defective Vehicles includes, but is not limited to: all mechanically-keyed Kia vehicles manufactured from 2011 to 2021; and all mechanically-keyed Hyundai vehicles manufactured from 2016 to 2021.[3] This includes Plaintiff's 2021 Kia Sportage.[4]

32. These Defective Vehicles are so easy to steal that they have become the subject of viral trends across various social media platforms, including TikTok and YouTube.[5,]

33. As many individuals on social media have shown, these Defective Vehicles may be easily stolen by removing the ignition keyway and using any object with a small,

---

[2] https://www.nbcnewyork.com/news/local/kia-challenge-tiktok-trend-may-be-linked-to-deadly-ny-car-crash-that-killed-4-teens/3923042/

[3] https://www.forbes.com/wheels/news/kia-hyundai-car-thefts-security-kit/

[4] *Id.*

[5]
https://www.tiktok.com/@kyliecet/video/7122427244953439534?is_from_webapp=v1&item_id=7122427244953439534&lang=en

https://www.youtube.com/watch?v=bTeVgfPM0Xw

rectangular opening (such as a USB connector) to rotate an exposed prong, starting the engine. The Defective Vehicles then operate normally in the hands of thieves.

34.     Law enforcement officers across the country have noted a rising wave of thefts of these vehicles, caused in part by the viral trend on social media. A County Sheriff in Florida noted to a CNBC reporter that these cars are unbelievably easy to steal, with the process taking as little as "20 to 30 seconds." The officer summarized that the issue is "as old-fashioned as you can imagine."[6]

35.     Thefts of the Defective Vehicles have also skyrocketed in this District. For instance, a dozen cars were stolen from just one San Antonio apartment complex in the last year.[7] Because of the prevalence of thefts in this area, one San Antonio car repair shop related that a shortage of parts was causing delays in fixing vehicles to prevent thefts.[8] Repairs to correct the Defective Vehicles could cost between a few hundred to thousands of dollars.[9]

36.     The San Antonio police reported that through the month of September 2022, the most commonly stolen vehicles of the year included the Hyundai Elantra (#4) and the Hyundai Sonata (#10).[10]

---

[6] https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html

[7] https://www.kens5.com/article/news/crime/san-antonio-car-theft-crime-sapd-police-texas-tiktok/273-9f3bdcf0-51f6-4c01-8532-c6fffaa988ab

[8] https://www.ksat.com/news/local/2022/11/04/social-media-theft-challenge-targets-kia-and-hyundai-vehicles/

[9] *Id.*

[10] *Id.*

37.     Because car thieves are knowledgeable of the problem in the Defective Vehicles, customers who purchased them are more likely to experience damage to the vehicles from attempted thefts, regardless of any aftermarket theft-deterrent devices they might fit to the car.

38.     Defendants do not contest that they manufacture Defective Vehicles. A Kia spokesperson recently announced in a statement, for instance, "It is unfortunate that criminals are using social media to target vehicles without engine immobilizers in a coordinated effort," acknowledging the defect and shirking responsibility for the consequences of their defective manufacturing.[11]

39.     Despite acknowledging the widespread defect, Defendants have done little more than to offer to distribute wheel locks and to direct customers to purchase aftermarket theft-deterrents.  Hyundai has started offering a glass-break sensor security kit at certain locations, but it will cost customers $170 just for the kit before the cost of labor.[12]

40.     Customers who purchased a Defective Vehicle may face a number of other damaging costs.

41.     Purchasers have had their vehicles stolen, and have therefore been damaged in the entire amount of the purchase price.

---

[11] https://wghn.com/2022/10/04/its-too-little-way-too-late-car-owners-upset-with-kias-response-to-tiktok-challenge-thefts/

[12] https://www.forbes.com/wheels/news/kia-hyundai-car-thefts-security-kit/

42.     Purchasers lucky enough to retain possession—or recover possession after a theft—of their Defective Vehicles have been damaged by depressed resale value, due to widespread knowledge of the Defect.

43.     Purchasers face damaging costs related to their insurance coverage, including paying for rental or replacement cars while their Defective Vehicles are repaired.

44.     Finally, purchasers have been damaged by the theft of personal property stored in their Defective Vehicles, opportunistically taken during car thefts.

## II.    **Plaintiff's Stolen Kia Sportage**

45.     On December 22, 2020, Plaintiff purchased a brand-new 2021 Kia Sportage for some $26,000.

46.     He purchased the car because he believed it was reliable.

47.     He would not have purchased the car if he was aware that it was a Defective Vehicle.

48.     Plaintiff's Kia is a Defective Vehicle, with keyed ignition but lacking an engine immobilizer.

49.     On the evening of November 25, 2022, Plaintiff parked his Kia vehicle in the resident lot at his luxury apartment complex in San Antonio, Texas.

50.     The following morning, he found that his car had been stolen; the car was gone, and broken window glass sprinkled around the spot where it had been:



51.     Later that same morning, Plaintiff made a report with the San Antonio Police Department ("SAPD").

52.     The SAPD officer who took Plaintiff's report described that his volume of car-theft calls had gone up dramatically after the viral TikTok trend began.

53.     Fortunately for Plaintiff, early on the morning of November 30, 2022, he received a call from an SAPD patrol officer. The officer informed Plaintiff that he had located his car, abandoned in a retail center parking lot.

54.     While on the phone with Plaintiff at about 3:00 am, that SAPD officer went on to describe how the rampant theft of easily-stolen Hyundai and Kia vehicles (i.e., the Defective Vehicles) has been causing "havoc" in San Antonio.

55.    The damage to his car showed that the theft was carried out using the method that was popularized by social media and was due to the lack of an engine immobilizer:







56.     Plaintiff would not have purchased the 2021 Kia Sportage if he knew it was one of Defendants' Defective Vehicles.

57.     Because Plaintiff's car was substantially damaged during the theft, it will require significant repair.

58. Plaintiff's insurance will cover up to 30 days of rental car fees while his Kia is being repaired. Unfortunately, with parts to repair stolen and damaged Defective Vehicles in relatively short supply, the car may not be repaired within 30 days. Plaintiff may then be further damaged by needing to pay out of pocket to continue renting a car, so that he can have transportation while his defective Kia is being repaired.

59. A $120 set of AirPods and a $125 pair of shoes were stolen from his car.

60. The full extent of the harm to Plaintiff resulting from the theft is ongoing.

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action on behalf of himself and on behalf of the following class (the "Nationwide Class"), defined as follows:

> All persons or entities in the United States that leased, rented, or purchased any Defective Vehicle from 2011 to the present.

62. Plaintiff also brings this action on behalf of itself and on behalf of the following class (the "Texas Class"), defined as follows:

> All persons or entities in Texas that leased, rented, or purchased any Defective Vehicle from 2011 to the present.

63. Excluded from the proposed Classes are Defendants, their parents, subsidiaries, officers, directors, and any entity in which Defendants have a controlling interest.

64. Plaintiff reserves the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

65. The claims of all class members derive directly from a single course of conduct by the Defendants. Defendants have engaged and continue to engage in uniform and standardized conduct toward the class members.

66.     Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

67.     Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

68.     Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1–4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

69.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes many thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiff at this time, but can be ascertained from Defendants' records.

70.     **Ascertainability**. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendants in the usual course of business and within its control or Plaintiff and the class members themselves. Plaintiff anticipates providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

71.     **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions

predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) whether Defendants breached their implied warranties to Plaintiff and the Classes;

(b) whether Defendants breached their written warranties to Plaintiff and the Classes;

(c) whether Defendants violated the Magnuson-Moss Warranty Act;

(d) whether Defendants designed and manufactured Defective Vehicles with a defect;

(e) whether the Defective Vehicles complied with FMVSS 114;

(f) whether Defendants unjustly enriched themselves by selling the Defective Vehicles;

(g) whether Defendants violated the Texas Deceptive Trade Practices Act;

(h) the appropriate measure to assess damages to Plaintiff and Class Members; and

(i) whether the class is entitled to relief.

72. **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of the Plaintiff and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct of Defendants, resulting in the same injury to the Plaintiff and Classes. Plaintiff and all class members are similarly affected by Defendants' wrongful conduct and were damaged in the same way. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

73. **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiff is an adequate representative of the Classes because its interests do not conflict with the interests of the class members, and it has retained counsel competent and experienced in complex class action, business competition, and consumer litigation. Plaintiff and its counsel will fairly and adequately protect the interest of the class members.

74. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

75. **Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(2)). In the alternative, this action may properly be maintained as a class action, because:

(a)     the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendants; or

(b)     the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I – BREACH OF IMPLIED WARRANTY
#### (On Behalf of Plaintiff and the Classes)

76.     Plaintiff re-alleges and incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

77.     Defendants manufactured the Defective Vehicles and impliedly warranted to Plaintiff and the Classes that the Defective Vehicles were of merchantable quality and were usable for their ordinary and intended use.

78.     The implied warranty was assigned to Plaintiff and Class Members when they purchased the Defective Vehicles.

79.     Defendants failed to disclose to Plaintiff and Class Members that the vehicles lacked anti-theft measures that they would reasonably expect in a modern vehicle, including engine immobilizers.

80.     Had Plaintiff and Class Members known about the defective lack of anti-theft equipment—which causes the Defective Vehicles to be unreasonably easy to steal, and therefore less safe, less reliable, and far less valuable than warranted—they would have purchased them only for a significantly lower price, or may not have purchased them at all.

81.     Defendants are aware of their breach of implied warranty, but have not provided appropriate relief.

82.     As a result of Defendants' breach of implied warranty, and Defendants' failure to remedy them within a reasonable time, Plaintiff and Class Members have suffered damages.

## COUNT II – BREACH OF WRITTEN AND IMPLIED WARRANTIES UNDER THE MAGNUSON-MOSS WARRANTY ACT
### (On Behalf of Plaintiff and the Classes)

83.     Plaintiff re-alleges and incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

84.     Defendants' Defective Vehicles is a consumer product as defined by 15 U.S.C. § 2301(1).

85.     Plaintiff and the class members are consumers as defined in 15 U.S.C. § 2301(3).

86.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

87.     15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invokes the jurisdiction of this Court under CAFA.

88.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with written and implied warranties.

89.     Defendants provided Plaintiff and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6), including that the Defective Vehicles would operate as intended.

90.     Defendants also impliedly warranted to Plaintiff and the class members that the Defective Vehicles was free from defects, of merchantable quality, and fit for the ordinary purposes for which this equipment is intended to be used.

91.     Defendants have failed to remedy the Defective Vehicles within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties.

92.     As a result of Defendants' breaches of the written and implied warranties, and Defendants' failure to remedy them within a reasonable time, Plaintiff and the class members have suffered damages.

93.     In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and other Class members in connection with the commencement and prosecutions of this action.

94.     Furthermore, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendants' violation of their warranties.

## COUNT III – VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### (On Behalf of Plaintiff and the Texas Class)

95.     Plaintiff re-alleges and incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

96.     Defendants' actions and practices constitute unlawful, unfair and/or fraudulent business practices in violation of the DTPA, Texas Business and Commerce Code, § 17.41, *et seq*, which prohibits false, misleading or deceptive acts and practices in connection with a trade or business.

97.     Specifically, DTPA § 17.46(a) states that "[f]alse, misleading  or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

98.     Plaintiff and members of the Texas Class are "consumers" within the meaning of DTPA § 17.54(4) because they purchased Defendants' Defective Vehicles and suffered damages.

99.     Plaintiff and the Texas Class seek to recover damages from Defendants under DTPA §17.41 et seq because Defendants knowingly and intentionally breached their express and implied warranties, and engaged in false, misleading, or deceptive acts or practices as alleged herein, and in general by concealing or otherwise failing to disclose, reveal, or provide notice to customers, including Plaintiff, in Defendants' advertising, labeling or otherwise that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and  worth  less  than  they  should  be,  if  they  were  not  defective.  Defendants  also

represented that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly

100.    These representations were materially misleading and deceptive, and were a producing cause of economic damages to consumers, including Plaintiff and members of the Texas Class.

101.    Defendants acted knowingly and with conscious disregard of Plaintiff's rights, and Defendants wantonly and maliciously concealed the defects of the Defective Vehicles.

102.    Defendants have received notice of these issues by news articles, social media, and complaints against them. Defendants have even acknowledged these issues to the public.

## COUNT IV – STRICT LIABILITY, DESIGN DEFECT
### (On Behalf of Plaintiff and the Classes)

103.    Plaintiff re-alleges and incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

104.    Defendants designed, manufactured, and distributed the Defective Vehicles.

105.    Plaintiff and the class members purchased the Defective Vehicles.

106.    Defendants know or should have known that the Defective Vehicles contain a design defect: that they can be started and operated without a key. This makes them unreasonably dangerous and easy to steal, and therefore less safe, less reliable, and far less valuable than they would be if designed appropriately.

107.    Plaintiff and the class members have suffered economic injury as a direct result of the Defective Vehicles' design defect.

## COUNT V – NEGLIGENCE
### (On Behalf of Plaintiff and the Classes)

108.    Plaintiff re-alleges and incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

109.    Defendants know or should have known that the Defective Vehicles presented risks to purchasers, in that they are unreasonably easy to steal, and therefore less safe, less reliable, and far less valuable.

110.    Defendants had a duty to exercise due care in the design, manufacturing, and marketing of the Defective Vehicles.

111.    Defendants failed to warn Plaintiff and the class members of the risks associated with the Defective Vehicles.

## COUNT VI – UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Classes)

112.    Plaintiff re-alleges and incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

113.    Plaintiff and the class members would not have purchased the Defective Vehicles if they knew they lacked engine immobilizers and other defects, or at the very least would have paid less.

114.    Defendants have therefore been unjustly enriched at the expense of Plaintiff and the class members, and continue to be unjustly enriched as they are charged class members to fix the Defective Vehicles.

115.     Plaintiff and the class members are therefore entitled to disgorge all Defendants' profits, benefits, and other compensation Defendants obtained from the sale of these products, as well as the amounts they are charging class members to fix the Defective Vehicles.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the proposed Classes, pray for relief and judgment against Defendants as follows:

i.      certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Classes, and designating Plaintiff's counsel as Class Counsel;

ii.      awarding Plaintiff and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

iii.     granting Plaintiff and the Classes declaratory and equitable relief;

iv.     enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

v.      ordering Defendants to fix or replace the Defective Vehicles;

vi.     awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

vii.     awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

viii.    awarding pre-judgment and post-judgment interest; and

ix.     granting any other relief as this Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: December 2, 2022

/s/ Max Rodriguez
Max Rodriguez
Adam Pollock
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
Max@PollockCohen.com
Adam@PollockCohen.com

Raphael Janove (*pro hac vice forthcoming*)
**POLLOCK COHEN LLP**
1617 John F. Kennedy Blvd.
20th Floor
Philadelphia, PA 19103
(215) 667-8607
Rafi@PollockCohen.com

*Attorneys for Plaintiff and the
Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of December, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing only to myself.

I hereby certify that I have caused the document to be sent by electronic mail to the following non-CM/ECF counsel representing the defendants:

Peter J. Brennan
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484
*email:* pbrennan@jenner.com

*/s/ Max Rodriguez*
Max Rodriguez