## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| **In re:** Kia Hyundai Vehicle Theft | § | |
| Marketing, Sales Practices, and Products | § | MDL No. 3052 |
| Liability Litigation | § | |
|  | § | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)

Pursuant to Rule 7.1(f) of the Rules of Procedure of the United States Judicial Panel on

Multidistrict Litigation, Kia America, Inc. and Hyundai Motor America (together, "Defendants")

respectfully submit this brief in support of their motion to vacate CTO-5 as to *City of Seattle v.*

*Hyundai Motor America, Inc. et al.*, No. 2:23-cv-00098 (W.D. Wash.).

### INTRODUCTION

The 55 consumer actions currently pending in MDL 3052 (the "MDL Actions") are all

brought by individuals who allege they bought or leased Kia and/or Hyundai vehicles and contend

certain anti-theft technology should have been standard equipment. The cases assert private claims

under consumer protection laws and warranty theories, and seek damages primarily on the theory

that alleged susceptibility to theft rendered the vehicles worth less than the plaintiffs paid. The

vast majority of consumers in the purported classes have experienced no theft (or attempted theft),

and have vehicles that performed precisely as expected and warranted, and the cars' ignition

systems comply fully with comprehensive federal anti-theft and safety regulations. The factual

inquiries in these actions turn foremost on details about each consumer's purchase transaction—

what the consumer was promised or could reasonably expect, and the alleged diminished value of

the vehicles, which will require expert discovery and potentially survey evidence.

1

Seattle's public-nuisance lawsuit fundamentally differs from these private consumer claims. The City cannot and does not purport to sue on behalf of disappointed car buyers. Instead, Seattle asserts that Kia and Hyundai—not those who commit the thefts, or the social media outlets that host user content detailing how to commit those thefts—are responsible for a "public nuisance" in Seattle. The City alleges the thefts have resulted in increased government costs, which Hyundai and Kia should pay. That novel and unsupported theory fails as a matter of law and should not survive dispositive motions; and importantly for the instant motion, it raises legal and factual issues that are different in kind from the consumer claims that the MDL comprises. The City's complaint raises issues such as whether vehicle thefts were proximately caused by Defendants' conduct or by criminals spurred by social-media "challenges," the extent to which any rise in theft has actually and unreasonably interfered with shared public resources (*i.e.*, public rights), whether any increase in public expenditures has occurred such as increased Seattle Police Department hiring, or increased expenditures investigating alleged thefts, how the City's policing and prosecution policies have impacted auto theft, and how any alleged public nuisance arising from the design and manufacture of autos years ago, might be addressed through the primary remedy available to municipal plaintiffs in nuisance cases, abatement.

The stark factual differences between these cases strongly militates against transfer of *City of Seattle* to MDL 3052. Transfer is appropriate *only* where litigating common questions of fact would promote the just and efficient conduct of the actions. Here, few common fact questions exist, and the minimal benefits of MDL coordination would be vastly outweighed by the burdens of litigating disparate legal claims and factual inquiries in parallel. No efficiencies will result from shoehorning a municipal case that presents complex empirical questions about crime, public policy, and government spending into a MDL otherwise focused chiefly on car values and alleged

2

consumer fraud; doing so would *divert* judicial and party resources, potentially slowing resolution of both litigations.   The Panel should vacate CTO-5 in MDL 3052 as to *City of Seattle*.

## FACTUAL BACKGROUND

On December 13, 2022, the Panel created MDL No. 3052 in the Central District of California for suits by consumer plaintiffs who purchased or leased Kia and Hyundai branded vehicles that lack certain anti-theft technology those plaintiffs allege should have been standard. *See In re Kia Hyundai Vehicle Theft Litig.*, 2022 WL 17843100, at *1 (J.P.M.L. Dec. 13, 2022). The overwhelming majority of the MDL Actions are putative consumer class actions.[1]  They assert causes of action for consumer-protection violations, breach of warranty, design defect, failure to warn, and unjust enrichment.[2]  For example, the consumer plaintiffs' consumer protection claims allege that Kia and Hyundai made misrepresentations and omissions to plaintiffs about their vehicles' anti-theft technology that caused plaintiffs to overpay for them.[3]  And the consumer plaintiffs' negligence claims allege that Kia and Hyundai breached a duty to warn plaintiffs of the alleged defect, which likewise allegedly caused plaintiffs to overpay for their vehicles.[4]

The consumer plaintiffs seek economic damages—such as reimbursement related to diminution in car value, "the increase in insurance premiums they are [*sic*] or may face due to the design defect," or in the limited circumstances where applicable, vehicle theft—and an order

---

[1] Joint Preliminary Report, No. 8:22-ml-03052, Dkt. No. 40 at 5.
[2] *Id.*
[3] *See, e.g.*, *Slovak et al. v. Kia Am., Inc. et al.*, No. 3:22-cv-01432-JGC, Dkt. No. 3 ¶ 133 (N.D. Ohio Aug. 31, 2022).
[4] *See, e.g.*, *Beneman v. Kia Am., Inc. et al.*, No. 8:23-cv-00103-PX, Dkt. No. 1 ¶¶ 150-51 (D. Md. Jan. 23, 2023).

3

"enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles."[5]  Not a single plaintiff in the 55 MDL Actions asserts a public nuisance claim.[6]

In contrast to the MDL Actions, the City of Seattle's lawsuit, filed January 23, 2023 against Hyundai Motor America and Kia America, Inc., alleges only a claim for public nuisance.[7]  The City does not allege that it was caused to purchase or lease Kia or Hyundai vehicles by any alleged misrepresentation, nor does it seek recovery for any alleged resulting decrease in the value of its vehicles.  Instead, the City alleges that Kia's and Hyundai's sale of cars without immobilizers has become a public nuisance that "interfere[es] with the public right to public safety," the "public's right to safe and reasonable access to public thoroughfares," and "the right to a peaceful environment" in Seattle.[8]  It asserts that "thefts of Kias and Hyundais skyrocketed" in Seattle on the heels of social media "'how-to' videos detailing how simple it was to steal susceptible Kias and Hyundais,"[9] and that those criminals often went on to commit other crimes, "as thieves often engage in reckless driving, as well as other dangerous criminal conduct, including robbery and firearm thefts."[10]  The City sues to recover from Kia and Hyundai "actual and compensatory damages"—consisting of the costs associated with responding to the alleged increase in thefts in

---

[5] *See, e.g.*, *Brady v. Kia Am., Inc. et. al.*, No. 4:22-cv-00252-SMR-SBJ, Dkt. No. 1 ¶¶ 13, 49-51, 131, p. 32 (S.D. Iowa Aug. 4, 2022); *Day v. Kia Am., Inc.*, No. 5:22-cv-00202-KKC, Dkt. No. 1 ¶¶ 13, 49-51, 121, p. 32 (E.D. Ky. Aug. 4, 2022); *Moon v. Kia Am., Inc.*, No. 1:22-cv-07433-JPO, Dkt. No. 1 ¶¶ 14, 49-51, 66, 81, 91, p. 17 (S.D.N.Y. Aug. 30, 2022).
[6] *See, e.g.*, *Brady*, No. 4:22-cv-00252-SMR-SBJ, Dkt. No. 1 ¶¶ 40-50; *Day*, No. 5:22-cv-00202-KKC, Dkt. No. 1 ¶¶ 49-50; *Moon*, No. 1:22-cv-07433-PKC, Dkt. No. 1 ¶¶ 49-50.
[7] *City of Seattle v. Hyundai Motor Am., Inc. et al.*, No. 2:23-cv-00098-JLR, Dkt. 1 No. ¶¶ 65-84 (W.D. Wash. Jan. 23, 2023).
[8] *Id.* ¶¶ 74, 75, 80.
[9] *Id.* ¶ 19.
[10] *Id.* ¶ 27.

4

Seattle, "including additional policing efforts and public outreach and education" in the City.[11]  It also seeks an order of abatement and "equitable relief to fund automobile theft prevention."[12]

## ARGUMENT

Here, transfer is inappropriate because the *City of Seattle* and the MDL Actions are based on different claims, different theories, different facts, and different forms of relief.  Transferring *City of Seattle*'s public-nuisance claim to the MDL would divert MDL resources and require the transferee court to oversee unique and burdensome discovery that is distinct from, irrelevant to, and without any corresponding benefits to, the litigation currently in the MDL.  *See In re Epipen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, MDL No. 2785, Dkt. No. 111 at 3 (J.P.M.L. Dec. 5, 2017) (vacating CTO where different claims, theories of liability, and relief were at issue).

For example, transferring *City of Seattle* into MDL 3052 would introduce into the MDL numerous unique public nuisance questions of fact not present in any other MDL Actions, and which are local in nature to Seattle.  *See, e.g.*, *In re Accutane Prods. Liab. Litig.*, 560 F. Supp. 2d 1370, 1370 (J.P.M.L. 2008); *see also In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 655 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009) (vacating CTO where transfer "would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation"); *In re Prempro Prods. Liab. Litig.*, 549 F. Supp. 2d 1398, 1398 (J.P.M.L. 2008) (same).

As the transferee Court has explained, the rationale for the MDL rests on purportedly common "factual questions surrounding the marketing, sale and manufacture of these vehicles and defendants' knowledge of the alleged defect."[13]  *In re Kia*, 2022 WL 17843100, at *2.  The causes

---

[11] *Id.* ¶¶ 83, 90.
[12] *Id.* ¶¶ 87, 89.
[13] Defendants do not concede that the plaintiffs in the MDL Actions could meet the requirements of Federal Rule of Civil Procedure 23 to certify a class and establish that each class action

of action in the MDL Action, turn on the premise that Kia and Hyundai failed to warn consumers of the fact that they did not contain certain anti-theft technology.  The factual inquiries in these private consumer cases flow from those theories, requiring discovery into, for example:

- Whether Defendants made alleged misrepresentations;

- Whether any plaintiffs were exposed to those alleged misrepresentations and relied on them;

- The designs of the various models and model year vehicles at issue;

- Whether and when Kia and Hyundai became aware of an alleged defect in each of the models and model years at issue;

- The applicability of any written warranties covering the various models and model years at issue;

- Whether any vehicles are covered by warranties and are still within the warranty period;

- Whether plaintiffs owned or leased vehicles that actually included immobilizers;

- Whether plaintiffs' vehicles were allegedly stolen, the circumstances surrounding those thefts, and the varying alleged injuries from those individual thefts; and

- Whether and to what extent each vehicle's value has diminished by virtue of an alleged defect.[14]

Although the *City of Seattle* lawsuit also stems from alleged thefts of Hyundai and Kia vehicles not equipped with immobilizers, the similarities end there.  The City's public-nuisance

---

involves common questions that can be resolved through common proof and predominate over individual issues, or that injury or damages could be established on a classwide basis.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-46 (2011)*; Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

[14] *See* Joint Preliminary Report, No. 8:22-ml-03052, Dkt. No. 40 at 9-11.

6

theory is not based on any purported misrepresentations or reliance in purchasing decisions, and purports to assert societal and governmental harms, not individual economic loss.  Consistent with that theory, the factual issues the City purports to put at issue are by and large irrelevant to the MDL Actions:

- Whether, and if so, by how much, thefts of Kia and Hyundai vehicles in Seattle have risen;

- When any such increase in theft began;

- Whether any such rise in thefts has unreasonably interfered with a communal public resource or other interest qualifying as a "public right";

- Whether the City has actually increased or reallocated any funds and law enforcement resources to address vehicle thefts, and if so, whether the City intends to reduce funding for public safety and law enforcement if the alleged vehicle thefts decrease; and

- The propriety, feasibility, and requirements of any proposal by the City to abate the supposed nuisance.

Even the transferee Court, counsel for consumer plaintiffs, and the City itself agree that Seattle's case is an outlier.  MDL Actions counsel have already made clear that *City of Seattle* is "meaningfully distinct from the [MDL Actions] as it brings just one count for public nuisance and does not represent a class of consumers," so the "strategies are going to be different, the remedies are going to be different, and the claims are different."  Joint Preliminary Report, No. 8:22-ml-03052, Dkt. No. 40 at 3; February 7, 2023 MDL Hearing Transcript ("MDL Hearing Tr."), No.

8:22-ml-03052, Dkt. No. 51 at 11:24-25. [15]  MDL Actions counsel also knows that expert discovery will not overlap; the City's experts "are not going to be hired by the consumers" because the cases have "**completely different theories**, **completely different experts.**"  *See* MDL Hearing Tr., No. No. 8:22-ml-03052, Dkt. No. 51 at 15:21-25 (emphasis added).

The complex discovery that would be necessary were *City of Seattle* to proceed beyond dispositive motions—including significant discovery from government entities in Washington— would offer no benefits to the MDL Actions but only divert resources and attention from them. For example, the other MDL Actions have no need for discovery into Seattle's police staffing or funding, or the amount of time SPD spends investigating vehicle thefts.  Consequently, transferring this case "could significantly complicate the efficient management of this already complex litigation."  *In re Epipen*, MDL No. 2785, Dkt. No. 111 at 3.

Meanwhile, there are no corresponding benefits to transfer.  Because the cases have "completely different theories" (MDL Hearing Tr., No. 8:22-ml-03052, Dkt. No. 51 at 15:21-25), claims, and remedies, there is no risk of inconsistent rulings if *City of Seattle* continues in the Western District of Washington.  *See In re Epipen*, MDL No. 2785, Dkt. No. 111 at 3 (vacating CTO where "discovery and pretrial proceedings will differ extensively," offering "little risk of inconsistent pretrial rulings").  And to the extent overlapping discovery does arise over a discrete issue, such as vehicle design, "informal coordination of such discovery by the parties and the

---

[15] *See* MDL Hearing Tr., No. 8:22-ml-03052, Dkt. No. 51 at 9:15-18; 10:17-19 (Judge Selna noting that there are no other government entity cases in this consumer class MDL and the City seeks remedies beyond losses related to vehicle purchases—the only type of remedies the MDL Actions seek); *see also id.* at 10:9-10, 14:17-18 (City emphasizing that it is "seeking unique remedies" for its "unique cause[] of action" and that its claims are "quite different from the consumer claims"); City of Seattle's Response to Joint Preliminary Report, No. 8:22-ml-03052, Dkt. No. 43 at 3 (City emphasizing that the public nuisance "harms go far beyond the consumer losses at issue in private plaintiffs' claims").

involved courts is both practicable and preferable to transfer." *See In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, Dkt. No. 424 at 2 (J.P.M.L. Apr. 5, 2018) (citing *In re: Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) and Manual for Complex Litigation, Fourth, § 20.14 (2004)).   On such discrete issues, the parties could informally coordinate discovery, cross-notice depositions as needed, and even stipulate to the use of certain discovery in both the MDL Actions and *City of Seattle*.   But minor overlaps in discovery do not merit joining a unique case brought by a single government entity to the 55 consumer actions pending in the MDL.

The possibility that other government entities' public nuisance claims against Kia and Hyundai will be tagged for inclusion in the MDL does not warrant transferring *City of Seattle* now. So far, *City of Seattle* is one of only two public nuisance claims brought by a government entity that have been tagged, so inclusion among the consumer MDL Actions would not result in any efficiencies.[16]   *See In re Gap, Inc., COVID-19 Lease Payment Litig.*, 492 F. Supp. 3d 1345, 1347 (J.P.M.L. 2020) (denying centralization where Panel was "disinclined to take into account the mere possibility of future filings in our centralization calculus") (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013)).   If additional government entity cases that include common questions of fact are tagged, *City of Seattle* can be re-noticed as a potential tag-along in MDL 3052 and the Panel can decide

---

[16] The City of Columbus, Ohio filed a case on February 15, 2023, *City of Columbus, Ohio v. Kia Am., Inc. et al.*, No. 2:23-cv-00654 (S.D. Ohio), which also asserts a public nuisance claim on behalf of a single municipal entity.  That plaintiff has not filed a tag-along notice.  Defendants were served one business day ago, on February 17, 2023, and are evaluating whether a tag-along notice is appropriate under J.P.M.L. Rule 7.1(a).  If a tag-along notice is filed for the Columbus action, Defendants intend to oppose transfer of that action to the MDL.

9

the propriety of transfer then.  *See In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL 2873, Dkt. No. 22 at 3 (J.P.M.L. Aug. 3, 2022).

## CONCLUSION

For the foregoing reasons, the Panel should vacate CTO-5 as to *City of Seattle v. Hyundai Motor America, Inc. et al.*, No. 2:23-cv-00098 (W.D. Wash.).

Dated:  February 21, 2023

Respectfully submitted,

*/s/ Peter J. Brennan*
Peter J. Brennan
PBrennan@jenner.com
Michael T. Brody
MBrody@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
Telephone:     +1 312 222 9350
Facsimile:      +1 312 527 0484

Alice S. Kim
AKim@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:     +1 213 239 5100
Facsimile:      +1 213 239 5199

Steven G. Madison
stevemadison@quinnemanuel.com
Justin C. Griffin
justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA  90017-5003
Tel.:     (213) 443-3000
Fax:     (213) 443-3100

Alicia Cobb
aliciacobb@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.:     (206) 905-7000
Fax:     (206) 905-7100

*Counsel for Defendants Kia America, Inc.*
*and Hyundai Motor America*