BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re:** Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation | § § § § § § | MDL No. 3052 |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)**

Pursuant to Rule 6.1(d) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Kia America, Inc. and Hyundai Motor America, Inc. (together, "Defendants") respectfully submit this reply brief in support of their motion to vacate CTO-5 as to *City of Seattle v. Hyundai Motor America, Inc. et al.*, No. 2:23-cv-00098 (W.D. Wash.).

## INTRODUCTION

The City of Seattle ("City") offers generalities and conclusory assertions in its Opposition to Defendants' motion, but fails to explain why transfer is actually appropriate here. It is not, and this Court should vacate CTO-5 in MDL 3052 as to *City of Seattle*.

The City's sole claim against Defendants—creation of a public nuisance within the City—requires vastly different factual inquiries from the 56 consumer actions currently pending in MDL 3052, and from the two government entities cases recently filed in the Central District of California and transferred to Judge Selna as related cases. While all of the cases allege that Kia and/or Hyundai vehicles should have included certain anti-theft technology as standard equipment, that is where the similarities end. The City fails to explain, as it must, why this question is sufficiently complex to justify transfer. Nor does it explain why transfer should follow despite the myriad unique factual inquiries its public nuisance claim raises—which Defendants outlined in their opening brief. The City has no response to the undisputed facts that its claim is localized to the

1

geography of the City itself, including any increase in Seattle's car thefts, the City's response to those thefts in Seattle, whether Defendants' sale of cars proximately caused Seattle's crimes, the City's policing and prosecutorial decisions and related expenditures in Seattle, and how the City purports to abate an alleged nuisance in Seattle.[1]  None of these facts is at issue in the consumer cases.

The City also argues that transfer is warranted because two Ohio cities, Cleveland and Cincinnati, recently filed cases in the Central District of California that are now pending before Judge Selna as related cases.  But the City cites no authority for the proposition that two related cases warrant transfer of a third.  Nor can the City deny that the two Ohio cases will require different factual inquiries specific to Cleveland and Cincinnati, including whether thefts of Kia and Hyundai vehicles in Cleveland and Cincinnati rose, and when; whether those specific cities have increased or reallocated resources to address the issue; and whether Defendants' conduct proximately caused the crimes in those cities.  The two Ohio cases will involve inquiries from city-specific witnesses into city-specific records, policing practices, budgets, and theft trends from municipal offices and subdivisions in Cleveland and Cincinnati.  These issues, and the fact that those cases must apply the law of Ohio, not Washington, render the Ohio cases distinct from the *City of Seattle*.

The City's remaining arguments are equally unavailing.  The City asserts that transfer would promote efficiencies, identifying ten categories of purportedly overlapping discovery between the consumer actions and its case—all relating to the existence, scope, and Defendants' knowledge of an alleged "defect."  The existence of a defect is not an element of the City's public nuisance claim, however.  The City also argues that it is "readily evident" that efficiencies would

---

[1]  Notably, the City of Seattle chose to file the case in the Western District of Washington not the Central District of California.

2

result given that the two Ohio government entity cases are now before Judge Selna, but again fails to explain how. Finally, the City fails to explain why transfer is necessary for the convenience of the witnesses and parties—the majority of whom will be in the District where the alleged conduct supposedly occurred and where the case was filed, *not* the Central District of California. The City already suggested informal coordination on discrete discovery like cross-noticing depositions of corporate witnesses. This informal coordination among the parties may be appropriate and would be sufficient to promote judicial economy, and the City does not explain why anything more is needed given the nature of its claim. The Panel should grant Defendants' motion to vacate CTO-5.

## ARGUMENT

**I.     *City of Seattle* Does Not Share Sufficiently Complex Common Questions of Fact with Any MDL Actions.**

The City argues that transfer is appropriate because its case shares a "common factual core" with the cases in the MDL. Opp. at 9. This is not the applicable standard. Rather, the City must show that common questions between its case and the dozens of consumer actions in the MDL or the two governmental entities cases pending before Judge Selna as related cases are "sufficiently complex and/or numerous to justify" transfer. *In re AriZona Beverage Co. Prods. Mktg. & Sales Pracs. Litig.*, 609 F. Supp. 2d 1369 (Mem) (J.P.M.L. 2009) (denying centralization). The City fails to do so.

**A.     The City Fails to Establish Its Case Shares Sufficiently Complex Questions of Fact with the 56 MDL Consumer Actions.**

The City argues that its case shares a common question of fact with the consumer cases because they all involve the absense of immobilizers in certain Hyundai and Kia vehicles. Opp. at 9. But that is not enough. While it is true that complaints need not state identical claims to be transferred into an MDL, the City bears "a heavy burden to show that those common questions of

3

fact are sufficiently complex and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407." *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). It fails to meet this standard.

The City ignores the overwhelming differences Defendants identified between *City of Seattle* and the 56 consumer actions. *See* Mot. at 6–7. For example, the consumer actions share factual issues relating to the marketing, sale, and manufacture of Kia and Hyundai vehicles, the designs of the various models and model year vehicles at issue, any alleged misrepresentations relating to immobilizers, warranty coverage of the plaintiffs' vehicles, and whether and to what extent each vehicle's value diminished on account of an alleged defect. *City of Seattle* involves none of these issues. Rather, the City's sole claim for public nuisance presents distinct factual issues, including whether and when any rise in theft of Kia and Hyundai vehicles in Seattle began, whether the City has actually increased or reallocated resources to address the thefts in Seattle, and the propriety of any proposed abatement plan the City offers in Seattle. Indeed, in a recent filing the City's counsel identified a lengthy list of various discovery it proposes to take that does not overlap with discovery anticipated in the consumer actions in the MDL, a list which they explained was by no means exhaustive. Resp. to Joint Case Mgmt Statement, No. 8:22-ml-03052 (C.D. Cal.), Dkt. 62 at 9 (e.g., "Studies and research conducted or accessed by Defendants on the impacts of widespread vehicle thefts to GEs"; "Defendants' communications regarding widespread vehicle thefts experienced in GEs' communities"; "Defendants' communications with their dealer network regarding widespread vehicle thefts experienced in GEs' communities"). The factual differences between the consumer cases and *City of Seattle* are not mere window dressing as the City suggests, *see* Opp. at 9—they go to the very heart of the claims at issue. And the City does not dispute that its case is "meaningfully distinct from the [MDL Consumer Actions]"

because it will involve different strategies, remedies, claims, and "completely different experts." Joint Preliminary Report, No. 8:22-ml-03052, Dkt. 40 at 6; Feb. 7, 2023 Hearing Transcript, No. 8:22-ml-03052 (C.D. Cal.), Dkt. 51 at 11:24–25; 15:21–25. For all of these reasons, *City of Seattle* "raises distinctly different factual and legal questions from the core allegations at issue in" MDL 3052, and transfer should be denied. *See In re Chinese-Manufactured Prods. Liab. Litig.*, MDL No. 2047, Dkt. 150 (J.P.M.L. Dec. 2, 2009) (vacating CTO where an action "d[id] not share sufficient questions of fact with previously centralized actions").

Rather than address these critical factual differences—or attempt to explain why the sole fact that these cases involve the absence of immobilizers can justify transfer—the City spends pages in its opposition arguing that the Panel *can* consolidate cases brought by various government entities with those brought by consumers. Opp. at 6 ("Defendants argue that the distinct nature of governmental entity complaints renders transfer inappropriate."). But Defendants do not contend that it is *per se* inappropriate to consolidate cases brought by private citizens with governmental entity cases. Defendants' position is that the City's case does not merit transfer into MDL 3052 because of critical factual differences between that case and the MDL cases that the City ignores. The handful of cases the City cites do not say otherwise. Opp. at 7–9. In most of those cases, the MDL at issue had already included hundreds (and, in some cases, thousands) of governmental entities' actions.[2] And unlike here, those MDLs were primarily comprised of governmental entity actions. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, MDL 2804 (N.D. Ohio) (nearly 3,000 government subdivisions and municipalities out of roughly 3,500 cases total); *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*, MDL 2996 (N.D. Cal.) (hundreds of

---

[2] One notable exception is MDL 2774, which the City claims is an antitrust case that "involv[ed] legal claims asserted by government entities with cases brought by private citizens." Opp. at 9. But that MDL, *In re: FCA US LLC EcoDiesel Mktg., Sales Pracs.,& Prods. Liab. Litig.*, involves products liability actions brought by personal injury plaintiffs, not government entities.

5

government entity plaintiffs); *In re: JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL 2913 (N.D. Cal.) (thousands of public school districts; dozens of local municipality and county government entities). By contrast, there are only two government entity cases pending before Judge Selna (each of which contain numerous factual allegations and claims not at issue in the City's case, as discussed further below), and the 56 other cases in the MDL are consumer actions. The City cites no authority for the proposition that the presence of two governmental entity cases warrants transfer of a third into an MDL dominated by consumer cases.

> **B.** *City of Seattle* **Does Not Share Sufficiently Complex Questions of Fact with the Ohio Governmental Entity Cases.**

The City is also not correct that the filing of three other governmental entity cases supports transfer of its case to the MDL. Opp. at 10–11. First, as the City acknowledges, Defendants have opposed transfer of one of the cases—*City of Columbus, Ohio v. Kia America, Inc. et al.*, No. 2:23-cv-00654 (S.D. Ohio) ("*City of Columbus*").[3] That case is not currently part of the MDL.

Second, there are only two governmental entity cases currently before Judge Selna—*City of Cleveland v. Hyundai Motor America et al.*, No. 8:23-cv-00419 (C.D. Cal.) and *City of Cincinnati v. Hyundai Motor America et al.*, No. 2:23-cv-01750 (C.D. Cal.). The City does not explain why two related cases pending before Judge Selna warrants transfer of its case. In fact, several hours before the City filed its opposition to this motion, Judge Selna vacated all previous deadlines relating to governmental entity actions that were reflected in the February 9, 2023 MDL order the City attached as an exhibit to its opposition (No. 8:22-ml-03052 (C.D. Cal.), Dkt. 70), to allow the Panel to decide the issue of transfer of *City of Seattle* first. Moreover, the *City of Cleveland* and *City of Cincinnati* cases do not share sufficiently complex common factual issues

---

[3] Defendants are filing their motion to vacate CTO-6 as to *City of Columbus* on the same day they are filing this reply brief (March 20, 2023).

6

with *City of Seattle*.  The two Ohio governmental entity cases will involve factual inquiries unique to *those* two cities' public nuisance claims: whether any rise in theft of Kia and Hyundai vehicles in Cleveland and Cincinnati occurred, the manner in which those cities have responded, if at all, and whether Defendants' conduct proximately caused the crimes in those cities.  It will require examining city-specific records and witnesses from various municipal entities in Cleveland and Cincinnati.  None of that is relevant to *City of Seattle*.

*City of Cleveland* and *City of Cincinnati* will also involve application of Ohio law, not Washington law, and different claims from the City.  The City's suit is the lone Washington public nuisance claim against Defendants in the entire country.  Injecting Washington's public nuisance law on top of discovery predominantly focused on Seattle's unique factual circumstances would only further muddy the issues currently before Judge Selna.  The Panel should therefore deny transfer, because the factual and legal issues in *City of Seattle* would not streamline the litigation. *See In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008) (denying motion to transfer because actions involved "variances in insurance regulation and law in each state").

The City's counsel represents that other cities may file lawsuits "shortly," and that news reports from several months ago suggested other cities are mulling over the idea.  Opp. at 10–11.  This is of no moment.  The Panel has shown that it is "disinclined to take into account the mere possibility of future filings in our centralization calculus."  *See In re Gap, Inc., COVID-19 Lease Payment Litig.*, 492 F. Supp. 3d 1345, 1347 (J.P.M.L. 2020) (denying centralization) (quoting *In re Lipitor (Atorvastatin Calcium) Mktg. Sales Pracs. & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 376 (J.P.M.L. 2013)).  The Panel should similarly disregard the possibility of future filings in considering the appropriateness of transfer of the City's case.

## II. The City Fails to Explain How Transfer Would Promote Efficiencies Among the Various Actions.

The City is also wrong that transfer would promote the "just and efficient conduct of the actions." Opp. at 11. The City identifies ten categories of "core discovery topics" identified by the consumer plaintiffs and simply asserts—without any explanation—that "[e]ach of these topics is relevant to Seattle's case." *Id.* at 11–12. They are not. For example, the City lists "[t]he design, development, and manufacture of the Affected Vehicles' anti-theft and alarm systems, as well as alternative and competitive product designs"; "Defendants' submissions to NHTSA regarding any proposed rulemaking concerning FMVSS 114, engine immobilizers, or exemptions to parts marking requirements"; and "Defendants' decision to install engine immobilizers in any of their U.S. vehicles." *Id.* But *none of these* categories is relevant to the core issue in *City of Seattle*: whether Defendants have created a nuisance that "affects equally the rights of [the] entire community" of Seattle. *See* Washington Pattern Instruction 380.02 Public/Private Nuisance—Definition. The categories the City lists aim to determine the existence, scope, and Defendants' knowledge of a "defect," which is not an element of the City's public nuisance claim. As such, transfer is inappropriate for this reason, too. *See In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, Dkt. No. 424 at 1 (J.P.M.L. Apr. 5, 2018) (concluding transfer would "neither serve the convenience of the parties and witnesses, nor further the just and efficient conduct of the litigation").

Transfer is not needed to coordinate discrete discovery issues that may overlap between Seattle's case and the cases pending in the MDL. In a case like this one, "informal coordination of [ ] discovery by the parties and the involved courts is both practicable and preferable to transfer." *See id.* at 2. The parties can always share certain discovery requests and responses through stipulations under Federal Rule of Civil Procedure 29 and informal discovery procedures as

8

appropriate. *See* Manual for Complex Litigation § 11.423 (4th ed. 2004). For this reason, and contrary to the City's contention, the fact that Defendants listed general "theft data and statistics" and "police reports" as potential third-party discovery in the consumer cases does not justify transfer. *See* Opp. at 12. Moreover, depending on the jurisdictions selected as MDL consumer bellwether cases, any theft data in those cases may not intersect at all with data needed in *City of Seattle*.

The City further claims that "the efficiencies to be gained from coordinating and consolidating" public nuisance cases from different cities (all of which will involve discovery into each of those separate cities' various municipal departments, subdivisions, and records), are "readily evident." Opp. at 11. But it never identifies those efficiencies or explains how transfer achieves them. As noted above, these cases do not share complex common factual questions, and their clear differences mean that the transferee court would need to divert resources and attention from the cases already before it to address the issues presented by *City of Seattle*.

Lastly, the City contends that transfer would provide various benefits: avoiding conflicting rulings, preventing duplication of discovery, avoiding conflicting and duplicative pretrial conferences, advancing judicial economy, and allowing for division of workload among several attorneys. Opp at 12. Its explanation of why transfer would generate these benefits misses its mark. The City "anticipates" that Defendants may raise some of the same affirmative defenses in its case as they will in the consumer actions, so transfer could avoid potential conflicting rulings. *Id.* But any rulings on Defendants' potential defenses to the City's lone claim for public nuisance under Washington law would not conflict with rulings on their defenses to consumer action claims under different states' laws. And in any event, overlapping legal defenses would not erase the vast

9

factual differences between *City of Seattle* and the cases already in the MDL that militate against transfer.

### III.  Transfer Will Not Serve the Convenience of the Parties and Witnesses.

Nor will transfer serve the convenience of the parties and witnesses. The City fails to address the fact that, while the Panel coordinated the 56 consumer cases in the Central District of California where Defendants are headquartered, *City of Seattle* will primarily involve witnesses from the City's payroll and documents from its own records, across various municipal departments. As explained above, the City does not seek to prove that an alleged, undisclosed susceptibility to theft rendered Kia or Hyundai vehicles worth less than consumers paid for them. Rather, the City has put at issue discrete, localized factual matters that have no bearing on the MDL. And where there may be some overlap in the consumer actions and governmental entity cases—i.e., the depositions of Defendants' employees and corporate designees—the parties can issue cross-notices of deposition as needed.

### CONCLUSION

For the foregoing reasons, the Panel should vacate CTO-5 as to *City of Seattle v. Hyundai Motor America, Inc. et al.*, No. 2:23-cv-00098 (W.D. Wash.).

Dated:  March 20, 2023

Respectfully submitted,

<u>/s/ Peter J. Brennan</u>
Peter J. Brennan
PBrennan@jenner.com
Michael T. Brody
MBrody@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
Telephone:     +1 312 222 9350
Facsimile:     +1 312 527 0484

Alice S. Kim
AKim@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300r
Los Angeles, CA  90071-2246
Telephone:     +1 213 239 5100
Facsimile:     +1 213 239 5199

Steven G. Madison
stevemadison@quinnemanuel.com
Justin C. Griffin
justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA  90017-5003
Tel.:    (213) 443-3000
Fax:    (213) 443-3100

Alicia Cobb
aliciacobb@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.:    (206) 905-7000
Fax:    (206) 905-7100

*Counsel for Defendants Kia America, Inc. and Hyundai Motor America, Inc.*