BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re:** Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation | § § § § § § | MDL No. 3052 |

BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-6)

Pursuant to Rule 7.1(f) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Kia America, Inc. and Hyundai Motor America (together, "Defendants") respectfully submit this brief in support of their motion to vacate CTO-6 as to *City of Columbus, Ohio v. Kia America, Inc. et al.*, No. 2:23-cv-00654-SDM-EPD (S.D. Ohio) ("*City of Columbus*").

## INTRODUCTION

Nearly all of the actions currently pending in MDL No. 3052 (the "MDL Actions") are brought by individual consumers who allege that they bought or leased Kia and/or Hyundai vehicles without certain anti-theft technology they claim should have been standard equipment, and that Kia and Hyundai failed to disclose these facts to them (the "MDL Consumer Actions"). The MDL Consumer Actions assert private claims under consumer-protection laws and warranty theories, and seek damages primarily on the theory that alleged susceptibility to theft rendered the vehicles less valuable than what plaintiffs paid. The vast majority of consumers in the purported classes have experienced no theft (or attempted theft) and have vehicles that performed precisely as expected and warranted; their cars' ignition systems comply fully with comprehensive federal anti-theft and safety regulations. The factual inquiries in these actions turn foremost on details about each consumer's purchase transaction—what the consumer was promised or could

1

reasonably expect, and the alleged diminished value of the vehicles—which will require expert discovery and potentially survey evidence not applicable or helpful in the *City of Columbus* matter.

In addition to the MDL Consumer Actions, two governmental entities—the cities of Cleveland and Cincinnati—recently filed suit against Kia and Hyundai in the Central District of California (the "*Cleveland* and *Cincinnati* actions"), where Judge James V. Selna oversees MDL No. 3052.[1] Those actions have been transferred to Judge Selna as related cases. The *Cleveland* and *Cincinnati* actions allege that the absence of anti-theft immobilizers in Kia and Hyundai cars has led to a "public nuisance" of car theft in the plaintiff cities, causing those cities to suffer damages in the form of governmental expenditures to address the alleged nuisance in Cleveland and Cincinnati, and decreased tax revenues attributable to declines in property values in each of those cities.

Although not currently part of the MDL, the City of Seattle, on January 23, 2023, also filed a public nuisance lawsuit against the Defendants (the "*Seattle* action").[2] While the Panel conditionally transferred the *Seattle* action to Judge Selna, Defendants have moved to vacate that transfer.

The City of Columbus's (the "City") lawsuit fundamentally differs from the MDL Consumer Actions that dominate MDL No. 3052, as well as from the *Cincinnati* and *Cleveland* actions and the *Seattle* action. Unlike the individual, consumer plaintiffs in the MDL Consumer Actions, the City does not purport to sue on behalf of disappointed car buyers. Instead, the City asserts that Kia and Hyundai, not those who commit the thefts, or the social-media platforms' publication of videos demonstrating how to commit those thefts, (1) are responsible for creating

---

[1] *City of Cleveland v. Hyundai Motor Am.*, No. 8:23-cv-00419, Dkt. Nos. 1, 22 (C.D. Cal. Mar. 13, 2023); *City of Cincinnati v. Hyundai Motor Am.*, No. 2:23-cv-01750, Dkt. Nos. 1, 20 (C.D. Cal. Mar. 13, 2023).
[2] *City of Seattle v. Hyundai Motor America, Inc.*, No. 2:23-cv-00098, Dkt. No. 1, (W.D. Wash. Jan. 23, 2023).

and maintaining a "secondary market of unsafe and stolen vehicles," which has caused a public nuisance in Columbus; and (2) failed to exercise reasonable care to prevent this secondary market in Columbus. The City also alleges that this purported public nuisance has resulted in increased government costs in Columbus, which Hyundai and Kia should pay.

The City's novel and unsupported theory raises legal and factual issues that are different in kind from those raised by the MDL Consumer Actions. For example, the City's complaint raises issues such as whether vehicle thefts in Columbus were proximately caused by Defendants' conduct or by criminals spurred by social-media "challenges"; the extent to which any rise in theft in Columbus has actually and unreasonably interfered with any "public right" or created a "secondary market of unsafe and stolen vehicles" in the City; whether any increase in public expenditures has occurred in Columbus, such as increased Columbus Police Department or Emergency Services Bureau hiring, or increased expenditures investigating alleged thefts; and how the City's policing and prosecution policies have impacted auto theft. And while the *Cleveland* and *Cincinnati* actions (and *Seattle* action) are superficially more similar to the City's lawsuit because they also generally assert public nuisance theories,[3] the factual issues are largely different: a rise in thefts or government expenditures in Cleveland or Seattle, for instance, does not establish a similar rise in Columbus, much less demonstrate that any rise was attributable to the actions of Kia or Hyundai.

These stark factual differences strongly militate against transfer of *City of Columbus* to MDL No. 3052. Transfer is appropriate *only* where litigating common questions of fact would

---

[3] As discussed herein, while the City of Cleveland and City of Cincinnati also assert public nuisance and related negligence claims, the basis for all of the City of Columbus's claims is different than that of the *Cleveland* and *Cincinnati* actions (and the *Seattle* action), *i.e.*, that the Defendants created a "secondary market of unsafe and stolen vehicles." *See infra* at 12–13. And, the *Seattle* action is based on Washington public nuisance law, not Ohio law or Columbus city codes, further distinguishing it and *City of Columbus*.

3

promote the just and efficient conduct of the actions. Here, few common fact questions exist, and the minimal benefits of MDL coordination would be vastly outweighed by the burdens of litigating disparate legal claims and factual inquiries in parallel. No efficiencies will result from shoehorning a case that presents complex empirical questions about purported secondary markets, crime and vehicle theft rates, public policy, and government spending into an MDL focused chiefly on car values and alleged consumer fraud. Nor are there substantial efficiencies to be gained from aggregating *City of Columbus* with the *Cleveland* and *Cincinnati* actions (and/or the *Seattle* action), each of which relies upon allegations specific and unique to the plaintiff jurisdictions (*e.g.*, crime rates, vehicle thefts, and government spending *in each of those separate jurisdictions*), and seeks different remedies. Doing so would *divert* judicial and party resources, potentially slowing resolution of both litigations. Accordingly, the Panel should vacate CTO-6 in MDL No. 3052 as to *City of Columbus*.

## FACTUAL BACKGROUND

### A.   MDL Consumer Actions

On December 13, 2022, the Panel created MDL No. 3052 in the Central District of California for suits by consumer plaintiffs who purchased or leased Kia and Hyundai branded vehicles that lack certain anti-theft technology those plaintiffs allege should have been standard. *See In re Kia Hyundai Vehicle Theft Litig.*, 2022 WL 17843100, at *1 (J.P.M.L. Dec. 13, 2022). The overwhelming majority of the actions pending in the MDL are putative consumer class actions.[4] They assert causes of action for consumer-protection violations, breach of warranty, design defect, failure to warn, and unjust enrichment.[5] For example, the consumer plaintiffs' consumer-protection claims allege that Kia and Hyundai made misrepresentations and omissions

---

[4] Joint Preliminary Report, No. 8:22-ml-03052 (C.D. Cal.), Dkt. No. 40 at 8.
[5] *Id*.

4

to plaintiffs about their vehicles' anti-theft technology that caused plaintiffs to overpay for their vehicles.[6] And the consumer plaintiffs' negligence claims allege that Kia and Hyundai breached a duty to warn plaintiffs of the alleged defect, which likewise allegedly caused plaintiffs to overpay for their vehicles.[7]

The consumer plaintiffs seek economic damages—such as reimbursement related to diminution in car value, "the increase in insurance premiums [they] may face due to the design defect," or in the limited circumstances where applicable, vehicle theft—and an order "enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles."[8] Not a single plaintiff in the MDL Consumer Actions asserts a public nuisance claim.[9]

### B. The *Cleveland* and *Cincinnati* Actions

In addition to the MDL Consumer Actions, two governmental entities—the cities of Cleveland and Cincinnati, Ohio—recently filed suit against Kia and Hyundai in the Central District of California.[10] Their lawsuits allege that the absence of anti-theft immobilizers in Kia and Hyundai cars led to a "public nuisance" of car theft in Cleveland, and in Cincinnati, respectively, and breached a duty of care owed to each of those plaintiff cities.[11] They also allege that this nuisance caused damages in the form of (1) increased governmental spending in each of Cleveland and Cincinnati, respectively, including but not limited to "police, emergency, health, prosecutions,

---

[6] *See, e.g.*, *Slovak v. Kia Am., Inc.*, No. 3:22-cv-01432, Dkt. No. 3 ¶¶ 133–34 (N.D. Ohio Aug. 31, 2022).
[7] *See, e.g.*, *Beneman v. Kia Am., Inc.*, No. 8:23-cv-00103, Dkt. No. 1 ¶¶ 150–51 (D. Md. Jan. 13, 2023).
[8] *See, e.g.*, *Brady v. Kia Am., Inc.*, No. 4:22-cv-00252, Dkt. No. 1 ¶¶ 13, 49–51, 131, p. 32 (S.D. Iowa Aug. 4, 2022); *Day v. Kia Am., Inc.*, No. 5:22-cv-00202, Dkt. No. 1 ¶¶ 13, 49–51, 121, p. 25 (E.D. Ky. Aug. 4, 2022); *Moon v. Kia Am., Inc.*, No. 1:22-cv-07433, Dkt. No. 1 ¶¶ 15, 49–51, 66, 81, 91, p. 17 (S.D.N.Y. Aug. 30, 2022).
[9] *See, e.g.*, *Brady*, No. 4:22-cv-00252, Dkt. No. 1 ¶¶ 41–50; *Day*, No. 5:22-cv-00202, Dkt. No. 1 ¶¶ 49–50; *Moon*, No. 1:22-cv-07433, Dkt. No. 1 ¶¶ 49–50.
[10] *City of Cleveland v. Hyundai Motor Am.*, No. 8:23-cv-00419, Dkt. No. 1 (C.D. Cal. Mar. 7, 2023) ("*Cleveland* Complaint"); *City of Cincinnati v. Hyundai Motor Am.*, No. 2:23-cv-01750, Dkt. No. 1 (C.D. Cal. Mar. 8, 2023) ("*Cincinnati* Complaint").
[11] *Cleveland* Complaint, ¶ 59; *Cincinnati* Complaint, ¶ 57.

corrections, youth rehabilitative services, and other services" to address the supposed nuisance; and (2) decreased tax revenues in each of those cities attributable to declines in property values in each city.[12] The City of Cleveland and City of Cincinnati also claim that their cases "do[] not concern a discrete event or discrete emergency of the sort a political subdivision would reasonably expect to occur and is not part of the normal and expected costs of a local government's existence."[13] And, each claims to have "incurred expenditures for special programs over and above its ordinary public services."[14] Both cities seek abatement, compensation for economic loss, and injunctive relief.[15]

On March 13, 2023, the *Cleveland* and *Cincinnati* actions were transferred to Judge Selna as related cases.

### C. The *Seattle* Action[16]

The *Seattle* action alleges that Defendants' failure to install immobilizers on their vehicles between 2011 and 2021 caused a public nuisance that "interfer[es] with the public right to public safety"; the "public's right to safe and reasonable access to public thoroughfares"; and the "right to a peaceful environment" in Seattle.[17] It also asserts that thefts in Seattle increased on the heels of social media "'how-to' videos detailing how simple it was to steal susceptible Kias and Hyundais,"[18] and that those criminals often went on to commit other crimes, "as thieves often engage in reckless driving, as well as other dangerous criminal conduct, including robbery and

---

[12] *Cleveland* Complaint, ¶¶ 86–87, 120, 124; *Cincinnati* Complaint ¶¶ 84–85, 102, 116, 120.
[13] *Cleveland* Complaint, ¶¶ 94, 123; *Cincinnati* Complaint, ¶¶ 91, 119.
[14] *Cleveland* Complaint, ¶¶ 94, 123; *Cincinnati* Complaint, ¶¶ 91, 119.
[15] *Cleveland* Complaint, ¶¶ 130–38; *Cincinnati* Complaint, ¶¶ 126–36.
[16] As discussed *supra* page 2, the *Seattle* action is not currently part of the MDL; therefore, the Panel should not consider it in connection with this Motion. But, in any event, the distinguishing features between the *Seattle* action and *City of Columbus* weigh in favoring of vacating CTO-6.
[17] *City of Seattle v. Hyundai Motor America, Inc.,* No. 2:23-cv-00098, Dkt. No. 1, ¶¶ 6, 74–75, 79–80.
[18] *Id.* ¶ 19.

6

firearm thefts."[19]  The City of Seattle seeks "actual and compensatory damages," consisting of the costs associated with responding to the alleged increase in thefts in Seattle, "including additional policing efforts and public outreach and education" in Seattle.[20]  It also seeks an order of abatement and "equitable relief to fund automobile theft prevention."[21]

### D. The *City of Columbus* Lawsuit

The City of Columbus's lawsuit, filed February 15, 2023 against Kia America, Inc. and Hyundai Motor America, alleges claims for public nuisance and negligence.[22]  The City does not allege that it was duped into purchasing or leasing Kia or Hyundai vehicles because of any alleged misrepresentation, nor does it seek recovery for any alleged resulting decrease in the value of its vehicles, as is at issue in the MDL Consumer Actions.  Instead, the City alleges that Kia's and Hyundai's sale of cars without immobilizers has become a public nuisance that "interfere[s] with the rights of common Columbus residents, including the rights to public health, welfare, and safety."[23]  The City defines the "public nuisance" as the creation and maintenance of "the conditions necessary for a large secondary market of unsafe and stolen cars."[24]  The City further asserts that thefts have increased in Columbus on the heels of the "viral spread" on social media of "the know-how to exploit the vehicles' lack of security," and that those criminals often used stolen cars to "ram[] into buildings to gain entry and commit further criminal acts."[25]  All of the City's causes of action—whether sounding in public nuisance or negligence—seek to recover from

---

[19] *Id.* ¶ 27.
[20] *Id.* ¶¶ 83, 90.
[21] *Id.* ¶¶ 87, 89.
[22] *City of Columbus v. Kia Am., Inc.*, No. 2:23-cv-00654, Dkt. No. 1 ¶¶ 89–120 (S.D. Ohio Feb. 15, 2023) ("Compl."). Four of the City's five causes of action sound in public nuisance: "absolute public nuisance," "qualified public nuisance," "statutory public nuisance" premised on alleged violations of Columbus's City Codes, and civil liability for alleged criminal public nuisance under the City Codes.
[23] *Id.* ¶¶ 90, 96.
[24] *Id.* ¶¶ 91, 93–94, 97, 101–02, 112.
[25] *Id.* ¶ 69, 81.

7

Kia and Hyundai the costs associated with responding to the alleged increase in thefts in Columbus, "including substantial costs for law enforcement, prosecution, and emergency medical services" as well as "documentation, investigation, vehicle recovery, and numerous other related expenses" in Columbus.[26] The City also seeks an order of abatement and "injunctive and equitable relief to enjoin the further sale of unsafe vehicles and enforce corrective action to recall, repair, or replace the unsafe vehicles."[27]

## ARGUMENT

Here, transfer is inappropriate because *City of Columbus* and the MDL Actions are based on fundamentally different facts. *City of Columbus* has little in common with the MDL Consumer Actions that make up the vast majority of MDL No. 3052, as it asserts different claims, raises different theories, and requests different forms of relief. And while the *Cleveland* and *Cincinnati* actions (as well as the *Seattle* action, which is not currently part of the MDL) are superficially more similar, they too largely involve different facts from those in *City of Columbus*—facts specific to those disparate jurisdictions—and seek different types of relief, and any minimal factual overlap among the government cases is greatly outweighed by issues specific to each plaintiff's jurisdiction. Transferring *City of Columbus* to the MDL would divert MDL resources and require the transferee court to oversee unique and burdensome discovery that is distinct from, irrelevant to, and without any corresponding benefits to, the litigation currently in the MDL. *In re AriZona Beverage Co. Prods. Mktg. & Sales Pracs. Litig.*, 609 F. Supp. 2d 1369 (Mem) (J.P.M.L. 2009) (denying centralization of three actions where any common factual questions were not "sufficiently complex and/or numerous to justify" transfer).

---

[26] *Id.* ¶¶ 25, 73.
[27] *Id.* p. 21.

8

In addition, transferring *City of Columbus* into MDL No. 3052 would inject into the MDL numerous unique public nuisance questions of fact not present in the *Cleveland* or *Cincinnati* actions (or the *Seattle* action), and which are local in nature to Columbus. *In re Gap, Inc., COVID-19 Lease Payment Litig.*, 492 F. Supp. 3d 1345, 1346 (JPML 2020) ("centralization is not necessary or appropriate" because any overlapping of factual questions and discovery would "be limited and overshadowed by the many individual questions in each action relating to the unique properties, leases, and negotiating parties at issue"); *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, Dkt. No. 424 at 1–2 (JPML Apr. 5, 2018).

The MDL Consumer Actions, which make up the vast majority of the MDL, have little factual overlap with Columbus's claims. As the transferee court has explained, the rationale for the MDL rests on purportedly common "factual questions surrounding the marketing, sale and manufacture of these vehicles and defendants' knowledge of the alleged defect."[28] *In re Kia*, 2022 WL 17843100, at *1. The causes of action in the MDL Consumer Actions turn on the premise that Kia and Hyundai failed to warn consumers of the fact that their vehicles did not come equipped with certain anti-theft technology. The factual inquiries in these private consumer cases flow from those theories, requiring discovery into, for example:

- Whether Defendants made alleged misrepresentations;
- Whether any plaintiffs were exposed to those alleged misrepresentations and relied on them;
- The designs of the various models and model year vehicles at issue;

---

[28] Defendants do not concede that the plaintiffs in the MDL Consumer Actions could meet the requirements of Federal Rule of Civil Procedure 23 to certify a class and establish that each class action involves common questions that can be resolved through common proof and predominate over individual issues, or that injury or damages could be established on a classwide basis. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345–46 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

9

- Whether and when Kia and Hyundai became aware of an alleged defect in each of the models and model years at issue;

- The applicability of any written warranties covering the various models and model years at issue;

- Whether any vehicles are covered by warranties and are still within the warranty period;

- Whether plaintiffs owned or leased vehicles that actually included immobilizers;

- Whether plaintiffs' vehicles were allegedly stolen, the circumstances surrounding those thefts, and the varying alleged injuries from those individual thefts; and

- Whether and to what extent each vehicle's value has diminished by virtue of an alleged defect.[29]

Although *City of Columbus* also stems from the alleged susceptibility to theft of Hyundai and Kia vehicles not equipped with immobilizers, the similarities end there. The City's public nuisance and negligence theories are not based on any purported misrepresentations or reliance in purchasing decisions. Rather, they purport to assert societal and governmental harms, not individual economic loss. Consistent with that theory, the factual issues the City purports to put at issue are by and large irrelevant to the MDL Consumer Actions:

- Whether, and if so, by how much, thefts of Kia and Hyundai vehicles in Columbus have risen;

- When any such increase in theft began in Columbus;

- Whether any such rise in thefts has unreasonably interfered with a "public right" in Columbus;

---

[29] *See* Joint Preliminary Report, No. 8:22-ml-03052 (C.D. Cal.), Dkt. No. 40 at 13–14.

- Whether the increase in thefts resulted in a "large secondary market of unsafe and stolen vehicles" in Columbus;

- Whether the City has actually increased or reallocated any funds and law-enforcement resources to address vehicle thefts, and if so, whether the City intends to reduce funding for public safety and law enforcement if the alleged vehicle thefts decrease;

- Whether Columbus has suffered any property damage as a result of the alleged increase in thefts; and

- The propriety, feasibility, and requirements of any proposal by the City to abate the supposed nuisance in Columbus.

Even the transferee Court, counsel for consumer plaintiffs, and counsel for Seattle have agreed that municipal governments' claims are outliers. MDL Consumer Actions counsel have already made clear that public nuisance claims brought by governmental entities are "meaningfully distinct" from the MDL Consumer Actions, which seek to recover diminished-value damages on behalf of classes of consumers. Joint Preliminary Report, No. 8:22-ml-03052 (C.D. Cal.), Dkt. No. 40 at 6. Consequently, the "strategies are going to be different, the remedies are going to be different, and the claims are different." February 7, 2023 MDL Hearing Transcript ("MDL Hearing Tr."), No. 8:22-ml-03052, Dkt. No. 51 at 11:24-25.[30] MDL Consumer Actions counsel also knows that expert discovery will not overlap; the experts required to support governmental

---

[30] *See also* MDL Hearing Tr., No. 8:22-ml-03052, Dkt. No. 51 at 9:15-18; 10:17-19 (Judge Selna noting that the governmental-entity plaintiffs seek remedies beyond losses related to vehicle purchases—the only type of remedies the MDL Consumer Actions seek); *id.* at 10:9-10, 14:17-19 (counsel for the City of Seattle emphasizing that they are "seeking unique remedies" for their "unique causes of action" and that their claims are "quite different from the consumer claims"); City of Seattle's Response to Joint Preliminary Report, No. 8:22-ml-03052, Dkt. No. 43 at 3 (emphasizing that the public nuisance "harms go far beyond the consumer losses at issue in private plaintiffs' claims").

11

plaintiffs' broad claims under public nuisance and related theories "are not going to be hired by the consumers" because the cases have "**completely different theories**, **completely different experts**." *See* MDL Hearing Tr., No. No. 8:22-ml-03052, Dkt. No. 51 at 15:21-25 (emphasis added).

Similarly, despite superficial similarities, the City's lawsuit raises largely different factual issues from those in the *Cleveland* and *Cincinnati* actions (and the *Seattle* action). Specifically, the City alleges a spike in theft of Kia and Hyundai vehicles in *Columbus*, a "secondary market of unsafe and stolen vehicles" in *Columbus*, increased government spending by *Columbus*, and an injury to the public rights of the residents of *Columbus*. Likewise, the *Cleveland* and *Cincinnati* actions (and the *Seattle* action) allege a crime wave, increased government spending, and public injury in *Cleveland*, *Cincinnati*, and *Seattle*. Discovery into the plaintiffs' theories will focus heavily on facts specific to each locality. And whatever minimal factual overlap exists among these few governmental cases does not outweigh the obvious differences. *See, e.g.*, *In re AriZona Beverage Co.*, 609 F. Supp. 2d at 1369 (declining to centralize three actions where common factual questions were not "sufficiently complex and/or numerous to justify" transfer); *In re: Tyson Foods, Inc., Meat Processing Facilities Fair Lab. Standards Act (FLSA) Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (same).

The complex discovery that would be necessary were *City of Columbus* to proceed beyond dispositive motions—including significant discovery from the City—would offer no benefits to the MDL Consumer Actions, the *Cleveland* and *Cincinnati* actions, or the *Seattle* action, but only divert resources and attention from them. For example, they have no need for discovery into the City of Columbus's allegations regarding (1) a "secondary market of unsafe and stolen vehicles," (2) the City's police staffing or funding, or (3) the amount of time the Columbus Police Department

spends investigating vehicle thefts. Consequently, transferring this case "could significantly complicate the efficient management of this already complex litigation." *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, MDL No. 2785, Dkt. No. 111 at 3 (J.P.M.L. Dec. 5, 2017).

Meanwhile, there are no corresponding benefits to transfer. To the extent overlapping discovery does arise over a discrete issue, such as vehicle design, "informal coordination of such discovery by the parties and the involved courts is both practicable and preferable to transfer." *See In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, Dkt. No. 424 at 2. On such discrete issues, the parties could informally coordinate discovery, cross-notice depositions as needed, and even stipulate to the use of certain discovery in both the MDL Actions and *City of Columbus*. But minor overlaps in discovery do not merit joining a case brought by a government entity—asserting "completely different theories" to those asserted by consumers—to an MDL dominated by consumer actions. And while the *Cleveland* and *Cincinnati* actions raise legally similar but factually distinct theories, the above-discussed "alternatives to transfer" are more than sufficient to "minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings," particularly given the small number of governmental actions. *See, e.g.*, *In re AriZona Beverage Co.*, 609 F. Supp. 2d at 1369 (finding "[a]lternatives to transfer" sufficient and denying centralization of three actions); *In re: Tyson Foods, Inc.*, 581 F. Supp. 2d at 1375 (same). Nor does the possibility of additional governmental actions (e.g., the *Seattle* action) affect the analysis, because the Panel generally does not "take into account the mere possibility of future filings in our centralization calculus." *See In re Gap, Inc., COVID-19 Lease Payment Litig.*, 492 F. Supp. 3d at 1347 (denying centralization) (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013)).

## CONCLUSION

For the foregoing reasons, the Panel should vacate CTO-6 as to *City of Columbus v. Kia America, Inc. et al.*, No. 2:23-cv-00654-SDM-EPD (S.D. Ohio).

Dated:  March 20, 2023

Respectfully submitted,

<u>/s/ Steven G. Madison</u>
Steven G. Madison
stevemadison@quinnemanuel.com
Justin C. Griffin
justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA  90017-5003
Tel.:    (213) 443-3000
Fax:    (213) 443-3100

Alicia Cobb
aliciacobb@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.:    (206) 905-7000
Fax:    (206) 905-7100

Peter J. Brennan
PBrennan@jenner.com
Michael T. Brody
MBrody@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
Telephone:     +1 312 222 9350
Facsimile:      +1 312 527 0484

Alice S. Kim
AKim@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:     +1 213 239 5100
Facsimile:      +1 213 239 5199

*Counsel for Defendants Kia America, Inc. and Hyundai Motor America*

15