**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | § | |
| **In re**: Kia Hyundai Vehicle Theft | § | MDL No. 3052 |
| Marketing, Sales Practices, | § | |
| And Products Liability Litigation | § | |
| | § | |

**CITY OF COLUMBUS'S OPPOSITION TO MOTION TO VACATE CONDITIONAL
TRANSFER ORDER
[Related Doc. 151]**

This MDL "involves allegations that certain Hyundai and Kia vehicles are unduly susceptible to theft." *In re: Kia Hyundai Vehicle Theft Litigation*, MDL No. 3052, JPML [Doc. 94], 2022 WL 17843100, *1 (J.P.M.L. Dec. 13, 2022). The lawsuit filed by the City of Columbus addresses the same defect that affects the same type of vehicles made by the same Defendants. To prove its case, Columbus will seek the same documents sought by the other plaintiffs in the MDL and will depose the same witnesses. To defend against Columbus's claims, the Defendants will make the same arguments they will make in defending the cases in the MDL—the vehicles "ignition systems comply fully with comprehensive federal anti-theft and safety regulations[,]" and the plaintiffs' damages are really caused "by criminals spurred by social-media 'challenges[.]' " *Brief In Support Of Defendants' Motion To Vacate Conditional Transfer Order* at 1 & 3 [Doc. 151-1].

Columbus's case is an ideal candidate for transfer. Since the overlap between the MDL and Columbus's case is so substantial, the transfer of Columbus's case will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary. Columbus's lawsuit, much like the lawsuits that have already been consolidated, should be before Judge Selna, who is "a skilled jurist" that is "well-versed in the

1

nuances of complex and multidistrict automotive litigation…." *In re: Kia Hyundai Vehicle Theft Litigation*, 2022 WL 17843100 at *2. [1]

By and large, the Defendants' brief ignores the relevant standard found in 28 U.S.C. § 1407. The Defendants instead focus on a handful of trivial distinctions between the various cases. But the common issue that is at the core of the MDL and Columbus's case—whether the Defendants manufactured and sold vehicles without adequate anti-theft protection—dwarfs all other issues. This, by itself, justifies the denial of the Defendants' motion.

The Defendants focus on the fact that most of the cases currently pending in the MDL were filed by individuals. Yet courts routinely consolidate cases that are filed by consumers and governmental entities. This makes sense given the efficiencies that can be achieved through the consolidation of cases that arise from the same core operative facts. And here, there should be no dispute that the Defendants' conduct is at the center of all the cases in the MDL and in Columbus's case.

As aptly stated by the City of Seattle in opposing a motion to vacate a conditional transfer, this is not a close call. For the reasons explained below, and those expressed by Seattle in its *Memorandum in Opposition to Motion to Vacate Conditional Transfer Order* [Doc. 144], this Panel should finalize Conditional Transfer Order 6 ("CTO-6") and transfer this case to the MDL.

<u>**ARGUMENT**</u>

The bar for consolidation is low: A case can be transferred when there is one or more common questions of fact and the transfer will "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The standard

---

[1] As detailed below, similar lawsuits by Columbus's sister cities—Cleveland and Cincinnati— have already been transferred to Judge Selna.

is easily met here.

I.     <u>**THIS CASE SHARES THE SAME CORE QUESTIONS OF FACT AS THOSE RAISED IN THIS MDL**</u>

Like the other cases currently in this MDL, this case filed by Columbus is (1) against the same Defendants; (2) involving the same types of cars; (3) suffering from the same defect.   Like the other cases currently in this MDL, this case filed by Columbus arises from the same conduct of the Defendants in marketing and selling vehicles that can be stolen by a middle schooler in a matter of minutes.  The fact that the legal theories differ is irrelevant.

As summarized by this Court, the MDL cases share the following facts:

- Plaintiffs in all actions purchased or leased Kia and Hyundai branded vehicles that they allege are defective because the cars lack engine immobilizer technology, which prevents them from being started unless a code is transmitted from a unique smart key.

- The vehicles at issue include 2011-2022 Kia vehicles and 2015-2022 Hyundai vehicles that were equipped with traditional "insert-and-turn" steel key ignition systems.

- Plaintiffs argue that vehicles that lack immobilizer technology are particularly susceptible to being stolen.

*In re: Kia Hyundai Vehicle Theft Litigation*, 2022 WL 17843100, at *1.

These same facts form the core of Columbus's lawsuit as well.  *See* Exhibit 1.  And this reality is borne out by the proposed discovery topics provided to this Court that include:

- The nature, scope, and existence of design and/or manufacturing defect(s) in the Affected Vehicles that create a security vulnerability in the vehicles and makes them highly prone to theft;

- The design, development, and manufacture of the Affected Vehicles' steering column assembly and ignition systems, including, the ignition lock cylinders and ignition switches, as well as alternative and competitive product designs;

- The design, development, and manufacture of the Affected Vehicles' anti-theft and alarm systems, as well as alternative and competitive product designs; Whether Defendants' design, development, and manufacture of the Affected Vehicles comport with the standard of care in the automotive industry and Federal Motor Vehicle Safety Standards ("FMVSS"), including FMVSS No.

114;

- Defendants' documentation, testing and evaluation demonstrating compliance with FMVSS No. 114;

- Defendants' submissions to NHTSA regarding any proposed rulemaking concerning FMVSS 114, engine immobilizers, or exemptions to parts marking requirements ("PMR");

- Whether the alleged Defect(s) in the Affected Vehicles was a substantial factor in auto thefts of such Vehicles;

- Defendants' applications to NHTSA for exemptions from PMR for certain of their vehicles, pursuant to 49 C.F.R. §§ 543.1 et seq.;

- Defendants' knowledge concerning the effectiveness of engine immobilizers in preventing auto thefts;

- Defendants' decisions to exclude engine immobilizers as a standard safety component in all of their vehicles sold in the United States prior to model year 2023 vehicles and Defendants' decisions to include immobilizers in certain models; and

- Defendants' decision to install engine immobilizers in any of their U.S. vehicles.

MDL 3052, JPML [Doc. No. 40] at Pages 13-14.

Columbus, as demonstrated throughout its Complaint, needs to know precisely the same things. *See* Exhibit 1 at ¶¶ 36-62, 78-88. This alone clears the Section 1407 hurdle easily. Instead of focusing on the actual 1407 standard based on commonality, Defendants ignore it to nit-pick around the edges to make the point that Columbus's case is not identical to the consumer cases already in the MDL. But that is not the test and has never been.

"Section 1407 does not require a complete identity or even majority of common factual and legal issues." *In re: Satyam Computer Servs., Ltd., Sec. Litig.*, 712 F.Supp.2d 1381, 1382 (J.P.M.L. 2010); *see also In re: ClassicStar Mare Lease Litig.*, 528 F.Supp.2d 1345, 1346 (J.P.M.L. 2007) ("Regardless of any differences among the actions, all actions arise from the same factual milieu..."); *In re New England Compounding Pharmacy, Inc., Prod. Liab. Litig.,* 38 F.

Supp. 3d 1384, 1386 (J.P.M.L. 2014) ("[T]he presence of additional facts or differing legal theories is not significant when, as here, the actions still arise from a common factual core."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. MDL 1720, 2017 WL 4582708, *2 (J.P.M.L. 2017) ("[T]he presence of additional facts or differing legal theories does not prevent the transfer of an action that shares significant factual issues with those in the MDL") (internal quotation omitted); *In re: Auto Body Shop Antitrust Litig.*, 37 F. Supp.3d 1388, 1390 (J.P.M.L. 2014).

Nor is there any legitimate concern that Columbus's case is brought by a governmental entity. Indeed, this same Panel[2] already confronted and rejected the same argument made by Defendants here—that the unique nature of a government cause of action (as compared to an individual) makes it unsuitable for MDL treatment. In *In re: Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924, 2020 WL 12761382 (J.P.M.L. Dec. 15, 2020), it was actually the State itself that suggested it was too dissimilar to the other cases in the ongoing MDL to be transferred into it. Yet despite the State's mandate to seek statewide remedies and despite unique elements (statutory penalties and statewide medical monitoring), this Panel found the common allegations surrounding the deceptive labeling/marketing/sale of medicine made centralized/coordinated discovery appropriate. *Id*. at *1.

This was not a novel conclusion. Putting an even finer point on it, the Panel said:

> ***We often have centralized state enforcement actions with private actions where those actions involve common factual questions***. *See, e.g.*, Transfer Order at 2, *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, MDL No. 2709 (J.P.M.L. Oct. 4, 2017), ECF No. 61 (transferring state enforcement action); *In re Generic Pharm. Pricing Antitrust Litig.*, MDL No. 2724, 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017) (same); Transfer Order at 1–2, *In re Fresenius GranuFlo/NaturaLyte Dialysate Prods. Liab. Litig.*, MDL No. 2428 (J.P.M.L. Jun. 4, 2014), ECF No. 660 (same).

---

[2] Other than Judge Nathaniel M. Gorton, whose seat was held by Catherine D. Perry at the time.

*Id*. at *2 (emphasis added).

Neither is this combination of private and public litigation within a MDL foreign to cases specifically involving vehicles or public nuisance claims more generally. *See e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 264 F. Supp. 3d 1040, 1044 (N.D. Cal. 2017) (combining cases brought by individual, State, and Federal plaintiffs); *In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation* 259 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003); *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig*., No. 4:22-MD-03047 (public nuisance).

These results echo a similar conclusion this Panel reached in *In re Oxycontin Antitrust Litig*, which integrated OxyContin consumer class actions with a State/political subdivision case raising their own statutory and common law claims.  In bringing the government case into the MDL, the Panel reiterated that "[t]ransfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer. Also, the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core."  *In re Oxycontin Antitrust Litig*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008); *see also In re Aqueous Film-Forming Foams Prod. Liab. Litig.,* No. MDL 2873, 2021 WL 755083,*2-3 (J.P.M.L. 2021)[3] (transferring a State of Michigan case on trespass and nuisance even though the MDL contained negligence and products liability claims along with state and federal environmental actions)*; In re: Infants Born Opioid-Dependent Prods. Liab. Litig*., 350 F.Supp.3d 1377, 1379 (J.P.M.L. 2018) (refusing to permit several private cases to break-out from the public-entity cases into their own MDL despite "unique damages" such as medical monitoring).

---

[3] Other than Judge Nathaniel M. Gorton, whose seat was held by Catherine D. Perry at the time.

This same mix of private and public cases was also successfully integrated, for example, in the B.P. Oil Spill MDL.  *See In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352, 1354-55 (J.P.M.L. 2010) (combining government actions—federal and state—as well as economic loss cases, noting that while "these actions will require some amount of individualized discovery, in other respects they overlap with those that pursue only economic damage claims"); *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 961 F.Supp.2d 1355, 1356-57 (J.P.M.L. 2013) (same).

All told, like the consumer cases already in this MDL, this case by Columbus arises from precisely the same car-safety issue involving precisely the same types of vehicles made by the same Defendants.  While Columbus's damages are necessarily measured in a different manner than a car-owner, all involve economic harm.  As this Panel recently confirmed in *Zantac*: "We often have centralized state enforcement actions with private actions where those actions involve common factual questions."  It should therefore do so here as well.

## II.   THIS TRANSFER IS CONVENIENT FOR THE PARTIES AND WITNESSES

As this Panel already correctly determined, transferring Columbus's case from Ohio to the Central District of California would be more convenient for the parties and witnesses:

> The main defendants are based in Orange County, California, and centralization in this district should be convenient for their witnesses. Indeed, we have centralized past MDLs involving the Hyundai and Kia defendants in this district, in part, because defendants Kia America Inc. and Hyundai Motor America are based there. *See, e.g.,* MDL No. 2424 – *In re: Hyundai and Kia Fuel Economy Litigation* and MDL No. 2905 – *In re ZF-TRW Airbag Control Units Products Liability Litigation.* If needed, the Central District of California offers an accessible district to any witnesses or defendants that are based in Korea. The Central District of California, where fifteen cases are pending (almost a third of the 49 total actions and potential tag-along actions), offers a relatively underutilized transferee district with only four pending MDL dockets.

*In re: Kia Hyundai Vehicle Theft Litigation*, 2022 WL 17843100, at *2.  In stark contrast, it's hard to see how the convenience of the parties and witnesses would be served by having the parties repeat the same discovery and litigate the same issues in Ohio.

### III.   EFFICIENCY DICTATES THAT THE OHIO CASES BE RESOLVED TOGETHER

The purpose of MDL centralization is to "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to class certification and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary."  *In re Zantac (Ranitidine) Prod. Liab. Litig.,* 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020)*; In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005).

The Defendants attempt to downplay the degree of overlap between the cases, but their arguments only highlight the need for transfer of Columbus's case.  The Defendants acknowledge the common issue of the "susceptibility to theft of Hyundai and Kia vehicles not equipped with immobilizers."  *Brief In Support Of Defendants' Motion To Vacate Conditional Transfer Order* at 1 & 3 [Doc. 151-1.]  This is the primary issue that will drive the bulk of the discovery in the MDL cases and in Columbus's case.  Even the consumer-related discovery referenced by the Defendants (e.g., relating to "misrepresentations or reliance in purchasing decisions") is highly relevant to Columbus's claims.  This discovery will show ***how*** the Defendants created a public nuisance.

While the Defendants suggest that Columbus could theoretically (informally) coordinate with the MDL, the ***formal*** inclusion of Columbus's case "will offer the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, in addition to ensuring that common parties and witnesses are not subjected to discovery demands that duplicate activity that will occur or has already occurred in other actions."  *In re Fosamax Prod. Liab. Litig.,* 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006).

This proposed efficiency is simple to forecast because both the City of Cincinnati and the City of Cleveland have filed their own complaints in the Central District of California, both of which were formally transferred to MDL Judge Selna to be resolved as related cases.[4] *See* Exhibits 2 and 3.

Under the Central District's Local Rules, a "Related Case" is one that (a) "arise[s] from the same or a closely related transaction, happening, or event, (b) call[s] for determination of the same or substantially related or similar questions of law and fact; or (c) for other reasons would entail substantial duplication of labor if heard by different judges." L.R. 83-1.3.1. The Defendants did not object to the transfer requests. *See* L.R. 83-1.3.3. And Judge Selna approved. *See* General Order 21-01 at ¶ 11.1.2 ("If the transferee judge approves the transfer, the case will be transferred to his or her calendar.").

Because the core legal issue of whether Ohio law provides a remedy for the Defendants' conduct will already be decided in coordination with this MDL, it would make no sense for Columbus's case to be excluded from this process. For the same reasons that Cincinnati's and Cleveland's cases are related to the MDL, so too is Columbus's case related to both the MDL and to these other two cases. All three Ohio cases revolve around the same core allegations including a nationwide crime wave of stolen vehicles and related damage, the Defendants' vehicles' unique susceptibility to theft, the applicable regulations designed to prevent this, and the use (or non-use) of immobilizer technology.[5] To keep Columbus out of the MDL would inevitably create concerns

---

[4] *See City of Cleveland*, No. 8:23-cv-00419-JVS-KESx (C.D. Cal.) at [Doc. 22] and *City of Cincinnati*, No. 2:23-cv-01750-JVS-KESx (C.D. Cal.) at [Doc. 20].

[5] *See* Exhibit 1 (City of Columbus) at ¶¶ 15-18, 36-67; Exhibit 2 (City of Cincinnati) at 19-21, 23-29, 43-71); Exhibit 3 (City of Cleveland) at ¶¶ 19-21, 23-29, 42-69.

over inconsistent rulings, duplicate discovery, and wasted resources that MDL consolidation is precisely calibrated to prevent.

All three Ohio cases raise claims of absolute public nuisance, qualified public nuisance, and negligence under Ohio law.[6] Judge Selna will be tasked with determining what these claims require, which of course will be exactly the same for each.  Any differences between the phrasing used—including the Defendants' questions over whether a "secondary market" exists or qualifies as a nuisance—will be addressed in the same manner, at the same time, by the same Judge, using the same law.  Nothing could be more efficient.

Any theoretical concern over handling several Ohio governmental entities at once has been soundly rejected by both precedent and practice through the Opioid MDL (2804) in the Northern District of Ohio before Judge Polster.  *See In re: National Prescription Opiate Litigation*, 290 F.Supp.3d 1375, 1379 (J.P.M.L. December 5, 2017).  This Panel should have confidence[7]—as Columbus does—in Judge Selna to organize the Ohio cases (and any other government cases) within the MDL, just as Judge Polster did.  *See In re: National Prescription Opiate Litigation*, 290 F.Supp.3d 1375, 1379 (J.P.M.L. December 5, 2017) ("Although individualized factual issues may arise in each action, such issues do not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization. The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims."); *see also In re: Oil Spill*

---

[6]  See Exhibit 1 (City of Columbus) at ¶¶ 89-102, 109-115; Exhibit 2 (City of Cincinnati) at ¶¶ 70-125; Exhibit 3 (City of Cleveland) at ¶¶ 72-129.

[7]  As this Panel observed: "By selecting Judge James V. Selna to preside over this litigation, we are selecting a skilled jurist who is well-versed in the nuances of complex and multidistrict automotive litigation to steer this matter on a prudent course."  *In re: Kia Hyundai Vehicle Theft Litigation*, 2022 WL 17843100, at *2.

*by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352, 1355 (J.P.M.L. 2010) ("The transferee judge has broad discretion to employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks—to address any differences among the cases and efficiently manage the various aspects of this litigation."); *In re Lehman Bros. Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.,* 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009) ("Some opposing plaintiffs express reservations concerning the management of their actions in this MDL proceeding, because their actions involve different types of Lehman Brothers's securities or legal claims.  The MDL No. 2017 transferee court can employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks— to efficiently manage this litigation. Plaintiffs' concerns regarding the manner and extent of coordination or consolidation of the pretrial proceedings can be presented to the transferee judge.").[8]

And for the same reasons that the underlying facts in this case overlap with those of Cincinnati and Cleveland, so too does it also align itself with Seattle.  *See* Exhibit 4 at ¶¶ 1-8, 10-11, 18-23, 42-63.  Still more cities have joined this common fight in the meantime, including (so far) "tag along" cases from Milwaukee, Wisconsin [Doc. 154]; Madison, Wisconsin [Doc. 157]; Buffalo, New York [Doc. 159]; and St. Louis, Missouri [Doc. 161].  Of these, both Buffalo and Madison (like Cincinnati and Cleveland) have been directly-filed with the Central District of California; as of this date, Madison's case has also been transferred to Judge Selna as a "Related

---

[8] This organization has already begun; Judge Selna established a Governmental Entities Committee.  *See* MDL 3052 [Order No. 2].

Case."[9]  All told, whether viewed with the other Ohio cases before Judge Selna or as part of a broader group of cities raising public nuisance claims arising from the same nationwide problem, Columbus's case will be most efficiently handled as a part of this MDL.

## IV. CONCLUSION

For these reasons as well as those expressed by the City of Seattle in its own *Memorandum in Opposition to Motion to Vacate Conditional Transfer Order* [Doc. 144], this Panel should finalize CTO-6 and transfer Columbus's Case to the MDL.

Respectfully submitted,

CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY

By:

 /s/ Rick L. Ashton
Rick L. Ashton          (0077768)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, Ohio 43215
T: (614) 221-8500; F: (614) 221-5988
ashton@asnalaw.com
*Special Counsel for Plaintiff*
*The City of Columbus*

---

[9] *See City of Madison v. Hyundai Motor America, Inc*., Case No. 8:23cv555 (C.D.Cal) at [Doc. 21].