# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CITY OF COLUMBUS, OHIO**<br>c/o Columbus City Attorney, Zach Klein<br>77 North Front Street<br>Columbus, OH 43215 | Case No. 2:23-cv-654 |
| Plaintiff, | Judge _____ |
| vs. | |
| **KIA AMERICA, INC.**<br>c/o CT Corporation System<br>as Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | |
| and | |
| **HYUNDAI MOTOR AMERICA**<br>c/o Corporation Service Company<br>as Statutory Agent<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221 | |
| Defendants. | |

## COMPLAINT

### (Demand for Jury Trial Endorsed Herein)

Plaintiff City of Columbus, Ohio, through Zach Klein, City Attorney, for its Complaint

against Defendants Kia America, Inc. and Hyundai Motor America, states as follows:

## INTRODUCTION

1.    For years, Kia and Hyundai designed, manufactured, marketed, and distributed

vehicles that could be stolen in a matter of minutes by anyone with a screwdriver and a USB

charger.

2.      The security system for these cars is so substandard that it can be exploited by a middle-schooler.  This past July, for example, Columbus police arrested an 11-year-old boy for stealing a Kia.  Just seven days later, police arrested the same 11-year-old boy for stealing a Hyundai.[1]

3.      This security flaw led to a surge of vehicle thefts in the City of Columbus and throughout the rest of the country.  Upon information and belief, no other manufacturer has distributed vehicles with comparably deficient security systems.  While thefts of Kia and Hyundai vehicles have skyrocketed over the past year, thefts of other vehicles have stayed relatively steady.  This problem was as predictable as it was preventable.

4.      The bulk of these thefts are being perpetrated by juveniles.  The self-named "Kia Boyz" steal Kia and Hyundai vehicles, use these vehicles in the commission of other ancillary crimes, post their exploits on social media, and challenge others to do the same.

5.      This crime wave first started in Milwaukee, Wisconsin but has since spread throughout the Midwest and across the country.  Columbus, a city with a significant commuter population, is one of the hardest-hit municipalities.

6.      The numbers tell the story.  There were nearly 8,000 successful and attempted vehicle thefts in Columbus between January 1 and October 18 of 2022.  Kia and Hyundai vehicles account for nearly two-thirds of the attempted thefts and 42% of the successful thefts. During the first 10 ½  months of 2022, there were more than 21 times as many attempted thefts,

---

[1] Lacey Crisp, 10WBNS, *Columbus non-profit aims to help juvenile car thieves* (August 10, 2022), available at https://www.10tv.com/article/news/crime/columbus-dream-aims-to-help-juvenile-car-thieves/530-47d58521-b856-4ce4-84ec-3abd3a2f7216 (last accessed February 15, 2023).

and almost five times as many successful thefts, of Kia and Hyundai vehicles as during the same period in 2021.

| | 1/1/2022-10/18/2022 | 1/1/2021-10/18/2021 | Difference | % Increase from 2021 to 2022 |
|---|---|---|---|---|
| Motor Vehicle Thefts & Attempts | 7833 | 4913 | 2920 | 59% |
| Just Attempts | 1417 | 93 | 1324 | 1424% |
| Just Motor Vehicle Thefts | 6416 | 4820 | 1596 | 33% |
| Hyundai Theft Attempts | 353 | 2 | 351 | 17550% |
| Hyundai Thefts | 1497 | 237 | 1260 | 532% |
| Kia Theft Attempts | 507 | 2 | 505 | 25250% |
| Kia Thefts | 1243 | 224 | 1019 | 455% |
| | | | | |
| Total Kia/ Hyundai Attempt | 860 | 4 | 856 | 21400% |
| Total Kia/Hyundai Theft | 2740 | 461 | 2279 | 494% |
| | | | | |
| % Of Attempts that are Kia/Hyundai | 60.69% | 4.30% | | |
| % Of MV Thefts that are Kia/Hyundai | 42.71% | 9.56% | | |

7.      Millions of taxpayer dollars have been spent because Kia's and Hyundai's poorly secured vehicles are terrorizing the city.

8.      The harm caused by Kia's and Hyundai's misconduct is not simply financial, though.  People have been injured and killed as a foreseeable consequence of the Defendants' unsafe vehicles.

9.      For instance, in July 2022, a 14-year-old central Ohio boy died after he lost control of a stolen Hyundai while driving the vehicle at 80 miles per hour.  One of the

passengers, another 14-year-old boy, died in the crash as well. A third occupant, who was also 14, was seriously injured.[2]

10.     The sole survivor of this crash later stole another Hyundai and crashed the vehicle into a garbage truck owned by the City of Columbus. This second collision sent four Columbus teenagers to the hospital.[3]

11.     Yet despite the national media attention, and despite the spike in car thefts nationwide, Kia and Hyundai failed to act promptly to address this issue.

12.     Kia and Hyundai instead insisted that the cost for responding to this epidemic should be borne by everyone else: their customers, insurance companies, and, most relevant here—local governments, their residents, and law enforcement.

13.     Indeed, in late September 2022, Kia told another city that it was "hopeful and confident that *law enforcement* is keenly focused on eliminating" the damage it caused. (Ex. A) (emphasis added.) Kia also proposed a band-aid solution for this problem: the distribution of steering wheel locks.

14.     In its letter, Kia wrongly suggested that this crime wave is the product of a "new kind of thief." (*Id.*)

---

[2] Bri Buckley, ABC6, *"You're driving yourself into an early grave," leaders calls for teen car theft to stop* (July 25, 2022), available at https://abc6onyourside.com/news/local/youre-driving-yourself-into-an-early-grave-community-religious-leaders-calls-for-teen-car-theft-to-stop-real-kia-boys-hyundai-fatal-crash-we-are-linden-columbus-franklin-county-ohio#:~:text=Police%20said%20two%2014%2Dyear,and%20crashing%20cars%20around%20Columbus (last accessed February 15, 2023).

[3] Steve Levine, ABC6, *Police in Central Ohio say teens stealing cars is now a trend that is escalating quickly* (August 17, 2022), available at https://abc6onyourside.com/news/local/police-in-central-ohio-say-teens-stealing-cars-is-now-a-trend-that-is-escalating-quickly-whitehall-columbus-real-kia-boys-franklin-county-sheriffs-office (last accessed February 15, 2023)

15. To the contrary, Kia and Hyundai effectively stood alone among car manufacturers by not installing engine immobilizers as a standard safety feature across the board.

16. According to the Insurance Institute for Highway Safety and the Highway Loss Data Institute, in 2015, immobilizers "were standard on 96 percent of other manufacturers' vehicles." Even in 2000, "immobilizers were already standard on 62 percent of models from other manufacturers."[4]

17. And Kia and Hyundai knew their vehicles were much less safe without immobilizers. In 2017, for example, they told federal regulators that anti-theft devices, like immobilizers, were 70% more effective at deterring theft than parts-marking.[5]

18. Even today, Hyundai concedes that "immobilizer technology is still an important security device in automobiles."[6]

19. But despite their knowledge of the effectiveness and importance of this technology, Kia and Hyundai still sold cars for years that didn't have it.

20. The City of Columbus should not have to bear the expense of cleaning up the mess that Kia and Hyundai made when they decided to put profit over the safety of their customers and the general public.

---

[4] Insurance Institute for Highway Safety, Highway Loss Data Institute, *Hyundais, Kias are easy targets amid boom in vehicle thefts* (September 22, 2022), available at https://www.iihs.org/news/detail/hyundais-kias-are-easy-targets-amid-boom-in-vehicle-thefts (last accessed February 15, 2023).

[5] Fed.Reg. Doc. 2017-09515, Notices: Grant of Petition for Exemption (filed May 10, 2017), available at https://www.govinfo.gov/content/pkg/FR-2017-05-11/pdf/2017-09515.pdf (last accessed February 15, 2023).

[6] Hyundai Motor Group, *The Future of Car Keys* (June 1, 2021), available at https://www.hyundaimotorgroup.com/story/CONT0000000000001667 (last accessed February 15, 2023).

21. The City of Columbus is therefore filing this Complaint to hold Kia and Hyundai accountable for their callous decision to sell unsafe vehicles and then watch from the sidelines as others bear the consequences of their decisions.

## JURISDICTION, PARTIES, & VENUE

22. The City of Columbus is a municipal corporation organized under Ohio Law. *See* Ohio Constitution, Article XVIII. Columbus has all of the powers of local self-government and home rule and all other powers possible for a city to have under the constitution and laws of the State of Ohio, which are exercised in the manner prescribed by the charter of the City of Columbus. *See* Charter of the City of Columbus; R.C. 715.01.

23. Columbus is the capital and largest city in the State of Ohio, and is predominantly located within Franklin County, Ohio. It is the fourteenth largest city in the United States, with a population of 906,528, according to 2021 Census estimates. More than 2.1 million people live in the Columbus metropolitan area.

24. Columbus provides a wide range of services on behalf of its residents, including public health, public assistance, law enforcement, and emergency care.

25. Columbus has spent, and will continue to spend, significant amounts of taxpayer money combating a massive surge in criminal activity due to Hyundai and Kia vehicle thefts, including substantial costs for law enforcement, prosecution, and emergency medical services. Many departments within the City of Columbus have been forced to devote substantial time, money, and resources to this epidemic.

26. Columbus is authorized by law to (a) abate any nuisance; (b) prosecute in any court of competent jurisdiction any person who creates, continues, contributes to, or suffers such

nuisance to exist; and (c) prevent injury and annoyance from such nuisance. R.C. 715.44; *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416 (2002).

27.     Columbus also has standing to recover damages caused by a criminal act. *See* R.C. 2307.60, 2307.011(F) ("person" includes "political subdivision"), 2744.01(F) (municipal corporations are "political subdivisions"), Columbus City Codes, 701.17, 701.19.

28.     On information and belief, Defendant Kia America, Inc., is a California corporation that maintains its principal place of business in Irvine, California, and is engaged in the business of, among other things, manufacturing and directly/indirectly selling vehicles in Ohio.

29.     Kia is licensed to do business in Ohio and appointed as its statutory agent CT Corporation System located at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

30.     On information and belief, Defendant Hyundai Motor America, is a California corporation that maintains its principal place of business in Fountain Valley, California, and is engaged in the business of, among other things, manufacturing and directly/indirectly selling vehicles in Ohio.

31.     Hyundai Motor America is licensed to do business in Ohio and appointed as its statutory agent Corporation Service Company located at 3366 Riverside Drive, Suite 103, Upper Arlington, OH 43221.

32.     This Court has personal jurisdiction over Kia and Hyundai under R.C. 2307.382(A)(1), (2), (3), and (4) because they, either directly or indirectly through their subsidiaries, transact substantial business in Ohio; contract to supply services or goods in Ohio; and caused tortious injury by acts and omissions in Ohio and outside Ohio that led to injuries in

Ohio, and regularly do and solicit business in Ohio, regularly and persistently engage in other conduct in Ohio, and/or derive substantial revenue from vehicles and services sold in Ohio.

33.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States under 28 U.S.C. § 1332(a)(1) and (c).

34.   The Court's exercise of jurisdiction over the Defendants is consistent with due process because (1) the Defendants purposefully availed themselves of the privilege of acting in this state or causing a consequence in this state; (2) the case arises from the Defendants' activities in this state; and (3) the Defendants have substantial connection with this state such that the Court's exercise of jurisdiction is reasonable.

35.   Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and Local Rule 82.1(e) because a substantial part of the events or omissions giving rise to the claims occurred in Franklin County, Ohio.

## FACTUAL BACKGROUND

**I. The National Highway Traffic Safety Administration issues federal motor vehicle safety standard 114 to protect Americans from the harms caused by car thefts.**

36.   The danger posed by joyriding is not new.

37.   The National Highway Traffic Safety Administration ("NHTSA") warned more than 50 years ago about the frequency of joyriding and the dangers posed by this activity.

38.   In April 1968, NHTSA—an organization whose mission is "to save lives, prevent injuries, and reduce economic costs due to road traffic crashes, through education research,

safety standards, and enforcement"—promulgated federal motor vehicle safety standard 114 ("FMVSS 114").[7]

39.     NHTSA Administrator's comments supporting the need for this safety standard explained that "stolen cars constitute a major hazard to life and limb on the highways." *See* 33 Fed.Reg. 6471.

40.     The stated purpose of FMVSS 114 is to "decrease the likelihood that a vehicle is stolen, or accidentally set in motion." 49 C.F.R. 571.114.

41.     Anti-theft protection relates directly to safety because, as NHTSA found, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals" and that "the large majority of car thieves are amateurs, almost half of whom are engaged in so–called 'joy-riding.'"

42.     According to FMVSS 114, the "approximate [accident rate] for stolen cars [is] some ***200 times*** the normal accident rate for other vehicles."

43.     FMVSS 114 was issued to address these concerns.

44.     FMVSS 114 requires Kia and Hyundai to have a device that prevents the "unauthorized operation of a motor vehicle" if "an attempt [is] made to circumvent the ignition lock (through "hot-wiring," for example)."  NHTSA Interpretation GF005229-2 (dated September 24, 2004).

---

[7] FMVSS are the "minimum standard for motor vehicle or motor vehicle equipment performance." 49 U.S.C. 30102(a)(10).  While these set performance standards, they do not specify the manner in which to meet these baselines in terms of mandating any particular design, equipment, or technology.

45.     "In promulgating FMVSS No. 114, the agency [NHTSA] expressed concern about car thieves who could bypass the ignition lock. In response to this concern, the agency decided to **require a device,** which would prevent either self-mobility or steering **even if the ignition lock were bypassed**." *Id.*

46.     More than two-and-a-half decades ago, Ford started using the predecessor to the current version of the engine immobilizer.  During the time period relevant to this case, nearly every manufacturer other than Kia and Hyundai routinely installed engine immobilizers to prevent vehicle theft—even on vehicles that are comparably priced to the vehicles sold by Kia and Hyundai.

47.     An engine immobilizer is an electronic anti-theft device used to prevent a vehicle from being started unless a unique code is transmitted using the real owner's key.  Upon information and belief, this technology is relatively inexpensive, and a manufacturer can include an immobilizer for as little as $50.

48.     An engine immobilizer meets the relevant requirements of FMVSS 114 because it "locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system."  NHTSA Interpretation GF005229-2 (dated September 24, 2004).

49.     Between 1993 and 2014, as the use of engine immobilizers spread, the rate of car thefts dropped precipitously.  82 Fed. Reg. 28,246, 28247 (June 21, 2017).  In 1993, the rate was 3.98 thefts per 1,000 vehicles.  *Id.*  By 2014, the rate was 1.15 thefts per 1,000 vehicles.  *Id.*

50.     Manufacturers like Kia and Hyundai can exempt themselves from certain anti-theft regulations by demonstrating to NHTSA that they have installed sufficient equipment that

provides the same deterrent effect. *See* 49 C.F.R. 543.1 *et seq*. (part of the Motor Vehicle Theft Act of 1984).

51.     Further, upon information and belief, Kia and Hyundai have obtained anti-theft regulatory exemptions for some of their high-end models and for vehicles sold in foreign countries by using an engine immobilizer, demonstrating its effectiveness.

52.     Upon information and belief, both Kia and Hyundai, *as far back as 2007*, sang the praises of engine immobilizers as anti-theft devices to NHTSA in order to get these regulatory exemptions.

53.     But neither Kia nor Hyundai installed engine immobilizers nor, upon information and belief, other common safety components in the vehicles that are at issue in this case.

## II.     Despite the known dangers posed by car theft, Kia and Hyundai distribute cars that can be stolen by anyone with virtually no effort.

54.     No reasonable consumer would purchase a vehicle that provides no real protection against theft.

55.     Yet for years, Kia and Hyundai sold millions of such unsafe vehicles to unsuspecting consumers throughout the United States.

56.     More specifically, for over a decade, Kia intentionally designed, manufactured, and sold certain vehicles with traditional key ignitions but without engine immobilizers.  Further, upon information and belief, Kia also generally failed to provide other alternative security features, such as reinforced steering columns and sensors designed to detect window glass breakage.  Between 2015 and 2021, Hyundai did as well.

57.     Without an engine immobilizer (or alternative security features), Kia and Hyundai vehicles are vulnerable to theft because their security systems can be bypassed using only a flathead screwdriver and a USB charging cable.

 

*Example photos of a punched ignition column and USB charging cable used to start a vehicle.*

58.     This critical vulnerability has been and continues to be exposed and exploited.

59.     In 2020 and 2021, Milwaukee saw a sharp increase in the number of thefts of Kia and Hyundai vehicles.

60.     In response to this trend, a group of consumers filed a putative class action against Kia and Hyundai in Wisconsin on June 23, 2021; other putative class actions against the country have followed.

61.     Rather than acting swiftly to address this crisis, Kia and Hyundai responded by denying responsibility.

62.     Based on Kia and Hyundai's failure to act, this epidemic continued to spread and was eventually documented in a "Kia Boyz" YouTube video this past summer.[8]  In Milwaukee, the thefts of Kia and Hyundai vehicles increased 2,500% over the course of a year.

---

[8] Tommy G, *Kia Boys Documentary (A Story of Teenage Car Theft)* (May 31, 2022), available at https://www.youtube.com/watch?v=fbTrLyqL_nw.  As of February, 2023, the video has nearly 6 million views.

### III.    The crime epidemic spreads to Columbus.

63.    This past spring/summer, the "Kia Challenge" began on TikTok.  The challenge was a contest to determine who could steal the most Kia and Hyundai vehicles.

64.    This challenge inspired an unprecedented and dramatic wave of car thefts nationwide, including in the City of Columbus.

65.    The challenge found an obvious target audience of mostly juvenile males, eager to gain their own one-to-five minutes of fame by similarly posting their own videos.

66.    As noted above, the harm and existing threat to Columbus and its residents is not simply monetary.

67.    These secondary impacts are naturally exacerbated, moreover, because many of these youths are too young to even drive these stolen cars, increasing the likelihood of accidents and injury both to themselves and still more innocent victims.

68.    For the City of Columbus, this is not hypothetical—this car-steeling frenzy has already resulted in violent crimes and serious traffic crashes.[9]

69.    These stolen cars are also being used as weapons: ramming into buildings to gain entry and commit further criminal acts.[10]

---

[9] Bri Buckley, ABC6, *"You're driving yourself into an early grave," leaders calls for teen car theft to stop*  (July 25, 2022), available at https://abc6onyourside.com/news/local/youre-driving-yourself-into-an-early-grave-community-religious-leaders-calls-for-teen-car-theft-to-stop-real-kia-boys-hyundai-fatal-crash-we-are-linden-columbus-franklin-county-ohio#:~:text=Police%20said%20two%2014%2Dyear,and%20crashing%20cars%20around%20Columbus (last accessed February 15, 2023).

[10] Lacey Crisp, 10WBNS, *Police: Teens used stolen Kias to break into Obetz store, steal guns,* (July 19, 2022), https://www.10tv.com/article/news/crime-tracker/police-teens-used-stolen-kias-break-into-obetz-store-steal-guns/530-c113d079-03db-4342-bdc8-e5c51d9f8b63  (last accessed February 15, 2023).

70.    The unavoidable costs of government services—particularly those of law enforcement/safety personnel and emergency/first responders—have soared in direct response to the rise of Kia and Hyundai car thefts.

71.    The unique vulnerabilities of Kia and Hyundai vehicles present the City of Columbus with an unprecedented surge in the demand for government services that could not have been reasonably anticipated in any municipal operating budget.

72.    The level of financial resources dedicated to protecting Columbus residents far outpaces its ordinary, baseline expenditures, necessarily diverting financial and human resources from other areas, including for other crimes where those needs still persist, leading to still-further downstream impacts.

73.    These costs include, but are not limited to, law enforcement response (for all crimes), emergency personnel response, documentation, investigation, vehicle recovery, and numerous other related expenses.

74.    The thefts of Kia and Hyundai vehicles are both a substantial factor and the proximate cause of these dramatically increased financial burdens—no other vehicle types have experienced a similar exponential association with crime; no other vehicles are similarly being exploited in the same manner; and the vast majority of Kia and Hyundai thefts are accomplished in precisely the same way.

75.    By the summer of 2022, the City of Columbus was averaging approximately 17 thefts of Hyundais and Kias per day.

76.     In fact, during three weeks in July/August 2022, 398 Hyundais and Kias were stolen in Columbus.[11]

77.     The financial burdens on the City of Columbus caused by these thefts and the related criminal activities are both continuing and persistent.

78.     To date, however, neither Kia nor Hyundai have taken responsibility for their design choices nor their inaction once the security flaws were publicly exposed.

79.     Kia, rather, publicly stated in September 2022 that these thefts were not its fault. It stated that these thefts are being caused by "a new kind of automotive thief," (Ex. A), as if to suggest that Kia could not have foreseen that cars that can be stolen this easily would in fact be stolen.

80.     There is no dispute that: (1) Kia and Hyundai chose not to install engine immobilizers on many of their vehicles; (2) they knew these immobilizers were effective anti-theft devices; and (3) they had the capability to use them.  They also eschewed other security features that could protect their customers' vehicles.

81.     Upon information and belief, a reasonably prudent car manufacturer would have anticipated that its vehicles were more likely to be stolen from its customers given the actual knowledge of the engine immobilizer's benefits, the apparent ease with which the cars could be stolen, the sheer number of vehicles that contained this flaw, the viral spread of the know-how to exploit the vehicles' lack of security, the uniformity in the precise manner in which the thefts

---

[11] Lacey Crisp, 10WBNS, *Columbus Police, Nearly 400 Kias, Hyundais, stolen in last 3 weeks* (August 17, 2022), available at https://www.10tv.com/article/news/crime-tracker/columbus-police-nearly-400-kias-hyundais-stolen-last-3-weeks/530-13438bee-16d2-4ce3-b960-63ccad363839#:~:text=Of%20those%2C%202483%20were%20Hyundais%20or%20Kias.&text=COLUMBUS%2C%20Ohio%20%E2%80%94%20In%20the%20last,24%20hours%20of%20each%20other (last accessed February 15, 2023).

could and did occur, the massive target audience of juveniles that were encouraged to exploit this weakness, as well as data and feedback from customer complaints, industry reports, crime statistics, and of course, widespread national publicity.

82.     In failing to take adequate measures under the circumstances to provide sufficient safeguards on their vehicles and by failing to recall or otherwise promptly close the security loophole, Kia and Hyundai affirmatively manufactured, marketed, and distributed vehicles in a way that both created and maintained a market of unsafe and stolen cars.

83.     At several different points in time and long before this Complaint had to be filed, both Kia and Hyundai knew or should have known that their failure to install engine immobilizers and other safety features on their vehicles was likely to result in increased crime and correspondingly increased costs to communities such as Columbus.

84.     Upon information and belief, Kia and Hyundai were aware that their vehicles could be easily stolen based on, among other things, (1) their pre-sale design and testing and part sales; (2) their records of customer complaints; (3) their dealerships' records; (4) warranty and post-warranty claims; and (5) their post-sale monitoring of vehicles for safety defects.

85.     In designing, manufacturing, and selling vehicles without regard to the likelihood criminals would eventually discover and exploit their security defects, regardless of how soon or how fast, a reasonably prudent car manufacturer should have anticipated harm as a probable result.

86.     Moreover, based on the sheer number of unsafe and easily stolen vehicles that were sold by Kia and Hyundai, it was foreseeable that there would be a rash of vehicle thefts and associated crimes, and communities like Columbus would be called upon to respond to those crimes.

16

87. These purposeful decisions, combined with Kia and Hyundai's knowledge, demonstrate a prolonged indifference to and conscious disregard of the great probability of substantial harm to their own customers and local governments.

88. While (1) Hyundai made immobilizers standard on all vehicles produced after November 1, 2021, (2) Kia did the same for all 2022 models, (3) both offered security kits for its customers to buy, (4) both offered steering wheel locks to some law enforcement agencies, and (5) both recently said they intend to provide a software update to enhance their vehicles' security systems, neither initiated any attempt to recall vehicles to provide a permanent and comprehensive solution, nor have they ever publicly acknowledged fault or otherwise even hinted at providing compensation or other remedies for the harms already imposed on customers and governments across the country.

## COUNT I:  ABSOLUTE PUBLIC NUISANCE

89. The City of Columbus re-alleges each of the allegations in the foregoing paragraphs as if fully restated herein.

90. Kia and Hyundai have a duty not to unreasonably interfere with the rights of common Columbus residents, including the rights to public health, welfare, and safety.

91. Kia and Hyundai intentionally and consciously manufactured, marketed, and sold vehicles that, among other things, lacked an engine immobilizer and certain other security features, necessarily creating and maintaining the conditions necessary for a large secondary market of unsafe and stolen vehicles.

92. Upon information and belief, they also failed to comply with statutory, regulatory, and other safety requirements, including the minimum safety regulations for motor vehicle performance and anti-theft protection.

93.     The creation and maintenance of this market of unsafe and stolen vehicles and the violation of safety requirements were substantial factors and proximate causes of damages incurred (and that continue to be incurred) by the City of Columbus.

94.     Kia and Hyundai should also be compelled to abate this ongoing public nuisance and pay damages.

## COUNT II:  QUALIFIED PUBLIC NUISANCE

95.     The City of Columbus re-alleges each of the allegations in the foregoing paragraphs as if fully restated herein.

96.     Kia and Hyundai have a duty not to unreasonably interfere with the rights of common Columbus residents, including the rights to public health, welfare, and safety.

97.     Kia and Hyundai breached this duty by creating and maintaining the conditions necessary for a large secondary market of unsafe and stolen cars.

98.     Kia and Hyundai knew or should have known that their non-immobilized vehicles, uniquely vulnerable to theft, created an unreasonable risk of potential harm as well as actual and ongoing harm to the City of Columbus.

99.     Kia and Hyundai failed to exercise reasonable care in manufacturing, marketing, and selling vehicles without an engine immobilizer and certain other security features that could have helped protect their customers vehicles from theft.

100.    Kia and Hyundai also failed to exercise reasonable care in refusing to recall or fix its unsafe vehicles.

101.    This market of unsafe and stolen vehicles was a substantial factor and the proximate cause of damages incurred (and that continue to be incurred) by the City of Columbus.

102.     Kia and Hyundai should also be compelled to abate this ongoing public nuisance and pay damages.

### COUNT III:  STATUTORY PUBLIC NUISANCE

103.     The City of Columbus re-alleges each of the allegations in the foregoing paragraphs as if fully restated herein.

104.     Under Section 715.44 of the Ohio Revised Code, the City of Columbus may "[a]bate any nuisance and prosecute in any court of competent jurisdiction, any person who creates, continues, contributes to, or suffers such nuisance to exist" and "[p]revent injury and annoyance from any nuisance."

105.     Under Title 7 of the Columbus City Codes, the "Heath, Sanitation and Safety Code," a public nuisance includes any unsafe vehicle that is "detrimental to the public health, safety, and welfare."  Columbus City Codes, 701.17.

106.     Kia and Hyundai have manufactured and sold unsafe vehicles leading to an unprecedented surge in auto-theft and related harm in the City of Columbus.

107.     When "there are reasonable grounds to believe that there is an . . . actual or potential public nuisance" or "whenever there exist conditions that adversely affect the health, safety, or welfare of any person," Columbus may seek legal relief in court to abate the public nuisance."  Columbus City Codes, 701.19.

108.     Kia and Hyundai should be compelled to abate this ongoing public nuisance and pay damages.

### COUNT IV:  NEGLIGENCE

109.     The City of Columbus re-alleges each of the allegations in the foregoing paragraphs as if fully restated herein.

110.    Kia and Hyundai had a duty to not manufacture, market, and sell vehicles that lead to a surge in criminal activity.

111.    Kia and Hyundai knew or should have known that their non-immobilized vehicles, uniquely vulnerable to theft, created an unreasonable risk of potential harm as well as actual and ongoing harm to the City of Columbus.

112.    It was also foreseeable that local governments, like the City of Columbus, would be responsible for combating the existence and effects of that newly created market.

113.    Kia and Hyundai failed to exercise reasonable care in manufacturing, marketing, and selling vehicles without an engine immobilizer and certain other security features that could have helped protect their customers' vehicles from theft.

114.    Kia and Hyundai also failed to exercise reasonable care in refusing to recall or fix their unsafe vehicles.

115.    This breach of duty was a substantial factor and the proximate cause of damages incurred (and that continue to be incurred) by the City of Columbus.

## COUNT V:  CIVIL LIABILITY

116.    The City of Columbus re-alleges each of the allegations in the foregoing paragraphs as if fully restated herein.

117.    Section 2307.60(A)(1) of the Ohio Revised Code provides that anyone injured in person or property by a criminal act may recover full damages in a civil action.

118.    A violation of Columbus' "Heath, Sanitation and Safety Code" is a first degree criminal misdemeanor.  Columbus City Codes, 701.99(A).

119.    Any penalty for this criminal misdemeanor is "in addition to and separate from any civil or administrative penalties or remedies provided for by this code or pursuant to Ohio

law" and Columbus has the express right to seek any other remedy available by law. *Id*. *See also id.* at (D).

120. The criminal public nuisance created, continued, and contributed to by Kia and Hyundai was a substantial factor and the proximate cause of damages incurred by the City of Columbus.

## **RELIEF REQUESTED**

WHEREFORE, The City of Columbus respectfully requests that judgment be granted against Kia and Hyundai as follows:

a. Damages in excess of $75,000, exclusive of interest and costs;

b. Abatement of the public nuisance;

c. Injunctive and equitable relief to enjoin the further sale of unsafe vehicles and enforce corrective action to recall, repair, or replace the unsafe vehicles;

d. Punitive damages in an amount to be specifically proven at trial;

e. Costs and expenses, including reasonable attorneys' fees;

f. Pre- and post-judgment interest; and

g. Any other relief at law or in equity that the Court deems just and equitable.

Respectfully submitted,

CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY

By:

 /s/ Rick L. Ashton

| | |
|---|---|
| Rick L. Ashton, Trial Attorney | (0077768) |
| James A. Coutinho | (0082430) |
| Jeffrey R. Corcoran | (0088222) |
| Adam M. Schwartz | (0077795) |

Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, Ohio 43215
T: (614) 221-8500; F: (614) 221-5988
ashton@asnalaw.com; coutinho@asnalaw.com
corcoran@asnalaw.com; schwartz@asnalaw.com
*Special Counsel for Plaintiff*
*The City of Columbus*

And


Zachary M. Klein          (0078222)
Richard N. Coglianese     (0066830)
Matthew D. Sturtz         (0095536)
Columbus City Attorney
Telephone:      (614) 645 -0818
Facsimile:      (614) 645-6949
E-mail:         rncoglianese@columbus.gov
77 North Front St., 4th Floor
Columbus, Ohio 43215
*Counsel for Plaintiff*
*The City of Columbus*

## JURY DEMAND

The City of Columbus respectfully requests a trial by jury on all issues in this action.

/s/ Rick L. Ashton
Rick L. Ashton, Trial Attorney   (0077768)



**EXHIBIT A**

Kia America, Inc. | Corporate Headquarters
111 Peters Canyon Road, Irvine, CA 92606 USA
T +1 949.468.4800

September 12, 2022

<u>VIA FEDERAL EXPRESS</u>

Sheena Hamilton, Esq.
City Counselor
City of St. Louis Law Dept.
1200 Market St., Room 314
St. Louis, MO 63103-2864

        Re:    *Your August 19, 2022 Letter to Kia and Hyundai*

Dear Ms. Hamilton:

      Thank you for sending the above letter regarding thefts of Kia and Hyundai vehicles in the City of St. Louis. We are disappointed to hear that criminal actors are targeting our vehicles and understand that they are doing so in response to postings on social media. While we disagree with your characterizations about our products, we write to respond to the issues raised in your letter.

      Without getting into the mechanics and steps required to steal these vehicles, what has emerged in St. Louis and some other locales is a new kind of automotive thief who is willing to drive around in a vehicle even though it has obvious outward signs of being stolen. This is a significant contrast from the traditional thief, who focused on vehicles that could be stolen without any obvious signs of theft while driving—and this is what vehicle designs have largely focused on preventing. While in the past there have been car thieves both for profit and pleasure—and there will continue to be no matter what security systems are used—the emergence of this new kind of thief is unquestionably a new and unfortunate development, which we are hopeful and confident that law enforcement is keenly focused on eliminating. With this new development, Kia has made engine immobilizers standard equipment for all of our vehicles, despite the fact that these components have not been required under federal regulations and still are not.

      We strongly disagree with your statement that the subset of our vehicles that do not contain immobilizers are "defective," or that these vehicles are the cause of the thefts, property damage, and acts of violence occurring in St. Louis. All of our vehicles meet and exceed the requirements of applicable Federal Motor Vehicle Safety Standards ("FMVSS"), including FMVSS 114, which is specifically aimed at reducing the likelihood of a vehicle being stolen or accidentally set in motion. As a fundamental issue, the thefts are not caused by the vehicles themselves but are caused by criminal actors who apparently are copying acts publicized on social media sites. There is no basis for any claim of public nuisance against Kia, and we will vigorously defend against any such claim.

      While your letter states that Kia has failed to mitigate these theft issues, we have indeed taken actions to assist our customers and local governments that have been most affected by the thefts. Kia has partnered with local law enforcement agencies to provide thousands of free

1



Kia America, Inc. | Corporate Headquarters
111 Peters Canyon Road, Irvine, CA 92606 USA
T +1 949.468.4800

steering wheel locks to be distributed to customers whose vehicles lack an engine immobilizer. While no mechanism can guarantee against theft or vandalism, steering wheel locks are an effective deterrent against these crimes. While Kia has provided steering wheel locks to the University City Police Department in the St. Louis area, to date we have not been contacted by any law enforcement agency for the City of St. Louis in regards to our steering wheel lock program. Indeed, we are open to discussing whether City of St. Louis law enforcement agencies would be interested in this program. If that is of interest to you, please ask someone in City government or the appropriate law enforcement agency to contact James Bell at JBell@kiausa.com or 949-468-4625.

Kia is continuing to explore other options that may support our customers and local governments in light of these trends, and we welcome the opportunity to discuss practical measures that may help reduce the criminal activity identified in your letter. Please feel free to contact me directly at JYoon@kiausa.com or 949-468-4732. Moreover, we invite you to pass along our contact information to your City law enforcement agencies so we can discuss our steering wheel lock program.

Very truly yours,

John Yoon
Executive VP, Legal
Kia America, Inc.