# EXHIBIT 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CITY OF SEATTLE,

                         Plaintiff,

     v.

HYUNDAI MOTOR AMERICA, INC and
KIA AMERICA, INC.,

                        Defendants.

No.

COMPLAINT

JURY TRIAL DEMANDED

COMPLAINT

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    JURISDICTION AND VENUE ........................................................... 4

III.   PARTIES ............................................................................................. 4

    A.    Plaintiff ................................................................................. 4

    B.    Defendants ............................................................................ 5

IV.   THE KIA HYUNDAI THEFT WAVE ............................................... 5

    A.    Without Immobilizers, Defendants' Vehicles Are Sitting Ducks ...................... 5

    B.    Car Thefts Imperil Public Safety ......................................... 14

    C.    Measures to Prevent Vehicle Theft Have Existed for Over a Century ................................................................................. 19

    D.    The Widespread Adoption of Modern Engine Immobilizers as an Even More Effective Vehicle Theft Deterrent .................................. 23

    E.    Defendants' Deviation from the Industry Standard ............................. 25

V.    CAUSE OF ACTION: VIOLATIONS OF THE WASHINGTON PUBLIC NUISANCE LAW, RCW 7.48.010 *ET SEQ.* ............................................. 27

VI.   PRAYER FOR RELIEF ..................................................................... 30

VII.  JURY TRIAL DEMANDED ............................................................... 31

COMPLAINT

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I.    INTRODUCTION

1.    There is an inextricable link between preventing vehicle theft and protecting public safety. Making sure cars are not easy to steal both protects property and protects the public by keeping dangerous drivers in stolen vehicles off the roads. This case is an example of what happens to public safety when car manufacturers fail to include standard anti-theft technology in their cars.

2.    The days of "hotwiring" cars with nothing more than a screwdriver are largely over: in most cars, the ignition key emits a radio signal that prompts a computer to disengage an immobilizer device and allows the car to move when the key is present. But recent Hyundai and Kia models are a glaring exception.

3.    Between 2011 and 2021, long after other carmakers adopted immobilizer technology that ensured car ignitions could not be started without their keys, Hyundai and Kia failed to keep up with the times. As a result, TikTok and news videos teaching the relative ease with which Hyundai and Kia vehicles can be stolen have gone viral. In many cases, thieves use tools no more advanced than a USB cable. Hyundai and Kia's business decisions to reduce costs, and thereby boost profits, by foregoing a common anti-theft technology has resulted in a substantial increase in thefts of their vehicles. This vehicular crime wave has had a significant impact on law enforcement operations, emergency services, and public safety, particularly in the City of Seattle.

4.    In the 1960s and 1970s, all that was needed for a successful vehicle heist was a little brute force (to crack open the ignition column) and a key-shaped object to start the car and drive off within seconds. Thanks to modern technology, this is no longer the case for most cars. Hyundai and Kia are nearly unique among automobile manufacturers in failing to install vehicle

COMPLAINT - 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

immobilizers in most of their cars. This is not because the technology is somehow beyond them—in fact, Hyundai and Kia vehicles sold in the European and Canadian markets incorporate vehicle immobilizers, because regulations there expressly require them. It is only in the United States that Hyundai and Kia have decided to trade public safety for profits.

5.    The disparity between the rate of immobilizers in Hyundai and Kia vehicles compared to all other manufacturers is staggering—in 2015, only *26 percent* of Hyundai and Kia vehicles in the U.S. had immobilizers, compared to 96 percent in vehicles from all other manufacturers.[1]

6.    Hyundai and Kia's decision to put cost savings and profits over public safety has had significant consequences for the City of Seattle and its residents, as it has in other cities. The failure of Defendants to install a common-sense anti-theft technology, notwithstanding decades of academic literature and research supporting the deterrent effects of such technology, has caused a substantial spike in Hyundai and Kia vehicle theft and related crime sprees, reckless driving, and public harm.

7.    This problem started in Milwaukee before spreading nationwide.[2] By June 2021, the Milwaukee Police Department reported that the theft of Hyundai and Kia vehicles had increased by 2,500% since the previous year, with an average of sixteen cars being stolen per

---

[1] "Hyundai and Kia theft losses," 38 HLDI BULLETIN 28 (December 2021), available at: https://www.iihs.org/media/0e14ba17-a3c2-4375-8e66-081df9101ed2/opm7QA/HLDI%20Research/Bulletins/hldi_bulletin_38-28.pdf

[2] "Thieves key on hack that leaves Hyundai, Kia cars vulnerable," The Seattle Times (Sept. 21, 2022), available at: https://www.seattletimes.com/business/thieves-key-on-hack-that-leaves-hyundai-kia-cars-vulnerable/

COMPLAINT - 2

day. The same trend is evident in Seattle, where, for example, thefts of Hyundai and Kia vehicles in July 2022 had increased by 620% over the same month in 2021.[3]

8.      Vehicle theft poses a serious threat to public safety– it goes hand in hand with reckless driving, which in turn results in injuries and death. It results in increased violence, as car owners may attempt to stop someone attempting to steal their vehicle. It consumes scarce law enforcement and emergency resources and deprives the public of safe streets and sidewalks.

9.      The dramatically increased rate of Hyundai and Kia theft in Seattle has required city and police resources that would not have been needed but for Hyundai and Kia's failures. Car thieves—many of them teenagers—take advantage of these failures and engage in reckless driving, creating substantial safety risks to themselves and Seattle residents and their property.

10.      Defendants' conduct has created a public nuisance that could have been avoided had they simply followed industry-wide standards and installed immobilizer devices in all their vehicles.

11.      Once vehicle theft of Hyundai and Kia models skyrocketed, further expanding the public nuisance, Defendants could have easily abated the public nuisance by issuing a recall and/or spending approximately $500 per vehicle to install immobilizer devices.[4] Instead, Defendants again put profits over public safety by passing on the burden of installing immobilizer devices to the very same customers they put at risk.[5] Because Hyundai and Kia refuse to accept responsibility, municipalities across the country, including Seattle, have been

---

[3] "Kia thefts spiking, Seattle police say. A TikTok trend may be to blame," King 5 News (Aug. 16, 2022), available at: https://www.king5.com/article/news/crime/tiktok-videos-may-causing-recent-spike-kia-thefts-in-seattle/281-f1adc70c-e3eb-44cb-bad8-51b0ff0f6999

[4] https://www.autoevolution.com/news/hyundai-tries-to-appease-disgruntled-owners-with-170-security-kit-to-stave-off-car-theft-200119.html

[5] *Id.*

COMPLAINT - 3

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

forced to divert funds and risk officer safety to combat the rising burden caused by increased Hyundai and Kia vehicle theft and reckless driving on city streets.

## II.     JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000 and there is complete diversity between the Parties. The City of Seattle is a municipal corporation and regarded as a citizen of the state of Washington, for the purposes of diversity jurisdiction. *Bullard v. City of Cisco, Texas*, 290 U.S. 179, 187 (1933). Defendants are citizens of California, where they are headquartered and incorporated.

13.     This court has specific personal jurisdiction over Defendants, as they conduct substantial business in Washington, purposefully availing themselves of the privilege of conduct business in this State through the sale of vehicles that they distributed in this state, and the claims arise out of or relate to the Defendants' contacts with Washington. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017, 1028 (2021).

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because it is a district where a substantial part of the events giving rise to the claims took place and where the public nuisance exists.

## III.     PARTIES

### A.     Plaintiff

15.     Plaintiff, the City of Seattle (the "City" or "Seattle"), is a municipal corporation organized and operating under the Seattle City Charter and the laws of the State of Washington, with approximately 760,000 residents. The City's principal offices are located at 600 Fourth Avenue, Seattle, Washington.

COMPLAINT - 4

### B. Defendants

16. Defendant **Hyundai Motor America, Inc.** ("HMA" or "Hyundai"), is a manufacturer and distributor of new motor vehicles under the Hyundai brand and is incorporated and headquartered in the state of California. Its principal place of business is located at 10550 Talbert Avenue, Fountain Valley, California. HMA distributes, markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Hyundai brand vehicles through a network of over 800 dealers throughout the United States from its headquarters in California.

17. Defendant **Kia America, Inc.** ("KA" or "Kia"), is a manufacturer and distributor of new motor vehicles under the Kia brand and is incorporated and headquartered in the state of California. Its principal place of business is located at 111 Peters Canyon Road, Irvine, California. KA markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Kia-brand vehicles through a network of over 700 dealers throughout the United States from its headquarters in California.

### IV. THE KIA HYUNDAI THEFT WAVE

### A. Without Immobilizers, Defendants' Vehicles Are Sitting Ducks

18. As described further below, Kia and Hyundai have chosen to flout the industry standard of utilizing an engine immobilizer in many of their vehicles, which made those vehicles more susceptible to theft. Specifically, upon information and belief, at all relevant times, Defendants designed, manufactured, distributed, and sold the following automobile models ("Susceptible Vehicles") without engine immobilizers: Hyundai Elantra, Hyundai Kona, Hyundai Palisade, Hyundai Santa Cruz, Hyundai Santa Fe, Hyundai Sonata, Hyundai Tucson, Hyundai Venue, Kia Cadenza, Kia Forte, Kia K900, Kia Niro, Kia Optima, Kia Rio, Kia Sedona, Kia Seltos, Kia Sorrento, Kia Soul, Kia Sportage, Kia Stinger, and Kia Telluride. As would-be

COMPLAINT - 5

car thieves learned of this susceptibility, the incidence of theft for susceptible models increased, relative to other models, from 2015 to 2020.[6]

19. However, this progression became an explosion in late 2020, when a group of teenagers began posting "how-to" videos detailing how simple it was to steal susceptible Kias and Hyundais.[7] That group, the "Kia Boyz," became notorious for posting videos of youth engaging in reckless driving after stealing Kias and Hyundais.[8] As the videos detailed, a thief need only remove the plastic cowl under the steering column and use a USB cable to start these unsecure cars.

20. What followed was all too predictable: thefts of Kias and Hyundais skyrocketed.[9] In the first half of 2021, the number of stolen Kias and Hyundais increased by more than thirty and fifteen times when compared to the same period in 2020 in Milwaukee.[10] This dramatic increase was unique to Kia and Hyundais, which represented 66% of all cars stolen in that period, compared to only 6% of stolen cars in 2019.[11][12] In one instance, a 2017 Hyundai Sonata owned by the Department of Homeland Security was stolen in broad daylight.[13] Inside the Hyundai was a rifle, ammunition, and body armor.[14]

---

[6] https://www.nicb.org/sites/files/2017-11/2015-Hot-Wheels-Report.pdf;
https://www.nicb.org/sites/files/2017-11/2016-Hot-Wheels-Report.pdf;
https://www.nicb.org/sites/files/2017-11/2017-Hot-Wheels-Report.pdf
https://www.nicb.org/sites/files/2017-11/2018-Hot-Wheels-Report.pdf
https://www.nicb.org/sites/files/2017-11/2019-Hot-Wheels-Report.pdf
[7] https://www.npr.org/sections/money/2022/08/23/1118457271/someone-stole-my-truck-i-got-a-crash-course-on-the-wild-black-market-for-stolen-
[8] https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html
[9] https://www.insideedition.com/videos-show-teens-how-to-steal-certain-kias-and-hyundais-with-only-a-usb-cable-police-warn-amid
[10] https://www.kbb.com/car-news/milwaukee-police-report-hyundais-kias-stolen-in-record-numbers/
[11] https://www.thetruthaboutcars.com/cars/kia/summer-of-theft-creating-bad-publicity-for-hyundai-kia-44496971
[12] https://urbanmilwaukee.com/2021/07/24/two-thirds-of-all-milwaukee-auto-thefts-are-kia-and-hyundai-vehicles/
[13] https://www.wisconsinrightnow.com/homeland-security-hyundai/
[14] *Id.*

COMPLAINT - 6

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

21.     This trend then spread nationwide. Seattle has seen a significant increase in car thefts, and specifically of Kias and Hyundais. In 2022, Seattle police reported 6,244 motor vehicle thefts, nearly 1,000 more than in the same period in 2021.[15] Nearby, Tacoma reported a 57% increase in 2022 over 2021. In July 2022 alone, the Seattle Police Department reported a 620% increase in reports of stolen Hyundais and Kias over the previous July.[16] This surge continues to the present.

22.     Approximately 825 Hyundai and Kia vehicles were reported stolen in Seattle in 2022, compared to the reported 158 Hyundai and Kia vehicles stolen in 2021. Data obtained from the Seattle Police Department shows a rapid increase in thefts of Hyundai and Kia vehicles starting in July, coinciding with the release of popular TikTok tutorial videos explaining the exploit.[17] As the police department put it:

> In July, police investigated 36 reports of stolen Kias (compared to five in July 2021) and believe suspects may be using a method learned from TikTok, using a USB drive or cable and other tools, in place of a key, to start a vehicle. The vehicles stolen in July—Kia models Optima, Soul, Sorrento, Forte, and Sportage—were all manufactured between 2014 and 2021.[18]

---

[15] https://ktxs.com/news/nation-world/video-would-be-thieves-use-car-hammer-to-try-and-smash-hardware-store-door-surveillance-seattle-jeremy-cooper-maple-leaf-ace-hardware-law-enforcement-auto-thefts-tacoma-puget-sound-auto-theft-task-force

[16] "Seattle police warn latest surge in Kia auto thefts linked to TikTok," Kiro 7 News (Aug. 15, 2022), available at: https://news.yahoo.com/seattle-police-warn-latest-surge-230508235.html

[17] "Warning to KIA Drivers – Recent Spike in Thefts May Be Tied to TikTok Videos," Seattle Police Department Blotter, (Aug. 15, 2022), https://spdblotter.seattle.gov/2022/08/15/warning-to-kia-drivers-recent-spike-in-thefts-may-be-tied-to-tiktok-videos/.

[18] *Id.*

COMPLAINT - 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

23.     Unsurprisingly, Hyundai and Kia vehicles were among the top ten most stolen car brands for all motor vehicle theft in Seattle in 2022. The significant increase in Hyundai and Kia vehicle theft is especially staggering compared to other car brands. From 2021 to 2022, thefts for Hyundai and Kia vehicles increased by 363% and 503%, respectively. The next closest increase, proportionally, was the theft of Ford vehicles, which increased by 60%, over the same time period.

24.     This surge in thefts is affecting all of Seattle, but has been hitting the Northgate, Capitol Hill, Central Area/Squire Park, and North Beacon Hill neighborhoods of Seattle particularly hard.

COMPLAINT - 8

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The linked image cannot be displayed. The file may have been moved, renamed, or deleted. Verify that the link points to the correct file and location.

25.     Approximately 64% of Hyundai and Kia vehicles that were stolen in Seattle in 2022 were also recovered within City limits. This suggests that the motivation for many of these thefts was not the economic value of the vehicle—they were not driven to chop shops to be

COMPLAINT - 9

1   disassembled for parts—but rather the vehicles were stolen for joyriding or to be used as

2   transportation for vehicle theft and/or other crimes.

3       26.     Citywide motor vehicle theft also reached a fifteen-year high in 2022, up 30%

4   from 2021.



18      27.     The susceptibility of Defendants' vehicles to theft enabled this increase.

19  Defendants' choice to deviate from the industry standard of utilizing engine immobilizers,

20  placing profits over safety, was both a proximate and but-for cause. As one police sergeant

21  described the problem, Defendants' cars are simply too easy to steal.[19] This presents a risk not

22  only for property damage, but to public safety, as thieves often engage in reckless driving, as

23  well as other dangerous criminal conduct, including robbery and firearm thefts, as Kias and

[19] https://www.tmj4.com/news/local-news/mpd-hyundai-and-kia-vehicles-too-easy-to-steal-leading-to-spike-in-car-thefts

COMPLAINT - 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Hyundais have been targeted by thieves seeking weapons (and other valuables) that might have been left in patrons' vehicles.[20]

28.     This surge in thefts has swept the Seattle area. In August 2022, the Puget Sound Auto Theft Task Force, a law enforcement task force serving King County (where Seattle is located) and neighboring Pierce County, released a public service announcement highlighting security risks to Kia and Hyundai vehicles and a "large increase in Kia thefts."

---

[20] https://www.jsonline.com/story/opinion/2021/05/21/driven-by-good-will-anonymous-donor-pays-off-milwaukee-womans-stolen-car-debt/5130896001/

COMPLAINT - 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384









Puget Sound ATTF
@PugetSoundATTF

Public Service Announcement in regards to the "Kia TikTok Challenge" circulating media platforms. #psatt #autotheft #kingcounty #piercecounty #watpa #kia #hyundai

**Puget Sound Auto Theft Task-Force**
SERVING KING & PIERCE COUNTY, WASHINGTON
Public Service Announcement
Date: August 10, 2022 Case: KIA TikTok Challenge

## Kia TikTok Challenge

The Puget Sound Auto Theft Task-Force is aware of the "Kia TikTok Challenge" currently circulating media platforms. We are extremely concerned about the significant security risk of these vehicles, and have seen a large increase in KIA thefts over the past few days because of the media coverage of this "challenge".

If you own a Kia 2011-newer or a Hyundai 2015-newer that requires a key to turn the ignition, your vehicle is at risk. If your vehicle uses a push button to start, your vehicle is not at risk to this particular theft method.

### What can you do?

As with all vehicles, PSATT recommends locking your vehicle, removing all valuables, and activating a vehicle alarm system. With these vehicles we recommend taking the following extra precautions due to their vulnerabilities:

- Install a hidden GPS in order to track your vehicle if it does in fact get stolen.
- Install a hidden kill switch so the vehicle cannot be started even if the ignition is defeated.
- Install a steering wheel locking mechanism that can stop or slow down the theft.

Please contact the Puget Sound Auto Theft Task-Force at (253) 329-2442 or AutoTheftTips@wsp.wa.gov if you have information about those involved in the KIA TikTok Challenge Thefts

2:22 PM · Aug 10, 2022

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

29.     Around this same time, the Seattle Police Department released a statement regarding the substantial increase in stolen Kia vehicles in July 2022, alongside information about a recovered Kia found in Seattle's Capitol Hill neighborhood.[21]

## Warning to KIA Drivers – Recent Spike in Thefts May Be Tied to TikTok Videos

by Public Affairs on August 15, 2022 12:22 pm

Seattle police believe a recent spike in Kia car thefts may be tied to a TikTok tutorial.

In July, police investigated 36 reports of stolen Kias (compared to five in July 2021) and believe suspects may be using a method learned from TikTok, using a USB drive or cable and other tools, in place of a key, to start a vehicle. The vehicles stolen in July—Kia models Optima, Soul, Sorrento, Forte, and Sportage—were all manufactured between 2014 and 2021.

Earlier this month, police arrested two teens after receiving a report that several suspects driving a Kia—which police later discovered was stolen—had pulled up on a residential street in northwest Capitol Hill and tried to steal a second Kia.

Officers quickly arrived at the scene and spotted the suspects, who sped away and crashed into a fence in the 900 block of East Newton Street.

The three occupants of the Kia fled on foot, but officers caught up to two of them—a 17-year-old boy, who was carrying a loaded ghost gun, assembled from a firearm kit sold online—and a 16-year-old boy.

Officers arrested the two teens for unlawful possession of a firearm and possession of a stolen vehicle.

In a separate incident weeks earlier, on July 21st, officers recovered a stolen Kia in South Seattle and found evidence linking the theft to the same 16-year-old from the Capitol Hill incident. Police learned the 16-year-old had reportedly learned to steal Kias from a series of videos on TikTok.

While investigators have made several arrests tied to recent Kia thefts, police continue to receive reports of stolen Kias throughout Seattle and recommend Kia owners take care to park in well-lit or secure areas when possible. Steering wheel locks and after-market ignition kill-switch systems can also be effective deterrents against theft.

---

[21] https://spdblotter.seattle.gov/2022/08/15/warning-to-kia-drivers-recent-spike-in-thefts-may-be-tied-to-tiktok-videos/.

COMPLAINT - 13

## B.    Car Thefts Imperil Public Safety

30.    Car thefts imperil public safety. By creating cars that are too easy to steal, and are therefore frequently stolen, Defendants are responsible for a substantial risk to the public safety.

31.    As noted above, this is the conclusion drawn by the NHTSA.  FMVSS 114 was promulgated to reduce the instances of car theft, because "stolen cars constitute a major hazard to life and limb on the highways." *See* 33 Fed. Reg. 6,471, (Apr. 27, 1968). NHTSA concluded that the "evidence shows that cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." *Id.* The NHTSA Administrator concluded that "a reduction in the incidence of auto theft would make a substantial contribution to motor vehicle safety," by reducing both injuries and deaths to would-be car thieves, and by "protect[ing] the many innocent members of the public who are killed and injured by stolen cars each year. *Id.*

32.    Sadly, the reverse is true as well. An *increase* in the incidence of automobile theft results in a substantial decrease in public safety. Defendants' pursuit of profits over theft-prevention led to a meteoric rise in automobile thefts, and the concomitant threats to public safety. Car theft results in reckless driving, which poses a risk to both the operators of the stolen vehicle and any lawful users of the public thoroughfare who are unfortunate enough to cross paths.

33.    Reckless driving impacts the comfortable enjoyment of life, health, and safety of others within Seattle. This is particularly true with the current crime wave.  Disinct from many instances of car theft, where the object is converting the stolen vehicle, the viral Kia challenge typically involves joy riding and then abandoning the stolen vehicles. Far from surreptitiously delivering a car to a chop shop under cover of night, the social media phenomenon, made

COMPLAINT - 14

possible by Defendants' unsecure vehicles, led to youth posting videos of reckless driving during busy hours of the day, and abandoning the vehicles after collisions.

34.     Social media platforms like TikTok and Instagram are rife with examples of this dangerous conduct. Videos posted on these platforms highlight the very real danger from this phenomenon, including youth joyriding through school zones or even through crowds of students, and drivers hitting other cars and then running from the scene.

35.     One example of this all-too-common tragedy occurred in Milwaukee in June 2021, when a sixteen-year-old was killed after he stole a Kia Sportage and collided with another car.[22] His two twelve-year-old accomplices were also seriously injured, as were three passengers in the car that he struck. The images and dashcam footage[23] of this tragedy show how this surge of vehicle theft imperils the public.

36.     Yet another tragic example occurred in Buffalo in October 2022, when a 16-year-old driving a stolen Kia caused a high-speed crash that killed four teenage passengers.[24]

---

[22] https://www.wisn.com/article/teen-car-theft-suspect-killed-in-head-on-crash-5-others-injured/36741640
[23] https://www.wisn.com/article/dashcam-video-shows-fatal-crash-moments-after-police-cancel-pursuit/37955614
[24] "Teenage driver charged in crash of stolen car that killed 4," Seattle Times (Nov. 22, 2022), available at: https://www.seattletimes.com/business/teenage-driver-charged-in-crash-of-stolen-car-that-killed-4/

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



37.     In Seattle in November 2022, a 16-year-old was arrested after stealing a Kia and leading police on a high-speed chase in which he struck multiple vehicles before crashing into a tree.[25] The thief was armed with a handgun, a ski mask, and USB cable, the telltale (and only) tool required to steal one of Kia or Hyundai's Susceptible Vehicles.[26]

---

[25] "Armed teen crashes stolen car following police chase through Beacon Hill," KOMO News (Nov. 29, 2022), available at: https://komonews.com/news/local/teen-arrested-with-gun-after-allegedly-stealing-car-and-initiating-beacon-hill-car-chase-seattle-washington-theft-armed-robberies-connection-crash-stolen-16-year-old-usb-kia-optima

[26] *Id.*

COMPLAINT - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



by Alton Worley II, KOMO News Staff | Tuesday, November 29th 2022

*The stolen car crashed on a tree following the police chase. (SPD)*

38.     In Minneapolis, a 14-year-old boy sustained life-threatening injuries after crashing a stolen Kia in December 2022.[27]



---

[27] https://www.fox9.com/news/police-14-year-old-driver-seriously-hurt-after-crash-in-stolen-kia.

COMPLAINT - 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



39.     Further, the act of car theft creates a substantial risk of physical harm, in the event that the would-be thief is confronted in the act. This was tragically demonstrated in October 2021 in Wisconsin, when a woman who attempted to prevent a group of four youth, all below the age of sixteen, from reportedly stealing a Hyundai, was killed at the scene.[28]

40.     By electing profits over safety, or at best choosing to cut corners and costs thereby shifting them to the city and the public, and by deviating from the industry standard by not including engine immobilizers as a standard safety feature, Defendants created and maintained a public nuisance.

41.     As detailed above, Seattle has seen an especially high rate of Hyundai and Kia vehicle thefts, and has incurred costs associated with these thefts, and has been unable to abate the nuisance in the absence of action by Defendants.

---

[28] https://www.cbs58.com/news/13-year-old-charged-as-adult-in-deadly-wauwatosa-hit-and-run

COMPLAINT - 18

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

42.     To date, Defendants have refused to implement a recall for the susceptible vehicles, instead offering only to provide wheel locks to certain municipalities. Unfortunately, the wheel locks are not effective; residents who use them on Susceptible Vehicles have still had their cars stolen, and in some instances, connected to shootings.[29] To date, Hyundai and Kia have not offered even this paltry assistance to Seattle residents.

44.     Hyundai has callously turned this problem of its own making into a source of revenue, selling security kits for $170, plus the cost of installation.[30] Defendants could have, and should have, initially included a fob-integrated engine immobilizer, consistent with the industry standard. Even after the cars were sold, Defendants could have implemented a mandatory recall. Instead, Hyundai chose to make money off of a crime wave it caused.

**C.     Measures to Prevent Vehicle Theft Have Existed for Over a Century**

43.     Since the dawn of gasoline-powered automobiles at the turn of the nineteenth century, consumers have needed effective ways to keep their vehicles from being stolen. Thus, efforts to prevent theft or unauthorized access to automobiles have tracked vehicle development. In 1919, St. George Evans and E. B. Birkenbeuel invented the first formation of an electric immobilizer/vehicle security system.[31]

44.     Labeled the "Automobile-Theft Preventer" the purpose of Evans and Birkenbeuel's invention was relatively straightforward: "to provide a means for automatically signaling an attempt to move an automobile by unauthorized persons; and to provide a means for

---

[29] https://www.fox6now.com/news/milwaukee-womans-kia-stolen-twice

[30] https://www.nerdwallet.com/article/insurance/kia-hyundai-theft (mentions the free steering wheel locks; $170 glass-break sensor security kits)

[31] U.S. Patent No. 1,300,150 (issued Apr. 8, 1919).

COMPLAINT - 19

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

locking the electric circuit open, in which case it will be impossible to move the car by its own power."[32]

45.     Evans and Birkenbeuel's immobilizer/alarm system consisted of a 3x3 switch panel that connected to the car's battery, horn, and ignition. Upon exiting his vehicle, a driver could turn a few switches on the panel to different positions that, until released, would divert electricity to the horn instead of the ignition should an unauthorized user attempt to start the vehicle.



**Sketches for Evans & Birkenbeuel's "Automobile Theft Preventer"**

---

[32] *Id.* at ¶¶ 14–20.
COMPLAINT - 20

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

46.     The timing of the first immobilizer patent coincided with Congress's enactment of the National Motor Vehicle Theft Act, 18 U.S.C. § 2311 *et seq.*, which made the interstate transportation of stolen vehicles a federal crime. The law passed, in part, to respond to the growing number of automobile thefts around the country, especially in midwestern cities.

47.     As time passed and technology advanced, the United States pursued further efforts to promulgate vehicle safety standards.

48.     In 1966, Congress passed the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), with the aim of administering new motor vehicle and traffic safety standards.[33] Administration of the Safety Act was overseen by the newly created Department of Transportation through its sub-agency: the National Highway Traffic Safety Administration (the "NHTSA"), f/k/a/ the National Traffic Safety Bureau.

49.     Pursuant to its statutory authority under the Safety Act, the NHTSA promulgated numerous federal motor vehicle safety standards ("FMVSS"). Among these standards, FMVSS 114 requires minimum theft-protection standards for nearly all passenger vehicles in the United States:

> S1. *Scope*. This standard specifies vehicle performance
> requirements intended to reduce the incident of crashes resulting
> from theft and accidental rollaway of motor vehicles
>
> S2. *Purpose*. The purpose of this standard is to decrease the
> likelihood that a vehicle is stolen, or accidentally set in motion.

---

[33] P.L. 89–563, 80 Stat. 718.

COMPLAINT - 21

S3. *Application*. This standard applies to all passenger cars, and to trucks and multipurpose passenger vehicles with GVWR of 4,536 kilograms (10,000 pounds) or less.

. . .

S5.1 *Theft Protection*.

S5.1.1 Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:

(a)      The normal activation of the vehicle's engine or motor; and

(b)      Either steering, or forward self-mobility, of the vehicle, or both.

. . .

S5.2.2 Except as specified in S5.2.4, the vehicle must be designed such that the transmission or gear selection control cannot move from the "park" position, unless the key is in the starting system.

49 C.F.R. § 571.114.

50.      The main motivation for creating FMVSS 114 was the NHTSA's recognition "that stolen cars constitute a major hazard to life and limb on the highways. The evidence shows

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

that stolen cars are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals."[34]

51.     As early as 1966, studies showed "there were an estimated 94,000 stolen cars involved in accidents"—with "18,000 of these accidents result[ing] in injury to one or more people."[35] Accordingly, the NHTSA recognized that "a reduction of the incident of auto theft would make a substantial contribution to motor vehicle safety" and "protect the many innocent members of the public who are killed and injured by stolen cars each year."[36]

### D.     The Widespread Adoption of Modern Engine Immobilizers as an Even More Effective Vehicle Theft Deterrent

52.     In the late 1980s and early 1990s, vehicle theft increased dramatically in the United States.[37] The common method for stealing a car involved bypassing the motor's ignition switch, otherwise known as "hotwiring."

---

[34] 33 Fed. Reg. 83, 6471 (April 27, 1968).
[35] *Id.*
[36] *Id.*
[37] Anthony Dixon & Graham Farrell, *Age-period-cohort effects in half a century of motor vehicle theft in the United States*, 9 CRIME SCIENCE 17, 1, 3 (2020).

COMPLAINT - 23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



**2Vehicle thefts per 10,000 vehicles in operation, and vehicle theft arrests per 100,000 population, 1960-2014[38]**

53. To respond to this growing problem, manufacturers began installing passive vehicle immobilizers, which were patented no later than 1993.[39] Unlike Evans and Birkenbeuel's invention nearly 75 years prior, the vehicle immobilizer would render the engine operable only "if the correct key having coded information is used[,]" rather than relying on concealed switches or memorizing keypad combinations.[40]

54. In essence, the vehicle immobilizers of the 1990s worked by checking the "fingerprint" of a car key based on electronic codes the key sends to the vehicle.

---

[38] *Id.* at 2.
[39] Int'l Patent Publication No. WO 93/13968 (filed Jan. 7, 1993)
[40] *Id.*

COMPLAINT - 24

55.     Although the mechanism behind the vehicle immobilizer was more intricate than the original 1919 invention, the overall purpose remained the same: "to make the vehicle more difficult to steal."[41]

56.     The invention proved successful and, less than five years later, the European Union mandated that all new passenger cars from 1998 onward be equipped with an electronic engine immobilizer.[42] Similar mandates soon followed in Australia, New Zealand, and Canada.

57.     As engine immobilizers became the industry-standard among manufacturers, at least one study in the Netherlands suggested that immobilizers "lowered the overall rate of car theft on average by about 40 percent during 1995-2008."[43]

### E.     Defendants' Deviation from the Industry Standard

58.     At the turn of the 21st century, automatic engine immobilizers were considered quintessential anti-theft technology by the majority of car manufacturers in America, with the exception of Hyundai and Kia.

59.     Studies by the Highway Loss Data Institute ("HLDI") showed "that vehicle theft losses decreased significantly after factory-installed passive immobilizing antitheft devices were introduced."[44] Specifically, HLDI studies between 1996 and 2013 all showed decreases in theft losses for vehicles with engine immobilizers studied in those years, including General Motors, BMW, Ford, and Nissan.[45] A 2013 HLDI study "found that thieves were sometimes targeting the

---

[41] *Id.*

[42] Commission Directive No. 95/96/EC, 1995 O.J. (L286) 1, (amending Council Directive 74/61/EEC to require the installation of immobilizers and alarm systems in motor vehicles beginning in October 1998).

[43] Jan C. van Ours & Ben Vollaard, *The Engine Immobiliser: A Non-Starter for Car Thieves*, 126 THE ECONOMIC JOURNAL 593, 1264, 1283 (June 2013).

[44] "Hyundai and Kia theft losses", 38 HLDI BULLETIN 28 (December 2021), available at: https://www.iihs.org/media/0e14ba17-a3c2-4375-8e66-081df9101ed2/opm7QA/HLDI%20Research/Bulletins/hldi_bulletin_38-28.pdf

[45] *Id.*

COMPLAINT - 25

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

older model years of a vehicle series without immobilizers, such as the Honda Civic and Honda Accord."[46]

60.     Despite decades of research and findings that immobilizers significantly reduced vehicle theft and the consequential public safety risks, "only 26 percent of Hyundai and Kia" 2015 vehicle models had "passive immobilizers as standard equipment, compared with 96 percent of other manufacturers."[47]

61.     The staggeringly low percentage of Hyundai and Kia vehicles with immobilizers is especially concerning given that, during this same time period, Defendants were installing immobilizers in 100% of their models for sale in European and Canadian markets, in compliance with applicable laws there.[48]

62.     Nor are Defendants unfamiliar with the benefits of installing immobilizers in the American market. In March 2007, Hyundai requested an exemption from particular NHTSA vehicle theft prevention standards for its 2008 Hyundai Azera line "based on the installation of an antitheft device" for the vehicle line that would be "at least as effective as th[e] GM and Ford [immobilizer] devices" in reducing vehicle theft.[49] Yet, until the last year or so, Hyundai and Kia only offered immobilizers in their premium, more expensive, model lines. This decision only compounds the harm. Those without resources to afford such models are more likely to live in

---

[46] *Id.*

[47] *Id.*

[48] Hyundai first began exporting its cars to parts of Europe, the United Kingdom, and Canada between 1978 and 1984. "Over 50 years of progress: the history of Hyundai" Press Release, 04.06.2019, available at https://www.hyundai.news/eu/articles/press-releases/over-50-years-of-progress-the-history-of-hyundai.html. Similarly, Kia vehicles were introduced into European and Canadian markets in the 1990s.

[49] 72 Fed. Reg. 138, 39,662 (July 19, 2007); *see also* 75 Fed. Reg. 1,447 (NHTSA notice granting an identical exemption for the Kia Amanti vehicle line beginning in model year 2009 based on Defendants' representation that the immobilizer installation for that specific model should substantially reduce theft rates).

COMPLAINT - 26

areas with higher crimes rates and are likely less able to pay for alternative transportation or for the cost of repairing a recovered vehicle.

63.     Based on the above, Defendants' decision not to install the simple and highly effective immobilizer in the Susceptible Vehicles between 2011 and 2021, in contrast to the approximately 96% of all other car manufacturers that did install an immobilizer, has led to a significant and reasonably foreseeable increase of Hyundai and Kia car theft in Seattle.

## V.     CAUSE OF ACTION: VIOLATIONS OF THE WASHINGTON PUBLIC NUISANCE LAW, RCW 7.48.010 *ET SEQ.*

64.     The City of Seattle incorporates each preceding paragraph as though set forth fully herein.

65.     Seattle brings this claim under RCW 7.48.010 *et seq*. and common law regarding public nuisances.

66.     RCW 7.48.010 defines an actionable nuisance as, *inter alia*, "the obstruction of any highway . . . [or] whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property."

67.     Specifically, under RCW 7.48.120, a "[n]uisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures, or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage...any public ... street or highway; or in any way renders other persons insecure in life, or in the use of property."[50]

---

[50] RCW 7.48.120.

COMPLAINT - 27

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

68. Pursuant to RCW 7.48.130, "[a] public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal."

69. Defendants' conduct has endangered the comfort and public safety of the entire Seattle community and therefore constitutes a public nuisance.

70. Defendants have engaged in acts and omissions which endangered the health and safety of Seattle residents and caused substantial annoyance, inconvenience, and injury to the public by causing increased Kia and Hyundai vehicle theft, reckless driving, and property damage. Defendants' actions and omissions have substantially, unreasonably, and injuriously interfered with the public safety, a right common to all residents of Seattle.

71. Each Defendant has created or assisted in the creation of a condition that is injurious to public safety in Seattle.

72. Defendants' conduct has directly caused a substantial disruption of public health, order, and safety. Defendants' conduct is ongoing and continues to produce permanent and long-lasting damage.

73. This harm to Seattle and the public is substantial, unreasonable, widespread, and ongoing. The rights, interests, and inconvenience to the community far outweigh the rights, interest, and inconvenience to Defendants, who have profited from their wrongful conduct.

74. Defendants' conduct substantially interfered with public safety and the right to a peaceful environment. In that regard, and in other ways discussed herein, the public nuisance created or maintained by Defendants is connected to the City's resources and property, including but not limited to debris on sidewalks and roads due to the reckless driving and car crashes that have resulted as a consequence of the easy access unauthorized users have to Defendants' cars.

COMPLAINT - 28

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

75.     Further, Defendants' conduct substantially interferes with the public's right to safe and reasonable access to public thoroughfares.

76.     The City has had to spend significant resources responding to Hyundai and Kia thefts that would not have been required had those cars been built to industry standard.

77.     Defendants' conduct has led to the "obstruct[ion] or encroach[ment] upon public highway[s], private ways, streets, alleys, commons, landing places, and ways to burying places" and also has interfered with the flow of municipal transit vehicles and public traffic, as well as generally interfering with the provision or use of public transportation services, thus constituting a nuisance of the kind specifically enumerated and prohibited under RCW 7.48.140(4).

78.     Defendants' conduct has affected and continues to affect a substantial number of people within Seattle's community and is likely to continue causing significant harm.

79.     But for Defendants' conduct in failing to follow industry standards by foregoing the installation of vehicle immobilizers in the Susceptible Vehicles between 2011 and 2021, the tremendous increase in the theft of Hyundai and Kia vehicles, and the collateral consequences to the lives and property of Seattle's community that currently exist as a result of Defendants' conduct, would have been averted.

80.     Defendants knew or had reason to know that their conduct would create a public nuisance. Defendants knew or had reason to know that their conduct was interfering with the public right to public safety and/or that the interference with public safety caused by easier vehicle theft was substantially certain to result from their conduct. Defendants knew or had reason to know that the installation of engine immobilizers successfully decreased the rate of car theft by as much as 40%.

COMPLAINT - 29

81.     By intentionally foregoing the installation of engine immobilizers in the Susceptible Vehicles, Defendants directly facilitated the rapid increase in vehicle theft and, with it, the public nuisance affecting Seattle.

82.     The public nuisance Defendants created and/or substantially contributed continues. The rate of vehicle theft in Seattle continues to climb, further interfering with the public safety.

83.     Seattle has taken steps to address the harm caused by Defendants' conduct, including additional policing efforts and public outreach and education. However, abating the public safety effects caused by the significant increase in Kia and Hyundai vehicle theft, property damage, and harm to the welfare of Seattle's community resulting from Defendants' conduct will require more than these steps.

84.     Pursuant to RCW 7.48.020, Seattle requests an order providing for abatement of the public nuisance that Defendants have created or assisted in the creation of, and enjoining Defendants from future violations of RCW 7.48.010.

## VI.     PRAYER FOR RELIEF

85.     Entering an Order that the conduct alleged herein constitutes a public nuisance under Washington law;

86.     Entering an Order that Defendants are jointly and severally liable;

87.     Entering an Order requiring Defendants to abate the public nuisance described herein and to deter and/or prevent the resumption of such nuisance;

88.     Enjoining Defendants from engaging in further actions causing or contributing to the public nuisance as described herein;

89.     Awarding equitable relief to fund automobile theft prevention;

90.     Awarding actual and compensatory damages;

COMPLAINT - 30

91.     Awarding reasonable attorneys' fees and costs of suit;

92.     Awarding pre-judgment and post-judgment interest; and

93.     Such other and further relief as the Court deems just and proper under the circumstances.

## VII.    JURY TRIAL DEMANDED

94.     The City hereby demands a trial by jury.

RESPECTFULLY SUBMITTED this 23rd day of January, 2023.

| CITY OF SEATTLE | KELLER ROHRBACK L.L.P. |
|---|---|
| By *s/ Ann Davison*<br>Seattle City Attorney<br><br>By *s/ Thomas Kuffel*<br>By *s/ Ghazal Sharifi*<br>By *s/ Joseph Groshong*<br>Ann Davison, WSBA #35776<br>Thomas Kuffel, WSBA #20118<br>Ghazal Sharifi, WSBA #47750<br>Joseph Groshong, WSBA #41593<br>701 5th Avenue, Suite 2050<br>Seattle, WA 98104<br>Phone: (206) 684-8300<br>Fax:     (206) 684-8284<br>ann.davison@seattle.gov<br>thomas.kuffel@seattle.gov<br>ghazal.sharifi@seattle.gov<br>joseph.groshong@seattle.gov<br><br><br><br>*Counsel for Plaintiff City of Seattle* | By *s/ Gretchen Freeman Cappio*<br>By *s/ Derek W. Loeser*<br>By *s/ Dean Kawamoto*<br>By *s/ Ryan McDevitt*<br>By *s/ Alison S. Gaffney*<br>By *s/ Felicia J. Craick*<br>Gretchen Freeman Cappio, WSBA #29576<br>Derek W. Loeser, WSBA #24274<br>Dean Kawamoto, WSBA #43850<br>Ryan McDevitt, WSBA #43305<br>Alison S. Gaffney, WSBA #45565<br>Felicia J. Craick, WSBA #54505<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Phone: (206) 623-1900<br>Fax:     (206) 623-3384<br>gcappio@kellerrohrback.com<br>dloeser@kellerrohrback.com<br>dkawamoto@kellerrohrback.com<br>rmcdevitt@kellerrohrback.com<br>agaffney@kellerrohrback.com<br>fcraick@kellerrohrback.com |

COMPLAINT - 32

KELLER ROHRBACK L.L.P.

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384