BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re:** Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation | § § § § § § | MDL No. 3052 |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-6)

Pursuant to Rule 6.1(d) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Kia America, Inc. and Hyundai Motor America (together, "Defendants") respectfully submit this reply brief in support of their motion to vacate Conditional Transfer Order 6 ("CTO-6") as to *City of Columbus, Ohio v. Kia America, Inc. et al.*, No. 2:23-cv-00654-SDM-EPD (S.D. Ohio).

### INTRODUCTION

In its Opposition, the City of Columbus (the "City") repeatedly claims that the factual issues underlying its lawsuit are the same as in the MDL Consumer Actions and the *Cleveland*, *Cincinnati*, and *Seattle* actions.[1] But, as explained in Defendants' opening brief and below, *City of Columbus* differs in significant and material ways from the these actions, which the City completely ignores. As a result, the City fails to explain why transfer is specifically appropriate *here*. Accordingly, transfer is not warranted in this case; thus this Court should vacate CTO-6 in MDL 3052 as to *City of Columbus*.

---

[1] *City of Cleveland v. Hyundai Motor Am.*, No. 8:23-cv-00419 (C.D. Cal. Mar. 7, 2023); *City of Cincinnati v. Hyundai Motor Am.*, No. 2:23-cv-01750 (C.D. Cal. Mar. 8, 2023); *City of Seattle v. Hyundai Motor Am.,* No. 2:23-cv-0009 (W.D. Wash. Jan. 23, 2023).

1

<u>First</u>, the City's claims against Defendants all hinge upon the allegation that the Defendants created and maintained a secondary market of unsafe and stolen vehicles and that such market resulted in increased costs to the City.  However, the City fails to explain, as it must, why these questions are sufficiently complex to justify transfer.  <u>Second</u>, *City of Columbus* requires vastly different factual inquiries from the: (1) over 50 consumer actions currently pending in MDL 3052; (2) the four actions filed by government entities in the Central District of California and transferred to Judge Selna as related cases;[2] and (3) other actions filed by governmental entities not yet transferred to the MDL.[3]  While all of these cases allege that Kia and/or Hyundai vehicles should have included certain anti-theft technology as standard equipment, that is where the similarities end.  The City fails to explain why transfer should follow despite the myriad unique factual inquiries its public nuisance claim raises—which Defendants outlined in their opening brief.  Indeed, the City has no response to the undisputed facts that its claim is localized to the geography of the City itself, including any increase in *Columbus's* car thefts, the City's response to those thefts in *Columbus*, whether Defendants' sale of cars proximately caused *Columbus's* crimes, the City's policing and prosecutorial decisions and related expenditures in *Columbus*, and how the City purports to abate an alleged nuisance in *Columbus*.  None of these facts is at issue in the MDL Consumer Actions or the other public nuisance actions filed by government entities.

<u>Third</u>, transfer is not warranted merely because (1) two Ohio cities, Cleveland and Cincinnati, as well as Madison, Wisconsin and Buffalo, New York, now have claims pending

---

[2] Notably, the City of Columbus chose to file the case in the Southern District of Ohio, not the Central District of California.

[3] As discussed in Defendants' opening brief, the *Seattle* action is not currently part of the MDL; therefore, the Panel should not consider it, or any other actions filed by government entities that have not yet been transferred to the MDL.  But, in any event, the distinguishing features between the *Seattle* action (and the other government entity actions) and *City of Columbus* weigh in favoring of vacating CTO-6.

before Judge Selna as related cases;[4] and (2) other cities, such as Milwaukee, Wisconsin, St. Louis, Missouri and Seattle, Washington have filed public nuisance actions against Defendants and seek transfer to the MDL. The City cites no authority, nor can it, for the proposition that a handful of public nuisance actions pending before Judge Selna, or seeking consolidation with the MDL, requires transfer of another public nuisance action to the MDL. Nor can the City deny that the two Ohio cases (as well as the non-Ohio cases) will require different factual inquiries specific to their cities, including whether thefts of Kia and Hyundai vehicles in those cities rose, and when; whether those specific cities have increased or reallocated resources to address the issue; and whether Defendants' conduct proximately caused the crimes at issue in those cities. Each municipalities' case will involve inquiries from city-specific witnesses into city-specific records, policing and prosecutorial practices, budgets, and theft trends from city-specific municipal offices and subdivisions. In light of these material differences in factual inquiries, transfer is plainly not appropriate here.

Fourth, the City's efficiency argument is similarly unpersuasive, including because it relies on the same faulty premise that the core issues underlying the MDL Actions are the same. In addition, the City fails to sufficiently explain how transfer will avoid duplicative discovery, prevent inconsistent pretrial rulings and conserve resources where there are numerous factual differences between *City of Columbus* and the MDL Actions, requiring discovery of matters specific to Columbus and inapplicable to any other plaintiff in the Actions.

---

[4] *See supra* n. 1; *see also City of Madison v. Hyundai Motor Am.*, No. 8:23-cv-00555 (C.D. Cal. Mar. 27, 2023); *City of Buffalo v. Hyundai Motor Am.*, No. 8:23-cv-00572 (C.D. Cal. Mar. 30, 2023). Since the filing of the City's Opposition, *City of Buffalo* was also transferred to Judge Selna as a related case.

3

Finally, the City fails to explain why transfer is necessary for the convenience of the witnesses and parties—the majority of whom will be located in the District where the alleged nuisance supposedly occurred and where the case was filed, *not* in the Central District of California. The parties can also engage in informal coordination on discrete, over-lapping discovery like cross-noticing depositions of corporate witnesses, which would be sufficient to promote judicial economy. The City does not explain why anything more is needed here.

Accordingly, the Panel should grant Defendants' motion to vacate CTO-6.

## ARGUMENT

**I.    The City Does Not Share Sufficiently Complex, Common Core Questions of Fact**

The City claims that transfer is appropriate because its case, like the other MDL Actions, is against the same defendants, involving the same types of cars, and that suffer from the same alleged defect. Opp. at 3–7. But this is not the applicable standard. Rather, the City must show that common questions between its case and the MDL Actions are "sufficiently complex and/or numerous to justify" transfer. *In re AriZona Beverage Co. Prods. Mktg. & Sales Pracs. Litig.*, 609 F. Supp. 2d 1369 (Mem) (J.P.M.L. 2009). The City has not, and cannot, do so.

**A. The City Does Not Share Complex, Core Facts with the MDL Consumer Actions**

The City argues that its lawsuit shares a common question of fact with the MDL Consumer Actions because it addresses the same defect that affects the same type of vehicles made by the same Defendants. Opp. at 1, 7. But that is not enough. While it is true that complaints need not state identical claims to be transferred into an MDL, given the "minimal number" of public nuisance cases in the MDL, the City bears "a heavy burden to show that those common questions of fact are sufficiently complex and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407." *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). The City fails to meet this standard.

4

First, the only support the City cites for its common issue claim are ten discovery topics identified by the consumer plaintiffs and suggests—without any substantive discussion—that each of these topics is relevant to *City of Columbus*. Opp. at 3–4. They are not. For example, the City lists "[t]he design . . . of the Affected Vehicles' anti-theft and alarm systems, as well as alternative and competitive product designs"; "Defendants submissions to NHTSA regarding . . . FMVSS 114, engine immobilizers, or exemptions to parts marking requirements"; and "Defendants decision to install engine immobilizers in any of their U.S. vehicles." *Id*. But *none of these categories* is relevant to the core issue in *City of Columbus*: whether Defendants have created a nuisance through a secondary market of unsafe and stolen cars that interferes with the rights of common Columbus residents.[5] The categories the City lists aim to determine the existence, scope and Defendants' knowledge of a "defect," which is not an element of the City's public nuisance claims.

Second, the City ignores the overwhelming differences the Defendants identified in its opening brief between *City of Columbus* and the MDL Consumer Actions. *See* Opp. at 3–5. For example, the MDL Consumer Actions share factual issues relating to the marketing, sale, and manufacture of Kia and Hyundai vehicles, the designs of the various models and model year vehicles at issue, any alleged misrepresentations relating to immobilizers, warranty coverage of the plaintiffs' vehicles, and whether and to what extent each vehicle's value diminished on account of an alleged defect. *City of Columbus* involves none of these issues. Rather, the City's claims for public nuisance present distinct factual issues, including whether and when any rise in theft of Kia and Hyundai vehicles in Columbus began, whether the City has actually increased or

---

[5] *City of Columbus,* No. 2:23-cv-00654, Dkt. 1 ¶¶ 90, 91, 93-94, 96-97, 101-02, 112 (S.D. Ohio Feb. 15, 2023).

5

reallocated resources to address the thefts in Columbus, and the propriety of any proposed abatement plan the City offers in Columbus.

Contrary to the City's claim (Opp. at 4) that Defendants are merely "nit-pick[ing] around the edges [of the complaint]," the factual differences between the MDL Consumer Actions and *City of Columbus* go to the very heart of the claims at issue. And, the City does not dispute that its case is "meaningfully distinct from the [MDL Consumer Actions]" because it will involve different strategies, remedies, claims, and "completely different experts."[6] The City merely claims, without any supporting authority, that the differing legal theories are irrelevant and while Columbus's damages are necessarily measured in a different manner than a car-owner, "all involve economic harm." Opp. at 3, 7. But, as explained throughout, the factual differences between the City's lawsuit and the MDL Actions go far beyond the measure of damages. But, even accepting the City's argument, discovery relating to Columbus's damages allegations will significantly differ from the discovery in other MDL Actions, which warrants vacating CTO-6.[7]

Because *City of Columbus* will require unique discovery and other pretrial proceedings, transferring this case "could significantly complicate the efficient management of this already complex litigation." *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, MDL No. 2785, Dkt. No. 111 at 3 (J.P.M.L. Dec. 5, 2017); *see also In re Ameriquest Mtg. Co. Mtg. Lending Pracs. Litig.*, 542 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (vacating CTOs where MDL actions related to "lending practices" and the two actions before the Panel pled "individual

---

[6] Joint Preliminary Report, No. 8:22-ml-03052, Dkt. 40 at 6; Feb. 7, 2023 Hearing Transcript, No. 8:22-ml-03052 (C.D. Cal.), Dkt. 51 at 11:24–25; 15:21–25.

[7] *See In re Petroleum Prods. Antitrust Litig.*, 476 F. Supp. 455, 457 (J.P.M.L. 1979) (transfer "would neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of the litigation," because the discovery for the MDL actions was "too limited" and would require "the existing discovery areas [to] be expanded or a third track of discovery and pretrial").

6

claims based on the specific loan transactions at issue in those actions, which [would] likely require unique discovery and other pretrial proceedings").

Rather than address the critical factual differences between its lawsuit and the MDL Consumer Actions—or attempt to explain why the sole fact that these cases involve the absence of immobilizers can justify transfer—the City spends pages in its opposition arguing that the Panel *can* consolidate cases brought by various government entities with those brought by consumers. Opp. at 5 ("Nor is there any legitimate concern that Columbus's case is brought by a governmental entity"). But Defendants do not contend that it is *per se* inappropriate to consolidate cases brought by private citizens with governmental entity cases. Defendants' position is that the City's case does not merit transfer into MDL 3052 because of critical *factual* differences between that case and the MDL Consumer Actions that the City ignores. The cases the City cites do not say otherwise. Opp. at 4–7. Furthermore, the City's reliance (Opp. at 5-6) on *In re: Zantac (Ranitidine) Products Liability Litigation*, 2020 WL 12761382 (J.P.M.L. Dec. 15, 2020) and *In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*, 259 F. Supp. 2d 1366 (J.P.M.L. 2003) is particularly misplaced. For example, unlike here, the allegations of the individual and state plaintiffs in *Zantac* were the same, i.e., that the defendants were aware of the dangers of their medications and they "deceptively labeled, marketed, and sold [these] medications to consumers." 2020 WL 127613822, at *1. Similarly, in *In re Ford Motor Co.,* both the MDL governmental entity plaintiffs and individual vehicle owners purchased Ford vehicles. 259 F. Supp. 2d at 1367–68.

### B. The City Does Not Share Complex, Core Facts With Other Government Actions

Contrary to the City's claims otherwise, the filing of other public nuisance cases does not support transfer of *City of Columbus* to the MDL. Opp. at 8–12. Indeed, there are only four public

nuisance actions currently before Judge Selna (the "C*entral District of California* actions"). The City does not adequately explain why a mere four cases warrant transfer of its case to the MDL. In fact, Judge Selna has vacated all previous deadlines relating to governmental entity actions that were reflected in the February 9, 2023 MDL order to allow the Panel to decide the issue of transfer first.

Moreover, the *Central District of California* actions do not share sufficiently complex common factual issues with the City's lawsuit. These cases will involve factual inquiries unique to *those* cities' public nuisance claims: whether any rise in theft of Kia and Hyundai vehicles occurred in Cleveland, Cincinnati, Madison, or Buffalo, the manner in which those cities have responded, if at all, including through their policing and prosecutorial policies and budgets, and whether Defendants' conduct proximately caused the crimes in those cities. It will require examining city-specific records and witnesses from various municipal entities in Cleveland, Cincinnati, Madison, and Buffalo. None of that is relevant to *City of Columbus*.

Lastly, the Panel should not consider the public nuisance actions seeking transfer to the MDL, which the Defendants have opposed.[8] But, even if the Panel were to consider those cases, they do not warrant transfer of the City's lawsuit for the same reasons.

Accordingly, because the City raises different factual and legal questions from the core allegations at issue in MDL 3052, it will not streamline the litigation and the Panel should vacate CTO-6. *See In re Chinese-Manufactured Prods. Liab. Litig.*, MDL No. 2047, Dkt. 150 (J.P.M.L. Dec. 2, 2009) (vacating CTO where action "d[id] not share sufficient questions of fact").

---

[8] Defendants have moved to vacate CTO-5 relating to the Seattle action and Defendants filed their motion to vacate CTO-7 as to *City of Milwaukee v. Hyundai Motor America et al.*, No: 2:23-cv-00376-JPS (E.D. Wis.) on the same date that it filed this reply (April 17, 2023).

8

## II.     Transfer Will Not Promote Efficiencies Among the Various MDL Actions

The entirety of the City's "efficiency" argument is based on the mistaken premise that the "primary issue" underlying the MDL Actions and Columbus's claims is the "susceptibility to theft of Hyundai and Kia vehicles not equipped with immobilizers." Opp. at 8. As discussed above, the City is wrong. Columbus fails to explain how the discovery sought in the pending MDL Consumer Actions, such as misrepresentations or reliance in purchasing decisions by individual consumers, is relevant to how Defendants purportedly created a public nuisance in *Columbus* or the alleged costs incurred by *Columbus* in responding to same. The City also makes no attempt to explain how discovery sought in connection with *City of Columbus* would relate to public nuisances in or costs incurred by other cities.

The City also claims (Opp. at 9–10) that keeping "Columbus out of the MDL would inevitably create concerns over inconsistent rulings, duplicate discovery, and wasted resources." But its explanation of why transfer would generate these benefits is unavailing. The City argues that all three pending Ohio public nuisance cases raise claims of public nuisance and negligence under Ohio law. But, this argument ignores that Ohio public nuisance law is irrelevant to the MDL Consumer Actions as well as the other public nuisance actions brought by cities outside of Ohio. And, to the extent that the application of Ohio law to just three cases can even be considered a benefit, it does not erase the vast factual differences between *City of Columbus* and the MDL Consumer Actions (or other actions filed by government entities), that militate against transfer (e.g., the need to collect discovery specific to Columbus that is not relevant to any other plaintiff).

Furthermore, transfer is not needed to coordinate discrete discovery issues that may overlap between the City's case and the MDL Actions. In a case like this one, where the primary factual and legal issues are unique and localized to the plaintiff, "informal coordination of [] discovery by

9

the parties and the involved courts is both practicable and preferable to transfer." *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, Dkt. No. 424 at 1 (J.P.M.L. Apr. 5, 2018). The parties can always share certain discovery requests and responses, such as information relating to Defendants' use of immobilizers, through stipulations under Federal Rule of Civil Procedure 29 and informal discovery procedures as appropriate. *See* Manual for Complex Litigation § 11.423 (4th ed. 2004).

### III.   Transfer Will Not Serve the Convenience of the Parties and Witnesses

In support of its convenience arguments, the City focuses entirely upon the alleged convenience for the Defendants. Opp. at 7–8. The City ignores, however, that *City of Columbus* will primarily involve witnesses from the City's finance, accounting, law enforcement and other departments and documents from the City's own records, across various offices and divisions. As discussed above, the City need not prove that an alleged, undisclosed susceptibility to theft rendered Kia or Hyundai vehicles worth less than consumers paid for them. Rather, the City's legal theories rely upon discrete, localized factual issues, such as whether the Defendants caused a public nuisance in *Columbu*s and whether *Columbus* incurred additional costs as a result, that have no bearing on the MDL Actions. The clear differences between the cases means that the transferee court would need to divert resources and attention from the case already before it to address the issues presented by *City of Columbus*. And, where there may be some overlap (i.e., the depositions of Defendants' employees and corporate designees), the parties can issue cross-notices of deposition as needed.

### CONCLUSION

For the foregoing reasons, the Panel should vacate CTO-6 as to *City of Columbus v. Kia America, Inc. et al.*, No. 2:23-cv-00654 (S.D. Ohio).

| | |
|---|---|
| Dated:  April 17, 2023 | Respectfully submitted,<br><br>/s/ Steven G. Madison<br>Steven G. Madison<br>stevemadison@quinnemanuel.com<br>Justin C. Griffin<br>justingriffin@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 S Figueroa St., 10th Floor<br>Los Angeles, CA  90017-5003<br>Tel.:    (213) 443-3000<br>Fax:    (213) 443-3100<br><br>Alicia Cobb<br>aliciacobb@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>1109 First Avenue, Suite 210<br>Seattle, WA 98101<br>Tel.:    (206) 905-7000<br>Fax:    (206) 905-7100<br><br>Peter J. Brennan<br>PBrennan@jenner.com<br>Michael T. Brody<br>MBrody@jenner.com<br>JENNER & BLOCK LLP<br>353 North Clark Street<br>Chicago, IL  60654-3456<br>Telephone:    +1 312 222 9350<br>Facsimile:     +1 312 527 0484<br><br>Alice S. Kim<br>AKim@jenner.com<br>JENNER & BLOCK LLP<br>515 South Flower Street, Suite 3300<br>Los Angeles, CA  90071-2246<br>Telephone:    +1 213 239 5100<br>Facsimile:     +1 213 239 5199<br><br>*Counsel for Defendants Kia America, Inc. and Hyundai Motor America* |

11