**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| | § | |
| **In re:** Kia Hyundai Vehicle Theft | § | |
| Marketing, Sales Practices, and Products | § | MDL No. 3052 |
| Liability Litigation | § | |
| | § | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-7)**

Pursuant to Rule 7.1(f) of the Rules of Procedure of the United States Judicial Panel on

Multidistrict Litigation, Kia America, Inc. and Hyundai Motor America (together, "Defendants")

respectfully submit this brief in support of their motion to vacate CTO-7 as to *City of Milwaukee*

*v. Hyundai Motor America et al.*, No: 2:23-cv-00376-JPS (E.D. Wis.) ("*City of Milwaukee*").

**INTRODUCTION**

Nearly all of the actions currently pending in MDL No. 3052 (the "MDL Actions") are

brought by individual consumers who allege that they bought or leased Kia and/or Hyundai

vehicles without certain anti-theft technology they claim should have been standard equipment,

and that Kia and Hyundai failed to disclose these facts to them (the "MDL Consumer Actions").

The MDL Consumer Actions assert private claims under consumer-protection laws and warranty

theories, and seek damages primarily on the theory that alleged susceptibility to theft rendered the

vehicles less valuable than what plaintiffs paid.  The vast majority of consumers in the purported

classes have experienced no theft (or attempted theft) and have vehicles that performed precisely

as expected and warranted; their cars' ignition systems comply fully with comprehensive federal

anti-theft and safety regulations.  The factual inquiries in these actions turn foremost on details

about each consumer's purchase transaction—what the consumer was promised or could

reasonably expect, and the alleged diminished value of the vehicles which will require expert

discovery and potentially survey evidence not applicable to or helpful in the *City of Milwaukee* matter.

In addition to the MDL Consumer Actions, the following governmental entities have filed suit against Kia and Hyundai in the Central District of California, where Judge James V. Selna oversees MDL No. 3052: the cities of Cleveland, Cincinnati, Madison, and Buffalo (the "*Cleveland*," "*Cincinnati*," "*Madison*," and "*Buffalo*" actions).[1] These actions have been transferred to Judge Selna as related cases and allege that the absence of anti-theft immobilizers in Kia and Hyundai cars has led to a "public nuisance" of car theft in the plaintiff cities, causing those cities to suffer damages in the form of governmental expenditures to address the alleged nuisance in each city.

Although not currently part of the MDL, three other cities have filed public nuisance lawsuits against the Defendants: the cities of Seattle, Columbus, and St. Louis (the "*Seattle*," "*Columbus*," and "*St. Louis*" actions).[2] While the Panel conditionally transferred the *Seattle*, *Columbus*, and *St. Louis* actions to Judge Selna, Defendants have moved to vacate the transfer of the *Seattle* and *Columbus* actions and have noticed their opposition to the conditional transfer order in the *St. Louis* action.

The City of Milwaukee's (the "City") lawsuit fundamentally differs from the MDL Consumer Actions that dominate MDL No. 3052. Unlike the individual, consumer plaintiffs in

---

[1] *City of Cleveland v. Hyundai Motor Am.*, No. 8:23-cv-00419, Dkt. Nos. 1, 22 (C.D. Cal. Mar. 13, 2023); *City of Cincinnati v. Hyundai Motor Am.*, No. 2:23-cv-01750, Dkt. Nos. 1, 20 (C.D. Cal. Mar. 13, 2023); *City of Madison v. Hyundai Motor Am.*, No. 8:23-cv-00555, Dkt. Nos. 1, 21 (C.D. Cal. Mar. 27, 2023); *City of Buffalo v. Hyundai Motor Am.*, No. 8:23-cv-00572, Dkt. Nos. 1, 17 (C.D. Cal. Mar. 30, 2023).

[2] *City of Seattle v. Hyundai Motor America, Inc*., No. 2:23-cv-00098, Dkt. No. 1 ("*Seattle* Complaint") (W.D. Wash. Jan. 23, 2023); *City of Columbus, Ohio v. Kia Am., Inc.*, No. 2:23-cv-00654, Dkt. No. 3 ("*Columbus* Complaint") (S.D. Ohio Feb. 16, 2023); *City of St. Louis v. Kia Am., Inc.*, No. 4:23-cv-00379, Dkt. No. 1 ("*St. Louis* Complaint") (E.D. Mo. Mar. 27, 2023).

the MDL Consumer Actions, the City does not purport to sue on behalf of disappointed car buyers. Instead, the City asserts that Kia and Hyundai, not those who commit the thefts, or the social-media platforms' publication of videos demonstrating how to commit those thefts, (1) are responsible for the "rapid increase in vehicle theft," which has caused a public nuisance in Milwaukee; and (2) failed to exercise reasonable care to prevent "the foreseeable rise in the theft of Hyundai and Kia vehicles."  The City also alleges that this purported public nuisance has resulted in increased government costs in Milwaukee, which Hyundai and Kia should pay.

The City's novel and unsupported theory raises legal and factual issues that are different in kind from those raised by the MDL Consumer Actions.  For example, the City's complaint raises issues such as whether vehicle thefts in Milwaukee were proximately caused by Defendants' conduct or by criminals spurred by social-media "how-to" videos; the extent to which any rise in theft in Milwaukee has actually and unreasonably interfered with any "public right"; whether any increase in public expenditures has occurred in Milwaukee, such as increased Milwaukee Police Department or emergency services hiring, or increased expenditures investigating alleged thefts; and how the City's policing and prosecution policies have impacted auto theft.  And while the *Cleveland*, *Cincinnati*, *Madison*, and *Buffalo* actions (and the *Seattle*, *Columbus*, and *St. Louis* actions) are superficially more similar to the City's lawsuit because they also generally assert public nuisance theories, the factual issues are largely different: a rise in thefts or government expenditures in Cleveland or Seattle, for instance, does not establish a similar rise in Milwaukee, much less demonstrate that any rise was attributable to the actions of Kia or Hyundai.

These stark factual differences strongly militate against transfer of *City of Milwaukee* to MDL No. 3052.  Transfer is appropriate *only* where litigating common questions of fact would promote the just and efficient conduct of the actions.  Here, few common fact questions exist, and

the minimal benefits of MDL coordination would be vastly outweighed by the burdens of litigating disparate legal claims and factual inquiries in parallel. No efficiencies will result from shoehorning a case that presents complex empirical questions about purported crime and vehicle theft rates, public policy, and government spending into an MDL focused chiefly on car values and alleged consumer fraud. Nor are there substantial efficiencies to be gained from aggregating *City of Milwaukee* with the *Cleveland*, *Cincinnati*, *Madison*, and *Buffalo* actions (and/or the *Seattle*, *Columbus*, and *St. Louis* actions), each of which relies upon allegations specific and unique to the plaintiff jurisdictions (*e.g.*, crime rates, vehicle thefts, and government spending *in each of those separate jurisdictions*), and seeks different remedies. Doing so would *divert* judicial and party resources, potentially slowing resolution of both litigations. Accordingly, the Panel should vacate CTO-7 in MDL No. 3052 as to *City of Milwaukee*.

## FACTUAL BACKGROUND

### A.      MDL Consumer Actions

On December 13, 2022, the Panel created MDL No. 3052 in the Central District of California for suits by consumer plaintiffs who purchased or leased Kia and Hyundai branded vehicles that lack certain anti-theft technology those plaintiffs allege should have been standard. *See In re Kia Hyundai Vehicle Theft Litig.*, 2022 WL 17843100, at *1 (J.P.M.L. Dec. 13, 2022). The overwhelming majority of the actions pending in the MDL are putative consumer class actions.[3] They assert causes of action for consumer-protection violations, breach of warranty, design defect, failure to warn, and unjust enrichment.[4] For example, the consumer plaintiffs' consumer-protection claims allege that Kia and Hyundai made misrepresentations and omissions to plaintiffs about their vehicles' anti-theft technology that caused plaintiffs to overpay for their

---

[3] Joint Preliminary Report, No. 8:22-ml-03052 (C.D. Cal.), Dkt. No. 40 at 8.
[4] *Id.*

vehicles.[5]  And the consumer plaintiffs' negligence claims allege that Kia and Hyundai breached a duty to warn plaintiffs of the alleged defect, which likewise allegedly caused plaintiffs to overpay for their vehicles.[6]

The consumer plaintiffs seek economic damages—such as reimbursement related to diminution in car value, "the increase in insurance premiums [they] may face due to the design defect," or in the limited circumstances where applicable, vehicle theft—and an order "enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles."[7]  Not a single plaintiff in the MDL Consumer Actions asserts a public nuisance claim.[8]

**B.     The Cleveland, Cincinnati, Madison, and Buffalo Actions**

In addition to the MDL Consumer Actions, the following governmental entities have filed suit against Kia and Hyundai in the Central District of California: the cities of Cleveland, Cincinnati, Madison, and Buffalo.[9]  Their lawsuits allege that the absence of anti-theft immobilizers in Kia and Hyundai cars led to a "public nuisance" of car theft in Cleveland, Cincinnati, Madison, and Buffalo, respectively, and breached a duty of care owed to each of those

---

[5] *See, e.g.*, *Slovak v. Kia Am., Inc.*, No. 3:22-cv-01432, Dkt. No. 3 ¶¶ 133–34 (N.D. Ohio Aug. 31, 2022).

[6] *See, e.g.*, *Beneman v. Kia Am., Inc.*, No. 8:23-cv-00103, Dkt. No. 1 ¶¶ 150–51 (D. Md. Jan. 13, 2023).

[7] *See, e.g.*, *Brady v. Kia Am., Inc.*, No. 4:22-cv-00252, Dkt. No. 1 ¶¶ 13, 49–51, 131, p. 32 (S.D. Iowa Aug. 4, 2022); *Day v. Kia Am., Inc.*, No. 5:22-cv-00202, Dkt. No. 1 ¶¶ 13, 49–51, 121, p. 25 (E.D. Ky. Aug. 4, 2022); *Moon v. Kia Am., Inc.*, No. 1:22-cv-07433, Dkt. No. 1 ¶¶ 15, 49–51, 66, 81, 91, p. 17 (S.D.N.Y. Aug. 30, 2022).

[8] *See, e.g.*, *Brady*, No. 4:22-cv-00252, Dkt. No. 1 ¶¶ 41–50; *Day*, No. 5:22-cv-00202, Dkt. No. 1 ¶¶ 49–50; *Moon*, No. 1:22-cv-07433, Dkt. No. 1 ¶¶ 49–50.

[9] *City of Cleveland v. Hyundai Motor Am.*, No. 8:23-cv-00419, Dkt. Nos. 1 ("*Cleveland* Complaint"), 22 (C.D. Cal. Mar. 13, 2023); *City of Cincinnati v. Hyundai Motor Am.*, No. 2:23-cv-01750, Dkt. Nos. 1 ("*Cincinnati* Complaint"), 20 (C.D. Cal. Mar. 13, 2023); *City of Madison v. Hyundai Motor Am.*, No. 8:23-cv-00555, Dkt. Nos. 1 ("*Madison* Complaint"), 21 (C.D. Cal. Mar. 27, 2023); *City of Buffalo v. Hyundai Motor Am.*, No. 8:23-cv-00572, Dkt. Nos. 1 ("*Buffalo* Complaint"), 17 (C.D. Cal. Mar. 30, 2023).

plaintiff cities.[10]   They also allege that this nuisance caused damages in the form increased governmental spending in each of Cleveland, Cincinnati, Madison, and Buffalo, including but not limited to "police, emergency, health, prosecutions, corrections, youth rehabilitative services, and other services" to address the supposed nuisance; and (2) decreased tax revenues in each of those cities attributable to declines in property values in each city.[11]   The City of Cleveland, City of Cincinnati, City of Madison, and City of Buffalo each also claim that their cases "do[] not concern a discrete event or discrete emergency of the sort a political subdivision would reasonably expect to occur and is not part of the normal and expected costs of a local government's existence."[12]   And, each claims to have "incurred" "expenditures" "over and above its ordinary public services."[13]   The cities all seek abatement, compensation for economic loss, and injunctive relief.[14]

On March 13, 2023, the *Cleveland* and *Cincinnati* actions were transferred to Judge Selna as related cases.  *Madison* was transferred to Judge Selna on April 3, 2023, and *Buffalo* on April 11, 2023.

### C.    The Seattle, Columbus, and St. Louis Actions[15]

The *Seattle*, *Columbus*, and *St. Louis* actions all assert causes of action for public nuisance, but the theories and facts upon which their complaints rely vary.

---

[10] *Cleveland* Complaint, ¶ 59; *Cincinnati* Complaint, ¶ 57; *Madison* Complaint, ¶ 60; *Buffalo* Complaint, ¶ 55.

[11] *Cleveland* Complaint, ¶¶ 86–87, 120, 124; *Cincinnati* Complaint ¶¶ 84–85, 102, 116, 120; *Madison* Complaint, ¶¶ 91–92, 107, 110; *Buffalo* Complaint, ¶¶ 82–84, 99, 102–03.

[12] *Cleveland* Complaint, ¶¶ 94, 123; *Cincinnati* Complaint, ¶¶ 91, 119; *Madison* Complaint, ¶ 92; *Buffalo* Complaint, ¶¶ 83, 102.

[13] *Cleveland* Complaint, ¶¶ 94, 123; *Cincinnati* Complaint, ¶¶ 91, 119; *Madison* Complaint, ¶ 110; *Buffalo* Complaint, ¶ 103.

[14] *Cleveland* Complaint, ¶¶ 130–38; *Cincinnati* Complaint, ¶¶ 126–36; *Madison* Complaint, ¶¶ 114–23; *Buffalo* Complaint, ¶¶ 107–16.

[15] As discussed *supra* page 16, the *Seattle*, *Columbus*, and *St. Louis* actions are not currently part of the MDL; therefore, the Panel should not consider them in connection with this Motion.  But, in any event, the distinguishing features between those actions and *City of Milwaukee* weigh in favor of vacating CTO-7.

The *Seattle* action alleges that Defendants' failure to install immobilizers on their vehicles between 2011 and 2021 caused a public nuisance that "interfer[es] with the public right to public safety"; the "public's right to safe and reasonable access to public thoroughfares"; and the "right to a peaceful environment" in Seattle.[16]  It also asserts that thefts in Seattle increased on the heels of social media "'how-to' videos detailing how simple it was to steal susceptible Kias and Hyundais,"[17] and that those criminals often went on to commit other crimes, "as thieves often engage in reckless driving, as well as other dangerous criminal conduct, including robbery and firearm thefts."[18]  The City of Seattle seeks "actual and compensatory damages," consisting of the costs associated with responding to the alleged increase in thefts in Seattle, "including additional policing efforts and public outreach and education" in Seattle.[19]  It also seeks an order of abatement and "equitable relief to fund automobile theft prevention."[20]

The *Columbus* action alleges that Kia's and Hyundai's sale of cars without immobilizers has become a public nuisance that "interfere[s] with the rights of common Columbus residents, including the rights to public health, welfare, and safety."[21]  The City of Columbus defines the "public nuisance" as the creation and maintenance of "the conditions necessary for a large secondary market of unsafe and stolen cars."[22]  No other governmental entity defines the alleged public nuisance as creating such a "secondary market."  The City of Columbus further asserts that thefts have increased in Columbus following the "viral spread" on social media of "the know-how to exploit the vehicles' lack of security," and that the thieves often used stolen cars to "ram[] into

---

[16] *Seattle* Complaint, ¶¶ 6, 74–75, 79–80.
[17] *Id.* ¶ 19.
[18] *Id.* ¶ 27.
[19] *Id.* ¶¶ 83, 90.
[20] *Id.* ¶¶ 87, 89.
[21] *Columbus* Complaint, ¶¶ 90, 96.
[22] *Id.* ¶¶ 91, 93–94, 97, 101–02, 112.

buildings to gain entry and commit further criminal acts."[23]  All of the City of Columbus's causes of action—whether sounding in public nuisance or negligence—seek to recover from Kia and Hyundai the costs associated with responding to the alleged increase in thefts in Columbus, "including substantial costs for law enforcement, prosecution, and emergency medical services," as well as "documentation, investigation, vehicle recovery, and numerous other related expenses" in Columbus.[24]  The City of Columbus also seeks an order of abatement and "injunctive and equitable relief to enjoin the further sale of unsafe vehicles and enforce corrective action to recall, repair, or replace the unsafe vehicles."[25]

The *St. Louis* action alleges that Defendants' "failure to equip their Kias/Hyundais with immobilizer technology" created a public nuisance that "interfere[s] with the general public's common rights to public safety, peace, welfare, health, and use of public streets."[26]  Notably, the *St. Louis* action omits the role of social media—*e.g.*, the "Kia Challenge" perpetuated on TikTok— from its complaint.  Instead, the City of St. Louis asserts that "[o]nce the safety defect became widely known, an unprecedented spike in Hyundai and Kia thefts occurred nationwide," and that "[t]he prolific rise in Kia/Hyundai thefts, especially amongst juveniles who proceed to use the cars for joyriding, resulted in fatalities, grave injuries, and significant property damage throughout the country."[27]  The City of St. Louis also asserts products liability causes of action (based on theories of strict liability and negligence).[28]  All of the City of St. Louis's causes of action seek to recover

---

[23] *Id.* ¶¶ 69, 81.

[24] *Id.* ¶¶ 25, 73.

[25] *Id.* p. 21.

[26] *St. Louis* Complaint, ¶¶ 58, 63–65.

[27] *Id.* ¶ 36.

[28] *Id.*  ¶¶ 68–93.

8

from Kia and Hyundai "damages in excess of $75,000 attorneys' fees,"[29] and the City of St. Louis also seeks abatement for the alleged nuisance.[30]

### D.      The City of Milwaukee Lawsuit

The City of Milwaukee's lawsuit, filed March 22, 2023 against Kia America, Inc. and Hyundai Motor America, alleges claims for public nuisance and negligence.[31]  The City does not allege that it was duped into purchasing or leasing Kia or Hyundai vehicles because of any alleged misrepresentation, nor does it seek recovery for any alleged resulting decrease in the value of its vehicles, as is at issue in the MDL Consumer Actions.  Instead, the City alleges that Kia's and Hyundai's sale of cars without immobilizers has become a public nuisance that "interferes with rights common to the general public"; that its "conduct has directly caused a severe disruption of the public welfare, order, and safety," and "substantially interferes with the public's right to safe and reasonable access to public thoroughfares."[32]  The City further asserts that "[a]s a result" of Hyundai's and Kia's sale of cars without immobilizers, "TikTok and news videos teaching the relative ease with which Hyundai and Kia vehicles can be stolen have gone viral,"[33] and that the criminals who steal the vehicles "often engage in reckless driving, as well as other dangerous criminal conduct, including robbery and firearm thefts."[34]

The City seeks to recover from Kia and Hyundai the costs associated with responding to the alleged increase in thefts in Milwaukee, "including significant expenditures for police, emergency health, prosecutions, corrections, youth rehabilitative services, and other services" as

---

[29] *Id.* ¶¶ 67, 72, 79, 85, 93.

[30] *Id.* ¶ 67.

[31] *City of Milwaukee v. Hyundai Motor America et al.*, No: 2:23-cv-00376-JPS, Dkt. No. 1 ("*Milwaukee* Complaint") (E.D. Wis. Mar. 22, 2023).

[32] *Id.* ¶¶ 81–86.

[33] *Id.* ¶ 3.

[34] *Id.* ¶ 25.

well as "expending, diverting, and increasing resources to retrieve stolen cars," "and/or address property damage on public roads in Milwaukee's community."[35]   The City also seeks an order of abatement, injunctive relief "[e]njoining Defendants from engaging in further actions causing or contributing to the public nuisance as described herein,"[36] and "equitable relief to fund automobile theft prevention."[37]

## ARGUMENT

Here, transfer is inappropriate because *City of Milwaukee* and the MDL Actions are based on fundamentally different facts.  *City of Milwaukee* has little in common with the MDL Consumer Actions that make up the vast majority of MDL No. 3052, as it asserts different claims, raises different theories, and requests different forms of relief.   And while the *Cleveland*, *Cincinnati*, *Madison*, and *Buffalo* actions (as well as the *Seattle*, *Columbus*, and *St. Louis* actions, which are not currently part of the MDL) are superficially more similar, they too largely involve different facts from those in *City of Milwaukee*, facts specific to those disparate jurisdictions, seek different types of relief, and rely upon different legal theories, and any minimal factual overlap among the government cases is greatly outweighed by issues specific to each plaintiff's jurisdiction. Transferring *City of Milwaukee* to the MDL would divert MDL resources and require the transferee court to oversee unique and burdensome discovery that is distinct from, irrelevant to, and without any corresponding benefits to, the litigation currently in the MDL.   *In re AriZona Beverage Co. Prods. Mktg. & Sales Pracs. Litig.*, 609 F. Supp. 2d 1369 (Mem) (J.P.M.L. 2009) (denying centralization of three actions where any common factual questions were not "sufficiently complex and/or numerous to justify" transfer).

---

[35] *Id.* ¶¶ 95, 111
[36] *Id.* ¶ 121.
[37] *Id.* ¶ 122.

In addition, transferring *City of Milwaukee* into MDL No. 3052 would inject into the MDL numerous unique public nuisance questions of fact not present in the *Cleveland*, *Cincinnati*, *Madison*, or *Buffalo* actions (or the *Seattle*, *Columbus*, and *St. Louis* actions), and which are local in nature to Milwaukee.  *In re Gap, Inc., COVID-19 Lease Payment Litig.*, 492 F. Supp. 3d 1345, 1346 (JPML 2020) ("centralization is not necessary or appropriate" because any overlapping of factual questions and discovery would "be limited and overshadowed by the many individual questions in each action relating to the unique properties, leases, and negotiating parties at issue"); *see also In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, Dkt. No. 424 at 1–2 (J.P.M.L. Apr. 5, 2018); *In re Ameriquest Mtg. Co. Mtg. Lending Pracs. Litig.*, 542 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (vacating conditional transfer orders where MDL actions related "to allegedly predatory lending practices . . . in soliciting and closing residential mortgage transactions" and the two actions before the Panel pled "individual claims based on the specific loan transactions at issue in those actions, which [would] likely require unique discovery and other pretrial proceedings").

The MDL Consumer Actions, which make up the vast majority of the MDL, have little factual overlap with the City of Milwaukee's claims.  As the transferee court has explained, the rationale for the MDL rests on purportedly common "factual questions surrounding the marketing, sale and manufacture of these vehicles and defendants' knowledge of the alleged defect."[38]  *In re Kia*, 2022 WL 17843100, at *1.  The causes of action in the MDL Consumer Actions turn on the premise that Kia and Hyundai failed to warn consumers of the fact that their vehicles did not come

---

[38] Defendants do not concede that the plaintiffs in the MDL Consumer Actions could meet the requirements of Federal Rule of Civil Procedure 23 to certify a class and establish that each class action involves common questions that can be resolved through common proof and predominate over individual issues, or that injury or damages could be established on a classwide basis.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345–46 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

equipped with certain anti-theft technology.  The factual inquiries in these private consumer cases flow from those theories, requiring discovery into, for example:

- Whether Defendants made alleged misrepresentations;

- Whether any plaintiffs were exposed to those alleged misrepresentations and relied on them;

- The designs of the various models and model year vehicles at issue;

- Whether and when Kia and Hyundai became aware of an alleged defect in each of the models and model years at issue;

- The applicability of any written warranties covering the various models and model years at issue;

- Whether any vehicles are covered by warranties and are still within the warranty period;

- Whether plaintiffs owned or leased vehicles that actually included immobilizers;

- Whether plaintiffs' vehicles were allegedly stolen, the circumstances surrounding those thefts, and the varying alleged injuries from those individual thefts; and

- Whether and to what extent each vehicle's value has diminished by virtue of an alleged defect.[39]

Although *City of Milwaukee* also stems from the alleged susceptibility to theft of Hyundai and Kia vehicles not equipped with immobilizers, the similarities end there.  The City's public nuisance and negligence theories are not based on any purported misrepresentations or reliance in purchasing decisions.   Rather, they purport to assert societal and governmental harms, not

---

[39] *See* Joint Preliminary Report, No. 8:22-ml-03052 (C.D. Cal.), Dkt. No. 40 at 13–14.

individual economic loss.  Consistent with that theory, the factual issues the City purports to put at issue are by and large irrelevant to the MDL Consumer Actions:

- Whether, and if so, by how much, thefts of Kia and Hyundai vehicles in Milwaukee have risen;

- When any such increase in theft began in Milwaukee;

- Whether any such rise in thefts has unreasonably interfered with a "right common to the general public" in Milwaukee

- Whether the City has actually increased or reallocated any funds and law-enforcement resources to address vehicle thefts, and if so, whether the City intends to reduce funding for public safety and law enforcement if the alleged vehicle thefts decrease;

- Whether Milwaukee has suffered any property damage as a result of the alleged increase in thefts; and

- The propriety, feasibility, and requirements of any proposal by the City to abate the supposed nuisance in Milwaukee.

Even the transferee Court, counsel for consumer plaintiffs, and counsel for Seattle have agreed that the municipal governments' claims are outliers.  MDL Consumer Actions counsel have already made clear that public nuisance claims brought by governmental entities are "meaningfully distinct" from the MDL Consumer Actions, which seek to recover diminished-value damages on behalf of classes of consumers.  Joint Preliminary Report, No. 8:22-ml-03052 (C.D. Cal.), Dkt. No. 40 at 6.  Consequently, the "strategies are going to be different, the remedies are going to be different, and the claims are different."  February 7, 2023 MDL Hearing Transcript ("MDL

Hearing Tr."), No. 8:22-ml-03052, Dkt. No. 51 at 11:24-25.[40]  MDL Consumer Actions counsel
also knows that expert discovery will not overlap; the experts required to support governmental
plaintiffs' broad claims under public nuisance and related theories "are not going to be hired by
the consumers" because the cases have "**completely different theories**, **completely different
experts**."  *See* MDL Hearing Tr., No. No. 8:22-ml-03052, Dkt. No. 51 at 15:21-25 (emphasis
added).

Similarly, despite superficial similarities, the City's lawsuit raises largely different factual
issues from those in the *Cleveland*, *Cincinnati*, *Madison*, and *Buffalo* actions (and the *Seattle*,
*Columbus*, and *St. Louis* actions).  Specifically, the City alleges a spike in theft of Kia and Hyundai
vehicles in *Milwaukee*, increased government spending by *Milwaukee*, and an injury to the public
rights of the residents of *Milwaukee*.  Likewise, the *Cleveland*, *Cincinnati*, *Madison*, and *Buffalo*
actions (and the *Seattle*, *Columbus*, and *St. Louis* actions) allege a crime wave, increased
government spending, and public injury all in their respective cities.  Discovery into the plaintiffs'
theories will focus heavily on facts specific to each locality.  And whatever minimal factual overlap
exists among these governmental cases does not outweigh the obvious differences.  *See, e.g.*, *In re
AriZona Beverage Co.*, 609 F. Supp. 2d at 1369 (declining to centralize three actions where
common factual questions were not "sufficiently complex and/or numerous to justify" transfer);

---

[40] *See also* MDL Hearing Tr., No. 8:22-ml-03052, Dkt. No. 51 at 9:15-18; 10:17-19 (Judge Selna
noting that the governmental-entity plaintiffs seek remedies beyond losses related to vehicle
purchases—the only type of remedies the MDL Consumer Actions seek); *id.* at 10:9-10, 14:17-19
(counsel for the City of Seattle emphasizing that they are "seeking unique remedies" for their
"unique causes of action" and that their claims are "quite different from the consumer claims");
City of Seattle's Response to Joint Preliminary Report, No. 8:22-ml-03052, Dkt. No. 43 at 3
(emphasizing that the public nuisance "harms go far beyond the consumer losses at issue in private
plaintiffs' claims").

14

*In re: Tyson Foods, Inc., Meat Processing Facilities Fair Lab. Standards Act (FLSA) Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (same).

The complex discovery that would be necessary were *City of Milwaukee* to proceed beyond dispositive motions—including significant discovery from the City—would offer no benefits to the MDL Consumer Actions, the *Cleveland*, *Cincinnati*, *Madison*, and *Buffalo* actions, or the *Seattle*, *Columbus*, and *St. Louis* actions, but only divert resources and attention from them. *See In re Petroleum Prods. Antitrust Litig.*, 476 F. Supp. 455, 457–58 (J.P.M.L. 1979) (recognizing that although the action before the Panel "and the actions in the transferee district share[d] some questions of fact, [the Panel was] convinced that transfer of [the action] to the Central District of California would neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of the litigation," as the discovery for the actions in the transferee district were "too limited" and would therefore require "the existing discovery areas [to] be expanded or a third track of discovery and pretrial" to be managed).  For example, they have no need for discovery into the City of Milwaukee's allegations regarding *Milwaukee's* police staffing or funding, or the amount of time the *Milwaukee* Police Department spends investigating vehicle thefts.  Consequently, transferring this case "could significantly complicate the efficient management of this already complex litigation." *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, MDL No. 2785, Dkt. No. 111 at 3 (J.P.M.L. Dec. 5, 2017).

Meanwhile, there are no corresponding benefits to transfer.  To the extent overlapping discovery does arise over a discrete issue, such as vehicle design, "informal coordination of such discovery by the parties and the involved courts is both practicable and preferable to transfer." *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, Dkt. No. 424 at 2.  On such discrete issues, the parties could informally coordinate discovery, cross-notice depositions as needed, and even

stipulate to the use of certain discovery in both the MDL Actions and *City of Milwaukee*. But minor overlaps in discovery do not merit joining a case brought by a government entity—asserting "completely different theories" to those asserted by consumers—to an MDL dominated by consumer actions. And while the *Cleveland*, *Cincinnati*, *Madison*, and *Buffalo* actions raise legally similar but factually distinct theories, the above-discussed "alternatives to transfer" are more than sufficient to "minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings," particularly given the comparatively small number of governmental actions. *See, e.g.*, *In re AriZona Beverage Co.*, 609 F. Supp. 2d at 1369 (finding "[a]lternatives to transfer" sufficient and denying centralization of three actions); *In re: Tyson Foods, Inc.*, 581 F. Supp. 2d at 1375 (same). Nor does the possibility of additional governmental actions (e.g., the *Seattle*, *Columbus*, and *St. Louis* actions) affect the analysis, because the Panel generally does not "take into account the mere possibility of future filings in our centralization calculus." *See In re Gap, Inc., COVID-19 Lease Payment Litig.*, 492 F. Supp. 3d at 1347 (denying centralization) (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013)).

## CONCLUSION

For the foregoing reasons, the Panel should vacate CTO-7 as to *City of Milwaukee v. Hyundai Motor America et al.*, No: 2:23-cv-00376-JPS (E.D. Wis.).

Dated:  April 17, 2023

Respectfully submitted,

*/s/ Steven G. Madison*
Steven G. Madison
stevemadison@quinnemanuel.com
Justin C. Griffin
justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA  90017-5003
Tel.:    (213) 443-3000
Fax:    (213) 443-3100

Alicia Cobb
aliciacobb@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.:    (206) 905-7000
Fax:    (206) 905-7100

Peter J. Brennan
PBrennan@jenner.com
Michael T. Brody
MBrody@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
Telephone:     +1 312 222 9350
Facsimile:     +1 312 527 0484

Alice S. Kim
AKim@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:     +1 213 239 5100
Facsimile:     +1 213 239 5199

*Counsel for Defendants Kia America, Inc.*
*and Hyundai Motor America*

17