# EXHIBIT 1

Query    Reports    Utilities    Help    Log Out

# U.S. District Court
## Eastern District of Missouri (St. Louis)
## CIVIL DOCKET FOR CASE #: 4:23-cv-00379-RLW

City of St. Louis v. Kia America, Inc. et al
Assigned to: District Judge Ronnie L. White
Cause: 28:1332 Diversity-Motor Vehicle Product Liability

Date Filed: 03/27/2023
Jury Demand: Plaintiff
Nature of Suit: 355 Motor Vehicle Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**City of St. Louis**                        represented by   **Edward L. Dowd , Jr.**
DOWD BENNETT LLP - St. Louis
7676 Forsyth Boulevard
Suite 1900
St. Louis, MO 63105
314-889-7300
Fax: 314-863-2111
Email: edowd@dowdbennett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gabriel E. Gore**
DOWD BENNETT LLP - St. Louis
7676 Forsyth Boulevard
Suite 1900
St. Louis, MO 63105
314-889-7300
Email: ggore@dowdbennett.com
*ATTORNEY TO BE NOTICED*

**Rebecca McLaughlin**
DOWD BENNETT LLP - St. Louis
7676 Forsyth Boulevard
Suite 1900
St. Louis, MO 63105
314-889-7300
Email: rmclaughlin@dowdbennett.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kia America, Inc.**

**Defendant**

**Hyundai Motor America, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/27/2023 | 1 | COMPLAINT against defendant Hyundai Motor America, Inc., Kia America with receipt number AMOEDC-9859372, in the amount of $402 Jury Demand,, filed by City of St. Louis. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Original Filing Form Orig. Filing Form, # 3 Summons Summons to Hyundai, # 4 Summons Summons to Kia, # 5 Attachment Notice of Intent to Use Process Server, # 6 Attachment Notice of Intent to Use Process Server)(Dowd, Edward) (Entered: 03/27/2023) |
| 03/27/2023 | 2 | NOTICE OF PROCESS SERVER by Plaintiff City of St. Louis Process Server: HPS Process Service Investigations (JBH) (Entered: 03/27/2023) |
| 03/27/2023 | 3 | NOTICE OF PROCESS SERVER by Plaintiff City of St. Louis Process Server: HPS Process Service Investigations (JBH) (Entered: 03/27/2023) |
| 03/27/2023 | | Case Opening Notification. Judge Assigned: Honorable Ronnie L. White. 2 Summons(es) issued and emailed to Edward L. Dowd, Jr.. Pursuant to Local Rule 2.09, every nongovernmental corporate party or nongovernmental corporation that seeks to intervene in any case, and every party or intervenor in an action in which jurisdiction is based upon diversity, must file a Disclosure Statement immediately upon entering its appearance in the case. Please complete and file the certificate as soon as possible. (moed-0001.pdf). (JBH) (Entered: 03/27/2023) |
| 03/27/2023 | 4 | DISCLOSURE STATEMENT by Plaintiff City of St. Louis. No corporate parents or affiliates identified. (Dowd, Edward) (Entered: 03/27/2023) |
| 03/27/2023 | 5 | ENTRY of Appearance by Rebecca McLaughlin for Plaintiff City of St. Louis. (McLaughlin, Rebecca) (Entered: 03/27/2023) |
| 03/27/2023 | 6 | ENTRY of Appearance by Gabriel E. Gore for Plaintiff City of St. Louis. (Gore, Gabriel) (Entered: 03/27/2023) |
| 04/24/2023 | 7 | WAIVER OF SERVICE Returned Executed filed by City of St. Louis Hyundai Motor America, Inc. waiver signed on 4/17/2023, answer due 6/16/2023. (Dowd, Edward) (Entered: 04/24/2023) |
| 04/24/2023 | 8 | WAIVER OF SERVICE Returned Executed filed by City of St. Louis Kia America, Inc. waiver signed on 4/17/2023, answer due 6/16/2023. (Dowd, Edward) (Entered: 04/24/2023) |

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| KIA AMERICA, INC. and | ) | **JURY TRIAL DEMANDED** |
| HYUNDAI MOTOR AMERICA INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

COMES NOW Plaintiff City of St. Louis ("Plaintiff" or "St. Louis"), and for its cause of action against Defendants Kia America, Inc. ("Kia") and Hyundai Motor America Inc. ("Hyundai"), states as follows:

### INTRODUCTION

This lawsuit arises out of Defendants' roles in manufacturing, marketing, distributing, and selling Kia and Hyundai vehicles ("Kias/Hyundais") lacking an anti-theft measure that has been standard issue in the auto industry for decades. Defendants' careless disregard for the safety of the public has created a public nuisance in the City of St. Louis, resulting in an explosion of auto-related crime that is injuring citizens, taxing St. Louis's resources, and jeopardizing the public health, safety, and peace of all who live, work, and visit St. Louis.  With this lawsuit, St. Louis seeks to vindicate the public's interest in maintaining safe and orderly roads and neighborhoods and remedy the damaging effects Defendants' flagrant disregard for public safety has inflicted on St. Louis and its residents.

## PARTIES

1.     Plaintiff City is a political subdivision of the State of Missouri and a constitutional charter city.

2.     Defendant Kia is a car manufacturer and is a corporation registered in the State of California, with its principal place of business located at 111 Peters Canyon Rd., Irvine, California, 92606. Defendant Kia's primary business consists of designing, manufacturing, promoting, and selling motor vehicles.

3.     Defendant Hyundai is a car manufacturer and is a corporation registered in the State of California, with its principal place of business located at 10550 Talbert Ave., Fountain Valley, California 92708. Defendant's primary business consists of designing, manufacturing, marketing, promoting, and selling motor vehicles.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000 and there is complete diversity between the Parties. The City of  St. Louis is regarded as a citizen of the state of Missouri for the purposes of diversity jurisdiction. Defendants are citizens of California, where they are headquartered and incorporated.

5.     This Court has personal jurisdiction over Defendants, as they conduct substantial business in Missouri, purposefully availing themselves of the privilege of conducting business in this State through the sale of vehicles that they distributed in this state, and the claims arise out of or relate to the Defendants' contacts with Missouri. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017, 1028 (2021).

6.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and Local Rule 2.07(A)(1) because a substantial part of the events or omissions giving rise to the claims occurred in St. Louis, Missouri.

## FACTS

**I.   The National Highway Traffic Safety Administration Issued Federal Motor Vehicle Safety Standard 114 to Protect Americans From the Well-Known Dangers Caused by Car Thefts.**

7.      In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act (the "Safety Act") to empower the federal government to set and administer safety standards for motor vehicle and road traffic safety.

8.      The Safety Act created the National Highway Traffic Safety Administration ("NHTSA"), which is a federal administrative agency under the U.S. Department of Transportation  whose mission is "to save lives, prevent injuries, and reduce economic costs due to road traffic crashes, through education, research, safety standards, and enforcement."

9.      To fulfill its mission, NHTSA was given authority under the Safety Act to promulgate the Federal Motor Vehicle Safety Standards ("FMVSS"), which set minimum performance standards for motor vehicle manufacturers. *See* C.F.R. 49 Part 571.101, *et seq*.

10.     Among these standards is FMVSS 114, which requires vehicle manufacturers to implement minimum theft-protection standards for nearly all vehicles within the United States. *See* 49 C.F.R. § 571.11433.

11.     FMVSS 114 was promulgated over 50 years ago in April of 1968. NHSTA's main motivation in enacting FMVSS 114 was its recognition "that stolen cars constitute a major hazard to life and limb on the highways." *See* 33 Fed. Reg. 6,471, (Apr. 27, 1968).

12. In reaching this conclusion, NHTSA summarized a body of evidence which demonstrated that "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." *Id.* According to NHTSA, "the approximate [accident] rate for stolen cars [is] some ***200 times*** the normal accident rate for other vehicles." *Id.*(emphasis added).

13. NHTSA concluded that "a reduction in the incidence of auto theft would make a substantial contribution to motor vehicle safety" because "[i]t would not only reduce the number of injuries and deaths among those who steal cars, [but] it would also protect the many innocent members of the public who are killed and injured by stolen cars each year." *Id.*

14. Accordingly, NHTSA issued FMVSS 114 to address the serious concern posed by auto theft to public safety. The standard requires that each newly manufactured vehicle "must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both." *Id.*

15. Although FMVSS 114 has been updated throughout the years to better correlate with the modernization of technology, the standard has not substantively changed. Rather, the purpose of the standard continues to be to "ensure that [a] vehicle *[cannot] be easily operated without [a] key*, and that [a] vehicle operator would not forget to remove the key from the ignition system upon exiting the vehicle." *See* 71 Fed. Reg. 17,752, 17,753 (Apr. 7, 2006) (emphasis added).

16. Defendants Hyundai and Kia have knowledge of FMVSS 114 and of NHTSA's important rationale for implementing the standard.

**II.    For Decades, Engine Immobilizers Have Been the Industry-Standard for Automobile Anti-Theft Protection.**

17.    In the late 1980s and early 1990s, vehicle theft increased dramatically in the United States. In response, car manufacturers began installing what are known as "engine immobilizers" as an anti-theft protection device in their vehicles.

18.    An engine immobilizer is an electronic anti-theft device used to prevent a vehicle from being started unless a unique code is transmitted using the real owner's key.

19.    Importantly, an engine immobilizer meets the relevant requirements of FMVSS 114 because it "locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system." NHTSA Interpretation GF005229-2 (dated September 24, 2004).

20.    As the use of engine immobilizers spread, the rate of car thefts dropped drastically.

21.    A 2016 study, based on data from the Netherlands Department of Motor Vehicles, credited immobilizers with lowering "the overall rate of car theft on average by about 40 percent during 1995-2008."[1]

22.    Similarly, in 2017, NHTSA published data showing the dramatic decrease in auto theft between 1993 and 2014 in the United States. In 1993, the rate of car thefts in the United States was 4.17 per 1,000 vehicles. 82 Fed. Reg. 28,246, 28247 (June 21, 2017). By 2014, the rate was 1.15 thefts per 1,000 vehicles. *Id.*

---

[1] Jan C. van Ours & Ben Vollaard, *The Engine Immobilizer: A Non–Starter For Car Thieves*, THE ECONOMIC JOURNAL, Vol. 126, No. 593, 1264, 1283 (June 2016).



Figure 1: Theft Rate Data Trend (MY/CY 1993-2014)

23.     Studies conducted by the Highway Loss Data Institute ("HLDI") provided further support that immobilizers were a breakthrough in anti-theft technology. Specifically, HLDI studies between 1996 and 2013 all showed decreases in theft losses for vehicles with factory-installed engine immobilizers studied in those years."[2]

24.     Due to the well-documented success of immobilizer technology, many countries began requiring that all cars be equipped with immobilizers. For example, the European Union, Australia, New Zealand, and Canada have all mandated that engine immobilizers be standard issue in newly manufactured vehicles.

## III.     Historically, Hyundai and Kia Have Refused to Follow the Industry Standard by Failing to Make Engine Immobilizers Standard in Their Vehicles.

25.     Because car manufacturers recognized the utility of engine immobilizers, the technology rapidly became the industry standard for deterring auto-theft. In 1990, immobilizers

---

[2] "Hyundai and Kia theft losses", 38 HLDI Bulletin 28 (December 2021), available at https://www.iihs.org/media/0e14ba17-a3c2-4375-8e66-081df9101ed2/opm7QA/HLDI%20Research/Bulletins/hldi_ bulletin_38-28.pdf.

were standard in only 9 percent of all 1990 vehicles. By 2021, however, engine immobilizers were standard in *97 percent* of all 2021 vehicles.[3]

26.    Despite Hyundai and Kia being aware of the decades of research evidencing the success of immobilization technology, Defendants chose to deviate from the industry standard. For decades, Hyundai and Kia trailed other manufacturers in making immobilizer equipment standard for its vehicles.

27.    By way of illustration, in 2015, only 26 percent of Hyundai and Kia vehicle series had immobilizers as standard equipment, compared with *96 percent* of all other vehicle manufacturers.[4]



28.    Defendants' extreme deviation from the industry standard was not due to Defendants' disbelief in the technology's effectiveness nor due to challenges with incorporating the technology into their cars.

---

[3] *Id.*

[4] *Id.*

29.     Defendants, as far back as 2007, have recognized the success of engine immobilizers as anti-theft devices to NHSTA and have continued to praise their effectiveness.[5]

30.     Further, Defendants are clearly capable of installing the immobilizers, as 100 percent of Kias/Hyundais for sale in European and Canadian markets are in compliance with the countries' applicable laws.

31.     In fact, until the last year or so, Hyundai and Kia only offered immobilizers for their premium, and more expensive, model lines. Despite Defendants' knowledge of both the success and prevalence of immobilizer technology, Defendants chose to not offer and/or incorporate this safety measure into its less expensive—albeit, more widely sold—models, putting their less-wealthy customers at greater risk.

32.     Defendants, instead of installing a simple, yet highly successful, anti-theft device, chose to put profit over the safety of its American consumers.

## IV.   Defendants' Sold Millions of Unsafe, Easily Stolen Cars to Unsuspecting Consumers.

33.     No reasonable consumer would purchase a vehicle that provides no real protection against theft. Yet, for years, Hyundai and Kia sold millions of unsafe Kias/Hyundais to unsuspecting consumers throughout the United States without warning prospective customers of the heightened safety risk posed by purchasing their vehicles.

34.     Specifically, at all relevant times, Defendants designed, manufactured, distributed, and sold Kias/Hyundais without the industry standard engine immobilizers or an alternative security feature that would similarly protect its customers from theft.

35.     Without an engine immobilizer, Kias/Hyundais became prime targets for car thieves because they are easy to steal.

---

[5] *See, e.g.*, 72 Fed. Reg. 138, 39,662 (July 19, 2007); 75 Fed. Reg. 1,447 (Jan. 11, 2010).

36. Once the safety defect became widely known, an unprecedented spike in Hyundai and Kia thefts occurred nationwide. The prolific rise in Kia/Hyundai thefts, especially amongst juveniles who proceed to use the cars for joyriding, resulted in fatalities, grave injuries, and significant property damage throughout the country.

## V. The Hyundai and Kia Car Theft Epidemic Has Caused Significant Harm to St. Louis.

37. Defendants' decision to put profit over public safety has caused St. Louis, and its citizenry, to incur significant damages.

38. Defendants' defective Kias/Hyundais, and sale thereof, have resulted in prolific vehicle theft within St. Louis.

39. Between May of 2021 and February of 2022, St. Louis received reports of 3,221 vehicle thefts. Between May of 2022 and February of 2023, St. Louis received reports of 7,341 vehicle thefts. This represents a *128 %* increase in the number of reported stolen vehicles.

40. Since May of 2022, the St. Louis Metropolitan Police Department ("SLMPD") has received more than 4,500 reports of thefts of Kia or Hyundai vehicles.

41. Between May of 2022 and February of 2023, St. Louis received reports of an average of 15 Kias/Hyundais being stolen *per day*. During the summer and fall months of 2022, SLMPD received reports of an average of over 23 Kias/Hyundais stolen every day.

42. Since May of 2022, *61 percent* of all vehicles stolen in St. Louis have been Kias/Hyundais. And, Kias/Hyundais make up *88 percent* of all reported attempted vehicle thefts.

43. Defendants' defective vehicles are frequently observed on city streets being driven erratically and are often used by the perpetrators of vehicular-related violent crime, such as drive-by-shootings.

9

44.     In June 2022, a stolen Hyundai Elantra and stolen Kia Optima were involved in a shooting in which six other vehicles were shot and damaged.[6]

45.     On June 12, 2022, a car thief stole a Kia Optima and took it for a joyride. The car thief struck a parked vehicle, resulting in the Kia flipping onto its passenger side and landing in the front yard of a two person residence in the Mark Twain / I-70 Industrial neighborhood. The stolen Kia caused significant damage to the parked car and the homeowners' vehicle, which was parked in their driveway.

46.     In August 2022, a stolen Kia Optima and a stolen Hyundai Sonata were involved in a mid-day shootout near a busy intersection south of downtown, in which a 17-year-old was shot and a bullet entered an occupied apartment.[7]

47.     On September 6, 2022, a bicyclist traveling on South Grand Boulevard was struck and killed by a speeding Kia vehicle, which, on information and belief, was a defective Kia vehicle that had been stolen.[8]

48.     The foreseeable use of Kia and Hyundai's defective products by car thieves has also resulted in substantial damage to city property, including fire hydrants, street signs and traffic signals, which St. Louis has expended funds to repair and replace.

---

[6] Christine Byers, *St. Louis Threatens to Sue Hyundai and Kia Over Theft Epidemic* (August 29, 2022), available at https://www.ksdk.com/article/news/investigations/st-louis-threatens-to-sue-hyundai-kia-over-theft-epidemic/63-ba297b2b-e09d-4087-a3ed-00960f7815b7.

[7] *Id.*

[8] Sam Clancy, *Bicyclist Killed in Hit-and-Run Crash Near Tower Grove Park in South St. Louis* (September 7, 2022), available at https://www.ksdk.com/article/news/crime/bicyclist-killed-hit-and-run-crash-tower-grove-park-south-st-louis/63-feccae6a-a139-4541-9025-aab3d579eae4.

49. Defendants' failure to equip their Kias/Hyundais with immobilizer technology has resulted in an increased expenditure of city resources, forcing St. Louis to devote significant manpower to documenting, investigating and recovering stolen Kia and Hyundai vehicles.

50. Additionally, the city's towing service has been inundated with requests to tow recovered stolen Kias and Hyundais. Plaintiff City of St. Louis has incurred significant costs relating to employee time spent towing and processing stolen defective Kia and Hyundai vehicles.

51. The financial resources St. Louis has expended in an attempt to protect its residents from Defendants' defective Kias/Hyundais far outpaces its ordinary expenditures and diverts financial and human resources—creating further downstream impacts, such as siphoning resources that could be devoted to other law enforcement priorities, such as efforts to reduce violent crime.

52. The financial burdens on St. Louis, which are caused by the thefts of Defendants' Kias/Hyundais, are continuing and persistent.

53. Although Kia and Hyundai are aware of the substantial harm their products have caused St. Louis—as well as numerous other cities throughout the United States—neither company has taken responsibility for their design flaw nor offered to remedy the grievous harms its products have imposed on customers and local governments across the country.

**Count I**
**(Public Nuisance)**

54. Plaintiff incorporates by reference paragraphs 1 – 53.

55. The Defendants designed, manufactured and put into the stream of commerce Kias/Hyundais lacking immobilizer technology, an inexpensive technology that had been standard equipment on most new vehicles manufactured since the late 1990s.

11

56.     By knowingly and intentionally failing to equip their Kias/Hyundais with immobilizers, Defendants introduced defective and unsafe vehicles into the stream of commerce, vehicles that were marketed and sold to citizens of St. Louis.

57.     Defendants failed to warn consumers who, had they been warned of the defective condition, would not have purchased defective Kias/Hyundais to be operated in St. Louis.

58.     Defendants knew or should have known thefts and attempted thefts, as well as the use of stolen cars in the commission of other crimes and unsafe driving, to be the natural and probable consequence of their failure to equip their Kias/Hyundais with immobilizer technology. Defendants' conduct constitutes an unreasonable and significant interference with the general public's common rights to public safety, peace, welfare, health, and use of public streets.

59.     Stolen cars constitute a major hazard to the public safety of the St. Louis community, as they are likely to be driven in an unsafe manner and are used in connection with the commission of other crimes.

60.     The public nuisance—in the form of Kias/Hyundai-related violence, property destruction, and the siphoning off of St. Louis's law enforcement resources—that has been suffered by the city, its visitors and residents is the natural and probable consequence of Defendants' defective products and could reasonably have been foreseen and anticipated by Defendants.

61.     Defendants knew or should have known that their failure to equip their Kias/Hyundais with immobilizer technology would seriously jeopardize public safety and result in property damage, the siphoning off of law enforcement resources, and injury and death.

62.     Defendants have shown a reckless and callous disregard for the serious threat that the defective condition of their Kias/Hyundais pose to public safety. Despite having notice of the

public nuisance created by their products, Defendants—who have the ability to abate the nuisance by installing immobilizer anti-theft technology on cars that they already have sold—have knowingly and intentionally refused to do so, thereby willfully perpetuating the nuisance.

63. Defendants' failure to install immobilizing technology significantly interferes with the public health, the public safety, the public peace and the public comfort in that Defendants' products are susceptible to theft and, thereafter, operation in an unsafe manner, endangering city drivers and pedestrians.

64. Defendants' failure to install immobilizing technology interferes with the public health, public safety, the public peace and the public comfort in that said vehicles frequently serve as instrumentalities for the commission of violent crime and property destruction.

65. Defendants' failure to install immobilizing technology threatens the public order, interferes with the public health, the public safety, the public peace and the public comfort in that the vehicles are causing significant vehicle related violence, property damage, and the siphoning off of law enforcement resources.

66. Defendants' failure to remedy the condition that makes their Kias/Hyundais susceptible to theft by juveniles and others within a matter of seconds is of a continuing nature and has produced a permanent or long-lasting effect on the public health and safety.

67. Defendants know or have reason to know their failure to remedy this defective condition, or their marketing, promotion and sale of defective vehicles, has unreasonably interfered with the public's right to health and safety.

WHEREFORE Plaintiff City of St. Louis respectfully requests this Court enter judgment in favor of Plaintiff City of St. Louis and against Defendants Kia and Hyundai and issue an injunction requiring Defendants to abate the nuisance, award Plaintiff damages in excess of

$75,000, attorneys' fees, punitive damages and such other and further relief that this Court deems proper.

**Count II**
**(Products Liability Based Upon Theory of Strict Liability Design Defect)**

68.     Plaintiff incorporates by reference paragraphs 1 – 67.

69.     Defendants, at all relevant times, manufactured, marketed, distributed, and sold defective Kias/Hyundais to city residents, workers, and visitors, in the course of their business.

70.     The relevant Kia and Hyundai vehicles' lack of effective immobilizing technology constituted a design defect that rendered their distribution and sale to, as well as use by, St. Louis residents, workers, and visitors, unreasonably dangerous.

71.     When Defendants' Kias/Hyundais were sold and put to reasonably anticipated use by city residents, workers, and visitors upon city streets, the vehicles were in a defective state that rendered them unreasonably dangerous and susceptible to theft and criminal use by car thieves.

72.     Accordingly, Plaintiff City of St. Louis has been damaged as a direct result of the vehicles' defective conditions, by having to expend significant public resources responding to increased vehicle theft, related criminal activity, and property damage.

WHEREFORE Plaintiff City of St. Louis respectfully requests this Court enter judgment in favor of Plaintiff City of St. Louis and against Defendants Kia and Hyundai and award damages in excess of $75,000, attorneys' fees, punitive damages and such other and further relief that this Court deems proper.

**Count III**
**(Products Liability Based Upon Theory of Strict Liability Failure to Warn)**

73.     Plaintiff incorporates by reference paragraphs 1 – 72.

74.     Defendants have failed to warn consumers of their Kias/Hyundais' unreasonably dangerous risk of theft.

75.     Defendants, at all relevant times, manufactured, marketed, distributed, and sold defective Kias/Hyundais to city residents, workers, and visitors, in the course of Defendants' business.

76.     Defendants did not disclose to purchasers who visit, work or reside in St. Louis that its Kias/Hyundais lacked effective engine immobilizers, or otherwise required special care to make vehicles reasonably safe from theft.

77.     When put to reasonably anticipated use on St. Louis's streets, and when used without such knowledge of its defective characteristics, the Kias/Hyundais were unreasonably dangerous and susceptible to theft.

78.     St. Louis has been damaged as a direct result of Kias/Hyundais being sold without the purchaser having received an adequate warning.

79.     Defendants' failure to warn has resulted in St. Louis having to expend significant public resources responding to increased vehicle theft, related criminal activity, and significant property damage.

WHEREFORE Plaintiff City of St. Louis respectfully requests this Court enter judgment in favor of Plaintiff City of St. Louis and against Defendants Kia and Hyundai and award damages in excess of $75,000, attorneys fees', punitive damages and such other and further relief that this Court deems proper.

## Count IV
### (Products Liability Based Upon Theory of Negligent Liability Design Defect)

80.     Plaintiff incorporates by reference paragraphs 1 – 79.

81.     Defendants, at all relevant times, had a duty of care to design and manufacture their Kias/Hyundais so as to not make them easy to steal.

82.     Defendants breached that duty by designing, manufacturing, marketing, distributing, and selling defective Kias/Hyundais to city residents, workers, and visitors, in the course of Defendants' business.

83.     These Kias/Hyundais were defective because they lacked an effective engine immobilizing system.

84.     The absence of an effective engine immobilizing system, and the latency of such absence, rendered the Kias/Hyundais defective, hazardous, and unreasonably susceptible to theft.

85.     Defendants' breach of their duty of care was the proximate cause of St. Louis's damages, which include having to expend significant public resources responding to increased vehicle theft, related criminal activity, and property damage.

WHEREFORE Plaintiff City of St. Louis respectfully requests this Court enter judgment in favor of Plaintiff City of St. Louis and against Defendants Kia and Hyundai and award damages in excess of $75,000, attorneys' fees, punitive damages and such other and further relief that this Court deems proper.

## Count V
### (Products Liability Based Upon Theory of Negligent Liability Failure to Warn)

86.     Plaintiff incorporates by reference paragraphs 1 – 85.

87.     Defendants, at all relevant times, designed, manufactured, marketed, distributed, and sold defective Kias/Hyundais to purchasers who visit, work or reside in St. Louis, in the course of Defendants' business.

88.     At all relevant times, the Kias/Hyundais lacked an effective engine immobilizing system.

16

89.     The lack of an effective engine immobilizing system in vehicles was a latent defect that makes Kias/Hyundais easy to steal.

90.     Defendants knew or, through the use of ordinary care, should have known, of their vehicles' defect.

91.     Defendants had no reason to believe that authorized drivers of Kias/Hyundais would discover the danger posed by Defendants' failure to include an effective engine immobilizing system in the vehicles.

92.     Defendants failed to use ordinary care to warn purchasers of any defect or danger posed by the vehicles' lack of an engine immobilizing system.

93.     St. Louis was damaged as a direct result of Defendants' negligent design, manufacture, and failure to warn, by having to expend significant public resources responding to increased vehicle theft, related criminal activity, and property damage.

WHEREFORE Plaintiff City of St. Louis respectfully requests this Court enter judgment in favor of Plaintiff City of St. Louis and against Defendants Kia and Hyundai and award damages in excess of $75,000, attorneys' fees, punitive damages and such other and further relief that this Court deems proper.

## <u>CONCLUSION</u>

WHEREFORE Plaintiff City of St. Louis respectfully requests this Court enter judgment in favor of Plaintiff City of St. Louis and against Defendants Kia and Hyundai and award damages in excess of $75,000, attorneys' fees, punitive damages and such other and further relief that this Court deems proper.

Dated: March 27, 2023                              Respectfully submitted,

**SHEENA HAMILTON**                                **DOWD BENNETT LLP**
**CITY COUNSELOR**
*Affirmative Litigation Unit*

By: */s/ Erin K. McGowan*                          By: */s/ Edward L. Dowd Jr.*
Erin K. McGowan          #64020MO                  Edward L. Dowd Jr.       #28785MO
Rebecca S. Vossmeyer     #70342MO                  Gabriel E. Gore          #45416MO
Adam Sheble              #74230MO                  Rebecca McLaughlin       #71969MO


314 City Hall                                      7676 Forsyth Blvd., Suite 1900
1200 Market Street                                 St. Louis, Missouri 63105
St. Louis, Missouri 63103                          (314) 889-7300 (telephone)
(314) 622-3361 (telephone)                         (314) 863-2111 (facsimile)
(314) 622-4956 (facsimile)                         edowd@dowdbennett.com
mcgowane@stlouis-mo.gov                            ggore@dowdbennett.com
vossmeyerr@stlouis-mo.gov                          rmclaughlin@dowdbennett.com
sheblea@stlouis-mo.gov