### BEFORE THE UNITED STATES JUDICIAL PANEL
### ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 3052 |

### CITY OF MILWAUKEE'S MEMORANDUM IN OPPOSITION TO MOTION TO VACATE CONDITIONAL TRANSFER ORDER

The City of Milwaukee, the Plaintiff in *City of Milwaukee v. Hyundai Motor America, et al.*, No. 2:23-cv-000376-JPS (E.D. Wis.), respectfully submits this memorandum of law in opposition to Defendants' Motion to Vacate Conditional Transfer Order (CTO-7) ("Motion" or "Mot."), ECF No. 178. *City of Milwaukee* involves substantially the same factual allegations about Defendants' conduct as the dozens of consumer complaints pending in *In re Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation* ("*In re Kia*"), MDL No. 3052 (C.D. Cal.). Likewise, it shares factual overlap and legal theories with the complaints of the cities of Buffalo, Cincinnati, Cleveland, Madison, and Rochester already pending in the Central District of California after being transferred through Central District of California Local Rule 83-1.3 into *In re Kia*. Given the overlapping facts and legal theories, and for the reasons articulated by the cities of Seattle and Columbus in opposition to similar motions to vacate (ECF Nos. 144, 169), City of Milwaukee respectfully requests that the Judicial Panel on Multidistrict Litigation ("Panel") deny Defendants' Motion and finalize transfer of this action.

## I.      INTRODUCTION

Defendants' Motion is predicated upon two erroneous arguments. The first is that coordinating and consolidating *City of Milwaukee* with the other governmental entity cases already before Judge Selna would not create efficiencies, despite the nearly identical nature of

1

the complaints. The second is that governmental entity cases like *City of Milwaukee* assert different legal claims from the consumer cases and thus lack a factual overlap with the consumer cases. Both arguments are mistaken.

Hyundai and Kia failed to install anti-theft technology in certain vehicles, leaving those vehicles unreasonably susceptible to theft. When those thefts occur, as they have at record levels, they impose costs and damages on vehicle owners[1] and their insurers.[2] They also impose costs on the governmental entities forced to respond to the rash of crimes—not only the crime of automobile theft, but crimes facilitated by stolen vehicles, including reckless driving, robberies, and other dangerous crimes.

The rash of thefts of Kias and Hyundais is at the heart of all the cases in MDL No. 3052. These thefts are critical links in a chain of events starting with Hyundai and Kia's decisions to place profits over safety and forgo engine immobilizers in the vast majority of their vehicles sold in the United States and ending in damages to both consumers and government entities. For consumers, the thefts are often the final link. For governmental entities, these thefts constitute a public nuisance by endangering the public,[3] are linked to increased costs to respond to vehicle thefts and other crimes facilitated by the stolen vehicles, and can result in damage to property, and injuries to governmental employees, among others.[4]

---

[1] Consolidated Amended Consumer Class Action Complaint ¶¶ 1401-49, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-03052-JVS-KES (C.D. Cal. April 10, 2023), ECF No. 84 (alleging that "[t]he epidemic of Class Vehicles has created a sense of lawlessness in many cities").

[2] *State Automobile Mutual Insurance Company v. Hyundai Motor America*, 8:23-ml-00043-JVS-KES, (C.D. Cal March 10, 2023).

[3] Complaint ¶¶ 32-33, 37-38, *City of Milwaukee*, No. 2:23-cv-000376-JPS (E.D. Wis. Mar. 22, 2023), ECF No. 1.

[4] *Id.* ¶¶ 34-36.

This exigent crisis is widespread, impacting individuals and governmental entities across the country.[5] In addition to the consumer class cases, there are now eight[6] complaints in federal court, including *City of Milwaukee*, involving governmental entities suing the same Defendants over the same course of conduct.[7] Five of those governmental entity complaints were originally filed in the Central District of California and have already been related to the MDL and reassigned to Judge Selna through Central District of California Local Rule 83-1.3.[8] Four cases, including *City of Milwaukee*, were filed in the judicial district encompassing the plaintiff-city, and have been conditionally transferred into the MDL by the Panel.[9] Defendants have moved to

---

[5] *See* Tim Arango & Jacey Fortin, *Teens Are Stealing More Cars. They Learn How on Social Media*, N.Y. Times (Mar. 10, 2023), http://www.nytimes.com/2023/03/10/us/car-thefts-kia-challenge-tiktok.html.

[6] In addition to these cases, the City of New York has publicly declared an intent to file a case related to the Hyundai and Kia theft crisis. *See Mayor Adams, City Corporation Counsel Hinds-Radix Announce City Intends to File Suit Against Kia, Hyundai for Refusing to Safeguard Vehicle*, NYC (Apr. 7, 2023), https://www.nyc.gov/office-of-the-mayor/news/242-23/mayor-adams-city-corporation-counsel-hinds-radix-city-intends-file-suit-against-kia-.

[7] *City of Seattle v. Hyundai Motor Am., Inc.*, No. 2:23-cv-00098-JLR (W.D. Wash.); *City of Columbus v. Kia Am., Inc.*, No. 2:23-cv-00654-SDM-EPD (S.D. Ohio); *City of Cleveland v. Hyundai Motor Am.*, No. 8:23-cv-00419-JVS-KES (C.D. Cal.); *City of Cincinnati v. Hyundai Motor Am.*, No. 2:23-cv-01750- JVS-KES (C.D. Cal.); *City of Madison v. Hyundai Motor Am.*, No. 8:23-cv-00555-JVS-KES (C.D. Cal.); *City of St. Louis v. Kia Am., Inc.*, No. 4:23-cv-00379-RLW (E.D. Mo.); *City of Buffalo v. Hyundai Motor Am.*, No. 8:23-cv-00572-JVS-KES (C.D. Cal.).

[8] *See* Order Re Transfer Pursuant to General Order 21-01 (Related Cases), *City of Cleveland*, No. 8:23-cv-00419-JVS-KES (C.D. Cal. Mar. 13, 2023), ECF No. 22; Order Re Transfer Pursuant to General Order 21-01 (Related Cases), *City of Cincinnati*, No. 2:23-cv-01750- JVS-KES (C.D. Cal. Mar. 13, 2023), ECF No. 20; Order Re Transfer Pursuant to General Order 21-01 (Related Cases), *City of Madison*, No. 8:23-cv-00555-JVS-KES (C.D. Cal. Apr. 3, 2023). ECF No. 21; Order Re Transfer Pursuant to General Order 21-01 (Related Cases), *City of Buffalo*, No. 8:23-cv-00572-JVS-KES (C.D. Cal. Apr. 11, 2023), ECF No. 17; Order Re Transfer Pursuant to General Order 21-01 (Related Cases), *City of Rochester*, No. 8:23-cv-00736-JVS-KES (C.D. Cal. May 2, 2023), ECF No. 18.

[9] *See* Conditional Transfer Orders, ECF Nos. 124 (*City of Seattle*), 136 (*City of Columbus*), 155 (*City of Milwaukee*), 164 (*City of St. Louis*).

vacate the conditional transfers of *City of Seattle*, *City of Columbus*, and *City of Milwaukee*, and have filed an opposition to the transfer of *City of St. Louis*.[10]

These governmental entities' complaints share not only a common nexus of factual issues, but common claims, arising in public nuisance. The fundamental overlap of core issues between all of these cases warrants denying Defendants' Motion and supports finalizing the transfer of *City of Milwaukee* to the MDL for coordinated and/or consolidated proceedings. What's more, *City of Madison* and *City of Milwaukee* both allege public nuisance and negligence claims under Wisconsin law. Consolidating *City of Milwaukee* with *City of Madison* will avoid inconsistent pretrial rulings on identical questions of Wisconsin state law.

As detailed in *City of Seattle's* opposition to Defendants' Motion to Vacate Conditional Transfer Order (CTO-5), ECF No. 133, Judge Selna has already carefully considered the structure of this MDL and issued a Case Management Order that expressly provides for and appoints leadership of a Governmental Entities Committee.[11]

As Defendants and Interim Conference Counsel for Plaintiffs represented to Judge Selna in their Joint Preliminary Report, "[a]ll of the cases transferred as part of MDL No. 3052 involve claims arising from the allegation that certain vehicles distributed or manufactured by Defendants did not include 'engine immobilizers,' which allegedly made them more susceptible to theft."[12] More recently, Defendants joined in a stipulated request for an extension and discovery stay in *City of San Diego v. Hyundai Motor America*, to "coordinate discovery and

---

[10] *See* Defs.' Mot. to Vacate Conditional Transfer Order, ECF Nos. 133 (*City of Seattle*), 151 (*City of Columbus*), 178 (*City of Milwaukee*); Notice of Opp'n to Conditional Transfer Order (CTO-8), ECF No. 170 (*City of St. Louis*).

[11] *See* City of Seattle's Mem. in Opp'n to Mot. to Vacate Conditional Transfer Order ("City of Seattle's Opp'n") at 2-3, ECF No. 144; Order No. 2: Adoption of Organization Plan & Appointment of Counsel ("Order No. 2") at 2-3, ECF No. 144-1.

[12] *See* Joint Preliminary Report at 4, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-03052-JVS-KES (C.D. Cal. Jan. 30, 2023), ECF No. 40.

other proceedings herein with the federal municipal actions, to promote judicial economy and efficiency."[13] This is equally true of the instant action and the other governmental entity actions as it is of the consumer actions.[14] Rather than upset the structure that Judge Selna has set out and the efficiencies of the coordination efforts already underway, this Panel should finalize transfer and allow the work to continue apace.

## II.     ARGUMENT

The issue before the Panel is whether Conditional Transfer Order (CTO-7), ECF No. 155, satisfies the requirements of 28 U.S.C. § 1407. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). A transfer order is appropriate if (1) actions pending in different federal courts involve "one or more common questions of fact," and (2) centralization "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). This is not a close case. Because the actions involve one or more common questions of fact, transfer will promote the just and efficient conduct of the actions, and transfer will serve the convenience of the parties and witnesses, Defendants' Motion should be denied.

### A.     *City of Milwaukee* and the Consumer Cases Share Common Questions of Fact.

It is well-established that "[t]ransfer under Section 1407 does not require a complete identity of common factual issues . . . and the presence of additional facts or differing legal theories is not significant where . . . the actions still arise from a common factual core." *See In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014).

*City of Milwaukee* shares common facts with the consumer class actions centralized in MDL No. 3052. These complaints all center around Defendants' decisions to omit industry-

---

[13] Stip. To Extend Case Sched. 3, *City of San Diego v. Hyundai Motor Amer.*, No. 37-2023-00011527-CU-NP-CTL (April 28, 2023).
[14] *See, e.g.*, Amended Complaint ¶ 1, *Marvin*, No. 2:21-cv-01146-PP (July 8, 2022), ECF No. 35; Complaint ¶ 19, *City of Milwaukee*, No. 2:23-cv-000376-JPS (Mar. 22, 2023), ECF No. 1.

standard antitheft technology from certain automobiles sold in the United States, making those vehicles unreasonably susceptible to theft.

In their Motion, Defendants state that *City of Milwaukee* is based on "fundamentally different facts" from the consumer cases, identifying the following as among factual inquiries that are not relevant to this Action:

- The designs of the various models and model year vehicles at issue;

- Whether and when Kia and Hyundai became aware of an alleged defect in each of the models and model years at issue; . . .

- Whether plaintiffs' vehicles were allegedly stolen, the circumstances surrounding those thefts, and the varying alleged injuries from those individual thefts.

Br. in Supp. of Defs.' Mot. ("Defs.' Br.") at 10-12, ECF No. 178-1. These facts overlap with the factual issues implicated in the Governmental Entity actions. Defendants' decisions to cut corners at the expense of public safety, and knowledge of the risks associated with cutting those corners, are allegations that *City of Milwaukee* shares with the consumer cases.[15] 1The same vehicle thefts that undergird the consumer complaints from the point of view of the consumers are at the crux of *City of Milwaukee*, and the other governmental entity cases, from the point of the view of the city-plaintiffs. A change in perspective does not change this core commonality, which Judge Selna noted in a status conference in the MDL:

> The Court: . . . Obviously, there has to be coordination [between the Government Entity and Consumer cases].

> Ms. Cappio: Absolutely. We will coordinate.

> The Court: I mean, the basic fact discovery with respect to how these cars were developed and so on, that's not going to differ from plaintiff to plaintiff regardless

---

[15] Complaint ¶ 90, *City of Milwaukee*, No. 2:23-cv-000376-JPS (Mar. 22, 2023), ECF No.

of whether it's an individual or a public entity. So obviously there needs to be some coordination there.[16]

The standard under 28 U.S.C. § 1407 is not identicality, and the argument that transfer under 28 U.S.C. § 1407 is inappropriate because actions are different "just won't carry the day if, in fact, there are numerous fact similarities." *See Multidistrict Litigation Manual* § 5:45 (West May 2023 update). Nor must cases have identical claims to be properly joined as part of an MDL. *See, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) ("Section 1407 does not require a complete identity or even majority of common factual and legal issues as a prerequisite to centralization[.]").

Defendants point to representations made by various counsel in the MDL about the distinctiveness of the governmental entity cases from the consumer cases. Defs.' Br. at 13-14. Those statements were made in the context of determining whether there should be a separate track in the MDL for Governmental Entity cases.[17] Judge Selna heard those arguments and stated that:

> This has been very helpful to me to better appreciate the multiple aspects of this. I come away from this believing that there ought to be a track for governmental entities that's separate from the basic consumer track.[18]

Far from showing that the Consumer and Governmental Entity cases are so factually distinct as to make transfer under Section 1407 inappropriate, when taken as a whole, Judge Selna's comments show that they have substantial factual overlap and will benefit from coordination, including in key discovery.

---

[16] Hearing Transcript at 15:11-18, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-03052-JVS-KES (Mar. 13, 2023), ECF No. 74.

[17] Hearing Transcript at 65:15-19, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-03052-JVS-KES (Feb. 7, 2023), ECF No. 51.

[18] *Id.*

There is undeniably a shared factual core between all of the cases. Defendants' decision to omit an industry standard anti-theft system has led to a crisis of stolen Hyundais and Kias. That crisis has harmed both consumers and municipalities. Where, as here, "complaints assert comparable allegations against identical defendants based upon similar transactions and events, common factual questions are presumed" . . . and "the mere fact that divergent legal theories are asserted arising out of the same substantive claims and allegations presents no bar to a Section 1407 transfer." *In re Air W., Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974). These efficiencies will be even more significant with the other governmental entity complaints already on file and related to the MDL.

**B.      *City of Milwaukee* and the other Governmental Cases Share Common Questions of Fact and Law.**

Defendants next argue that *City of Milwaukee* does not have a substantial factual overlap with the other Governmental Entity cases, as *City of Milwaukee* is centered around Milwaukee, and the other municipal plaintiffs are confined to their own boundaries. Defs.' Br. at 14. This argument would apply equally—and equally unpersuasively—to any case where governmental entities sue common defendants for the same harm manifested in their distinct borders, including *In re National Prescription Opiate Litigation*, No. 1:17-md-02804-DAP (N.D. Ohio); *In re Juul Labs, Inc., Marketing, Sales Practices, & Products Liability Litigation*, No. 3:19-md-02913-WHO (N.D. Cal.); and, most recently, *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, No. 4:22-md-03047-YGR, (N.D. Cal.). Defendants' argument falls just as flat here as it would in those effective MDLs.

Were individual plaintiffs' damages a barrier to centralization, a transfer under Section 1407 would be a near impossibility. Defendants' focus on the alleged distinctions between the municipal plaintiffs overlooks the obvious commonality—the Defendants and their vehicles.

And Defendants do not argue that there would be any unique discovery taken from the Defendants in the various Governmental Entity cases. For support, Defendants cite to recent cases where plaintiffs—not defendants—opposed centralization, such as *In re Arizona Beverage Co. Products Marketing & Sales Practices Litigation*, 609 F. Supp. 2d 1369 (J.P.M.L. 2009) (three plaintiffs, all of which opposed consolidation) and *In re Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act (FLSA) Litigation*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (plaintiffs in donning and doffing cases opposed centralization.)

In *Tyson Foods*, different discovery would need to be taken of the defendants in each action, as the alleged violations occurred in different plants. *Id.* Here, Defendants would be subject to nearly identical discovery requests from all of the municipal plaintiffs were the cases not consolidated, and the burdens of any unique municipal plaintiff discovery could be addressed through common practices—such as bellwethers or plaintiff fact sheets—made possible by an MDL.

Defendants also cite *In re Petroleum Products Antitrust Litigation*, 476 F. Supp. 455 (J.P.M.L. 1979), where the transfer of potential tag-along actions was denied because it would "have a significant impact upon the pretrial program designed by" the transferee judge. *Id.* at 458. Here, the exact opposite is true. The Panel's vacatur of conditional transfer would upset the carefully reasoned structure that Judge Selna has already created for Governmental Entity cases in MDL No. 3052.[19]

Defendants' argument that consolidation of *City of Milwaukee* and the other Governmental Entity cases could create potential delay is an axiomatic examples of a "case management concern[] appropriate to raise with the transferee court for resolution." *In re Digital*

---

[19] *See* City of Seattle's Opp'n at 14; Order No. 2 (ECF No. 144-1).

*Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1378 (J.P.M.L. 2021). In *Digital Advertising*,

three distinct types of plaintiffs—advertisers, publishers, and States—were consolidated because

their core factual questions were united despite their distinct legal theories and harms. *Id.* at

1374. The Panel noted in that case that given the substantial overlap, there was a distinct risk of

inconsistent rulings that could not be averted through informal coordination. *Id.* at 1376-77.

Here, the substantial risk of inconsistent rulings results not only from the common factual core,

but also the fact that *City of Milwaukee* and *City of Madison* assert nearly identical public

nuisance and negligence claims arising under Wisconsin law.[20]

## C.      Transfer Will Promote the Just and Efficient Conduct of the Actions.

The common factual nexus between the Governmental Entity and Consumer actions

means that there will be substantial common discovery. The consumer plaintiffs identified as

core discovery topics:

- The nature, scope, and existence of design and/or manufacturing defect(s) in
  the Affected Vehicles that create a security vulnerability in the vehicles and
  makes them highly prone to theft;

- The design, development, and manufacture of the Affected Vehicles' steering
  column assembly and ignition systems, including, the ignition lock cylinders
  and ignition switches, as well as alternative and competitive product designs;

- The design, development, and manufacture of the Affected Vehicles' anti-theft
  and alarm systems, as well as alternative and competitive product designs;

- Whether Defendants' design, development, and manufacture of the Affected
  Vehicles comport with the standard of care in the automotive industry and
  Federal Motor Vehicle Safety Standards ("FMVSS"), including FMVSS No.
  114;

- Defendants' documentation, testing and evaluation demonstrating compliance
  with FMVSS No. 114;

---

[20] *Compare* Complaint ¶¶ 74-113, *City of Madison*, No. 8:23-cv-00555-JVS-KES (C.D. Cal.
Mar. 27, 2023), ECF No. 1, *with* Complaint ¶¶ 79-117, *City of Milwaukee*, No. 2:23-cv-00376-
JPS (Mar. 22, 2023), ECF No. 1.

- Defendants' submissions to NHTSA regarding any proposed rulemaking concerning FMVSS 114, engine immobilizers, or exemptions to parts marking requirements ("PMR");

- Whether the alleged Defect(s) in the Affected Vehicles was a substantial factor in auto thefts of such Vehicles;

- Defendants' applications to NHTSA for exemptions from PMR for certain of their vehicles, pursuant to 49 C.F.R. §§ 543.1 *et seq.*;

- Defendants' knowledge concerning the effectiveness of engine immobilizers in preventing auto thefts;

- Defendants' decisions to exclude engine immobilizers as a standard safety component in all of their vehicles sold in the United States prior to model year 2023 vehicles and Defendants' decisions to include immobilizers in certain models;

- Defendants' decision to install engine immobilizers in any of their U.S. vehicles.[21]

Each of these topics is relevant to *City of Milwaukee's* case.

In fact, Defendants listed "theft data and statistics" and "[p]olice reports or other documents related to thefts of Plaintiffs' vehicles" as discovery they would pursue from third parties that is related to the consumer cases.[22] This is precisely the type of discovery that they now argue would be "irrelevant" to those actions, and "would offer no benefits" to the consumer cases. *See* Defs.' Br. at 10, 13, 15.

In addition to common factual issues, Defendants list as potential affirmative defenses to the consumer cases: preemption, the intervening acts of third parties, statutes of limitations, the economic loss rule, and the absence of causation.[23] City of Milwaukee is confident that it will prevail on these defenses but anticipates Defendants will raise these or similar defenses in the

---

[21] Joint Preliminary Report at 13-14, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-03052-JVS-KES (Jan. 30, 2023), ECF No. 40.

[22] *Id.* at 20.

[23] *See* Joint Preliminary Report at 12-13, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-03052-JVS-KES (Jan. 30, 2023), ECF No. 40.

governmental entity cases as well. Thus, transfer will avoid potential conflicting rulings, prevent duplication of discovery on common issues, avoid conflicting and duplicative pretrial conferences, advance judicial economy, and reduce the burden on parties by allowing for the division of workload among several attorneys. Transfer will also serve the convenience of the parties and witnesses.

**D.     Transfer Will Serve the Convenience of the Parties and Witnesses.**

As the Panel found in its initial Transfer Order, consolidation and centralization in the Central District of California is appropriate because it is where Defendants are headquartered. *In re Kia*, 2022 WL 17843100, at *2. Thus, "centralization in this district should be convenient for their witnesses." *Id.* The Panel noted that the Central District of California offers an accessible district, if needed, for witnesses or defendants located in Korea, and is an underutilized transferee district. *Id.* Each of these factors is equally true for this case.

The Government Entity and Consumer plaintiffs have already begun liaising with Defendants on critical initial decisions, including a stipulated protective order, service on foreign entities, and ESI protocols.[24] As Judge Selna noted, there are "an increasing number of municipalities" involved in this litigation, necessitating a mechanism for coordinating on discovery.[25]

Discovery is underway. Judge Selna has allowed "foundational" or "structural" discovery prior to motions to dismiss being heard—to include document requests and a potential Rule 30(b)(6) deposition regarding the organizational structure of the Defendants and to identify potential merits deponents—and the work has already begun on coordinating structural discovery

---

[24] Hearing Transcript at 8:6-11, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-03052-JVS-KES (Apr. 6, 2023), ECF No. 86.
[25] *Id.* at 6:3-9.

requests.[26]. Consolidating *City of Milwaukee* with the other Governmental Entity cases, Consumer cases, and insurer case already a part of MDL No. 3052 will facilitate these and other efficiencies already arising in this litigation.

### III.    CONCLUSION

In selecting Judge Selna to preside over this litigation, the Panel chose "a skilled jurist who is well-versed in the nuances of complex and multidistrict automotive litigation to steer this matter on a prudent course." *In re Kia*, 2022 WL 17843100, at *2. Judge Selna, having been apprised of Defendants' opposition to conditional transfer and after hearing from counsel, implemented a case management structure that expressly provides for the inclusion of governmental entity claims in MDL No. 3052 and appointed the undersigned Chair of a Governmental Entities Committee.[27] His recent rulings have only made it clearer that the Governmental Entity cases are at home in the MDL. *See* Exhibit 1.

With additional governmental entity complaints already related to *In re Kia*, the appropriateness of consolidation will achieve more efficiencies than ever. Judge Selna has created a case management structure specifically designed to accommodate these actions while promoting the just and efficient progression of the MDL as a whole. If, at a future date, Judge Selna finds that fundamental differences outweigh the efficiencies and conveniences afforded by consolidation, he can recommend remand. *See* JPML Rule 10.1, 199 F.R.D. 425, 436-38 (2001). But that determination, and the degree of coordination between the Government and Consumer cases, are matters best left to Judge Selna as the transferee Judge. City of Milwaukee respectfully

---

[26] Hearing Transcript at 17:25-18:7, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-03052-JVS-KES (Mar. 13, 2023), ECF No. 74

[27] *See* City of Seattle's Mem. in Opp'n to Mot. to Vacate Conditional Transfer Order ("City of Seattle's Opp'n") at 2-3, ECF No. 144; Order No. 2: Adoption of Organization Plan & Appointment of Counsel ("Order No. 2") at 2-3, ECF No. 144-1.

requests that the Panel deny Defendants' Motion and finalize transfer of its action to MDL No. 3052 in the Central District of California.

DATED: May 5, 2023                Respectfully submitted,

                                    */s/ Gretchen Freeman Cappio*
                                    Gretchen Freeman Cappio
                                    KELLER ROHRBACK L.L.P.
                                    1201 Third Avenue, Suite 3200
                                    Seattle, WA 98101
                                    Phone: (206) 623-1900
                                    Fax: (206) 623-3384
                                    gcappio@kellerrohrback.com

                                    *Attorney for Plaintiff City of Milwaukee*