# EXHIBIT 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

IN RE:  KIA HYUNDAI        )  CERTIFIED TRANSCRIPT
VEHICLE THEFT MARKETING,   )
SALES PRACTICES, AND       )
PRODUCTS LIABILITY         )     SAML-22-03052-JVS
LITIGATION                 )
--------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

March 13, 2023

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(612) 804-8655

1  APPEARANCES OF COUNSEL:

2  For the Plaintiffs:

3  STEVE W. BERMAN
   HAGENS BERMAN SOBOL SHAPIRO, LLP
4  1301 Second Avenue, Suite 2000
   Seattle, WA 98101
5  (206) 623-7292

6  ELIZABETH A. FEGAN
   FEGAN SCOTT, LLC
7  150 South Wacker Drive, 24th Floor
   Chicago, IL 60606
8  (312) 741-1019

9  KENNETH B. MCCLAIN
   HUMPHREY, FARRINGTON & MCCLAIN, PC
10 221 West Lexington, Suite 400
   Independence, MO 64051
11 (816) 836-5050

12 **For Plaintiffs CITY OF SEATTLE; CITY OF CLEVELAND.**
                **CITY OF CINCINNATI**
13
   **GRETCHEN FREEMAN CAPPIO**
14 **RYAN MCDEVITT**
   KELLER ROHRBACK, LLP
15 1201 Third Avenue, Suite 3200
   Seattle, WA 98101
16 (206) 623-1900

17 For the Defendants:

18 PETER J. BRENNAN
   JENNER & BLOCK, LLP
19 353 North Clark Street
   Chicago, IL 60654-3456
20 (312) 222-9350

21 **MADELINE P. SKITZKI**
   JENNER & BLOCK, LLP
22 515 South Flower Street, Suite 3300
   Los Angeles, Ca 90071-2246
23 (213) 239-2284

24

25

|       |                                                                      |
|-------|----------------------------------------------------------------------|
| 1     | SANTA ANA, CALIFORNIA; MONDAY, MARCH 13, 2023; 8:01 A.M.              |
| 2     | THE CLERK:  Item No. 1, SAML-22-03052-JVS, In Re                      |
| 3     | Kia Hyundai Vehicle Theft Litigation.                                 |
| 4     | Counsel, if you could please state your                              |
| 5     | appearances.                                                          |
| 6     | MR. BERMAN:  Good morning, Your Honor.  Steve                        |
| 7     | Berman for the plaintiffs.                                            |
| 8     | THE COURT:  Good morning.                                            |
| 9     | MR. TELLIS:  Good morning, Your Honor.  Roland                       |
| 10    | Tellis, with Baron & Budd, also on behalf of the plaintiffs.          |
| 11    | THE COURT:  Good morning.                                            |
| 12    | MR. MCCLAIN:  Kenneth McClain on behalf of the                      |
| 13    | plaintiffs.                                                           |
| 14    | MS. FEGAN:  Good morning, Your Honor, Elizabeth                      |
| 15    | Fegan for plaintiffs.                                                 |
| 16    | THE COURT:  Good morning.                                            |
| 17    | MS. CAPPIO:  Good morning, Your Honor.  Gretchen                    |
| 18    | Freeman Cappio of Keller Rohrback for the governmental               |
| 19    | entities, the City of Seattle, the City of Cleveland, and            |
| 20    | the City of Cincinnati.                                               |
| 21    | THE COURT:  Good morning.                                            |
| 22    | MR. MCDEVITT:  Ryan McDevitt, Keller Rohrback, for                  |
| 23    | the governmental entities of the City of Seattle, the City           |
| 24    | of Cleveland, and the City of Cincinnati.                            |
| 25    | THE COURT:  Good morning.                                            |

The timestamps in the left margin (08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:01, 08:02, 08:02, 08:02, 08:02, 08:02) correspond to lines 2 through 25.

08:02  1          MR. BRENNAN:  Good morning, Your Honor.  Peter
08:02  2  Brennan from Jenner & Block on behalf of defendants.
08:02  3          MS. SKITZKI:  Madeline Skitzki for defendants.
08:02  4          THE COURT:  Good morning.
08:02  5          Thank you for the joint report which you put in.
08:02  6  I think it's very helpful and gives us a good framework for
08:02  7  our discussion today.
08:02  8          Let's begin with the Consolidated Complaint.  Your
08:02  9  proposal is that each side basically pick three states to
08:02  10  litigate on a 12(b)(6) motion.  That makes a lot of sense to
08:02  11  me.  I mean, a substantial number of cars will be covered by
08:02  12  the states you pick I assume.
08:02  13          MR. BERMAN:  Our intent was to pick states at
08:02  14  least on our side that would have a meaningful impact in
08:03  15  terms of cars covered and the types of claims that you may
08:03  16  have to consider.  So, for example, you know, often in these
08:03  17  cases, you've got the issue of manifestation.  So it would
08:03  18  seem to me that we would tee up a state where we don't think
08:03  19  it's required and a state where it may be required, and
08:03  20  maybe that gives us guidance down the road.  That was our
08:03  21  thinking.
08:03  22          THE COURT:  Okay.
08:03  23          Mr. Brennan.
08:03  24          MR. BRENNAN:  We agree with that, Your Honor.  Of
08:03  25  course, our original idea was that we pick all of the

08:03    **1**    states.  Mr. Berman didn't like that, so we compromised that

08:03    **2**    three states apiece would seem fairly sensible.

08:03    **3**             THE COURT:  Yes, and I think we'll get a

08:03    **4**    sufficient number of answers out of the cases you pick to be

08:03    **5**    helpful going down the road.

08:03    **6**             You propose a single brief on this motion.

08:03    **7**             MR. BRENNAN:  Correct, so we'd put in 50 pages,

08:03    **8**    and then they'd do 50 for the reply.

08:04    **9**             THE COURT:  The limit is six to eight, so I think

08:04    **10**    that would be plenty.

08:04    **11**             In terms of the schedule you propose, I would hope

08:04    **12**    we could shrink the briefing schedule down some.  I'm fine

08:04    **13**    with the Consolidated Complaint being filed on April 10.

08:04    **14**    Plaintiffs' designation, three states, by April 12, but I

08:04    **15**    don't want to be out in the middle of summer before we know

08:04    **16**    which claims are viable at least on the first round of

08:04    **17**    pleading.

08:04    **18**             So what I would propose is that defendants'

08:04    **19**    response would be 5/1.  That's nearly a month from the

08:05    **20**    filing of the -- well, three or four weeks from the filing

08:05    **21**    of the Consolidated Complaint.  May 30 for defendants'

08:05    **22**    opposition and then June 12 for the reply.  Then I would set

08:05    **23**    a hearing date fairly promptly, but I think we can move a

08:05    **24**    little more quickly on the pleadings issues.

08:05    **25**             MR. BRENNAN:  That's fine, Your Honor.  Of course,

08:05  1   when you say what you propose, that will be what you order,

08:05  2   and that's fine by us.

08:05  3            THE COURT:  Well, I want to make sure it's doable

08:05  4   from your perspective, but I think it is.

08:05  5            MR. BRENNAN:  If it becomes an issue -- obviously

08:05  6   it's a lot of briefing quickly, and of course my colleagues

08:05  7   will be doing a lot of it, but we will try to get that done.

08:06  8   If there's some issue with it, we'll then come back and ask

08:06  9   for some slight adjustment if that's okay with Your Honor.

08:06  10           THE COURT:  That's fair.

08:06  11           MR. BERMAN:  That's fine with us, Your Honor, as

08:06  12  well.

08:06  13           THE COURT:  In terms of initial disclosures, you

08:06  14  proposed April 14 for that.  I think there ought to be

08:06  15  initial disclosures and that they should be somewhat

08:06  16  fulsome.  I say that in view of my thought that we ought to

08:06  17  delay somewhat the start of discovery with some exceptions.

08:06  18  I don't think that the defendants' pared down version of

08:06  19  disclosures is going to be adequate, so I would go back and

08:06  20  make the disclosures you'd make in any case, albeit a very

08:06  21  large case, but it seems to me that the defendants can make

08:07  22  a more fulsome showing than anticipated in your papers.

08:07  23           MR. BRENNAN:  Okay, Your Honor.  That's what we

08:07  24  will do.

08:07  25           THE COURT:  It seems to me that the particulars

08:07  1   that defendants suggest ought to be made by plaintiffs with

08:07  2   respect to individual plaintiffs is probably accurate.  I

08:07  3   don't know that we need all of that detail, but there is

08:07  4   some basic information there that they seek, and I think

08:07  5   they're entitled to it early on.

08:07  6          MR. BERMAN:  Your Honor, Steve Berman.  We were

08:07  7   intending to provide most of that information, but since we

08:07  8   don't know yet exactly what the claims are, there might be a

08:07  9   few things in there that we would not put in, but we

08:07  10  understand that they're entitled to that information.  Most

08:07  11  of it will be in the Complaint.

08:07  12         THE COURT:  Okay.  How many individual plaintiffs

08:07  13  do you anticipate?  Are you going to have one per state?

08:08  14         MR. BERMAN:  We're going at least have one per

08:08  15  state, and then what we're wrestling with people who have

08:08  16  theft insurance, people who didn't, whether we need to have

08:08  17  one of each.

08:08  18         THE COURT:  Well, isn't it a subrogation issue?

08:08  19         MR. BERMAN:  Yes, but there will be losses for

08:08  20  those folks in addition to what's covered by insurance that

08:08  21  they would want to claim.

08:08  22         THE COURT:  Understood.

08:08  23         MR. BERMAN:  The issue is whether the case law --

08:08  24  you know, if we have a plaintiff didn't have insurance and

08:08  25  we're also seeking to have that person represent people who

08:08  1   had insurance, we're likely to get the argument, you know,

08:08  2   there's no Article III standing or typicality issues on Rule

08:08  3   23.  So we've got to make that decision, and we cover all

08:08  4   our bases knowing that at the end of the road that brings

08:09  5   complexity on -- there's that many more depositions, that

08:09  6   much more discovery.  So we're balancing that.  That's why I

08:09  7   can't answer your question precisely.

08:09  8            THE COURT:  Okay.

08:09  9            MR. BRENNAN:  Your Honor, just to go over some of

08:09  10  the detail, I mean, what we're asking for is the brand.  Is

08:09  11  it a Kia or a Hyundai?  That seems basic, the model that

08:09  12  they have, the model year that they have, the trim level,

08:09  13  SX, LX, whatever it is, that kind of thing.

08:09  14            THE COURT:  Right.

08:09  15            MR. BRENNAN:  We want to know place of residence;

08:09  16  place of purchase; new or used; from whom, new car dealer or

08:09  17  used car dealer, individual; when.  Obviously that can

08:09  18  affect the statute of limitations at issue.  When the

08:09  19  vehicle was sold.  That seems reasonable if you've got a car

08:09  20  owner or not.  And then any written or oral statements that

08:10  21  could be reasonably relied upon.  I mean, all of that seems

08:10  22  like pretty basic information, given the misrepresentation

08:10  23  case, and all of those states should be able to get that.

08:10  24            THE COURT:  Okay.

08:10  25            MR. BERMAN:  First of all, you're going to get all

08:10    1  that information in advance, which we'll have to disclose on

08:10    2  Rule 26.  In general, I think we agree with all of that.

08:10    3  The one area that we haven't quite decided is the

08:10    4  requirement that we put in the Complaint all the oral or

08:10    5  written statements that may be relied upon.  We don't know

08:10    6  if we're going to bring a misrepresentation claim yet.  It

08:10    7  could be just an omission claim.  So I think it's unfair to

08:10    8  be locking us into that one category at this point, but the

08:10    9  rest of it is fine.

08:11   10          THE COURT:  Okay.

08:11   11          MR. BRENNAN:  And if I may say, on the last point,

08:11   12  if they're not relying on any statement, they should simply

08:11   13  say they didn't review and aren't relying on any statements

08:11   14  that were made.  You know, they didn't see them.  They

08:11   15  didn't review them.  They didn't rely upon them.  They can

08:11   16  say that as well.

08:11   17          With respect to which plaintiffs, one of our

08:11   18  points -- and it has to do with the causes of action as

08:11   19  well -- is we don't want to be here litigating, you know,

08:11   20  whatever amount of time -- obviously, we hope to be

08:11   21  successful on the Motion to Dismiss, and then we'll not be

08:11   22  spending as much time with you.  But if that doesn't happen

08:11   23  and we spend a lot of time with you -- we don't want to

08:11   24  spend all that time with you, Your Honor, and then if we get

08:11   25  to it and then it gets sent back to, for example, Wisconsin,

08:11  1  where they have 12 counts in the Complaint, and they've

08:11  2  handled five here, and counsel in Wisconsin goes, okay,

08:11  3  well, that's great.  You got rid of five issues in the MDL,

08:11  4  but now we're going to litigate these other things.  And we

08:11  5  gave the example of there's a face-to-face solicitation

08:11  6  statute that they're trying to move on.

08:11  7          So our view is either the causes of action should

08:12  8  be brought as part of the Complaint or they should be out of

08:12  9  the case, and that includes all the cases.  And they can

08:12  10  liaise with various counsels.  When we're done here, we

08:12  11  mostly want to be done, except for maybe for remand to the

08:12  12  courts, so that would be our request.

08:12  13          THE COURT:  Well, I think the plaintiffs have to

08:12  14  make a choice of what claims they are going to advance for

08:12  15  each state and consolidate the Complaint, and we'll deal

08:12  16  with the consequences if a particular claim is not advanced.

08:12  17          MR. BRENNAN:  Okay.  Thank you, Your Honor.

08:12  18          THE COURT:  I understand the problem.

08:13  19          MR. BRENNAN:  That's all.  I just wanted to make

08:13  20  that point.

08:13  21          THE COURT:  Okay.

08:13  22          MR. BRENNAN:  I appreciate it.

08:13  23          THE COURT:  I see that you've engaged the services

08:13  24  of Judge Morrow.  Do you want a formal order appointing her

08:13  25  as your settlement judge?

08:13  **1**          MR. BERMAN:  We haven't talked about it, but I

08:13  **2**  would be in favor of that, Your Honor.

08:13  **3**          THE COURT:  Okay.  Why don't you meet and confer

08:13  **4**  and submit one.  At least initially I think the discovery

08:13  **5**  will go to the magistrate judge.  She has her own informal

08:13  **6**  set of rules and procedures.  That's Judge Scott.  But it

08:13  **7**  seems to me at least initially let's see if that's viable.

08:13  **8**  If it becomes overwhelming, well, we may need to consider

08:13  **9**  the addition of one or more special masters.  But at least

08:13  **10**  initially, Judge Scott will be responsible for discovery.

08:14  **11**          You submitted a Preservation Order.  Any objection

08:14  **12**  to that form of order?

08:14  **13**          MR. TELLIS:  No, Your Honor.  Roland Tellis.

08:14  **14**          We are pleased to have worked out the format that

08:14  **15**  was submitted to Your Honor on a mutual basis.  The only

08:14  **16**  thing I would say, Your Honor, for the record is that

08:14  **17**  Preservation Order as currently written applies to the

08:14  **18**  domestic defendants.  If the foreign defendants or parents

08:14  **19**  are added to this litigation, we intend to seek that order

08:14  **20**  be applicable -- an order requiring the same preservation

08:14  **21**  obligations on those defendants.

08:14  **22**          I just want to be on record and let counsel know

08:14  **23**  that it's our intention and it's our expectation that

08:14  **24**  regardless of the fact that they're not named in the

08:14  **25**  Preservation Order, they understand that they're likely

08:14  1    going to be named in this Complaint.

08:14  2             THE COURT:  Aren't there at least in some of the

08:15  3    Complaints the foreign parents?

08:15  4             MR. TELLIS:  There were some named.  None of them

08:15  5    appeared.  I don't know if any were served, and we're making

08:15  6    the determination about whether they will be added to the

08:15  7    Consolidated Complaint.  Most likely they will.

08:15  8             THE COURT:  Okay.

08:15  9             MR. BRENNAN:  Your Honor, with respect to the

08:15  10   terms, we did work those out.  There was a lot of back and

08:15  11   forth, but we did get aligned on the appropriateness, and

08:15  12   we'll see what they do with respect to any foreign

08:15  13   defendants.  I think at least when I last checked there was

08:15  14   no Proof of Service filed with respect to any of them.

08:15  15            THE COURT:  Okay.  In terms of the pending

08:15  16   motions, I think those ought to be rolled into the 12(b)(6)

08:15  17   process.  I'm sure that the arguments advanced in those

08:15  18   motions could be advanced in any motion attacking the

08:15  19   Consolidated Complaint.

08:15  20            MR. BRENNAN:  With respect to the pending Motion

08:15  21   to Dismiss in Wisconsin, that's fine, Your Honor.  That

08:16  22   makes perfect sense to us, too.

08:16  23            THE COURT:  Okay.  Two things the parties didn't

08:16  24   address were a protocol for ESI and the privilege log.  I

08:16  25   assume you're going to have further discussions on those

08:16   1    topics.

08:16   2              MR. BERMAN:  That's correct, Your Honor.

08:16   3              MR. BRENNAN:  That's correct, Your Honor.

08:16   4              THE COURT:  Okay.  What's the present status with

08:16   5    respect to the City of Seattle?  What I understand from the

08:16   6    papers is the panel hasn't formally acted on that transfer

08:16   7    motion.

08:16   8              MS. CAPPIO:  You're right, Your Honor.  Gretchen

08:16   9    Cappio, counsel for the City of Seattle and the other

08:16   10   governmental entities.  Defendants have filed a motion.

08:16   11   They're challenging the conditional transfer order.  They've

08:17   12   filed a motion to vacate it, and we are submitting our brief

08:17   13   today.  Your Honor will probably see that we filed a Notice

08:17   14   of Related Case.  Several additional cases have come in,

08:17   15   and those are making their way through the local rule here,

08:17   16   Local Rule 83.

08:17   17             THE COURT:  They'll be low numbered to me.  I

08:17   18   think I've already signed the orders.

08:17   19             MS. CAPPIO:  Fabulous.

08:17   20             THE COURT:  It may have not have hit the docket,

08:17   21   but I think I've signed the orders.

08:17   22             MS. CAPPIO:  Great.

08:17   23             THE COURT:  So we've got at least -- well, we've

08:17   24   got two for sure presently here, and it will be at least

08:17   25   another half dozen in your memorandum of cities who expect

08:17  1   to file shortly.

08:17  2          MS. CAPPIO:  Yes, Your Honor.  They're coming in.

08:17  3   And like we discussed last time, it's just a process for

08:17  4   cities to get on file.  So we're going through those

08:17  5   processes all over the country, and they're coming in.

08:18  6          THE COURT:  Well, I think we ought to delay a

08:18  7   Consolidated Complaint.  I think there ought to be more

08:18  8   cities.  But I think we ought to delay that until we see how

08:18  9   many folks we have and what the geographic distribution is.

08:18  10  So I'm just going to put that issue on hold and suspend the

08:18  11  filing requirement in Order No. 2.

08:18  12         MS. CAPPIO:  Your Honor, if I'm understanding

08:18  13  correctly, you're waiting pending the JPML --

08:18  14         THE COURT:  Well, pending that and seeing whether

08:18  15  these other folks you've mentioned in your filing are going

08:18  16  to come in directly by filing in the Central District or if

08:18  17  they're going to file in their home districts and let

08:18  18  them begin that process.  I don't know what's going to

08:18  19  happen, but I think we ought to wait and see until we've got

08:18  20  more cases, if there are more municipal cases that are going

08:18  21  to come in.

08:18  22         MS. CAPPIO:  Your Honor, I know at least the City

08:18  23  of Buffalo, New York, and Madison, Wisconsin, are both

08:19  24  planning to file here in the Central District, so those will

08:19  25  be two more as well.  And as you can imagine, the City of

08:19   1   Seattle and our other clients are very eager to get going

08:19   2   here.  They feel that there is an emergent public health and

08:19   3   public safety situation, so they're eager to have it

08:19   4   addressed but, of course, whatever schedule Your Honor

08:19   5   wishes.

08:19   6           One thing I would just note -- and we filed

08:19   7   something briefly on Friday evening -- is just to make sure

08:19   8   that any future scheduling or other issues pertaining to the

08:19   9   governmental entities track is handled by the governmental

08:19  10   entities track.

08:19  11           THE COURT:  Well, yes and no.  Obviously, there

08:19  12   has to be coordination.

08:19  13           MS. CAPPIO:  Absolutely.  We will coordinate.

08:19  14           THE COURT:  I mean, the basic fact discovery with

08:19  15   respect to how these cars were developed and so on, that's

08:19  16   not going to differ from plaintiff to plaintiff regardless

08:19  17   of whether it's an individual or a public entity.  So

08:19  18   obviously there needs to be some coordination there.

08:20  19           MS. CAPPIO:  We will absolutely be coordinating in

08:20  20   all ways that make sense, Your Honor.  I just meant there

08:20  21   was some language in the Proposed Scheduling Order, Section

08:20  22   C, and you will see we filed an objection that's surgically

08:20  23   focused on the governmental entities.  I just want to make

08:20  24   sure that our schedule and so on are -- frankly, we're

08:20  25   consulted on since we're not part of what's called the

08:20    1    Leadership Committee in your order.

08:20    2            THE COURT:  Well, should we revisit that issue?

08:20    3    If there are ten or 12 governmental entity cases, at least

08:20    4    as a matter of coordination, it seems to me that there ought

08:20    5    to be a direct link between the governmental entity and the

08:20    6    main committee.

08:20    7            Thoughts?

08:20    8            MS. CAPPIO:  Well, I would welcome a position

08:20    9    there, Your Honor, of course.  But respectfully, these

08:20   10    counsel don't have governmental entity clients.  So we're

08:20   11    happy to meet and confer, but I would posit that if the

08:21   12    Leadership Committee were to include the governmental

08:21   13    entities that I be included in that.

08:21   14            THE COURT:  Well, for the time being, let's see

08:21   15    how far informal liaison can take us.

08:21   16            MS. CAPPIO:  Thank you, Your Honor.  I would just

08:21   17    point out that we were not consulted with when that proposed

08:21   18    order came down, and that to me kind of illustrates the

08:21   19    point of why representation is needed when those decisions

08:21   20    are being made and we're meeting and conferring with the

08:21   21    other side.

08:21   22            THE COURT:  Well, formally or informally, there's

08:21   23    going to be a liaison for these major orders.  I think it

08:21   24    would have been helpful then if the government entities

08:21   25    committee had some say or formal input in that order.  Be it

08:21   **1**   as it may, if I need to formalize some sort of cooperation,

08:21   **2**   I will.  But for now, I don't think its essential.

08:22   **3**           MS. CAPPIO:  Thank you, Your Honor.  We agree

08:22   **4**   wholeheartedly.

08:22   **5**           THE COURT:  With respect to the things farther

08:22   **6**   out, classification, substantive motions, I'm prepared to

08:22   **7**   adopt the proposed schedule with the understanding that as

08:22   **8**   we go along I like to harden up dates.  No one really knows

08:22   **9**   what a date is unless it's there in concrete.  We may have

08:22   **10**   some ambiguity for awhile, but as we go along, I'll just

08:22   **11**   firm those up so everybody knows when the hard dates are.

08:22   **12**           I didn't see any issue about a privilege log.  I

08:22   **13**   assume that will be a part of your ESI discussions.

08:22   **14**           MR. BERMAN:  That's correct, Your Honor.

08:22   **15**           MR. BRENNAN:  That's correct.

08:23   **16**           THE COURT:  I think that covers the topics I

08:23   **17**   wanted to cover.

08:23   **18**           Are there any specifics that anyone would like to

08:23   **19**   address that we have not touched on?

08:23   **20**           MR. BRENNAN:  I think the one unaddressed issue --

08:23   **21**   and maybe it has been a little bit addressed -- in tidying

08:23   **22**   up the Motion to Dismiss schedule is the state of discovery

08:23   **23**   until the motion to dismiss.  It sounds like by the schedule

08:23   **24**   we'll probably be arguing it in June or maybe early July.

08:23   **25**           THE COURT:  I'm going stay discovery except for

08:23   1   what I would call foundational discovery, basic document

08:23   2   requests with respect to the organizations, entities, and

08:23   3   these various defendant entities.  A 30(b)(6) deposition

08:23   4   would accomplish the same thing.  I think it's helpful early

08:23   5   on to know where you're going to go and who you have to

08:24   6   consider deposing.  So is that concept sufficient here?  I

08:24   7   call it structural discovery rather than merits discovery.

08:24   8             MR. BRENNAN:  That's fine.  Thank you, Your Honor.

08:24   9             THE COURT:  And delaying merits discovery at least

08:24   10   in the first round of pleadings.  At that point, I think we

08:24   11   need to get going.  I suspect, although it remains to be

08:24   12   seen, there will be some viable plaintiffs and some viable

08:24   13   defendants and some viable claims for which we'll need to

08:24   14   get going on discovery.

08:24   15             MR. BRENNAN:  Okay.  Thank you, Your Honor.

08:24   16             THE COURT:  Anything else?

08:24   17             One of the requirements of making the appointments

08:24   18   was for the Leadership Committee to pick a leader.

08:24   19             MR. BERMAN:  I'm kind of embarrassed, so I haven't

08:24   20   filed anything, but I was picked as the chairman.

08:25   21             THE COURT:  Okay.  We'll note that in the minutes

08:25   22   for today, and that will be fine.

08:25   23             MR. BRENNAN:  You'll note the part about him being

08:25   24   embarrassed, Your Honor, or -- that's honesty.

08:25   25             MS. CAPPIO:  Your Honor, Gretchen Cappio.

08:25   1          Just one small thing.  It occurs to me that the
08:25   2   governmental entities are very much assisted by having
08:25   3   deadlines by which those are due and that kind of thing.  So
08:25   4   to the extent Your Honor is inclined to put off the
08:25   5   deadline, we did have clients rushing and putting the pedal
08:25   6   to the metal to get their Complaint on file by the deadlines
08:25   7   Your Honor had previously set.  So to the extent there's a
08:25   8   reprieve there, I would just ask Your Honor that we have
08:25   9   another date to shoot for so that people can get it
08:25   10  calendared on their city counsels and so on to vote.
08:25   11          THE COURT:  Once those additional filings have
08:25   12  been made, why don't you consult Mr. Brennan and propose an
08:25   13  initial set of dates going through the pleading stage for
08:26   14  that track.
08:26   15          MS. CAPPIO:  We'll do that, Your Honor.  Thank
08:26   16  you.
08:26   17          THE COURT:  Okay.  Anything else we should take
08:26   18  up?
08:26   19          MR. BRENNAN:  I think setting the next date, Your
08:26   20  Honor.
08:26   21          THE COURT:  Okay.
08:26   22          MR. BRENNAN:  We conferred on this very important
08:26   23  point, Your Honor, and our preference on both sides would be
08:26   24  if we could maybe do this on Fridays instead of Mondays.
08:26   25          THE COURT:  Okay.  That's fine.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:26  1          How about April 14?  I'd like to make sure we have
08:27  2   one session that's for discussion and for all the planning
08:27  3   apart from whatever substantive deadlines we've got.  If we
08:27  4   consolidate those, that's fine, but I think that without a
08:27  5   doubt there will be enough to discuss and get together.
08:27  6          MR. BRENNAN:  April 14 sounds fine to us, Your
08:27  7   Honor.
08:27  8          MR. BERMAN:  Your Honor, I have a family vacation.
08:27  9   Could we do it the following week?
08:27  10          THE COURT:  Sure.  I think that's Easter week,
08:27  11   too, which might be a problem for some people.
08:27  12          MR. BERMAN:  Or we could do it the 7th I suppose.
08:27  13   Well, I can do it the 7th or the 14th.  Does that help?
08:27  14          THE COURT:  Well, Easter is the 9th.
08:27  15          Okay, so what's your preference?
08:28  16          MR. BRENNAN:  How about the 6th or the 5th?
08:28  17          MR. BERMAN:  The 6th works.
08:28  18          MR. BRENNAN:  April 6th, Your Honor.  It's a
08:28  19   Thursday.
08:28  20          THE COURT:  That's fine, 8:00.  Does that work?
08:28  21          MR. BRENNAN:  Yes.
08:28  22          MR. BERMAN:  8:00 is fine.
08:28  23          THE COURT:  It will get you out of here earlier in
08:28  24   the day.
08:28  25          MR. TELLIS:  I'm perfectly okay with it.  That's

08:28  1   my kids' spring break week, and I'm out of the country, but

08:28  2   I don't think all four of us need to be here as long as Your

08:28  3   Honor is okay with that.

08:28  4              THE COURT:  That's fine.  So April 6 at 8:00 a.m.

08:28  5              MR. BERMAN:  Yes, Your Honor.

08:28  6              THE COURT:  Okay.  Thank you very much.

08:28  7              MR. BRENNAN:  Thank you, Your Honor.

08:28  8              (Whereupon, the proceedings were concluded.)

08:28  9                        *   *   *

08:28  10

08:28  11

08:28  12

08:28  13

08:28  14

08:28  15

08:28  16

08:28  17

08:28  18

08:28  19

08:28  20

08:28  21

08:28  22

08:28  23

08:28  24

08:28  25

22

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  March 20, 2023

/s/   Sharon A. Seffens  3/20/23

SHARON A. SEFFENS, U.S. COURT REPORTER