BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| **In re:** Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation | § § § § § § MDL No. 3052 |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-8)

Pursuant to Rule 6.1(d) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Kia America, Inc. and Hyundai Motor America (together, "Defendants") respectfully submit this reply brief in support of their motion to vacate Conditional Transfer Order 8 ("CTO-8") as to *City of St. Louis v. Kia America, Inc., et al.*, No: 4:23-cv-00379-RLW (E.D. Mo.) ("*City of St. Louis*" or the "*St. Louis* action").

### INTRODUCTION

As described in Defendants' opening brief, the relevant factual inquiries and legal theories underlying *City of St. Louis* are materially different from those present in the MDL Consumer Actions and the other governmental entity actions, and therefore this Court should grant Defendants' motion to vacate CTO-8. The arguments set forth by the City of St. Louis (the "City") in its Opposition brief do not alter this basic fact.

*First*, the allegations raised in the *St. Louis* action have little connection to the "core factual allegations regarding Defendants' conduct as [to] the numerous consumer complaints pending" in the MDL. Opp. 1. As an initial matter, on May 18, 2023, the MDL Consumer Plaintiffs and Defendants filed a Joint Statement and Stipulation of Settlement, informing Judge Selna that the parties had reached a settlement-in-principle of the consumer class action claims. *In re: Kia*

1

*Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation*, Dkt. 107, No: 8:22-ml-03052-JVS-KES (C.D. Cal.). All further deadlines unrelated to settlement approval are therefore stayed in the MDL Consumer Actions. This development supports vacating CTO-8, as the broader legal and factual bases on which the MDL is premised are no longer at issue.

Further, although the legal standard for transfer does not require identical facts or claims, here, the *only* similarity between the MDL Consumer Actions and *City of St. Louis* is that the lawsuits stem from the alleged susceptibility to theft of Hyundai and Kia vehicles lacking immobilizers. This incongruence requires that CTO-8 be vacated. The City's public nuisance action involves distinct inquiries into crimes that occurred in St. Louis, as well as into how St. Louis addresses public safety, including: the overall rate of car thefts in St. Louis, as well as thefts of Kia and Hyundai vehicles lacking immobilizers; the City's allocation of resources for law enforcement, and law enforcement expenditures over time; the extent to which St. Louis prosecutes individuals arrested in connection with car thefts; and the additional damage, if any, to public property resulting from the theft of Defendants' vehicles. None of these factual inquiries are relevant to the MDL Actions, and thus weigh against transfer of *City of St. Louis* to MDL 3052.

*Second*, contrary to the City's position, transfer is not warranted because there is no "substantial overlap of facts and issues" between *City of St. Louis* and the five governmental actions directly filed in the Central District of California and reassigned to Judge Selna (the "Central District governmental actions").[1] Opp. 3. The City's claims largely repeat public nuisance allegations made by other municipalities against Defendants, and have no bearing on

---

[1] *City of Cleveland v. Hyundai Motor Am.*, No. 8:23-cv-00419 (C.D. Cal. Mar. 13, 2023); *City of Cincinnati v. Hyundai Motor Am.*, No. 2:23-cv-01750 (C.D. Cal. Mar. 13, 2023); *City of Madison v. Hyundai Motor Am.*, No. 8:23-cv-00555 (C.D. Cal. Mar. 27, 2023); *City of Buffalo v. Hyundai Motor Am.*, No. 8:23-cv-00572 (C.D. Cal. Mar. 30, 2023); *City of Rochester v. Hyundai Motor Am.*, 8:23-cv-00736 (C.D. Cal. Apr. 28, 2023).

2

whether coordination would actually preserve party and judicial resources. The claims underlying each governmental entity action require research and discovery into city-specific data and events, which will only reveal information relevant to the city at issue. Here, research concerning crimes and events occurring in *St. Louis* will not prove useful to the Central District governmental actions, nor to the pending governmental entity actions that are not part of the MDL, namely, *City of Seattle*, *City of Columbus*, *City of Milwaukee*, and *City of Baltimore*.[2]

*Third*, the City's argument that transferring *City of St. Louis* to the MDL will "promote the just and efficient conduct of the actions" is without merit. Opp. 8-9. In addition to relying on the mistaken assumption that the core factual issues underlying the MDL Consumer Actions are substantially similar to those in *City of St. Louis*, the City fails to coherently explain how transfer will avoid duplicative discovery, prevent inconsistent pretrial rulings, and conserve judicial resources. The targeted factual inquiries relevant to the *St. Louis* action have no bearing on the MDL Consumer Actions, and require discovery of matters specific to St. Louis and inapplicable to any other consumer or governmental entity plaintiff involved in this litigation.

*Lastly*, the City has not provided a reasonable basis for its argument that transfer is necessary for the convenience of the witnesses and parties. It is clear that the vast majority of the relevant documents and witnesses associated with the alleged public nuisance in St. Louis will be located where the nuisance occurred, *in St. Louis*, *not* in the Central District of California. Opp. 10. This is especially true given that for the discrete, overlapping discovery concerning

---

[2] *City of Seattle v. Hyundai Motor America, Inc.*, No. 2:23-cv-00098 (W.D. Wash. Jan. 23, 2023); *City of Columbus, Ohio v. Kia Am., Inc.*, No. 2:23-cv-00654 (S.D. Ohio Feb. 16, 2023); *City of Milwaukee v. Hyundai Motor America*, No. 2:23-cv-376 (E.D. Wisc. Mar. 22, 2023); *Mayor and City Council of Baltimore v. Hyundai Motor Am.*, No. 1:23-cv-01238 (D. Md. May 11, 2023).

3

Defendants' conduct, the parties can engage in informal coordination, such as cross-noticing depositions of corporate witnesses, which would promote judicial economy.

Accordingly, transfer is not warranted and the Panel should vacate CTO-8 in MDL 3052 as to *City of St. Louis*.

**ARGUMENT**

**I.    *CITY OF ST. LOUIS*  DOES NOT SHARE SUFFICIENTLY COMPLEX, COMMON CORE QUESTIONS OF FACT WITH MDL 3052**

The City argues that transfer is appropriate because, like the other actions in MDL 3052, its lawsuit is against the same defendants and involves the same types of cars suffering from the same alleged defect. Opp. 4–8. But this argument is inapposite, as under the applicable standard the City must show that common questions between its case and the MDL Actions are "sufficiently complex and/or numerous to justify" transfer. *In re AriZona Beverage Co. Prods. Mktg. & Sales Pracs. Litig.*, 609 F. Supp. 2d 1369 (Mem) (J.P.M.L. 2009). The City has not and cannot satisfy this standard, and the Panel should therefore grant Defendants' motion to vacate.

**A.    *City of St. Louis* Does Not Share Common Questions of Fact With the MDL Consumer Actions**

The City spends several pages of its Opposition brief exaggerating the extent to which its claims "arise from the same factual core as the consumer actions," and misconstruing statements made by Judge Selna in arguing that his "actions in overseeing the MDL support a finding that there is a substantial factual overlap between St. Louis's case and the consumer cases that would justify transfer under § 1407." Opp. 4-7.

As described above, on May 18, 2023, the MDL Consumer Plaintiffs and Defendants filed a Joint Statement and Stipulation of Settlement, informing Judge Selna that the parties had reached a settlement-in-principle of the consumer class action claims. *In re: Kia Hyundai Vehicle Theft*

4

*Marketing, Sales Practices, and Products Liability Litigation*, Dkt. 107, No: 8:22-ml-03052-JVS-KES (C.D. Cal.). All further deadlines unrelated to settlement approval are therefore stayed in the MDL Consumer Actions. This development further supports the vacating of CTO-8, as the broader legal and factual bases on which the MDL is premised are no longer at issue.

Further, the statements made by Judge Selna (referenced by the City in its Opposition) show only that he believes some degree of coordination may be necessary between the consumer and governmental entity actions as to "basic fact discovery." Opp. 6-7. Defendants agree insofar as, to the extent there are discrete, overlapping issues, informal discovery coordination between the parties outside of an MDL is appropriate. However, separate from these discrete discovery issues, *City of St. Louis* involves claims and factual inquiries that are materially different from those involved in the MDL Consumer Actions. And as a result the Panel should vacate CTO-8.

It is not enough that the MDL Consumer Actions and the *St. Louis* action relate to Defendants' alleged "failure to install industry standard engine immobilization technology into Kias/Hyundais sold in the United States, making them unreasonably easy to steal." Opp. 5. Indeed, far from these actions having the "same factual core," Opp. 7, this is the *only* factual similarity between the actions. The City's case does not center on Defendants' knowledge of a supposed defect, or how Defendants' marketed and sold their vehicles to consumers. Opp. 5. Instead, the City's case hinges on issues including: (1) whether the alleged increase in car thefts in St. Louis constitutes a public nuisance under Missouri law; (2) the extent to which there were intervening causes of such nuisance, including criminal acts by numerous third-parties and a lack of City policing or prosecutorial resources devoted to preventing, deterring, investigating, or prosecuting those criminal acts; and (3) the extent to which the City suffered injury.

Unique discovery and other pretrial proceedings concerning city-specific facts and events, wholly unrelated to representations made by Defendants to consumers, will be required in *City of St. Louis*. As such, transferring *City of St. Louis* to the MDL "could significantly complicate the efficient management of this already complex litigation." *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, MDL No. 2785, Dkt. No. 111 at 3 (J.P.M.L. Dec. 5, 2017); *see also In re Ameriquest Mtg. Co. Mtg. Lending Pracs. Litig.*, 542 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (vacating CTOs where MDL actions related to "lending practices" and the two actions before the Panel pled "individual claims based on the specific loan transactions at issue in those actions, which [would] likely require unique discovery and other pretrial proceedings.").

The City's reliance on *In re: Zantac (Ranitidine) Prods. Liab. Litig.* and *In re Auto Body Shop Antitrust Litig.*, Opp. 4, 7, is also misplaced. In *Zantac*, plaintiff New Mexico sought to vacate transfer, and defendant drug manufacturers opposed. MDL No. 2924, 2020 WL 12761382 at *1 (J.P.M.L. 2020). Importantly, New Mexico's core allegations in that case were not so geographically dependent as the claims here, and instead asserted that defendants "deceptively labeled, marketed, and sold" harmful medications to consumers. *Id.* In contrast, the core allegations here concern car thefts and related events that have taken place in St. Louis.

The City's reliance on *Auto Body Shop* fairs no better. Opp. 7. There, defendants did not have a unified stance opposing centralization, as is the case here. *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1389 (J.P.M.L. 2014) ("there are over 80 insurers named as defendants … and their positions with respect to centralization vary significantly."). Notably, the Panel also reasoned that the "large number of involved defendants" would make informal discovery coordination outside of an MDL "impracticable." *Id.* at 1390. Such is not the case here, where the MDL Actions and governmental entity actions only involve two defendants: Hyundai and Kia.

Moreover, while complaints need not "be identical" to support transfer under § 1407, Opp. 8, in the present case, the claims are completely different, and the City's reliance on *In re Air W., Inc. Securities Litigation*, 384 F. Supp. 609, 611 (J.P.M.L. 1974) is therefore inapposite. Opp. 4, 7. There, the three actions at issue—two class actions and one individual action—all alleged that the same defendant violated federal securities laws, albeit under differing legal theories of liability. *In re Air W., Inc.*, 384 F. Supp. at 610. However, in the present action, the Panel is not confronted with such overlapping legal claims.[3] The Panel should therefore reject the City's request to include an individual public nuisance suit brought by a governmental entity into an MDL consisting almost exclusively of consumer actions asserting private claims under consumer-protection laws and warranty theories—actions which are in the process of seeking settlement approval.

B.     *City of St. Louis* **and the Central District Governmental Actions Do Not Have a Substantial Factual Overlap to Warrant Coordination**

Given the minimal amount of public nuisance cases in MDL 3052, the City bears "a heavy burden to establish that [] common questions of fact are sufficiently complex and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407." *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). The City fails to do so here.

That other governmental entities have filed public nuisance cases in the Central District of California does not support transfer of the *St. Louis* action to the MDL. Opp. 7–10. There are

---

[3] The City's inclusion of failure to warn claims in its complaint, Opp. 5, does not change this analysis, as the City's claims are all premised upon its alleged expenditure of "significant public resources responding to increased vehicle theft, related criminal activity, and property damage," not any alleged diminution in value to consumers' vehicles arising from the vehicles not being equipped with immobilizers. Exhibit 1 to Opp., ¶¶ 72, 79, 85, 93.

7

only five governmental entity actions before Judge Selna, and those actions do not share common questions of fact so as to warrant transfer of *City of St. Louis*.

It is not the case that *City of St. Louis* will only require "damages discovery specific to St. Louis." Opp. 7-8. Indeed, while the City's complaint and Opposition fail to mention that the increased thefts, and attempted thefts, of Hyundai and Kia vehicles were inspired and encouraged by videos posted on TikTok, discovery will be necessary to show the extent to which car thefts *in St. Louis* were caused by such videos, and the impact of *the City's* policing, prosecutorial, and budgeting decisions on such thefts. The Central District governmental entity actions will involve unique factual inquiries into *those* cities' public nuisance claims that are far from "minor distinctions," including: whether any rise in theft of Kia and Hyundai vehicles occurred in Cleveland, Cincinnati, Madison, Buffalo, or Rochester, the manner in which those cities have responded, if at all, including through their policing and prosecutorial policies and budgets, and whether Defendants' conduct proximately caused the crimes in those cities. In short, discovery in these actions will require examining city-specific records and witnesses from various municipal entities in Cleveland, Cincinnati, Madison, Buffalo, and Rochester, none of which will be relevant to the public nuisance allegations at issue in *City of St. Louis*.

Relatedly, in determining whether to transfer *City of St. Louis*, the Panel should not consider the other governmental entity public nuisance actions seeking transfer to the MDL, which the Defendants have opposed.[4] But, even if the Panel were to consider those cases, they do not warrant transfer of the City's lawsuit for the same reasons described above.

---

[4] Defendants have moved to vacate the conditional transfer orders relating to *City of Seattle*, *City of Columbus*, and *City of Milwaukee*. Defendants also intend to move to vacate the conditional transfer order relating to *City of Baltimore*.

8

In sum, as the City raises entirely different factual and legal questions from the core product liability and warranty allegations at issue in MDL 3052, transferring *City of St. Louis* will not streamline the litigation and the Panel should therefore vacate CTO-8. *See In re Chinese-Manufactured Prods. Liab. Litig.*, MDL No. 2047, Dkt. 150 (J.P.M.L. Dec. 2, 2009) (vacating CTO where action "d[id] not share sufficient questions of fact.").

## II.   TRANSFER WILL NOT PROMOTE EFFICIENCIES AMONG THE VARIOUS MDL ACTIONS

The entirety of the City's "efficiency" argument is based on the mistaken premise that the *primary* issue underlying the MDL Actions and *City of St. Louis* is the susceptibility to theft of Hyundai and Kia vehicles not equipped with immobilizers. Opp. 2, 8. As discussed above, the public nuisance issues underlying *City of St. Louis* differ greatly from the issues present in the MDL Actions, and transfer here would not promote "the just and efficient conduct of the actions."

St. Louis also fails to explain how the discovery topics identified by MDL consumer plaintiffs, which focus on claims sounding in warranty theories, will be useful for *City of St. Louis*. Simply deeming the topics as "relevant" in blanket fashion (Opp. 9) does not justify transfer.

Moreover, there is little risk of "potential conflicting rulings" between MDL 3052 and *City of St. Louis*, nor "duplicative discovery" or "conflicting and duplicative pretrial conferences and other hearings." Opp. 9-10. Missouri public nuisance law is irrelevant to the MDL Actions as well as the nuisance actions brought by other governmental entities. Additionally, the City's argument that there could be "potential conflicting rulings" on defenses that the City "anticipates" Defendants will raise in *City of St. Louis* and in other governmental entity actions is pure speculation and should be rejected. *Id*. This argument also ignores that to the extent Defendants do raise similar defenses in governmental entity actions, these defenses will be based on a different set of facts unique to the municipality at issue and will therefore not result in conflicting rulings.

9

Finally, transfer is not needed to coordinate any discrete discovery issues that may overlap between the City's case and the MDL. Here, where the primary factual and legal issues are unique and localized to the City, "informal coordination of [] discovery by the parties and the involved courts is both practicable and preferable to transfer." *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, Dkt. No. 424 at 2 (J.P.M.L. Apr. 5, 2018). The parties can share certain discovery requests and responses through stipulations under Federal Rule of Civil Procedure 29 and informal procedures as needed. *See* Manual for Complex Litigation § 11.423 (4th ed. 2004).

### III. TRANSFER WILL NOT SERVE THE CONVENIENCE OF THE PARTIES AND WITNESSES

The City's convenience arguments focus entirely upon the alleged convenience for the Defendants, and thus should be rejected. Opp. 12–13. The City ignores that the *St. Louis* action will primarily involve witnesses from the City's finance, accounting, law enforcement, and other departments, and documents from its own records, across various offices and divisions. Again, it is not relevant to the City's nuisance claim whether an alleged, undisclosed susceptibility to theft rendered Defendants' vehicles worth less than consumers paid for them. Rather, the City's legal theories are premised upon localized factual issues that have no bearing on the MDL Actions, such as whether Defendants caused a nuisance in *St. Louis* and whether *St. Louis* incurred additional costs as a result. The clear differences between the cases means that the transferee court would need to divert resources and attention from the cases already before it to address the distinct issues presented by *City of St. Louis*. Any overlapping discovery issues (i.e., depositions of Defendants' employees and corporate designees), can be coordinated informally between the parties.

### IV. CONCLUSION

For the foregoing reasons, the Panel should vacate CTO-8 as to *City of St. Louis v. Kia America, Inc., et al., No: 4:23-cv-00379-RLW (E.D. Mo.)*.

Dated:  May 23, 2023

Respectfully submitted,

*/s/ Steven G. Madison*
Steven G. Madison
stevemadison@quinnemanuel.com
Justin C. Griffin
justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA  90017-5003
Tel.:    (213) 443-3000
Fax:    (213) 443-3100

Alicia Cobb
aliciacobb@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.:    (206) 905-7000
Fax:    (206) 905-7100

Peter J. Brennan
PBrennan@jenner.com
Michael T. Brody
MBrody@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
Telephone:     +1 312 222 9350
Facsimile:     +1 312 527 0484

Alice S. Kim
AKim@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:     +1 213 239 5100
Facsimile:     +1 213 239 5199

*Counsel for Defendants Kia America, Inc. and Hyundai Motor America*