# EXHIBIT 1

U.S. District Court
Western District of Missouri (Kansas City)
CIVIL DOCKET FOR CASE #: 4:23-cv-00399-HFS

City of Kansas City, Missouri v. Hyundai Motor America, Inc. et al
Assigned to: District Judge Howard F. Sachs
Cause: 28:1332 Diversity-Product Liability

Date Filed: 06/12/2023
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**City of Kansas City, Missouri**  represented by  **Matthew Lee Dameron**
Williams Dirks Dameron LLC
1100 Main Street
Suite 2600
Kansas City, MO 64105
(816) 945-7110
Fax: (816) 945-7118
Email: matt@williamsdirks.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Clinton Mann**
Williams Dirks Dameron LLC
1100 Main Street
Suite 2600
Kansas City, MO 64105
816-945-7110
Email: cmann@williamsdirks.com
*ATTORNEY TO BE NOTICED*

**Eric L. Dirks**
Williams Dirks Dameron LLC
1100 Main Street
Suite 2600
Kansas City, MO 64105
(816) 945-7110
Email: dirks@williamsdirks.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hyundai Motor America, Inc.**

**Defendant**

**Kia America, Inc.**

| # | Docket Text | Date Filed |
|---|---|---|
| 1 | COMPLAINT against Hyundai Motor America, Inc., Kia America, Inc. filed by Matthew Lee Dameron on behalf of City of Kansas City, Missouri. Filing fee $402, receipt number BMOWDC-8495558. Service due by 9/11/2023 unless otherwise directed by the court. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet)(Dameron, Matthew) (Entered: 06/12/2023) | 06/12/2023 |
| 2 | NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR IMPORTANT CHANGES, DEADLINES AND REQUIREMENTS.Notice of MAP assignment to an outside mediator. (Attachments: # 1 MAP General Order)(Woods, Gloria) (Entered: 06/12/2023) | 06/12/2023 |
|   | SUMMONS ISSUED as to Hyundai Motor America, Inc., Kia America, Inc.. (Woods, Gloria) (Entered: 06/12/2023) | 06/12/2023 |

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CITY OF KANSAS CITY, MISSOURI ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| HYUNDAI MOTOR AMERICA, INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| and ) | |
| ) | |
| KIA AMERICA, INC., ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

1. Like other communities across the United States, Kansas City is experiencing an epidemic of thefts of Hyundai and Kia vehicles—thefts that are easily preventable if only the manufacturers had installed basic, common technology in those vehicles.

2. Instead, and despite prevailing industry standards, Hyundai and Kia manufactured vehicles from 2011 to 2021 that lacked ignition immobilizers, thus leaving their vehicles susceptible to theft with tools no more advanced than a USB cable.

3. These vehicle thefts inherently endanger Kansas Citians and constitute a drain on already-strained public services. Vehicle thefts are associated with reckless driving, reckless conduct, increased violence, and the depletion of scarce emergency resources. They also deprive the community of safe streets and sidewalks.

4. In the face of these harmful impacts, Hyundai and Kia have done nothing. Instead of accepting responsibility for their harmful products through a recall or some other widespread

repair program, the manufacturers instead have left it to vehicle owners to address the problem—all while thefts continue unabated.

5. As set forth herein, Hyundai and Kia's failure to equip their vehicles with ignition immobilizer devices constitutes a public nuisance in violation of Missouri law. Kansas City seeks damages and other relief as outlined herein.

## JURISDICTION AND VENUE

6. Under 28 U.S.C. § 1332, the Court has subject matter jurisdiction over this dispute because the parties are diverse and the amount in controversy exceeds $75,000.

7. The Court has personal jurisdiction over Defendants because the causes of action alleged in this Complaint arise out of each Defendants' transacting business in Missouri, contracting to supply services or goods in this state, causing tortious injury by an act or omission in this state, and because Defendants regularly do or solicit business, or engage in a persistent course of conduct or deriving substantial revenue from goods used or consumed or services rendered in Missouri. Defendants have purposefully directed their actions towards Missouri and/or have the requisite minimum contacts with Missouri to satisfy any statutory or constitutional requirements for personal jurisdiction.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because Defendants reside, are found, have agents, or transact their affairs in this District.

## PARTIES

9. Kansas City is a constitutionally chartered municipal corporation that may sue and plead in its own name.

10. Plaintiff is responsible for the public health, safety, and welfare of its citizens.

11. Plaintiff finds that Defendants' vehicles have created a serious public health and safety crisis, and the crisis constitutes a public nuisance.

12. Plaintiff directly and foreseeably sustained all economic damages alleged herein. Defendants' conduct has exacted a financial burden for which Plaintiff seeks relief. These damages have been suffered, and continue to be suffered, by Plaintiff.

13. Defendant Hyundai Motor America, Inc. is a manufacturer and distributor of new motor vehicles under the Hyundai brand; it is incorporated and headquartered in the state of California. Defendant Hyundai Motor America, Inc. distributes, markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Hyundai brand vehicles through a network of over 800 dealers throughout the United States, including Kansas City, from its headquarters in California.

14. Defendant Kia America, Inc. is a manufacturer and distributor of new motor vehicles under the Kia brand; it is incorporated and headquartered in the state of California. Defendant Kia America, Inc. distributes, markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Kia-brand vehicles through a network of over 700 dealers throughout the United States, including Kansas City, from its headquarters in California.

## FACTUAL ALLEGATIONS

*Defendants' vehicles lack ignition immobilizer technology.*

15. An immobilizer is "a standard anti-theft feature" that is present in "[m]ost vehicles made in the last 20 years."[1]

---

[1] *What Is an Immobilizer and Does My Car Have One?*, (Dec. 23, 2021), https://www.makeuseof.com/what-is-an-immobilizer-does-my-car-have-one/.

3

16. Immobilizer technology functions as an extra security check when an occupant starts a vehicle. It has been described as follows:

> Transponder chips are found in key fobs and smart keys. When you start the engine or have the key fob inside the automobile, these chips communicate a passcode to the car's immobilizer technology. If the pin code in the key fob meets the one in the immobilizer system, the vehicle will start. Otherwise, your automobile will not start.[2]

17. Immobilizers have been a common feature in vehicles since the 1990s; indeed, by that time, they had "proliferated" and were "ubiquitous."[3]

18. Other countries adopted immobilizers and made them mandatory features on vehicles; the EU mandated them in the late 1990s, and other countries followed suit. In those countries, "immobilizers contributed to a significant decrease in auto theft."[4]

19. In the United States, the absence of ignition immobilizers violates Federal Motor Vehicle Safety Standard 114, which requires: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor, and (b) Either steering, or forward self-mobility, of the vehicle, or both." 49 CFR § 571.114 at S5.1. By not installing immobilizer technology, Defendants made the vehicles capable of moving without the keys—a violation of the federal regulation.

---

[2] *Will an immobilizer save your car from being stolen?*, (February 10, 2020), https://www.kaspersky.com/blog/36c3-immobilizers/.

[3] *Id.*

[4] *Id.*

4

*Immobilizers defeat and frustrate vehicle thieves.*

20. Immobilizers are common standard equipment in vehicles because they are a critical tool in frustrating vehicle thefts—an effect that has been studied and documented for years.

21. In a series of studies, electronic immobilizers on vehicles "has been found to reduce theft of vehicle rates significantly." Morgan et al., *Reducing criminal opportunity: vehicle security and vehicle crime*, Research Report, January 2016, at 87. Indeed, it is "the device with the most evidence of effectiveness." *Id.*

22. According to the Highway Loss Data Institute (HLDI), "vehicle theft losses decreased significantly after factory-installed passive immobilizing antitheft devices were introduced."[5]

23. A different 2016 study found that the use of immobilizers lowered the overall rate of car thefts by 40% over a ten-year period.[6]

24. Thus, the absence of immobilizer technology inherently makes Defendants' vehicles particularly susceptible to theft.

*Defendants' vehicles harm Kansas City.*

25. This phenomenon—the enhanced risk of theft—is playing out in Kansas City and other communities across the United States.

26. "Police across the country say Kia models newer than 2015 and Hyundai vehicles newer than 2012 are at risk" because the absence of an immobilizer allows thieves to steal Defendants' vehicles "using nothing more than a USB cord."[7]

---

[5] *Hyundai and Kia theft losses*, 39 HLDI Bulletin 28 (December 2021), https://www.iihs.org/media/.

[6] Jan C. van Ours & Ben Vollaard, *The Engine Immobilizer: A Non-Starter for Car Thieves*, 126 The Economic Journal 593, 1264, 1283 (June 2016).

[7] *Ignition design makes Hyundais and Kias easy to steal with USB cords*, (July 26, 2022), https://www.ksdk.com/article/news/investigations/ignition-design-hyundais-kias-easy-steal-usb-cord/.

5

27. According to law enforcement, the problem is that Defendants' vehicles do not have "immobilizing technology, which requires the engine to read a computer chip inside a key to start."[8]

28. Like other communities, Kansas City has seen a dramatic surge in the number of vehicle thefts attributable to the absence of immobilizer technology. In all of 2022, 382 thefts of Kia vehicles were reported. In the month of January 2023 alone, there were already over 105 thefts of Kia vehicles reported—nearly one half of the entire 2022 total.

29. Hyundai vehicles have seen a similar increase with over 50 of them being reported stolen just in January 2023.

30. If the thefts of Hyundai and Kia vehicles in Kansas City maintain their current pace—a likely occurrence as the summer months continue—the 2023 thefts will dwarf the 2022 thefts and more than double the previous rate.

31. The problem is not isolated to Kansas City. In 2019, 1,207 Kias and Hyundais were stolen in Missouri. In 2022, "that number soared to 6,120."[9] In just the latter six months of 2022, the pace of thefts jumped by 288%.[10]

32. Kansas City experienced a similar trend in 2022: 37 subject vehicles stolen during the first quarter of 2022, and 192 during the last quarter of 2022.[11]

---

[8]   Id.

[9]   Is your car where you left it? Kia and Hyundai thefts in Missouri have skyrocketed, (Feb. 26, 2023), https://www.kcur.org/news/2023-02-06/is-you-car-where-you-left-it-kia-and-hyundai-thefts-in-missouri-have-skyrocketed.

[10]   Id.

[11]   Id.

33. Indeed, the theft epidemic has escalated so quickly that major insurance companies will no longer provide new coverage to Hyundai and Kia vehicles that lack the immobilizer technology—a step that was necessary "to protect our policyholders and our business."[12]

34. The absence of immobilizing technology and the correlating theft of vehicles manufactured by Defendants creates a significant public safety problem for Kansas City.

35. The federal government recognizes that "stolen cars constitute a major hazard to life and limb on the highways" because, in part, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." 33 Fed. Reg. 6,471 (April 27, 1968).

36. Just recently, a bipartisan group of state attorneys general sent a letter to Defendants stating:

> Alarmingly high rates of thefts of these vehicles have been sustained over a long period of time. Your consumers continue to be harmed as a result, and worse yet, the thefts contribute to an erosion of public safety as they are frequently accompanied by reckless driving and the commission of other crimes, further endangering our communities.

Letter of 23 State Attorneys General to Hyundai and Kia (March 20, 2023).[13]

37. Simply put, "[t]hese thefts often result in more than simple property crimes."[14]

---

[12] Id.

[13] Available at https://www.doj.state.wi.us/sites/default/files/news-media/AG%20Letter%20to%20Hyundia%20and%20Kia%20final.pdf.

[14] Id.

38. Getting no response from Defendants, a group of eighteen attorneys general renewed the alarm surrounding Defendants' vehicles and asked the National Highway Traffic Safety Administration to issue a recall of Defendants' vehicles.[15]

39. Thus, there can be no doubt that a proliferation of vehicle thefts—thefts made significantly easier because of the defect in Defendants' vehicles—endangers Kansas Citians and threatens the public welfare.

*Defendants refuse to act.*

40. Despite the harms to vehicle owners and communities across the country, including Kansas City, Defendants have refused to act.

41. Defendants were aware of the absence of the immobilizing technology and have vowed to include the technology on model years 2022 and later.[16]

42. Similarly, since at least mid-2021, Defendants have known about the surging number of thefts of their vehicles.

43. Yet, Defendants have done nothing to meaningfully address the problem.

44. Defendants have offered a security kit for vehicle owners, but it (a) does not assist owners who have already had their vehicle stolen (nor does it assist Kansas City that has already dealt with the ramifications of those thefts), and (b) costs vehicle owners $170 (not including the cost of installation)—a barrier to adoption that guarantees the problem will continue.[17]

---

[15] Available at https://portal.ct.gov/-/media/AG/Press_Releases/2023/AG-Multistate-Letter-to-NHTSA-4202023.pdf.

[16] *Lawsuit claims flaw in Kia and Hyundai vehicles allow them to be stolen with just a USB cord*, (Jul. 28, 2022), https://www.kmbc.com/article/lawsuit-flaw-kia-hyundias-stolen-usb-cord/40747875.

[17] *Hyundai Charging Customers $170 for a Kit to Protect Its Easy-to-Steal Cars*, (Oct. 1, 2022), https://www.caranddriver.com/news/a41477937/hyundai-security-kit-easy-to-steal-models/.

8

45. To the extent Defendants have announced a potential software upgrade, many other details concerning that "fix" are unclear, including whether (a) the upgrade will be implemented via a formal vehicle recall; (b) how owners will learn about the availability of the upgrade; and (c) which models will be eligible for the recall. And again, this "remedy" does nothing for consumers and communities already impacted by the rash of thefts.

46. Defendants announced a software upgrade that became available in February 2023, but thefts are largely unabated. According to a recent article, "[m]ore than three months later, the automakers are far from putting the problem behind them." Sean McLain, *Kia, Hyundai Thefts Continue Three Months After Carmakers Deployed Fix*, The Wall Street Journal, May 30, 2023.[18] As of early May 2023, only 7% of the roughly 8 million eligible vehicles in the United States have received the software upgrade, and even those with the upgrade are still susceptible to break-ins because of the ubiquity of the problem. *Id.* The news report further noted that "the automakers' decision not to issue a safety recall on the cars—despite pressure from some states—could complicate the effort," and the manufacturers' decision not to issue a recall "means fewer owners would become aware of the free software fix." *Id*.

47. Thus, even in the face of soaring thefts that harm vehicle owners and communities across the country, Defendants have failed to act or take any meaningful steps to remedy the problem.

48. Left with no other choice, Kansas City initiates this litigation to abate the public nuisance presented by Defendants' vehicles.

---

[18] Available at https://www.wsj.com/articles/kia-hyundai-thefts-continue-three-months-after-carmakers-deployed-fix-c4351e60.

9

# FIRST CAUSE OF ACTION
## Public Nuisance Under Missouri Law
### Brought by Kansas City Against All Defendants

49. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

50. Each Defendant's conduct, both individually and collectively, in manufacturing, selling, and refusing to fix the vehicles at issue constitutes a public nuisance.

51. The conduct of each Defendant involves a significant interference with public health, public safety, public peace, and public comfort.

52. Each Defendant's conduct giving rise to the vehicle theft crisis is of a continuing nature and has produced a permanent or long-lasting effect that has a significant effect on the entire community.

53. Defendants' interference with the public health, the public safety, the public peace, and the public welfare resulted in significant harm to Plaintiff.

54. Each Defendant acted knowingly, or was substantially certain, that its conduct would result in the public nuisance and significant harm complained of herein. And, the conduct of each Defendant, either individually or collectively, was a substantial factor in producing and then maintaining the public nuisance complained of herein.

55. Each Defendant's conduct in causing the public nuisance complained of herein was unreasonable and the gravity of the harm caused far outweighs any utility of the Defendant's conduct.

56. Moreover, each Defendant's refusal to act to abate the nuisance constitutes unreasonable conduct.

57. Each Defendant's conduct damaged, and continues to damage, Kansas City in an amount to be determined at trial.

58. Kansas City seeks monetary and injunctive relief to halt the threat of future harm.

## SECOND CAUSE OF ACTION
### Violation of Kansas City Ordinance Article IX—Consumer Protection
### Brought by Kansas City Against All Defendants

59. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

60. Under Article IX of Kansas City's Ordinances, the City has authority to regulate consumer transactions and, if necessary, take enforcement action when those transactions constitute an unlawful business practice. Kansas City, Mo. Ordinances art. IX, §§ 50-291–50-305.

61. Defendants' vehicles constitute "merchandise" within the meaning of section 50-291.

62. Defendants' sales of their vehicles to residents of Kansas City constitute "consumer transactions" under section 50-291.

63. Under section 50-292, when selling merchandise, it is unlawful for a person to make "a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of merchandise . . . ." Kansas City, Mo. Ordinances art. IX, § 50-292(5).

64. The provision also makes it unlawful for a person to represent "that merchandise is of a particular standard, style or model, if it is of another . . . ." *Id.* at (7).

65. Defendants have marketed and represented their vehicles as being safe, even though the vehicles lack basic, rudimentary safety equipment such as immobilizer technology.

66. Defendants have marketed and represented their vehicles as meeting or exceeding national safety standards, even though the vehicles do not comply with Federal Motor Vehicle

Safety Standard 114.

67. Accordingly, Defendants have engaged in unlawful business practices within Kansas City in violation of section 50-292(5) and 50-292(7).

68. Under section 50-297, "the repeated commission of an unlawful business practice is hereby declared and deemed to be a public nuisance." Kansas City, Mo. Ordinances art. IX, § 50-297.

69. Under section 50-298, Kansas City may seek an injunction on behalf of itself and its residents "against continued unlawful business practices which are nuisances . . . ." Kansas City, Mo. Ordinances art. IX, § 50-298.

70. Accordingly, Kansas City seeks an order: (a) declaring Defendants' conduct a public nuisance under section 50-297; and (b) enjoining Defendants' unlawful business practices under section 50-298.

### THIRD CAUSE OF ACTION
### Negligence
### Brought by Kansas City Against All Defendants

71. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

72. Defendants have a duty to exercise reasonable care in the design, manufacture, sale, and distribution of their vehicles.

73. Reasonable care includes equipping vehicles with basic, common technology that can deter and prevent threats to public safety.

74. Defendants, acting individually and together, were negligent in failing to equip their vehicles with immobilizer technology.

75. Defendants' acts and omissions imposed an unreasonable risk of harm to others separately and/or combined with the improper or unlawful acts of third parties.

76. As a proximate result of the Defendants' breach of their duties of care, Defendants damaged and continue to damage Kansas City in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### Unjust Enrichment
### Brought by Kansas City Against All Defendants

77. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

78. As an expected and intended result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from the cost-savings realized in failing to equip their vehicles with immobilizer technology.

79. Unjust enrichment arises not only where an expenditure by one party adds to the property of another, but also where the expenditure saves the other from expense or loss.

80. Plaintiff has expended substantial amounts of money in an effort to remedy or mitigate the harms caused by Defendants' conduct, and Plaintiff anticipates those costs will only increase as the problem continues without a solution.

81. These expenditures include the provision of law enforcement services and other public safety resources to address the theft epidemic.

82. These expenditures have helped sustain Defendants' businesses, and they have been necessary only because Defendants continue to refuse to act to address the problem.

83. Plaintiff has conferred a benefit upon Defendants by paying for Defendants' externalities: the cost of the harms caused by Defendants' conduct.

84. Defendants are aware of these obvious benefits, and their retention of the benefit is unjust.

85. Defendants have unjustly retained benefits to the detriment of Plaintiff, and Defendants' retention of such benefits violates the fundamental principles of justice, equity, and good conscience.

86. Defendants' misconduct alleged in this case is ongoing and persistent.

87. Plaintiff seeks an order compelling Defendants to disgorge all unjust enrichment to Plaintiff.

## PRAYER FOR RELIEF

88. Kansas City respectfully requests that this Court enter judgment granting all relief requested in this Complaint, and/or allowed at law or in equity, including:

   a. abatement of the nuisance;

   b. actual damages;

   c. punitive damages;

   d. exemplary damages;

   e. disgorgement of unjust enrichment;

   f. forfeiture, disgorgement, restitution and/or divestiture of proceeds and assets;

   g. attorneys' fees;

   h. costs and expenses of suit; and

   i. pre- and post-judgment interest.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

DATED: June 12, 2023                    Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

_/s/ Matthew L. Dameron_
Matthew L. Dameron          MO Bar No. 52093
Eric L. Dirks               MO Bar No. 54921
Clinton J. Mann             MO Bar No. 70212
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 945-7110
matt@williamsdirks.com
dirks@williamsdirks.com
cmann@williamsdirks.com

--and--

Herbert E. Hardwick         MO Bar No. 39663
W. Christopher Hillman      MO Bar No. 48958
**HARDWICK LAW FIRM LLC**
2405 Grand Boulevard, Suite 800
Kansas City, Missouri 64108
Tel:    (816) 221-9445
hhardwick@hardwicklaw.com
chillman@hardwicklaw.com

*Counsel for City of Kansas City, Missouri*